# EXHIBIT D

Case 1:04-cv-01324-JJF-LPS   Document 70-5   Filed 05/31/2005   Page 1 of 8

00071306.DOC

2003 WL 21976031, Hynansky v. Vietri, (Del.Ch. 2003)  Page 1

*21976031    Only the Westlaw citation is currently available.

UNPUBLISHED OPINION. CHECK COURT RULES BEFORE CITING.

Court of Chancery of Delaware.

HYNANSKY
v.
VIETRI

No. 14645-NC.
Submitted: March 6, 2003.

Aug. 7, 2003.

Dear Messrs. Spadaro and Vietri:

NOBLE, Vice Chancellor.

I.

**1 Plaintiff John Hynansky ("Hynansky") and Defendant Albert A. Vietri ("Vietri") entered into a business venture in 1988 to purchase and develop a parcel of land in Delaware County, Pennsylvania (the "Parcel"). Because of zoning obstacles, the Parcel could not be rezoned as the parties had intended and eventually it was sold at a substantial loss. Hynansky brings this action to obtain payment by Vietri of his initial capital contribution, which Vietri never made, and Vietri's pro rata share of the business venture's losses.

II.

During the closing on the acquisition of the Parcel on January 9, 1989, Vietri and Hynansky executed a document (the "Agreement") (FN1) that purportedly established "JHV Associates" (the "Partnership") and provided in part:

PARTNERSHIP AGREEMENT

JHV ASSOCIATES

THIS PARTNERSHIP AGREEMENT is made effective as of January 9, 1989, by and between two parties: John Hynansky and Albert Vietri, being sometimes individually referred to herein as a "Partner" and collectively as the "Partners".

1. *Formation.* A partnership (the "Partnership") is hereby formed under and pursuant to the provisions of the Delaware Uniform Partnership Law, 6 *Del.C.* § 1501 *et seq.* (the "Delaware Act").

2. *Name.* The business of the Partnership shall be conducted under the name "JHV Associates" ...

3. *Purpose.* The purpose of the Partnership is to own, develop and lease real property in Delaware County, Pennsylvania.

4. *Partners.* The Partners of the Partnership shall consist of the parties hereto....

5. *Principal Office.* The principal office of the Partnership shall be maintained....

6. *Term.* The Partnership shall continue for a term of fifty (50) years from and after the date hereof, unless earlier terminated pursuant to Section 17 hereof.

7. *Capital Contributions.* The initial capital of the Partnership, contributed in cash by the Partners, is as follows:

```
Hynansky    $34,555.15

Vietri      $33,200.03
```

8. *Capital Accounts.* A separate capital account shall be maintained for each Partner.... (FN2)

Thus, even the most cursory review of the Agreement would have revealed that it had been drafted to create a partnership. In addition, the documents contemporaneously executed by Vietri to acquire the Parcel and to finance its acquisition clearly indicated that the acquiring entity was a partnership and that Vietri was executing the closing documents, including, specifically, the note and the mortgage, as a "Partner." (FN3)

Although Vietri acknowledges that he signed the various documents, including the Agreement, and that he saw the term "Partner," he now asserts that he did not read the Agreement. Instead, he contends that he relied upon his attorney (who was also representing Hynansky and the Partnership) to implement the business arrangement in accordance with his understanding that the business would be

© 2005 Thomson/West. No claim to original U.S. Govt. works.

conducted under some type of limited liability entity. (FN4) Vietri also maintains that he was not to become an equity participant in the venture until the Parcel had been successfully rezoned. (FN5) When he raised this issue with the attorney, the attorney, according to Vietri, told him that he was receiving his equity interest at closing on the acquisition of the Parcel in order to avoid a subsequent transfer tax that otherwise would have been paid at the time Vietri became entitled to his equity interest. (FN6) Because of their inability to obtain a favorable rezoning, Hynansky and Vietri agreed to sell the Parcel in 1994 for a price significantly below the purchase price paid in 1989. (FN7)

III.

