# EXHIBIT A

Case 1:04-cv-01324-JJF-LPS    Document 89-2    Filed 08/22/2005    Page 1 of 4

00071306.DOC

Westlaw.

492 N.W.2d 191 (Table)

Page 1

170 Wis.2d 734, 492 N.W.2d 191 (Table), 1992 WL 348297 (Wis.App.)
**Unpublished Disposition**

(Cite as: 170 Wis.2d 734, 492 N.W.2d 191, 1992 WL 348297 (Wis.App.))

NOTICE: UNPUBLISHED OPINION. RULE 809.23(3), RULES OF CIVIL PROCEDURE, PROVIDE THAT UNPUBLISHED OPINIONS ARE OF NO PRECEDENTIAL VALUE AND MAY NOT BE CITED EXCEPT IN LIMITED INSTANCES.

(The decision of the Court is referenced in the North Western Reporter in a table captioned "Wisconsin Court of Appeals Table of Unpublished Opinions".)

Court of Appeals of Wisconsin.
Deborah WESTHUIS and Bruce Westhuis, wife and husband, Plaintiffs-Respondents,
v.
RURAL MUTUAL INSURANCE COMPANY and Janis Gibson, Defendants-Appellants,
Rural Security Life Insurance Company, d/b/a Seven Shields Health Insurance and Joyce Singerhouse, Defendants.
Joyce SINGERHOUSE, Third-Party Plaintiff,
v.
Barry TIMM, American Family Insurance Company and American Standard Insurance Company of Wisconsin, Third-Party Defendants.
No. 91-2943.
Aug. 4, 1992.

Appeal from a judgment of the circuit court for Dunn county: James C. Eaton, Judge. *Affirmed.*

Circuit Court, Dunn County

AFFIRMED.

Before CANE, P.J., and LAROCQUE and MYSE, JJ.

CANE, Presiding Judge.

\*\*\*1 Rural Mutual Insurance Company and its agent, Janis Gibson, appeal the portion of a judgment denying their motion after verdict requesting a finding that, as a matter of law, their insureds, Deborah and Bruce Westhuis, were not entitled to underinsured motorist coverage. Rural and Gibson argue that, as a matter of law, (1) the Westhuises' insurance renewal certificates do not constitute a contract for underinsured motorist coverage and (2) Charles Neubauer's vehicle, which collided with Deborah Westhuis' vehicle, does not meet the definition of an underinsured motor vehicle. Thus, they claim that the Westhuises are not entitled to underinsurance benefits of $50,000.

We conclude that, based on the jury's findings and undisputed facts, Rural's insurance policy issued to the Westhuises included underinsured motorist coverage. We also conclude that pursuant to Gibson's written and oral representations defining the Westhuises' underinsurance coverage, the Westhuises are entitled to the underinsurance benefits as represented to them. Therefore, the judgment is affirmed.

Deborah was seriously injured on April 18, 1989, when the automobile she was driving was struck by an auto driven by Neubauer. Deborah's injuries exceeded $160,000. Neubauer had $50,000 in automobile liability insurance, which was paid to the Westhuises. The Westhuises had an automobile insurance policy with Rural, covering both of their vehicles.

The Westhuises filed an action against Rural and Gibson, one of its agents, for underinsurance motorist coverage. [FN1] The Westhuises' policy contained no provisions for underinsurance coverage, and did not include Rural's underinsurance coverage endorsement. However, the Westhuises' renewal certificates stated that "insurance afforded is indicated by an X," and,

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

492 N.W.2d 191 (Table)          Page 2

170 Wis.2d 734, 492 N.W.2d 191 (Table), 1992 WL 348297 (Wis.App.)
**Unpublished Disposition**

**(Cite as: 170 Wis.2d 734, 492 N.W.2d 191, 1992 WL 348297 (Wis.App.))**

since 1983, the certificates had an "X" in the single "UM-UI" column. Rural used a single column because it generally sold uninsured and underinsured motorist coverage together as a package. Further, in 1987, Gibson sent a letter to Bruce Westhuis stating in part:

> I do wish you would reconsider increasing your uninsured motorist coverage. As I have explained to you[,] if you are hit by an uninsured vehicle your own policy will come into play and can pay for your bodily injury. *This would also pay if the other party is underinsured. You are only at the 25,000/50,000 limit.* (Emphasis added.)

A jury trial was held on the issues of underinsurance coverage and damages. Bruce testified that he understood he had underinsured motorist coverage and Gibson never informed him that he did not have such coverage. He also stated that after Deborah's accident, Gibson explained how he could stack the $25,000 underinsurance coverage on both of his vehicles, totaling $50,000 of available coverage. Bruce said that Gibson also told him that Neubauer had $50,000 of insurance, and she explained that because Deborah would probably have a large loss, Neubauer's insurance would come into play for the first $50,000 in damages and the Westhuises' insurance would pay for the second $50,000 in damages.

***2 At trial, Gibson denied telling the Westhuises that they had underinsurance coverage. She also testified that the discussion with Bruce concerning the Westhuises' policy providing $50,000 coverage came about when they discussed uninsured coverage in the event Neubauer had no insurance. However, Gibson admitted that she explained underinsured motorist coverage to her insureds as coverage that would apply to the insureds if the person who was negligent had insufficient insurance coverage to pay the insureds' total damages. She further explained that if Deborah's injuries exceeded $100,000, Rural would pay the Westhuises $50,000 because Neubauer's insurer already paid $50,000.

