# EXHIBIT E

1999 WL 744430, Mentis v. Delaware American Life Ins. Co., (Del.Super. 1999)                                    Page 1

**\*744430**     Only the Westlaw citation is currently available.

UNPUBLISHED OPINION. CHECK COURT RULES BEFORE CITING.

Superior Court of Delaware.

Anthony P. MENTIS, individually and on behalf of all others similarly situated
v.
DELAWARE AMERICAN LIFE INSURANCE COMPANY

No. C.A. 98C-12-023 WTQ.
July 28, 1999.

*RE: Letter Opinion and Order on Defendant's Motion to Dismiss--GRANTED in part and DENIED in part*

QUILLEN, J.

Dear Ms. Iorii, Mr. Trainer, and Mr. Monhait:

**\*\*1** This is the Court's Opinion on Defendant's Motion to Dismiss. For the reasons stated herein, the Motion is GRANTED with respect to Count I (breach of fiduciary duty) and Count IV (unfair trade practices), and DENIED with respect to Count II (breach of contract), Count III (consumer fraud) and the statute of limitations.

FACTS

This purported class-action suit arises from the alleged use of deceptive sales practices during the sale of life insurance polices in the 1980s and early 1990s. The primary issue is whether the Plaintiff has stated a colorable cause of action. Given the procedural posture of this case, all facts will be viewed in a light most favorable to the Plaintiff.

Beginning in 1982, Defendant Delaware American Life Company and its affiliates (collectively "DelAm") began a solicitation campaign revolving around "vanishing premium" insurance policies. These insurance polices were market dependent, meaning the interest and dividends earned greatly effected the policy's viability and value. During this period of solicitation, these polices were apparently performing very well.

DelAm solicited customers with pre-existing life insurance policies and informed them that accumulated dividends and interest on their existing policies were sufficient to fund a higher coverage policy without an increase in their current premiums. In short, they would continue to pay the same premiums, but would receive more coverage.

DelAm solicited new customers by informing them that if they purchased a new policy, the interest and dividends on the policy would eventually pay for future premiums. This means the policy would eventually become self-funded, and future premiums would "vanish." DelAm also informed prospective purchasers of "flexible premium whole life" and "universal life" policies that a minimum premium would be sufficient to maintain a fixed amount of death benefits until the policy holder reached the age of 95.

During its solicitations efforts, it is alleged that DelAm utilized deceptive and inaccurate representations and illustrations. It is further alleged that customers were led to believe that "interest and dividends" would continue to fund their future premiums, regardless of any rate fluctuations. In short, customers were not informed that their policies were market dependent.

Among these customers was the Plaintiff, Anthony **Mentis**. In 1984, **Mentis** owned a $40,000 life insurance policy issued by Travelers. His premiums were $250 a month. In 1985, **Mentis** was solicited by DelAm to purchase a new policy. **Mentis** was allegedly told that if he surrendered his Travelers policy, which was then worth several thousand dollars, he could purchase a $50,000 policy from DelAm and maintain the same premiums ($250 a month). In connection with this solicitation, DelAm provided an illustration. The illustration showed that at the current rate of return (12%), **Mentis** could maintain a $50,000 policy for the same premiums he was currently paying. **Mentis** alleges that it was never made clear that if the rate of return changed, his payments of $3,000 a year would be insufficient to maintain a $50,000 policy. In fact, **Mentis** alleges that DelAm fostered the mistaken belief that his premiums would remain the same, regardless of whether interest and dividend rates fluctuated.

**\*\*2** Everything appeared to go well for the next fourteen years. Then, in August 1998, DelAm

© 2005 Thomson/West. No claim to original U.S. Govt. works.

informed **Mentis** that due to a reduction in interest and dividends, he would have to increase his premiums by more than 100% to maintain $50,000 of coverage. **Mentis** was also told that if he did not increase his premiums, the value of his policy would be reduced to $25,000. By this time, **Mentis** had paid premiums amounting to over $42,000. In December 1998, **Mentis** filed suit against DelAm individually, and on behalf of all others similarly situated. Plaintiff's suit alleges that DelAm: (1) breached its fiduciary duty to its customers by utilizing deceptive sales practices (Count I); (2) breached its contract with its policy holders (Count II); (3) committed consumer fraud under 6 *Del. C.* § 2513 (Count III); and (4) committed unfair trade practices under 18 *Del. C.* §§ 2304(1) and (20) (Count IV). **Mentis** seeks certification as a class action pursuant to Superior Court Civil Rule 23(b)(3), compensatory and punitive damages, a declaration of the policy's death benefits and attorneys' fees and costs. In lieu of filing an answer, DelAm filed a Motion to Dismiss, asserting that **Mentis** has failed to state a colorable claim and that the action is barred by the statute of limitations.

