## IN THE UNITED STATES DISTRICT COURT
## IN AND FOR THE DISTRICT OF DELAWARE

THOMAS A. EAMES, ROBERTA L. EAMES )
and TAMMY EAMES, on behalf of )
themselves and all others )
similarly situated, )
                                          )
                Plaintiffs, )        C.A. No. 04-CV-1324KAJ
                                          )
v. )
                                          )
NATIONWIDE MUTUAL INSURANCE )
COMPANY, )
                                          )
               Defendant. )

## APPENDIX TO PLAINTIFFS' ANSWERING BRIEF IN
## OPPOSITION TO NATIONWIDE'S MOTION TO DISMISS

MURPHY SPADARO & LANDON
John S. Spadaro, No. 3155
1011 Centre Road, Suite 210
Wilmington, DE 19805
(302)472-8100

and

Clayton E. Bunting, No. 376
Wilson Halbrook & Bayard
107 West Market Street
P.O. Box 690
Georgetown, DE 19947
(302)856-0015

Attorneys for plaintiffs
Thomas A. Eames, Roberta L. Eames and Tammy
Eames (on behalf of themselves and all others
similarly situated)

August 22, 2005

123238

## TABLE OF CONTENTS

**Document**                                                                                                          **Page**

Policy text for Nationwide "Auto Policy" 52A733616.................................................................B1

Nationwide "Vehicle Screen" declarations page (Feb. 8, 2003)................................................B30

Letter from L. Pepper to C. Bunting (June 13, 2003)................................................................B31

Culver Insurance Agency "Auto Memorandum of Insurance" (June 17, 2003).........................B32

Class Action Complaint filed in Eames v. Nationwide Mut. Ins. Co., C.A. No. 04C-08-021RFS
(Del. Super. Ct.)........................................................................................................................B33

Transcript of deposition of Glenn W. Deaton (Aug. 9, 2005) ...................................................B51

Nationwide "Insurance Glossary" excerpts, nationwideinsurance.com
(printed Aug. 16, 2005)..............................................................................................................B68

*Tom & Bobbie Eames*

# *Your Nationwide® Auto Policy*





Nationwide Insurance Companies, Home Office: One Nationwide Plaza, Columbus, Ohio 43215-2220

# *Table Of Contents*

*Page*

**INSURING AGREEMENT** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . D1

**DEFINITIONS** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . D1

**INSURED PERSONS' DUTIES AFTER AN ACCIDENT OR LOSS** . . . . . . . . . D2

**TERRITORY** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . D2

**COVERAGES:**

**Physical Damage** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . P1–P5
(damage to your auto)

>   Comprehensive
>   Collision
>   Towing and Labor

**Auto Liability** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .L1–L4
(for damage or injury to others caused by your auto)

>   Property Damage and Bodily Injury

**No-Fault** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . N1–N5
(Delaware Motorists Protection Act)

>   Personal Injury Protection
>   Damage to Property Other Than a Motor Vehicle

**Uninsured Motorists** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . U1–U6
(for bodily injury and property damage caused by uninsured and underinsured motorists)

## GENERAL POLICY CONDITIONS

How Your Policy May Be Changed . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . G1
Optional Payment of Premium in Installments . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . G1
Renewal . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . G1
Non-Renewal . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . G1
Cancellation During Policy Period . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . G2
If You Become Bankrupt . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . G2
Unauthorized Use of Other Motor Vehicles . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . G2
Fraud . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . G2
Legal Action Limitations . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . G2
Arbitration . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . G3
Subrogation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . G3
Statutory Provision . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . G4
Dividends . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . G4
Non-Sufficient Funds . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . G4

## MUTUAL POLICY CONDITIONS

Nationwide Mutual Insurance Company
Nationwide Mutual Fire Insurance Company . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . G4

# Insuring Agreement

For the **policyholder's** payment of premiums in amounts **we** require and subject to all of the terms and conditions of this policy, **we** agree to provide the coverages the **policyholder has** selected. These selections are shown in the enclosed Declarations, which are a part of this policy contract. The selected coverages in this policy apply only to occurrences while the policy is in force. Renewal premiums for terms of six months each must be paid in advance.

# Definitions

This policy uses certain common words for easy reading. They are defined as follows:

1. "POLICYHOLDER" means the first person named in the Declarations. The **policyholder is** the named insured under this policy but does not include the **policyholder's** spouse. If the first named insured is an organization, that organization is the **policyholder.**

2. "YOU" and "YOUR" mean the **policyholder** and spouse if living in the same household.

3. "RELATIVE" means one who regularly lives in **your** household and who is related to **you** by blood, marriage or adoption (including a ward or foster child). A **relative** may live temporarily outside **your** household.

4. "INSURED" means one who is described as entitled to protection under each coverage.

5. "WE," "US," "OUR," and "THE COMPANY" mean or refer to **the company** issuing the policy—Nationwide Mutual Insurance Company, Nationwide Mutual Fire Insurance Company, Nationwide Property and Casualty Insurance Company, or Nationwide General Insurance Company.

6. "YOUR AUTO" means the vehicle(s) described in the Declarations.

7. "MOTOR VEHICLE" means a land **motor vehicle** designed primarily to be driven on public roads. This does not include vehicles operated on rails or crawler treads. Other motorized vehicles designed for use mainly off public roads shall be included within the definition of **motor vehicle** when used on public roads.

8. "PRIVATE PASSENGER AUTO" means a four-wheel:
   a) **private passenger auto;**
   b) van; or
   c) pickup truck.

9. "DEDUCTIBLE" means the amount of loss to be paid by the **insured. We** pay for covered loss above the **deductible** amount.

10. "OCCUPYING" means in, upon, entering, or alighting from.

11. "BODILY INJURY" means:
    a) **bodily injury;**
    b) sickness;
    c) disease; or
    d) death;
    of any person.

12. "PROPERTY DAMAGE" means:
    a) destruction of property;
    b) damage or injury to it; and
    c) loss of its use.

Other words are also defined. All defined words are in bold print.

# Insured Persons' Duties After an Accident or Loss

The **insured** will:

1. give **us** or **our** agent prompt notice of all losses and provide written proof of claim if required.
2. notify the police of all theft losses as soon as practicable.
3. promptly deliver to **us** all papers dealing with any claims or suits.
4. submit to examinations under oath as often as reasonably requested by **us**.
5. assist **us** with any claim or suit.
6. if injured, submit to examinations by company-selected physicians as often as **the company** reasonably requires. The injured person must grant **us** authority, at **our** request, to obtain copies of wage and medical records.
7. protect damaged property insured under this policy and make it available to **us** for inspection before its repair or disposal.
8. provide all records and documents we reasonably request and permit **us** to make copies.

# Territory

The policy applies in Canada, the United States of America and its territories or possessions, or between their ports. All coverages except Uninsured Motorists apply to occurrences in Mexico, if within 50 miles of the United States boundary.    We will base the amount of any Comprehensive or Collision loss in Mexico on cost at the nearest United States point.

NOTE: You will need to buy auto insurance from a Mexican insurance company — regardless of coverage provided by this policy — before driving in Mexico. Otherwise, you may be subject to jail detention, auto impoundment, and other legal complications in case of an accident.



# *Physical Damage*

(damage to your auto)

## ADDITIONAL DEFINITIONS APPLICABLE TO THESE COVERAGES

For purposes of these coverages only:

1. "LOSS" means accidental **loss** or damage to **your auto**, including its **equipment**, which is both direct and physical. **Loss** does not include reduction in value from non-physical causes.

2. "EQUIPMENT" means anything usual and incidental to the use of a **motor vehicle** as a **motor vehicle**. Any type of trailer is not **equipment**.

# *Coverage Agreements*

## COMPREHENSIVE COVERAGE

1. **We** will pay for **loss** to **your auto** not caused by collision or upset. **We** will pay for the **loss** less **your** deductible. Coverage is included for:

   a) damage from contact with:
      (1) animals; or
      (2) falling or flying objects.

   b) broken glass:
      (1) even if caused by collision or upset; and
      (2) if **you** do not have Collision coverage.

   If **your** Comprehensive and Collision coverages have different **deductibles**, the smaller **deductible** will apply to broken glass. For damage to **your auto's** windshield, **we** may offer to have it repaired in lieu of replacement. **We** will not apply a **deductible** for the repair of the windshield. However, if the repair is not satisfactory, **we** will replace the windshield subject to **your deductible**.

2. Also, if **your auto** has a **loss** under this coverage **we** will:

   a) pay for resulting damage to **your** clothing and luggage or that of any **relative**. Maximum payment is $200. **We** will pay for stolen clothing or luggage only if **your auto** is stolen.

   b) repay **your** travel costs after **your auto** is stolen. Maximum payment is $15 per day — not to exceed $450 per occurrence. These costs must be incurred within a certain time. It starts 48 hours after **you** report the theft to **us** and the police. It ends when **your auto** is returned to **you** or **we** pay for its **loss**.

   c) repay **you** for the cost of travel from where **your auto** was disabled to where **you** were going. Maximum payment is $10.

## COLLISION COVERAGE

1. **We** will pay for **loss** to **your auto** caused by collision or upset. **We** will pay for the **loss** less **your** deductible. However, **we** will not subtract the **deductible** amount for broken glass if **you** have full (no deductible) Comprehensive coverage in force.

2. Also if **your auto** has a **loss** under this coverage **we** will:

   a) pay for resulting damage to **your** clothing and luggage or that of any **relative**. Maximum payment is $200.

   b) repay **you** for the travel cost to where **you** were going. Maximum payment is $10.    B5

Rev. 5-1-98

01784

*18000020718A733616

## TOWING AND LABOR COSTS COVERAGE

We will pay towing and labor costs if **your** auto is disabled. We will pay only for labor costs at the place where **your** auto is disabled. Our maximum payment per disablement is shown in the Declarations.

# *Coverage Extensions*

## USE OF TRAILERS

The insurance on **your** auto covers a trailer used by **you** or a **relative**.

1. The trailer must be:
   a) designed for use with a **private passenger** auto; and
   b) used with a vehicle that is insured under these coverages.
2. The trailer must not be:
   a) otherwise insured;
   b) owned by **you** or a **relative**; or
   c) used for business purposes with a vehicle that's not a **private passenger auto.**
3. The maximum amount payable is $500.

## USE OF OTHER MOTOR VEHICLES

The insurance on **your** auto also covers other **motor vehicles** as follows:

1. A **motor vehicle you** do not own, while it is used in place of **your auto** for a short time. **Your** auto must be out of use because of:
   a) breakdown;
   b) repair;
   c) servicing; or
   d) **loss**.
2. A four-wheel **motor vehicle** newly acquired by **you**. **You** must report the acquisition of the vehicle to **us** during the first 30 days **you** own the vehicle. Also, if the newly acquired vehicle does not replace **your** auto, all household vehicles owned by **you** must be insured by **us** or an affiliate for this extension of coverage to apply.

   We provide this coverage only if **you** do not have other collectible insurance. **You** must pay any added premium resulting from this coverage extension.
3. A **private passenger** auto owned by a non-member of **your** household and not covered in item 1. of this section.
   a) This applies only:
      (1) to policies issued to persons (not organizations).
      (2) while such auto is used by **you** or a **relative**.
   b) We will not pay for **loss**:
      (1) that results from the operation of an auto:
         (a) repair shop;
         (b) public garage or parking place;
         (c) sales agency; or
         (d) service or maintenance facility.
      (2) involving a **private passenger auto** owned by an employer of an **insured**.
      (3) involving a **private passenger auto** furnished to **you** or a **relative** for regular use.
      (4) to any rented **motor vehicle**.

4. A rented **private passenger auto**, including its loss of income.
   a) This applies only:
      (1) to policies issued to persons (not organizations);
      (2) while such auto is rented by **you** or a **relative**;
      (3) if such auto is rented from a rental company for less than 28 days; and
      (4) for loss of income that is:
         (a) verifiable by **us**; and
         (b) owed to a rental company because:
            (1) the rental company had a customer willing to rent a **private passenger auto**; and
            (2) there was no other vehicle available for rental in place of the damaged rented auto.
   b) **We** will not pay for **loss** involving a **private passenger auto** rented or leased by anyone for or on behalf of the employer of an **insured**.

# Coverage Exclusions

**We** will not pay for **loss**:

1. To more than one:
   a) recording tape;
   b) compact disc; or
   c) other recording media.
2. To a container to be used for storing or carrying:
   a) recording tapes;
   b) compact discs; or
   c) other recording media.
3. To any device which is a:
   a) tape player;
   b) compact disc player;
   c) citizens band radio;
   d) two-way mobile radio;
   e) telephone; or
   f) any other device which records, emits, receives and/or transmits sound.

   This exclusion (3.) does not apply if the device is a permanent part of **your auto**. Permanent part means installed in a location used by an auto maker for such a device. If the device is not covered, its antenna and other parts are not covered.
4. To scanning monitor receivers used for radar detection, or any other device designed to detect the monitoring of speed.
5. To a camper or living quarters unit which can be mounted on or attached to a vehicle. **We** will pay the **loss** if:
   a) the unit is reported to **us**; and
   b) the required premium is paid;

   before the **loss**.
6. Caused by and limited to:
   a) wear and tear;
   b) freezing;
   c) mechanical or electrical breakdown or failure.

   This exclusion (6.) does not apply to Towing and Labor coverage.

B7

7. To any motor vehicle while used to carry persons or property for a fee. **Motor vehicles** used in shared-expense car pools are not considered as carrying persons for a fee.

8. To any **motor vehicle** due to an act of war.

9. To **your auto** which occurs:

   a) while **your auto** is being used in any illegal trade or transportation by:

      (1) **you;**

      (2) **a relative**; or

      (3) anyone else with **your** knowledge or permission; or

   b) due to confiscation of **your auto** by any law enforcement agency because of **your auto's** use in such activities.

# *Limits and Conditions of Payment*

## ACTUAL CASH VALUE

The limit of **our** coverage is the cash value of **your auto** or its damaged parts at the time of **loss.** To determine cash value, **we** will consider:

1. fair market value;

2. age; and

3. condition of the property;

at the time of **loss.** In addition to **our** payment of the **loss,** necessary and reasonable towing and storage will be paid to protect the auto from further damage.

## LOSS SETTLEMENT

At **our** option, **we** may:

1. pay **you** directly for a **loss;**

2. repair or replace **your auto** or its damaged parts with parts furnished either by original equipment manufacturers or non-original equipment manufacturers;

3. return stolen property at **our** expense and pay for any damage.

## AMOUNTS PAYABLE FOR TOWING AND LABOR COSTS

The limit of **our** coverage for a **loss** is limited to the amount shown in the Declarations. Limits apply as stated in the Declarations. Insuring more than one person or vehicle under this policy does not increase **our** limits.

## OTHER INSURANCE

If **you** have other insurance that covers any **loss,** **we** will pay only **our** share of the **loss.** **Our** share is **our** proportion of the total insurance collectible for the **loss.** For **loss** to **motor vehicles** other than **your auto,** **we** will pay only the insured **loss** not covered by other insurance.

# *Coverage Condition*

## AUTO RECOVERY

When an insured auto which has been stolen or abandoned is located, **we** have the right to take it into **our** care to keep it safe.

B8

# Loss Payable Clause

This clause applies to the Comprehensive and Collision coverages provided by this policy. It protects the lienholder named in the policy Declarations.

Payment for **loss** will be made according to the interest of the **policyholder** and lienholder. Payment may be made to both jointly, or to either separately. Either way, **the company** will protect the interests of both.

Protection of the lienholder's financial interest will not be affected by any change in ownership of the vehicle insured, nor by any act or omission by any person entitled to coverage under this policy. However, protection under this clause does not apply in any case of conversion, embezzlement, secretion or willful damaging or destruction of the vehicle committed by or at the direction of an **insured**.

If **the company** cancels or refuses to renew the policy, the lienholder will receive notice at least 10 days before protection of its interest will end. **The company** will also notify the lienholder if coverage under the policy is excluded for any named driver.

The lienholder shall notify **the company** upon learning of any change in ownership of the vehicle.

To the extent of payment to the lienholder, **the company** will be entitled to the lienholder's rights of recovery. **The company** will do nothing to impair the right of the lienholder to recover the full amount of its claim.

# Assignability

No interest in these coverages can be transferred without **our** written consent. However, if the **policyholder** dies, they will stay in force for the rest of the policy period. They will apply for anyone having proper temporary custody of **your auto**.



# *Auto Liability*

(for damage or injury to others caused by your auto)

## *Coverage Agreement*

### PROPERTY DAMAGE AND BODILY INJURY LIABILITY COVERAGE

1.  We will pay for damages for which **you** are legally liable as a result of an accident arising out of the:

    a)  ownership;

    b)  maintenance or use; or

    c)  loading or unloading;

    of **your auto**. A **relative** also has this protection. So does any person or organization who is liable for the use of **your auto** while used with **your** permission.

2.  Damages must involve:

    a)  **property damage**; or

    b)  **bodily injury**.

3.  We will pay such liability losses up to the limits stated in the Declarations. In addition to these limits and as to any covered damages, **we** will:

    a)  defend at **our** expense, with attorneys of **our** choice, any suit against the **insured**. **We** may settle or defend any claim or suit as **we** think proper.

    b)  pay:

        (1)  all expense incurred by **us**; and

        (2)  all costs levied against the **insured**;

        in any such suit.

    c)  pay premiums:

        (1)  of not more than $250 per **insured** for bail bond required because of an accident or traffic violation.

        (2)  for appeal bonds in defended suits and for bonds to release attached property. The amount of such bonds shall not be more than the limits of liability shown in the Declarations.

        Although paying such premiums, **we** are not required to apply for or furnish such bonds.

    d)  pay post-judgment interest on all damages awarded. **We** will not pay interest that accrues after such time as **we** have:

        (1)  paid;

        (2)  formally offered; or

        (3)  deposited in court;

        the amount for which **we** are liable under this policy.

    e)  pay expenses incurred by an **insured** for emergency medical aid to others at the time of accident.

    f)  pay all reasonable expenses incurred by an **insured** at **our** request, but not more than $50 per day for loss of earnings.

