# Murphy Spadaro & Landon

ATTORNEYS

1011 CENTRE ROAD, SUITE 210
WILMINGTON, DELAWARE 19805

PHONE 302.472.8100
FAX 302.472.8135

302.472.8101

jspadaro@msllaw.com

September 9, 2005

**BY ELECTRONIC FILING**
The Honorable Kent A. Jordan
United States District Court
844 North King Street, Room 4209
Wilmington, DE 19801

      RE: **Eames v. Nationwide Mut. Ins. Co.**
           **C.A. No.: 04-CV-1324KAJ**

Dear Judge Jordan:

      I write on behalf of the Eames plaintiffs in anticipation of our September 13 teleconference.

      The Court will recall our last teleconference on August 5. Nationwide's position was that the Eames plaintiffs' document requests (seeking documents relating to Nationwide's characterization of PIP as "full") required it to produce no more than a purported copy of Mr. Eames's insurance contract. The Court rejected that position emphatically:

> So what I'm telling you is if it comes down to advocacy before me on those discovery dispute, you come up way short, mister -- way, way, way short. The record that looks like has developed here that is presented to me is basically one where you said I'll give you the document. I'll give you the contract. Otherwise, you can drop dead until my 12(b) . . . is decided. That is sort of the gist of the feeling or the communications that seem to be going back and forth. And I'm just trying to disabuse you of this in the most direct, clear, emphatic way I possibly can. I will not tolerate this.

Aug. 5 tr. at 33 (Ex. A). The Court also indicated that a continued failure to "take the import of [the Court's] words and manage your discovery appropriately" would see the Court "stepping it up into the realm of sanctions . . . ." Id. at 38.

      Five weeks have passed since the August 5 teleconference, but little progress has been made. Nationwide has still yet to produce even a single additional document. It has not yet said whether any responsive documents exist. It has refused to pursue the most obvious avenues for identifying responsive documents, insisting instead on artificial limitations that seem designed to yield a "null set." And it has yet to complete (or say when it might complete) even its artificially limited search.

123800

The Hon. Kent A. Jordan
September 9, 2005
Page 2

---

A complete copy of the parties' discovery-related communications since the August 5 teleconference is attached at Exhibit B, and arranged in chronological order.[1] These communications deserve to be read in full, if only to avoid any claim by Nationwide of a supposed lack of context. A full reading should also make clear the following essential points on *process* and *substance*:

- As regards the process, the Court will see that even in the immediate aftermath of the August 5 hearing Nationwide displayed an attitude of recalcitrance and flippancy. For example, I wrote to Mr. Cheyney on August 5, just hours after our teleconference with the Court concluded. In that message, I reiterated the questions that Nationwide had previously refused to answer as part of the meet-and-confer process, asking (for example) whether Nationwide would attempt to identify those persons who might be knowledgeable regarding the genesis of the use of the "full" modifier. Ex. B.

Mr. Cheyney's response, likewise sent just hours after the Court admonished the parties, is so obviously lacking in any spirit of compromise that it essentially speaks for itself. But we do call the Court's attention to one particularly troubling passage:

> I do not anticipate discovering any documents you suggest exist.
> Perhaps Mr. Muncie has them.

Id. The reference to "Mr. Muncie" is to the local Delaware insurance agent through which the Eames's auto policy was placed. The suggestion that Nationwide's corporate-level documents on the genesis of the offending practice might best be found in the hands of a tiny insurance agency from Seaford, Delaware (as opposed to Nationwide itself) was obviously meant to be facetious.

Mr. Cheyney's August 5 message also promised a response "on Wed. next when my report returns from vacation." Id. But no response arrived the following Wednesday, and Mr. Cheyney later denied having promised any response by that date. Id. The succeeding weeks brought more of the same, as we were forced to chase Nationwide for return communications on August 11, August 16, August 22 and September 2. Id.

