IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

---

Thomas A. Eames, Roberta L. Eames, and            CIVIL ACTION
Tammy Eames, on behalf of themselves
and all others similarly situated,
                                                  NO.  04-1324 KAJ
                    Plaintiffs,

v.

Nationwide Mutual Insurance Company,

                    Defendant.

---

**DEFENDANT NATIONWIDE MUTUAL INSURANCE COMPANY'S
REPLY IN SUPPORT OF MOTION TO DISMISS
THE COMPLAINT PURSUANT TO FED.R.CIV.R. 12(b)(6)**


Date: September 12, 2005              SWARTZ CAMPBELL LLC
                                      Nicholas Skiles, Esquire
                                      Delaware Bar  No.  3777
                                      Attorneys for Defendant, Nationwide
                                      Mutual Insurance Company

## <u>TABLE OF CONTENTS</u>

Table of Citations ……………….…………………………….………..ii

SUMMARY.................................................................................... 1

ARGUMENT …………….……………………………………………1

    A.  Plaintiffs Fail to State a Claim for Declaratory Judgment or Breach of Contract…………………………………………….3

    B.  Plaintiffs Fail to State a Claim for Consumer Fraud…………….9

    C.  Plaintiffs Fail to State a Claim for Civil Conspiracy…………...10

CONCLUSION……………………………………………………….12

## TABLE OF CITATIONS

**Cases**                                                                                         **Page**

1.  Rhone-Poulenc Basic Chemicals Company v. American Motorists Insurance
    Company, 616 A. 2d 1192 (Del. 1992)…………………………………………..3

2.  Hallowell v. State Farm Mutual Automobile Insurance Company, 443
    A. 2d 925 (Del. 1982)………………………………………………………………3, 8

3.  O'Brien v. Progressive Northern Insurance Company, 785 A. 2d 281
    (Del. 2001)………………………………………………………………………4

4.  Eagle Industries, Inc. v. Devilbiss Health Care, Inc., 702 A. 2d 1228
    (Del. 1997)………………………………………………………………………4

5.  Handel v. American Farmers Mut. Cas. Co., 255 N.W.2d 903 (Wisc. 1977)…...7, 8

6.  Westhuis v. Rural Ins. Co., No. 9102943, 1992 EL 348297 (Wis. Ct. App.
    August 4, 1992)………………………………………………………………..8

7.  Freeman v. Massachusetts Mutual Life Ins. Co., 183 N.W. 2d 832
    (Mich. Ct. App. 1970)………………………………………………………9

8.  S&R Assoc. v. Shell Oil Co., 725 A.2d 431 (Del. Super. Ct. 1998)……………..10

9.  Ramunno v. Crawley, 705 A.2d 1020 (Del. 1998)………………………………10

10. Tracinda Corp. v. DaimlerChrysler AG, 197 F.Supp.2d 42 (2002)………………10

11. Capano Management Co. v. Transcontinental Insurance Co., 78 F.Supp.
    2d 320 (D.Del. 1999)………………………………………………………...11

12. Alfus v. Pyramid Technology Corp., 764 F.Supp. 598 (N.D.Cal. 1991)………....10, 11

## SUMMARY

This case involves the interpretation of an insurance policy. The issue is the limits of Personal Injury Protection ("PIP") coverage provided by the policy.

The governing policy clearly and specifically defines the applicable PIP limits. The body of the policy unequivocally provides that the limits are $15,000/$30,000. These amounts are not ambiguous, and are not subject to any other interpretation.

In an effort to attempt to create an ambiguity where none exists, plaintiffs refer to (and mischaracterize) documents which are not part of the insurance contract. Moreover, these documents are dated after the insurance policy was issued, and after the subject accident occurred. They therefore cannot have been part of the contract, and could not have misled plaintiffs.

Because the insurance policy itself is clear and unambiguous, plaintiffs' efforts to have this Court consider these extrinsic materials fail under Delaware law. Moreover, despite plaintiffs' efforts to twist and mischaracterize them, they in no way contradict the clear and unambiguous terms of the governing policy.

Plaintiffs' claims fail as a matter of law as established below and in Nationwide's opening brief. Nationwide's motion to dismiss should therefore be granted.

