# EXHIBIT J

00071306.DOC

# Murphy Spadaro & Landon

ATTORNEYS

1011 CENTRE ROAD, SUITE 210

WILMINGTON, DELAWARE 19805

PHONE 302.472.8100

FAX 302.472.8135

302.472.8101

jspadaro@msllaw.com

May 31, 2005

**BY ELECTRONIC FILING**
The Honorable Kent A. Jordan
United States District Court
844 North King Street, Room 4209
Wilmington, DE 19801

      **RE: Eames v. Nationwide Mut. Ins. Co.**
      **C.A. No.: 04-CV-1324KAJ**

Dear Judge Jordan:

    I write on behalf of the Eames plaintiffs in anticipation of our June 2 teleconference.

    Our complaint targets a specific practice by which Nationwide represents to Delaware consumers (through Nationwide's agents) that they have purchased "full" PIP limits, while treating the transaction as a purchase of minimum limits. On April 7, 2005 we served Nationwide with our initial document requests, seeking production of documents related to this practice. Our discovery consisted of just three requests, two of which are at issue here:

        1. All documents that refer to or characterize limits of liability for PIP
        coverage as "full."

        2. All documents that refer or relate to the characterization of limits of
        liability for PIP coverage as "full."

Ex. A. This discovery was propounded as part of the dedicated discovery phase directed to class certification issues under Paragraph 3(c) of the March 28, 2005 Scheduling Order.

    In response to these requests, Nationwide has produced just a single (incomplete) document: a copy of what we regard as portions of Mr. and Mrs. Eames's policy. Nationwide has objected to producing anything beyond this single document.

    1. *Nationwide's general objection.* Nationwide objects that:

        [t]he only legal and enforceable interpretation of these terms, pursuant to
        Nationwide's coverage obligations upon which Plaintiffs asserts (sic) a
        breach of contract, are those characterizations and references set forth in

120792

The Hon. Kent A. Jordan
May 31, 2005
Page 2

---

        the insurance policy and Declarations page which form part of the
        policy. No other reference or characterization is relevant to this action.

Ex. B. The reference to "these terms" is not explained; but in order to make sense of the objections we read it to mean Nationwide's characterization of PIP limits as "full." Nationwide thus says that such characterizations are of legal significance only to the extent they appear in the insurance contract; and since Nationwide has produced an (incomplete) copy of the Eames's policy, it need produce nothing else. But this approach requires the Court to prejudge the merits in Nationwide's favor, and then use that prejudgment as an *a fortiori* basis to deny discovery.

We will ultimately prove that Nationwide's characterization of PIP limits as "full" is made in documents that *are* a part of the contract itself. Indeed, no reasonable consumer would receive these documents under the circumstances presented by this case and conclude that they are *not* a part of the contract. But this "integration" dispute should not be presumptively resolved in either party's favor based on attorney argument, and cannot be resolved on a discovery motion in any event.

Further, even if Nationwide were correct, it would still properly be subject to our discovery. This is because the Eames plaintiffs have pled a cause of action under Delaware's Consumer Fraud Act, 6 Del. C. §2513.[1] The Act allows recovery for the "use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation . . . or omission of any material fact with intent that others rely upon such concealment, suppression or omission" in the sale of insurance products. The Eames plaintiffs thus seek recovery for Nationwide's false and misleading representations regarding PIP limits.

The parol evidence rule, meanwhile, does not bar proof of prior or contemporaneous statements in cases alleging fraud or misrepresentation. Hynansky v. Vietri, 2003 WL 21976031, at *4 (Del. Ch. Ct. Aug. 7, 2003) (citing Anglin v. Bergold, 1989 WL 276429 (Del. 1989)) (Ex. D). Nationwide's representations to consumers regarding the amount of PIP limits being sold may thus be actionable, regardless of whether it is made (as we contend) within the contract's four corners. The "integration" debate is not a bar to discovery.

    2. ***Nationwide's responses to Request Nos. 1 and 2.*** Request Nos. 1 and 2 seek production of documents that either characterize PIP limits as "full" or refer or relate to the practice of characterizing PIP limits as "full." In response, Nationwide relies on its general objections, but also states that it is "not currently aware of any other documents [other than Mr. and Mrs. Eames's policy] that legally characterize the PIP policy limits . . . ." Ex. B. This response raises more questions than it answers: Did Nationwide limit its search to insurance contracts only (and, as it appears, to Mr. and Mrs. Eames's contract alone)? Has it searched all documents that might reasonably be expected to contain characterizations of PIP limits as "full" -- including, for example, internal memoranda, guidelines and manuals, and minutes of board meetings -- but found nothing? Or has it declined to search such

---

[1] Delaware courts have repeatedly upheld Consumer Fraud Act claims brought by consumer insureds against their insurers. See, e.g., Thomas v. Harford Mut. Ins. Co., 2003 WL 220511, at *3 (Del. Super. Ct. Jan. 31, 2003) (collecting cases) (Ex. C).

120792

The Hon. Kent A. Jordan
May 31, 2005
Page 3

---

documents? Is it aware of any documents that do not consist of insurance contracts but do characterize PIP limits as "full"?

On May 11, we wrote to Nationwide's counsel to pose these questions and clarify the matter. Ex. E. Nationwide has ignored our questions, and refuses to say what responsive documents exist or where they might be found.

Nationwide did ask whether we might suggest "a protocol for a document sweep[.]" Ex. F. Under different circumstances, the suggestion might have appeal. But we cannot frame an effective search protocol for Nationwide's documents without knowing what Nationwide knows: the nature and volume of responsive documents, the format and locations in which they are kept, etc. Nationwide refuses to address these issues, though we have raised them more than once. See Ex. F.

3. *The E-Discovery Default Standard.* A related problem arises from Nationwide's refusal to comply with paragraph 1 of the March 28, 2005 Scheduling Order. That paragraph incorporates by reference the Court's Default Standard for Discovery of Electronic Documents, which in turn requires Nationwide to designate a knowledgeable liaison to communicate with us regarding the existence, searchability, etc., of responsive documents. See Ex. G (Default Standard ¶3, requiring parties to designate their "E-Discovery liaison").

We have written to Nationwide by letter and e-mail five times since March 8 requesting its compliance with the Default Standards. See Ex. H. Nationwide finally responded with the curious claim that our discovery does not seek electronic documents. Ex. I. In fact, our discovery expressly defines the term "documents" to include "documents created or stored by electronic means." Ex. A. If Nationwide has responsive documents in electronic form, those documents are thus squarely targeted by our requests. Of course, Nationwide should comply with the Default Standards regardless of the nature of our discovery, since that compliance was ordered by the Court months ago.

***

Nationwide should be ordered to respond fully to Request Nos. 1 and 2, and to comply with the Default Standards. It should be ordered to cooperate with us toward identifying what responsive documents exist and how they might be produced. With our opening brief on class certification due in just twenty-four days, it should be ordered to complete its production no later than June 10.

Respectfully,

/s/ John S. Spadaro

John S. Spadaro

JSS/slr
encls.
cc: Curtis P. Cheyney, III, Esq. (by electronic filing)

120792