# EXHIBIT M

## John S Spadaro

| | |
|---|---|
| **From:** | "John S Spadaro" <jspadaro@msllaw.com> |
| **To:** | <ccheyney@swartzcampbell.com> |
| **Cc:** | <nskiles@swartzcampbell.com>; "Philip T. Edwards" <pedwards@msllaw.com> |
| **Sent:** | Friday, August 05, 2005 12:54 PM |
| **Subject:** | Eames v. Nationwide; meet-and-confer regarding plaintiffs' Document Request Nos. 1 and 2 |

Curt:

In light of the Court's rulings during today's teleconference, I write to continue the Eames plaintiffs' efforts to confer with Nationwide regarding Request Nos. 1 and 2. I am available to discuss these issues in person, by phone or in writing, at any mutually convenient time. I think an in-person meeting will likely be necessary at some point, so that we can interact with Nationwide's e-discovery liaison as needed.

In order to address these issues in a meaningful way, we make the following requests:

1. Please tell us who Nationwide will designate as its e-discovery liaison under paragraph 3 of the Default Standard. Please ensure that the person so designated meets the requirements of paragraph 3 (relating to that person's knowledge of and familiarity with Nationwide's electronically stored and created documents, its search capabilities, etc.).

2. Please make your e-discovery liaison available to participate in this meet-and-confer process, as required under paragraph 3 of the Default Standard.

3. Please make the disclosures required under paragraph 2 of the Default Standard.

4. Please address the three numbered questions inn my May 11 message.

5. Please address my comments and questions regarding my proposal (set forth in my May 16 message) that we "focus on generic materials, like internal memoranda, guidelines and manuals, and board meeting minutes[.]" For example, our document subpoenas of Nationwide's insurance agents in Delaware show that every agent so subpoenaed makes a practice of characterizing PIP limits as "full" in documents shared with the consumer insured. It seems to me that this can't be coincidental: that at some point the agents were told to do this as a matter of standard practice. And of course the agents work for Nationwide.

In other words, it seems obvious to us that Nationwide made a conscious decision at some point to have its agents characterize PIP limits as "full", in the documents that so characterize PIP limits, rather than to express those limits in numbers.

Whether or not I'm correct about this -- and I'm confident that I am -- it seems likely that Nationwide possesses documents that discuss this practice, its genesis and its purpose. Can you make a good-faith effort to identify who at the company would be knowledgeable on these subjects? It may be that the universe of documents we can accept is small in number. provided they are long on content -- that is, a few documents that clearly spell out the genesis of the "full" usage might be more valuable than 100,000 pages that confirm that the practice is widespread (which we already know from the agents' productions).

6. You've raised concerns regarding temporal and geographic limits. My concern with geography is that the "best" of what we seek may consist (may probably consist?) of documents at the corporate level. There is no reason why such documents would necessarily be specific to Delaware, even though they might be highly relevant.

For example, suppose a document discussed the poor loss ratio that Nationwide experiences on PIP claims, and came up with the challenged practice (characterizing PIP limits as "full") as a business solution. Such a document might state or assume that the practice should be followed in all states where Nationwide sells PIP or med-pay products; and it would therefore make no mention of Delaware. If I agreed to a "Delaware-only" set, you would never produce such a document.

I have some similar concerns regarding temporal limitations. But in both areas -- limits as to time and geography -- I believe we can avoid dispute best by first determining what documents Nationwide has, how they can be retrieved, etc. Again the "genesis of the practice" documents might prove to be a small and readily accessible set; and if such a production goes far enough in content to obviate further document discovery, we'll never need to reach agreement on the time-and-geography issues. And even if we do, our side can negotiate such issues with more confidence once we know what documents are out there.

***

Please respond to these questions and observations as soon as you're able. I look forward to working with you and your liaison, so that we can move on to the merits of the class certification issues. Thank you. John

## John S Spadaro

**From:** "John S Spadaro" <jspadaro@msllaw.com>
**To:** <Jsheehanspadaro1@aol.com>
**Sent:** Friday, August 05, 2005 3:30 PM
**Subject:** Fw: Eames v. Nationwide; meet-and-confer regarding plaintiffs' Document Request Nos. 1 and 2

----- Original Message -----
From: "Curtis P. Cheyney" <ccheyney@swartzcampbell.com>
To: "John S Spadaro" <jspadaro@msllaw.com>
Sent: Friday, August 05, 2005 3:10 PM
Subject: RE: Eames v. Nationwide; meet-and-confer regarding plaintiffs'
Document Request Nos. 1 and 2


>I acknowledge the receipt of your e-mail; I will forward it to NW and
> respond on Wed. next when my report returns from vacation. As for the
> naming of a liaison, plaintiff has corresponding obligations and to name
> a liaison; I do not see anywhere in the Default protocol that our
> liaison is to be present at our time of conference. Please point me to
> that requirement. Also, we look forward to some indication of time
> periods for a search and any other parameter or limitation you may
> accept, if any.Do you want all underwriting and policy files and e-mails
> from around the country for every employee, officer, etc. searched and
> for any discrete period? Do you want all claim files of every state for
> the duration of each state's PIP laws, Board minuets for years beginning
> when to when for the end of the search. If you are or if you are not,
> searches that are for documents not readily accessible must be narrowly
> focused with some basis in fact supporting the request- that, it seems
> to me, is your responsibility. Are you willing to bear the cost of
> searches of records that are not readily available, and do you want the
> documents and any privilege log or objection in a special electronic
> format With respect to your comments in Para 5,we do not concede those
> opinions. Your conspiracy theory is amassing; but that is just my
> opinion. You have your opinion and I have mine- I do not anticipate
> discovering any documents you suggest exist. Perhaps Mr. Muncie has them
> .When I receive my instruction I will be in communication with you.
>
> From: John S Spadaro [mailto:jspadaro@msllaw.com]
> Sent: Friday, August 05, 2005 12:54 PM
> To: Curtis P. Cheyney
> Cc: Nicholas E. Skiles; Philip T. Edwards
> Subject: Eames v. Nationwide; meet-and-confer regarding plaintiffs'
> Document Request Nos. 1 and 2
>
>
> Curt:
>
> In light of the Court's rulings during today's teleconference, I write
> to continue the Eames plaintiffs' efforts to confer with Nationwide

MTC3

> regarding Request Nos. 1 and 2. I am available to discuss these issues
> in person, by phone or in writing, at any mutually convenient time. I
> think an in-person meeting will likely be necessary at some point, so
> that we can interact with Nationwide's e-discovery liaison as needed.
>
> In order to address these issues in a meaningful way, we make the
> following requests:
>
> 1. Please tell us who Nationwide will designate as its e-discovery
> liaison under paragraph 3 of the Default Standard. Please ensure that
> the person so designated meets the requirements of paragraph 3 (relating
> to that person's knowledge of and familiarity with Nationwide's
> electronically stored and created documents, its search capabilities,
> etc.).
>
> 2. Please make your e-discovery liaison available to participate in
> this meet-and-confer process, as required under paragraph 3 of the
> Default Standard.
>
> 3. Please make the disclosures required under paragraph 2 of the
> Default Standard.
>
> 4. Please address the three numbered questions inn my May 11 message.
>
> 5. Please address my comments and questions regarding my proposal (set
> forth in my May 16 message) that we "focus on generic materials, like
> internal memoranda, guidelines and manuals, and board meeting
> minutes[.]" For example, our document subpoenas of Nationwide's
> insurance agents in Delaware show that every agent so subpoenaed makes a
> practice of characterizing PIP limits as "full" in documents shared with
> the consumer insured. It seems to me that this can't be coincidental:
> that at some point the agents were told to do this as a matter of
> standard practice. And of course the agents work for Nationwide.
>
> In other words, it seems obvious to us that Nationwide made a conscious
> decision at some point to have its agents characterize PIP limits as
> "full", in the documents that so characterize PIP limits, rather than to
> express those limits in numbers.
>
> Whether or not I'm correct about this -- and I'm confident that I am --
> it seems likely that Nationwide possesses documents that discuss this
> practice, its genesis and its purpose. Can you make a good-faith effort
> to identify who at the company would be knowledgeable on these subjects?
> It may be that the universe of documents we can accept is small in
> number, provided they are long on content -- that is, a few documents
> that clearly spell out the genesis of the "full" usage might be more
> valuable than 100,000 pages that confirm that the practice is widespread
> (which we already know from the agents' productions).
>
> 6. You've raised concerns regarding temporal and geographic limits. My
> concern with geography is that the "best" of what we seek may consist

