# EXHIBIT Q

# Murphy Spadaro & Landon

ATTORNEYS

1011 CENTRE ROAD, SUITE 210

WILMINGTON, DELAWARE 19805

PHONE 302.472.8100

FAX 302.472.8135

302.472.8101

jspadaro@msllaw.com

October 3, 2005

**BY FACSIMILE AND U.S. MAIL**
Curtis P. Cheyney, III, Esq.
Swartz Campbell LLC
1601 Market Street, 34th Floor
Philadelphia, PA 19103

      **RE: Eames v. Nationwide Mut. Ins. Co.**
           **C.A. No.: 04-CV-1324KAJ**

Dear Curt:

    Earlier today my secretary, Susan Robinson, and I met with you, Mr. Oesterling and Mr. Marino regarding the Eames plaintiffs' initial document requests. I write now to address the results of our meeting.

    In the course of the meeting, you confirmed that Nationwide's efforts to identify responsive documents have consisted of four basic activities:

    *First*, Nationwide has searched the e-mails of those on its list of "custodians" -- a list consisting of Delaware insurance agents and the Nationwide Delaware "leadership team" -- for the period September 1, 2002 to August 20, 2004. Nationwide has also spoken directly with certain persons on that list. You acknowledged the "Delaware focus" (as you called it) that Nationwide's approach implies.

    For reasons we have repeatedly explained (including in my August 5, 2005 e-mail message) we believe that Nationwide's approach is designed for failure. In my August 24, 2005 letter, for example, I noted that a Delaware-specific search was not likely to identify responsive documents "unless Nationwide first confirms that it is only in Delaware that Nationwide or its agents use the modifier 'full' in connection with PIP." Similarly, we have pointed out to Nationwide that a two-year search beginning in 2002 bears little relation to the history of the disputed practice, which existed long before 2002. Obviously, documents relating to the practice's genesis would be dated earlier than September 2002.

    *Second*, Nationwide has interviewed just a single person from outside its Delaware-only list. It is thus clear that Nationwide has rejected our calls for a broader search, not limited to Delaware-specific sources or to the two-year period immediately preceding our complaint.

124521

Case 1:04-cv-01324-JJF-LPS    Document 116-18    Filed 10/26/2005    Page 3 of 8

Curtis P. Cheyney, III, Esq.
October 3, 2005
Page 2

---

***Third***, Nationwide has searched its "agency briefings" database, containing data from 1999 forward. Mr. Oesterling indicted that this search had identified no responsive documents.

Here again Nationwide shows its willingness to search sources that are not likely to reveal responsive documents. The disputed practice began well before 1999, and the starting point should not be post-1999 databases, but human sources with historic knowledge of the practice and its genesis.

***Finally***, Nationwide searched minutes of board meetings. In your August 22, 2005 letter, you indicated that such board minutes would be searched from the date that Delaware's PIP statute was enacted -- approximately 1973, if I recall correctly -- to the date of our complaint. At today's meeting, Nationwide indicated that this search had identified no responsive documents.

I neglected to ask at the meeting whether Nationwide's search of board minutes embraced the full time period (1973 to 2004) promised in your August 22 letter. Please confirm that point at your earliest convenience.

***

In addition to defining the four basic activities that comprise Nationwide's search effort, we also addressed the questions set forth in my September 16, 2005 e-mail. For my part, I would summarize that exchange as follows:

- I asked again whether Nationwide would agree to make a good-faith attempt to identify the persons most knowledgeable of the genesis and history of the disputed practice -- that is, the use by Nationwide's insurance agents of the modifier "full" in characterizing PIP (or any aspect of PIP) within "rate quotes," memoranda of insurance or other policy-related documents. If I understood you correctly, you asserted that Nationwide has already made such a good-faith effort by virtue of the four activities described above. On this we obviously disagree, and I so stated at the meeting.

- I next asked whether Nationwide would agree to distribute our "document search message" (set forth at page 2 of my August 22, 2005 letter), not only to its proposed list of Delaware custodians but also to the persons to whom they report. You indicated that Nationwide would consider this request. I ask that you consider it quickly.

- With respect to questions 6, 7 and 8 from my September 16, 2005 e-mail message, Mr. Oesterling agreed to contact the appropriate underwriting staff and "products compliance" people at Nationwide to identify documents relating to the development of forms used in the sale of auto insurance products, and documents providing written guidance on that subject to insurance agents. I ask that this be

124521

Curtis P. Cheyney, III, Esq.
October 3, 2005
Page 3

---

done quickly, and that Nationwide promptly produce any responsive documents identified in the process.

