# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| Thomas A. Eames, Roberta L. Eames, and Tammy Eames, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>Nationwide Mutual Insurance Company,<br><br>Defendant. | CIVIL ACTION<br><br>NO. 04-1324 |

## DEFENDANT'S RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL DOCUMENTS RESPONSIVE TO THEIR INITIAL DOCUMENT REQUESTS, AND FOR SANCTIONS

# TABLE OF CONTENTS

Table of Citations..................................................................................................ii

INTRODUCTION......................................................................................................1

NATURE OF CASE AND PLAINTIFF'S REQUESTS............................................4

NATIONWIDE'S DISCOVERY EFFORTS..............................................................6

ARGUMENT..............................................................................................................8

    A.    Plaintiffs Continue to Make Inaccurate and Misleading Assertions..........9

    B.    Nationwide Has Fully Complied with the Court's Directives................11

    C.    Plaintiffs' Arguments That Nationwide's Search is Calculated to Fail is Without Merit..........................................................................................12

    D.    Plaintiffs' Request for Sanctions is Meritless............................................13

CONCLUSION ........................................................................................................14

# TABLE OF CITATIONS

**Cases**            **Page**

1. Ed McMullen v. Bay Ship Management, 335 F.3d 215, 217 (3rd Cir. 2003).....14

# INTRODUCTION

This case involves the interpretation of an insurance policy. The issue is the limits of Personal Injury Protection ("PIP") coverage provided by the policy. Plaintiffs seek to identify a broadly defined class of Delaware PIP insureds.[1]

Discovery at this stage is limited to issues related to class certification. All other discovery is stayed "until such time as the Court renders a decision with respect to class certification, or otherwise acts to lift the stay." *See* Scheduling Order dated March 28, 2005. The discovery dispute has its origin in whether Nationwide's responses to Plaintiffs' Request for Production of Documents are appropriate after electronic document searches are completed. This is Plaintiff's first motion concerning discovery. To date, none of the responses, in Nationwide's view, are incomplete or inaccurate. However, Plaintiffs' counsel has already drawn a warning from the Court concerning his conduct and candor to the Court.

During the last discovery conference with the Court, Judge Jordan informed Plaintiffs' counsel that he was "guilty of hyperbole in [his] expressions to the Court and it is not helpful." Among other admonishments, Judge Jordan further stated the following to Plaintiffs' counsel:

> What I'm telling you is having read the correspondence, I understand that you are not getting everything you want, but you are not helping the process, because you are overstating your case and you are saying things which frankly I think a fair reading [of the record submitted to the Court] will demonstrate are inaccurate . . . .

---

[1] The Court will hear oral argument on Nationwide's pending Motion to Dismiss on November 8, 2005.

See Transcript of September 23, 2005 Telephone Discovery Conference, pgs. 6-7 (Ex. N to Plaintiffs' Memorandum).[2] Finally, the Court clearly conveyed its expectations going forward:

> I expect no hyperbole and scrupulous accuracy if you want me to step in and help you with issues. Don't overplay your hand; which you did this time, to a very large extent.

Id. at pg. 8.

Despite the Court's instructions, Plaintiffs' Motion to Compel is more of the same. It is based on the same assertions, and the same type of hyperbole and inaccurate statements that the Court warned against.

For example, among other inaccurate statements discussed below, Plaintiffs inform the Discovery Master that "the parties recently stipulated that among documents produced by three other Nationwide agents in response to the *Eames* plaintiffs' subpoenas, the '*vast majority*' set forth the characterization of PIP limits as '*full*.'" (emphasis added). A simple reading of the referenced transcript shows that this statement is not accurate. Plaintiffs' counsel himself stated the terms of the actual stipulation:

> And the terms of the stipulation are as follows, and I invite counsel, please, to indicate their assent or disagreement with the way I characterize it. The parties have stipulated that in the vast majority of documents produced by the insurance agents pursuant to the *Eames* plaintiffs' subpoenas the word "full" appears next to the term "PIP."

