# EXHIBIT B

**Harvey Bernard Rubenstein**
Attorney at Law
Special Discovery Master

824 Market Street, Suite 901
Wilmington, Delaware 19801
Telephone (302) 658-4101
Facsimile (302) 888-1588

January 9, 2001

Re: Unisys Corporation v. Royal Indemnity Company, et al.
C. A. No. 99C-08-055 JOH

William R. Denny, Esquire
Potter Anderson & Corroon
Hercules Plaza, 6th Floor
P. O. Box 951
Wilmington, DE 19899

John S. Spadaro, Esquire
Murphy Spadaro & Landon
824 N. Market Street, 7th Floor
P. O. Box 8989
Wilmington, DE 19899

Dear Counsel:

This is my decision on Unisys' "Motion To Compel Defendants' Corporate Knowledge Documents" based upon objections to the following document requests directed to RSA, Allendale, and INA:[1]

> All documents reflecting all actions you undertook to
> address any potential internal Year 2000 problems.[2]
>
> All documents reflecting the total cost of [your]
> internal effort to become Year 2000 ready.[3]
>
> All documents that relate to any actions you took
> to prevent or minimize your Year 2000 problems.[4]

---

[1] Unisys also served Rule 30(b)(6) notices of deposition to obtain information on the same subjects. That discovery is not before me.
[2] RSA Document Request No. 33; Allendale Document Request No. 22; INA Document Request No. 19.
[3] RSA Document Request No. 34; Allendale Document Request No. 23; INA Document Request No. 20.
[4] RSA Document Request No. 36; Allendale Document Request No. 25; INA Document Request No. 22.

(2)   All documents that identify the date you first became aware of the Y2K problem.[5]

All documents that identify, reflect, or discuss the date you commenced internal preparation for the Year 2000 problem with respect to your internal systems and applications or products and policies.[6]

All documents that identify, reflect, or discuss the date you first performed any internal remediation on your computer systems or applications for the Year 2000 problem.[7]

All documents that identify or reflect the date you first performed any testing on your computer systems or applications to determine whether any such computer system or application presented a Year 2000 problem.[8]

Unisys argues that a logical and effective way to evaluate the issues raised by the defendants' affirmative defenses and counter-claims is to obtain comparative information on the Year 2000 preparation and readiness efforts of the defendants themselves. Unisys states that the comparison will "undermine the litigation positions" of the defendants (Tr. 307) and will show that Unisys' efforts were reasonable and necessary, that Unisys' costs were not speculative and were not "ordinary maintenance", that the Year 2000 problem involved risk, was "imminent", and did not fall within the policy exclusions, that the Year 2000 losses were fortuitous, and that the discovery is relevant to the fraud and misrepresentation defenses and rebuts the lack of notice defense. Unisys also states that

---

[5] RSA Document Request No. 29; Allendale Document Request No. 18.
[6] RSA Document Request No. 30; Allendale Document Request No. 19; INA Document Request No. 16.
[7] RSA Document Request No. 31; Allendale Document Request No. 20; INA Document Request No. 17.
[8] RSA Document Request No. 32; Allendale Document Request No. 21; INA Document Request No. 18.

(3)

"there is a direct comparison between our internal systems and their internal systems," which is said to comprise some 25 million dollars of the 35 million dollar claim (Tr. 381).

The defendants rely upon the "other policy holder" discovery rulings of this Court which reject that kind of comparison discovery in complex coverage litigation. See citations in the defendants' brief, pages 7-8. They argue that their own efforts and their own knowledge relating to Y2K are irrelevant and not probative of what Unisys knew and when Unisys knew it and that whatever problems the defendants faced are not of the same magnitude and have little relation to the problems faced by Unisys, an expert in computer technology.

The test for relevancy, contained in Rule 401 of the Delaware Uniform Rules of Evidence, is whether the information has any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than the consequential facts would be without the evidence. Applying this test, I cannot find relevancy in the comparisons between what the defendants did and knew about their Y2K problems and what Unisys did and knew about its Y2K problems. For example, in response to the defendants' argument that under the Sue and Labor Clause of the policy the costs must be "reasonable", Unisys asserts that information about the defendants' Year 2000 costs is relevant because the defendants were "unlikely to have paid more than they felt reasonable and necessary for their own Year 2000 effort" (UB 5). Thus, contends Unisys, the defendants' costs would be the "baseline" for the evaluation of

HARVEY BERNARD RUBENSTEIN

(4)

Unisys' costs (UB 7) since what was reasonable and necessary for Unisys and the defendants are inter-related (Tr. 308-309).

