**MORRIS, JAMES, HITCHENS & WILLIAMS LLP**
*Attorneys-at-Law*

222 Delaware Avenue, 10th Floor
Wilmington, Delaware 19801-1621
(302) 888-6800
Facsimile (302) 571-1750
www.morrisjames.com

James W. Semple
(302) 888-6870
jsemple@morrisjames.com

January 4, 2006

Mailing Address
P.O. Box 2306
Wilmington, DE 19899-2306

The Honorable Kent A. Jordan
The United States District Court
J. Caleb Boggs Federal Building
844 N. King Street
Wilmington, DE 19801

      Re:   *Eames v. Nationwide*
            C.A. No. 04-1324 KAJ

Dear Judge Jordan:

      Pursuant to the Court's order of September 26, 2005, the Eames Plaintiffs' Motion to Compel Documents Responsive to Their Initial Document Requests and For Sanctions ("Plaintiffs' Motion") came before me as Special Discovery Master. I have reviewed the parties' briefs, the parties' affidavits on expenses, and I have heard oral argument. This letter presents my opinion and recommendations to the Court.

**I.**     <u>**Background**</u>

      Plaintiffs' Motion arises out of a discovery dispute that spans eight months. Plaintiffs Thomas A. Eames, Roberta L. Eames, and Tammy Eames ("Plaintiffs") made their first requests for documents on April 7, 2005, and on May 9, 2005, Defendant Nationwide Mutual Insurance Company ("Nationwide") responded. However, Plaintiffs challenged the adequacy of Nationwide's response and continued to do so over several months until they finally brought their motion to compel discovery on October 26, 2005.

      In their First Set of Requests for Production of Documents, Plaintiffs made three requests: (1) for all documents that refer to or characterize limits of liability for PIP coverage as "full"; (2) for all documents that refer or relate to the characterization of limits of liability for PIP coverage as "full"; and (3) for all documents or other recorded material that refer or relate to the training, instruction, or education of Nationwide's employees or agents (including without limitation insurance agents) with respect to the characterization of PIP limits as "full." Eames Pls.' First Set of Reqs. for Produc. of Docs. 2.[1] Nationwide responded primarily with objections and did not produce any documents. *See* Nationwide Mutual Insurance Company's Resps. and

---

[1] Hereinafter cited as Plaintiffs' Requests.

Objections to Pls.' First Set of Reqs. for Produc. of Docs.[2] First, Nationwide made a general objection to Plaintiffs use of the words "refer" and "characterize," arguing that "[t]he only legal and enforceable interpretation of these terms, pursuant to Nationwide's coverage obligations upon which Plaintiffs asserts [sic] a breach of contract, are those characterizations and references set forth only in the insurance policy and Declarations page which form part of the policy." *Id.* Second, Nationwide specifically objected to Plaintiffs' Request Nos. 1 and 2, arguing that the insurance policy and declarations sheet[3] were "the only and binding legal characterization of the PIP policy limits provided by Nationwide in accordance with Delaware law." *Id.*

Nationwide's response gave rise to a series of communications between the parties in which Plaintiffs challenged the adequacy of Nationwide's response and sought further clarification as to its meaning. On May 11, 2005, Plaintiffs' counsel sent an email to Nationwide's counsel asking (1) whether Nationwide had searched for all documents in its possession that might reasonably contain characterizations of PIP limits as "full"; (2) whether Nationwide had limited its search to insurance policies; and (3) whether Nationwide was aware of any documents in its possession that did not consist of insurance policies but characterized PIP limits as "full." *See* Email from John S. Spadaro to Curtis P. Cheyney, May 11, 2005. Nationwide's counsel responded on May 12, 2005, stating that he forwarded Plaintiffs' inquiries to Nationwide. After not hearing a response for a couple of days, Plaintiffs' attorney followed-up with an email asking Nationwide to respond to Plaintiffs' earlier questions and to comply with the Court's Default Standard for Discovery of Electronic Documents. Email from John S. Spadaro to Curtis P. Cheyney, May 16, 2005. Eventually, on May 20, 2005, Plaintiffs' counsel sent an email to Nationwide's counsel stating that Plaintiffs were forced by the circumstance to pursue a teleconference with the Court to resolve the dispute. In response, Nationwide's counsel stood by its discovery response by reasserting its initial objections and arguing that there was no discovery dispute. In particular, Nationwide's counsel stated that the Default Standard was inapplicable because "there is no electronic discovery that has been requested. . . ." Email from Curtis P. Cheyney to John S. Spadaro, May 23, 2005.

