IN THE UNITED STATES DISTRICT COURT

IN AND FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| THOMAS A. EAMES, ROBERTA L. EAMES and TAMMY EAMES, on behalf of themselves and all others similarly situated,<br><br>    Plaintiffs,<br><br> v.<br><br>NATIONWIDE MUTUAL INSURANCE COMPANY,<br><br>    Defendant. | )<br>)<br>)<br>)<br>)<br>) Civil Action No. 04-CV-1324-KAJ<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**DEFENDANT'S OBJECTIONS TO THE FINDINGS AND
RECOMMENDATIONS OF THE SPECIAL DISCOVERY MASTER**

  On January 4, 2006, James W. Semple, Esquire, the Special Discovery Master assigned to the above-captioned matter released to counsel for the parties and to the Court his letter of "Recommendations" regarding plaintiffs' Motion to Compel Document Responses to their Initial Document Requests.[1] (Hereinafter "the Letter Report".) Pursuant to Federal Rule of Civil Procedure 53(g)(2), the defendant, Nationwide Mutual Insurance Company ("Nationwide") herein objects, respectfully to the Recommendations as well as the findings of facts and legal conclusions outlined in both the "Background" and "Discussion" portions of the Letter Report.

  Nationwide objects primarily because the Letter Report and the Recommendations: 1) compel the production of documents that were not originally requested; 2) presume the existence of PIP-coverage documents which include the word "full" as a reference to, or characterization of the PIP limits of the policy, as proposed by plaintiffs; and 3) do not take into

---

[1] The pending October 17, 2005 Motion (heard on December 14, 2005) also includes a demand for financial sanctions.

account the nature of plaintiffs' pleadings, definitions and arguments regarding the nature of their claims and requests for documents. [2] Nationwide also incorporates herein by reference all discovery responses made to date, including the documents now produced, as well as Nationwide's Opposition Briefs regarding plaintiffs' Motion to Compel. The extensive review of documents was taking place at the time of the hearing before the Discovery Master, and the production of documents occurred after the hearing. Neither the Letter Report as a whole, nor the Recommendations consider the extent of the search and efforts involved in making the production.

**ARGUMENT**

### A. Recommendation Number 1 Presumes The Validity of Plaintiffs' Conclusions Of Law Regarding The Meaning Of The Word "Full"

The Special Discovery Master's Recommendation Number 1 recommends that this Court compel Nationwide to produce:

> (a) all generic documents (i.e., not policy-holder specific documents) that refer to or characterize PIP *as full*; (b) all documents that related to the genesis of the practice of characterizing ***PIP as full***, such as generic documents that show the transition from the implementation of the Delaware Department of Insurance Circular to forms used by Nationwide and its agents; and (c) all documents evidencing complaints or negative comments about the ***practice of*** characterizing PIP *as full*, such as complaints by customers that [sic] believed they had ***full coverage*** when they ***really had*** the PIP ***minimum***.

---

[2] As the Court will recall, during the plaintiffs' aggressive attempts to relieve this Court of its jurisdiction over the matter, plaintiffs argued that the case was not about the top amount of PIP coverage offered by Nationwide in Delaware, but rather about the difference in the amount plaintiffs paid for their insurance and the amount of money they would have paid had they purchased the higher amount of PIP coverage. Nationwide directs the Court to plaintiff's statements (at page 2 of the Plaintiffs' Surreply to the Motion for Remand) that the "value" of the $300,000 coverage for jurisdictional purposes is limited to the difference in "the premiums charged for the minimum and maximum policy limits". Ironically, this statement was an admission by plaintiffs that they did not purchase a contract that provided the higher "maximum" coverage they now demand, as well as an admission that plaintiffs paid for the very lower coverage about which they complain.

