# Murphy Spadaro & Landon
**ATTORNEYS**

1011 CENTRE ROAD, SUITE 210

WILMINGTON, DELAWARE 19805

PHONE 302.472.8100

FAX 302.472.8135

302.472.8101

jspadaro@msllaw.com

January 30, 2006

**BY HAND DELIVERY AND ELECTRONIC FILING**
James W. Semple, Esq.
Morris James Hitchens & Williams LLP
222 Delaware Avenue, 10th Floor
P.O. Box 2306
Wilmington, DE 19899-2306

      RE: **Eames v. Nationwide Mut. Ins. Co.**
           **C.A. No.: 04-CV-1324KAJ**

Dear Master Semple:

      This is the Eames plaintiffs' submission on the dispute surrounding the Rule 30(b)(6) deposition of Nationwide. The procedural history was set forth in my January 26, 2006 e-mail, attached as Exhibit A. The Eames plaintiffs' deposition notice, with its specification of matters for examination, appears as Exhibit B; and Nationwide's objections are attached as Exhibit C.

### I. Nationwide's Definitional Objection

      This lawsuit challenges a specific practice: Nationwide's representation, made to Delaware consumers through authorized agents, that Personal Injury Protection (or "PIP") under automobile insurance policies is "full." (For an example, see Exhibit D, a copy of a "Memorandum of Insurance" that Nationwide shared with Mr. and Mrs. Eames.) The Eames plaintiffs contend that in the context of the affected documents -- in which the "full" entry appears in a column otherwise reserved for dollar amounts, including limits of liability -- reasonable consumers will conclude that the "full" modifier refers to the PIP limits. Nationwide sometimes contends that it actually refers to the absence of a deductible.

      In preparing the 30(b)(6) notice, one pitfall to avoid was the situation in which Nationwide claims lack of knowledge or otherwise withholds information simply because the parties fail to agree on the nature of the disputed practice. It was therefore important that we define the practice within the notice. And so we did:

> References to the "disputed practice" are to the characterization of any aspect of PIP (whether it be limits of liability, deductibles or otherwise) as "full", where such characterization is set forth in

128171

James W. Semple, Esq.
January 30, 2006
Page 2

---

>documents shared by Nationwide or its insurance agents with actual or prospective purchasers of automobile insurance, and regardless of whether Nationwide contends that such characterization is innocent or lawful.

Ex. B (Appendix at 1-2). Nationwide objects to this definition as overbroad, vague and ambiguous. Ex. C at 1. We feel it is not only clear, but tailored to the challenged conduct.

## II. The Deaton Testimony

On August 9, 2005, the Eames plaintiffs deposed Glenn Deaton as designee for the Glenn Deaton Agency, Inc., one of Nationwide's Delaware insurance agents. Mr. Deaton gave useful testimony on the process by which Nationwide auto policies are sold, and the practice of characterizing PIP as "full." See Ex. E at 13-20, 40-42. He confirmed, for example, that Nationwide routinely characterizes PIP as full in "auto rate quotes" shared with Delaware consumers:

> Q: Is it fair to say that the characterization of PIP as full in documents like the auto rate quote shown on the last page of Deaton 2 is a routine one in your business?
>
> A: Yes.

Id. at 41.

Item 3 of the deposition notice targets the "content, accuracy, veracity and completeness of deposition testimony given . . . . by the Glenn Deaton Agency, Inc. through its designee, Glenn Deaton." Ex. B (Appendix at 3). In other words, the Eames plaintiffs seek to determine whether Nationwide agrees or disagrees with the testimony of its own insurance agent.

This is entirely proper. One purpose of Rule 30(b)(6) "is to create testimony that would bind the corporation." Sanders v. Circle K Corp., 137 F.R.D. 292, 294 (D. Ariz. 1991). Another is to probe the factual account that the adversary intends to present at trial (or, in this case, on the class certification briefing). Downing v. Gasser, 90 A.2d 651, 651 (Del. 1952). A third is "to probe responses from other discovery." North Amer. Philips Corp. v. Aetna Cas. & Sur. Co., C.A. No. 88C-JA-155, slip op. at 4 (Del. Super. Ct. July 11, 1994) (Ex. F). The Eames plaintiffs are thus entitled to discover Nationwide's position with respect to the testimony previously given by its own agent. Nationwide's objection -- that the Deaton agency is a separate entity from Nationwide -- is beside the point.

## III. Nationwide's Document Production

Item 6 targets "[t]he nature and content of documents produced by Nationwide in the course of discovery herein." Ex. B (Appendix at 3). Nationwide objects "to the extent that the

128171

James W. Semple, Esq.
January 30, 2006
Page 3

---

documents produce by Nationwide speak for themselves as to their nature and content." Ex. C at 2. This objection is as groundless as it is meaningless: a deponent cannot refuse to testify concerning a document by virtue of the document's being in writing.

### IV. The Agents' Productions

Because (as the SDM has elsewhere found) Nationwide refused for months to produce documents regarding the disputed practice, the Eames plaintiffs served nonparty subpoenas on five of Nationwide's most prolific Delaware agents -- the Glenn Deaton Agency, the Truitt Insurance Agency, the Cynthia C. Hoban Agency, Lisa Broadbent Insurance, and Muncie Insurance and Financial Services. Item 7 targets the nature and content of those nonparty document productions. Ex. B (Appendix at 3). Nationwide objects on the grounds that the agents are separate entities from Nationwide. Ex. C at 2. Nationwide also asserts its "documents speak for themselves" objection, addressed above.