**2 Hynansky has moved for summary judgment. (FN8) His motion presents several issues. First, Hynansky asserts that the business venture was a Delaware general partnership known as JHV Associates. Second, Hynansky, assuming that the formation of a partnership will be confirmed, seeks dissolution of that partnership because it no longer has any useful purpose. Third, because Vietri never made any monetary contributions to the Partnership, Hynansky seeks payment by Vietri of his required capital contribution and reimbursement from Vietri of his proportionate share of the Partnership's losses which Hynansky absorbed from Vietri's share of the venture.

Vietri concedes that he and Hynansky both executed a "partnership agreement" -the Agreement, which clearly and unambiguously purported to establish a general partnership. Vietri, however, contends that he understood that the business venture would be conducted through a corporation or limited partnership and that his contribution to the venture would not be cash but, instead, would be his experience and expertise in the real estate business. (FN9) Vietri also asserts that he was not to become an equity participant unless and until he obtained the rezoning. Vietri recognizes that his efforts to tender such assertions implicate the parol evidence rule. He first argues that the parol evidence rule does not preclude other proof demonstrating that the parties did not intend for the signed document to be a contract. Second, he asserts that the parol evidence rule does not preclude a party from proving that material terms were omitted from the Agreement because of fraud or mutual mistake.

IV.

The cross-motions for summary judgment are, of course, governed by the familiar standard of Court of Chancery Rule 56: a party seeking summary judgment may obtain that relief if there are no material facts in dispute and he is entitled to judgment as a matter of law. (FN10) Thus, "[i]n the face of a properly supported motion for summary judgment, the non-moving party must produce evidence that creates a triable issue of fact or suffer the entry of judgment against it." (FN11) The Court "may not weigh qualitatively or quantitatively the evidence adduced on the summary judgment record." (FN12) "Cross-motions for summary judgment are not the procedural equivalent of a stipulation for decision on a paper record." (FN13)

V.

A. *The Parol Evidence Rule*

Initially, I undertake a brief review of the parol evidence rule, which the parties agree is critical to the resolution of this matter. "The parol evidence rule ... prevents the use of extrinsic evidence of an oral agreement to vary a fully integrated agreement that the parties have reduced to writing." (FN14) The rule is a principle of substantive law and is not a rule of evidence. (FN15) Because of the perceived harshness of the parol evidence rule, courts have a recognized number of exceptions to its preclusive operation. (FN16)

B. *Existence of a Contract*

**3 The operation of the parol evidence rule is premised upon a showing of the existence of an enforceable written contract. (FN17) "[P]arol evidence may be available to show 'that the agreement was rendered invalid, void, or voidable by such causes as fraud, illegality, duress, mutual mistake, lack or failure of consideration, and incapacity." ' (FN18) Thus, "[i]t has long been accepted in Delaware that parol evidence is admissible to show conditions precedent which relate to the taking effect of a written instrument." (FN19) However, this qualification of the parol evidence rule is restricted to demonstrating the failure to satisfy a condition to the obligations to perform of *both* parties. "Such evidence is not admissible to show that the duty of just one party is

© 2005 Thomson/West. No claim to original U.S. Govt. works.

Case 1:04-cv-01324-JJF-LPS    Document 70-5    Filed 05/31/2005    Page 4 of 8

2003 WL 21976031, Hynansky v. Vietri, (Del.Ch. 2003)                                                                                               Page 3

conditional, since this would be regarded as an attempt to vary the terms of the writing rather than to show that the agreement never took effect." (FN20)

In his First Affirmative Defense, Vietri asserts that "[t]he parties did not intend the document [the Agreement] to constitute a binding, legally effective agreement unless and until Vietri was successful in efforts he was to make on behalf of [Hynansky] to have [the Parcel] rezoned for office or commercial development." (FN21) Evidence that the Agreement was subject to an oral condition before it would take effect would be admissible under the rationale previously noted. A careful review of the record, including Vietri's affidavit, demonstrates, however, that Vietri has failed to proffer any cognizable evidence disputing the existence and enforceability of the Agreement. The relevant factual assertions of Vietri's affidavit, which I must accept as true for purposes of this motion for summary judgment, are:

-- Hynansky "told me to do what was necessary and he would pay all expenses attributed to [the rezoning]. He then said that if I accomplished this he would give me a piece of the corporation;" (FN22) and

-- "When [the attorney] asked me what I was to contribute to the corporation, I told him that I was to attempt to get the property rezoned at Mr. Hynansky's expense and that if I succeeded, then and only then, would I receive any share." (FN23)

These factual contentions question the timing of the vesting of Vietri's interest in the business venture. They do not attack the existence of the Agreement and, thus, fail to come within the noted qualification to the application of the parol evidence rule. As such, and because Vietri has failed to bring forth any other facts that dispute the validity of the Agreement, I conclude that a contract, in the form of the Agreement, exists between Hynansky and Vietri. (FN24)

C. *Fully Integrated Agreement*

In order for the parol evidence rule to apply in all its splendor, one must first present a "fully integrated agreement." (FN25) The factors to be assessed in ascertaining whether a contract is fully integrated include: "whether the writing was carefully and formally drafted, whether the writing addresses the questions that would naturally arise out of the subject matter, and whether it expresses the final intentions of the parties." (FN26) Here, the Agreement was a formal document, evidencing the typical degree of care associated with establishing a relatively straightforward partnership arrangement. The questions, material for present purposes, of the nature of the business venture, and the parties' immediate rights in the venture, were clearly answered by explicit language creating a partnership, without any suggestion that it was anything other than a general partnership, and by the clear expression that Vietri became a partner upon execution of the Agreement without any suggestion that any other condition precedent, such as obtaining the rezoning, controlled the vesting.

**\*4** The intentions of the parties are best expressed by the language of the Agreement; Paragraph 21 provides:

21.    *Entire Agreement/Amendments*. This Agreement contains the entire understanding between the parties with respect to the Partnership and supercedes all prior written and oral agreements between them. There are no representations, agreements, arrangements or understandings, oral or written, between the Partners relating to the subject matter of this Agreement which are not fully expressed herein. This Agreement may not be amended or modified except by written instrument executed by all of the Partners. (FN27)

Thus, through the integration clause of Paragraph 21 of the Agreement, Hynansky and Vietri "clearly assented to the Agreement as their complete understanding as evidenced by the integration clause." (FN28) Indeed, the text of the Agreement demonstrates that it was the intention of the parties to execute an integrated agreement. Accordingly, the Agreement is to be interpreted in light of the parol evidence rule and extrinsic evidence of an oral agreement contradicting the terms of the Agreement may not be considered, unless one of the exceptions to the application of the parol evidence rule is present.

Vietri maintains that, by seeking to impose a condition precedent on his ascension to partner status, he is not seeking to "vary" the Agreement. That, however, is exactly what he seeks. He asks for an interpretation of the Agreement that is the

© 2005 Thomson/West. No claim to original U.S. Govt. works.

direct opposite of the Agreement's plain and unambiguous language and meaning. This integrated agreement, signed by both Hynansky and Vietri, clearly provided that Vietri became a general partner in a general partnership known as JHV Associates upon execution of that agreement. Vietri, however, wants to vary its meaning, through extrinsic evidence of an oral agreement or negotiations leading up to the execution of the Agreement, to reach a conclusion that he is not a general partner in JHV Associates and that JHV Associates was not formed as a general partnership. Deviation from the plain meaning of an integrated agreement, such as Vietri advocates here, is precisely the result that the parol evidence rule is designed to preclude. Therefore, this extrinsic evidence, in the form of oral agreements leading up to the execution of the Agreement that anything other than a general partnership was to be formed or that the vesting of Vietri's equity interest in JHV Associates was contingent upon the successful rezoning of the Parcel, is excluded unless one of the exceptions to the parol evidence rule applies.