The jury found that there was a contract between Rural and the Westhuises for underinsured motorist coverage. It also found that Rural and/or Gibson made representations to the Westhuises that they had underinsurance coverage, the representations were untrue, Rural and/or Gibson knew or should have known the representations were untrue and the Westhuises relied upon the representations to their detriment. The jury determined that the Westhuises' damages were $160,430.67.

Rural and Gibson filed a post-verdict motion for judgment notwithstanding the verdict on the grounds that, as a matter of law, the Westhuises are not entitled to underinsured motorist coverage. The trial court denied the motion and entered a judgment for $50,000 underinsurance benefits plus interest and double costs pursuant to sec. 807.01, Stats.

We first address whether Rural and the Westhuises had a contract for underinsured motorist coverage. Rural and Gibson argue that, as a matter of law, the Westhuises' renewal certificates do not constitute a contract for underinsured motorist coverage because they lack sufficient details. However, the issue is not whether the certificates constitute a contract for underinsurance. The issue is whether the insurance contract between Rural and the Westhuises provides underinsured motorist coverage. This issue involves the construction of an insurance contract, which is a question of law that we review de novo. *Cardinal v. Leader Nat'l Ins. Co.,* 166 Wis.2d 375, 382, 480 N.W.2d 1, 3 (1992).

It is undisputed that Rural issued an automobile insurance policy to the Westhuises. Since 1983, the Westhuises' renewal certificates indicated that their policy provided underinsurance coverage. The policy, itself, made no reference to underinsured motorist coverage, and the Westhuises did not have Rural's underinsurance endorsement. However, the Westhuises' renewal certificates are part of their insurance contract with Rural. *See Handal v. American Farmers Mut. Cas. Co.,* 79 Wis.2d 67, 76, 255 N.W.2d 903, 907 (1977). Each certificate, which referred to the Westhuises' insurance policy by number, was an offer to provide

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

492 N.W.2d 191 (Table) Page 3

170 Wis.2d 734, 492 N.W.2d 191 (Table), 1992 WL 348297 (Wis.App.)
**Unpublished Disposition**

**(Cite as: 170 Wis.2d 734, 492 N.W.2d 191, 1992 WL 348297 (Wis.App.))**

the listed coverage for the specified premium. When the Westhuises paid the premium, they accepted the offer and gave consideration. The result was an agreement to provide the coverage indicated on the certificate. The certificates do not constitute the entire contract, but they become part of the insurance contract, which also includes the policy, endorsements to the policy, letters explaining coverage and representations by Rural and/or its agents. *See id; Trible v. Tower Ins. Co.,* 43 Wis.2d 172, 180-82, 168 N.W.2d 148, 153 (1969). Thus, the Westhuises' insurance contract affords underinsured motorist coverage.

***3 Next, Rural and Gibson argue that because the policy did not define the underinsured motorist coverage afforded to the Westhuises, we must insert the definition commonly used in their underinsured motorist coverage endorsement or the standard industry definition. Rural's underinsured motorist endorsement defines an underinsured motor vehicle as a vehicle with liability limits that are less than the "limits of liability which apply under this Underinsured Motorist's coverage." We are not persuaded.

A mistake or representation made by an authorized agent is attributable to the insurer. *Trible,* 43 Wis.2d at 180-82, 168 N.W.2d at 153. Thus, Gibson's representations to the Westhuises regarding the definition of underinsured motorist coverage and how it works, regardless of whether they correctly reflected Rural's underinsurance endorsement provisions, are attributable to Rural.

The jury found that Rural and/or Gibson represented to the Westhuises that they had underinsurance coverage. This finding is supported by the evidence. It is undisputed that Gibson, a Rural agent, was authorized to bind coverage. Before the accident, Gibson sent a letter to Bruce indicating that he had $25,000/$50,000 uninsured coverage and he should consider increasing his coverage. The letter also implied that the Westhuises had $25,000 underinsurance coverage. Additionally, Gibson explained to her insureds that this coverage would apply where the negligent party had insufficient liability insurance to cover their damages. Further, Bruce testified that Gibson explained that, pursuant to his underinsurance coverage, the Westhuises were entitled to $50,000 from Rural after Neubauer's insurer paid $50,000 because Deborah's loss would be great. Gibson also testified that Rural's underinsurance coverage would pay the Westhuises $50,000 if Deborah's damages were $100,000 or more.

Prior to the accident, the Westhuises received only Gibson's definition and explanation of underinsurance coverage. Thus, under *Trible,* Gibson's definition and explanation of underinsurance is attributable to Rural, and the Westhuises are entitled to underinsurance coverage as that coverage was explained and defined by Gibson. Consequently, the Westhuises are entitled to $50,000 underinsurance benefits from Rural.

*By the Court.*--Judgment affirmed.

Not recommended for publication in the official reports.

> FN1. The Westhuises' action included additional claims against various other defendants, but those claims and parties are not part of this appeal.

170 Wis.2d 734, 492 N.W.2d 191 (Table), 1992 WL 348297 (Wis.App.) Unpublished Disposition

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.