## STANDARD OF REVIEW

In evaluating a Motion to Dismiss under Superior Court Civil Rule 12(b)(6), the Court must assume all well pleaded facts in the Complaint to be true. *Nix v. Sawyer,* Del.Super., 466 A.2d 407, 410 (1983) (citing *Laventhol, Krekstein, Horwath & Horwath v. Tuckman,* Del.Supr., 372 A.2d 168 (1976)). For purposes of a Motion under Rule 12(b)(6), all allegations in the Complaint must be accepted as true. *State use of Certain-Teed Products Corp. v. United Pacific Ins. Co.,* Del.Super., 389 A.2d 777, 778 (1978). A Complaint will not be dismissed unless the Plaintiff would not be entitled to recover under any reasonably conceivable set of circumstances susceptible of proof. *Nix,* 466 A.2d at 410 (citing *Diamond State Tel. Co. v. University of Del.,* Del.Supr., 269 A.2d 52 (1970)). A Complaint may not be dismissed unless it is clearly without merit, which may be a matter of law or fact. *Diamond State,* 269 A.2d at 58.

## DISCUSSION

### A. Breach of Fiduciary Duty--Count I

Count I of the Complaint alleges that DelAm breached its fiduciary duty with its customers by luring them into a position of trust and then utilizing deceptive sales practices. DelAm contends that no fiduciary relationship exists between an insurer and an insured (or a prospective insured), especially in a sales context. Plaintiff asserts that the legal relationship between an insurer and an insured is a question of fact, and that this question cannot be determined on a Motion to Dismiss. Plaintiff asserts that the critical question is whether DelAm held itself out as one possessing superior knowledge, therefore allowing the Plaintiff to rely upon the representations made.

**\*3** Although Delaware law recognizes a contractual duty of good faith and fair dealing between an insured and an insurer, it does not recognize a fiduciary relationship between the two. *Corrado Bros. v. Twin City Fire Ins. Co.,* 562 A.2d 1188, 1192 (1989); *Abex, Inc. v. Koll Real Estate Group, Inc.,* Del. Ch., C.A. No. 13462, 1994 WL 728827, Jacobs, V.C. (Dec. 22, 1994). "[T]he term fiduciary overstates the essential relationship arising out of a contract of insurance." *Corrado,* 562 A.2d at 1192. As the Supreme Court stated in *Corrado:*

The concept of a fiduciary relationship, which derives from the law of trusts, is more aptly applied in legal relationships where the interests of the fiduciary and the beneficiary incline toward a common goal and in which the fiduciary is required to pursue solely the interests of the beneficiary in the property. *Cf. Loft, Inc. v. Guth,* 23 Del. Ch. 138, 2 A.2d 225, 238-39 (1938) *aff'd,* Del.Supr., 255, 5 A.2d 503 (1939). The relationship of insurer and insured, however, arises contractually.... This expected clash of interests is clearly not compatible with the concept of a fiduciary.

*Id.* (parenthetical omitted).

The Complaint alleges that DelAm solicited both individuals with existing DelAm policies and those without, in an attempt to sell new insurance policies. In essence, all DelAm did was solicit new and existing customers in an attempt to sell a new product. With respect to those individuals without existing DelAm policies, the transaction was nothing more than an arm's length negotiation concerning the purchase of insurance, wherein both parties were strangers to one another. This type of buyer-seller relationship, with some inherent adversarial nature, does not give rise to fiduciary duties because the

© 2005 Thomson/West. No claim to original U.S. Govt. works.

interests of the parties are not "incline[d] toward a common goal." *Id.*

With respect to the individuals with existing DelAm polices, the transaction was not between strangers, but instead between those with an insurer-insured relationship. This was not, however, the typical situation where an insurer was failing to pay for treatment, settle a claim, or provide a defense. In those situations, the insurer is held to the duty of good faith and fair dealing as a result of its specific contractual obligations to undertake those burdens. *See Pierce v. International Ins. Co. of Ill.*, Del. Supr., 671 A.2d 1361, 1367 (1996) (stating that an insurer's obligations arise from the insurance contract). In the situation where an insurer is soliciting an existing customer to purchase a new insurance policy, and create a new contract, there is no specific contractual obligation called into play. Although a general obligation to act in good faith may arise, this obligation, if any, falls short of a fiduciary duty in the traditional sense As before, the interests of the parties are not sufficiently aligned to create a situation of unwavering trust between the parties and no fiduciary duty exists.