4.  After the limits of this coverage have been paid, **we** will not defend any suit or pay any claim or judgment.

B10

Rev. 5-1-98

# *Coverage Extensions*

## USE OF TRAILERS

1. This coverage applies to the use of a trailer by:
   a) **you;**
   b) a **relative;** or
   c) someone else with your permission.

2. The trailer must be:
   a) designed for use with a **private passenger auto;** and
   b) used with a vehicle that is insured under this coverage.

3. The trailer must not be used for business purposes with a vehicle that's not a **private passenger auto.**

## USE OF OTHER MOTOR VEHICLES

This coverage also applies to certain other **motor vehicles as** follows:

1. A **motor vehicle you** do not own, while it is used in place of **your auto** for a short time. **Your auto** must be out of use because of:
   a) breakdown;       c) servicing; or
   b) repair;          d) loss.

2. A four-wheel **motor vehicle** newly acquired by **you.** This coverage applies only during the first 30 days you own the vehicle unless it replaces **your auto.** If the newly acquired vehicle does not replace **your auto,** all household vehicles owned by you must be insured by **us** or an affiliate for this extension of coverage to apply.

   **We** provide this coverage only if you do not have other collectible insurance. You must pay any added premium resulting from this coverage extension.

3. A **motor vehicle** owned by a non-member of **your** household and not covered in item 1. of this section.
   a) This applies only to policies issued to persons (not organizations) and while the vehicle is being used by **you** or a **relative.** It protects the user, and any person or organization, except as noted below in b), who does not own the vehicle but is legally responsible for its use.
   b) This does not apply to losses involving a **motor vehicle:**
      (1) used in the business or occupation of **you** or a **relative** except a **private passenger auto** used by you, your chauffeur, or your household employee;
      (2) owned, rented or leased by an employer of an **insured;**
      (3) rented or leased by anyone for or on behalf of an employer of an **insured;** or
      (4) furnished to **you** or a **relative** for regular use. Furnished for regular use does not include a **motor vehicle** rented from a rental company for less than 28 days.

## FINANCIAL RESPONSIBILITY

**We** will adjust this policy to comply:

1. With the financial responsibility law of any state or province which requires higher liability limits than those provided by this policy.

2. With the kinds and limits of coverage required of non-residents by any compulsory **motor vehicle** insurance law, or similar law.

However, any loss payment under this coverage will be made only over and above any other collectible **motor vehicle** insurance. In no case will anyone be entitled to duplicate payments for the same **loss.**

# Coverage Exclusions

A. This coverage does not apply to:

   1.  a)  Any person for any occurrence arising out of the operation of an auto:

|  |  |
|---|---|
| (1) repair shop; | (3) sales agency; or |
| (2) public garage or parking place; | (4) service or maintenance facility. |

       b)  However, this exclusion does not apply to:

          (1) **you**;

          (2) a **relative**; or

          (3) a partner, employee, or agent of **you** or a **relative**;

        with regard to the use of **your auto**.

   2.  **Property damage** caused by any **insured**:

       a)  to a motor vehicle that is owned or operated by, or in the custody of, that **insured**; or

       b)  to any other property that is owned by or in the custody of any **insured** or anyone occupying **your auto**. This exclusion does not apply to a:

          (1) rented home; or

          (2) rented private garage.

   3.  **Bodily injury** to any person eligible to receive any benefits required to be provided or voluntarily provided by any **insured** under a:

       a)  workers' compensation;

       b)  unemployment compensation;

       c)  non-occupational or occupational disease;

       d)  disability benefits;

       or any similar law.

   4.  **Bodily injury** to an employee of any **insured** while engaged in employment. However, it does cover an employee at **your** home who is not, or is not required to be, covered by any workers' compensation law.

   5.  The United States of America or any of its agencies. It also does not apply to any employee of the United States of America or any of its agencies while such person is acting within the scope of his or her office or employment and the provisions of the Federal Tort Claims Act apply.

   6.  Any person protected under nuclear energy liability insurance. This exclusion applies even if that insurance has been exhausted.

B. This coverage does not apply, with regard to any amounts above the minimum limits required by the Delaware Financial Responsibility law as of the date of the loss, to:

   1.  **Property damage** or **bodily injury** caused intentionally by or at the direction of an **insured**, including willful acts the result of which the **insured** knows or ought to know will follow from the **insured's** conduct.

   2.  Use of any **motor vehicle** to carry persons or property for a fee. **Motor vehicles** used in shared-expense car pools are not considered as carrying persons for a fee.

# Limits and Conditions of Payment

## AMOUNTS PAYABLE FOR LIABILITY LOSSES

Our obligation to pay Property Damage or Bodily Injury Liability losses is limited to the amounts per person and per occurrence stated in the Declarations. The following conditions apply to these limits:

1. The limit shown:

    a)  for Property Damage Liability is for all **property damage** in one occurrence.   B12

01788

*19000020752A733816

b) for Bodily Injury Liability for any one person is for all legal damages, including all derivative claims, claimed by anyone arising out of and due to **bodily injury** to one person as a result of one occurrence.

The per-person limit is the total amount available when one person sustains **bodily injury**, including death, as a result of one occurrence. No separate limits are available to anyone for derivative claims, statutory claims, or any other claims made by anyone arising out of **bodily injury**, including death, to one person as a result of one occurrence.

c) for Bodily Injury Liability for each occurrence is the total limit of **our** liability for all legal damages when two or more persons sustain **bodily injury**, including death, as a result of one occurrence. No separate limits are available to anyone for derivative claims, statutory claims, or any other claims arising out of **bodily injury**, including death, to two or more persons as a result of one occurrence. This total limit is subject to the limit for any one person.

2. Liability limits apply as stated in the Declarations. The insuring of more than one person or vehicle under this policy does not increase **our** liability limits.

3. In any loss covered under items 2. and 3. of "USE OF OTHER MOTOR VEHICLES," the highest liability limit applicable to any one vehicle on this policy will apply.

4. A **motor vehicle** and attached trailer are considered one vehicle for Auto Liability coverage.

## OTHER INSURANCE

1. In any loss involving the use of **your auto**, **we** will be liable for only **our** share of the loss if there is other collectible liability insurance.   **Our** share is **our** proportion of the total insurance limits for the loss.

2. For losses covered under "USE OF OTHER MOTOR VEHICLES," **our** coverage is excess over any other collectible:

   a) insurance;

   b) self insurance;

   c) proceeds from a governmental entity; or

   d) other sources of recovery.

If more than one policy issued by **us** or an affiliated company applies on an excess basis to the same loss, **we** will pay only up to the highest limit of any one of them.

# *Assignability*

No interest in this coverage can be transferred without **our** written consent.  However, if the **policyholder** dies, the Liability coverage will stay in force for the rest of the policy period for:

1. Anyone having proper temporary custody of **your auto** until a legal representative is appointed; and

2. The appointed legal representative.



# *No-Fault*

(Delaware Motorists Protection Act)

## ADDITIONAL DEFINITIONS APPLICABLE TO THESE COVERAGES

For purposes of these coverages only:

1. "MOTOR VEHICLE" includes a trailer used with it.

2. "LOSS OF EARNINGS" means employment income actually lost, net of taxes, if the **bodily injury** prevents the insured from working, including earnings from self-employment. **Loss of earnings** does not include any loss after the death of an injured person.

3. "HOUSEHOLD MEMBER" means a **relative** or any other person who regularly lives in **your** household and is economically dependent upon **you**.

4. "PEDESTRIAN" means a person who is not occupying a motor vehicle at the time **bodily injury** occurs.

5. "EXPERIMENTAL TREATMENT" means medical treatment that is experimental in nature which is not accepted as effective therapy by:

   a) the state medical association or board;

   b) an appropriate medical specialty board;

   c) the American Medical Association;

   d) the Surgeon General; or

   e) the Federal Food and Drug Administration.

6. "USUAL, CUSTOMARY AND REASONABLE CHARGES" means charges for services or supplies covered under this policy, which are:

   a) usual and customary in the place where provided; and

   b) not more than what would have been charged if the injured person had no insurance; and

   c) not **Experimental Treatment**.

7. "MEDICALLY NECESSARY" means a service or procedure which is necessary, appropriate and consistent for the symptoms, diagnosis or treatment of a condition of injury or sickness within generally accepted current standards of good medical practice. The fact that any particular doctor may prescribe, order, recommend or approve a service or procedure does not, in itself, make the service or procedure **medically necessary**.

8. "UTILIZATION MANAGEMENT OR REVIEW" means cost and utilization containment activities designed to determine **usual, customary and reasonable charges** for **medically necessary** services provided to an **insured**. These activities include, but are not limited to medical bill auditing and case management.

# *Coverage Agreement*

Personal Injury Protection coverage and coverage for Damage to Property Other Than a Motor Vehicle are provided in accordance with Section 2118, Subchapter 1, Chapter 21, Title 21 of the Delaware Code.

## PERSONAL INJURY PROTECTION COVERAGE

Under this coverage, **we** will pay benefits for accidental **bodily injury** of an **insured** arising out of the:

1. ownership;

2. maintenance; or

3.  use;

of a **motor vehicle** as a motor vehicle. We will pay regardless of fault in the accident. Benefits include:

- Medical Expenses
- Funeral Expenses
- Loss of Earnings
- Substitute Service Expenses

### YOU AND A HOUSEHOLD MEMBER

**You** and **household members** are covered for **bodily injury:**

1.  while **occupying a motor vehicle;** or
2.  as a **pedestrian** if injury involves a **motor vehicle.**

However, if injured while **occupying** or by involvement with any **motor vehicle** other than **your auto,** this coverage will apply only if the other motor vehicle is not insured under the Delaware Motorists Protection Act.

### OTHER PERSONS

Any other person is covered:

1.  while **occupying your auto** anywhere this coverage is in force; or
2.  as a **pedestrian,** if such person is hit by **your auto** in Delaware.

### BENEFITS

We will pay benefits up to a total of $15,000 for **bodily injury per insured** in one accident, and up to $30,000 in total if two or more **insureds** are injured in one accident. In case of **bodily injury** to you or a **household member,** we will subtract any **deductible** amount selected from the amount otherwise payable.

Within the $15,000 / $30,000 total limits, Personal Injury Protection benefits are payable as follows:

### Medical Expenses

We will pay **usual, customary and reasonable charges** for Medical Expenses incurred within two years of the accident for **medically necessary** treatment and care. This includes ambulance, medical, hospital, surgical, x-ray, professional nursing and dental services, and prosthetic devices. It also includes **medically necessary** treatment and care in accordance with a recognized religious method of healing.

Medical Expenses for dental or surgical procedures incurred later than two years after the accident will be payable. These expenses must be related to any dental or surgical procedures that were determined within the two years to be **medically necessary,** but impractical or impossible to perform in that period. However, we must receive written verification of the need from a qualified medical practitioner within the two-year period. At our option, we will pay such expenses either when we receive verification or when they are incurred.

We may apply **utilization management** or review to determine:

1.  **usual, customary and reasonable charges;** and/or
2.  **medically necessary** services.

### Funeral Expenses

We will also pay **usual, customary and reasonable charges** for Funeral Expenses, including all customary charges and the cost of a burial plot, up to $5,000 per **insured.** Such expenses must be incurred within two years of the accident.

### Loss of Earnings

We will pay for **Loss of Earnings** incurred within two years of the accident. The **insured** has the duty to reduce this loss by seeking other substitute employment that the **insured** is physically capable of performing.

We will also pay **Loss of Earnings** incurred later than two years after the accident. However, the **Loss of Earnings**:

1.  must be related to dental or surgical procedures that were determined within the two years to be **medically necessary**, but impractical or impossible to perform in that period;

2.  must be verified, in writing, within two years of the accident;

3.  shall be limited to the period of time necessary to recover from such dental or surgical procedures but not to exceed 90 days;

4.  must be verified, in writing, by a qualified medical practitioner that the **insured is unable to** work due to the dental or surgical procedures being performed; and

5.  is payable, at our option, either when we receive verification or when it is incurred.

**Substitute Service Expenses**

We will pay reasonable Substitute Service Expenses incurred within two years of the accident for necessary personal services the **insured** would have performed had the **insured** not been injured.

**ADDED DEATH BENEFIT (Seat Belt)**

We will pay a single death benefit of $10,000 for any **insured** using an approved **motor vehicle** seat belt or child restraint system at the time of the accident. Death must occur within one year and as a direct result of the accident. This benefit is in addition to any other benefit provided by this coverage for funeral costs, survivors' loss, or death.

**EXCLUSIONS – PERSONAL INJURY PROTECTION**

We will not pay Personal Injury Protection benefits for **bodily injury**:

1.  to **you** or a **household member** involving a **motor vehicle** which is:

    a)  owned; or

    b)  available for regular use;

    by **you** or a **household member** if such **motor vehicle** is not insured under this policy.

2.  to anyone while operating **your** auto without **your** expressed or implied permission.

3.  to anyone whose conduct contributed to his or her own **bodily injury** if that person:

    a)  intentionally caused self-injury; or

    b)  was injured while committing a felony.

4.  to anyone while **occupying** a **motor vehicle** located for use as a residence or premises.

5.  resulting from any act of war, or as a result of any hazardous quality of nuclear material.

**OTHER INSURANCE – PERSONAL INJURY PROTECTION**

The following provisions apply to circumstances in which Personal Injury Protection benefits are available from more than one policy or company:

1.  If other insurance available under the Delaware Motorists Protection Act applies to a loss, **we** will be liable only for **our** proportional share of the loss. That share will be determined by **our** proportion of the total coverage limits provided under this and the other available coverage.

2.  If **bodily injury** results from **occupying** or being hit by any vehicle that is not insured as required under the Delaware Motorists Protection Act, **we** will pay covered benefits only over and above other similar auto insurance that is available under another policy.

3.  If a non-resident of Delaware sustains **bodily injury** while **occupying your** auto outside Delaware, **we** will pay covered benefits only over and above other similar auto insurance that is available under another policy.

B16

## DAMAGE TO PROPERTY OTHER THAN A MOTOR VEHICLE

**We** will pay for accidental damage done by **your auto** to property other than a **motor vehicle.** The coverage applies only to accidents in Delaware. Maximum amount payable for all damage to property resulting from one accident is $10,000.

### EXCLUSIONS – DAMAGE TO PROPERTY OTHER THAN A MOTOR VEHICLE

This coverage does not apply:

1. to any property owned, rented, or leased by **you** or a **household member.**

2. to any property in or upon any **motor vehicle.**

3. to damage to aircraft, watercraft, or self-propelled construction equipment and other self-propelled mobile equipment, or to any property in or upon any such craft or equipment.

4. to property damage resulting from any act of war, or from radioactive contamination.

5. while **your auto:**

   a) is used to carry persons or property for a fee. Shared-expense car pools are not considered as carrying persons for a fee.

   b) is located for use as a residence or premises.

   c) is used without **your** expressed or implied permission.

### OTHER INSURANCE – DAMAGE TO PROPERTY OTHER THAN A MOTOR VEHICLE

This coverage does not apply if there is other valid and collectible insurance covering the loss, unless **you** or someone else who was operating **your auto** would be legally liable for the loss. If agreement cannot be reached on the question of legal liability, the question will be resolved by arbitration.

# *Limits and Conditions of Payment*

## BENEFITS PAYABLE

1. The insuring of more than one person or **motor vehicle** under Personal Injury Protection and Damage to Property Other Than a Motor Vehicle does not increase **our** liability, as described in these coverages, to any one person in any one accident.

2. Regardless of the number of Nationwide policies or coverages that apply, the maximum Added Death Benefit payable, as a result of using an approved **motor vehicle** seat belt or child restraint system, under all policies or coverages combined is $10,000 per **insured.**

## PROMPT CLAIMS PAYMENTS

Payments of expenses under Personal Injury Protection coverage shall be made as soon as practical after they are received during the two year period after the accident. Expenses which are incurred within the two years but which have been impractical to present to **us** within the two years shall be paid if presented within 90 days after the end of the two year period.

## DUPLICATE PAYMENT

**We** will make no duplicate payment to or for any **insured** for the same element of loss.

# *Insured Persons' Duties*

1. The **insured** or someone on the **insured's** behalf will report any accident to **us** in writing as soon as practicable. This report will:

   a) identify persons injured and property damaged; and

   b) give reasonably-obtainable information about the time, place, and circumstances of the accident.

2. As soon as practicable, the **insured** or someone on the **insured's** behalf will submit proof of any Personal Injury Protection claim to **us,** under oath if **we** request.



# *Uninsured Motorists*

(for bodily injury and property damage caused by uninsured and underinsured motorists)

## ADDITIONAL DEFINITIONS APPLICABLE TO THIS COVERAGE

"UNINSURED MOTOR VEHICLE" — See definition in COVERAGE AGREEMENT section.

"PROPERTY DAMAGE" — See definition in COVERAGE AGREEMENT section.

# *Coverage Agreement*

## YOU AND A RELATIVE

**We** will pay damages, including derivative claims, which are due by law to **you** or a **relative** from the owner or driver of an **uninsured motor vehicle** because of **bodily injury** suffered by **you** or a **relative**, and because of **property damage**. Damages must result from an accident arising out of the:

1. ownership;
2. maintenance; or
3. use;

of the **uninsured motor vehicle**.

## OTHER PERSONS

**We** will also pay damages, including derivative claims, which are due by law to other persons who:

1. are not a named insured or an insured household member for Uninsured Motorists coverage under another policy; and
2. suffer **bodily injury** while occupying:
   a) **your auto**.
   b) a **motor vehicle you** do not own, while it is used in place of **your auto** for a short time. **Your auto** must be out of use because of:
      (1) breakdown;
      (2) repair;
      (3) servicing;
      (4) loss; or
      (5) destruction.
   c) a four-wheel **motor vehicle** newly acquired by **you** to which the Auto Liability coverage of this policy applies. The coverage applies only during the first 30 days **you** own the vehicle, unless it replaces **your auto**.
   d) any other **motor vehicle** while it is being operated by **you** or a **relative**. This extension applies only in policies issued to persons (not organizations). However, the vehicle must not be:
      (1) owned by **you** or a **relative**; or
      (2) furnished to **you** or a **relative** for regular use.