- Should we finally leave the issue of "process" behind? The answer to that question must be no. First, the fact that Nationwide has accomplished so little in the five weeks since we were last before the Court is a direct result of its conduct throughout the month of August -- marked by the same foot-dragging and noncooperation that the Court earlier condemned as intolerable. Second, Nationwide's conduct in the immediate aftermath of the August 5 teleconference constitutes a challenge to the Court's authority; in essence, a thumbing of Nationwide's nose. We therefore request that sanctions be imposed on Nationwide for its conduct since August 5.

- As regards issues of substance, the Court's intervention is sorely needed.

---

[1] No in-person meeting has occurred between the parties, because Nationwide's counsel was unavailable on each of the four dates we proposed for such a meeting. Ex. B.

123800

The Hon. Kent A. Jordan
September 9, 2005
Page 3

---

      The documents attached at Exhibit B show that Nationwide has recently agreed to conduct certain limited searches. The bulk of its effort is directed to searching what Nationwide calls "Delaware state email files." Specifically, Nationwide has offered to search e-mail archives for Delaware-based insurance agents, and (it appears) a small group of Nationwide corporate representatives with responsibility for the Delaware region. Nationwide intends to limit this search to e-mails generated on or after September 1, 2002.

      This search strategy is designed for failure. First, the characterization of PIP as "full" is nearly universal among Nationwide's insurance agents. See Ex. C (setting forth the parties' stipulation on this point). At the risk of stating the obvious, the fact that all of Nationwide's agents employ this device suggests that, at some point, Nationwide instructed them to do so.

      But if the practice is widespread, it is likely used in a number of states. There is thus no reason to believe that the corporate-level documents we seek are specific to Delaware; and no particular reason to expect that persons with Delaware-specific duties would attach such documents to their e-mails. Further, if the practice had its genesis prior to September 2002, Nationwide's search is almost certain to fail.

      To prevent Nationwide from engineering a failed search, the Eames plaintiffs have made several proposals. First, we have asked Nationwide to make a good-faith effort to identify the persons most knowledgeable of the genesis of the use of the "full" modifier. Second, we have asked Nationwide to include in their search not only the "Delaware" cast of characters, but persons to whom they report. Third, we have asked Nationwide to conduct a search of its file server, rather than simply searching the e-mails of specified individuals. Nationwide has refused these requests. Ex. B.

      Nationwide may criticize these proposals as somehow inapplicable to its information systems. But that is part of the larger point: five weeks after the Court threatened sanctions for Nationwide's failure to negotiate, we still know nothing about how Nationwide creates, stores or retrieves documents.

      We ask that Nationwide be ordered to conduct immediately both the limited searches it has offered to conduct, and the broader, more promising efforts we have proposed.

      In summary, we believe that Nationwide should be subject to meaningful sanctions, and made to comply with the steps outlined above.

                                             Respectfully,

                                             /s/ John S. Spadaro

                                             John S. Spadaro

JSS/slr
cc: Curtis P. Cheyney, III, Esq. (by electronic filing)

123800

IN THE UNITED STATES DISTRICT COURT
IN AND FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| THOMAS A. EAMES, ROBERTA L. EAMES and TAMMY EAMES, on behalf of themselves and all others similarly situated, ) ) ) ) ) | |
| Plaintiffs, ) ) | C.A. No. 04-CV-1324KAJ |
| v. ) ) | |
| NATIONWIDE MUTUAL INSURANCE COMPANY, ) ) ) ) | |
| Defendant. ) | |

## NOTICE OF SERVICE

I hereby certify that on this date, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF which will send notification of such filing(s) to the following:

Nicholas E. Skiles, Esq.
Swartz Campbell LLC
300 Delaware Avenue, Suite 1130
P.O. Box 330
Wilmington, DE 19899

MURPHY SPADARO & LANDON

/s/ John S. Spadaro
John S. Spadaro, No. 3155
1011 Centre Road, Suite 210
Wilmington, DE 19805
(302) 472-8100

Attorneys for plaintiffs
Thomas A. Eames, Roberta L. Eames and
Tammy Eames (on behalf of themselves and
all others similarly situated)

September 9, 2005

123811