## ARGUMENT

Plaintiffs' case is based upon their representation to this Court that: "As is the case with virtually all Delaware auto policies, the actual amount of PIP benefits cannot be determined by reference to the policy text alone." *See* Eames' Plaintiffs' Answering Brief in Opposition to Nationwide's Motion to dismiss ("Opposition"), D.I. #89, pgs. 5-6.

1

This is simply not true.  The actual amount of PIP benefits can unequivocally be determined by reference to the policy text alone.  The policy text specifically states under the heading Personal Injury Protection Coverage:

> We will pay benefits up to a total of $15,000 for bodily injury per insured in one accident, and up to $30,000 in total if two or more insureds are injured in one accident.  In case of bodily injury to you or a household member, we will subtract any deductible amount selected from the amount otherwise payable.
>
> Within the $15,000/$30,000 total limits, Personal Injury Protection benefits are payable as follows . . .

*See* Nationwide's Appendix to Corrected Motion to Dismiss the Complaint, D.I. #3, pgs. A20-A49 (pg. N.2 of policy).   Plaintiffs have also submitted a copy of the policy containing this specific provision.  *See* Appendix to Plaintiffs' Opposition, D.I. #90, pg. B15.[1]

The Nationwide Auto Policy Declarations are also part of the policy.  With regard to PIP limits, it states "SEE POLICY."  Accordingly, the declarations refer to the above specific provision in the policy text.  *See* Nationwide's Appendix to Corrected Motion to Dismiss the Complaint, D.I. #3, pgs. A20-A21.

Plaintiffs attempt to characterize various extrinsic documents as declarations. This is clearly a mischaracterization.  The documents on their face do not purport to be declarations, and are dated after the policy was issued and after the subject accident.

---

[1] Plaintiffs' effort to dodge this specific policy provision by characterizing it as "preprinted policy text" is unpersuasive. The policy text is the policy text, and it specifically defines the PIP limits.

Indeed, while the actual declarations have been provided to plaintiffs, they omitted them from their appendix to their Opposition.

But all this does not change the simple fact that there is one set of governing policy declarations, and they refer to the provisions in the policy text itself, which specifically define the governing PIP limits.

### A.      Plaintiffs Fail To State a Claim for Declaratory Judgment or Breach of Contract

"The proper construction of any contract, including an insurance contract, is purely a question of law." *Rhone-Poulenc Basic Chemicals Company v. American Motorists Insurance Company*, 616 A.2d 1192, 1195 (Del. 1992). "Clear and unambiguous language in an insurance policy should be given its ordinary and usual meaning." *Id.*

"[W]hen the language of an insurance contract is clear and unequivocal, a party will be bound by its plain meaning because creating an ambiguity where none exists could, in effect, create a new contract with rights, liabilities and duties to which the parties had not assented." *Hallowell v. State Farm Mutual Automobile Insurance Company*, 443 A.2d 925, 926 (Del. 1982).

### There is No Ambiguity in this Case.

The Delaware Supreme Court has clearly defined the duty of courts in construing the provisions of insurance policies:

> The duty of the courts is to examine solely the language of the contractual provisions in question to determine whether the disputed terms are capable of two or more reasonable interpretations. In so doing, Delaware courts are obligated to confine themselves to the language of the document and not to look to extrinsic evidence to find ambiguity.

3

*O'Brien v. Progressive Northern Insurance Company,* 785 A.2d 281, 289 (Del. 2001) (citations omitted). *See also Eagle Industries, Inc. v. Devilbiss Health Care, Inc.*, 702 A.2d 1228, 1232 (Del. 1997) ("If a contract is unambiguous, extrinsic evidence may not be used to interpret the intent of the parties, to vary the terms of the contract or to create an ambiguity.")

The policy contract in this case specifically defines the applicable PIP limits. The specific numbers are defined - $15,000/$30,000. Specific numbers cannot possibly be subject to two or more interpretations. Put simply, a number is a number, and it is what it is. The Court should therefore not look beyond the policy itself as established above, and plaintiffs' Complaint fails as a matter of law.