MTC4

> (may probably consist?) of documents at the corporate level. There is
> no reason why such documents would necessarily be specific to Delaware,
> even though they might be highly relevant.
>
> For example, suppose a document discussed the poor loss ratio that
> Nationwide experiences on PIP claims, and came up with the challenged
> practice (characterizing PIP limits as "full") as a business solution.
> Such a document might state or assume that the practice should be
> followed in all states where Nationwide sells PIP or med-pay products;
> and it would therefore make no mention of Delaware. If I agreed to a
> "Delaware-only" set, you would never produce such a document.
>
> I have some similar concerns regarding temporal limitations. But in
> both areas -- limits as to time and geography -- I believe we can avoid
> dispute best by first determining what documents Nationwide has, how
> they can be retrieved, etc. Again the "genesis of the practice"
> documents might prove to be a small and readily accessible set; and if
> such a production goes far enough in content to obviate further document
> discovery, we'll never need to reach agreement on the time-and-geography
> issues. And even if we do, our side can negotiate such issues with more
> confidence once we know what documents are out there.
>
> ***
> Please respond to these questions and observations as soon as you're
> able. I look forward to working with you and your liaison, so that we
> can move on to the merits of the class certification issues. Thank you.
> John
>
>
> ----------------------------------
> This electronic material, any attachments hereto and the information
> contained herein is intended only for the use of the individual or entity
> to which it is addressed and may contain information that is privileged,
> confidential and exempt from disclosure. If the reader of this message is
> not the intended recipient or any employee or agent responsible for
> delivering the message to the intended recipient, you are hereby notified
> that any dissemination, distribution or copying of this communication is
> strictly prohibited. If you have received this communication in error,
> please notify Swartz Campbell LLC immediately at (215) 564-5190 and return
> the original message to us by email. Thank you.
>
>
>

MTC5

8/8/2005

## John S Spadaro

| | |
|---|---|
| **From:** | <Jsheehanspadaro1@aol.com> |
| **To:** | <ccheyney@swartzcampbell.com> |
| **Cc:** | <nskiles@swartzcampbell.com>; <jspadaro@msllaw.com>; <pedwards@msllaw.com> |
| **Sent:** | Friday, August 05, 2005 5:58 PM |
| **Attach:** | Fw_ Eames v. Nationwide; meet-and-confer regarding plaintiffs' Document Request Nos. 1 and 2.eml |
| **Subject:** | Fwd: Fw: Eames v. Nationwide; meet-and-confer regarding plaintiffs' Document ... |

Curt:

I received your message of late this afternoon here at home (where my staff forwarded it). If you reply, please reply to both my home and work addresses.

I look forward to your addressing the questions raised in my message of earlier today, and I'll wait to hear from you on Wednesday, August 10 as you've indicated. As for the questions you've posed in return:

1. I will serve as the Eames plaintiffs' e-discovery liaison. I expect it to be a symbolic post, because the Eameses are a family and not a business enterprise; and because none of their documents relating to this dispute were created or stored electronically. (All those documents have already been produced, by the way.)

2. Paragraph 3 of the Default Standard requires that the liaisons be prepared to participate in e-discovery dispute resolutions. My thought was that at some point, you and I could get on the phone with your liaison (or meet with him or her personally) to maximize productivity in these discussions.

3. As to "parameters or limitations" that we might accept, I've already suggested a search for generic documents – that is, documents not specific to any policyholder. You seem to have overlooked that suggestion (which was first made in my May 16, 2005 e-mail message, but never responded to by Nationwide); because you continue to speak in terms of "all claim files", "all underwriting and policy files" and so forth. Obviously, such documents are not generic, but specific to the policyholders to which they relate.

If you really want me to consider limitations, it would be helpful if you would acknowledge the limitations I've already proposed, rather than insisting that I'm demanding every document under the sun. I'm not.

4. I don't think you can simply shrug off your obligation to search for responsive documents by claiming that they aren't "readily accessible." If the documents are in Nationwide's possession, custody or control, what's inaccessible about them? Doesn't Nationwide control its own documents?

5. Similarly, I don't believe you can shift the costs to us by claiming, with no particularized showing of burden, that responsive documents aren't "readily available." My expectation is that all of Nationwide's documents will prove readily available to Nationwide. Would you seriously argue, for example, that Nationwide's board minutes aren't readily available to Nationwide?

6. On that particular issue (the shifting of costs), I believe the Court expressed today its disapproval of that sort of response. In any event, we cannot agree to any cost shifting. Nationwide is a sophisticated corporate entity with massive resources; the Eameses are an ordinary family. We feel that Nationwide should bear the costs of litigation just as other corporate litigants do. I should also note that Nationwide has already increased the costs of processing this discovery for both sides, by failing to work cooperatively with us (and the Court so found today).

7. I'm surprised and discouraged that you would predict failure for your document search when it appears that you've yet to even commence that search, other than to look for an incomplete copy of the Eames's policy. It's an especially surprising comment in light of the Court's expression of displeasure, just today, with your refusal to either search or negotiate.

I don't want to appear cynical, but telling me that you expect to find nothing when you've yet to even look creates the impression that you're determined to produce nothing whatever the search may yield. I hope we

MTC6

can work together to dispel that impression.

***

Again, I look forward to Nationwide's addressing our questions on the nature, volume and location/retrieval of responsive documents. With that information in hand, we may be in a position to elaborate on the proposal I made in my May 16 message; or perhaps develop other proposals. John

## John S Spadaro

| | |
|---|---|
| **From:** | "John S Spadaro" <jspadaro@msllaw.com> |
| **To:** | <ccheyney@swartzcampbell.com> |
| **Cc:** | "Philip T. Edwards" <pedwards@msllaw.com> |
| **Sent:** | Thursday, August 11, 2005 4:01 PM |
| **Subject:** | Eames v. nationwide; continued efforts to meet and confer |

Curt:

Your August 5 message (in response to mine of like date) indicated that you would respond to our overtures and questions on the pending discovery issues by Wednesday of this week, August 10. That, of course, was yesterday.

Did you send us your response in the mail, so that it's on the way but I haven't yet seen it? If so, could you please send it again by fax or e-mail? And if not -- if you haven't yet responded -- could you do so now? We really do need to move these issues along to some final resolution.

Thank you. John

MTC8

8/11/2005

## John S Spadaro

| | |
|---|---|
| **From:** | "John S Spadaro" <jspadaro@msllaw.com> |
| **To:** | <ccheyney@swartzcampbell.com> |
| **Cc:** | <nskiles@swartzcampbell.com> |
| **Sent:** | Tuesday, August 16, 2005 10:27 AM |
| **Subject:** | Eames v. Nationwide; Nationwider's continued failure to meet and confer on discovery issues |

Curt:

Within hours of our August 5 teleconference with the Court, I wrote to you with questions, observations and proposals to advance the Court-ordered meet-and-confer process. For example, I again proposed that the production be limited to generic documents, and I attempted to describe the sort of management-level documents that might exist. I also asked you to finally answer the questions I've been asking since May – questions that the Court viewed as appropriate to the negotiation process. For example, I asked in May whether Nationwide conducted any search beyond what you contend is the Eames's policy. You've ignored that question for over three months.

You responded later that afternoon by predicting failure for the search that you've apparently yet to undertake. After suggesting that Nationwide would ultimately identify no responsive documents, you closed with the facetious suggestion that the Eames's insurance agent might have these documents.

I acknowledge that you told me that you'd respond to my questions by Wednesday, August 10. But you failed to do that, and we've heard nothing from you since the day of our teleconference with the Court.

In summary, Nationwide has responded to the Court's instructions by 1) predicting failure for its document search, 2) suggesting facetiously that we contact a tiny Delaware insurance agent to secure copies of Nationwide's management-level documents, 3) failing once more to answer our questions and proposals on discovery issues, and 4) failing to honor its own commitment to respond in a timely way. But two weeks have passed with no information, and no proposals for compromise, from your side.

If Nationwide persists in this conduct, you leave us no choice but to seek sanctions. John

MTC9

Swartz Campbell LLC
1601 Market Street Fl 34
Philadelphia PA 19103-2316

voice (215) 299-4304
facsimile (215) 299-4301
ccheyney@swartzcampbell.com
www.swartzcampbell.com

**Curtis P. Cheyney, III**
*Attorney at Law*

August 16, 2005

**VIA EMAIL**

John S. Spadaro, Esquire
Murphy Spadaro & Landon
1011 Centre Road, Suite 210
Wilmington, DE   19805

>    RE:   Eames v. Nationwide Mutual Insurance Company
>          Our File No.: 0547-107521

Dear Mr. Spadaro:

I have carefully reviewed my e-mail to you and I cannot find that I reported a suggestion or a commitment to respond to you on Wednesday last. I said only that I could not speak with my Nationwide contact until Wednesday when he returned from a vacation.

With respect to the default protocol, Nationwide will be identifying Peter Oesterling, Esquire of the office of General Counsel as the e-discovery liaison. While we acknowledge your self-identification as the e-discovery liaison for plaintiffs, we object and do not believe such is an appropriate designation while you are simultaneously acting in a role as counsel and advocate for the plaintiffs. Accordingly, while we register our objection we will also try to work with you; but, please be cautioned against any direct communication with Mr. Oesterling that is not pre-approved or channeled through this office or Nicholas Skiles, Esquire. We will also begin to attempt document sweeps as soon as we identify for you the systems available for reasonably accessible emails, Board Minutes, etc.; in the meantime we request that you provide us with a reliable description of your styled document/documents to be searched - identified as "generic". I understand from your recent conversation and email that you are not asking Nationwide to search specific claim files or underwriting files but that you are looking for documents on a nationwide basis for an unlimited time (presumably to begin at a time after the initiation of Delaware's PIP statute) regarding any document that contains the

MTC10

John S. Spadaro, Esquire
August 16, 2005
Page 2

word "full" and which word coexists within the same document words, letters or other phrase such as PIP or Personal Injury Protection (coverage). Is there any other search protocol you want to suggest?