\*\*\*

At our meeting, Nationwide indicated that it will need from two to four weeks to complete its Delaware-specific "e-mail assessment", after which the documents so identified will be reviewed by counsel for production (if, indeed, they are to be produced at all). With all due respect, this timeline is unacceptable to us, and we ask Nationwide to accelerate it. Our discovery was propounded in early April 2005; and Nationwide's failure to address the discovery led the Court to threaten sanctions on August 5, 2005. At the pace at which Nationwide proposes to proceed, we might not receive responsive documents (or Nationwide's final word on whether responsive documents exist) before the Christmas season.

Mr. Oesterling did indicate, however, that 291 "potentially responsive" documents have already been identified. We ask that those documents be turned over to Nationwide's counsel immediately for review and (if appropriate) production, so that any responsive documents can be produced no later than October 17, 2005. Please let me know whether Nationwide is willing to do this.

\*\*\*

I regret that our meeting was not more productive. We remain disappointed with Nationwide's approach, and convinced that responsive documents exist -- though they are not likely to be located through Nationwide's search strategy.

Very truly yours,

John S. Spadaro

JSS/slr

124521

Swartz Campbell LLC
1601 Market Street Fl 34
Philadelphia PA 19103-2316

voice (215) 299-4304
facsimile (215) 299-4301
ccheyney@swartzcampbell.com
www.swartzcampbell.com

**Curtis P. Cheyney, III**
*Attorney at Law*

October 17, 2005

<u>VIA EMAIL</u>

John S. Spadaro, Esquire
Murphy Spadaro & Landon
1011 Centre Road, Suite 210
Wilmington, DE   19805

      RE:    Eames v. Nationwide Mutual Insurance Company
               Our File No.: 0547-107521

Dear Mr. Spadaro:

      We are replying to your October 3, 2005 letter. Mr Oesterling met with you as you requested. He responded to all of your questions and provided the information that you requested. He further agreed to "follow up" on certain matters as you requested. We therefore do not understand your comment that you "regret that the meeting was not more productive."

      As you are aware, this case involves an insurance policy purchased and issued in Delaware to Delaware residents. The subject accident occurred in Delaware. The disputed PIP coverage was paid in Delaware, and is governed by Delaware law. Moreover, the Court's Scheduling Order limits discovery at this stage to class certification issues. The proposed class in this case is limited to Delaware insureds. The proper focus of discovery is therefore obviously Delaware. Given the nature of and issues in this case, as well as the proper scope of discovery at this stage as defined by the Court, we fail to see how you could reasonably contend that the searches (that have been outlined in detail to you and the Court) are "designed for failure."

      Nevertheless, your characterizations to a "Delaware – specific search" limited to "Delaware specific sources" are misleading. You have been provided with the list of persons from whom responsive documents have been sought and whose emails have been searched. As you have been advised, the duties of several of the Nationwide employees on the list are not limited to Delaware. Moreover, the search for Board Minutes that you requested, and was conducted, was not limited to Delaware. We have asked that you come forward with any specific individuals that you feel should be added to the list. You have not done so. We again make this request.

John S. Spadaro, Esquire
October 17, 2005
Page 2

Your reference to a "two-year search beginning in 2002" is similarly misleading. As you are aware, the search for any responsive documents was not limited to this time frame. Rather, due to the system constraints that have been outlined for you, the search for emails can not extend further back than September 2002. We have asked that you indentify any specific responsive documents, or any specific document sources, that you believe to exist. You have not done so. We again make this request.

With regard to you inquiry regarding the search of board minutes, the search encompassed a start date of January 1, 1973. Other matters addressed in your letter are the subject of interrogatories that your clients recently served. Nationwide will timely provide its responses.

Mr. Oesterling is following up on the additional matters that you requested that he address during the meeting. We will inform you of the results of his inquiries.

We respectfully disagree with your characterizations as to both "Nationwide's approach" and the timing of Nationwide's discovery efforts. As you are well aware, the case was stayed while the jurisdictional issue was before the Third Circuit. Nationwide's significant efforts have been fully outlined for both you and the Court. With all due respect, your refusal to cooperate, as well as your continually expanding demands, has made the process much more difficult and time consuming than it should be. The parties' focus should be proceeding to have this case determined on its merits as quickly as possible, not on creating unnecessary disputes and conflict and engaging in unproductive "letter writing wars." Nevertheless, Nationwide will continue to proceed in good faith as previously outlined and will remain cooperative. We will further discuss reasonable time frames with you and Mr. Semple.