See Transcript of Deposition of Glenn W. Deaton, pgs. 55-56 (Ex. A to Plaintiffs' Memorandum). There is clearly no stipulation regarding the "characterization of PIP limits as full." There was no reference to PIP limits in any stipulation of counsel. In fact,

---

[2] Much of the discovery record in this case was submitted as exhibits by Plaintiffs. Rather than submit duplicate copies, Nationwide will reference the exhibits to Plaintiffs' Memorandum.

producing Agencies that do not use or reference the word "full" because a deductible was selected or they otherwise refer to the PIP coverage as "basic". See Tab 1.

Plaintiffs similarly attempt to mischaracterize the testimony of an independent Nationwide agent who was deposed. Plaintiffs state that the agent "testified that his agency routinely engages in the practice" of characterizing PIP limits as full. A plain reading of the subject testimony, which is quoted in Plaintiffs' Memorandum, shows that this is similarly not accurate. The questioning did not ask about "PIP limits." Rather, the agent merely agreed that he "would expect to see the word 'full' on the various documents that you have obtained." *See* Plaintiffs' Memorandum, pg. 3. No policy of any insured was included as one of the "various documents" from the agents' files obtained by Mr. Spadaro; See also Tab 1.

Nationwide wants to proceed as expeditiously as possible towards having this case considered on the law and merits. The record shows that Plaintiffs, on the other hand, continue to insist on creating unnecessary conflict. They continue to attempt to engage in unnecessary and unproductive "letter writing wars," as well as unnecessarily seeking the Court's (and now the Discovery Master's) attention to that which counsel describes as Nationwide's search designed for failure and for the non production by Nationwide of genesis or generic documents; Plaintiffs ask the reviewing Court to presume such documents exist as a fact and to agree with counsel that no documents

Nationwide has produced a circular issued by the Delaware Department of Insurance, along with a suggested Form A issued by the Department in 1980.. See Tab 2.

Despite Plaintiffs' continued efforts to overstate and mischaracterize the discovery situation, the record establishes that Nationwide has invested (and continues to invest) significant time and resources, and has fully complied with its discovery obligations. The record further establishes that Nationwide has fully complied with every one of the Court's directives. Plaintiffs' Motion to Compel should therefore be denied.

II.     **NATURE OF CASE AND PLAINTIFFS' REQUESTS**

For the Discovery Master to appreciate what is actually occurring, the nature of this Complaint and Plaintiffs' discovery demands must be put in context. The issue in this dispute is Defendant's responses to Plaintiffs' Requests for Production of Documents and whether electronic documents were searched to disclose the existence, if any, of documents that characterize the PIP limits of a purchased policy as "full". The underlying issue in this suit is the amount of PIP coverage the insured Plaintiffs purchased pursuant to their policy. The policy describes the PIP policy limit specifically in dollar figures, and not by adjectives or modifiers.

Plaintiffs contend that Nationwide represents from other sources – extrinsic documents which Plaintiffs call "policy related documents" - its Delaware PIP coverage characterized as "full". Plaintiffs further contend that the alleged "full" coverages are greater (fuller) than the amounts of the limits specifically purchased and set forth in the Eames policy. Nationwide disputes Plaintiffs' claims; and Nationwide contends that the Plaintiffs' governing insurance policy alone controls the policy obligation for PIP coverages. Plaintiffs suggest that certain form documents they call policy related

an ambiguity in the policy as to the PIP limits.[3]

Plaintiffs have not asked Nationwide to search for any defined and known to exist document or category of documents. Rather, the discovery requests at issue broadly seek:

1. All documents that refer to or characterize limits of liability for PIP coverage as "full."

2. All documents that refer or relate to the characterization of limits of liability for PIP coverage as "full."

Since Nationwide contends that the contractual PIP limits at issue are the clear and unequivocal dollar limits set forth in the policy and its Declaration Page – in accordance with the Delaware PIP statute - and that it has not (and does not) by any the policy terms or words characterize the "limits of liability for PIP coverage as 'full,'" it does not know of the existence of any such genesis document that would satisfy Plaintiffs' demand and about which Plaintiffs' apparently contend should exist. Nationwide has nevertheless conducted (and continues to conduct) broad searches, using extremely broad search terms and criteria, which have been communicated in detail to Plaintiffs' counsel. See August 22, 2005 correspondence; August 25, 2005 correspondence; and September 8, 2005 correspondence (Ex. M to Plaintiffs' Memorandum).