The problem with Unisys' contention is that just as each defendant's costs depended upon the circumstances of each defendant's Y2K problems, Unisys' costs depended upon the circumstances of its Y2K problems.[9] As with all other questions of reasonableness, what is reasonable depends upon the particular circumstances and differs as the circumstances differ. Aside from the fact that the defendants are in a different business than Unisys, to the extent Unisys used different products, faced different concerns, and met those concerns with different solutions and on different timelines, relevancy is affected. What would be reasonable as costs for the defendants, therefore, would not make more or less probable what would be reasonable as costs for Unisys.

I consequently agree that the defendants' analogy to this court's "other policyholder" decisions is appropriate. To pursue this kind of discovery would require the Court and the jury to weigh a myriad of factors on the issue of costs in order to determine whether a comparison of costs is appropriate. It would amount to a mini-trial on each comparison, and the result only would be to confuse rather than enlighten the essential issues in this case.

Unisys cites decisions comparing the attorney's fees of other parties in determining the allowance of a reasonable attorney's fee to a particular party (UB 5-6).

---

[9] Unisys faces a further problem regarding INA, who contends that the time lapse between when INA's policies were issued and expired and when INA's Y2K internal testing and remediation occurred creates even greater difficulty in finding relevancy.

HARVEY BERNARD RUBENSTEIN

(5)

In those instances, however, at least there would be an identity of work in the same case to correlate one attorney's fee to another. Those decisions really do not fit this case. In *Stastny v. Southern Bell Telephone and Telegraph Company*, D.N.C., 77 F.R.D. 662, 663-664 (1978), the court observed: "Each party must prepare to question the same witnesses, must review the same documents and other evidence, and must anticipate a presentation by the opposition of a complexity related to the facts in issue. Similarly, work on pretrial motions would reflect what volume of work opposing attorneys deem reasonable." *Naismith v. The Professional Golfers Association*, D.Ga., 85 F.R.D. 552, 562-563 (1979), relies on the reasoning in *Stastny* while conceding that the opposite conclusion was reached in *Samuel v. University of Pittsburgh*, D.Pa., 80 F.R.D. 293, 294-296 (1978), and *Mirabel v. General Motors Acceptance Corp.*, 7 Cir., 576 F2d 729, 731 (1978). *Chicago Professional Sports Limited Partnership v. National Basketball Association*, D.Ill., 1996 WL 6611, was decided on the same basis, i.e., that the opposing party's legal costs appeared reasonably calculated to lead to admissible evidence regarding the reasonableness of another party's attorney's fees in the same case: "Each party in this case had to prepare to question the same witnesses, as well as review the same evidence and to resolve the same issues." *Johnston v. Arbitrium (Cayman Islands) Handels AG*, Del.Supr., 720 A.2d 542, 547 (1998), noted only that the hourly fees charged by one party's attorneys "were only slightly higher" than the hourly fees charged by the other party's attorneys.

Unisys also cites patent litigation comparisons of the fees that patentholders charge to decide the reasonable amount to be charged patent infringers (UB 6): *Russell*

(6)

*Box Co. v. Grant Paper Box Co.*, 1 Cir., 203 F.2d 177, 182 (1953); *Mobile Oil Corporation v. Amoco Chemicals Corporation*, D.Del., 915 F.Supp. 1333, 1353 (1995); *Studiengesellschaft Kohle m.b.H. v. Dart Industries, Inc.*, D.Del., 666 F.Supp. 674, 681 (1987). Again at least the patent is the common factor upon which the comparison can be made. Here, the differing underlying circumstances belie any relevance to the information.

Rule 26(b)(1) provides that the use of discovery may be denied or curtailed if "the discovery is unduly burdensome or expensive, taking into account the needs of the case, the amount in controversy, limitations on the parties' resources, and the importance of the issues at stake in the litigation." All of the defendants - RSA, Allendale, and INA - have submitted burden affidavits to defeat Unisys' discovery.

RSA has submitted the affidavit of John Buersmeyer, a Project Manager for the Corporate Technology Services Department and the former Project Manager for RSA's Year 2000 remediation and compliance program. Some of RSA's computer systems were products purchased from vendors, and some of RSA's computer systems were developed internally, with the remediation work involving 150 Information Technology systems. There were 15 to 18 managers in charge of the work, most of which was performed at the Charlotte, North Carolina headquarters. About 150 employees worked at the headquarters, and about 40 employees were in the branch offices. RSA also had 17 business units involved in communicating with RSA's vendors.