Eventually the Court scheduled a teleconference to address the dispute. In advance of the meeting, Nationwide submitted a letter to Your Honor stating that "there is no support for any discovery dispute, including a dispute that any relevant policy documents of coverage for the Eames' PIP policy limits have not been supplied (plaintiff has received all documents of Nationwide that legally and contractually characterize the PIP coverages purchased by the Eames policy)." Letter from Curtis P. Cheyney to Judge Kent A. Jordan, August 4, 2005. Furthermore, Nationwide argued that "Plaintiff's discovery should be abated until the plaintiff responds to and the Court resolves defendant's Motion to Dismiss which has been outstanding for more than nine (9) months." *Id.* Moreover, Nationwide argued that its current hardcopy disclosures of the

---

[2] Hereinafter cited as Nationwide's Response.

[3] Nationwide produced the insurance policy and declarations sheet as part of its mandatory disclosures under Rule 26(a).

policy were adequate because "electronic discovery" referred to "the method of production of discovery, not necessarily the form the documents are created and stored." *Id.*

At the teleconference, Your Honor rejected Nationwide's arguments and instructed them to provide a response. First, Your Honor concluded that Nationwide was not entitled to a hearing on its motion to dismiss before having to respond to Plaintiffs' document requests. *See* Teleconference Tr. 31:24-32:7, August 5, 2005.[4] Second, Your Honor rejected Nationwide's previous arguments that there was no electronic discovery in the case. *See Id.* at 36:2-36:7. Your Honor clearly stated that as to "[t]he discovery, you are to make a good faith effort at a meet and confer and your positions to date have been inadequate and inappropriate. And this is not going to wait until the 12(b)(6) is decided, Mr. Cheyney. You give a substantive response." *Id.* at 35:9-35:15.

After the teleconference, the parties communicated further in an attempt to resolve the dispute. On August 5, 2005, Plaintiffs' counsel sent an email to Nationwide's counsel (1) requesting a meeting with Nationwide's e-discovery liaison, (2) asking Nationwide to respond to Plaintiffs' questions of May 11, 2005, and (3) asserting that discovery should not be limited to Delaware. Nationwide's counsel responded by naming an e-discovery liaison and stating that Nationwide "will also begin to attempt document sweeps as soon as we identify for you the systems available for reasonably accessible emails, Board Minutes, etc. . . . ." Email from Curtis P. Cheyney to John S. Spadaro, August 16, 2005. Plaintiffs' counsel responded the same day via email and asked whether Nationwide could identify the systems available for document sweeps.

Then, on August 22, 2005, Nationwide's counsel wrote Plaintiffs' counsel to update him on their discovery efforts. He stated that Nationwide was identifying between 75 and 125 individuals who may have relevant electronic documents. In addition, Nationwide sought confirmation from Plaintiffs that they would accept Nationwide's narrowed search parameters:

> (1) Nationwide refused to search individual's claim files; (2) Nationwide refused to search individual's underwriting files; (3) Nationwide will first search Delaware state email files and Nationwide Board Minutes; and (4) Nationwide will limit the search to that period of time of stored emails from back up tapes to September of 2002 and current mail files of identified custodians to the date that your Complaint was filed and for Board Minutes beginning when the PIP statute of Delaware was enacted and up to the date that the Complaint was filed.

Letter from Curtis P. Cheyney to John S. Spadaro, August 22, 2005. In response to Nationwide's proposed search parameters, Plaintiffs argued that Nationwide cannot properly limit its search to Delaware. *See* Letter from John S. Spadaro to Curtis P. Cheyney, August 24, 2005. Plaintiffs contended that such a limited search precluded it from discovering "corporate-level documents." Letter from John S. Spadaro to Curtis P. Cheyney, September 2, 2005. This dispute eventually led to a September 13, 2005, teleconference with Your Honor.