(Letter Report at p. 10) (emphasis added). Clearly, on its very face, the Discovery Master's recommendation greatly expands the original Request. As set forth above, the original Request was limited to PIP limits. And there were never any requests for "negative comments" or customer complaints. Moreover, the Discovery Master's Recommendation Number 1, assumes a "practice" of "characterizing" PIP as full. .

First, this Recommendation Number 1 is equivalent to the Special Discovery Master ordering Nationwide to produce all documents that indicate and prove Nationwide breached the contract when it limited plaintiffs' PIP limit benefits to the policy amount purchased by plaintiffs (i.e., $15,000/$30,000). The Federal Rules of Civil Procedure regarding discovery neither make nor promote such compulsion. Indeed, the 2000 Amendments changed the scope of discovery from matters "relevant to the subject matter involved in the pending action" to matters "relevant to the claim or defense of any party." *See United Oil Co., Inc. v. Parts Associates, Inc.,* 227 F.R.D. 404 (D.Md. 2005) (discussing the effects of the 2000 Amendments). The Advisory Committee did not define the distinctions, but indicated that it wants the focus of discovery to be the actual claims and defenses in the action, and does not want discovery to be used to develop new claims or defenses not already pleaded. *See Sallis v. University of Minnesota*, 408 F.3d 470, 477 (8th Cir. 2005) (the Committee wanted the courts to be more involved in controlling discovery).

Further, it is Nationwide's position, and will always be Nationwide's position and proper defense that, *inter alia,* any use, casual or otherwise, of the word "full" within a document that also references PIP does not "characterize" or refer to a higher limit amount of PIP coverage than was sold in the purchased and issued policy in the State of Delaware.

3

Wherefore, Nationwide asks this Court to disregard Recommendation Number 1 (grounded in, and based upon, a merits analysis) because to do otherwise would be contrary to the Federal Rules of Civil Procedure. Further, it would also be contrary to this Court's Scheduling Order regarding the priority of class discovery. Respectfully, a court cannot base compulsion to produce on the presumption that the moving party's causes of action (or defenses) are correct and otherwise valid, or that documents exist when there is no evidence presented that they do exist.[3]

### B. The Federal Rules Of Civil Procedure Do Not Compel Production Of Documents That Do Not Exist

The Special Discovery Master's Recommendation Number 1 also presumes the existence of documents that "prove" plaintiffs' merits claim, that Nationwide uses the word "full" in an offending practice to somehow trick class-member purchasers into believing that they have acquired more limits of PIP coverage than the amount of policy coverage for which they paid. The Discovery Master's presumption is, in turn, based on the Discovery Master's conclusion that credits plaintiffs' counsel with the belief such documents exist. (See Letter Report at footnote 7, p. 10.) However, and contrary to the Discovery Master's perception, plaintiffs' counsel has ***repeatedly*** confessed that while he hopes such documents exist, he does not have any, and does not ***know*** that any such documents exist. Plaintiffs merely hope/wish such documents exist. Specifically, plaintiffs' counsel has stated in court:

> We can't know if they have documents, a document, what kind of documents. We'd ***love to see*** that its internal memos, its minutes from a board meeting that says, you know: We don't want to sell PIP.

---

[3] Defendant, Nationwide also argues that because Recommendation Number 1 is improper, Recommendation Number 2 (regarding the award of expenses based on Recommendation Number 1) is improper and premature. Recommendation Number 3 regarding Rule 30(b)(6) witnesses is discussed further below.

(Transcript of August 5, 2005 hearing at Page 5, Lines 5-8) (emphasis added).

> So these are documents that, ***if they exist***, can only be gotten at through this kind of discovery. This is not at all related to class certification discovery.

(Transcript of August 5, 2005 hearing at Page 5, Lines 18-21) (emphasis added).

> And aside from that, can you tell me, you know, what do you know about the document population that exists? ***Is there anything there***?

(Transcript of August 5, 2005 hearing at Page 13, Lines 7-9) (emphasis added).

> I ***don't know whether*** they ***have*** generic documents and I don't know whether they're willing to produce them. I don't know how many they have. I don't know how many there are.