If documentary evidence is relevant, then Nationwide may properly be examined on it. Whether the document was produced by Nationwide or its agent makes no difference. Again, one of the recognized purposed of a 30(b)(6) deposition is to probe other discovery. North Amer. Philips, slip op. at 4 (Ex. F).

But the Eames plaintiffs have more than the usual need to examine Nationwide regarding the agents' productions. Because Nationwide has produced no documents of value in the case, those documents that do reflect the disputed practice come from the agents' productions. See Ex. G (consisting of one representative document from each of the five agents' productions). No meaningful examination of Nationwide is possible without reference to these documents.

### V. The "Loss Ratio" Issue

"Loss ratio" is the ratio of an insurer's incurred losses and loss-adjustment expenses (that is, the cost of investigating, handling and paying claims) to its net earned premium.[1] In their complaint, the Eames plaintiffs alleged that Nationwide's purpose in pursuing the disputed practice is "to discourage [consumers] from seeking to purchase additional (and relatively inexpensive) PIP limits." Compl. ¶10. Nationwide does this because of its historically poor loss ratio on PIP claims.

The "loss ratio" issue is thus an important part of our theory of the case. More to the point, favorable evidence on that issue tends to support our characterization of the disputed practice as a widespread deceptive scheme. That showing is critical, because cases involving a common scheme of deceptive practice present the classic case for class certification. See Amchem Products, Inc. v. Windsor, 521 U.S. 591, 625 (1997) (noting that under Rule 23(b)(3), "[p]redominance is a test readily met in certain cases alleging consumer or securities fraud . . . ");

---

[1] The deposition notice sets forth a substantially identical definition of the term "loss ratio." Nationwide did not object to that definition, or to the term itself.

128171

James W. Semple, Esq.
January 30, 2006
Page 4

---

In re The Prudential Ins. Co. of Amer. Sales Practices Litig., 148 F.3d 283, 314-15 (3d Cir. 1998) (allegations of common scheme to defraud policyholders met predominance test).

Items 8 and 9 thus target Nationwide's loss ratio for PIP coverages both generally and in Delaware. Nationwide objects on grounds of overbreadth, burden and confidentiality, and on the further ground that the inquiries are "beyond the scope of permissible class discovery . . . ." Ex. C at 2. Addressing each objection in turn, we note that these items suffer from no overbreadth. Rather, they are carefully tailored to address the question of whether Nationwide's loss ratio for PIP coverages is favorable, unfavorable or neutral.

Nationwide's burden objection is likewise meritless. Surely Nationwide knows its own business -- that is, whether it does well or poorly on PIP claims. Indeed, it is inconceivable that a sophisticated corporate actor like Nationwide would run its business without such information.

Nationwide's confidentiality objection is likewise meritless because a blanket confidentiality order has been entered, and Nationwide can invoke the order's protections for any confidential testimony it gives. See generally Ex. H.

Finally, Nationwide's "scope" objection is answered by the case law. Again, the "loss ratio" inquiry goes to whether the disputed practice is part of a common deceptive scheme. It is universally held that allegations of a common scheme meet the Rule 23 standard. See Amchem Products, 521 U.S. at 625; In re NASDAQ Market-Makers Antitrust Litig., 169 F.R.D. 493, 518 (S.D.N.Y. 1996) (conspiracy claims warrant class certification).

## VI. The "Custodial" Issue

Item 13 targets the "existence *vel non*, location and organization of any documents that refer or relate to any of the [specified] Matters For Examination . . . and the identity of any custodian for any such documents." Ex. B (Appendix at 4). Nationwide objects on grounds of vagueness, ambiguity and overbreadth. Ex. C at 3. These objections should be summarily overruled: Item 13 is clear, and there is nothing overbroad about it. Moreover, it is the most basic and innocuous type of subject matter for a 30(b)(6) deposition.

                                   Respectfully submitted,

                                   /s/ John S. Spadaro

                                   John S. Spadaro

JSS/slr
Encl.
cc: Curtis P. Cheyney, III, Esq. (by electronic filing)

128171

IN THE UNITED STATES DISTRICT COURT
IN AND FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| THOMAS A. EAMES, ROBERTA L. EAMES and TAMMY EAMES, on behalf of themselves and all others similarly situated,<br><br>    Plaintiffs,<br><br>v.<br><br>NATIONWIDE MUTUAL INSURANCE COMPANY,<br><br>    Defendant. | )<br>)<br>)<br>)<br>)<br>) C.A. No. 04-CV-1324KAJ<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## NOTICE OF SERVICE

I hereby certify that on this date, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF which will send notification of such filing(s) to the following:

Nicholas E. Skiles, Esq.
Swartz Campbell LLC
300 Delaware Avenue, Suite 1130
P.O. Box 330
Wilmington, DE 19899

              MURPHY SPADARO & LANDON

              /s/ John S. Spadaro
              John S. Spadaro, No. 3155
              1011 Centre Road, Suite 210
              Wilmington, DE 19805
              (302) 472-8100

              Attorneys for plaintiffs
              Thomas A. Eames, Roberta L. Eames and
January 30, 2006          Tammy Eames (on behalf of themselves and
              all others similarly situated)

128202