D. *Fraud or Mutual Mistake*

Even though the parol evidence rule generally prevents consideration of evidence of an oral agreement to vary the terms of a fully integrated agreement that has been reduced to writing, there are exceptions to this rule. One of these exceptions is "where fraud or misrepresentation is alleged." (FN29) Another is where mutual mistake occurred. (FN30)

**5 As part of any successful claim based on fraud or misrepresentation, there must be a showing that a false statement was made and that the complaining party's conduct was in justifiable reliance upon the misrepresentation. (FN31)

Here, Vietri cannot, under the standard of Court of Chancery Rule 56, demonstrate that he relied upon any misrepresentation of Hynansky. First, he saw the Agreement and, although he may not have read it, he concedes that he realized that he was signing the Agreement as a "Partner." (FN32) Thus, any reliance would not have been reasonable. Second, he contends that he relied upon the statement of the attorney who formed the Partnership and handled the closing on the Parcel--not upon any representation of Hynansky. (FN33) Vietri contends that his attorney misled him by telling him when he would "really" receive his partnership interest and that he would not have any personal liability. If the attorney misled him, Vietri has not provided a basis for attributing the attorney's statement to Hynansky. Indeed, Vietri emphasizes that the attorney was representing not only Hynansky and the business venture but also him. (FN34)

Vietri also has failed to provide any basis for a conclusion that the Agreement was the product of mutual mistake. For summary judgment purposes, Vietri may have demonstrated that as he went to closing he did not anticipate that the business venture would be conducted as a general partnership. However, he signed the Agreement, after having had fair opportunity to review it and after having noted the word "Partner" in the Agreement. In addition, at about the same time, he signed loan closing documents as "Partner." To find mutual mistake in the face of this conduct would be to allow the disappointed party to assert mutual mistake whenever events did not unfold as anticipated. More specifically, there is no reason to believe that the mistake, if any, was mutual. Hynansky signed the Agreement; it clearly and unambiguously memorialized his understanding to establish a general partnership. In sum, the argued exceptions to the parol evidence rule are of no help to Vietri.

VI.

The previous issues, regarding the application and effect of the parol evidence rule upon certain evidence sought to be introduced by Vietri, are a subset of the more weighty dispute between the parties: whether a partnership was created. A "partnership" is defined by the relevant statutory authority (FN35) as "an association of two or more persons to carry on as co-owners a business for profit." (FN36) The creation of a partnership is a question of intent. (FN37) To prove the existence of a partnership, one must show the intent to divide the profits of the venture. (FN38) In demonstrating that a partnership exists, the acts, dealings, conduct, admissions and declarations of the purported partners, in addition to other direct evidence, may be utilized. (FN39) When the controversy is between two partners, as it is here, stricter proof of the intention to create a partnership is required. (FN40)

**6 In support of his argument that a partnership

© 2005 Thomson/West. No claim to original U.S. Govt. works.

was created, Hynansky principally relies upon the existence of the Agreement. The Agreement, as previously noted, unambiguously sought to create a Delaware general partnership named JHV Associates. However, because the fundamental inquiry in determining whether the parties created a general partnership is the intention of those parties, evidence in the form of a partnership agreement is strong but not conclusive proof of such an intention. (FN41) Indeed, "the entire agreement and all the attendant circumstances must be taken into consideration in reaching a determination that a partnership has actually materialized." (FN42) Thus, in determining whether Hynansky and Vietri intended to create a partnership, I must not confine my analysis solely to the terms of the Agreement.