**\*4** Although this Court declines to impose a fiduciary duty upon the insurer-insured relationship, this does not mean that insurers, when soliciting existing and potential customers, are given free reign to utilize deceptive sales practices. This Court simply feels that the deceptive practices alleged in the Complaint are better addressed by the laws designed to protect consumers, i.e. consumer fraud and insurer bad faith, not the laws designed to protect stockholders and trust beneficiaries, i.e. fiduciary duties. (FN1) This Court is also aware that many cases from other jurisdictions, involving similar "vanishing premiums" class actions, hold that the existence of a fiduciary duty in this situation is a fact specific question. *See, e.g., Parkhill v. Minnesota Mut. Life Ins. Co.*, D. Minn, 995 F.Supp. 983, 992 (1998); *Grove v. Principal Mut. Life Ins. Co.*, S.D. Iowa, 14 F.Supp.2d 1101, 1111 (1998) (finding the existence of a fiduciary duty a question of fact). Again, this Court feels that the arenas of consumer protection and insurer bad faith are better equipped to remedy deceptive sales practices than fiduciary duties. Fiduciary duties are the highest imposes by law, and should be cautiously imposed by Courts. This is not such a case. Accordingly, Defendant DelAm's Motion to Dismiss with respect to Count I (breach of fiduciary duty) is GRANTED. IT IS SO ORDERED.

B. Breach of Contract--Count II

Count II of the Complaint alleges that DelAm made representations, via its sales agents, that if the Plaintiff continued to make the same monthly payments of $250, the policy would retain its $50,000 value. Defendant contends that the insurance contract is a fully integrated document that "explicitly" illustrates the policy's market dependent nature. It contends that any illustrations and representations made by sales representatives are not part of the contract and should be excluded as irrelevant extrinsic evidence. Plaintiff asserts that the written policy was so cumbersome and complex as to make it incomprehensible to the ordinary customer, and that the representations of the insurer's sales agents should be taken into account when construing the policy.

The policy is over twenty pages long. On the first page of the policy, it states that it "may end before the insured reaches the age of 95 if either (1) no premiums are paid after the initial premium or (2) subsequent premiums are not sufficient to continue this policy in force until that time." (FN2) The determination of the policy's benefits are described on pages nine and ten as follows:

Actual Amount of Proceeds. The actual amount of proceeds will depend on:

the life insurance proceeds determined as above;

the use of the account value during the Insured's life;

any withdraws;

any additional insurance provided by rider;

any increase or decrease in existing coverage;

the insured's suicide during the first 2 policy years; and

a mistake in the Insured's age.

\* \* \*

\* \* \*

© 2005 Thomson/West. No claim to original U.S. Govt. works.

**\*\*5** Determining the Account Value. The account value on any monthly due date is determined as follows:

> the account value on the prior monthly due date; less any withdraws since the prior monthly due dates; less the monthly deduction for the prior month; plus one month's interest; plus all premiums received since the prior monthly due date.

\* \* \*

\* \* \*

Interest. The guaranteed interest rate on account values is shown on the Information page [.36748% compounded monthly]. We may use an interest rate in excess of the guaranteed rate in a manner we determine. (FN3)

On the subject of integration and modification, the policy states that "[t]his policy and application(s) constitute the entire contract between you and us.... This policy can only be changed, in writing, by one of our executive officers. No other person, including an agent, has any authority to change or reinstate this policy." (FN4) Nowhere in this cumbersome policy is it clearly (or even unclearly) stated that the monthly premiums will increase if the interest rates earned by the policy fall.