## PROPERTY COVERED

Coverage for **property damage** applies to the following property:

1. **your auto**, including its loss of use.

B18

2. **your auto's** contents which are owned by **you** or a **relative.**

3. **your auto's** contents which are owned by any other person. However, such contents are covered only while their owner is occupying **your auto.**

4. property **you** or a **relative** own while it is contained in any of the following:

   a) a **motor vehicle you** do not own, while it is used in place of **your auto** for a short time. **Your auto** must be out of use because of:

      (1) breakdown;

      (2) repair;

      (3) servicing;

      (4) loss; or

      (5) destruction.

   b) any other **motor vehicle** while it is being operated by **you** or a **relative.** However, the vehicle must not be:

      (1) owned by **you** or a **relative;** or

      (2) furnished to **you** or a **relative** for regular use.

## RECOVERY

1. Before recovery, **we** and the **insured** must agree on two points:

   a) whether there is a legal right to recover damages from the owner or driver of an **uninsured motor vehicle;** and if so,

   b) the amount of such damages.

   If agreement can't be reached, the matter may go to arbitration. Refer to the GENERAL POLICY CONDITIONS for arbitration provisions.

2. Questions between the injured party and **us** regarding such person's entitlement to Uninsured Motorists coverage, or the limits of such coverage, are not subject to arbitration and shall be decided by a court of law.

3. Any judgment against the uninsured (including underinsured) will be binding on **us** only if it has **our** written consent.

## DEFINITIONS

For purposes of this coverage only:

1. An **uninsured motor vehicle** is:

   a) one for which there is no auto liability bond, insurance or other security in effect, applicable to the vehicle owner, operator, or any other liable person or organization, at the time of the accident.

   b) one which is underinsured. This is a **motor vehicle** for which bodily injury liability coverage or other security or bonds are in effect; however, their total amount is less than the limits of this coverage. See the Declarations for those limits.

   c) one for which the insuring company denies coverage or becomes insolvent.

   d) a "hit-and-run" **motor vehicle** which causes **bodily injury** to an **insured** or **property damage** to property of the **insured. Bodily injury** or **property damage** must be caused by physical contact of the "hit-and-run" **motor vehicle** with the **insured** or with an **insured motor vehicle,** or by a non-contact vehicle.

   The driver and the owner of the "hit-and-run" vehicle must be unknown. The **insured** must report the accident to the police or proper governmental authority. **We** must be notified within 30 days, or as soon as practicable, that the **insured** or his legal representative has a legal action for damages arising out of the accident. This notification must include facts supporting the action. If **we** request, any **motor vehicle** the **insured** was **occupying** at the time of accident must be made available for **our** inspection.

B19

2.  We will not consider as an **uninsured motor vehicle**:

    a)  a **motor vehicle** that is "self-insured" under any law;

    b)  any **motor vehicle** owned by a government unit or agency;

    c)  any vehicle in use as a residence or premises;

    d)  any equipment or vehicle designed for use mainly off public roads except while on public roads;

    e)  any **motor vehicle** insured under the liability coverage of this policy; nor

    f)  any **motor vehicle** owned by, or furnished for the regular use of, **you or a relative**.

3.  **Property damage** means:

    a)  destruction of property; and

    b)  damage or injury to it.

# Coverage Exclusions

This Uninsured Motorists insurance does not apply:

1.  to use of any **motor vehicle** by an **insured** to carry persons or property for a fee. **Motor vehicles** used in shared-expense car pools are not considered as carrying persons for a fee.

2.  to use of any **motor vehicle** by an **insured** without the owner's permission.

3.  if the **insured** or legal representative settles, without **our** written consent, with any party who may be liable and the settlement prejudices **our** right to recover payment from that liable party.

4.  to **bodily injury** suffered while occupying a **motor vehicle** owned by **you or a relative**, but not insured for Auto Liability coverage under this policy. It also does not apply to **bodily injury** from being hit by any such **motor vehicle**.

5.  to directly or indirectly benefit any workers' compensation or disability benefits carrier, or any person or organization qualifying as a "self-insurer" under a workers' compensation, disability benefits or similar laws.

6.  to the first $250 of damage to the property of each **insured** as the result of one accident.

7.  to property contained in or struck by a **motor vehicle** that is owned by **you or a relative** but is not insured under this coverage.

8.  to directly or indirectly benefit any insurer of property.

# Insured Persons' Duties

1.  In making a **bodily injury** claim under this coverage, the **insured** must:

    a)  submit written proof of the claim to **us** as soon as practicable. It must be under oath, if required. It must include details of:

        (1)  the nature and extent of injuries;

        (2)  treatment; and

        (3)  any other facts which could affect the amount of payment.

    b)  provide all facts of the accident and the name of all witnesses.

    c)  answer questions under oath as often as **we** require.

    d)  be examined by doctors chosen by **us** as often as **we** require. At **our** request, the injured person or his legal representative must promptly authorize **us** to:

        (1)  speak with any doctor who has provided treatment;

        (2)  read all medical history and reports of the injury;

B20

01793

*1B00020792A733616*

    (3) obtain copies of wage and medical reports and records; and

    (4) obtain copies of all medical bills as they are incurred.

2. In making a **property damage** claim under this coverage, the **insured** must:

  a) submit proof of the loss to us within 60 days after the loss occurs, unless **we** grant an extension of this time in writing. The proof of loss must be a sworn statement of:

    (1) the interest of the **insured** and all others in the damaged property;

    (2) any encumbrances on the damaged property;

    (3) the damaged property's cash value at time of loss;

    (4) the time, place, cause, and amount of loss; and

    (5) the kind and amount of all other insurance covering the damaged property.

  b) make damaged property available for **our** inspection, at **our** request.

3. After notice of claim, **we** may require the **insured** to take legal action against any liable party.

4. An **insured** may bring legal action against the other party for **bodily injury** or **property damage**. A copy of any paper served in this action must be sent to **us** at once.

5. The **insured** must:

  a) obtain **our** written consent to:

    (1) settle any legal action brought against any liable party; or

    (2) release any liable party.

  b) preserve and protect **our** right to subrogate against any liable party.

# Trust Agreement

This applies to the extent of any payment **we** make under this coverage.

1. **We** will have first right to any amount the **insured** receives from any liable party. The **insured** must:

  a) hold in trust for **us** his right to recover against any such party;

  b) do whatever is proper to secure such rights, and do nothing to prejudice them;

  c) furnish **us** all papers in any suit the **insured** files;

  d) do what is necessary to recover for us payments made under this coverage; and

  e) repay **us** out of any recovery for any payments we have made and any expenses **we** have incurred in the action.

2. **Our** payment of a claim may result from the insolvency of an insurer. If so, **we** have the right to recover from the insurer, but not its insured.

3. **Our** rights to recover against any liable party or an insolvent insurer are limited to the amount of coverage required by the financial responsibility law.

# Limits and Conditions of Payment

## AMOUNTS PAYABLE FOR UNINSURED MOTORISTS LOSSES

**Our** obligation to pay Uninsured Motorists – Bodily Injury and Uninsured Motorists – Property Damage losses is limited to the amounts per person and per occurrence stated in the Declarations. The following conditions apply to these limits:

1. The limit shown:

  a) for Uninsured Motorists – Bodily Injury for any one person is for all covered damages, including all derivative claims, claimed by anyone arising out of and due to **bodily injury** to one person as a result of one occurrence.

B21

The per-person limit is the total amount available when one person sustains **bodily injury**, including death, as a result of one occurrence. No separate limits are available to anyone for derivative claims, statutory claims, or any other claims made by anyone arising out of **bodily injury**, including death, to one person as a result of one occurrence.

b) for Uninsured Motorists – Bodily Injury for each occurrence is the total limit of **our** liability for all covered damages when two or more persons sustain **bodily injury**, including death, as a result of one occurrence. No separate limits are available to anyone for derivative claims, statutory claims, or any other claims arising out of **bodily injury**, including death, to two or more persons as a result of one occurrence. This total limit is subject to the limit for any one person.

c) for Uninsured Motorists – Property Damage is for all covered damages claimed by one or more **insureds** for **property damage** as a result of one occurrence.

2. Coverage applies as stated in the Declarations. The insuring of more than one person or vehicle under this policy does not increase our Uninsured Motorists payment limits. In no event will any **insured** be entitled to more than the highest per-person Uninsured Motorists – Bodily Injury limit on any one policy issued by **us** or an affiliated company.

3. **We** will pay benefits under this coverage only over and above any that would be available, except for the application of a deductible, under any Personal Injury Protection or Damage to Property Other Than a Motor Vehicle coverages of this policy.

4. Damages payable will be reduced by any sums paid by or for any liable parties, and by any sums paid or payable under workers' compensation, disability benefits, or similar laws.

5. Any payment under this coverage to or for an **insured** will reduce the amount of damages the **insured** may be entitled to recover under the Bodily Injury or Property Damage Liability coverages of this policy.

6. Any payment to or for the **insured** under this coverage will be reduced by any amount paid or payable under any Medical Payments coverage provided by endorsement to this policy.

7. **We** will pay for loss or damage under this coverage only over and above any that is paid or payable under any Physical Damage coverage provided by this policy.

8. For the amount of this coverage above the minimum financial responsibility limits, no payment will be made until the limits of all other bodily injury liability insurance and bonds that apply have been exhausted by payments or judgments.

## OTHER INSURANCE

1. If there is other insurance for **bodily injury** suffered by an **insured** while **occupying a motor vehicle** other than **your auto**, our coverage is excess over any other collectible:

a) insurance;

b) self insurance;

c) proceeds from a governmental entity; or

d) sources of recovery.

2. Except as stated above, if there is other insurance similar to this coverage for **bodily injury** under any other policy, **we** will be liable for only **our** share of the loss. **Our** share is **our** proportion of the total insurance limits for the loss.

3. With respect to **property damage**, **we** will pay the insured loss not covered by other insurance.

4. In any event, if more than one policy issued by **us** or an affiliated company applies on an excess basis to the same loss, **we** will pay only up to the highest limit of any one of them.

## DUPLICATE PAYMENT

**We** will make no duplicate payment to or for any **insured** for the same element of loss.  B22

*Uninsured Motorists*

# *Assignability*

No interest in this coverage can be transferred without **our** written consent. However, if the **policyholder** dies, this coverage will stay in force for the rest of the policy period. It will apply to anyone having proper custody of **your auto**.

B23

3. Whenever **we** reasonably request, the **insured** will authorize and enable **us** to obtain medical reports, copies of records, and **loss of earnings** information.

4. The **insured** will submit to examinations by physicians **we** select, at **our** expense, as often as **we** reasonably require.

5. If the **insured** or a legal representative brings legal action to recover damages for **bodily injury** from any party, a copy of the summons and complaint or other process served must be forwarded to **us** as soon as practicable.

6. Anyone claiming damage to property will protect the property from further loss. **We** will pay reasonable expenses involved in such protection. **We** will not pay for additional damage that results from failure to protect the property.

7. For damage to property, the sworn proof of property damage loss will be submitted to **us** within 90 days after loss, in whatever form and containing all information **we** reasonably request. Damaged property will be made available to us to examine when **we** request, and the claimant will submit to examination under oath.

# *Assignability*

No interest in these coverages can be transferred without **our** written consent. However, if the **policyholder** dies, these coverages will stay in force for the rest of the policy period for those persons who were entitled to coverage at the time of death.

01791

*1B00020752A733616

B24

Rev. 3-1-97

 *General Policy Conditions*

**We, you,** and anyone insured by this policy must do certain things in order for the provisions of the policy to apply. The following are policy conditions:

### 1. HOW YOUR POLICY MAY BE CHANGED

a) Any terms of this policy which may be in conflict with statutes of the state in which the policy is issued are hereby amended to conform.

b) Any **insured** will automatically have the benefit of any extension or broadening of coverage in this policy, as of the effective date of the change, provided it does not require more premium.

c) No other changes may be made in the terms of this policy except by endorsement or policy revision.

d) The premium for each coverage is based on information in **our** possession. Any change or correction in this information will allow **us** to make an adjustment of the premium as of the date the change is effective.

e) The **policyholder** has a duty to notify **us** as soon as possible of any change which may affect the premium or the risk under this policy. This includes, but is not limited to, changes in:

    (1) the principal garaging address of the insured vehicle(s), which must be reported to **us** within 30 days of the date the address change becomes effective.

    (2) drivers;

    (3) use of the insured vehicle(s); or

    (4) desired coverages, **deductibles,** or limits.

### 2. OPTIONAL PAYMENT OF PREMIUM IN INSTALLMENTS

The **policyholder** may pay the premium for this policy in installments, under terms and conditions approved where required by the Department of Insurance. For each separate installment payment there is an installment service charge. **Your** agent can provide more information.

### 3. RENEWAL

This policy is written for a six-month policy period. **We** will renew it for successive policy periods, subject to the following conditions:

a) Renewal will be in accordance with policy forms, rules, rates and rating plans in use by **us** at the time.

b) All premiums or premium installment payments must be paid when due.

c) Prior to the expiration of a policy term for which premium has been paid, **we** will mail a notice to the **policyholder** for the premium required to renew or maintain the policy in effect. **We** will mail this notice to the address last known to **us.**

### 4. NON-RENEWAL

a) At the end of each six-month period after the effective date of this policy, **we** will have the right to refuse to renew the entire policy or any of its coverages for reasons permitted by Delaware Law.

b) If **we** elect not to renew, **we** will mail or deliver written notice to the **policyholder** 30 days in advance of the date **our** action will take effect. Mailing of this notice to the last known address or delivery of it to the **policyholder** will be considered proof of notice.

c) For nonpayment of renewal premium, coverage will terminate at the end of the last policy period for which premium was paid.

5. **CANCELLATION DURING POLICY PERIOD**

   a) The **policyholder** may cancel this policy or any of its coverages by mailing notice to **us** of the future date of cancellation desired. Based on **our** "short-rate table," **we** will retain premium for the days covered, plus a percentage-figured charge for cancelling at **your** request during the policy period.

   b) Up to the time this policy or any coverage has been in effect 60 days, **we** have unlimited right of cancellation. **We** may cancel by mailing notice to the **policyholder** 10 days prior to the effective date of cancellation. While the date **we** mail this notice must be within 60 days, the date of cancellation need not be.

   c) After any coverage of this policy has been in force 60 days, **our** right to cancel such coverage during the policy period is limited.

      (1) **We** may cancel:

         (a) If premiums or premium installment payments are not paid when due, whether payable directly to **us** or through any premium finance plan.

         (b) for the reasons permitted by Delaware law.

      (2) **We** must mail or deliver notice to the **policyholder** 30 days prior to the effective date of cancellation, unless **we** are cancelling for nonpayment of premium. To cancel for nonpayment, **we** will mail or deliver notice to the **policyholder** 10 days prior to the termination of coverage.

   d) In any case of cancellation by **us** under items b) or c) above, **our** mailing of notice to the **policyholder's** last known address will constitute proof of notice as of the date **we** mail it. **We** will retain premium for days covered during the policy period.

   e) Premium refund, if any due, will be made as soon as practicable after the date of cancellation. Mailing or delivery of **our** check will constitute tender of refund. If the **policyholder** requests cancellation of this policy, Delaware law requires that the **policyholder** complete a "Request for Cancellation" form before a refund can be issued.

6. **IF YOU BECOME BANKRUPT**

   Bankruptcy or insolvency of any **insured** will not relieve **us** of any obligation under the terms of this policy.

7. **UNAUTHORIZED USE OF OTHER MOTOR VEHICLES**

   Protection in this policy does not apply to other **motor vehicles** which any **insured**:

   a) uses without a reasonable belief that the **insured** is entitled to do so.

   b) has stolen.

   c) knows to have been stolen.

8. **FRAUD**

   This policy does not cover any loss to or by any **insured** if any element of fraud or fraudulent action is engaged in by that **insured** in connection with the loss.

9. **LEGAL ACTION LIMITATIONS**

   No legal action may be brought against **the company** concerning any of the coverages provided in this policy until the **insured** has fully complied with all terms of the policy.

   Under the liability coverages of this policy, no legal action may be brought against **the company** until judgment against the **insured** has been finally determined after trial. This policy does not give anyone the right to make **us** a party to any action to determine the liability of an **insured**.

   Any arbitration or legal action against **the company** must begin within a certain time period. Arbitration for claims under Uninsured Motorists or Damage to Property Other Than a Motor Vehicle must be requested in writing, or the proper papers for any other legal action against **the company** must be filed, within the time limit allowed by law:

   a) for death actions if the claim involves death of an **insured**;

   b) for bodily injury actions if the claim involves injury to an **insured** but not death; or

c)  for property damage actions if the claim is for damage to property.

The laws of the state in which the accident occurred will determine these time limits.

10. **ARBITRATION**

a)  An **insured** or claimant may request arbitration of a claim under the following coverages:

(1)  Comprehensive;

(2)  Collision;

(3)  Loss of Use;

(4)  Property Damage Liability; or

(5)  Personal Injury Protection;

by submitting the request in writing to the Delaware Insurance Commissioner within 90 days from the date an offer of settlement or denial of coverage or liability has been made by us. Arbitration will be according to procedures set forth in state law. The losing party may appeal an arbitration decision to the Superior Court by filing the appeal within 30 days after the decision is rendered.

b)  In any case of arbitration of an Uninsured Motorists claim, or a claim for Damage to Property Other Than a Motor Vehicle, the following arbitration procedure will be used:

(1)  Each party–the **insured** or claimant, and **the company**–will select a competent and disinterested arbitrator. The two so selected will select a third.

(2)  If the third arbitrator is not agreed upon within 30 days, the **insured**, claimant, or **we** may request a judge of a court of record to name one. The court must be in the county and state in which arbitration is pending.