**The Extrinsic Documents Plaintiffs Refer to Are Not Part of the Policy and Do Not Support Their Arguments.**

In their attempt to create an ambiguity where no ambiguity exists, plaintiffs mischaracterize extrinsic documents (which are not even properly considered as established above) and somehow attempt to convince the Court that they should be considered part of the governing insurance policy. Plaintiffs' brief mischaracterizes these documents as "declarations."

Despite plaintiffs' creative efforts, these documents show on their face that they are not declarations and are not part of the policy. In fact, they further show on their face that they are dated after the date the policy was issued and after the date of the accident at issue.

Plaintiffs' maneuvering is nothing more than an attempt to avoid the specific governing policy language. Simply put, the contract is what it is, and it says what it says.

Nothing plaintiffs argue can ever change this under Delaware law.  The insurance policy contract is Nationwide Auto Policy 52A733616, and consists of the booklet entitled "Your Nationwide Auto Policy" and the two-page "Declarations" (with the words, in upper case letters at the top of both pages "NATIONWIDE AUTO POLICY DECLARATIONS").  As set forth above, both the declaration page and the body of the policy itself clearly establish that Mr. Eames purchased PIP benefits in the amount of $15,000 per person, with a maximum benefit of $30,000 for all claimants per each accident.

Contrary to Delaware law, plaintiffs are asking this Court to consider other extrinsic documents and somehow declare them to be "declarations" and therefore part of the policy.  For example, plaintiffs refer to what they call "Nationwide 'Vehicle Screen' declarations page (Feb. 8, 2003)."  *See* Opposition Appendix, E.I. #90, pg. B30.  The source of this document is unknown, it is covered in handwritten notes, and the source of the handwritten notes is unknown.  It appears to be a print-out of something pulled up on a computer screen.  The document itself indicates it was printed on February 8, 2003 (and is described as such by the plaintiffs).  February 8, 2003 is one day after the underlying accident in which plaintiffs were injured, and well after the date plaintiffs purchased the governing policy.  *See* Complaint, D.I. #1, Paragraph 3.

A second document which plaintiffs characterize (after the fact) as a "declaration" is a document they refer to as "Culver Insurance Agency 'Auto Memorandum of Insurance' (June 17, 2003)".  *See* Opposition Appendix, D.I. #90, pg. B32.  Plaintiffs note that the document, produced not by Nationwide but by Culver Insurance Agency, was allegedly created June 17, 2003.  This is over four months after the underlying

accident at issue, and therefore also well after plaintiffs had purchased the insurance policy at issue.

Even if these extrinsic documents could be properly considered, they are dated after the governing policy was issued and after the date of the subject accident. They therefore cannot possibly be relied upon to somehow define the PIP limits in effect at the time of the accident. Moreover, contrary to plaintiffs' characterization, they make no reference to PIP *__limits__*. Rather, they merely reflect that the Eames had elected PIP coverage with no deductible.

Plaintiffs also attempt to rely upon a glossary page that they printed from a Nationwide website on or about August 16, 2005, more than two years after the accident and well after this case was filed. They rely upon this to support their apparent theory that they can indiscriminately label anything they want as "declarations," and thereby have them become part of the governing policy. *See* Opposition, D.I. #89, pg. 12, and Opposition appendix, D.I. #90, pgs. B68-69. The glossary page is irrelevant to any aspect of this case.[2] Further, plaintiffs fail to quote in the body of their Opposition the following important language immediately below the definition that they attempt to rely upon:

> Please Note: Insurance terms and definitions are intended for informational purposes only and may vary in their applicability form state to state. *__The provided terms and definitions do not in any way replace or otherwise alter the definitions and information contained in individual insurance polices.__*

---

[2] The definition describes information that is indeed in the NATIONWIDE AUTO POLICY DECLARATION; however, the definition does not state that a piece of paper or any old document which includes all of the pieces of information outlined is defined as a declaration page.

*See* Opposition Appendix, D.I. #90, pg. 69 (emphasis added).

The NATIONWIDE AUTO POLICY DECLARATION is (and can only be) the two-page NATIONWIDE AUTO POLICY DECLARATION provided to plaintiffs, which specifically: (1) identifies the insureds; (2) identifies the insurance company providing the coverage (here it is Nationwide Mutual Insurance Company); (3) identifies the insured vehicles; (4) identifies where the policy was countersigned and by whom; (5) states the policy period of coverage; (6) identifies the endorsements purchased, if any; (7) states the premiums charged for each individual coverage, and for each automobile; and (8) provides coverage figures directly or by reference to the policy booklet.