I anticipate being in possession of the information called for in paragraphs 2 and 3 of the Protocol within the next few days; and as time permits thereafter I will forward that information to you. Since the information you are requesting is to be forwarded to you electronically, please identify the formatting of the production, its meta-database (i.e. Summation) and/or the image file format you request. Also, we believe the potential systems information called for in paragraphs 2 or 3 of the Default Protocol represents confidential, proprietary information of Nationwide; to facilitate the response with regard to your request, please advise if you are willing to sign a confidentiality agreement limiting the dissemination and use of the information for this case only and on a "need to know" basis to you as the e-discovery liaison.

Comments in your most recent email not specifically addressed by this response do not mean agreement or consent by Nationwide and Nationwide preserves all defenses and objections as previously stated to your discovery demands notwithstanding our attempt at cooperation with you.

Very truly yours,

SWARTZ CAMPBELL LLC

BY: _____
       Curtis P. Cheyney, III

CPC/dd

cc:    John P. Marino, Esq. (via email)
       Nicholas E. Skiles, Esq. (via email)

# John S Spadaro

| | |
|---|---|
| **From:** | "John S Spadaro" <jspadaro@msllaw.com> |
| **To:** | <ccheyney@swartzcampbell.com> |
| **Cc:** | <nskiles@swartzcampbell.com>; "Philip T. Edwards" <pedwards@msllaw.com>; <jmarino@fowlerwhite.com> |
| **Sent:** | Tuesday, August 16, 2005 11:59 AM |
| **Subject:** | Eames v. nationwide; Nationwide's continued failure to respond to discovery-related questions, etc. |

Curt:

I've read your letter of today (in response to my e-mail message of today) and have the following comments and questions.

1. You say that you "carefully reviewed" your August 5 e-mail message" and "cannot find . . a suggestion or commitment to respond . . . on Wednesday last." The first sentence of your August 5 message reads: "I acknowledge the receipt of your e-mail; I will forward it to NW and respond on Wed. next when my report returns from vacation."

When you said that you'd respond on "Wednesday next", we took this to mean that you would respond on the following Wednesday. Since you say that you never made such a commitment, can you explain what is meant (in your lexicon) by the phrase "I will respond on Wednesday next"?

2. Thank you for identifying your e-discovery liaison. I wouldn't dream of attempting to contact him *ex parte*, and I'm surprised at your suggestion that I would do otherwise.

3. I don't understand your objection to my serving as the Eames's liaison. Could you explain your position? Also, bear in mind that the Eames's are an ordinary family, and not a business concern; they have no discoverable information that's been created or maintained in electronic format.

4. I look forward to your identifying the "systems available for document sweeps" that you describe. Can you do that this week?

5. You ask for a clarification of the scope of the search. I answer again that I can best supply you with that clarification if and when you tell me what you have, where you have it, and how it may be retrieved.

For example, I asked in my May 11 message whether "Nationwide is aware of any documents in its possession, custody or control that do not consist of insurance policies or parts of insurance policies, but do characterize PIP limits as 'full'[.]" You've never answered that question. So it may be that the answer is yes – that Nationwide knows of such documents, but refuses to share that knowledge with me.

But this isn't a guessing game. It's not my obligation to guess whether and where Nationwide might have responsive documents, and then secure them only with the correct guess. Rather, Nationwide should answer my questions promptly so that meaningful negotiations can take place.

In short, I ask that you answer the questions posed in my May 11, May 16 and August 5 e-mails. I respectfully remind you that the Court ordered you to answer these questions. To spare you the effort of retrieving the earlier messages, I repeat those questions below:

a. Has Nationwide searched all generic documents in its possession, custody or control that might reasonably be expected to contain characterizations of PIP as "full", including internal memoranda, guidelines, and manuals, and minutes of board meetings?

b. Conversely, has Nationwide limited its search to insurance policies?

c. Is Nationwide aware of any generic documents in its possession, custody or control that characterize PIP as



"full"?

d. Could you make a good-faith effort to identify who at the company would be knowledgeable on the history of the "full" usage in connection with PIP?

Honest and direct answers to these questions could considerably narrow the scope of the necessary search.

6. Because Nationwide has still yet to answer our direct questions (in disregard of the Court's August 5 ruling), we cannot be bound by any final narrowing of the scope of the search. But even if you ignore my questions, I will not ignore yours. So I offer the following clarification without prejudice, and pending an answer to the questions I've raised on so many previous occasions:

The search is not without temporal limitation. Its starting point is the date on which Nationwide first considered or proposed to characterize PIP as "full" in policy-related documents, including Memoranda of Insurance, "rate quotes" and the like. If you will undertake (as we've asked) to delineate the genesis of the practice, we'll know where to start.

By "generic" document we mean documents that are not specific to any particular policyholder.

The search should be framed by the practice, not geography. As I explained in my August 5 message, a corporate-level document that discusses the offending practice would be highly relevant, though it might not make any mention of Delaware (especially if Nationwide is engaging in this practice in more than one state).

As to word searches, Nationwide should obviously be looking for documents in which the word "full" appears in close proximity to "PIP" or "Personal Injury Protection." But other word searches may be possible depending on Nationwide's capabilities (which you've yet to share with me).

7. Please ask Mr. Oesterling if he can explain how Nationwide's main file server was searched in the fact pattern set forth in *Fraser v. Nationwide* (in which you were counsel of record for Nationwide). If Nationwide can search its file server for "disloyal" communications -- as it did in connection with its termination of Mr. Fraser's contract -- it may be able to frame some very useful searches in connection with our discovery.

8. I think we can address the format in which your documents will be produced once you confirm that you're actually producing something. If the documents are great in number, we can discuss the formatting issue. If they're small in number then I assume you'll just produce hard copies.

On a related point, do you have a sense of how large your production will be?

9. You've asked about confidentiality. I proposed a comprehensive confidentiality order (essentially identical to the one you and I agreed to in the *Crowhorn* case) many months ago, but you refused to consider it. Are you willing to revisit your position? If so, I'm happy to agree to that proposed order, and to have Nationwide designate information shared as part of this process as Protected Material.

***

Without limiting what's said above, I respectfully urge Nationwide to address the questions set forth in my May 11, May 16 and August 5 e-mails, and repeated above. I also ask Nationwide to address the specific questions raised in this message, including (without limitation) my question regarding when Nationwide intends to identify its "systems for document sweeps." Thank you. John

MTC13

## John S Spadaro

| | |
|---|---|
| **From:** | "John S Spadaro" <jspadaro@msllaw.com> |
| **To:** | <ccheyney@swartzcampbell.com> |
| **Cc:** | <nskiles@swartzcampbell.com>; "Philip T. Edwards" <pedwards@msllaw.com>; <jmarino@fowlerwhite.com> |
| **Sent:** | Monday, August 22, 2005 2:36 PM |
| **Subject:** | Re: Eames v. nationwide; Nationwide's continued failure to respond to discovery-related questions, etc. |

Curt:

Last week passed without Nationwide's offering any information regarding the existence, number or location of documents responsive to the Eames plaintiffs' document requests.  Indeed, seventeen days have passed since the Court ordered Nationwide to address our questions -- including the questions set forth in my May 11, May 16, August 5 and August 16 messages -- and still we have nothing from Nationwide.

Will Nationwide comply with the Court's August 5 directive?  If so, when?  John

Original Message -----

**From:** John S Spadaro
**To:** ccheyney@swartzcampbell.com
**Cc:** nskiles@swartzcampbell.com ; Philip T. Edwards ; jmarino@fowlerwhite.com
**Sent:** Tuesday, August 16, 2005 11:59 AM
**Subject:** Eames v. nationwide; Nationwide's continued failure to respond to discovery-related questions, etc.

Curt:

I've read your letter of today (in response to my e-mail message of today) and have the following comments and questions.

1.  You say that you "carefully reviewed" your August 5 e-mail message" and "cannot find . . a suggestion or commitment to respond . . . on Wednesday last."  The first sentence of your August 5 message reads: "I acknowledge the receipt of your e-mail; I will forward it to NW and respond on Wed. next when my report returns from vacation."

When you said that you'd respond on "Wednesday next", we took this to mean that you would respond on the following Wednesday.  Since you say that you never made such a commitment, can you explain what is meant (in your lexicon) by the phrase "I will respond on Wednesday next"?

2.  Thank you for identifying your e-discovery liaison.  I wouldn't dream of attempting to contact him *ex parte*, and I'm surprised at your suggestion that I would do otherwise.

3.  I don't understand your objection to my serving as the Eames's liaison.  Could you explain your position?  Also, bear in mind that the Eames's are an ordinary family, and not a business concern; they have no discoverable information that's been created or maintained in electronic format.

4.  I look forward to your identifying the "systems available for document sweeps" that you describe.  Can you do that this week?