Very truly yours,

SWARTZ CAMPBELL LLC

BY: _____
Curtis P. Cheyney, III

CPC/

cc: John P. Marino, Esq. (via email)
Peter Oesterling, Esq. (via email)
Nicholas E. Skiles, Esq. (via email)

2364488

# Murphy Spadaro & Landon

ATTORNEYS

1011 CENTRE ROAD, SUITE 210
WILMINGTON, DELAWARE 19805

PHONE 302.472.8100
FAX 302.472.8135

302.472.8101

jspadaro@msllaw.com

October 24, 2005

**BY FACSIMILE AND U.S. MAIL**
Curtis P. Cheyney, III, Esq.
Swartz Campbell LLC
1601 Market Street, 34th Floor
Philadelphia, PA 19103

      RE: **Eames v. Nationwide Mut. Ins. Co.**
          C.A. No.: 04-CV-1324KAJ

Dear Curt:

    We are deeply disappointed by your letter of October 17, 2005, because it confirms our worst fears: that despite the Court's recent appointment of an SDM, Nationwide remains determined to stonewall on discovery.

    Consider these points:

    • Nationwide claims to be proceeding in a spirit of good faith and cooperation. But our document requests were served *over six months ago*. True, the case was stayed for four weeks. But this means that Nationwide has produced nothing -- not a single document other than an (incomplete) copy of the Eames's insurance contract -- in the course of five months.[1]

    • I have asked repeatedly whether Nationwide would agree to identify the persons most knowledgeable with respect to the genesis and history of the disputed practice -- that is, the use by Nationwide's insurance agents of the modifier "full" in characterizing PIP (or any aspect of PIP) within policy-related documents. I repeated this request in my letter of October 3. Your October 17 letter ignored the request yet again.

    • On three occasions I have asked whether Nationwide would agree to distribute our "document search message" (set forth at page 2 of my August 22, 2005 letter), not only to its proposed list of Delaware custodians but also to the persons to whom they report. Nationwide continues to ignore this request.

---

[1] Of course, Nationwide had already produced its incomplete copy of the insurance contract as part of its initial disclosures. Thus, in six months' time, Nationwide has produced no responsive documents whatever.

125192

Curtis P. Cheyney, III, Esq.
October 17, 2005
Page 2

- You note correctly that at our October 3 meeting, Mr. Oesterling agreed to follow up on several items. Three weeks have passed, and Nationwide has provided us with no further information on any of those items.

- You say that the "proper focus of discovery is . . . obviously Delaware." But that could only be true if the disputed practice was limited to Delaware -- that is, if Nationwide had not employed that practice in other states. I have asked you repeatedly to tell us whether Nationwide's use of the modifier "full" is limited to Delaware PIP coverages, or (conversely) used elsewhere. Nationwide refuses to respond.

- You accuse me of a lack of cooperation because I have not identified specific Nationwide personnel by name who might have knowledge of the genesis of the disputed practice; and because I have not identified Nationwide's own responsive documents by author, date, etc. That charge is perhaps the most outlandish and revealing of any position Nationwide has taken in this case.

Is it really your contention that Nationwide need not produce discoverable documents unless its adversary identifies them *specifically* in advance? Or that Nationwide need not conduct a reasonable search for responsive documents unless, by some trick of clairvoyance, its adversary first discloses the names of the Nationwide employees to be searched?

Nationwide's posture is worthy of sanctions. It might just as well take the position that it will produce no documents in discovery until its adversary finds the documents from (nonexistent) independent sources and produces them to Nationwide first.

- At our October 3 meeting, Mr. Oesterling indicated that 291 "potentially responsive" documents have already been identified by Nationwide. In my October 3 letter, I asked that those documents be produced immediately. Three weeks have passed without Nationwide's producing even a single document; and your October 17 letter fails to address this request (which I make again here).

***

You close your October 17 letter by promising further discussions with me and the SDM regarding "reasonable time frames" for this discovery. But reasonable time frames passed months ago. You thus leave us no choice but to seek the SDM's immediate intervention.

Very truly yours,

John S. Spadaro

JSS/slr

125192