Given these circumstances, Nationwide has repeatedly asked Plaintiffs' counsel to provide any information they have regarding the actual or possible existence of any such

---

[3] The parties' respective positions are fully set forth in the briefing on Nationwide's pending motion to dismiss. Nationwide's opening brief, Plaintiffs' response, and Nationwide's reply brief have been provided to the Discovery Master.

repeatedly asked Plaintiffs' counsel to provide any information they have regarding the possible custodians of any such documents. (See Tab 3). Plaintiffs similarly continue to refuse to do so presumably as counsel and the clients do not know whether such documents really exist. Rather than hoping to find such a document, Plaintiffs seem to be content to react to Nationwide's inability to find such a document and then, with the help of the Court or the Special Discovery Master, create a litigation advantage by seeking a monetary sanction or order from which an evidentiary sanction may later be sought. For plaintiffs, it appears that no disclosure may be the preferred disclosure.

### III.     NATIONWIDE'S DISCOVERY EFFORTS

Despite Plaintiffs' efforts to imply otherwise, voluminous documents have been produced to them. As Plaintiffs' Memorandum acknowledges, 140 auto insurance files have been produced from four different insurance agents. The *Eames* insurance file from the Culver/Muncie Agency has also been produced to Plaintiffs.

Plaintiffs also attempt to imply that Nationwide has made little effort in its searches since the August 5 teleconference with Judge Jordan. This is simply not true. As Plaintiffs' are well aware, Nationwide's significant efforts include the following:

- Nationwide has made its initial Rule 26 Disclosures.

- Nationwide has supplied Plaintiffs with a complete copy of the governing insurance policy issued to Plaintiffs. Plaintiffs' representation that they were provided with an incomplete copy of the policy is not accurate.

- Nationwide has appointed an e-discovery liaison, Mr. Peter Oesterling, to coordinate and manage Nationwide's discovery efforts.

Retention and production notices have been sent to numerous Nationwide employees. Included within these people are the Delaware management employees.

- At Plaintiffs' request, managers of those on the original list were added, and retention and production notices were sent to these employees.

- Nationwide has identified more than 75 employees and independent agents whose e-mails have been searched. A list, which includes the position/title of each individual, has been provided to Plaintiffs' counsel. Nationwide has asked Plaintiffs' counsel to come forward with any additions to the list. Plaintiffs' counsel continues to refuse to do so.

- Pursuant to Plaintiffs' request, an expensive search of past Board Minutes (going back as far as January of 1973) was conducted. No responsive documents were identified.

- An expansive search of Nationwide's Agency Briefing Database was conducted. Agency Briefing is a primary tool used by sales and product employees for communications with independent agents. The briefings go back to 1999. No responsive documents were found.

- On October 17, 2005, Nationwide responded to Plaintiffs' First Set of Interrogatories. Among other things, the interrogatories asked Nationwide to "identify all persons with knowledge of the genesis, development,

[T]he Delaware Department of Insurance has in the past issued suggested forms. For example, Circular Letter No. 80-5 was issued by the Delaware Department of Insurance on April 23, 1980. This included a recommended Form A issued by the Delaware Department of Insurance. The recommended Form A issued by the Delaware Department of Insurance includes a box stating "full coverage with no deductible" in connection with whether or not the insured is electing to have a deductible applicable to his or her PIP coverage. Patti Szlosek has knowledge of this. Ms. Szlosek is a Compliance Manager for Nationwide. She may be reached through counsel for Nationwide. Nationwide will supplement its response should additional information become available.

- Nationwide has provided copies of the DOI Circular Letter No. 80-5 and the recommended Form A referred to in the above interrogatory response to Plaintiffs. (See Tab 2).

Given that the search requests are so broad, the search parameters initiated by Nationwide have been correspondingly extremely broad. This obviously results in numerous non-responsive documents being identified (or "false hits"). As the record establishes, Nationwide has invested, and continues to invest, significant time and resources in conducting these broad searches.

Nationwide remains available to provide any additional information regarding its efforts to the Discovery Master as he may request.