(7)

Mr. Buersmeyer concludes that meeting Unisys' discovery requests "would be extremely burdensome." The Information Technology Services Department alone has over 110 boxes of documents, which would have to be reviewed for work product and attorney client privilege. Thousands of other pages of documents maintained by employees at headquarters also would have to be reviewed. In addition, all of the managers, all of the employees who worked on the project, and all of the business groups would have to locate their documents.

Allendale has submitted the affidavit of Stephen K. Aust, the Project Manager on the Year 2000 remediation program. The remediation efforts began in October 1994 and were completed by December 1996. He states that complying with the discovery requests "would be extremely burdensome" upon Allendale and its affiliated entities. There are 15 boxes of documents from the Information Services Department, some records are contained on multiple data bases, and thousands of pages of documents are maintained at headquarters. All of the executives and all of the managers and their employees would have to search for documents. There are 105 employees at headquarters and 5 employees at the branch offices.

INA has submitted the affidavit of Gregory G. Lawton, Assistant General Counsel of ACE USA law department. As to Unisys' production requests, he initiated inquiries to locate responsive documents originally maintained by INA at the time that the policies

HARVEY BERNARD RUBENSTEIN

(8)

were written and prior to the plan of division and merger implemented in 1996 and thereafter maintained by Century Indemnity Company (as successor to CCI Insurance Company as successor to INA). The INA remediation work for Y2K problems began in 1996. About 100 boxes are stored containing hundreds of thousands of pages and requiring several hundred hours of work of attorneys and paralegals to review. Also, additional documents may have been retained in the offices of Century. Temporary staff, including clericals, paralegals, and attorneys, would have to be hired to complete the task.

The party asserting that discovery is "unduly burdensome or expensive" must establish undue burden and expense in specific detail and cannot rely upon conclusory terms. General allegations that discovery would be extremely burdensome, or inconvenient, or expensive, or cause business disruption are insufficient. *Monsanto Corporation v. Aetna Casualty & Surety Co.*, Del.Super., C. A. No. 88C-JA-118, Rubenstein, S.D.M. (Nov. 21, 1989); *Transamerica Insurance Company v. Thomas M. Durkin & Sons, Inc.*, D.Pa., 1990 WL 167969 (1990).

I am not persuaded that these affidavits establish that the discovery, if permitted, would be "unduly burdensome or expensive". The needs of the case – now deemed complex – are diverse. The amount in controversy – alleged to be $35 million – is substantial. The parties' resources are considerable. The importance of the issues involved –described as novel – is great. Those factors are in Unisys' favor. In addition, I find that the affidavits speak mostly in conclusory language and lack the specific detail which is necessary. While the terms burdensome and expensive are relative, in this case I

(9)                                                                    HARVEY BERNARD RUBENSTEIN

conclude that the test for undue burden and expense under the rule has not been met by the defendants.

In balancing relevancy and burden, however, I find that because the comparison discovery lacks relevancy, any burden of responding should not be imposed upon the defendants. Furthermore, whatever possible relevance (or admissibility) there might be to justify the discovery is substantially outweighed by its minimal value and the tendency to confuse the jury in deciding the ultimate issues. See DRE 403; *Timblin v. Kent General Hospital*, Del.Supr., 640 A.2d 1021, 1023 (1944) ("Rule 403 therefore requires a court to assess the probative value of the proffered evidence and to weigh that value against the negative consequences of admitting the evidence, including the risk of unfair prejudice and jury confusion.")

I must add, in passing, that while the broadly-worded document requests before me are objectionable because of the many variables inherent in the making of comparisons between Unisys and the defendants, there is an aspect of the issue which deserves to be addressed. Unisys argues that as to certain defenses raised by the defendants, the information sought may be used as impeachment or as binding admissions against interest (Tr. 384-385, 367). Accordingly, my ruling does not deny to Unisys the opportunity to tailor more precise discovery designed specifically for impeachment or for obtaining admissions by the defendants as to particular defenses raised by them.

HARVEY BERNARD RUBENSTEIN

(10)

        Unisys' motion to compel is denied as to the requests to produce which are before me.

        IT IS SO ORDERED.

Yours truly,

*[signature]*

HBR:mlr
cc:    Judge Jerome O. Herlihy

ORIGINAL TO PROTHONOTARY