---

[4] Hereinafter cited as Teleconference of August 5, 2005, page:line.

The Honorable Kent A. Jordan
January 4, 2006
Page 4

At the teleconference, Nationwide's counsel explained that Nationwide had responded by searching board minutes, searching state level minutes, and beginning the agent search. *See* Teleconference Tr. 20:17-20:24, September 13, 2005. Yet despite Nationwide's alleged efforts, Your Honor concluded, "What I'm telling you folks on the Nationwide side is it's not good enough for you to say to me this is what we've done. The way to cut this issue off, which I am insisting you do, is to explain to Mr. Spadaro what the Nationwide system is like." *Id.* at 21:19-21:23.

Per the Court's instruction, the parties met on October 3, 2005, but there was no resolution. In a letter memorializing the meeting, Plaintiffs argued that Nationwide's searches were "designed for failure." Letter from John S. Spadaro to Curtis P. Cheyney, October 3, 2005. In response, Nationwide argued that the proper focus of discovery was Delaware because the subject accident occurred in Delaware, the policy was issued to a Delaware resident, and the proposed class was limited to Delaware insureds. *See* Letter from Curtis P. Cheyney to John S. Spadaro, October 17, 2005. The parties could not agree on how to resolve the dispute, and as a result, Plaintiffs filed their motion to compel.

At oral argument on the motion, Nationwide's counsel asserted that Nationwide had searched the email of all of the Delaware agents who have a lease with Nationwide, the email of state management level employees who report to the Delaware agents, and the Board of Directors' records going back to 1973. *See* Oral Argument Transcript, December 14, 2005, 26:15-27:12.[5] Furthermore, Nationwide's counsel revealed for the first time that as a result of these searches Nationwide has identified roughly 104,000 documents to be reviewed for responsiveness. *See* Oral Argument Transcript, 59:23-59:24. Nationwide's counsel expects to complete that review by January 6, 2006. *See* Oral Argument Transcript, 28:16-28:22.

## II.  Discussion

Plaintiffs' Motion seeks to compel Nationwide to produce documents, pursuant to Rule 37(a)(2)(B), and it asks the Court to impose sanctions against Nationwide, pursuant to Rule 37(a)(4)(A), for failure to produce such documents. In response, Nationwide asks that the Court deny Plaintiffs' Motion and award it reasonable expenses incurred in opposing the Plaintiffs' Motion, pursuant to Rule 37(a)(4)(B). Since the award of expenses and sanctions hinges on the disposition of the motion to compel, I first address the motion to compel. However, before addressing either of these arguments, I first consider whether Plaintiffs' requests were within the scope of discovery.

### A.  Whether Plaintiffs' Requests Were Within the Scope of Discovery

It appears that Nationwide waived its objection to the scope of Plaintiffs' requests. To properly object, a party must clearly state the reasons for the objection. *See* Fed. R. Civ. P. 34(b). However, in its response, Nationwide did not clearly object to the scope of the requests as

---

[5] Hereinafter cited as Oral Argument Transcript, page:line.

outside the bounds of proper discovery or as unduly burdensome. Nationwide merely stated that it had produced the only legally relevant and binding documents and that no other such documents were relevant to the action. *See* Nationwide's Response. Moreover, at oral argument, Nationwide's counsel conceded that Nationwide did not timely make objections based on vagueness, overbreadth, or burden and that as a result those objections were waived. *See* Oral Argument Transcript, 73:7-74:14.