(Transcript of August 5, 2005 hearing at Page 15, Lines 3-6) (emphasis added). Further, counsel for plaintiffs has stated that if no such documents exist, non-contract claims as are presented in the Complaint should be withdrawn. He stated:

> Obviously, you don't want to file an application targeted at counts that don't exist. If they don't exist; and that's number three, we don't have anything other than insurance contracts; we would have gone away.

(Transcript of August 5, 2005 hearing at Page 14, Lines 7-11.)

To the extent that the Special Discovery Master's Recommendation Number 1 is based on an assumption that responsive documents exist, and also to the extent that such a presumption is based on the further assumption that plaintiffs believe such documents do exist, it is contradicted by the record. Wherefore, Nationwide respectfully requests that the Court disregard Recommendation Number 1, or in the alternative, that the Discovery Master revise the Recommendation consistent with the original requests and the limits on discovery with regard to class-certification-only discovery at this phase of the litigation.

C. **Federal Rule 37 Does Not Exist In A Vacuum; There Is No Basis To Compel**

    1.    **Prior to the Letter Report, Nationwide reviewed over 100,000 documents**

As noted by the Discovery Master, prior to submission of the Motion to the Discovery Master Nationwide had "started to make a meaningful response" to discovery, and had appointed the requested electronic-discovery liaison. (See Letter Report at p. 7.) Further, prior to the Discovery Master's consideration of the Motion, the Court had considered and ruled upon a number of discovery disputes. Also, and importantly, in the Scheduling Order this Court has already ordered that discovery is limited. It is limited to discovery going to the issues for class certification.

The Discovery Master's discussion of the supposed "background" includes references to conduct and activity about which this Court is already aware. However, the Discovery Master's "take" on the outlined events is not necessarily consistent with the fact that discovery in this case is limited at this time to class certification discovery, or the fact that plaintiffs have continuously re-represented just what their claims are about, or what damages it is that they seek.

This Court is well aware of the various and sundry discovery negotiations which have taken place between counsel for the parties in this matter. The Discovery Master's Letter Report concedes that Nationwide has engaged in significant reviews and production of documents far beyond the scope of the plaintiffs' initial requests, and also that the Court is aware of these efforts. (See Letter Report at p. 4, referring to the 104,000 documents reviewed.) However, in spite of the efforts to review and produce consistent with the Federal Rules of Civil Procedure regarding discovery, the Discovery Master's Letter Report reflects a conclusion that Nationwide had some obligation not only to otherwise answer the Request for Document discovery, but also to educate and inform and ensure the plaintiffs about where "genesis" and generic corporate

documents and information are kept and (as if they exist) how they are kept and how discovery documents can be reviewed and produced.

This was certainly based on the many emails of plaintiffs' counsel cited in the Letter Report which reflect that plaintiffs realize that there might not be any responsive documents regarding their "take" on the word "full" and the merits of plaintiffs' claims and legal conclusions; and, therefore that plaintiffs want assurances that no stone is left unturned in the search for documents which plaintiffs concede may not exist. (See arguments above.)

Consistent therewith, plaintiffs have repeatedly demanded to know where corporate documents are kept and how they are kept and where Nationwide looked and/or is looking, and how Nationwide has looked or is looking. This occurred several times by way of plaintiffs' counsel's various and sundry and continuing e-mail-correspondence and informal discovery requests.

Plaintiffs' various and sundry demands for information on how, where and by whom discovery will take place effectively take the position that it would never be enough for Nationwide to respond and file its discovery responses (stating that there are no other documents in response to the Request). Further, as cited by the Discovery Master, even this Court noted that the way to assuage plaintiffs is to outline for plaintiffs how the corporate electronic storage systems work, and thus how and where Nationwide looked for subject-related documents which may not even exist. Specifically, the Discovery Master cites the Court's statement during the September 13, 2005 teleconference in which the Court said: "The way to cut this issue off, which I am insisting you do, is to explain to Mr. Spadaro what the Nationwide system is like." (Letter Brief at p 4, citing Transcript of Teleconference of September 13, 2005 at page 20, lines 17 – 24.) This has been explained to plaintiffs' counsel.