In light of the standard of review at this stage in the proceedings, the broad scope of the intensely factual review of "all the attendant circumstances" that I am obliged to undertake, and the stricter standard of proof applying to disputes between two partners as to the creation of a partnership, I deny Hynansky's motion for summary judgment upon the issue of whether a partnership exists. I note that Vietri has proffered evidence that Hynansky treated the assets, and in particular the losses, of JHV Associates as his own for tax purposes, (FN43) and that Hynansky identified JHV Associates as a corporation on the contract of sale for the Parcel. (FN44) Because any conclusion as to the parties' intent to form a partnership would require me to balance the conflicting evidence, I may not grant summary judgment on the question of whether JHV Associates is a Delaware general partnership. Furthermore, I deny Hynansky's motion for summary judgment upon all his other claims as they are premised upon a finding that JHV Associates is a general partnership existing between Hynansky and Vietri.

## VII.

For the foregoing reasons, Hynansky's motion for summary judgment is denied. Vietri's motion for summary judgment and his motion for sanctions are also denied. (FN45)

IT IS SO ORDERED.

(FN1.) Pl. Hynansky's Mot. for Summ. J. ("Pl.'s Mot.") at Tab 1.

(FN2.) *Id.* at 1-2.

(FN3.) Pl.'s Mot. at Tabs 4 and 5. Both the note and the mortgage identify the borrower as "JHV Associates, a Delaware general partnership."

(FN4.) The contract of sale for the Parcel, negotiated by Hynansky, identified the purchaser as "JHV Inc." Def. Vietri's Br. in Opp'n to Pl.'s Mot. for Summ. J. and in Supp. of his own Cross-Mot. for Summ. J. ("Def.'s Br."), Ex. 3 at 1.

(FN5.) Aff. of Albert A. Vietri ¶ 3.

(FN6.) *Id.* ¶ 5.

(FN7.) Interestingly, Vietri sent a memorandum to the realtor handling the sale of the Parcel and, in the course of approving the sale, noted that his approval was "per our partnership agreement." Pl.s' Mot. at Tab 10.

(FN8.) Vietri has also moved for summary judgment and sought sanctions under Court of Chancery Rule 11 against Hynansky.

(FN9.) By 1988, Vietri had been engaged in real estate development or sales for almost two decades. Vietri Dep., Pl.'s Mot., Tab 2 at 9-10.

(FN10.) *See, e.g., Williams v. Geier,* 671 A.2d 1368, 1375 (Del.1996).

(FN11.) *In re Nantucket Island Assocs. Ltd. Partnership Unitholders Litig.,* 810 A.2d 351, 360 (Del. Ch.2002).

(FN12.) *Cerberus Int'l, Ltd. v. Apollo Management, L.P.,* 794 A.2d 1141, 1150 (Del.2002).

(FN13.) *Telxon Corp. v. Meyerson,* 802 A.2d 257, 262 (Del.2002).

(FN14.) *Taylor v. Jones,* 2002 WL 31926612, at *3 (Del. Ch. Dec. 17, 2002). Vietri does not argue that the language of the Agreement is ambiguous. If the language of a contract is ambiguous, the interpreting court may resort to extrinsic evidence in order to ascertain the intent of the parties. *Eagle Indus., Inc. v. DeVilbiss Health Care, Inc.,* 702 A.2d 1228, 1232 (Del.1997).

© 2005 Thomson/West. No claim to original U.S. Govt. works.

2003 WL 21976031, Hynansky v. Vietri, (Del.Ch. 2003)                                                     Page 6

(FN15.) *See id.;* 11 WILLISTON ON CONTRACTS, § 33:2, at 559-60 (4th ed.1999).

(FN16.) *See Engle v. Oney,* 1989 WL 44045, at *2 (Del. Ch. Apr. 25, 1989).

(FN17.) 11 WILLISTON ON CONTRACTS, § 33:17 (4th ed.1999); 3 E. Allan Farnsworth, FARNSWORTH ON CONTRACTS, § 7.4 (3d ed.1999).