The interpretation of contractual language is a question of law to be decided by the Courts. *Pellaton v. Bank of New York,* Del.Supr., 592 A.2d 473, 478 (1991) (quoting *Klair v. Reese,* Del.Supr., 531 A.2d 219, 222 (1987)). If the relevant language is clear and unambiguous, Courts must give the language its plain meaning. *Phillips Home Builders v. The Travelers Ins. Co.,* Del.Supr., 700 A.2d 127, 129 (1997). A contract is not rendered ambiguous simply because the parties do not agree on its meaning. *Rhone-Poulenc Basic Chemicals Co. v. American Motorists Insurance Co.,* Del.Supr., 616 A.2d 1192, 1196 (1992). Rather, a contract is ambiguous if the provisions are reasonably susceptible to two or more meanings. *Id.*

A contract is not ambiguous if "the court can determine the meaning of a contract 'without any other guide than a knowledge of the simple facts on which, from the nature of language in general, its meaning depends." ' *Id.* (quoting *Holland v. Hannan,* D.C.App., 456 A.2d 807, 815 (1983)). Courts will not torture contractual terms to create an ambiguity. *Rhone-Poulenc,* 616 A.2d at 1196. In determining the meaning of a contract, "[t]he true test is not what the parties to the contract intended it to mean, but what a reasonable person in the position of the parties would have thought it meant." *Id.* If a contract is deemed ambiguous, extrinsic evidence is admissible to help determine the proper construction of the contract. *Eagle Industries v. DeVilbiss Health Care,* Del.Supr., 702 A.2d 1228, 1232 (1997).

This policy is ambiguous and falls painfully short of placing a reasonable insured on notice that the premium rates would drastically increase if the policy's rate of return faltered. Although the language of the policy, when read closely, may lead to the "inference" that the premiums may rise, it is certainly not so clear as to place an individual on notice that representations made by the insurer's sales agent regarding policy performance should be completely ignored. The fact that the premiums on this policy may substantially increase is of *critical importance,* and to obscure this fact under pages of policy ink, as opposed to making it crystal clear, leads this Court to the conclusion that the representations made by the insurer's sales agents are relevant when construing the true terms of this policy. This Court is not, however, inclined to construe the contract at this time, that is, on the Defendant's Motion to Dismiss. The Court simply feels that illustrations and representations made by agents of the insurer are relevant to that construction. Because these alleged representations specify that premiums would not rise, and this representation may be utilized in construing the contract, Plaintiff has pleaded facts sufficient to paint a colorable claim for breach of contract. Accordingly, Defendant's Motion to Dismiss with respect to Count II (breach of contract) is DENIED. IT IS SO ORDERED.

C. Consumer Fraud--Count III

**\*\*6** The Complaint alleges that DelAm committed consumer fraud when it utilized deceptive sales practices, and omitted material facts, to foster the mistaken belief that its premiums would remain the same throughout the life of the policy. DelAm's counter is two fold. First, it argues that the Consumer Fraud Act does not apply to the insurance industry. (FN5) Second, it asserts that expressions

of future performance are merely opinions, and not subject to the Consumer Fraud Act.

The Consumer Fraud Act, 6 *Del. C.* § 2513, states that:

(a) The act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, or the concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale, lease or advertisement of any merchandise, whether or not any person has in fact been misled, deceived or damaged thereby, is an unlawful practice.

\* \* \*

\* \* \*

(b) This section shall not apply:

\* \* \*

\* \* \*

(3) To matters subject to the jurisdiction of the Public Service Commission, or of the Insurance Commissioner of this State.

This Act is to be liberally construed to promote the underlying purpose of protecting consumers. 6 *Del. C.* § 2512.

1. The Preemptive Effect of the Insurance Code

A consumer may bring a private cause of action under the Consumer Fraud Act against an insurance company, notwithstanding Section 2513(b)(3). *Grand Ventures, Inc. v. Whaley,* Del.Super., 622 A.2d 655, 663 (1992), *aff'd,* 632 A.2d 63 (1993); *DiSimplico v. Equitable Variable Life Ins. Co.,* Del.Super., C.A. No. 85C-01-079, 1988 WL 15394, Babiarz, J. (Jan. 29, 1988). As the *DiSimplico* Court stated:

[T]he Delaware legislature, in authorizing the [Insurance] Commissioner to deal with unfair trade practices in the insurance industry, did not intend to preempt other methods of redressing unfair trade practices, including private party suits against insurance carriers. Rather, the Court believes that the provision evinces a legislative intent to provide an additional, supplementary means of controlling and eradicating misconduct by insurers. Read in conjunction with the purpose of the [Consumer Fraud] Act as articulated in 6*Del. C.* § 2512, this Court concludes that plaintiff may maintain a private cause of action for fraud against [an insurer] pursuant to the [Consumer Fraud] Act.

*Id.* at \*2 (footnote omitted).