(3)  Each party will pay its chosen arbitrator. Each will pay half of the expenses for the third, and half of all other expenses of arbitration. Any fees of expert witnesses or attorneys will be paid by the party who hires them.

(4)  Unless it is agreed otherwise, arbitration will take place in the county and state in which the **insured** or claimant lives at the time of the accident. Arbitration will be subject to the usual rules of procedure and evidence in such county and state. The arbitrators will determine questions in dispute. A written decision on which two arbitrators agree shall be considered as the award.

(5)  As an alternative to the procedures outlined in items (1) through (4) above, if the **insured** or claimant and **we** agree, arbitration will be by rule of the American Arbitration Association.

(6)  The **insured** or claimant and **the company** will not be bound by the award determined through arbitration. Judgment upon award may be entered in any court having jurisdiction over it after such award is final and not appealed as provided herein.

(7)  When used, arbitration of uninsured, including underinsured motorists, claims is binding on the **insured** or claimant and **the company** only if neither the **insured** or claimant nor **the company** demand a trial within 60 days after an award. Trial will be in a court of competent jurisdiction. Trial will be on all issues of the award.

11. **SUBROGATION**

**We** have the right of subrogation under the:

a)  Physical Damage;

b)  Auto Liability;

c)  Personal Injury Protection;

d)  Damage to Property Other Than a Motor Vehicle; and

e)  Uninsured Motorists;

coverages in this policy. This means that after paying a loss to **you** or others under this policy, **we** will have the **insured's** right to sue for or otherwise recover such loss from anyone else who may be held liable. This right includes the **insured's** claims under any

workers' compensation law. Also, we may require reimbursement from the insured out of any settlement or judgment that duplicates our payments. These provisions will be applied in accordance with state law. Any insured will sign such papers, and do whatever else is necessary to transfer these rights to us, and will do nothing to prejudice them.

## 12. STATUTORY PROVISION

If this policy provides coverage for Personal Injury Protection and Damage to Property Other Than a Motor Vehicle, the entire policy provides coverage at least as extensive as that required by Subchapter 1, Chapter 21, Title 21 of the Delaware Code.

## 13. DIVIDENDS

The policyholder is entitled to any dividends which are declared by the Board of Directors and are applicable to coverages in this policy.

## 14. NON-SUFFICIENT FUNDS CHARGE

The company reserves the right to impose a fee for any premium payment that is unable to be processed due to non-sufficient funds, or if there are non-sufficient funds in an account that is being utilized for electronic funds transfer (EFT) payments. This is under the terms and conditions approved where required by the Department of Insurance.

## MUTUAL POLICY CONDITIONS

(Applicable only to policies issued by Nationwide Mutual Insurance Company—Nationwide Mutual Fire Insurance Company.)

If this policy is issued by Nationwide Mutual Insurance Company or Nationwide Mutual Fire Insurance Company, the policyholder is a member of the company issuing the policy while this or any other policy issued by one of these two companies is in force. While a member, the policyholder is entitled to one vote only—regardless of the number of policies issued to the policyholder—either in person or by proxy at meetings of members of said company.

The annual meeting of members of the Nationwide Mutual Insurance Company will be held at the Home Office at Columbus, Ohio, at 10 a.m. on the first Thursday of April. The annual meeting of members of the Nationwide Mutual Fire Insurance Company will be held at the Home Office at Columbus, Ohio, at 9:30 a.m. on the first Thursday of April. If the Board of Directors of either of the above companies should elect to change the time or place of meeting, that company will mail notice of the change to the policyholder at the address last known to it. The company will mail this notice at least 10 days in advance of the meeting date.

This policy is non-assessable, meaning that the policyholder is not subject to any assessment beyond the premiums the above companies require for each policy term.

IN WITNESS WHEREOF: Nationwide Mutual Insurance Company, Nationwide Mutual Fire Insurance Company, Nationwide Property and Casualty Insurance Company, or Nationwide General Insurance Company, whichever is the issuing company as shown in the Declarations, has caused this policy to be signed by its President and Secretary, and countersigned as may be required by a duly authorized representative of the company.

*Dennis W. Felick*
**Secretary**

*Richard D. Crabtree*
**President**



Nationwide Mutual Insurance Company ● Nationwide Mutual Fire Insurance Company
Nationwide Property and Casualty Insurance Company ● Nationwide General Insurance Company
Home Office: Columbus, Ohio 43215-2220

# UPDATING YOUR NATIONWIDE AUTO POLICY

It is important that you keep your auto policy up to date. The following instructions may prove helpful when receiving changes to your policy.

- The policy is divided into several parts such as a Table of Contents, Definitions, Physical Damage, Liability, Medical or No-Fault, Uninsured Motorists and General Policy Conditions. Endorsements are filed at the back of the policy.

- These parts are identified with an identifying letter and appropriate page numbers within the section (for example the Liability part would be identified as pages L1, L2, L3, L4).

- With any change of any of the parts of the policy, you will receive a new Table of Contents and the appropriate pages that are changed.

- To update your policy, you need only remove the plastic sleeve, remove the Table of Contents and the appropriate numbered page(s) to be replaced, insert the new Table of Contents and pages, and replace the sleeve.

- If your changes include an endorsement, simply add it to the back of the policy discarding any old endorsements with the same number. If the endorsement you receive is a new endorsement that replaces an older endorsement with a different number, you will be advised in the explanation of the changes that accompany the package.

- You are encouraged to read the accompanying explanation of the changes sent with each revision.

Thank you for choosing Nationwide for your auto insurance needs.

Claim # 5207A733616/0207030

| A06 | 52A733616 | | VEHICLE SCREEN | | | | | TODAY 02/08/03 |
|-----|-----------|---|---|---|---|---|---|---|

EAMES, THOMAS A                          FROM 09/22/02  TO   03/22/03
VEHICLE 2   ACTION                       RATE    HI      ADDTL   COST
VT MY MAKE SERIES      BODY STYLE    VEHICLE ID NUMBER    SYMBOL PER PI   AMOUNT  NEW
PP 92 FORD TAURUS L    OT OTHER      1FALP50U7NA277289    13  13 N  0     NO

ENG                PASSIVE                      COMMUTE   ANNL                MLT  SUB
SIZE  DAMAGE       RESTRAINT           USE      MILE/WK   MILE                CAR  CLSS
      N NONE       AF AIR BAG F        P                  10                  Y    00

RATED  BIRTH          MART      DRVR RES  YD  GOOD        DEF  CAR  VEH          RATE
DRIVER DATE     SEX STAT        TYPE CHLD ADLT STDT       DRVR POOL TIER  SNR   FCTR
  1    08/10/56  F   M          P    Y    N    N          N    N          N    0.80

COVERAGES
COMP    100      25.70          INSD
COLL    250      65.30          APIP
PD      50000    49.60          LOU     25/800    12.00
BI      100/300  117.50         T&L
DB                              CB
UMBI    100/300  82.00          PE
UMPD    10000    INCL
PIP     FULL     35.50

                          TOTAL    387.60

                                  INQUIRE  V3 (CH TO CHANGE)

PIP adjuster

~~Charlotte Lewis~~

302-325-8959

1-2 Bus days
lisa J Pepper
645-8337

Jeanesse.

- Rental Coverage - y needed

Rich Foskey
Field invest.
678-7667

Nationwide Ins
Linda Howard
877-724-3202
Cell-302-242-1063

B30





P.O. BOX 249 * NASSAU, DE  19969-0249 * *

June 13, 2003

WILSON, HALBROOK AND BAYARD
CLAYTON E BUNTING
PO BOX 690
GEORGETOWN, DE  19947

**CLAIMANT NAME :** Thomas Eames
**OUR INSURED :** Thomas Eames
**OUR CLAIM NUMBER :** 52 07 A  733616 02072003 01
**DATE OF LOSS :** 02-07-2003

This letter is to notify you that the above claimant, Thomas Eames , has exhausted his/her benefits under the PIP/ NO FAULT    portion of this insurance policy.  All future billings should be directed elsewhere. For this reason we will be unable to consider the recently submitted for June 4, 2003.

Please call me with any questions or concerns.  Thank you.

NATIONWIDE MUTUAL INSURANCE COMPANY
Lisa-Jo Pepper
Claims Department
(302)645-8337

0030 - 000312-01

B31

## AUTO MEMORANDUM OF INSURANCE

POLICY NUMBER: 52A733616
POLICY HOLDER: THOMAS A &/OR ROBERTA L EAMES

POLICY EFF DATE: 03/22/03
POLICY EXP DATE: 09/22/03

---

IMPORTANT   NOTICE

THIS MEMORANDUM OF INSURANCE PROVIDES BASIC INFORMATION REGARDING COVERAGE AND
INTERESTS PROTECTED BY YOUR POLICY AS OF 06/17/03.

---

### NATIONWIDE MUTUAL INSURANCE COMPANY   (23787)

VEHICLE #1
1999  FORD EXPLORER
1FMZU34EXXZA79505

| | |
|---|---|
| COMPREHENSIVE | 100 |
| COLLISION | 250 |
| PROPERTY DAMAGE | 50000 |
| BODILY INJURY | 100/300 |
| PERSONAL INJURY PROTECTION | FULL |

POLICY COVERAGE

| | |
|---|---|
| UNINSURED MOTORIST--BODILY INJURY | 100/300 |
| UNINSURED MOTORIST--PROPERTY DAMAGE | 10000 |

THIRD PARTY: LIENHOLDER
WILMINGTON TRUST CO
INSURANCE SERV CNTR
PO BOX 9289
RICHMOND. VA 23227-0289
LIEN EXP DATE: 04/15/2008

Culver Insurance Agency                6667            DATE
517 Bridgeville Road
Seaford. DE 19973
PHONE (302) 629-2510

THOMAS A &/OR ROBERTA L EAMES
14908 CONCORD ROAD
SEAFORD. DE 19973-8293

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE
IN AND FOR SUSSEX COUNTY

THOMAS A. EAMES, ROBERTA L. EAMES )
and TAMMY EAMES, on behalf of )
themselves and all others )
similarly situated, )
)
                Plaintiffs, )C.A. No.
)
v. )
) NON-ARBITRATION
NATIONWIDE MUTUAL INSURANCE ) TRIAL BY JURY DEMANDED
COMPANY, )
)
              Defendant. )

## CLASS ACTION COMPLAINT

Plaintiffs Thomas A. Eames, Roberta L. Eames and Tammy

Eames, on behalf of themselves and all others similarly

situated, allege as follows:

### Introduction: Nature of the Action and Summary of Facts

1.  This is an action seeking recovery of compensatory

damages, punitive damages, and declaratory and other relief

arising from defendant's breaches of insurance contracts,

bad faith breaches of insurance contracts, violations of 6

Del. C. §2513, civil conspiracy and otherwise wrongful

conduct, all in connection with the failure of defendant

Nationwide Mutual Insurance Company ("Nationwide") to honor

its contractual obligations under certain policies of



B33

automobile insurance issued by Nationwide to members and representatives of the plaintiff class.

2.   This is a class action brought on behalf of those of Nationwide's Delaware insureds to whom Nationwide has represented, as part of an auto policy declarations page, memorandum of insurance or otherwise, that they enjoy "full" limits of liability for Personal Injury Protection (or "PIP") coverage under 21 <u>Del. C.</u> §2118, when in fact Nationwide contends or will contend that they are entitled to just the minimum PIP limits required by statute.  A more detailed specification of the prospective class is alleged below.

### The Parties

3.   Thomas A. and Roberta L. Eames are natural persons residing at 14908 Concord Road, Seaford, Delaware 19973. They are named insureds under Nationwide "Auto Policy" 52A733616, which policy was in effect when, on February 7, 2003, they were injured in an automobile collision.  Both Thomas A. Eames and Roberta L. Eames have tendered claims for PIP benefits under the subject policy to Nationwide.

4.   Plaintiff Tammy Eames is a natural person residing at 14908 Concord Road, Seaford, Delaware 19973.  She was an occupant of the Eames's family vehicle at the time of the February 7, 2003 collision, and suffered injuries in that

B34

collision; and she is thus entitled to PIP benefits under
the subject Nationwide policy.

5.   Defendant Nationwide Mutual Insurance Company is a
mutual company whose principal place of business is Ohio.
It is engaged in the business of insurance, and regularly
sells insurance within the State of Delaware.

### Factual Background Applicable
### to the Proposed Plaintiffs' Class

6.   Nationwide is among the largest and wealthiest
business entities in the world.  It is a prolific
underwriter of automobile insurance, including first-party
medical benefits for persons injured while driving or
occupying motor vehicles.

7.   At all times relevant to this action, Nationwide
has been among the most prolific underwriters of automobile
insurance (including PIP coverage) in the State of
Delaware, and has derived substantial revenues and profits
from the sale of automobile insurance in Delaware.

### Nationwide's Wrongful Conduct

8.   Under 21 Del. C. §2118, every owner of a motor
vehicle registered in this State must maintain specified
forms of insurance in specified minimum amounts.  Among
these is PIP coverage, defined under the statute as
"[c]ompensation to injured persons for reasonable and

necessary expenses incurred within two years from the date of the accident" for medical services, lost earnings and other expenses. The statute further requires that PIP coverage be provided in the minimum amount of "$15,000 for any 1 person and $30,000 for all persons injured in any 1 accident."

9. Nationwide, acting with and through its agents in Delaware, has misrepresented to large numbers of Delaware insureds (including the proposed class representatives) the limits of liability of their PIP coverage. Specifically, Nationwide has sold (and, on information and belief, continues to sell) automobile insurance policies in Delaware that expressly state, in policy declarations, memoranda of insurance or other policy documentation, that the purchased limits of liability for PIP coverage are "full" limits; when in fact Nationwide intends by this representation to provide only the minimum statutory limits of $15,000 per person and $30,000 per accident. When insureds to whom Nationwide has falsely described PIP limits as "full" tender their claims for PIP coverage to Nationwide, Nationwide takes the position that the available limits of liability for such coverage are limited to the minimum statutory amount. Similarly, when Nationwide has occasion to pay PIP benefits to such

insureds, it treats their PIP limits as exhausted once the minimum statutory amount has been paid.

10.  Nationwide's practice of characterizing minimum PIP limits as "full" limits is purposefully misleading, unlawful, and injurious to those insureds (including the proposed class representatives) who are targets of the practice.  Nationwide knows that such insureds may, if they so request, purchase from Nationwide additional PIP limits in excess of the statutory minimum.  (Such additional PIP limits are sometimes referred to, in the jargon of insurance, as "APIP.")  By falsely characterizing the minimum limits as "full" limits, Nationwide leads insureds to believe that they have purchased the fullest PIP limits or PIP coverage available; the purpose being to discourage them from seeking to purchase additional (and relatively inexpensive) PIP limits.

11.  Whatever Nationwide's intent in characterizing minimum PIP limits as "full", that characterization is ambiguous on its face and as applied.  Under Delaware law, it must therefore be construed in favor of the insureds, and against Nationwide.

## Allegations Specific to the
## Proposed Class Representatives

12.    Plaintiffs Thomas A., Roberta L. and Tammy Eames
were injured in an automobile collision on or about
February 7, 2003.  As alleged above, all three qualify as
insureds under Nationwide "Auto Policy" 52A733616, and for
purposes of their claims for PIP benefits arising from the
February 7, 2003 collision.

13.    In connection with their claims for PIP benefits,
the proposed class representatives have been subjected by
Nationwide to the practices complained of above, including
the practices alleged in paragraphs 9 and 10 above.
Specifically, Nationwide has represented to one or more of
the proposed class representatives that the subject policy
provides "full" limits of liability for PIP coverage; and
it has thereafter taken the position that such limits have
been exhausted by payment of the minimum statutory amount.

### Class Certification Allegations

14.    This action is brought and may properly be
maintained as a class action pursuant to Superior Court
Civil Rules 23(a) and (b)(1)(A), (2) and (3).  Plaintiffs
Thomas A., Roberta L. and Tammy Eames bring this action on
behalf of themselves and all others similarly situated, as
representatives of the following class and subclass:

a.  All of Nationwide's Delaware insureds to whom
Nationwide has represented, at any time since August 20,
2001, that they enjoy "full" limits of liability for PIP
coverage under 21 Del. C. §2118, where Nationwide in fact
contends or will contend that they are entitled only to the
minimum PIP limits required by that statute.

b.  All of Nationwide's Delaware insureds who are part
of the proposed class described within subpart (a) of this
paragraph, and who have been advised by Nationwide that
(according to Nationwide) their available PIP limits have
been exhausted by virtue of Nationwide's payment of the
minimum statutory amount.

15.  Specifically excluded from the proposed class are
those persons who have already secured recovery against
Nationwide in connection with the practices complained of,
whether by settlement or judgment; and Nationwide's
officers, directors, employees, agents, or legal
representatives, or the successors or assigns of any of
them.

16.  **Numerosity of the Class (Super. Ct. Civ. R.
23(a)(1)).**  The proposed class is so numerous that the
individual joinder of all its members is impracticable.
Nationwide has been, at all relevant times, among
Delaware's most prolific underwriters of PIP coverage; and

it remains so today.  While the exact number and identities of the proposed class members is presently unknown, and can only be determined through investigation and discovery, plaintiff is informed and believes that the proposed class includes over 200 members.