Further, plaintiffs' argument regarding use of documents when selling insurance is contradicted by the very documents plaintiffs refer to. As established above, these documents postdate every relevant event in this case. The documents postdate: 1) the purchase of insurance; and 2) the underlying accident for which plaintiffs seek coverage beyond the coverage explicitly provided under the terms of the written contract. Therefore, the documents could not have been "shared with the consumer in the course of [Nationwide] selling its policy," and certainly could not have misled plaintiffs.

**The Authority Plaintiffs Rely Upon Does Not Support Their Arguments**.

The Wisconsin and Michigan cases cited by plaintiffs do not support their arguments. Further, the Delaware law cited above controls this case, not the decisions of a Wisconsin or Michigan court.

In *Handel v. American Farmers Mut. Cas. Co.*, 255 N.W.2d 903 (Wisc. 1977), the Court had already determined that there was an ambiguity present in the policy itself, before it looked to the correspondence of the insurance company for clarification. The

letters from the insurance company specifically explained and answered a unique coverage question the insured had presented to the insurance company regarding the ambiguity.

Further, this decision is based upon Wisconsin's "reasonable expectations" law. An insured's reasonable expectations only comes into play under Delaware law if there is an ambiguity in the insurance contract. Specifically, Delaware's Supreme Court has held that:

> [T]he Court will look to the reasonable expectations of the insured at the time when he entered into the contract if the terms thereof are ambiguous or conflicting, or if the policy contains a hidden trap or pitfall, or if the fine print takes away that which has been given by the large print. But the doctrine is not a rule granting substantive rights to an insured when there is no doubt as to the meaning of policy language.

*Hollowell v. State Farm*, 443 A.2d at 927.

In this case there is no doubt as to the meaning of the policy language as established above. Accordingly, this doctrine does not apply.

The subsequent Wisconsin case cited by plaintiffs is *Westhuis v. Rural Mural Ins. Co.*, No. 9102943, 1992 WL 348297 (Wis. Ct. App. August 4, 1992). It is an unpublished decision of Wisconsin's intermediate appellate court, and of limited precedent, even in Wisconsin. Further, the case merely refers to *Handal, supra,* as a reason for stating that a certificate of insurance is part of a contract. *Id.* at *2. However, the court goes on to describe the certificate as separate and independent offer of coverage, which was subsequently accepted by the insureds. "The result was an agreement to provide the coverage indicated on the certificate." *Id.* The court did also hold that the certificate was part of the other insurance contract. Nationwide respectfully

8

asserts that the Wisconsin court ruled and reasoned incorrectly, and that the decision itself is somewhat contradictory. But nevertheless, the Delaware law cited above controls this case.

Plaintiffs' final case is Michigan intermediate appellate court decision in *Freeman v. Massachusetts Mutual Life Ins. Co.*, 183 N.W.2d 832 (Mich. Ct. App. 1970). *Freeman* similarly has no applicability to this case. In *Freeman* the certificate was in actuality a 50-page document "containing all of the parts of an actual policy of insurance." *Id* at 836. Further, the life insurance policy was a group policy purchased by the plaintiff's decedent's employer. Neither the plaintiff nor her deceased husband/former-employee had purchased the policy or requested any coverage.

As established above, the governing policy clearly, specifically, and unambiguously establishes the PIP coverage limits at issue in this case are $15,000/$30,000. They are no more, and no less. Nationwide can not have breached the policy by paying the limits specifically provided for in the policy itself. Accordingly, Plaintiffs' do not state (and can not state) claims for breach of contract or declaratory relief. These claims should therefore be dismissed with prejudice.

**B.**     **Plaintiffs Fail To State a Claim for Consumer Fraud**

Plaintiffs' basis for their additional claim of consumer fraud is a "bad faith breach of contract." This claim fails for the reasons outlined above: the governing policy clearly, specifically, and unambiguously establishes plaintiffs did not contract for, and do not have, the additional PIP benefits they demand.