5.  You ask for a clarification of the scope of the search.  I answer again that I can best supply you with that clarification if and when you tell me what you have, where you have it, and how it may be retrieved.

For example, I asked in my May 11 message whether "Nationwide is aware of any documents in its possession, custody or control that do not consist of insurance policies or parts of insurance policies, but do characterize

MTC14

8/22/2005



PIP limits as 'full'[.]" You've never answered that question. So it may be that the answer is yes – that Nationwide knows of such documents, but refuses to share that knowledge with me.

But this isn't a guessing game. It's not my obligation to guess whether and where Nationwide might have responsive documents, and then secure them only with the correct guess. Rather, Nationwide should answer my questions promptly so that meaningful negotiations can take place.

In short, I ask that you answer the questions posed in my May 11, May 16 and August 5 e-mails. I respectfully remind you that the Court ordered you to answer these questions. To spare you the effort of retrieving the earlier messages, I repeat those questions below:

a. Has Nationwide searched all generic documents in its possession, custody or control that might reasonably be expected to contain characterizations of PIP as "full", including internal memoranda, guidelines, and manuals, and minutes of board meetings?

b. Conversely, has Nationwide limited its search to insurance policies?

c. Is Nationwide aware of any generic documents in its possession, custody or control that characterize PIP as "full"?

d. Could you make a good-faith effort to identify who at the company would be knowledgeable on the history of the "full" usage in connection with PIP?

Honest and direct answers to these questions could considerably narrow the scope of the necessary search.

6. Because Nationwide has still yet to answer our direct questions (in disregard of the Court's August 5 ruling), we cannot be bound by any final narrowing of the scope of the search. But even if you ignore my questions, I will not ignore yours. So I offer the following clarification without prejudice, and pending an answer to the questions I've raised on so many previous occasions:

The search is not without temporal limitation. Its starting point is the date on which Nationwide first considered or proposed to characterize PIP as "full" in policy-related documents, including Memoranda of Insurance, "rate quotes" and the like. If you will undertake (as we've asked) to delineate the genesis of the practice, we'll know where to start.

By "generic" document we mean documents that are not specific to any particular policyholder.

The search should be framed by the practice, not geography. As I explained in my August 5 message, a corporate-level document that discusses the offending practice would be highly relevant, though it might not make any mention of Delaware (especially if Nationwide is engaging in this practice in more than one state).

As to word searches, Nationwide should obviously be looking for documents in which the word "full" appears in close proximity to "PIP" or "Personal Injury Protection." But other word searches may be possible depending on Nationwide's capabilities (which you've yet to share with me).

7. Please ask Mr. Oesterling if he can explain how Nationwide's main file server was searched in the fact pattern set forth in *Fraser v. Nationwide* (in which you were counsel of record for Nationwide). If Nationwide can search its file server for "disloyal" communications -- as it did in connection with its termination of Mr. Fraser's contract – it may be able to frame some very useful searches in connection with our discovery.

8. I think we can address the format in which your documents will be produced once you confirm that you're actually producing something. If the documents are great in number, we can discuss the formatting issue. If they're small in number then I assume you'll just produce hard copies.

On a related point, do you have a sense of how large your production will be?

9. You've asked about confidentiality. I proposed a comprehensive confidentiality order (essentially identical to the one you and I agreed to in the *Crowhorn* case) many months ago, but you refused to consider it. Are you

willing to revisit your position? If so, I'm happy to agree to that proposed order, and to have Nationwide designate information shared as part of this process as Protected Material.

***

Without limiting what's said above, I respectfully urge Nationwide to address the questions set forth in my May 11, May 16 and August 5 e-mails, and repeated above. I also ask Nationwide to address the specific questions raised in this message, including (without limitation) my question regarding when Nationwide intends to identify its "systems for document sweeps." Thank you. John



Swartz
Campbell

Swartz Campbell LLC
1601 Market Street Fl 34
Philadelphia PA 19103-2316

voice (215) 299-4304
facsimile (215) 299-4301
ccheyney@swartzcampbell.com
www.swartzcampbell.com

**Curtis P. Cheyney, III**
*Attorney at Law*

August 22, 2005

**VIA EMAIL and REGULAR MAIL**

John S. Spadaro, Esquire
Murphy Spadaro & Landon
1011 Centre Road, Suite 210
Wilmington, DE  19805

   **RE:** **Eames v. Nationwide Mutual Insurance Company**
      **Our File No.:  0547-107521**

Dear Mr. Spadaro:

   We are writing to update you on the status of Nationwide Mutual Insurance Company's ("Nationwide") discovery efforts in this case.  Nationwide continues to work on compiling and completing the response information relative to the default standard, including its efforts to identify a list of most likely custodians of potentially relevant electronic documents.  This list is preliminarily estimated at between 75 to 125 individuals.  We will provide you with the titles of these individuals for purposes of identifying anticipated sources for review of emails.

   Nationwide utilizes IBM's Lotus Notes as its email system. It has maintained back up tapes of the system back to September 2002.  It is possible that individuals may have saved their own personal emails from earlier than that date by printing them to paper, storing them in their current mail file or have archived them to a remote location (hard drive, shared drive, disc or other location).  All email searches will be conducted through Lotus Notes. The search will be conducted by restoring pertinent back up tapes and combining them with a custodian's current mail file.  All Board Minutes are imaged and stored in a FileNet system that is fully word searchable and are maintained by Nationwide's Office of Secretary.   Both searches will be conducted for the purpose of locating documents containing the terms PIP, Personal Injury Protection, APIP, Additional Personal Injury Protection, Full, and Full Coverage.  We will try to eliminate (if possible) "false positives", such as where

John S. Spadaro, Esquire
August 22, 2005
Page 2

the word "full" is included in another word, for example "fullness", "fully" and "meaningfull" (misspelled with two l's).  As we identify the available electronic systems, we will also identify any reasonably anticipated problems or difficulties in connection with the anticipated searches in order to respond and to allocate Nationwide's resources for performing the search tasks within and by using the various Nationwide electronic systems.  These anticipated problems and burdens include, as of now, the unavailability of readily accessible electronic documents prior to 2002 (September) and the limited availability of Nationwide's personnel and limited accesses to the means for searching.  The search you are requesting includes burdens of unavailable personnel, unavailable time, excessive expense and unreasonable interference with Nationwide's business obligations utilizing electronic systems.  It is estimated that to restore back up tapes and conduct email searches will take a week to ten (10) days.  Restoring quarterly back up tapes through September, 2002 is very time consuming.  The Board Minutes and their electronic reviews are anticipated to begin next week.

In preparation, please confirm that you accept our parameters for a search: 1) Nationwide will not search individual's claim files; 2) Nationwide will not search individual's underwriting files; but 3) Nationwide will first search Delaware state email files and Nationwide Mutual Insurance Company Board Minutes. and 4) Nationwide will limit the search to that period of time of stored emails from back up tapes to September, 2002 and current mail files of identified custodians to the date that your Complaint was filed and for Board Minutes beginning when the PIP statute of Delaware was enacted and up to the date that the Complaint was filed.

If you are presently aware of, have, or have heard of a "generic" document(s) you know or believe exists and which you seek to duplicate, please identify a person or document that does qualify as or may describe such a generic document, from any source.  It is necessary that you identify any such document(s) and the source or a marker of the document(s) to aid Nationwide's search and to minimize the burdens involved.  Please produce a copy of any such document(s) you know of and/or have access to and/or please advise us where you think such document(s) may be found or better described (by reference to such as the authors, the date, etc.); what are the suggested search markers and parameters for such a document that it will be disclosed in a search?  If you have a copy of such a "generic" document please make a copy available as it would be not only of great assistance, but would also be in the spirit of the Federal Rules of discovery and their ultimate purpose.

Nationwide maintains documents, emails and other electronically stored documents in the ordinary course of its business.  However, at present, Nationwide has no formal company-wide policy specifically addressed to the retention of emails or electronically stored documents.   Manuals and guidelines are not electronic

John S. Spadaro, Esquire
August 22, 2005
Page 3

documents, but they may be found in an electronic format. They have already been
searched by review of the hard copy; and there has been reported to you that no
evidence was found of the word "full" in connection with discussions of PIP
coverages.    Minutes of the Board   have not previously been subject to electronic
review/search. Nationwide heretofore limited its search to the underwriting file of
Mr. Eames and manuals for Delaware; Nationwide is not currently aware of any
"generic" document that refers to or characterizes for any reviewer "PIP" together
with the word "full" in context or as a stand-alone word that have not already been
produced.

Nationwide continues to make a good faith effort to identify internal
memoranda, guidelines (if any), manuals (if any) and Minutes of Board meetings (if
any), that contain the phrases "PIP" and "full" within the same document. Since the
company does not characterize "PIP" coverage in any policy as "full", it is difficult to
identify a person who will be knowledgeable in the alleged history of Nationwide's
use of "full" in connection with "PIP" as a characterization of the company's policy
PIP obligation to any insured. As you are more than well aware, "full" has been used
in connection with documents related to deductible/no deductible in the Delaware
PIP context; the policy's Declaration page (and the policy's endorsements, if any) as
well as the policy form do not use the word "full" to describe or characterize for a
policy purchaser the PIP coverage limit purchased by an insured. There is therefore
no date when Nationwide first considered or proposed to characterize PIP as "full" in
policy-related documents; however, we will continue to subject electronically stored
documents to such a word search.