## IV. ARGUMENT

But the record shows that Nationwide has had to invest significant time and resources, and Plaintiffs continue to refuse to cooperate.

Nationwide has been and remains willing to conduct even a more focused search for any specific document(s) or material(s) that Plaintiffs will identify. Nationwide similarly has been and remains willing to focus efforts on any additional sources, or possible sources, that Plaintiffs will identify. Yet Plaintiffs continue to refuse to identify any such documents or sources.

A.     **Plaintiffs Continue to Make Inaccurate and Misleading Assertions.**

As discussed above, despite the Court's previous warnings, Plaintiffs continue to make inaccurate and misleading assertions. In addition to those discussed above, further inaccuracies include:

- Plaintiffs state that "as we approach the seventh month since the document requests were propounded, Nationwide has still produced nothing." In addition to it being not accurate to state that Nationwide has produced "nothing," Plaintiffs fail to mention that the case was stayed while Plaintiffs sought (unsuccessfully) Third Circuit review of the District Court's order denying their motion to remand.

- Plaintiffs state that "the *Eames* Plaintiffs asked Nationwide to distribute a straightforward 'document search' to its Delaware-specific document custodians and those to whom the custodians report" and that "more than two months have passed, but Nationwide has yet to honor the request." Plaintiffs' counsel has been informed that Nationwide had already previously sent a search request. Moreover, at Plaintiffs' request, the

report.

- Plaintiffs state that they have "repeatedly asked Nationwide to simply make a good-faith effort to identify persons with knowledge of the disputed practices genesis" and that "Nationwide refuses to do this." While Nationwide denies the suggestion of a practice other than to rely on the policy to identify PIP limits denoninated by dollar amounts consistent with the statute, plaintiffs' counsel creatively suggest another approach which they call a disputed practice to identify PIP limits as "full". Nationwide identified Patti Szlosek as the person knowledgeable regarding the Delaware Department circular and suggested Form A discussed above. These have been produced.

- Plaintiffs complain that "Nationwide refuses to search e-mails prior to 2002." As Plaintiffs' counsel has been advised, e-mails prior to this are not available. Accordingly, it is not possible to search e-mails prior to this.

- Plaintiffs state that "these search parameters -- limited to Delaware-specific sources and the two-year period immediately prior to the complaint -- are calculated to fail." Plaintiffs' counsel has been advised that the search for responsive documents (other than e-mails because they are not available) has not been limited to this two-year period and is not designed to fail. Since there is no identification of a specific document in Nationwide's possession, the demanded searches are not

documents, but is a search for an undefined generic or genesis document that Plaintiffs suggest must or should exist. Defendant did produce the Eames policy which characterizes the PIP limits expressly in dollar amount ($15,000/30,000) and the DOI required Form A Application which, for the Eames policyholders, references in its appropriate context the word "full" (indicating that the Eames had elected no deductible) and PIP coverages in dollar amounts.

- Plaintiffs attempt to imply that "upper or mid-level management have not been included in Nationwide's search efforts." Just the contrary is true. As Plaintiffs' counsel has been advised, these people have been included.

B. **Nationwide Has Fully Complied With the Court's Directives.**

Nationwide has fully complied with all directives from the Court. Moreover, it has made every effort to confer with Plaintiffs' counsel, and will continue to do so. Rather than confer in good faith and attempt to properly focus and assist in search efforts, Plaintiffs insist on continuing to create unnecessary conflict and lodging misleading and inaccurate accusations.

A further example is Plaintiffs' inaccurate account of the October 3 in-person meeting. Plaintiffs are correct that the Court advised Nationwide and its e-discovery liaison to "have the technical people in the room, if you have to, Mr. Osterling" and not

Mr. Oesterling spent significant time preparing for the meeting and was fully prepared to address any technical questions that Plaintiffs' counsel had. Mr. Oesterling did in fact answer such questions. There were no technical questions that Mr. Oesterling was not prepared to answer. The true fact is that Plaintiffs' counsel asked very few such questions.