Furthermore, even if Nationwide were to have raised a timely objection, it would fail. Generally, under Rule 26, "[p]arties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense...." Fed. R. Civ. P. 26(b)(1). However, in this case, discovery was specifically limited to class certification issues. *See* Scheduling Order, March 28, 2005. Thus, the scope of discovery in this case was limited to "determining whether the requirements of Rule 23(a) are satisfied and whether the action is maintainable under one of the categories listed in Rule 23(b)." 5 James Wm. Moore et al., Moore's Federal Practice ¶ 23.85[1] (3d ed. 2005). Here, Plaintiffs' requests appear "reasonably calculated to lead to the discovery of admissible evidence" as to whether the requirements of Rule 23(a) and (b) were satisfied. Fed. R. Civ. P. 26(b)(1). Particularly, Plaintiffs' requests appear calculated to lead to admissible evidence on whether the practice of characterizing PIP as full is so widespread that there are common questions of law and fact that predominate over questions affecting individual members, and the requests are similarly calculated to lead to evidence as to whether there is a class of individuals affected by this practice that is so numerous that a class action is appropriate. *See* Fed. R. Civ. P. 23(a) and 23(b) (requiring, among other things, that that the class be so numerous that joinder of all members is impracticable and that there be questions of law and fact common to the members of the class that predominate over any questions affecting individual members). Thus, the Court should rule that Plaintiffs' requests are within the scope of discovery as limited to class certification.

### B.    Motion to Compel Under Rule 37(a)(2)(B)

Given that Plaintiffs' requests were within the scope of discovery, the next question is whether Nationwide's responses to those requests were adequate. Rule 37(a)(2)(B) provides that a moving party may file a motion to compel an answer if a party fails to respond or provides an evasive or incomplete response to its Rule 34 requests for document production. *See* Fed. R. Civ. P. 37(a)(2)(B) and 37(a)(3). To bring such a motion, though, the moving party must certify the he has in good faith conferred or attempted to confer with the party failing to make discovery. *See* Fed. R. Civ. P. 37(a)(2)(B). Thus, the two major issues to decide on this question are (1) whether Nationwide provided an incomplete or evasive response; and (2) whether Plaintiffs sufficiently demonstrated that they conferred or attempted to confer with Nationwide in good faith to resolve the dispute.

#### 1.    Whether Nationwide's Response Was Incomplete or Evasive

Rule 37(a)(3) provides that "an evasive or incomplete disclosure, answer, or response is to be treated as a failure to disclose, answer, or respond." Fed. R. Civ. P. 37(a)(3). As to what

constitutes an evasive or incomplete disclosure or response, the Advisory Notes to the Rule state that "[i]nterrogatories and requests for production should not be read or interpreted in an artificially restrictive or hypertechnical manner to avoid disclosure of information fairly covered by the discovery request. . . ." Fed. R. Civ. P. 37, Advisory Committee Notes to 1993 Amendments. In this case, Plaintiffs sought "[a]ll documents that refer to or characterize limits of liability for PIP coverage as 'full,'" as well as "[a]ll documents that refer or relate to the characterization of limits of liability for PIP coverage as 'full.'" Plaintiffs' Requests.[6]

In response to these requests, Nationwide generally objected to the terms "refer to" and "characteristic", arguing that these terms were not properly defined and that "[t]he only *legal and enforceable interpretation of these terms*, pursuant to Nationwide's coverage obligations upon which Plaintiffs asserts [sic] a *breach of contract* are those characterizations and references set forth only in the insurance policy and Declarations page which form part of the policy." Nationwide's Response (emphasis added). Similarly, Nationwide responded to each of the abovementioned requests by stating that:

> Nationwide refers Plaintiffs to the governing insurance policy and the corresponding declarations sheet applicable to the subject policy as the *only and binding legal characterization* of the PIP policy limits provided by Nationwide in accordance with Delaware law. Nationwide further responds that it is not currently aware of any other documents that *legally* characterize the PIP policy limits responsive to this request and relevant to this action.

Nationwide's Response (emphasis added).

These responses, though, appear to be incomplete and evasive. First, Nationwide responded as though Plaintiffs' complaint were limited to a breach of contract claim. Nationwide argued that it had produced the only legally binding and relevant documents "pursuant to Nationwide's coverage obligations upon which Plaintiffs assets [sic] a *breach of contract*. . . ." Nationwide's Response (emphasis added). However, Plaintiffs' complaint states five counts: (1) declaratory judgment; (2) breach of contract; (3) bad faith breach of contract; (4) consumer fraud; and (5) civil conspiracy. *See* Class Action Complaint, August 20, 2004, ¶¶ 22-41, pp. 12-18.