7

The Federal Rules of Civil Procedure require only that a litigant properly respond to discovery requests. Nationwide believes it properly responded to plaintiffs' Request for Production of Documents; and, there has been no evidence that Nationwide's Response is insufficient. On the contrary, it has only been the response effort, extent or method that has been challenged as allegedly "incomplete." Now, voluminous electronic and other documents have been searched and additional documents have been produced, based upon a search and search protocol far beyond the scope of the requests at issue in this Motion. No documents found change Nationwide's prior responses. Neither the Federal Rules of Civil Procedure nor the law require that the party responding to a search "buttress" his/her/its responses with additional testimony, statements or outlines of where the party looked, when they looked or how they looked. If plaintiff (or any party) wants additional insight, they can (indeed must) proceed with further discovery, not a motion to compel.

**2. The Discovery Master incorrectly presumes that the responses are not timely**

As noted herein throughout (and in Nationwide's incorporated Briefs in Opposition to Plaintiffs' Motion to Compel): 1) this Court has repeatedly considered and resolved discovery disputes; 2) discovery is limited to class certification issues; 3) Nationwide has continuously responded to plaintiff's initial discovery request. However, plaintiffs (by way of continuous and incessant informal e-mail correspondence to counsel for Nationwide) have continuously attempted to modify or transform not only their discovery requests, but also the bases of their claims. This is most apparent in the Discovery Master's Recommendation Number 1 reference to a compulsion that Nationwide look for and produce "complaints by customers that [sic] believed they had _**full coverage**_ when they _**really had**_ the PIP _**minimum**_." As noted above, this improperly presumes merits consideration of plaintiffs' claims that Nationwide was engaged in

8

the allegedly improper conduct (which plaintiffs refer to as "the offending practice"), which is denied. Further, and more importantly, it creates a demand for production that was clearly not included in plaintiffs' initial Requests for Production of Documents before the Discovery Master for consideration and recommendation. Nationwide should not be held to be obstructive or untimely by not timely responding to production requests that were not made, or not timely producing documents that were not originally requested.

The Discovery Master acknowledges that this Court was actively involved in discovery disputes through to the court-mandated October 3, 2005 meet-and-confer conference between counsel. Admittedly, the attorneys could not resolve the then-pending discovery disputes. But that inability to resolve the dispute cannot be held against Nationwide.

Further, to the extent that the Discovery Master looks to and refers to months and months of alleged delay, that calculation is unfounded. Plaintiff filed the Motion at issue herein on October 17, 2005, which was two weeks after the Court-ordered October 3, 2005 meet-and-confer conference. That is to say, if the Discover Master was to consider "delay", it was improper for him to consider the times during which this Court was considering and ruling on discovery disputes. Further, it is improper for the Discovery Master to discredit Nationwide for its discovery efforts from the date this case was removed to this Court through to the Discovery Master's hearing on this matter in December of 2005. On the contrary, significant discovery review was taking place, in this matter, even in August of 2005. Nationwide should not be discredited for not "quickly" finding documents to support plaintiffs' merits claims that do not exist.

Further, during that portion of time in which plaintiffs were attempting to present an appeal to the United States Court of Appeals for the Third Circuit regarding remand to state

court, the parties agreed to a stay of proceedings in this matter. Nationwide on May 31, 2005 pending the Third Circuit's decision whether to grant permission to plaintiffs to appeal (and whereby plaintiffs were relieved from responding to Nationwide's Motion to Dismiss until the stay was lifted). The Third Circuit did not deny plaintiffs' request for permission to appeal this Court's decision on jurisdiction and removal until on or about July 11, 2005 (*viz.,* approximately one and one-half months later). The docket does reflect that some discovery was postponed, but the Court continued to be involved in discovery issues and disputes during that time.