(FN18.) *Rodgers v. Erickson Air-Crane Co.,* 2000 WL 1211157, at *4 (Del.Super.Aug. 17, 2000) (quoting 11 WILLISTON ON CONTRACTS, § 33:17 (4th ed.1992)).

**6 (FN19.) *Engle,* 1989 WL 44045, at *2. As such, this "long accepted" rule is not truly an exception to the parol evidence rule, and has been more accurately referred to as a "qualification." *See, e.g.,* Farnsworth, *supra* note 17, § 7 .4 at 441.

(FN20.) Farnsworth, *supra* note 17, § 7.4 at 441.

(FN21.) Answer and Countercl. ¶ 5.

(FN22.) Aff. of Albert A. Vietri ¶ 3.

(FN23.) *Id.* ¶ 4.

(FN24.) At times, Vietri has contended that, because he is demonstrating that a condition (achieving the favorable rezoning of the Parcel) to the vesting of his equity stake in JHV Associates was never satisfied, no partnership was ever formed, and thus there is an oral condition to the enforceability of the Agreement, a contract which purports to create a partnership. In essence, Vietri attempts to merge the concepts of the enforceability of the Agreement and the existence of a partnership. Even assuming that the unfulfilled contingency to the vesting of Vietri's equity interest would preclude the conclusion that a partnership was created by the parties, I reject Vietri's argument. I note that

[t]he existence of a partnership is generally considered to be governed by the intention of the parties rather than the language employed to express such intention.... The mere existence of an agreement labeled "partnership agreement" and the characterization of those signing the agreement as partners does not conclusively prove the existence of a partnership, the intention of the parties being paramount.

*Acierno v. Branmar,* 1976 WL 3, at *4-5 (Del. Ch. Feb. 19, 1976). The existence of an agreement which purports to create a partnership is distinct from the existence of a partnership between the contracting parties. *See infra* pp. 17-20. Vietri's challenge to the existence of a partnership is not logically equivalent to questioning the existence of the Agreement and, therefore, does not permit him to circumvent the operation of the parol evidence rule. Thus, there is a "partnership agreement" between Hynansky and Vietri; because of the unique nature of a partnership, the existence of a partnership agreement does not conclusively establish a partnership.

(FN25.) *Taylor,* 2002 WL 31926612, at *3.

(FN26.) *Id.* (citing *Scott-Douglas Corp. v. Greyhound Corp.,* 304 A.2d 309, 316 (Del.Super.1973)).

(FN27.) Pl.'s Mot., Tab 1 at 16-17. Vietri understood the purpose of an integration clause. Vietri Dep., Pl.'s Mot., Tab 2 at 199-200.

(FN28.) *Scott v. Land Lords, Inc.,* 616 A.2d 1214 (Del.1992) (TABLE) (ORDER ¶ 7) (unpublished order, text available at 1992 WL 276429 (Del. Sept. 22, 1992)).

(FN29.) *Anglin v. Bergold,* 565 A.2d 279 (Del.1989) (TABLE) (ORDER ¶ 6) (unpublished order, text available at 1989 WL 88625 (Del. June 26, 1989)).

(FN30.) *James River-Pennington Inc. v. CRSS Capital, Inc.,* 1995 WL 106554, at *7 (Del. Ch. Mar. 6, 1995); *Reeder v. Sanford Sch., Inc .,* 397 A.2d 139, 141 (Del.Super.1979).

(FN31.) *Stephenson v. Capano Dev., Inc.,* 462 A.2d 1069, 1074 (Del.1983); *Steinman v. Levine,* 2002 WL 31761252, at *14 (Del. Ch. Nov. 27, 2002), *aff'd,* 822 A.2d 397 (Del.2003) (TABLE).