The Unfair Trade Practices Act, 18 *Del. C.* § 2301 *et seq.,* grants the Insurance Commissioner the authority to regulate unfair practices in the insurance industry. This Act begins by enumerating actions which are deemed unfair methods of competition. 18 *Del. C.* § 2304. It then provides the Insurance Commissioner with the power to "examine and investigate" those participating in the insurance industry to ascertain whether those persons are utilizing unfair methods of competition. 18 *Del. C.* § 2306. If the Insurance Commissioner determines that a person is committing an unfair act, he or she may issue a cease and desist order and/or assess penalties and fines. 18*Del. C.* §§ 2308, 2311. The powers vested in the Commissioner were intended to be in addition to all other remedies available at law. 18 *Del. C.* §§ 2308(h), 2313. This Act does not permit a private cause of action. *Yardley v. U.S. Healthcare, Inc.,* Del.Super., 698 A.2d 979, 988 (1996),*aff'd,* 693 A.2d 1083 (1997).

\*\*7 The Unfair Trade Practices Act is regulatory in nature, and grants only the State the power to enforce the act. The Unfair Trade Practices Act is also designed to supplement other remedies available at law, not displace them. These remedies would certainly include consumer fraud. Section 2513(b)(3) of the Consumer Fraud Act states that it does not apply to "matters subject to the jurisdiction of ... the Insurance Commissioner." In light of: (1) the Unfair Trade Practices Act's regulatory nature, (2) the absence of a private cause of action under the Unfair Trade Practices Act, (3) the Unfair Trade Practices Act's express statement that it does not intend to displace other remedies available at law, and (4) the Consumer Fraud Act's express statement that it be liberally construed, this Court holds that the only reasonable interpretation of Section 2513(b)(3) is that it only precludes the State from bringing a consumer fraud action against an insurance company; it does not preclude a private cause of action. *Grand Ventures,* 622 A.2d at 663.

© 2005 Thomson/West. No claim to original U.S. Govt. works.

The Plaintiff in this action may therefore bring a private cause of action under the Consumer Fraud Act.

### 2. Expressions of Opinions

Although fraud generally arises from an overt misrepresentation, it may also occur through deliberate concealment of a material fact in the face of a duty to speak. *Nicolet, Inc. v. Nutt*, 525 A.2d 146, 149 (1987). A duty to speak can be created by a pre-existing relationship between the parties or a partial disclosure of facts that requires the disclosure of additional facts to prevent a misleading impression. *Stephenson v. Capano Development, Inc.*, Del.Supr., 462 A.2d 1069, 1074 (1983). The "mere expressions of opinion as to probable future events cannot be deemed fraud or misrepresentation." *Biasotto v. Spreen*, Del.Super., C.A. No. 96C-04-030, 1997 WL 527956, **Quillen, J.** (July 30, 1997) Letter Op. at 12 (citing *Consolidated Fisheries Co. v. Consolidated Solubles Co.*, Del.Supr., 112 A.2d 30, 37 (1955)).

Whether or not DelAm's sales agents expressed "opinions" or outright misleading facts is a question of fact, and cannot be determined on a Motion to Dismiss. The facts alleged in the Complaint, if proven, could very well make out a case for consumer fraud. Accordingly, Defendant's Motion to Dismiss with respect to Count III (consumer fraud) is DENIED. IT IS SO ORDERED.

### D. Unfair Trade Practices Act

As stated earlier, the Unfair Trade Practices Act does not provide a private cause of action. *Yardley*, 698 A.2d at 988; *Moses v. State Farm Fire & Cas. Ins. Co.*, Del.Super., C.A. No. 90C-10-020, 1991 WL 269886, Lee, J. (Nov. 20, 1991). As Judge Lee stated in *Moses*:

The purpose of the [Unfair Trade Practices] Act was to regulate trade practices in the insurance industry, not to protect a specific class of persons. See 18 *Del. C.* § 2301(a). As such, the law is aimed at curbing unfair trade practices and not at providing a remedy for the class of persons which might be harmed by such acts.

**\*8** Nowhere in the Act is a class of specific complainants established. To the contrary, the Act provides for prosecution of its provisions by the Insurance Commissioner ("Commissioner"), omitting any reference to private actions. See 18 *Del.C.* § 2304, *et seq.*

The terms of the Act itself persuade that a private cause of action is impliedly, if not explicitly, not extended. The Act outlines proscribed practices in § 2303 through § 2305, and then, in § 2306, instills the Commissioner alone with the power to investigate wrongdoing under the Act.