17.  *Existence and Predominance of Common Questions of Law and Fact (Super. Ct. Civ. R. 23(a)(2), 23(b)(3)).* Common questions of law and fact exist as to all members of the proposed class, and they predominate over any individualized legal or fact questions.  These common questions of law and fact include, without limitation, the following:

a.  Whether Nationwide has represented to members of the proposed class that they enjoy "full" limits of liability for PIP coverage;

b.  Whether Nationwide contends, has contended or will contend that such proposed class members are actually entitled to just the minimum statutory limits of liability for PIP coverage;

c.  Whether, under these circumstances, Nationwide's characterization of PIP limits as "full" is ambiguous on its face or as applied;

d.  Whether a reasonable purchaser of insurance would expect Nationwide's characterization of PIP limits as

"full" to entitle such purchaser to the maximum PIP limits made available by Nationwide in Delaware at the time of the policy's issuance or most recent renewal;

  e.  Whether a reasonable purchaser of insurance would expect Nationwide's characterization of PIP limits as "full" to entitle such purchaser to coverage of all reasonable and necessary medical expenses arising from any covered automobile accident, subject to the statutory (two-year) period for PIP coverage under 21 Del. C. §2118(a)(2);

  f.  Whether Nationwide engages in the practices complained of in paragraphs 9 and 10 above as a matter of regular business practice;

  g.  Whether Nationwide's conduct is in violation of 6 Del. C. §2513;

  h.  Whether Nationwide's conduct is in violation of 18 Del. C. §2504;

  i.  Whether Nationwide has engaged in deliberately deceptive and dishonest conduct;

  j.  Whether Nationwide has engaged in one or more acts of civil conspiracy;

  k.  Whether Nationwide has evinced a conscious indifference to the rights of the proposed class members;

l.    Whether the proposed class is entitled to compensatory damages, and if so, the amount of such damages;

m.    Whether the proposed class is entitled to punitive damages, and if so, the amount of such damages.

18.    *Typicality of Claims (Super. Ct. Civ. R. 23(a)(3)).* The claims of plaintiffs Thomas A., Roberta L. and Tammy Eames are typical of the claims of other members of the proposed class.  Nationwide expressly represented to these plaintiffs, in writing, that the subject automobile insurance policy provided or would provide "full" limits of liability for PIP coverage.  As alleged above, however, Nationwide has taken the position that such PIP limits have been exhausted through payment of just the minimum statutory amount.

19.    *Adequacy of Representation (Super. Ct. Civ. R. 23(a)(4)).*  The proposed class representatives are under no actual or potential conflict of interest with respect to other members of the proposed class, and will fairly and adequately protect their interests.  They have retained counsel experienced in the prosecution of complex litigation, complex coverage litigation, PIP-related litigation, and PIP-related class action litigation.

20.  ***Superiority of Class Action (Super. Ct. Civ. R.***
***23(b)(3)).*** A class action is superior to other available

methods of adjudication for this dispute, because

individual joinder of all members of the proposed **class is**

impracticable, and no other method of adjudication **of the**

claims asserted herein is more efficient and **manageable.**

Further, the damages suffered by individual members of **the**

proposed class may be relatively modest, so that the **burden**

and expense of prosecuting individual actions would **make it**

difficult or impossible for such members to obtain **relief.**

The prosecution of such individual actions would **also**

impose a substantial burden on the Delaware courts, **and on**

this Court in particular. At the same time, individualized

litigation would entail a significant risk of varying,

inconsistent or contradictory judgments, and would magnify

the delay and expense to all parties and the courts, by

requiring multiple trials for the same issues. By

contrast, the class action mechanism presents fewer case-

management problems; conserves the resources of the parties

and the courts; and protects the rights of each member of

the proposed class. The proposed class members thus have

little interest in individually controlling the prosecution

of separate actions; and to counsel's knowledge, there has

been no substantial litigation of this dispute in any

forum.   It is not anticipated that the prosecution of this dispute as a class action will entail any special case-management difficulties; and notice of the pendency of this action, and of any resolution of the same, can be provided to the proposed class by publication and/or individual notice.

21.   **Other Grounds for Certification**.   This action is also certifiable under Superior Court Civil Rules 23(b)(1) and (2) because:

a.   The prosecution of separate actions by the individual members of the proposed class would create a risk of inconsistent or varying adjudications with respect to such individual class members, thus establishing incompatible standards of conduct for Nationwide; and

b.   Nationwide has acted or refused to act on grounds generally applicable to the class, thereby making appropriate declaratory relief with respect to the class as a whole.

## COUNT I

### Declaratory Judgment

22.   Thomas A., Roberta L. and Tammy Eames, on behalf of themselves and all others similarly situated, repeat and incorporate by reference the allegations set forth in paragraphs 1 through 21 above.

23.  Nationwide's characterization of minimum PIP
limits as "full" is misleading, deceptive and ambiguous, on
its face and as applied.

24.  Nationwide's false, misleading and ambiguous
characterization of PIP limits entitles the proposed class
members and class representatives to a construction of the
term "full" (as applied to such PIP limits) that favors
such proposed class members and class representatives, and
disfavors Nationwide.  That construction should be effected
by judicial declaration, to the effect that the proposed
class members and class representatives are entitled to the
maximum PIP limits made available by Nationwide in Delaware
at the time the affected insurance contract was issued, or
at the time of its most recent renewal (whichever amount is
greater); or, alternatively, that such proposed class
members and class representatives are entitled to full
coverage of all reasonable and necessary medical expenses
incurred within the statutory (two-year) period for PIP
claims, and arising from covered automobile accidents.

25.  An actual controversy of a justiciable nature
exists between plaintiffs Thomas A., Roberta L. and Tammy
Eames, on behalf of themselves and all others similarly
situated (on the one hand) and Nationwide (on the other),
concerning the parties' rights and obligations under the

subject Nationwide insurance contracts.  The controversy is of sufficient immediacy to justify the entry of a declaratory judgment.

26.  An award of declaratory relief by this Court will terminate some or all of the existing controversy between the parties.

## COUNT II

### Breach Of Contract

27.  Plaintiffs Thomas A., Roberta L. and Tammy Eames, on behalf of themselves and all others similarly situated, repeat and incorporate by reference the allegations set forth in paragraphs 1 through 26 above.

28.  Nationwide has breached the subject contracts of insurance by promising to provide or make available, but failing to provide or make available, limits of liability for PIP coverage that are genuinely "full."

29.  As a direct result of Nationwide's breaches of the subject insurance contracts, plaintiffs Thomas A., Roberta L. and Tammy Eames and all others similarly situated have been deprived of the benefit of insurance coverage for which premiums were paid under those contracts.  As a further result of Nationwide's breaches of contract, plaintiffs Thomas A., Roberta L. and Tammy Eames and all others similarly situated have been deprived of

necessary medical care, with resulting pain and suffering and exacerbation of injury.

## COUNT III

### Bad Faith Breach of Contract

30.    Plaintiffs Thomas A., Roberta L. and Tammy Eames, on behalf of themselves and all others similarly situated, repeat and incorporate by reference the allegations set forth in paragraphs 1 through 29 above.

31.    Nationwide's false and deceptive characterization of PIP limits, as heretofore alleged, has been without reasonable justification.

32.    Nationwide's false and deceptive characterization of PIP limits, as heretofore alleged, has been knowingly dishonest.

33.    Nationwide's false and deceptive characterization of PIP limits, as heretofore alleged, has been in bad faith.

34.    As a direct result of Nationwide's bad faith breaches of the subject insurance contracts, plaintiffs Thomas A., Roberta L. and Tammy Eames and all others similarly situated have suffered and will suffer injury as heretofore alleged.

## COUNT IV

### Consumer Fraud

35.  Plaintiffs Thomas A., Roberta L. and Tammy Eames, on behalf of themselves and all others similarly situated, repeat and incorporate by reference the allegations set forth in paragraphs 1 through 34 above.

36.  Nationwide's conduct, as alleged above, is in violation of 6 Del. C. §2513.

37.  As a direct result of Nationwide's violations of 6 Del. C. §2513, plaintiffs Thomas A., Roberta L. and Tammy Eames and all others similarly situated have suffered and will suffer injury as heretofore alleged.

### COUNT V

### Civil Conspiracy

38.  Plaintiffs Thomas A., Roberta L. and Tammy Eames, on behalf of themselves and all others similarly situated, repeat and incorporate by reference the allegations set forth in paragraphs 1 through 37 above.

39.  As alleged above, Nationwide has misrepresented the amount of PIP limits available under its Delaware auto policies through the services of its agents in Delaware, including insurance agents.

40.  By purposefully misrepresenting PIP limits through the use of agents, Nationwide has combined with one

or more persons in unlawful acts done in furtherance of a conspiracy.

41. As a direct result of Nationwide's acts of civil conspiracy, plaintiffs and all others similarly situated have suffered and will suffer injury as heretofore alleged.

WHEREFORE, plaintiffs Thomas A. Eames, Roberta L. Eames and Tammy Eames, on behalf of themselves and all others similarly situated, respectfully request that this Court enter judgment as follows:

a. Entering an Order certifying the plaintiff class, appointing plaintiffs Thomas A., Roberta L. and Tammy Eames as representatives of that class, and appointing their counsel to represent the class, all pursuant to Superior Court Civil Rule 23;

b. Declaring the parties' rights, duties, status or other legal relations under the disputed insurance contracts;

c. Awarding to plaintiffs and all others similarly situated compensatory damages, including incidental and consequential damages, for Nationwide's breaches of its insurance contracts;

d. Awarding to plaintiffs and all others similarly situated punitive damages for Nationwide's bad faith breaches of its insurance contracts;

e.   Awarding to plaintiffs and all others similarly situated compensatory and punitive damages for Nationwide's violations of 6 <u>Del. C.</u> §2513;

f.   Awarding to plaintiffs and all others similarly situated compensatory and punitive damages for Nationwide's acts of civil conspiracy;

g.   Awarding to plaintiffs and all others similarly situated all costs of this action; and

h.   Awarding such other and further relief as this Court deems just and appropriate.

Respectfully submitted,
MURPHY SPADARO & LANDON

John S. Spadaro
1011 Centre Road, Suite 210
Wilmington, DE 19805
(302)472-8100

and

Clayton E. Bunting
Wilson Halbrook & Bayard
107 West Market Street
P.O. Box 690
Georgetown, DE 19947
(302)856-0015

Attorneys for plaintiffs
Thomas A. Eames, Roberta L.
Eames and Tammy Eames (on
behalf of themselves and all
others similarly situated)

August 20, 2004



**WILCOX & FETZER LTD.**

## In the Matter Of:

# Eames

## v.

# Nationwide Mutual Insurance Company

## C.A. # 04-CV-1324 KAJ

---

### Transcript of:

### Glenn W. Deaton

### August 9, 2005

---

Wilcox & Fetzer, Ltd.
Phone: 302-655-0477
Fax: 302-655-0497
Email: lhertzog@wilfet.com
Internet: www.wilfet.com

Page 1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

THOMAS A. EAMES, ROBERTA L. EAMES    )
and TAMMY EAMES, on behalf of        )
themselves and all others            )
similary situated,                   )
                                     )
            Plaintiffs,              )
                                     ) Civil Action
v.                                   ) No. 04-CV-1324KAJ
                                     )
NATIONWIDE MUTUAL INSURANCE          )
COMPANY,                             )
                                     )
            Defendant.               )


            Deposition of Glenn Deaton Agency, Inc.
taken pursuant to Federal Rule of Civil Procedure
30(b)(6) through its designee GLENN W. DEATON at the
law offices of Murphy, Spadaro & Landon, 1011 Centre
Road, Suite 210, Wilmington, Delaware, beginning at
10:40 a.m., on Tuesday, August 9, 2005, before Kurt A.
Fetzer, Registered Diplomate Reporter and Notary
Public.
APPEARANCES:
        JOHN S. SPADARO, ESQ.
        MURPHY SPADARO & LANDON
          1011 Centre Road - Suite 210
          Wilmington, Delaware  19805
          For the Plaintiffs
        CURTIS P. CHEYNEY, III, ESQ.
        SWARTZ CAMPBELL & DETWEILER
          1601 Market Street - 34th Floor
          Philadelphia, Pennsylvania  19103-2316
          For the Defendant
                WILCOX & FETZER
    1330 King Street -  Wilmington, Delaware 19801
                (302) 655-0477

Eames                                                          Nationwide Mutual Insurance Company
Glenn W. Deaton                    v.    C.A. # 04-CV-1324 KAJ                      August 9, 2005

Page 2

1  APPEARANCES: (Cont'd)
2      ROBERT J. LEONI, ESQ.
       MORGAN SHELSBY & LEONI
3        131 Continental Drive - Suite 206
         Newark, Delaware 19713
4        For the Witness
5          - - - - -
6          GLENN W. DEATON,
7      the deponent herein, having first been
8      duly sworn on oath, was examined and
9      testified as follows:
10         EXAMINATION
11  BY MR. SPADARO:
12    Q.  Sir, would you state your name for the record,
13  please?
14    A.  Glenn W. Deaton.
15    Q.  Can you tell me your home address, please?
16    A.  128 Sweet Gum Drive, Dover, Delaware, 19904.
17    Q.  Have you given sworn testimony under oath at a
18  deposition proceeding before?
19    A.  Yes.
20    Q.  And you understand that I will be asking you
21  questions at the deposition and that you will be
22  expected to answer them completely and truthfully
23  under oath?
24    A.  Yes, I do.

Page 3

1    Q.  And will you agree that if any question I ask
2  is unclear to you or if you feel that it needs
3  rephrasing or repetition, you will ask me to clarify
4  or repeat the question?
5    A.  Yes, I will.
6    Q.  And if you need to take a break, let me know
7  that. I'm going to try to move quickly enough so that
8  we don't need any breaks during your testimony, but
9  that doesn't mean you're not entitled to take one if
10  you want to. Okay?
11    A.  Okay.
12    Q.  Are you represented by any attorney at this
13  deposition?
14    A.  I am.
15    Q.  Is Mr. Leoni representing you today?
16    A.  Yes, he is.
17    Q.  And are you a representative of the Glenn
18  Deaton Agency Incorporated?
19    A.  I am.
20    Q.  What is the Glenn Deaton Agency Incorporated?
21    A.  I'm an independent contractor, agent, principal
22  for Nationwide Insurance Company.
23        MR. SPADARO: Could you read that back,
24  Kurt?

Page 4

1        (The reporter read back the last answer.)
2  BY MR. SPADARO:
3    Q.  Do I understand from your answer that you're
4  indicating that in the business in which you operate
5  Nationwide acts as a principal and you act as
6  Nationwide's agent?
7    A.  The term principal I use to describe myself as
8  an agency, I'm the agency principal.
9    Q.  The principal of the business?
10    A.  Correct.
11    Q.  Maybe I should ask. What is your relationship
12  to the Glenn Deaton Agency Incorporated?
13    A.  I'm the president of the corporation and the
14  primary agent-producer.
15    Q.  And what do you mean by "agent-producer"?
16    A.  I am responsible for the sale of the products
17  in the office and also have other licensed staff, but
18  I am the primary producer of sales, salesperson, if
19  you will.
20    Q.  What does -- if I refer to the Glenn Deaton
21  Agency Incorporated as Deaton or the Deaton Agency,
22  will you know what I mean?
23    A.  Yes.
24    Q.  What, if anything, does the Deaton Agency sell?

Page 5

1    A.  We sell a variety of property, casualty and
2  life and health, financial service products, including
3  automobile, homeowner, commercial property liability,
4  worker's compensation, life insurance and some mutual
5  funds and variable products as well.
6    Q.  The products that you listed are all insurance
7  products, are they not?
8    A.  Correct.
9    Q.  And does the Deaton Agency sell Nationwide
10  Insurance products to consumers?
11    A.  Yes.
12    Q.  And ask the Deaton Agency sell exclusively
13  Nationwide Insurance products to Delaware consumers?
14    A.  I am a captive, exclusive agent of Nationwide.
15  I do have opportunities to sell products outside of
16  that arrangement, but primarily Nationwide products.
17    Q.  Are you able to estimate roughly the percentage
18  of Nationwide Insurance products that you sell
19  compared to the insurance products of other insurance
20  companies?
21    A.  Nationwide sales represents I would say 90 to
22  95 percent of our overall sales.
23    Q.  What do you mean when you are referring to the
24  Deaton Agency as captive?

2 (Pages 2 to 5)

B53

Eames                                                    Nationwide Mutual Insurance Company
v.
Glenn W. Deaton                      C.A. # 04-CV-1324 KAJ                    August 9, 2005

Page 6

1   A. I have a contract to sell Nationwide's products
2   exclusively. I'm required to sell Nationwide's
3   products. I'm not allowed to broker or go outside of
4   that agreement for market. In other words, if
5   Nationwide offers that product for sale, I'm going to
6   sell their product.
7        If I have occasion to sell a product that
8   Nationwide is not interested in that market, I'm
9   allowed to place that through another carrier.
10  Q. So you're allowed to sell other insurance
11  companies' products so long as they don't compete in
12  this market with products that Nationwide is selling?
13  A. Correct.
14  Q. I hope you understand what I meant. When I
15  said, "this market," I meant Delaware. And I think
16  you understood my question that way?
17  A. Correct. That's the only state that I am
18  licensed to transact.
19  Q. And you do hold a professional license?
20  A. Yes, I do.
21  Q. Could you identify it for me?
22  A. I have a license through the Delaware Insurance
23  Commissioner's office, an agency's license to sell all
24  of the products that I mentioned, property, casualty,

Page 7

1   life, health, bonding and variable annuities as well.
2   Q. You understand, do you not, that you've been
3   designated by the Deaton Agency to testify on its
4   behalf at this deposition?
5   A. Yes.
6   Q. Do you freely accept that designation?
7   A. Yes, I do.
8        MR. SPADARO: Let me ask the court
9   reporter to mark as Exhibit 1 to your deposition a set
10  of documents that purports to be a copy of a letter
11  signed on my behalf by another attorney in my firm,
12  Mr. Brockstedt, dated March 24, 2005 and addressed for
13  hand delivery to the Glenn Deaton Agency Incorporated,
14  attached to which is a copy of the subpoena that we
15  served on the Glenn Deaton Agency in this case.
16       (Deaton Deposition Exhibit No. 1 was
17  marked for identification.)
18  BY MR. SPADARO:
19  Q. Have you had an opportunity to examine the
20  document that's been marked as Deaton Exhibit 1?
21  A. Yes, I have.
22  Q. Have you seen this document before, Mr. Deaton?
23  A. Yes.
24  Q. Does it appear to be what I have described?