Further, plaintiffs argue and admit that consumer fraud claims require that the consumer prove "the seller's intent that others rely upon the offending

misrepresentation." *See* Opposition, citing *S&R Assoc. v. Shell Oil Co.,* 725 A.2d 431, 440 (Del. Super. Ct. 1998).   But plaintiffs do not plead that a single offending misrepresentation was actually made to them in this case.   To the contrary, as noted above, plaintiffs propose any number of different documents (created after the fact) as the basis for their claims that they (and others) should be given higher coverage than they specifically contracted and paid for.

Plaintiffs therefore fail to state a claim for consumer fraud, or oppose the arguments presented in Nationwide's Motion to Dismiss.   Plaintiffs' claim for consumer fraud should be dismissed with prejudice.

### C.   <u>Plaintiffs Fail to State a Claim for Civil Conspiracy</u>

Plaintiffs' claim for civil conspiracy fails for the same reason that their other claims fail:   the governing policy clearly, specifically, and unambiguously establishes they did not contract for, and do not have, the additional PIP benefits they demand.

Plaintiffs criticize Nationwide's reference to *Ramunno v. Cawley*, 705 A.2d 1029 (Del. 1998) for the proposition that there is a heightened pleading standards in civil conspiracy cases.   Nationwide directs the Court's attention to this Court's opinion in *Tracinda Corp. v. DaimlerChrysler AG*, 197 F.Supp. 2d 42 (2002):

> Under both California and Delaware law, civil conspiracy is not an independent cause of action, and thus, a civil conspiracy claim must be predicated upon an underlying wrong.   [citations omitted.]   Further, both California and Delaware apply ***a heightened pleading standard to claims of civil conspiracy***.   *Alfus [v. Pyramid Technology Corp.]*, 745 F.Supp. [1511], 1521 [(N.D.Cal. 1990)]; *Ramunno [v. Cawley]*, 705 A.2d at 1039.

*Tracinda*, 197 F.Supp. 2d at 74 (emphasis added).

Civil conspiracy requires a prerequisite unlawful act, and one done to further the conspiracy itself. Under Delaware law a claim for civil conspiracy requires three elements: (1) an agreement between two or more individuals; (2) an unlawful act done to further the conspiracy; and 3) damages to the plaintiff as a result of the unlawful act. *Capano Management Co. v. Transcontinental Insurance Co*., 78 F.Supp. 2d 320, 331 (D.Del. 1999).

Breach of contract is not an unlawful act. Nor are the various frauds alleged by plaintiffs. Also, plaintiffs fail to allege what conspiracy the unlawful act was committed to support; nor do they address this in their Opposition to the Motion to Dismiss.

Plaintiffs further fail to identify any alleged conspirator. It is not enough to merely broadly state that "the insurance company defendant acted with and through its agents." Plaintiffs must allege that Nationwide conspired with an identifiable third party, and must allege the specifics of the alleged conspiracy. Plaintiffs fail to identify any non-Nationwide person or entity with whom Nationwide allegedly conspired.

Further, plaintiffs do not address Nationwide's arguments that to state a cause of action for civil conspiracy a plaintiff must plead the essential elements of an agreement of the conspirators to participate in the unlawful act. "It is not enough to show that defendants might have had a common goal ***unless there is a factually specific allegation*** that they directed themselves toward this wrongful goal by virtue of a mutual understanding or agreement." *Alfus v. Pyramid Technology Corp*., 764 F.Supp. 598, 607 (N.D.Cal. 1991) (emphasis added).

11

As established above, Plaintiffs have not stated (and cannot state) a claim for civil conspiracy under Delaware law.     This claim should therefore be dismissed with prejudice.

## CONCLUSION

WHEREFORE, Nationwide respectfully requests that the Court grant its Motion to Dismiss, and that this case be dismissed in its entirety and with prejudice.

Respectfully submitted,

SWARTZ CAMPBELL LLC


BY:     /s/ Nicholas E. Skiles
        Curtis P. Cheyney, III, Esquire, *pro hoc vice*
        Nicholas Skiles, Esquire
        Delaware Bar No. 3777
        Attorneys for Defendant, Nationwide
        Mutual Insurance Company


#2350995

12