We object to your reference to an "offending" practice; we object to your
failure to identify what "close proximity" means when you demand a search for all
internal documents wherein PIP/Personal Injury Protection and the word "full" are
to be found in "close proximity". Please identify in what way, and to what statute or
rule you claim the so-called practice offends providing such information may help us
find documents responsive to your request. Please also advise and describe any
evidence – verbal or in document form – that you have to reflect a practice of
Nationwide to characterize PIP policy coverage as "full" and what "full" means as a
policy term and within a policy context.

Your reference to Fraser is totally without context; and respectfully, your
comment of the email review in Fraser must have been cursory and thus ill-informed
when I consider your comments. You suggest, I believe, that you believe that case
involved some universal search of some vast electronic storage facility. It did not.
Your request for production is significantly different in that it is unlimited and
without reference to author, addressee, date or understandable search protocol or
document marker. As such this proposed search cannot reasonably be expected to

John S. Spadaro, Esquire
August 22, 2005
Page 4

produce other than an extremely large volume of "hits," most of which are likely to be completely irrelevant and unrelated to the issues in this case. It may therefore be necessary for a discovery master to review privileged and/or confidential business documents.

The searches described above are a priority with Nationwide and also with the discovery liaison. However, as you are aware, Nationwide has other discovery and business obligations which do not permit unlimited and immediate access to its electronic and/or human searching capabilities. Nonetheless, all reasonable efforts continue to be made to respond promptly as above indicated, unless you dictate otherwise.

Very truly yours,

SWARTZ CAMPBELL LLC

BY: Curtis P. Cheyney, III

CPC/dd

cc:    John P. Marino, Esq. (via email)
       Peter Oesterling, Esq. (via email)
       Nicholas E. Skiles, Esq. (via email)

# Murphy Spadaro & Landon

### ATTORNEYS

1011 CENTRE ROAD, SUITE 210
WILMINGTON, DELAWARE 19805

302.472.8101

PHONE 302.472.8100
FAX 302.472.8135

jspadaro@msllaw.com

August 24, 2005

**BY E-MAIL AND U.S MAIL**
Curtis P. Cheyney, III, Esq.
Swartz Campbell LLC
1601 Market Street, 34th Floor
Philadelphia, PA 19103

RE: **Eames v. Nationwide Mut. Ins. Co.**
C.A. No.: 04-CV-1324KAJ

Dear Curt:

I received your letter dated August 22, 2005 regarding the status of Nationwide's efforts to respond to outstanding discovery. I note that your letter reached us by mail only, and not by e-mail (though the letter indicates e-mail transmission).

As a preliminary matter, I am encouraged that Nationwide has finally begun the process of addressing our outstanding document requests. Some of what you say should help bridge the gap on this discovery, while other aspects of your position require more discussion. But from our perspective, any meaningful start is a good start.

Let me then address the various points and questions set forth in your letter:

• You say that Nationwide estimates, on a preliminary basis, that between seventy-five and 125 persons are likely custodians of potentially relevant electronic documents. You also say that Nationwide will provide us with the titles of these persons "for purposes of identifying anticipated sources for review of emails."

We are encouraged by the prospect of receiving such a list, and working with these persons to focus your search efforts.

At the same time, it stands to reason that those most likely to be custodians of responsive *electronic* documents may also have knowledge of the existence and location of responsive *paper* documents. These same persons might reasonably be expected to have knowledge of the genesis of the "full" usage that is the subject of this case. We therefore ask Nationwide to distribute to these persons, and to those who report to them, the following message:



Curtis P. Cheyney, III, Esq.
August 24, 2005
Page 2

> Nationwide has been sued in a proposed class action in the United
> States District Court for the District of Delaware, styled as Eames
> v. Nationwide Mut. Ins. Co., C.A. No. 04-CV-1324KAJ (D. Del.).
> The plaintiffs in the Eames case allege wrongdoing by Nationwide
> in connection with its use of the term "full" in connection with
> Personal Injury Protection (or "PIP") coverage. Nationwide denies
> any wrongdoing.
>
> In order to satisfy the Court's requirements, Nationwide is
> searching for documents that use the word "full" in connection
> with PIP, or that refer to that usage.
>
> If you are aware of the existence of such documents, please contact
> [appropriate contact person] immediately, at [contact information].

Please let me know whether Nationwide is willing to distribute this message (or one substantially like it) to the "likely custodians" referred to in your letter.

• You ask us to confirm that Nationwide need not search policyholder-specific claim or underwriting files. I have confirmed that position on at least two prior occasions, and I do so again here.

• You say that Nationwide intends to begin by first searching "Delaware state email files and Nationwide Mutual Insurance Company Board Minutes." We have no objection to your commencing the search effort with those two categories. But we do not agree that Nationwide can properly limit any aspect of its search to the geographic region of Delaware, unless Nationwide first confirms that it is only in Delaware that Nationwide or its agents use the modifier "full" in connection with PIP. Our unwillingness to accept such geographic limits was explained in my August 5, 2005 e-mail, at item 6.

• If I understand you correctly, you say that Nationwide will limit its search of stored e-mails (taken from back-up tapes) to the period September 2002 to the present. If Nationwide agrees to distribute our proposed message to document custodians (shown above), we will accept this limitation.

• You say that Nationwide's search of current e-mail files for the identified custodians would be limited "to the date that [our] Complaint was filed . . . ." I do not understand this proposed limitation. Are you proposing a search that ranges from the date of the complaint to the present? Or something else?

• You propose to search board minutes from the date that Delaware's PIP statute was enacted to the date of the complaint. We accept that limitation.

MTC22



Curtis P. Cheyney, III, Esq.
August 24, 2005
Page 3

&bull; The search terms you propose in the second paragraph of your letter are obvious ones, and include search terms that we have previously proposed. We find those search terms acceptable.

&bull; You ask whether we possess any generic documents relating to the characterization of PIP as "full." I can assure you that if we did, we would have already shared them with you.

I do note that Mr. Leoni's clients produced three blank form documents on April 26, 2005. I suggest that you share those documents with the custodians you have identified, as examples of the targeted usage. Please let me know whether Nationwide is willing to do this.

&bull; You say that manuals and guidelines "have already been searched by review of the hard copies; and there has been reported to [plaintiffs] that no evidence was found of the word 'full' in connection with discussions of PIP coverages." I wish to note that no such thing has ever before been reported to us.

&bull; You say that Nationwide "is not currently aware of any 'generic' document that refers to or characterizes . . . 'PIP' together with the word 'full' . . . that have [sic] not already been produced." This suggests that Nationwide has actually produced one or more generic documents that characterize PIP as "full." Are you in fact claiming to have produced such documents? Can you identify them for me?

For our part, we are not aware that Nationwide has produced any generic documents in this case, of whatever description.

&bull; With all respect, your questions regarding the merits of the plaintiffs' claims serve no useful purpose. I recognize that Nationwide rejects our theory of the case; and you must surely know that we reject yours. It makes little sense, then, to clutter our discovery-related dialogue with either our "ultimate issue" allegations or your denials of the same.

Nonetheless, and in your response to your request that we identify the offending practice and the legal basis for the plaintiffs' claims, we refer you to our August 22, 2005 answering brief to Nationwide's motion to dismiss.

&bull; You claim that it is difficult to identify persons with knowledge of the genesis of the "full" usage because (according to you) Nationwide does not characterize PIP as "full" in any insurance policy. Our August 22 answering brief explains why the policy-related documents in which Nationwide and its agents routinely characterize PIP as "full" *do* qualify as part of the insurance contract. But our disagreement on the merits is not an excuse for your continued refusal to identify persons with knowledge of the practice's history. This is because Nationwide need not embrace our theory of the case in order to identify those persons, or respond to our discovery.

Curtis P. Cheyney, III, Esq.
August 24, 2005
Page 4

———————————

        In other words, what we see as contractual representations you claim to be
extracontractual ones; and what we see as a characterization of PIP limits, you claim to be a
characterization of deductibles. But you cannot deny in good faith that Nationwide's agents in
Delaware often insert the word "full" in the entry for PIP as it appears on "rate quotes", "vehicle
screens" and "memoranda of insurance" (if not other documents).

        We therefore ask again that you attempt to identify persons with knowledge of the use of
the word "full" in connection with *any aspect* of PIP, in any documents related to the insurance
transaction -- whether or not you regard that usage as innocent, and whether or not you regard
the documents themselves as part of the insurance contract. If you refuse to do this, you are
deliberately shielding the information most likely to lead to the identification of responsive
documents. Further motion practice will then be unavoidable.

        • You ask what we mean when we speak of the term "full" appearing in "close
proximity" to terms like "PIP" and "Personal Injury Protection." By "close proximity" we mean
within the same sentence; within the same line entry; within ten words; or within fifty characters.

        • In my August 16, 2005 e-mail, I requested that Nationwide ask its e-discovery liaison
to explain how Nationwide's main file server was searched in the Fraser case (in which you were
counsel of record for Nationwide). You have not addressed my request, except to characterize
and criticize what you take to be my "beliefs" about the Fraser case.