The questions that Mr. Oesterling agreed to follow up on were not technical questions. Nationwide and Mr. Oesterling were well prepared for and approached the meeting in good faith. Nationwide respectfully suggests that Plaintiffs approached the meeting with an eye towards maintaining conflict. This is evident by the simple fact that Plaintiffs' counsel returned to his "letter writing war" that same day, before Mr. Oesterling and Nationwide's counsel could even make it back to their offices. *See* correspondence attached as Exhibit Q to Plaintiffs' Memorandum.

### C.  Plaintiffs' Arguments That Nationwide's Search is Calculated to Fail is Without Merit.

This case involves an insurance policy purchased by Mr. Thomas A. Eames and Roberta L. Eames, the policyholders (Tammy Eames is not a policyholder) issued in Delaware to Delaware residents. The disputed PIP coverage benefits to all the Plaintiffs was paid in Delaware for a Delaware accident. The PIP coverage issues are governed by Delaware law and the Nationwide policy. Moreover, the Court's Scheduling Order limits discovery at this stage to class issues for a Delaware only class of policyholders as discussed above. The proposed class is limited to Delaware insureds which, by their

Given that defendants are buying that Plaintiffs ublished in good faith argue that Nationwide's "imposition of arbitrary geographical and temporal limits, with no connection to the disputed practice itself, is a road map to nowhere." It seems that Plaintiffs are somehow contending that, despite their pleadings, the applicable facts and the proposed class, Delaware has "no connection to the disputed practice itself."

The proper focus of discovery is obviously Delaware. Nevertheless, Plaintiffs' characterization of the search parameters being limited to "Delaware-specific sources" is similarly misleading. As Plaintiffs' counsel has been advised, the duties of several of the Nationwide employees included in the search are not limited to Delaware. Moreover, the search for Board Minutes that was conducted was not limited to Delaware.

The searches in this case have obviously been properly focused on Delaware. Plaintiffs' efforts to broadly expand the search beyond Delaware amounts to nothing other than an attempted improper "fishing expedition."

### D. Plaintiffs' Request for Sanctions is Meritless.

Plaintiffs previously asked the Court to enter sanctions in connection with the September 13 telephonic discovery conference with Judge Jordan. A review of the record will show that Plaintiffs make several of the same arguments with the same rhetoric that they now make in this motion. Judge Jordan refused to enter any sanctions. Rather, he noted that Plaintiffs' counsel was guilty of hyperbole and made inaccurate statements as set forth above.

imposed." *Ed McMullen v. Bay Ship Management*, 335 F.3d 215, 217 (3rd Cir. 2003).

There has been no previous motion to compel in this case. No orders compelling discovery have been entered. Rather, the Court has attempted to assist the parties in efforts to resolve discovery disputes. Moreover, Nationwide has fully complied with every directive of the Court.

Nationwide has similarly made every effort to cooperate, and has expended (and continues to expend) significant time and resources, as discussed above and established in the voluminous record. Nationwide will continue to do so. Plaintiffs' request for sanctions is unfounded, wholly unsupported, and meritless. With the several different responses on forms generated by the Agencies (independent contractors) and the failure of Plaintiff to define and describe a generic/genesis document specifically calculated to fulfill their subjective litigation preference, there is no objective basis for a presumption that such documents exist or that Nationwide should be sanctioned for its extensive and costly efforts to date, whether or not they result in Plaintiffs' satisfaction with any production.

## V.     CONCLUSION

WHEREFORE, Nationwide respectfully requests (i) that Plaintiffs' Motion to Compel be denied in its entirety, (ii) that Nationwide be awarded its reasonable expenses in opposing Plaintiffs' Motion to Compel, including attorneys' fees, pursuant to Rule

Nationwide requests that the Discovery Master schedule a hearing and hear oral argument on this matter.

> Respectfully submitted,
>
> SWARTZ CAMPBELL LLC
>
> BY: */s/ Nicholas E. Skiles*
> Curtis P. Cheyney, III, Esquire
> Nicholas Skiles, Esquire (DE Bar # 3777)
> 300 Delaware Avenue, Suite 1130
> P.O. Box 330
> Wilmington, DE 19899
> (302) 656-5935
> Attorneys for Defendant, Nationwide
> Mutual Insurance Company