Second, by impliedly asserting that it need only produce documents that provide a legally binding characterization of PIP limits, Nationwide clearly misinterpreted the proper scope and purpose of discovery. To limit Plaintiffs' discovery to what Nationwide deems to be legally binding is, in essence, to limit Plaintiffs' discovery to only those documents that comport with Nationwide's theory of the case. That is not the standard for discoverable evidence. Rule 26(b)(1) provides that discoverable information need only be "reasonably calculated to lead to

---

[6] These requests were also intended to seek electronic documents. *See* Plaintiffs Requests ("The term 'document' shall have the broadest meaning permissible under the Federal Rules of Civil Procedure, and shall include (without limitation) documents created or stored by electronic means.).

The Honorable Kent A. Jordan
January 4, 2006
Page 7

the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). If discovery were limited to those documents that one side believed to be the only legally determinative documents, then the merits of each case would have to be decided cotemporaneous with or before discovery. In fact, it appears that Nationwide sought to do just that—to have the merits of its motion to dismiss decided before discovery. *See* Letter from Curtis P. Cheyney to Judge Kent A. Jordan, August 4, 2005 ("Plaintiff's discovery should be abated until the plaintiff responds to and the Court resolves defendant's Motion to Dismiss which has been outstanding for more than nine (9) months.") However, as Your Honor explicitly stated, "this court does not operate on the principle that the filing of a motion to dismiss stops discovery in a case." Teleconference of August 5, 2005, 32:1-32:3.

Third, until the teleconference on August 5, 2005, Nationwide repeatedly refused to follow the Court's Default Standard for Electronic Discovery, which was incorporated by reference into the Court's March 28, 2005, Scheduling Order. In fact, on more than one occasion, Nationwide argued that Plaintiffs' requests for documents did not seek electronic documents. *See* Letter from Curtis P. Cheyney to John S. Spadaro, May 23, 2005 ("There is no electronic discovery that has been requested. . . ."); *see also* Letter from Curtis P. Cheyney to Judge Jordan, August 4, 2005, p. 1 ("No electronic discovery transmission is required within the context of the present discovery responses of Nationwide; and the Default Protocol to identify a liaison is not relevant at this time."). However, in their requests, Plaintiffs explicitly included electronic documents within their definition of the term "document." *See* Plaintiffs' Requests ¶ 3. Moreover, Nationwide erroneously argued that it complied with its electronic discovery obligations by producing "in paper format all relevant documents" because "electronic discovery" refers to the method of production and not the form in which the documents are stored or created. *See* Letter from Curtis P. Cheyney to Judge Jordan, August 4, 2005. "Electronic discovery," though, absolutely refers to electronically stored materials. *See* Fed. R. Civ. P. 34, Advisory Committee Notes to 1970 Amendment ("The inclusive description of 'documents' is revised to accord with changing technology. It makes clear that Rule 34 applies to electronics data compilations from which information can be obtained *only with the use of detection devices. . . .*") (emphasis added); *see also* Judge Jordan's remarks in the Teleconference of August 5, 2005, 36:2-36:6 ("I think you are just wrong on that and I think if you read the default standard, you'd understand we're not talking about the method of delivery, we're talking about searching electronic databases for relevant information.").

It was not until Your Honor instructed Nationwide at the August 5, 2005, teleconference that its disclosures and objections were inadequate that Nationwide started to make a meaningful response. As a result of that teleconference, Nationwide appointed an e-discovery liaison on August 16, 2005, and has since searched the email of all of the Delaware agents who have a lease with Nationwide, the email of state management level employees who report to the Delaware agents, and the Board of Directors' records going back to 1973. *See* Oral Argument Transcript, 26:15-27:12. Nationwide also conducted at least some paper searches. However, it was not until oral argument on December 14, 2005, that Nationwide revealed that its searches identified roughly 104,000 documents to be reviewed for responsiveness. *See* Oral Argument Transcript, 59:23-59:24. And Nationwide does not expect to finish reviewing those documents until January

6, 2006. *See* Oral Argument Transcript, 28:16-28:22. That date, though, is nearly nine months from Plaintiffs' initial requests and five months from the teleconference with Your Honor. Thus, while Nationwide has surely made steps in the right direction, it has hardly done so expeditiously.