The Discovery Master's review of facts also implies that Nationwide was somehow wrong when it requested that discovery be stayed pending this Court's resolution of Nationwide's pending Motion to Dismiss. Any such position or argument is wrong. Certainly it was within this Court's prerogative to deny such a request; however, it also was and is within this Court's prerogative to stay discovery as requested, pending resolution of the Motion to Dismiss (exactly as it was and is in this Court's discretion to grant the request that discovery be limited to class-action certification issues until the certification is addressed and resolved), and which could resolve the entire suit. *See e.g., Chudasama v. Mazda Motor Corp*, 123 F.3d 1353 (11th Cir. 1997) (resolution of dispositive motion may precede discovery).

All this goes to say that Nationwide cannot be justly accused of "delay" or "bad faith" by merely requesting that the Court exercise its discretion and consider dismissal before discovery. This Court was actively involved through to October of 2005; and the dispute period could be said, at most, to be between the court-ordered October 3, 2005 "meet-and-confer" conference and the October 17, 2005 filing by plaintiffs of their Motion to Compel. Regardless of plaintiffs' Motion, Nationwide continued to create search protocols, perform greatly expanded searches, review documents and produce documents.

Neither the Discovery Master nor plaintiffs has (or gives) any basis to criticize the speed at which potential documents were identified and reviewed and thereafter so-called relevant documents were produced. This is especially so in light of plaintiffs' ever-changing theories and their continuous use of e-mail informal discovery requests to modify and otherwise enlarge their claims and the scope of the documents that they first requested. *See Sallis, supra,* 408 F.3d at 477 (discovery is not to be used to develop new claims or defenses not already pleaded).

Further, Nationwide completed the expansive review and produced additional documents between the December hearing and the early days of this very month of January. Any claim of delay is also unfounded because it is Nationwide's position and defense that it did not (and does not) engage in the "offending practice" conduct about which plaintiffs complain. No defendant can be justly accused of delay because the defendant failed to locate a document (that does not exist) to support the plaintiff's claims.

### 3. **The Special Discovery Master misconceives Nationwide's arguments on the scope of discovery**

Nationwide's responses are neither incomplete nor evasive.[4] With regard to relevance and responsiveness, Nationwide's responses are related to the causes of action presented in plaintiffs' Complaint: 1) Declaratory Judgment; 2) Breach of Contract; 3) Bad Faith Breach of Contract; 4) Consumer Fraud; and 5) Civil Conspiracy.[5] To each of these there is Nationwide's

---

[4] Nationwide incorporates its arguments above regarding its inability to produce documents that do not exist.

[5] This Court will note that Nationwide is the only defendant, and a defendant cannot conspire with itself. It was certainly permissible and understandable that the defendant would request a court to resolve this cause of action at the earliest possible moment in a case in which there is only one defendant. Further, the discovery is limited to class certification discovery, and generally (and as here pled) Courts cannot certify fraud-based claims for class certification. As such, at this stage of the litigation the scope of discovery is and must be limited to some extent by the causes of action which can be presented on behalf of a class and as is typical of the

Motion to Dismiss pending, and none of the claims exist as arising from independent tortious conduct. Rather, they only arise from the alleged breach of contract for failing to provide PIP limits benefits in the amount (that is to say, "full") as independently defined by plaintiffs (and not found in the policy or in any document produced related to plaintiffs' purchase experience).

According to the Discovery Master, Nationwide, by impliedly asserting for itself that it needed only to produce documents to provide a legally binding characterization of PIP limits, Nationwide misinterpreted the proper scope and purpose of discovery. Even if that were so (which is denied) the discovery upon which this assertion was made was not the initial Request for Production, but rather plaintiffs' additional, various and on-going informal e-mail requests and letter correspondence requests for additional information and documents beyond those of the Request for Documents at issue.