(FN32.) Vietri states that he did not read the Agreement. Failure to read an agreement, however, is not a defense to its enforcement. *Graham v. State Farm Mut. Auto. Ins. Co.,* 565 A.2d 908, 913 (Del.1989). Moreover, although he

© 2005 Thomson/West. No claim to original U.S. Govt. works.

asserted in his deposition that he was not "specifically aware" that the Agreement was a partnership agreement, he noted at the closing on January 9, 1989, that he was to receive a 49% allocation of the partnership interest. Vietri Dep., Pl.'s Mot., Tab 2 at 97-99. In addition, in his Answering Brief, he conceded that he understood that the Agreement was a partnership agreement. "I [Vietri] saw the word 'partner' on the page and asked [the attorney] why I should sign a form of partnership agreement." Def.'s Br. at 6.

**6 (FN33.) Vietri Dep., Pl.'s Mot., Tab 2 at 188-91.

(FN34.) As Vietri phrased it: "Knowing that [the attorney] represented both Mr. Hynansky and I, I trusted him and felt that he would never put me in harm's way." Aff. of Albert A. Vietri ¶ 7.

(FN35.) The Delaware Uniform Partnership Act, 6 Del. C. § 1501, et seq., as in effect during all of the events material to this matter, was repealed in 1999 and replaced with the Delaware Revised Uniform Partnership Act, now codified as 6 Del. C. § 15-101, et seq. The effective date of the Delaware Revised Uniform Partnership Act was January 1, 2002, and, accordingly, the prior law applies here.

(FN36.) 6 Del. C. § 1506(a).

(FN37.) Acierno, 1976 WL 3, at *4; see also In re Estate of Fenimore, 1999 WL 959204, at *5 (Del. Ch. Oct. 8, 1999) ("Nonetheless, one must show the existence of the partnership by a preponderance of the evidence, and to do so one may demonstrate an intention to share profits and losses, and may use acts, the dealings and conduct of the parties, and admissions of the parties to do so.").

(FN38.) In re Estate of Fenimore, 1999 WL 959204, at *5 (citing Chaiken v. Employment Sec. Comm'n, 274 A.2d 707, 710 (Del.Super.1971)); Green v. Schagrin, 1989 WL 89576, at *3 (Del.Super. June 16, 1989); Gannett Co. v. Irwin, 1985 WL 189242, at *1 (Del.Super.Aug. 9, 1985).

(FN39.) Clothier v. McCloskey, 1986 WL 15715, at *5 (Del. Ch. July 10, 1986), aff'd, 541 A.2d 598 (Del.1988) (TABLE); Brown v. Galvin, 1979 WL 178470, at *3 (Del. Ch. Mar. 26, 1979); Jones v. Purnell, 62 A. 149, 150 (Del.Super.1905).

(FN40.) In re Estate of Fenimore, 1999 WL 959204, at *5; Garber v. Whittaker, 174 A. 34, 36 (Del.Super.1934).

(FN41.) Acierno, 1976 WL 3, at *4-5; see also Green, 1989 WL 89576, at *3 ("The mere existence of an agreement does not conclusively prove the existence of a partnership."); Chaiken, 274 A.2d at 709 ("The mere existence of an agreement labeled 'partnership' agreement and the characterization of signatories as 'partners' does not conclusively prove the existence of a partnership. Rather, the intention of the parties, as explained by the wording of the agreement, is paramount.").

(FN42.) Acierno, 1976 WL 3, at *4; see also Chaiken, 274 A.2d at 710 (noting that "the total circumstances of the case taken together indicate [an] employer-employee relationship" versus the existence of a partnership).

(FN43.) Specifically, Hynansky admittedly never sent a K-1 partnership tax form to Vietri for Vietri's share of any partnership's losses. Rather, Hynansky deducted on his personal income tax returns all of the losses of the partnership as losses suffered on personal, versus partnership, property. See Hynansky Dep. at 190, 200-02.

(FN44.) See supra note 4.

(FN45.) Vietri has not demonstrated that the actions of Hynansky or his attorneys in this matter were fraudulent, in bad faith or otherwise a basis for the imposition of sanctions.

© 2005 Thomson/West. No claim to original U.S. Govt. works.