*Id.* at 8-9. Accordingly, Plaintiff does not have standing to bring a claim under the Unfair Trade Practices Act and Defendant's Motion to Dismiss with respect to Count IV (unfair trade practices) is GRANTED. IT IS SO ORDERED.

### E. Statute of Limitations

The remaining two Counts are breach of contract (Count II) and consumer fraud (Count III). Defendant contends that because the alleged deception occurred in or around 1984, that these claims are barred by the statute of limitations. Plaintiff asserts that the actual harm resulting from the deceptive sales practices did not accrue until August of 1998, when the Plaintiff was informed that he needed to substantially increase his premiums in order to maintain his policy's value.

A three-year statute of limitation under 10 *Del. C.* § 8106 governs breach of contract claims. "An action for breach of contract accrues at the time of the breach." *Ensminger v. Merritt Marine Construction, Inc.*, Del.Super., 597 A.2d 854, 856 (1988) (citing *Nardo v. Guido DeAscanis & Sons, Inc.*, Del.Super., 254 A.2d 254 (1969)). The gist of Plaintiff's breach of contract claim is that DelAm represented that so long as the Plaintiff paid $250 a month, he would retain $50,000 in benefits. This alleged contract was not breached until DelAm demanded more than $250 a month in 1998. The breach of contract claim is therefore timely.

A three-year statute of limitation under 10 *Del. C.* § 8106 also governs claims of fraud. The time of discovery rule provides that in certain cases, a cause of action does not accrue until a party has reason to know that he or she has a cause of action. *Pack & Process, Inc. v. Celotex Corp.* Del.Super., 503 A.2d 646, 650-51(1985). Therefore, the limitation period does not begin to run until the Plaintiff has reason to know that a wrong has been committed,

© 2005 Thomson/West. No claim to original U.S. Govt. works.

provided the injuries are "inherently unknowable" and sustained by a "blamelessly ignorant" Plaintiff. *Kaufman v. C.L. McCabe & Sons, Inc.*, Del.Supr., 603 A.2d 831, 835 (1992). It is not the actual discovery of the reason for the injury that starts the clock, but the discovery of facts sufficient to put a person of ordinary intelligence on inquiry which, if pursued, would lead to discovery. *Becker v. Hamada*, Del.Supr., 455 A.2d 353, 356 (1982) (quoting *Omaha Paper Stock Co. v. Martin K. Eby Constr. Co.*, Neb.Supr., 230 N.W.2d 87, 89-90 (1975)).

**\*\*9.** The alleged fraud occurred when the DelAm sales agents solicited existing and potential customers. This occurred more than three years ago. The fraud alleged in the Complaint is that DelAm's sales agents represented that so long as the Plaintiff paid $250 a month, the Plaintiff's coverage would remain at $50,000. This Court has already determined that a reasonable person may not have been placed on notice that the insurance policy was market dependent because the policy language is not clear. Whether the Plaintiff should have been aware, by reading the policy, that premiums may drastically increase, is a question of fact that cannot be determined on a Motion to Dismiss. Accordingly, as to both the contract count and the fraud count, Defendant's Motion to Dismiss the Complaint as barred by the statute of limitations is DENIED. IT IS SO ORDERED.

F. Class Action Certification

Having determined that the Plaintiff has stated colorable causes of action, the next issue is whether this action should be certified as a class action under Superior Court Civil Rule 23(b)(3). The Court requests that both parties address this issue shortly after the Defendant files its Answer. *See* Superior Court Civil Rule 23(c).

(FN1.) The facts alleged in Count I, for example, appear to state a claim for common law fraud or deceit. If any modification is needed for such an allegation, it would be modest. Such a claim, however, would be redundant in light of the claim for statutory consumer fraud (Count III), a cause of action less arduous than common law fraud. 6 *Del. C.* § 251; *Stephenson v. Capano Development, Inc.*, Del.Supr., 462 A.2d 1069, 1074 (1983).

(FN2.) DelAm Insurance Policy, Defendant's Motion to Dismiss, Exhibit A, at 1 (Dkt. No. 7).

(FN3.) *Id.* at 9-10

(FN4.) *Id.* at 16.

(FN5.) As noted in footnote 1, *supra*, the Complaint appears (perhaps with modest modification) sufficient in its factual allegations to set forth a cause of action in common law fraud and, if for any reason the statutory fraud count failed as a matter of law, the Court would be inclined to permit the case to proceed on a common law basis, including any required or desirable amendment to the pleadings.

© 2005 Thomson/West. No claim to original U.S. Govt. works.