Page 8

1   A. Yes, it does.
2   Q. If you turn to the fourth page of the document,
3   do you see there an appendix that purports to set
4   forth a description of the documents being subpoenaed
5   and the topics for your testimony today?
6   A. Yes.
7   Q. And on the next page do you see the heading
8   Matters for Examination?
9   A. Yes.
10  Q. And you understand that under that heading is
11  set forth the three subject areas which I'll be asking
12  questions about today?
13  A. Yes.
14  Q. And have you had a chance to review those
15  subject areas before today's deposition?
16  A. I have.
17  Q. Are you prepared to answer questions relating
18  to those three subject areas?
19  A. I am.
20  Q. Thank you.
21       How many employees does the Deaton Agency
22  have, sir?
23  A. Including myself, five.
24  Q. Let me ask you a little bit more about your

Page 9

1   relationship, the agency's relationship with
2   Nationwide, if I could. Okay?
3        Does the Deaton Agency lease equipment
4   from Nationwide?
5   A. Could you be more specific about equipment?
6   Q. Well, is there office equipment that you use in
7   your business operations like computers, telephones
8   and that sort of thing?
9   A. All of the office equipment belongs to my
10  business. It's not property of Nationwide Insurance,
11  desks, chairs, filing cabinets.
12       Computer equipment specifically for many
13  years was the property of Nationwide Insurance and we
14  were required by contract to lease their hardware and
15  use their software. A few years ago they decided to
16  get out of the hardware business. And basically the
17  agents now own the hardware, but we are under contract
18  to use their software and their pipeline, if you will,
19  the company intranet and the software and all the
20  products of running the software and the computer is
21  provided by Nationwide, but the computer is owned by
22  the agency.
23  Q. When you say that the software is owned by
24  Nationwide, does that include what might be called

3 (Pages 6 to 9)

Eames                                    v.            Nationwide Mutual Insurance Company
Glenn W. Deaton                   C.A. # 04-CV-1324 KAJ              August 9, 2005

Page 10

1  document management software?
2  **A. Yes.**
3  Q. Do you send and receive e-mails at the Deaton
4  Agency?
5  **A. Yes, we do.**
6  Q. If I understand correctly, is it correct to say
7  that your e-mails are sent and received on
8  Nationwide's file server?
9  **A. That's correct.**
10  Q. How is the Deaton Agency compensated for its
11  role in selling Nationwide Insurance products in
12  Delaware?
13  **A. We're compensated strictly through commissions**
14  **on products that we sell. We have no other source of**
15  **income other than commission based on the sales.**
16  Q. When a premium is obtained from a consumer in
17  connection with the sale of a Nationwide Insurance
18  product through the Deaton Agency, do you begin by
19  transferring the premium to Nationwide?
20  **A. Yes. Any premium received by our office is in**
21  **a fiduciary capacity, is placed in a fiduciary**
22  **account, a premium-bearing account only and is**
23  **remitted to Nationwide. And I receive my commission**
24  **after they have processed their transactions on a**

Page 11

1  **biweekly basis.**
2  Q. So Nationwide collects premiums and then pays
3  to you commissions based on how much premium was
4  collected?
5  **A. Right.**
6  Q. How are employees' salaries paid? Are they
7  paid directly by the Deaton Agency?
8  **A. Yes. The employees are employees of myself and**
9  **are paid directly by me.**
10  Q. How long have you been the president of the
11  Deaton Agency?
12  **A. I started with Nationwide in the fall of 1989.**
13  **Fifteen, sixteen years.**
14  Q. Now, Mr. Deaton, we're going to be referring to
15  a particular type of coverage within the automobile
16  insurance product known as personal injury protection.
17  Are you familiar with that term?
18  **A. I am.**
19  Q. And if I call it personal injury protection,
20  you'll know what I mean?
21  **A. Yes.**
22  Q. If I call it PIP, you will know what I mean?
23  **A. Yes.**
24  Q. I may make reference to limits of liability for

Page 12

1  PIP coverage. If I do that, will you know what I
2  mean?
3  **A. Yes.**
4  Q. And --
5  MR. LEONI: John, I'm just going to ask
6  that you make sure that if he doesn't understand it in
7  the context that you're asking that you explain that
8  because we have to make sure he understands it in the
9  context that you're using it.
10  MR. SPADARO: Sure.
11  BY MR. SPADARO:
12  Q. We have agreed if you have any questions about
13  my questions you will ask me, right?
14  **A. Certainly.**
15  Q. I'm not trying to give you an insurance 101
16  quiz. But just for the record can you give me your
17  understanding of what limits of liability means as an
18  insurance term?
19  **A. Sure. Limits of liability would be the amount**
20  **provided by the contract, a maximum amount based on a**
21  **per person limit or a per occurrence limit, but limit**
22  **of liability would be the maximum amount payable by**
23  **the company for a claim, a covered claim.**
24  Q. And that amount is a dollar amount?

Page 13

1  **A. Correct.**
2  Q. So it's expressed in numbers, is expressed in
3  dollars?
4  **A. It's expressed in dollars, yes.**
5  Q. Are you able to give me a step-by-step
6  description -- I could break it down if you want me
7  to, but maybe it's faster not to. It's your
8  preference.
9  If I ask you to give me a step-by-step
10  description of the process by which an ordinary
11  Delaware consumer in your neighborhood comes in and
12  purchases a Nationwide auto policy, could you do that
13  for me?
14  **A. Yes, I could.**
15  Q. Okay. Would you, please?
16  **A. Sure. Once a quote is given -- generally, the**
17  **process starts by an individual requesting a quote for**
18  **what the coverage would be.**
19  **We would --**
20  Q. I'm sorry. I don't mean to interject. Along
21  the way I may ask you to clarify a term here or there.
22  **A. Sure.**
23  Q. By "quote" you're referring to the consumers
24  asking how much will it cost me to buy auto insurance?

4 (Pages 10 to 13)

Wilcox & Fetzer, Ltd.           Professional Court Reporters           (302)655-047⁻

B55

Eames                                              v.          Nationwide Mutual Insurance Company
Glenn W. Deaton                          C.A. # 04-CV-1324 KAJ                    August 9, 2005

Page 14

1    A. They would like a price quotation for the cost
2    of coverage.
3         We would gather the required information
4    that is needed to prepare a quote, certain personal
5    information about the type of vehicle, driving record,
6    information about the driver and so forth. Once the
7    quote is prepared and given and accepted, the
8    application process would start where we would
9    basically complete the Nationwide application on the
10   computer, generate an application, going through the
11   various information as needed about drivers and so
12   forth, the vehicle and coverages.
13        At that point we would interview with the
14   client or with the applicant explaining and requesting
15   if they have specific limitations, limits of liability
16   that they would like to compare with, if they have a
17   current contract. If they do not have current
18   coverage, we would explain to them what's required by
19   law and then show them the option limits that are
20   available.
21        Upon completion of the application it
22   would be printed out and any trailing documents that
23   were required to be signed -- a trailing document
24   would be a document in addition to the application

Page 15

1    itself. The form A is considered a trailing document.
2    A vehicle inspection form, if a vehicle may be
3    customized or altered or have existing damage we are
4    required to view the vehicle and potentially have a
5    document, a trailing document as an inspection report.
6    A child's or student's report card that would be in
7    line for a discount, a defensive driving class, any
8    supplemental document that would affect the rate
9    provided or the coverage provided, we would be
10   required to obtain those, signatures on the
11   application and any trailing documents would be
12   obtained.
13        We would review what coverages are elected
14   and rejected by the applicant.
15   Q. When all of that was completed what would
16   happen?
17   A. The premium would be collected based on the
18   applicant's choice of pay plan. There are a variety
19   of different pay plan options available. We would
20   collect the appropriate premium, provide a receipt.
21   And we would at that point provide a binder or
22   memorandum of insurance, some proof that the
23   application process had been completed.
24        We would provide that to the applicant

Page 16

1    with a receipt. The application would be released or
2    sent to Nationwide by the computer. We would set up a
3    new file retaining the documents in our file. No
4    paper really transactions go to Nationwide. It's done
5    electronically and we retain the original application
6    and any trailing documents in our file. Premiums are
7    collected by our firm, by our agency, are deposited in
8    a local bank, are remitted on Nationwide's remittance
9    program. And they will then a couple of business days
10   later they will electronically draft those funds from
11   the fiduciary account.
12        At that point the policy is processed and
13   generated directly by Nationwide from their service
14   center and sent out to the insured.
15        We tell every applicant that they will
16   receive their policy package directly from Nationwide
17   with I.D. cards and the policy packet itself; when
18   it's received to please give us a call if they have
19   any questions, to review if there's anything there
20   that they're not sure of. And we would set up our
21   file from there and that's basically, that's the basic
22   transaction process.
23   Q. Okay. Let me ask you about the point at which
24   the premium has been collected and a binder or

Page 17

1    memorandum of insurance or other proof of insurance
2    has been provided to the consumer. Okay?
3    A. (The witness nodded.)
4    Q. Are you with me?
5    A. Yes.
6    Q. Have I so far characterized that part of your
7    testimony correctly?
8    A. Yes.
9    Q. At that point is the consumer insured for
10   automobile insurance by Nationwide?
11   A. Yes.
12   Q. So it's your understanding at that point an
13   insurance contract exists?
14   A. Yes.
15   Q. How long after that point -- well, at that
16   point the consumer presumably goes, leaves your office
17   and goes home carrying the auto memorandum of
18   insurance or binder or other proof of insurance,
19   right?
20   A. Correct.
21        MR. CHEYNEY: Objection.
22   Q. How much time typically passes, if you can tell
23   me, between that event and the consumer's receipt of
24   policy documents generated from Nationwide's service

5 (Pages 14 to 17)

Eames                                      v.          Nationwide Mutual Insurance Company
Glenn W. Deaton                      C.A. # 04-CV-1324 KAJ              August 9, 2005

Page 18

1  center?
2  **A. Generally, one week, approximately a week's**
3  **time to process and have that sent out in the mail to**
4  **them.**
5  Q. Have you known it to take less than a week?
6  **A. Yes.**
7  Q. Have you known it to take more than a week?
8  **A. Yes.**
9  Q. On the far end of the scale, how long does it
10 take when it takes longer than a week?
11 **A. Only an additional day or two, maybe ten days**
12 **maximum.**
13 Q. And if the insured vehicle is involved in an
14 automobile collision during that one week to ten-day
15 interim, it's your understanding that Nationwide
16 insures that event?
17      MR. CHEYNEY: Objection.
18 **A. Correct.**
19 Q. Where is the Nationwide service center? Do you
20 know?
21 **A. It is in Gainesville, Florida for the bulk of**
22 **the automobile policies that we issue. They're**
23 **generated from the Gainesville, Florida service**
24 **center.**

Page 19

1  Q. Are there other Nationwide service centers that
2  address other regions of the country?
3  **A. Yes.**
4  Q. Thank you.
5      This process you've described very
6  patiently for me, which I appreciate, this step-by-
7  step process by which the consumer purchases the auto
8  insurance from Nationwide, as part of that process are
9  documents shared with the consumer at any stage?
10 **A. Documents, yes.**
11 Q. For example, is the price quote that you
12 started your description with a written price quote?
13 **A. Yes.**
14 Q. And that's a document that's shared with the
15 consumer and he can take home with him?
16 **A. We do have a formal quote letter when someone**
17 **asks for a quote that we can provide a user friendly**
18 **quote letter. Generally, that's not sent out on a**
19 **telephone quote or if someone comes into the office**
20 **and I provide the quote on the computer and share with**
21 **them the information on the monitor and they say yes,**
22 **I would like to purchase that coverage, generally that**
23 **quote letter is not printed out.**
24 **We would go directly into the application**

Page 20

1  **process. Many times we would hot print or screen**
2  **print, if you will, the quote to show them if they**
3  **brought their policy with them and they would like to**
4  **compare, we would print off a document like that which**
5  **would be just a screen print. But there is a formal**
6  **quote letter that can be generated if it's requested.**
7  Q. Whether the document is generated hard copy or
8  not, is it often the case that the consumers are
9  allowed to see the quote in writing while they're in
10 your office?
11 **A. Yes.**
12 Q. Are there any other documents that as part of
13 this process the consumers either see visually or are
14 allowed to take with them?
15 **A. Yes.**
16 Q. I think you mentioned the memorandum of
17 insurance or binder or other proof of insurance.
18 **A. Correct.**
19 Q. That's one category of documents that is given
20 to the consumer, right?
21 **A. Correct. They are offered a copy of the**
22 **physical application as well and the Delaware Form A**
23 **Delaware Protection Act document.**
24 Q. I think you referred earlier to options that

Page 21

1  the consumer has with respect to the limits of
2  liability that they can purchase for different
3  coverages.
4      Do you recall that?
5  **A. Correct.**
6  Q. And I'm going to limit my questions to
7  automobile insurance. All right?
8  **A. Mm-hmm.**
9  Q. There are —
10     MR. LEONI: You have to answer actually
11 verbally yes or no.
12     THE WITNESS: Yes.
13     MR. SPADARO: Thank you, Mr. Leoni.
14 BY MR. SPADARO:
15 Q. There are different dollar amounts in limits of
16 liability that consumers are able to purchase within
17 different coverages, right?
18 **A. Correct.**
19 Q. It's your understanding that with respect to
20 PIP coverage there's a minimum amount that's mandated
21 by statute. Is that right?
22 **A. That's right.**
23 Q. And the minimum statutory limits of liability
24 for PIP coverage according to your understanding are

6 (Pages 18 to 21)

B57

Page 22

1 $15,000 per person/$30,000 per accident. Is that
2 right?
3 **A. Correct.**
4 Q. But consumers are able to purchase more than
5 that, aren't they?
6 **A. Yes.**
7 Q. What is the full amount of limits of liability
8 available from Nationwide today for PIP coverage?
9 MR. CHEYNEY: Objection.
10 MR. LEONI: Do you know what? So far we
11 have been talking generically, but actually the notice
12 of deposition refers only to Nationwide Mutual
13 Insurance Company. So I'm assuming, and maybe
14 wrongfully so, your questions are limited to
15 Nationwide Mutual.
16 MR. SPADARO: Yes. All my questions are
17 limited to the defendant in this case, Nationwide
18 Mutual -- let me make sure I get the name right --
19 Nationwide Mutual Insurance Company.
20 BY MR. SPADARO:
21 Q. Do you understand that, sir?
22 **A. Yes.**
23 Q. Do all of your responses so far relate to
24 Nationwide Mutual Insurance Company?

Page 23

1 **A. Yes.**
2 Q. So let me ask you again: Can you tell me the
3 full amount of PIP limits of liability that are
4 available for purchase from Nationwide today in
5 Delaware?
6 MR. CHEYNEY: Objection.
7 **A. The maximum limits for PIP available is**
8 **$100,000 per person/$300,000 per accident.**
9 Q. Do you have a sense of in percentage terms of
10 the percentage of auto policies that the Deaton Agency
11 is involved in selling on Nationwide's behalf for
12 which Delaware consumers in a typical year purchase
13 the minimum limits of $15,000 per person/$30,000 per
14 accident?
15 MR. LEONI: Hold on a second. Can I hear
16 that back?
17 Could you read it back, Kurt?
18 THE WITNESS: Because he --
19 MR. LEONI: Hold on. He's going to read
20 the question back to make sure we understand it.
21 (The reporter read back the last
22 question.)
23 MR. LEONI: Again, we're referring only to
24 Nationwide Mutual Insurance Company personal auto

Page 24

1 policies?
2 MR. SPADARO: Yes.
3 BY MR. SPADARO:
4 Q. I've said that I'm only referring to the
5 defendant Nationwide Mutual Insurance Company and I
6 have clarified all of my questions relate to
7 automobile insurance. So that's a given with every
8 question I ask unless I specify otherwise. I'm not
9 going to ask you about products other than auto at
10 this point.
11 Do you understand my question?
12 **A. I understand your question. But my response**
13 **would be particularly regarding Nationwide Mutual, the**
14 **company one, that Nationwide Mutual -- we're not**
15 **talking about the non-standard. We're talking about**
16 **generally -- all right.**
17 Q. I'm only asking about the defendant in this
18 case, Nationwide Mutual Insurance Company.
19 **A. Yes. I understand your question.**
20 MR. LEONI: Just to be clear for the
21 witness because he seems to be having a little
22 trouble --
23 MR. SPADARO: If you have an objection to
24 form, we're in the District Court, if you have an

Page 25

1 objection to the form, you can object to form. I'll
2 clarify.
3 BY MR. SPADARO:
4 Q. You understand I'm trying to figure out how
5 often people purchase the minimum limits? Do you
6 understand my question?
7 **A. Yes, I do.**
8 Q. If you can ballpark that for me in percentage
9 terms, that would be helpful.
10 **A. Under Nationwide Mutual Insurance Company**
11 **policies that we issue I would say only 25 percent or**
12 **less purchase the minimum PIP coverage.**
13 Q. Okay. Thank you. That's very helpful.
14 Now, in response to our subpoena it's your
15 understanding that the Deaton Agency produced certain
16 documents to us?
17 **A. That's correct.**
18 Q. And is it your understanding that we reached a
19 compromise by which the parties agreed that the Deaton
20 Agency would produce policy-related documents for just
21 35 policyholders?
22 **A. Yes.**
23 Q. And just for the record, over the course of the
24 time period embraced by this lawsuit the agency has

7 (Pages 22 to 25)

Page 26

1  sold many more than 35 insurance policies, auto
2  insurance policies, that is, on behalf of Nationwide?
3  **A. Yes.**
4  Q.  But this was a compromise we reached to reduce
5  the burden and expense of responding to the subpoena.
6  Do you understand that?
7  **A. Yes.**
8  Q.  I want to mark as Exhibit 2 to your deposition
9  a set, a single set of these policy-related documents
10  that were produced by the Deaton Agency as part of
11  this compromise.
12       Do you understand what I have represented?
13  **A. Yes.**
14  Q.  And it's your understanding, is it not, that
15  the Deaton Agency's attorneys, Mr. Leoni and his
16  office, have blacked out or redacted certain
17  identifying information that might otherwise have
18  identified the policyholders under these policies?
19  **A. Yes.**
20  Q.  And it's your understanding that the attorneys
21  for the Deaton Agency have numbered the sets that were
22  produced to us with one- or two-digit numbers?
23  **A. Yes.**
24       MR. SPADARO:  Let me start by marking as