        In Fraser, Nationwide argued "that it terminated Fraser because he was disloyal." Fraser
v. Nationwide Mut. Ins. Co., 352 F.3d 107, 109 (3d Cir. 2004). Nationwide relied for this
contention on two letters written by Fraser to Nationwide's competitors. Id. Those letters
prompted a search by Nationwide of its main file server. The Third Circuit described
Nationwide's search as follows:

                When Nationwide learned about these letters, it claims that it
                became concerned that Fraser might also be revealing company
                secrets to its competitors. *It therefore searched its main file
                server* -- on which all of Fraser's e-mail was lodged -- for any e-
                mail to or from Fraser that showed similar improper behavior.
                Nationwide's general counsel testified that the e-mail search
                confirmed Fraser's disloyalty.

Id. at 110 (emphasis added).

        I ask again how this search was conducted. It seems clear to me that the lessons learned
from that search might be profitably applied here; and since you were counsel of record in
Fraser, there should be no undue burden in simply describing, in a step-by-step manner, the
search that was used. Will Nationwide do that?

MTC24



Curtis P. Cheyney, III, Esq.
August 24, 2005
Page 5

_____

•You say that as the search proceeds, you expect to identify "problems and burdens" associated with the search. If and when you identify such problems and burdens, I will attempt to address them. I would emphasize, however, that claims of burden must properly be weighed against the needs of the case, the complexity of the issues, and the parties' respective resources.

• You predict that the document search (which you have barely begun) will raise issues of confidentiality and evidentiary privilege. As noted in my August 16, 2005 message, we proposed a comprehensive confidentiality order (essentially identical to the one you and I agreed to in the Crowhorn case) many months ago. You refused to consider it then; will you revisit your position now?

As to matters of privilege, we will expect Nationwide to identify and adequately support all claims of evidentiary privilege or protection by producing promptly a complete privilege log. Please confirm that to the extent Nationwide withholds any document on a claim of privilege, it will provide such a log.

• You say that the document search effort is "a priority with Nationwide and also with the discovery liaison." That is encouraging news, particularly since we have been pursuing this discovery for nearly five months. Certainly it is a priority for our side.

***

I look forward to some meaningful progress on these issues. Toward that end, please address the questions raised above. In the interim, I look forward to Nationwide's following through on the items outlined in your August 22, 2005 letter.

Very truly yours,

John S. Spadaro

JSS/slr
cc: Nicholas E. Skiles, Esq. (by e-mail)
    John P. Marino, Esq. (by e-mail)

MTC25

Swartz Campbell LLC
1601 Market Street Fl 34
Philadelphia PA 19103-2316

voice (215) 299-4304
facsimile (215) 299-4301
ccheyney@swartzcampbell.com
www.swartzcampbell.com

**Curtis P. Cheyney, III**
*Attorney at Law*

August 25, 2005

**VIA EMAIL**

John S. Spadaro, Esquire
Murphy Spadaro & Landon
1011 Centre Road, Suite 210
Wilmington, DE   19805

> RE:   Eames v. Nationwide Mutual Insurance Company
>       Our File No.: 0547·107521

Dear Mr. Spadaro:

Attached hereto is a list of persons, their names and job titles, pursuant to the Protocol. This identification list will be of those persons whose emails will be searched in accordance with our recent correspondence.

Very truly yours,

SWARTZ CAMPBELL LLC

BY: _____
      Curtis P. Cheyney, III

CPC/dd
Enclosure

cc:   John P. Marino, Esq. (via email)
      Peter Oesterling, Esq. (via email)
      Nicholas E. Skiles, Esq. (via email)

| Last Name | First Name | MI | Job Title |
|---|---|---|---|
| Belucci | Tom | | Checking on status |
| Bernstein | Jennifer | E | AGENCY SUPPORT DIRECTOR |
| Centanni | Joe | | VP, CLAIMS OPERATIONS |
| Compton | April | | NIHR FIELD MANAGER |
| Cooper | Edward | G | REGIONAL VP |
| Cottrell | June | | Claims Staff Adimnstration |
| Gamble | Samuel | F | CLAIMS OFFICER-FIELD |
| Harris | Perry | A | SALES MANAGER PCIO |
| Holtkamp | James | | P/C SALES OFFICER |
| Hults | John | | STATE SALES DIRECTOR |
| Lee | Patrick | M | COMMERCIAL UNDERWRITING DIR |
| Pathare | Ashwin | V | P/C PRODUCT DIRECTOR |
| Riggins | Timothy | R | STATE SALES DIRECTOR |
| Salk | Robert | | VP, STRATEGIC PROJ and SUPPORT |
| Thompson | John | A | BUSINESS CONSULTANT |
| Townsend | Norman | D | SALES MANAGER PCIO |
| Villec | Brian | | FINANCIAL SALES CONSULTANT |
| Weisfeld | Sandie | | BUSINESS CONSULTANT |

| Last Name | First Name | MI | Job Title |
|---|---|---|---|
| Albidress | Adrian | | Agent |
| Alexander Insurance | | | Checking on status |
| Alpaugh | Michael | T | Agent |
| Bennetti | Douglas | | Agent |
| Broadbent | Edward | R | Agent |
| Broadbent | Rick | F | Agent |
| Broadbent-Diossi | Lisa | M | Agent |
| Carey | James | E | Agent |
| Coen | Shawn | G | Agent |
| Conley | Charles | C | Checking on status |
| Crow | Roy | William | Agent |
| Desmond | Wayne | P | Agent |
| Deaton | Glenn | W | Agent |
| Dewberry | Steven | D | Agent |
| Disabatino | Stephen | M | Agent |
| Dorsey | James | A | Agent |
| Dorsey | A | Barbara | Agent |
| Fetterman | David | LC | Agent |
| Finney | R | A | Agent |
| Gouert | T | B | Agent |
| Hearn | Elmer | E | Agent |
| Hoban | Cynthia | C | Agent |
| Hollingsworth | Barry | V | Agent |
| Koziol | John | J | Agent |
| Lee | Helene | M | Agent |
| Maniscalco | Raymond | L | Agent |
| Marconi | Kenneth | J | Agent |
| McCall | Brooks | M | Agent |
| Muncie | Marvin | E | Agent |
| Neal | Charles | A | Agent |
| Nickle | Henry | E | Agent |
| Parsons | Richard | A | Agent |
| Rosenberry | Judith | B | Agent |
| Sheets | Calvin | C | Agent |
| Skinner | Robert | K | Agent |
| Slack, Sr | J | W | Agent |
| Slack, Jr | J | W | Agnet |
| Small | Richard | E | Agent |
| Steinebach | R | W | Agent |
| Truitt | Thad | N | Agent |
| Varone | Franklin | T | Agent |
| Walker | C | C | Agent |
| Wallace | Charles | M | Agent |
| Wilkinson | Michael | J | Agent |
| Wolff | Peter | Louis | Agent |
| Wyshock | Thomas | R | Agent |
| Zuka | Ronald | W | Agent |

| Last Name | First Name | MI | Job Title |
|---|---|---|---|
| Broadbent | Dick | A | Agent |
| Browne | Michael | Dennis | Agent |
| Culver | William | Keith | Agent |
| Dewberry | Bill | | Agent |
| Hambrick | Kearny | | SALES MANAGER PCIO |
| Lokey | Walter | F | Checking on status |
| Marine | Gary | G | Agent |
| Marvel | Bruce | | Checking on status |
| McCulley | William | L | Agent |
| Patterson | Tim | | Checking on status |
| Rouke | K | Michael | Checking on status |
| Sanderson | Gerald | S | Agent |
| Weddell | Jerry | | SALES MANAGER PCIO |

MTC29

# Murphy Spadaro & Landon

### ATTORNEYS

**1011 CENTRE ROAD, SUITE 210**

**WILMINGTON, DELAWARE 19805**

302.472.8101

**PHONE 302.472.8100**

**FAX 302.472.8135**

jspadaro@msllaw.com

September 2, 2005

<u>**BY E-MAIL AND U.S MAIL**</u>
Curtis P. Cheyney, III, Esq.
Swartz Campbell LLC
1601 Market Street, 34th Floor
Philadelphia, PA 19103

RE: **Eames v. Nationwide Mut. Ins. Co.**
**C.A. No.: 04-CV-1324KAJ**

Dear Curt:

On August 5, 2005, the Court ordered Nationwide to meet and confer with us regarding our pending document requests. It is now almost one month to the day since the Court issued those instructions. To date, however:

• Nationwide has failed to produce even a single document in response to the requests.

• Nationwide has refused our request that it identify (and include in the search) all persons with knowledge of the use of the word "full" in connection with PIP -- a refusal that, from our perspective, deliberately shields the information most likely to lead to the identification of responsive documents.

• Nationwide has refused to explain how its search of the Nationwide file server was conducted in the <u>Fraser</u> case, even though you yourself served as counsel of record in that case, and even though such a search could obviously serve as a model for our exercise here.

• Nationwide apparently refuses to search its main file server, even though the <u>Fraser</u> case confirms that it is readily searchable.