For all of these reasons, Nationwide has provided delayed, incomplete, and evasive responses to Plaintiffs' requests. In looking at the history of this dispute from the initial request on April 7, 2005, to the hearing of oral argument on December 14, 2005, Nationwide, a sophisticated company with an expert legal team, spent months providing incomplete or evasive responses until Your Honor instructed Nationwide to make a meaningful response. In particular, Nationwide employed hyper technical interpretations of Plaintiffs' requests and even refused to acknowledge that there was electronic discovery. One might argue that this was a calculated effort to stay discovery long enough for the Court to hear its motion to dismiss. One cannot argue that the effect of the delay approximates that of an intentional attempt. It was not until the teleconference with Your Honor on August 5, 2005, that Nationwide acknowledged that there was electronic discovery and began taking steps to search for such documents. And it still took until oral argument on December 14, 2005, for Nationwide to even identify how many potentially responsive documents were to be reviewed and when they might be produced. Thus, in eight months of discovery, Plaintiffs have only received two documents from Nationwide: (1) a copy of the Eames's policy, which Nationwide produced as part of its mandatory disclosures under Rule 26(a); and (2) a copy of a Delaware Department of Insurance Circular, which Nationwide produced in its response to Plaintiffs' Motion.

### 2. Whether Plaintiffs Made a Good Faith Attempt at Resolution

For a motion to compel to be granted, it must "include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make the discovery in an effort to secure the information or material without court action." Fed. R. Civ. P. 37(a)(2)(B). Here, Plaintiffs' counsel made repeated attempts to resolve this dispute without court action. For example, after Nationwide filed its response to Plaintiffs' requests on May 9, 2005, Plaintiffs' counsel sent Nationwide an email asking for clarification as to Nationwide's responses. *See* Email from John S. Spadaro to Curtis P. Cheyney, May 11, 2005. Similarly, Plaintiffs' counsel sent a further letter on May 16, 2005, asking, among other things, for clarification as to Nationwide's responses and for compliance with the Court's Default Standard. These communications from Plaintiffs' counsel to Nationwide's counsel represent only a sample of the many attempts made by Plaintiffs' counsel to resolve the dispute without the Court's intervention.

Given that Nationwide's responses were incomplete and evasive and that Plaintiffs made a good faith attempt at resolution, the requirements of Rule 37(a)(2)(B) appear to be satisfied, and as a result, the Court should grant Plaintiffs' Motion.

### C. Whether the Court Should Limit Discovery Under Rule 26(b)(2)

Rule 26(b)(2) provides that the court may limit the scope of discovery on its *own initiative* if it determines that (1) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive; (2) the party seeking discovery has had ample opportunity by discovery in the action to obtain the information sought; or (3) the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues. Fed. R. Civ. P. 26(b)(2). No such evidence was presented to me as Special Discovery Master. Thus, none of these limitations should apply to the facts as they are currently pled.

### D. Expenses and Sanctions Under Rule 37(a)(4)

Rule 37(a)(4) provides that if the motion to compel is granted, the court shall "require the party or deponent whose conduct necessitated the motion or the party or attorney advising such conduct or both of them to pay the moving party the reasonable expenses incurred in making the motion. . . ." Fed. R. Civ. P. 37(a)(4). This presumption, however, is rebuttable if the Court finds (1) that the motion was filed without the movant's first making a good faith effort to obtain the disclosure or discovery without court action; (2) that the opposing party's nondisclosure, response, or objection was substantially justified; or (3) that other circumstances make an award of expenses unjust. Fed. R. Civ. P. 37(a).

In this case, it does not appear that any one of these exceptions applies. First, as demonstrated above, Plaintiffs' counsel made a good faith effort to obtain discovery without court action. Second, Nationwide was not substantially justified in its hyper technical interpretation of Plaintiffs' requests and overly narrow interpretation of the scope of discovery. It was unreasonable for Nationwide to limit its production of documents to those that are "legally binding," when the clear standard for discovery is much broader. Moreover, Nationwide's failure to acknowledge Plaintiffs' requests for electronic discovery and its obligations under the Default Standard was similarly unreasonable. *See* Judge Jordan's remarks in the Teleconference of August 5, 2005, 36:11-36:13 ("That approaches the level of an almost willful refusal to acknowledge what is on the face of their document."). Third, the circumstances do not appear such that an award of expenses would be unjust. Nationwide is a sophisticated company with a sophisticated legal team that has experience with lawsuits and discovery. Thus, Nationwide cannot reasonably argue that it was unfamiliar with the scope of discovery, with its obligations under the Court's Default Standard, or with the process of electronic discovery. For these reasons, the Court should find that the presumption that sanctions be imposed has not been rebutted.