Nationwide's responses were variable, but only as a circumstance of the variability of plaintiffs' several requests. Further, no production of information or documents to date has been shown by plaintiffs to be lacking.

The relevant Delaware PIP statute says that Nationwide's Delaware policies must provide the PIP coverage and express the limits in the policy. The statute does not state (or stand for the proposition) that some Nationwide non-contract memoranda or advertisement or internet comments, or comments from other places or sources such as independent contractor Agents must provide (or refer to) the mandated PIP limit of coverage (or that they would affect coverage). With regard to arguments on limitation of the scope of discovery, plaintiff argued only that Nationwide could not properly limit the search to Delaware because doing so limited the search to exclude discovery of generic or "genesis" documents at the corporate level.

---

plaintiff's claims which, from the Complaint, is not supported by any document they received in the transaction.

Contrary to the findings of the Discovery Master (and despite the already existing class certification discovery limits), Nationwide nonetheless initiated electronic searches regarding plaintiffs' periodically revised and vastly expanded requests (focused not on *limits* to PIP, but rather expanded to PIP coverage and the word "full" even though, pursuant to the Complaint, the Request for Documents was limited to documents referring to or characterizing PIP *limits* as full).

Nationwide did however protest this expanded search; and, the dispute led to the September 13, 2005 telephone conference. This Court then ruled that Nationwide should identify its e-discovery liaison and "meet and confer" to explain to Mr. Spadaro "what Nationwide's systems are like". As a result, as noted above, the parties met on October 3, 2005. At Oral Argument before the Discovery Master, the Discovery Master commented that Nationwide's counsel asserted that Nationwide had searched the e-mails of all Delaware agents who had a systems lease with Nationwide, the e-mail of state management level employees who report to and receive reports from the Delaware agents and the Board of Directors (Columbus) going back to 1973. Nationwide also indicated that the response to the Motion gave further references to what Nationwide had searched and the extent to which the searches had gone. However, these efforts are ignored and the production un-reviewed and otherwise not referred to in any way within the Discovery Master's findings (as though the production were not relevant to the Request for Documents at issue).

The Discovery Master also questioned counsel for Nationwide (during his hearing) whether plaintiffs' request was within the scope of discovery. Respectfully, the question reflected a confusion regarding the formal Requests and Responses at issue (on "PIP-*limits*" documents) and the on-going informal inquiries of counsel regarding PIP-*coverage* documents

13

(and also informal questions of counsel not filed as Rule 26 interrogatories). It appeared to the Discovery Master that Nationwide waived its objection to the scope of all plaintiff's (formal, and e-mail informal) requests because Nationwide did not raise it as a reason for objecting in the beginning. However, Nationwide did not fail to properly or timely object to any formal Request presented to it. Rather, Nationwide limited its initial responses (to the specific Request as written) to contract documents referring to, or relating to PIP *limits* as the only documents that refer to or describe PIP-contract limits; and, none other than contract documents exist as none refer to or characterize the PIP-contract limits. There was thus no reason to object, in the way that Nationwide has now been criticized for not objecting.

To the extent there were new Requests for Documents and related informal interrogatories/queries that refer or characterize PIP *coverage*, Nationwide did so object, and did so timely and appropriately. Nationwide stated that it had produced the legally and relevant corporate binding documents referring to or characterizing PIP *limits*, and that no other documents were relevant to the Complaint regarding limits of the plaintiffs' PIP coverage and the class definition.

By way of further argument, under Rule 26, however, parties can obtain discovery regarding any matter not privileged that is relevant to the claims or defenses. As noted above, pursuant to this Court's Scheduling Order, the discovery was already and specifically limited to class issues regarding the class definition (as presented in the Complaint), the typicality of plaintiffs' claim, and the documents that supported that claim (of which there are none). As such, Nationwide was under no obligation to make a redundant objection that any of plaintiff's discovery (that was beyond the scope of class-action discovery) was indeed beyond the court-

14

ordered limitation. Neither a requesting party nor a responding/producing party can negate or undo a standing court order by way of its discovery requests or responses.