Page 27

1  Exhibit 2 to your deposition set number 63 from the
2  Deaton production.
3       (Deaton Deposition Exhibit No. 2 was
4  marked for identification.)
5  BY MR. SPADARO:
6  Q.  Just review that, if you would, to your
7  satisfaction. Let me know when you feel comfortable
8  answering some questions about it.
9  **A. (Reviewing document) Okay.**
10  Q.  Does this appear to be a copy of the documents
11  from set 63 of the Deaton production?
12  **A. Yes.**
13  Q.  I'm going to ask you if you can try to describe
14  the approximately seven pages that are part of Exhibit
15  2 for me in a little more detail.
16  **A. Okay.**
17  Q.  Thank you.
18  **A.  Page 1 -- the document is a standard automobile
19  insurance application through Nationwide Mutual. The
20  first page of the document provides basic declaration
21  type information about the name of the insured, date
22  of the application and basic demographic information
23  about the insured, license, date of birth, social,
24  address and so forth.**

Page 28

1       Page number 2 begins with detail about the
2  vehicle to be insured itself, including the make,
3  model, year, vehicle identification number and
4  ownership. The second area of the second page of the
5  document provides the coverage that's been selected.
6  The liability, physical damage, uninsured motorist and
7  PIP coverage are detailed there. Any discounts are
8  listed there on the bottom of that second page.
9       Page 3 provides ratings variables,
10  including the work or work commute, annual mileage and
11  any surcharges for rate class that might be
12  applicable.
13  Q.  If I could just interject for a moment. By
14  rating variables are we referring to underwriting
15  factors that might result in a determination of the
16  premium to be charged?
17  **A. Correct.**
18  Q.  Thank you.
19  **A. Below that on the third page is some general
20  information specific to the place of the domicile of
21  the applicant, where they live, and payment
22  information is also included on page 3.
23       The fourth page is a closing statement
24  that provides information on how Nationwide will**

Page 29

1  handle the application regarding misrepresentations
2  and acknowledgment of coverage and accepting of the
3  risk.
4       The fifth page includes statements that
5  are asked to be initialed in total by the insured
6  regarding their use and ownership and declaration of
7  any drivers in the household or have regular use of
8  that vehicle and any forbidden uses of the vehicle
9  under the personal auto policy, including delivery of
10  pizza and you will see there in the one bullet the
11  newspapers or taxicab-type things are prohibited. We
12  ask that they acknowledge that there.
13       And the final part on page 5 is the
14  signature place where the applicant and the producing
15  agent would sign and date and time the application.
16  Q.  So those first five pages are -- bear with me
17  for a second.
18       Those first five pages are the application
19  themselves?
20  **A. Those pages are the application, yes.**
21  Q.  And the remaining two pages of Deaton Exhibit 2
22  are not what you would describe as part of the
23  application?
24  **A. Correct.**

8 (Pages 26 to 29)

Eames                                  v.                Nationwide Mutual Insurance Company
Glenn W. Deaton                   C.A. # 04-CV-1324 KAJ                         August 9, 2005

Page 30

1    Q.  But they are part of the larger process of
2    placing insurance?
3    A.  Correct.
4    Q.  I'm sorry I interrupted you.  Thank you.
5    A.  The sixth page is the Delaware Motorists'
6    Protection Act, a form that's used to acknowledge and
7    where the applicant would select and verify or reject
8    any coverage options that they would like.  The
9    minimum limits are displayed on this form that are
10   required by Delaware law, along with other optional
11   coverages for physical damage, including
12   comprehensive, collision, uninsured motorist, loss of
13   use.  This is the form that we have the insured sign
14   that spells out the requirements and also the options
15   that are provided under the Delaware policies.
16          The final page is a copy of the screen
17   print that I mentioned.  This would be a document that
18   I would share with an insured that would come in the
19   office if we were comparing different quotes.  This is
20   simply a screen print of our quote process off the
21   computer.
22   Q.  That final page that you've indicated is shared
23   with the consumer is titled Auto Rate Quote Number 1?
24   A.  Correct.

Page 31

1    Q.  Let me ask you to turn, if you would, to the
2    second page of Deaton Exhibit 2, please.
3          I'm going to direct your attention to the
4    entries in the middle of the page under the Heading
5    Vehicle Level Coverages.
6          Do you see that?
7    A.  Yes.
8    Q.  Now, there appear to be under that heading
9    three columns setting forth information.  Is that fair
10   to say?
11   A.  Yes.
12   Q.  In the left-hand column we see the first entry
13   reads Comprehensive and underneath that Collision and
14   then underneath that Property Damage and so forth.
15   That left-hand column identifies different types of
16   insurance coverage within the automobile insurance
17   product?
18   A.  Correct.
19   Q.  Is that fair to say?
20   A.  Yes.
21   Q.  And the middle column begins with the number
22   250.  Do you see that?
23   A.  Yes.
24   Q.  And that corresponds to the entry in the

Page 32

1    left-hand column that says Comprehensive, right?
2    A.  Correct.
3    Q.  And what does that information up to that point
4    indicate?
5    A.  That entry relates to the deductible that would
6    be applied to that line of coverage.  $250 would be
7    the deductible applicable to the comprehensive line of
8    coverage.
9    Q.  Very briefly, what does comprehensive coverage
10   entail in an auto insurance policy?
11   A.  Comprehensive coverage provides coverage for
12   damage to the insured vehicle that is not collision
13   related and would include glass breakage, vandalism,
14   theft, fire, flood.  Collision with an animal would be
15   one comprehensive coverage where a collision would
16   take place with an animal, but it's damage to the
17   vehicle that's generally not collision related.
18   Q.  So it appears that it's contemplated for this
19   particular insurance contract that there will be a
20   deductible for comprehensive coverage of $250, right?
21   A.  Correct.
22   Q.  And that deductible is expressed in a dollar
23   amount?
24   A.  Yes.

Page 33

1    Q.  In the right-hand column there appear to be
2    dollar amounts set forth for each of the types of
3    coverage.
4          Do you see that?
5    A.  Yes.
6    Q.  The first being $23.20 corresponding to the
7    comprehensive coverage entry, right?
8    A.  Correct.
9    Q.  Am I correct that sets forth the premium amount
10   to be collected with respect to each coverage within
11   the automobile insurance contract?
12   A.  Yes.
13   Q.  Now let me ask you to turn, if you could, to
14   the last page of Deaton Exhibit 2 entitled Auto Rate
15   Quote Number 1 and let me know when you have that
16   before you, please.
17   A.  I do.
18   Q.  This document has a similar format, doesn't it?
19   A.  Yes.
20   Q.  Because we see abbreviated names for the
21   different types of coverage beginning with COMP for
22   comprehensive and then COLL for collision, then PD for
23   property damage and so forth, right?
24   A.  Correct.

9 (Pages 30 to 33)

Eames                                    v.        Nationwide Mutual Insurance Company
Glenn W. Deaton                C.A. # 04-CV-1324 KAJ              August 9, 2005

Page 34

1    Q.  And then in the middle column we see the dollar
2    amount for comprehensive that indicates 250,
3    signifying the $250 deductible to be charged for that
4    coverage, right?
5    A.  Correct.
6    Q.  In the right-hand column we see that 23.20
7    indicating the $23.20 premium to be collected for the
8    comprehensive coverage, correct?
9    A.  Correct.
10   Q.  Now, there is information redacted on this
11   page.  So let me ask you as it appears in unredacted
12   form, does the name of the insured appear on this
13   page?
14   A.  Yes.
15   Q.  And would the page in unredacted form indicate
16   anywhere the vehicle to be insured?
17   A.  Yes.
18   Q.  How would it identify that vehicle?
19   A.  By the year, make and model would generally
20   appear in the heading above the $250 deductible where
21   it's been redacted.  The vehicle year and type would
22   appear there.
23   Q.  And we know that the types of coverages are
24   described in the document, right?

Page 35

1    A.  Correct.
2    Q.  And the limits of liability for the coverages
3    are set forth, are they not?
4    A.  Yes.
5    Q.  And the premium amount to be charged for each
6    is set forth, right?
7    A.  Yes.
8    Q.  Turning to that middle column that begins with
9    the number 250 for the deductible for comprehensive
10   coverage, that is not a dollar amount that indicates
11   the limit of liability for comprehensive coverage, is
12   it?
13   A.  No.
14   Q.  It indicates rather the dollar amount of the
15   deductible for that coverage, right?
16   A.  Correct.
17   Q.  Why does it indicate a dollar amount for the
18   deductible rather than for the limit of liability?
19   A.  The deductible is a common factor that would be
20   charged against a claim regardless of -- the value of
21   the vehicle is a variable that cannot really be
22   contemplated at the time of application.  The value or
23   limit of that coverage would be contemplated at the
24   time of the claim, meaning someone may have purchased

Page 36

1    a brand-new vehicle on this day valued at $20,000.
2    Well, when the claim time comes a week, a month, a
3    year later, the value of that vehicle would be
4    determined at that time based on the actual cash value
5    of the vehicle at the time.
6         So that deductible is assessed as a common
7    factor against the amount of the claim because the
8    limit of liability would be relatively unknown based
9    on the actual cash value of the vehicle.
10   Q.  So the limit of liability is not expressed in
11   that column for comprehensive coverage because it's
12   not a readily identifiable number at the time the
13   policy is purchased?
14   A.  Correct.
15   Q.  Rather, it's a number to be determined later
16   based on the depreciating value of the property?
17   A.  And the amount of damage incurred, correct.
18   Q.  And the amount of damage incurred.  Thank you.
19        The number 500 appears in the middle
20   column for the entry for collision damage.  Do you see
21   that?
22   A.  Yes.
23   Q.  And what does that number express?
24   A.  In similar fashion, it is a deductible that

Page 37

1    would be charged against the claim to the insured for
2    a collision claim.
3    Q.  And that's expressed as a dollar amount?
4    A.  Correct.
5    Q.  And the reason that entry is expressed as a
6    deductible rather than showing the limit of liability
7    for collision damage is the same reason you explained
8    with respect to comprehensive coverage, right?
9    A.  Yes.
10   Q.  It is an unknowable factor at the time the
11   policy is purchased?
12   A.  Correct.
13   Q.  The number 10,000 appears in that middle column
14   entry on this last page of Deaton Exhibit 2 for
15   property damage coverage.
16        Do you see that?
17   A.  Yes.
18   Q.  And is that insurance coverage that insures
19   against property damage claims brought by other
20   drivers for damage done to their property?
21   A.  Correct.
22   Q.  And the 10,000 indicates, the 10,000 figure in
23   that middle column of the last page of Deaton Exhibit
24   2 for property damage indicates the dollar amount of

10 (Pages 34 to 37)

Eames                                    v.                Nationwide Mutual Insurance Company
Glenn W. Deaton                  C.A. # 04-CV-1324 KAJ                        August 9, 2005

Page 38

1  the limit of liability for property damage coverage?
2    **A. That's correct.**
3    Q.  And that's expressed as a dollar amount because
4  it is a dollar amount known at the time the policy is
5  purchased?
6    **A. That's correct.**
7    Q.  When the policy is purchased it's readily
8  ascertainable what the limit of liability is for
9  property damage coverage or bodily injury coverage,
10  right?
11    **A. Correct.**
12    Q.  And for the bodily injury entry we see 15/30 in
13  the middle column.
14        Do you see that?
15    **A. Yes.**
16    Q.  What does that mean?
17    **A. That signifies $15,000 per person and a $30,000**
18  **per accident limitation.**
19    Q.  So that's the limit of liability for bodily
20  injury coverage?
21    **A. Correct.**
22    Q.  And that's the insurance made available for
23  claims by other persons than the insured against the
24  insured for bodily injury suffered in a covered event?

Page 39

1    **A. Correct.**
2    Q.  The next entry on the left reads UMBI. Do you
3  see that?
4    **A. Yes, I do.**
5    Q.  What does that stand for?
6    **A. It stands for uninsured motorist bodily injury**
7  **coverage.**
8    Q.  I'm sorry. I skipped. There's an entry above
9  that column that says DB.
10        Do you see that?
11    **A. Yes.**
12    Q.  What does that stand for?
13    **A. That stands for death benefit.**
14    Q.  What is the death benefit coverage? Could you
15  explain that quickly?
16    **A. Nationwide's product provides a death benefit**
17  **to the named insured, the driver and passengers if**
18  **they are killed in a covered accident if they are**
19  **wearing their seat belt. There is a small death**
20  **benefit payable.**
21    Q.  Then in the middle entry where otherwise
22  there's expressed limits of liability or deductibles
23  you see the entry in letters CNW.
24        Do you see that?

Page 40

1    **A. Correct.**
2    Q.  I have no idea what that means and I guess that
3  means coverage not wanted, but maybe you could tell
4  me.
5    **A. That's exactly correct.**
6    Q.  Is it the case that wherever I see CNW in the
7  documents that Deaton produced it means coverage not
8  wanted?
9    **A. Yes.**
10    Q.  And I'll represent to you that I have seen that
11  entry in documents produced by other insurance agents
12  that have been subpoenaed in the case.
13        Do you understand what I have told you?
14    **A. Sure. Yes.**
15    Q.  Do you understand that to be a standard
16  abbreviation used in documents of this type --
17    **A. Yes.**
18    Q.  -- by insurance agents?
19    **A. Yes.**
20    Q.  I'm sorry. Your answer is?
21    **A. Yes.**
22    Q.  Thank you.
23        Let me take you to the entry for PIP in
24  the left-hand column. Do you see that?

Page 41

1    **A. Yes.**
2    Q.  And in the middle column it says full.
3        Do you see that?
4    **A. Yes.**
5    Q.  And that's a characterization that we see in --
6  I'll represent to you that that characterization of
7  PIP as full is one that can be found in every set of
8  documents that the Deaton Agency produced.
9        Do you understand what I am representing
10  to you?
11    **A. Yes.**
12    Q.  Does that surprise you?
13    **A. No.**
14    Q.  Is it fair to say that the characterization of
15  PIP as full in documents like the auto rate quote
16  shown on the last page of Deaton 2 is a routine one in
17  your business?
18    **A. Yes.**
19    Q.  What I could do is show you some additional
20  examples of that characterization as it appears in
21  other sets of documents that Deaton produced simply so
22  you could confirm that full is in there. We can go
23  through that exercise. I'm happy to do that. Or you
24  could simply tell me that you expect to find it in all

11 (Pages 38 to 41)

Eames                                       v.            Nationwide Mutual Insurance Company
Glenn W. Deaton                     C.A. # 04-CV-1324 KAJ              August 9, 2005

Page 42

1  of them, if that's the case.
2     A.  Yes.  I would expect to see that usage of the
3  word "full" in the various documents that you have
4  obtained.
5     Q.  And you would expect to see it in connection
6  with PIP?
7     A.  Correct.
8        MR. SPADARO:  Just give me a couple of
9  minutes to think if I have anything else and I may
10  have nothing else.
11       MR. LEONI:  While we're on break, you're
12  not allowed to talk to me, him, anybody else about
13  your testimony, what questions you were asked, what
14  questions you may be asked.  You can talk to him about
15  anything else, hunting or whatever.
16       Do you understand that?
17       THE WITNESS:  Yes.
18       MR. LEONI:  Okay.
19       (A brief recess was taken.)
20       MR. SPADARO:  Mr. Deaton, let me show you
21  what I am going to ask the court reporter to mark as
22  Exhibit 3 to your deposition.
23       (Deaton Deposition Exhibit No. 3 was
24  marked for identification.)

Page 43

1  BY MR. SPADARO:
2     Q.  Mr. Deaton, take your time reviewing that
3  document, but I don't think I have too much to ask you
4  about it.  I will represent to you that the document
5  marked as D-3 entitled Auto Memorandum Of Insurance is
6  just that, an auto memorandum of insurance that was
7  shared with us by the plaintiffs in this case, Mr. and
8  Mrs. Eames.
9        Do you understand what I have represented?
10    A.  Yes.
11    Q.  You can I think readily determine that this is
12  not a document related to an auto policy that was sold
13  through your office.
14    A.  Correct.
15    Q.  But instead it appears to relate to a policy
16  sold through another Delaware insurance agent?
17    A.  Correct.
18    Q.  I simply want to ask you whether -- let me go
19  back.
20       You referred during your helpful
21  description of the step-by-step process by which the
22  auto policy is sold to a document type called the auto
23  memorandum of insurance.
24       Do you remember that?

Page 44

1     A.  Yes.
2     Q.  Is this that type of document that you
3  described in that explanation?
4     A.  Yes.
5        MR. SPADARO:  That's all I have,
6  Mr. Deaton.  I appreciate your patience and coming up
7  here today.
8        MR. CHEYNEY:  I have some questions.
9        MR. LEONI:  Mr. Cheney is going to ask you
10  some questions.
11  BY MR. CHEYNEY:
12    Q.  Mr. Deaton, the packet 63 that was shown to
13  you, there is no binder attached, is there?
14    A.  There is not.
15    Q.  Do you keep a copy of the binder?
16    A.  As a rule, generally no.
17    Q.  Do you give a binder copy to the policyholder
18  or the new policyholder?
19    A.  Yes.
20    Q.  What does the binder indicate?  Do you have a
21  copy of that that you could make available?
22    A.  I could make it available.  It is very similar
23  in its format and content to the memorandum of
24  insurance.