• Nationwide has failed to agree, despite repeated requests, to a search that is not limited geographically to the State of Delaware -- even though one of the express goals of this exercise is to discover responsive ***corporate-level*** documents that (obviously) could never be identified through a Delaware-only search.

• Nationwide has identified likely custodians, but has apparently imposed its Delaware-only limitation on that list; and has refused our request that the custodians and their reports be enlisted in a search for paper documents (as opposed to e-mails only).

123634

MTC30

Curtis P. Cheyney, III, Esq.
September 2, 2005
Page 2

_____

     • Nationwide has apparently not yet searched its board meeting minutes.

***

     This state of affairs is unacceptable to us, and we believe the Court will find it unacceptable as well. I respectfully implore Nationwide to take this process seriously, and to respond positively (and immediately) to the points, questions and requests set forth in my August 24, 2005 letter. I also ask that you and your e-discovery liaison meet with me in person to bring these discussions to a productive end. I am prepared to attend such a meeting at your office, and fairly immediately. I could attend, for example, on September 7, 8, 9 or 13.

     Please give us the benefit of your prompt response.

Very truly yours,

John S. Spadaro

JSS/slr
cc: Nicholas E. Skiles, Esq. (by e-mail)
    John P. Marino, Esq. (by e-mail)

MTC31

# John S Spadaro

**From:**    "Curtis P. Cheyney" <ccheyney@swartzcampbell.com>
**To:**      "John S. Spadaro, Esq." <jspadaro@msllaw.com>
**Sent:**    Tuesday, September 06, 2005 5:49 PM
**Subject:** Eames v. Nationwide

John,

We have received your most recent letter.  We and our client have been proceeding as outlined in my last letter. Your August 24 letter raises several additional matters and makes several new requests of our client. We and our client have been working diligently to address and respond to these additional matters and new requests. Nationwide takes this process seriously, and continues to expend significant time and resources as previously outlined.

We expect to be in a position to respond in writing to the matters and new requests raised in your August 24 letter on Thursday.  We can then proceed with scheduling a meeting, if necessary, as requested in your September 2 letter.  In the meantime, I will be in Court in Pittsburgh tomorrow and then again on Friday.

                              Sincerely,


                              Curtis P. Cheyney, III


Curtis P. Cheyney, III
Swartz Campbell LLC
1601 Market St Fl 34
Philadelphia PA 19103

(215) 299-4304 (voice)
(215) 299-4301 (facsimile)
ccheyney@swartzcampbell.com
http://www.swartzcampbell.com/

This electronic material, any attachments hereto and the information contained herein is intended only for the use of the individual or entity to which it is addressed and may contain information that is privileged, confidential and exempt from disclosure. If the reader of this message is not the intended recipient or any employee or agent responsible for delivering the message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify Swartz Campbell LLC immediately at (215) 564-5190 and return the original message to us by email. Thank you.

                                                              MTC32

                                                              9/9/2005

## John S Spadaro

**From:**  "John S Spadaro" <jspadaro@msllaw.com>
**To:**  "Curtis P. Cheyney" <ccheyney@swartzcampbell.com>
**Sent:**  Wednesday, September 07, 2005 9:57 AM
**Subject:**  Re: Eames v. Nationwide

Curt:

We're disappointed by your message, and concerned by your characterization of my August 24 letter as making "new" requests.

Let me offer an example. After months of our attempting, without success, to engage you in meaningful negotiations on these discovery issues, you stated in your August 22 letter *for the first time* that you would attempt to identify likely document custodians -- a basic step that Nationwide could have (and should have ) taken long ago. My August 24 letter asked that Nationwide distribute a written message to those custodians and their reports, seeking to identify responsive documents. Nationwide apparently intends to label this a "new" request, as a means of justifying more (unjustified) delay.

But it's not really our request that's "new" -- not in any intellectually honest sense. Rather, it's Nationwide's identification of custodians that's late in coming. In other words, Nationwide has only recently begun its painfully slow, tentative steps toward actually producing something. When we respond to those tentative measures with some obvious follow-up, that's not a case of moving the goalposts; it's just what reasonable people would call "negotiations."

You say that Nationwide is taking the process seriously, and expending significant resources on it. Why then can't you simply answer the question referenced above (to take just one example)? How much time and resources does it take to say "yes, we'll distribute your message"? Or "no, but here's our proposal for a different message"?

Equally troubling is your refusal to meet with me on any of the four dates I proposed. I note that you do not claim to be unavailable on September 13 (a date I proposed for our meeting), nor do you propose any dates of your own. And when you say that Nationwide may meet with us "if necessary", you leave open the prospect that Nationwide may refuse a meeting altogether.

In short, there is no justification for this interminable process of listening to Nationwide profess its seriousness while waiting for it to actually do something. You have produced no documents. You have not said whether you will produce documents. You have not said whether responsive documents exist. You have not told us when (if ever) any of these questions will be answered.

The Court is available for a teleconference on this matter on September 13 at 9:30, and September 14 at 2:30. Please let me know your availability. If your response to my August 24 letter (a response you've said we'll have by tomorrow) makes meaningful progress, we'll give the negotiations one more chance. If not, we'll ask the Court for appropriate relief.

I encourage Nationwide to respond positively and completely to the points in my August 24 letter, and to finally share with us the documentary record we're seeking.  John

----- Original Message -----

**From:** Curtis P. Cheyney
**To:** John S. Spadaro, Esq.
**Sent:** Tuesday, September 06, 2005 5:49 PM
**Subject:** Eames v. Nationwide

John,

MTC33

9/9/2005

We have received your most recent letter. We and our client have been proceeding as outlined in my last letter. Your August 24 letter raises several additional matters and makes several new requests of our client. We and our client have been working diligently to address and respond to these additional matters and new requests. Nationwide takes this process seriously, and continues to expend significant time and resources as previously outlined.

We expect to be in a position to respond in writing to the matters and new requests raised in your August 24 letter on Thursday. We can then proceed with scheduling a meeting, if necessary, as requested in your September 2 letter. In the meantime, I will be in Court in Pittsburgh tomorrow and then again on Friday.

                    Sincerely,


                    Curtis P. Cheyney, III


Curtis P. Cheyney, III
Swartz Campbell LLC
1601 Market St Fl 34
Philadelphia PA 19103

(215) 299-4304 (voice)
(215) 299-4301 (facsimile)
ccheyney@swartzcampbell.com
http://www.swartzcampbell.com/

This electronic material, any attachments hereto and the information contained herein is intended only for the use of the individual or entity to which it is addressed and may contain information that is privileged, confidential and exempt from disclosure. If the reader of this message is not the intended recipient or any employee or agent responsible for delivering the message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify Swartz Campbell LLC immediately at (215) 564-5190 and return the original message to us by email. Thank you.

MTC34

9/9/2005

Swartz Campbell LLC
1601 Market Street Fl 34
Philadelphia PA 19103-2316

voice (215) 299-4304
facsimile (215) 299-4301
ccheyney@swartzcampbell.com
www.swartzcampbell.com

**Curtis P. Cheyney, III**
*Attorney at Law*

September 8, 2005

**VIA EMAIL**

John S. Spadaro, Esquire
Murphy Spadaro & Landon
1011 Centre Road, Suite 210
Wilmington, DE   19805

      RE:   Eames v. Nationwide Mutual Insurance Company
             Our File No.:  0547-107521

Dear Mr. Spadaro:

     We are replying to your August 24 and September 2 letters. Below are responses to the specific statements and questions raised in your letters.

     1.     You comment as follows: "You say that Nationwide estimates, on a preliminary basis, that between seventy-five and 125 persons are likely custodians of potentially relevant electronic documents. You also say that Nationwide will provide (us) with the titles of those persons 'for purposes of identifying anticipated sources for review of emails'."

     Response: You have now received the list. Please advise us if you know of any specific additional persons that you believe should be added to the list.

     2.     You comment as follows: "We are encouraged by the prospect of receiving such a list, and working with these persons to focus your search efforts."

     Response:  We assume that by this statement you did not mean to imply that you intended to contact employees of Nationwide. Please advise us if this is incorrect.

     3.     You comment as follows: "At the same time, it stands to reason that those most likely to be custodians of responsive electronic documents may also have knowledge of the existence and location of responsive paper documents. These

John S. Spadaro, Esquire
September 8, 2005
Page 2

same persons might reasonably be expected to have knowledge of the genesis of the
'full' usage that is the subject of this case.   We therefore ask Nationwide to
distribute to these persons, and to those who report to them, the following message:
. . ."

Response:   A substantially similar message was previously sent to the
persons on the contact list (except for the agents). We will now forward the message
to the agents included on the list.

4.    You comment as follows:  "You ask us to confirm that Nationwide need
not search policyholder-specific claim or underwriting files.  I have confirmed that
position on at least two prior occasions, and I do so again here."

Response:  Thank you for this clarification.