The Honorable Kent A. Jordan
January 4, 2006
Page 10

### III. Recommendations

For the foregoing reasons, I recommend that the Court grant Plaintiffs' Motion and award Plaintiffs expenses under Rule 37(a)(4). In addition, I recommend the following:

1. Nationwide should produce the following documents (whether in hardcopy or electronic form and whether pre-dating or post-dating 2002) by **January 11, 2006**: (a) all generic documents (i.e., not policy-holder specific documents) that refer to or characterize PIP as full; (b) all documents that relate to the genesis of the practice of characterizing PIP as full, such as generic documents that show the transition from the implementation of the Delaware Department of Insurance Circular to the forms used by Nationwide and its agents; and (c) all documents evidencing complaints or negative comments about the practice of characterizing PIP as full, such as complaints by customers that believed they had full coverage when they really had the PIP minimum.[2]

2. Pursuant to Rule 37(a), Nationwide should pay **$8,775.00** for Plaintiffs' expenses in bringing this motion. Here's how I came to the $8,775 figure. I totaled Mr. Spadaro's claimed expenses from his initial preparation of the motion to compel on October 24 to his attendance at oral argument on December 14. The total hours for this period come to 35.1, which yields a total of $8,775 at Mr. Spadaro's rate of $250 per hour. These items represent the expenses incurred in making the motion. Rule 37(a) (4) specifically states that the expenses to be awarded are the reasonable expenses incurred in making the motion. . . ." I did not award the prior expenses that relate to the initial request for documents and the subsequent dispute, and that do not directly relate to the motion to compel. The expenses within the $8,775 sufficiently relate to the making of the motion, because they would not have been incurred but for the motion being brought. The time and rate billed by Mr. Spadaro appear reasonable.

---

[2] By way of explanation, the above categories of documents were included in my recommendations because Plaintiffs' counsel specifically identified them at oral argument as the types of documents that Plaintiffs believe exist. *See* Oral Argument Transcript, 43:8-47:15. Plaintiffs' counsel stated that he believes (1) there are so-called "genesis documents" that outline or demonstrate the policy of characterizing PIP as full (*See* Oral Argument Transcript, 44:19-45:5) and (2) there are documents in which criticisms of this practice were recorded by Nationwide or its agents (*See* Oral Argument Transcript, 46:18-46:23). At oral argument, I inquired further into these sets of documents. First, I inquired about documents evidencing the logical transition from the insurance commissioner's Form A to Nationwide's Form A. Nationwide's counsel stated that electronic versions of such documents would pre-date the 2002 cut-off for retained emails (*See* Oral Argument Transcript, 57:22-57:24) but that paper documents were searched and were included in the 104,000 (*See* Oral Argument Transcript, 59:14-59:24). Second, I inquired about documents that could be characterized as customer complaints about the practice of referring to PIP as full and whether Nationwide conducted an internal search to determine if such records were kept. *See* Oral Argument Transcript, 63:1-63:4. Nationwide responded that the compliance officer would have such knowledge (*See* Oral Argument Transcript, 63:5-63:6) and that her records were searched (*See* Oral Argument Transcript, 64:8-64:17).

    3.    In order to avoid or narrow future disputes, I recommend the use of appropriate Rule 30 (b)(6) depositions to identify knowledgeable witnesses and documents calculated to lead to relevant and admissible evidence on the class action issues.

    Respectfully submitted,

    James W. Semple (#0396)

JWS/mmt
cc:    John S. Spadaro, Esquire
        Curtis P. Cheyney, Esquire
        Nicholas E. Skiles, Esquire

1324435/1