Further, it should be noted that plaintiffs have never (in the Complaint, nor in their initial Disclosures) disclosed, identified or produced any document they possess or know of and which can be characterized as a generic/genesis-related document (or a "progeny" document they received) incident to their policy and which refers to or characterizes the PIP policy limits as "full", or to be a model for Nationwide to use as its focus for its search, and to be a basis for the Discovery Master to conclude that corporate genesis documents concerning the "offending practice" do exist. If plaintiffs never received such a document, clearly their demand that Nationwide find such a document which may not exist is not related to class issues.

Further, plaintiffs' Requests, according to the Discovery Master, appeared reasonably calculated to lead to discovery of admissible class evidence (as to whether the requirements of Rule 23(a) and (b) were satisfied and particularly to obtain admissible evidence of whether the alleged but unsubstantiated Nationwide "offending practice" of characterizing PIP as "full" is so widespread that there are common questions of law and fact which predominate over questions affecting only individual members. The Discovery Master also deemed the Requests to be calculated to lead to evidence as to whether there is a class of individuals affected by this alleged practice that is so numerous that a class is appropriate.

However, class certification is limited to the definition proposed in the Complaint, and which directs the inquiry to PIP limits, and not to a description of coverage generally. The Discovery Master, however, bases his findings on the supposed class-related discovery, on an inquiry into PIP coverage (rather than PIP limits).

Wherefore, Nationwide respectfully requests that the Court disregard Recommendation Number 1, or in the alternative, that the Discovery Master revise the Recommendation consistent with the requests originally propounded, the causes of action pled, and the limits on discovery with regard to class-certification-only discovery at this phase of the litigation.

**CONCLUSION**

Rule 37(a)(3) provides that an invasive or incomplete disclosure, answer or response is to be treated as a failure to disclose, answer or respond. However, no Federal Rule on discovery presumes a discovery response under Rule 34 is incomplete merely because the search is incomplete or unfinished. To the contrary, Rules 26 and 34 provide that discovery is on-going. To hold otherwise would render the Rules on discover not on-going.

Plaintiffs, at first requested "all documents that refer to or characterize limits of liability for PIP policy coverage as full as well as all documents that refer or relate to the characterization of limits of liability for PIP coverage as full". As noted herein throughout, these Requests are focused on PIP limits, not on PIP policy coverage. Limits are policy terms; and, plaintiffs sued on the policy (but did not attach the policy to the Complaint).

In its responses, Nationwide in accordance with Rule 34 generally objected to the terms "referred to" and "characterize", arguing that these terms were not properly defined and that the only legally enforceable relevant interpretation of these policy terms (referring to or characterizing Nationwide's PIP policy limit obligations, upon which plaintiff asserts a Breach of Contract) are those characterizations and references set forth in the insurance policy and Declarations page which form part of the policy. Contrary to the Discovery Master's findings, Nationwide's responses and objections should not be ignored; nor can they be deemed "wrong" or considered as waiving any objections to requests that were not made. Nationwide's responses

remain complete, and Nationwide has fully responded to (and gone far beyond) the original discovery requests at issue.

Based upon the foregoing, as well as the extensive record in this case, Nationwide respectfully requests that the subject motion to compel be denied, together with such further relief as the Court deems proper.

                Respectfully submitted,

                SWARTZ CAMPBELL LLC

                */s/Nicholas E. Skiles, Esquire*
                Nicholas E. Skiles, Esquire (I.D. 3777)
                Curtis P. Cheyney, III, Esquire
                300 Delaware Avenue, Suite 1130
                P.O. Box 330
                Wilmington, DE 19899
                Attorneys for Nationwide Mutual Insurance Co.
                (302) 656-5935