Page 45

1        I could elaborate briefly that the auto
2  memorandum of insurance is generally once the policy
3  is issued by the company and physically processed, the
4  auto memorandum would be issued because it has a
5  policy number on it.
6        The binder contains pretty much the same
7  information with a caveat that says this is a binder
8  subject to the issuance of the policy.  It gives a 30-
9  day time limit.
10    Q.  That's exactly my question.  The binder is not
11  the policy?
12    A.  Correct.
13    Q.  Now, the automobile insurance application that
14  you have as Exhibit 63, this is signed by the
15  applicant.  Is that correct?
16    A.  Correct.
17    Q.  Is the information on it signed by the
18  applicant when they sign it?
19    A.  Yes.
20    Q.  Do you explain to the applicant what the PIP,
21  personal injury protection, full and $71.90 means?
22    A.  Yes.
23    Q.  And what does full mean when it appears there
24  that's explained to the applicant?

12 (Pages 42 to 45)

Eames
Glenn W. Deaton

v.
C.A. # 04-CV-1324 KAJ

Nationwide Mutual Insurance Company
August 9, 2005

Page 46

1    A. It means that that coverage is without a
2    deductible meeting the statutory requirement, the full
3    limit of the statute, which is 15/30.
4    Q. Now, does that 71.90 that appears in that
5    column adjacent to full, to the right of full reflect
6    that premium for that policy coverage?
7    A. Yes.
8    Q. And if it were anything greater like the
9    additional policy coverage you spoke of, the APIP or
10   the 100/300,000, would that be a different premium?
11   A. Yes, it would.
12   Q. And that appears in the additional personal
13   injury protection, coverage not wanted?
14   A. Correct.
15   Q. Is there a discussion between you or your
16   agency and the insured as to the options of the APIP,
17   additional personal injury protection, or the minimum
18   policy limits?
19   A. Yes.
20   Q. Is this application always given, always given,
21   routinely given to the insured at the time they come
22   in?
23           MR. SPADARO: Objection to the form.
24           You can answer.

Page 47

1           MR. CHEYNEY: I think those words were
2    your words, "routine" and "common." I'm just trying
3    to get back to what your question was and repeat those
4    words.
5           So let me do it again.
6    BY MR. CHEYNEY:
7    Q. Is this application routinely and commonly
8    given to the insured at the time he signs the
9    application?
10   A. It is offered consistently to the insured if
11   they would like to have a copy of it.
12   Q. How often in your experience during the course
13   of the year, an average year do they take it or don't
14   take it?
15   A. It's taken rarely by -- in my experience, the
16   physical application is rarely taken by the applicant.
17   Their concern is the proof of coverage that they would
18   need for the purchase of their motor vehicle or their motor
19   vehicle or to go to Motor Vehicle for registration
20   processes, purposes.
21           A small percentage generally request the
22   hard copy application.
23   Q. Now, going to page 3 of the application, the
24   very last line under Notice, it says, and I quote the

Page 48

1    first three words, "Read your policy."
2           Do you see that?
3    A. Yes.
4    Q. Is that something that's always told to an
5    applicant, when the policy comes to read the policy
6    and if there's any questions to call you?
7    A. Yes.
8    Q. The application is not the policy, is it?
9    A. Correct.
10   Q. In the closing statement on page 4 there's a
11   paragraph four from the bottom. That first sentence
12   of that paragraph, could you read that?
13   A. Beginning with "I hereby"?
14   Q. Yes.
15   A. "I hereby acknowledge that all coverages,
16   required and optional, available to me have been fully
17   explained."
18   Q. In connection with that statement is it fair to
19   say from your agency and your personal viewpoint that
20   you explain to the insured at the time of
21   application what the limits are that they are
22   purchasing, what the deductibles available are and
23   what the available additional APIP coverage for PIP
24   might be?

Page 49

1    A. Yes.
2    Q. Now, it also says in the very last paragraph --
3    could you read that sentence fully, please?
4    A. "I have read and signed the Delaware Motorist
5    Protection Act form, required by Delaware statute and
6    have selected the coverage and limits requested
7    hereon."
8    Q. Now, is that form what page 6 would be?
9    A. Yes.
10   Q. And do you and your agency go over this form
11   and what is checked on the form?
12   A. Yes.
13   Q. Is frequently or infrequently the checking
14   result of actual conduct of the applicant or by your
15   agency?
16   A. Do you refer to the physical marking of the
17   box?
18   Q. Yes.
19   A. Generally by the agent or agency employee, not
20   the applicant.
21   Q. Is it always done as a result of a conversation
22   and specific question?
23   A. Yes.
24   Q. Do you see anywhere on this policy the

13 (Pages 46 to 49)

Eames                                          v.          Nationwide Mutual Insurance Company
Glenn W. Deaton                    C.A. # 04-CV-1324 KAJ                      August 9, 2005

Page 50

1  word "full" unmodified by any other word when it comes
2  to the no-fault coverage package number 3?
3          MR. SPADARO:  Objection.
4          MR. LEONI:  Objection. Because I don't
5  understand. You said, "Do you see anywhere on this
6  policy." What policy?
7          MR. CHEYNEY:  I beg your pardon. The
8  Delaware Motorists' Protection Act form. We're on
9  page 6.
10         MR. LEONI:  Of exhibit Deaton Exhibit 2.
11         MR. CHEYNEY:  Withdraw the question.
12  BY MR. CHEYNEY:
13    Q.  Looking at this form where it says the
14  coverages under A, paragraph 3, do you see that?
15    A.  Yes.
16    Q.  And do you see under B, "Options. You must
17  select limits and coverage desired"? Do you see that
18  paragraph?
19    A.  Yes.
20    Q.  Do you see paragraph or subparagraph 3 in that
21  column?
22    A.  Yes.
23    Q.  What does that say?
24    A.  "Full Coverage with no Deductible."

Page 51

1    Q.  Is it from that choice where the selection is
2  made in column C that information is put into the
3  computer as to what the PIP coverage is for the 15/30?
4    A.  Yes.
5    Q.  At the bottom of that page 6 can you read that
6  information that's contained in the box?
7    A.  "It is not the intent of this statement to
8  limit or discourage the purchase of increased limits
9  of liability and personal injury protection coverages,
10  or other additional coverages which may be available
11  from the company."
12    Q.  Is it your custom and routine and practice in
13  your agency to always offer the APIP coverage?
14    A.  Yes.
15    Q.  The screen saver, page 7 of this of Exhibit 63,
16  is this something that is routinely and commonly given
17  to the insured or is this a screen saver that you use
18  for making a rate quote?
19         MR. SPADARO:  Objection to the form.
20    Q.  It's okay.
21    A.  This is a document that is generally used for
22  explanation and comparison of options, but it is
23  generally not given to the applicant unless requested.
24  It's more of a worksheet, if you will.

Page 52

1    Q.  It's a rate quote sheet, correct?
2    A.  Correct.
3    Q.  It is not the policy, is it?
4    A.  No.
5          MR. LEONI:  Let me just make sure the
6  record is clear that this is Deaton Exhibit 2 we're
7  talking about which has on the first page a marking
8  number 63.
9          MR. CHEYNEY:  Correct. It's the last page
10  of that.
11  BY MR. CHEYNEY:
12    Q.  In connection with dealing with applicants for
13  insurance, is there a script given to you by
14  Nationwide as to what to say when talking about PIP
15  protection?
16    A.  No.
17    Q.  Is it fair to say that when dealing with
18  applicants everyone is different and unique?
19    A.  Yes.
20    Q.  Although the areas are covered, there's no
21  script or set formula of language used?
22    A.  That's correct.
23          MR. CHEYNEY:  That's all I have. Thank
24  you.

Page 53

1  BY MR. SPADARO:
2    Q.  I just have a couple of follow-up questions,
3  Mr. Deaton, not much.
4          If you would, keep before you Deaton
5  Exhibit 2. If you would turn to the page that bears
6  the heading Closing Statement, if you could find that.
7    A.  Okay.
8    Q.  If you would direct your attention to the
9  paragraph that begins a little bit, begins about the
10  middle of the page and begins with the words "I hereby
11  acknowledge that all coverages."
12         Do you see that?
13    A.  Yes.
14    Q.  That sentence says, "I hereby acknowledge that
15  all coverages, required and optional, available to me
16  have been fully explained."
17         Do you see that?
18    A.  Yes.
19    Q.  And Mr. Cheney asked you about that sentence.
20  Do you recall that?
21    A.  Yes.
22    Q.  Does the reference to coverages being fully
23  explained have meaning to you?
24    A.  Yes.

14 (Pages 50 to 53)

Eames                                    v.              Nationwide Mutual Insurance Company
Glenn W. Deaton                   C.A. # 04-CV-1324 KAJ                        August 9, 2005

Page 54

1   Q.  And what does it mean for coverages to be fully
2   explained?
3   A.  To make sure that the applicant understands
4   what coverages are available to them and what limits
5   of coverages that they are purchasing, what optional
6   limits might be available to them, and coverages not
7   just relating to the PIP, as we mentioned, but
8   additional coverages in terms of rental car, towing
9   and labor, other accessory coverages that may be
10  available that they may not have thought about or
11  contemplated.
12  Q.  The reference in that sentence to coverages
13  being fully explained does not imply a minimal
14  explanation, does it?
15  A.  No.
16  Q.  The last sentence on that page that bears the
17  heading Closing Statement and is part of Deaton
18  Exhibit 2 was a sentence that Mr. Cheyney asked you to
19  read fully.
20      Do you recall that?
21  A.  Yes.
22  Q.  And in response to his request, you read the
23  entire sentence, didn't you?
24  A.  Yes.

Page 56

1   insurance agents pursuant to the Eames plaintiffs'
2   subpoenas the word "full" appears next to the term
3   "PIP."
4           MR. LEONI:  So stipulated.
5           MR. CHEYNEY:  It's agreed.
6           MR. SPADARO:  I have nothing further.
7   Thank you very much.
8           (Proceedings concluded at 12:10 p.m.)
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

Page 55

1   Q.  You didn't read part of it, right?
2   A.  Correct.
3           MR. SPADARO:  That's all I have.  Thank
4   you.
5           MR. LEONI:  Any other questions?
6           MR. CHEYNEY:  No.
7           MR. LEONI:  All right.
8           (Discussion off the record.)
9           MR. SPADARO:  The parties, being the Eames
10  plaintiffs, the defendant Nationwide and the remaining
11  insurance agents to be deposed today pursuant to the
12  Eames plaintiffs' subpoena, which includes the
13  Broadbent Agency, the Truitt Agency and the Hoban
14  Agency, have agreed to a stipulation in lieu of
15  continuing with those depositions so that based on
16  this stipulation the depositions of the Broadbent,
17  Truitt and Hoban designees pursuant to the plaintiffs'
18  subpoenas will no longer be necessary and have been
19  canceled.
20      And the terms of the stipulation are as
21  follows, and I invite counsel, please, to indicate
22  their assent or disagreement with the way that I
23  characterize it.  The parties have stipulated that in
24  the vast majority of documents produced by the

Page 57

1           I N D E X
2   DEPONENT:  GLENN W. DEATON              PAGE
3     Examination by Mr. Spadaro        2
      Examination by Mr. Cheyney        44
4     Examination by Mr. Spadaro        53
5           E X H I B I T S
6   DEATON DEPOSITION EXHIBITS            MARKED
7   1 Letter to Glenn Deaton Agency, Inc. from
      John S. Spadaro dated March 24, 2005
8     with subpoena attached             7
9   2 Multipage document captioned "Automobile
      Insurance Application Nationwide Mutual
10    Insurance Company"                 27
11  3 Document captioned "Auto Memorandum Of
      Insurance"                         42
12
    ERRATA SHEET/DEPONENT'S SIGNATURE    PAGE 58
13
    CERTIFICATE OF REPORTER              PAGE 59
14
15
16
17
18
19
20
21
22
23
24

15 (Pages 54 to 57)

Page 58

```
1
2
3          REPLACE THIS PAGE
4          WITH THE ERRATA SHEET
5          AFTER IT HAS BEEN
6          COMPLETED AND SIGNED
7          BY THE DEPONENT.
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
```

Page 59

```
1   State of Delaware    )
                         )
2   New Castle County    )
3
4          CERTIFICATE OF REPORTER
5
           I, Kurt A. Fetzer, Registered Diplomate
6   Reporter and Notary Public, do hereby certify that
    there came before me on Tuesday, August 9, 2005, the
7   deponent herein, GLENN W. DEATON, who was duly sworn
    by me and thereafter examined by counsel for the
8   respective parties; that the questions asked of said
    deponent and the answers given were taken down by me
9   in Stenotype notes and thereafter transcribed by use
    of computer-aided transcription and computer printer
10  under my direction.
11         I further certify that the foregoing is a true
    and correct transcript of the testimony given at said
12  examination of said witness.
13         I further certify that I am not counsel,
    attorney, or relative of either party, or otherwise
14  interested in the event of this suit.
15
16
17         Kurt A. Fetzer, RDR, CRR
           Certification No. 100-RPR
18         (Expires January 31, 2008)
19
    DATED:
20
21
22
23
24
```

Nationwide - Information Center

Nationwide.com | NationwideInsurance.com | NationwideFinan

Contact Us | Privacy

# Nationwide Insurance

Search Nationwide

Powered by Knova™

**Tools**

▸ Insurance Glossary
▸ Auto Coverage Guide
▸ Home Loan Calculator
▸ Auto Loan Calculator
▸ Coverage Checklists

**Languages**

▸ English
▸ Español

## Tools

### Welcome to The Insurance Glossary

We know that insurance can sometimes get a little confusing. For this reason we have compiled a list of terms that will help you understand things a little better. This is just another part of us being On Your Side.

**Please Note:** Insurance terms and definitions are intended for informational purposes only and may vary in their applicability from state to state. The provided terms and definitions do not in any way replace or otherwise alter the definitions and information contained in individual insurance policies.

A B C D E F G H I J K L M N O P Q R S T U V W X Y Z

## A

Accident
Accident Free Discount
Accidental Death
Accidental Death and Dismemberment
Actual *Cash* Value (ACV)
Additional Insured
Additional Interest - Employer
Additional Living Expense
After-Market
Aggregate PIP
All Perils Deductible
Altered Vehicle
Amendatory Endorsement
Annuity
Anti-Hot-Wiring Circuit
Anti-Theft Device
Anti-Theft Device Discount
Antique Auto
Appraisal
Arbitration
Arson
Assignment
Audio/Visual/Data
Auto Death and Dismemberment Coverage
Auto Death Indemnity Coverage
Auto Loss History
Automatic Shutoff and Reset

## B

Backup Battery
Bankruptcy
Binder
Boatowners (Pleasure)

**Insurance Q**

▸ Auto
▸ Homeowner
▸ Condominiu
▸ Renters
▸ Retrieve Qu

**Agent Locate**

▸ Find an Age

**MyNationwi**

▸ Policy Servic
▸ Check on a
▸ Billing

**Claims**

▸ Report a Cla
▸ Find a Repai

**Join Our Tea**

▸ Job Opportu
▸ Become an

B68

Nationwide - Information Center  Page 1 of 1

Nationwide.com | NationwideInsurance.com

Contact Us | Privacy

# Nationwide Insurance

Search Nationwide

Powered by Knova™

## Tools

▶ Insurance Glossary
▶ Auto Coverage Guide
▶ Home Loan Calculator
▶ Auto Loan Calculator
▶ Coverage Checklists

## Languages

▶ English
▶ Español

## Tools

Return to Insurance Glossary

### Declarations Page

A summary page of an insurance policy that identifies the policyholder, the property covered, the coverages, and the premium amounts; usually serves as the cover page of a policy document.

**Please Note:** Insurance terms and definitions are intended for informational purposes only and may vary in their applicability from state to state. The provided terms and definitions do not in any way replace or otherwise alter the definitions and information contained in individual insurance policies.

### Other resources

### Related Terms

Expiration Date | Limits of Insurance | Policy Data Page | Policy Date | Policy Year | Term of Policy

## Insurance Q

▶ Auto
▶ Homeowner
▶ Condominiu
▶ Renters
▶ Retrieve Qu

## Agent Locat

▶ Find an Age

## MyNationwi

▶ Policy Servic
▶ Check on a
▶ Billing

## Claims

▶ Report a Cla
▶ Find a Repai

## Join Our Tea

▶ Job Opportu
▶ Become an ,

© 2000-2005 Nationwide Mutual Insurance Company and Affiliated Companies  All rights reserved  Additional legal terms

Property & Casualty products underwritten by Nationwide Mutual Insurance Company and its Affiliated Companies.
Life Insurance products underwritten by Nationwide Life Insurance Company, a member of Nationwide Financial Services, In
Nationwide Mutual Insurance Company, Nationwide Life Insurance Company and Affiliated Companies
Home Office: One Nationwide Plaza, Columbus, OH 43215-2220
**Nationwide®, the Nationwide Framemark and Nationwide Financial are federally registered service marks of Nationwi
Insurance Company.**



EQUAL HOUSING
OPPORTUNITY
INSURER

B69

## IN THE UNITED STATES DISTRICT COURT
## IN AND FOR THE DISTRICT OF DELAWARE

THOMAS A. EAMES, ROBERTA L. EAMES )
and TAMMY EAMES, on behalf of )
themselves and all others )
similarly situated, )
    )
          Plaintiffs, )    C.A. No. 04-CV-1324KAJ
    )
v. )
    )
NATIONWIDE MUTUAL INSURANCE )
COMPANY, )
    )
          Defendant. )

### NOTICE OF SERVICE

I hereby certify that on this date, I electronically filed the foregoing document with the Clerk

of the Court using CM/ECF which will send notification of such filing(s) to the following:

Nicholas E. Skiles, Esq.
Swartz Campbell LLC
300 Delaware Avenue, Suite 1130
P.O. Box 330
Wilmington, DE 19899

MURPHY SPADARO & LANDON

/s/ John S. Spadaro
John S. Spadaro, No. 3155
1011 Centre Road, Suite 210
Wilmington, DE 19805
(302) 472-8100

Attorneys for plaintiffs
Thomas A. Eames, Roberta L. Eames and
Tammy Eames (on behalf of themselves and
all others similarly situated)

August 22, 2005

123255