5.    You comment as follows:  "You say that Nationwide intends to begin by
first searching 'Delaware state email files and Nationwide Mutual Insurance
Company Board Minutes.'  We have no objection to your commencing the search
effort with those two categories.  But we do not agree that Nationwide can properly
limit any aspect of its search to the geographic region of Delaware, unless
Nationwide first confirms that it is only in Delaware that Nationwide or its agents
use the modifier 'full' in connection with PIP.  Our unwillingness to accept such
geographic limits was explained in my August 5, 2005 e-mail, at item 6."

Response:  Nationwide agrees to search electronically stored Corporate Board
Minutes, with no limitation to Delaware.  Nationwide will search the emails of the
individuals included on the list for the period commencing from September 1, 2002
to the date of the filing of the Complaint. As you know, Nationwide contends that
the modifier "full" is not used in connection with PIP coverage limits as you contend.
We remain willing to further discuss this with you as necessary.

6.    You comment as follows:  "If I understand you correctly, you say that
Nationwide will limit its search of stored e-mails (taken from back-up tapes) for the
period September 2002 to the present.   If Nationwide agrees to distribute our
proposed message to document custodians (shown above), we will accept this
limitation."

Response:   Nationwide intends to conduct the email searches from
September, 2002 through the date of your complaint as described above.

7.    You comment as follows:  "You say that Nationwide's search of current
e-mail files for the identified custodians would be limited 'to the date that [our]

John S. Spadaro, Esquire
September 8, 2005
Page 3

Complaint was filed . . . .' I do not understand this proposed limitation. Are you proposing a search that ranges from the date of the complaint to the present? Or something else?"

Response: As described above, the email searches would be from September, 2002 (upon restoring available back-up tapes) through the date of the Complaint.

    8.    You comment as follows: "You propose to search board minutes from the date that Delaware's PIP statute was enacted to the date of the Complaint. We accept that limitation."

Response: Nationwide is proceeding accordingly.

    9.    You comment as follows: "The search terms you propose in the second paragraph of your letter are obvious ones, and include search terms that we have previously proposed. We find those search terms acceptable."

Response: Nationwide is proceeding accordingly.

    10.    You comment as follows: "You ask whether (plaintiff or plaintiff's counsel) possess any generic documents relating to the characterization of PIP as "full." I can assure you that if we did, we would have already shared them with you."

Response: Thank you for your response. We understand that you do not have possession of any such documents. Please also advise us if you know of such a document or have seen, heard of or been informed that such a document exists. And if you do know of any such documents or have been informed that they exist, please provide the particulars so that we may conduct an appropriate search and inquiry.

    11.    "With respect to your suggestion 'to share (rate documents) with those custodians . . . identified'."

Response: We believe that it is better to send the broader inquiry to each of the identified individuals as described above. Your suggestion may limit individuals' focus to particular documents.

    12.    You ask whether Nationwide has actually produced one or more generic documents that characterize PIP as "full."

Response: The documents produced thus far speak for themselves. We do not contend that any such documents characterize PIP coverage limits as "full."

John S. Spadaro, Esquire
September 8, 2005
Page 4


13.    You comment as follows: "We therefore ask again that you attempt to identify persons with knowledge of the use of the word 'full' in connection with any aspect of PIP, in any documents related to the insurance transaction – whether or not you regard that usage as innocent, and whether or not you regard the documents themselves as part of the insurance contract.  If you refuse to do this, you are deliberately shielding the information most likely to lead to the identification of responsive documents.  Further motion practice will then be unavoidable."

Response: We obviously disagree with your comments and the legal merit of your advocated positions.  We are not in any attempting to shield documents. Rather, we are attempting to identify, through the searches described above, all documents that meet the search protocol.  The search results should reveal any such "knowledgeable" persons as you request.

14.    You comment as follows: "You ask what we mean when we speak of the term 'full' appearing in 'close proximity' to terms like 'PIP' and 'Personal Injury Protection.'  By 'close proximity' we mean within the same sentence; within the same line entry; within ten words; or within fifty characters."

Response: No response necessary.

15.    You comment as follows: "In my August 16, 2005 e-mail, I requested that Nationwide ask its e-discovery liaison to explain how Nationwide's main file server was searched in the Fraser case (in which you were counsel of record for Nationwide).  You have not addressed my request, except to characterize and criticize what you take to be my 'beliefs' about the Fraser case."

Response: The present search that you are asking Nationwide to do is not comparable to Fraser.  It is broader and a much more vague, time-consuming and burdensome search:  In Fraser, the search was not for "generic" documents, "genesis" documents, or "transaction related" documents with no specific headers and without specific, direct email identifiers.  Accordingly, the Fraser search has little in common with your present demands against Nationwide.  However, we wish to be cooperative.  If you would like to meet with the e-liaison in Delaware or Philadelphia, I will arrange it for some convenient time.  He was not involved in the Fraser matter and will require some reading to inform himself of the Fraser matter in order to respond to your likely questions.  We of course expect that you understand that no privileged information will be revealed.  That being said, there is no "main" server.

John S. Spadaro, Esquire
September 8, 2005
Page 5

16.     You comment as follows: "You say that as the search proceeds, you
expect to identify both 'problems and burdens' associated with the search. If and
when you identify such problems and burdens, I will attempt to address them. I
would emphasize, however, that claims of burden must properly be weighed against
the needs of the case, the complexity of the issues, and the parties' respective
resources."

Response: If problems arise we will let you know about them and attempt to
work them out by agreement.

17.     You comment as follows: "You predict that the document search
(which you have barely begun) will raise issues of confidentiality and evidentiary
privilege. As noted in my August 16, 2005 message, we proposed a comprehensive
confidentiality order (essentially identical to the one you and I agreed to in the
Crowhorn case) many months ago. You refused to consider it then; will you revisit
your position now?"

Response: Nationwide agrees to a confidentiality order similar to the one
used in the Crowhorn case. Attached is a draft for your review. Should any
responsive documents be withheld pursuant to a privilege claim, we will of course
provide a proper privilege log.

18.     You comment as follows: "You say that the document search effort is 'a
priority with Nationwide and also with the discovery liaison.' That is encouraging
news, particularly since we have been pursuing this discovery for nearly five
months. Certainly it is a priority for our side."

Response: We do not believe a response is necessary. We do point out,
however, that your comment ignores the appeal and stay period.

In an effort to be cooperative, Nationwide's e-discovery liaison will meet in
person to bring these discussions to a productive end as you request. He is out of
the office, but we will provide you with proposed dates upon his return the first of
next week.  In the meantime, we hope you agree that further contentious
correspondence and rhetoric is both unnecessary and unproductive. Board and
Cabinet Minutes are being searched at this time. E-mail searches have begun; it is
time-consuming, and ongoing and a not yet finished review. For the meeting you
requested with Nationwide's e-liaison representative Peter Oesterling, Esquire (who
is out of the office this week on business and so no firm confirmable date can now be
suggested by me and no actual results of the searches to date can now be reported
to you by me), it will be discussed together next week for a scheduling at both your
and his first available and mutually convenient date. He then will provide more

John S. Spadaro, Esquire
September 8, 2005
Page 6

details of the search results to date. We have made reasonable and substantial progress and we continue to do so. I trust you will accept that representation and permit the process and progress to continue without the Court's intervention. If not, only September 13, 2005 of the two dates suggested and at 9:30 a.m. is available for me. The day of September 14, 2005, as you know, I will be in Dallas, Texas and unavailable.

Please provide any comments on the draft protective order so that we may submit it to the Court.

We look forward to continued meaningful progress.

Very truly yours,

SWARTZ CAMPBELL LLC

BY: _____
Curtis P. Cheyney, III

CPC/dd
Enclosure

cc:    John P. Marino, Esq. (w/encl.)(via email)
       Peter Oesterling, Esq. (w/encl.)(via email)
       Yvonne F. Chambers, Esq. (w/encl.)(via email)
       Nicholas E. Skiles, Esq. (w/encl.)(via email)

## John S Spadaro

**From:**    "Curtis P. Cheyney" <ccheyney@swartzcampbell.com>
**To:**      "John S. Spadaro, Esq." <jspadaro@msllaw.com>
**Cc:**      "Marino, John" <jmarino@fowlerwhite.com>; <CHAMBEY@Nationwide.com>;
             <OESTERP@Nationwide.com>; "Nicholas E. Skiles" <nskiles@swartzcampbell.com>
**Sent:**    Thursday, September 08, 2005 2:41 PM
**Subject:** Eames vs. Nationwide


John, as a follow-up to the previous letter and proposed protective order and given the contents of that letter and the fact that we will be holding a meeting with Nationwide's e-discovery liaison to attempt to work through any remaining issues as you have requested, we do not believe that it is necessary to hold a conference with the judge. If issues remain after the meeting that cannot be resolved by agreement, we should request a conference at that time. We hope that you will agree once you have reviewed the letter. Please let us know if you nevertheless deem it necessary to have a further conference with the Judge at this time.

Sincerely,


Curtis P. Cheyney, III


This electronic material, any attachments hereto and the information contained herein is intended only for the use of the individual or entity to which it is addressed and may contain information that is privileged, confidential and exempt from disclosure. If the reader of this message is not the intended recipient or any employee or agent responsible for delivering the message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify Swartz Campbell LLC immediately at (215) 564-5190 and return the original message to us by email. Thank you.