# EXHIBIT I

00071306.DOC

## John S Spadaro

| | |
|---|---|
| From: | "John S Spadaro" <jspadaro@msllaw.com> |
| To: | <ccheyney@swartzcampbell.com> |
| Cc: | <nskiles@swartzcampbell.com>; "Philip T. Edwards" <pedwards@msllaw.com> |
| Sent: | Friday, August 05, 2005 12:54 PM |
| Subject: | Eames v. Nationwide; meet-and-confer regarding plaintiffs' Document Request Nos. 1 and 2 |

Curt:

In light of the Court's rulings during today's teleconference, I write to continue the Eames plaintiffs' efforts to confer with Nationwide regarding Request Nos. 1 and 2. I am available to discuss these issues in person, by phone or in writing, at any mutually convenient time. I think an in-person meeting will likely be necessary at some point, so that we can interact with Nationwide's e-discovery liaison as needed.

In order to address these issues in a meaningful way, we make the following requests:

1. Please tell us who Nationwide will designate as its e-discovery liaison under paragraph 3 of the Default Standard. Please ensure that the person so designated meets the requirements of paragraph 3 (relating to that person's knowledge of and familiarity with Nationwide's electronically stored and created documents, its search capabilities, etc.).

2. Please make your e-discovery liaison available to participate in this meet-and-confer process, as required under paragraph 3 of the Default Standard.

3. Please make the disclosures required under paragraph 2 of the Default Standard.

4. Please address the three numbered questions inn my May 11 message.

5. Please address my comments and questions regarding my proposal (set forth in my May 16 message) that we "focus on generic materials, like internal memoranda, guidelines and manuals, and board meeting minutes[.]" For example, our document subpoenas of Nationwide's insurance agents in Delaware show that every agent so subpoenaed makes a practice of characterizing PIP limits as "full" in documents shared with the consumer insured. It seems to me that this can't be coincidental: that at some point the agents were told to do this as a matter of standard practice. And of course the agents work for Nationwide.

In other words, it seems obvious to us that Nationwide made a conscious decision at some point to have its agents characterize PIP limits as "full", in the documents that so characterize PIP limits, rather than to express those limits in numbers.

Whether or not I'm correct about this – and I'm confident that I am – it seems likely that Nationwide possesses documents that discuss this practice, its genesis and its purpose. Can you make a good-faith effort to identify who at the company would be knowledgeable on these subjects? It may be that the universe of documents we can accept is small in number, provided they are long on content – that is, a few documents that clearly spell out the genesis of the "full" usage might be more valuable than 100,000 pages that confirm that the practice is widespread (which we already know from the agents' productions).

6. You've raised concerns regarding temporal and geographic limits. My concern with geography is that the "best" of what we seek may consist (may probably consist?) of documents at the corporate level. There is no reason why such documents would necessarily be specific to Delaware, even though they might be highly relevant.

For example, suppose a document discussed the poor loss ratio that Nationwide experiences on PIP claims, and came up with the challenged practice (characterizing PIP limits as "full") as a business solution. Such a document might state or assume that the practice should be followed in all states where Nationwide sells PIP or med-pay products; and it would therefore make no mention of Delaware. If I agreed to a "Delaware-only" set, you would never produce such a document.

MTC1

8/5/2005

I have some similar concerns regarding temporal limitations. But in both areas – limits as to time and geography – I believe we can avoid dispute best by first determining what documents Nationwide has, how they can be retrieved, etc. Again the "genesis of the practice" documents might prove to be a small and readily accessible set; and if such a production goes far enough in content to obviate further document discovery, we'll never need to reach agreement on the time-and-geography issues. And even if we do, our side can negotiate such issues with more confidence once we know what documents are out there.

Please respond to these questions and observations as soon as you're able. I look forward to working with you and your liaison, so that we can move on to the merits of the class certification issues. Thank you. John

MTC2

# Murphy Spadaro & Landon

ATTORNEYS

1011 CENTRE ROAD, SUITE 210
WILMINGTON, DELAWARE 19805

PHONE 302.472.8100
FAX 302.472.8135

302.472.8101

jspadaro@msllaw.com

August 24, 2005

**BY E-MAIL AND U.S MAIL**
Curtis P. Cheyney, III, Esq.
Swartz Campbell LLC
1601 Market Street, 34th Floor
Philadelphia, PA 19103

    RE: Eames v. Nationwide Mut. Ins. Co.
    C.A. No.: 04-CV-1324KAJ

Dear Curt:

I received your letter dated August 22, 2005 regarding the status of Nationwide's efforts to respond to outstanding discovery. I note that your letter reached us by mail only, and not by e-mail (though the letter indicates e-mail transmission).

As a preliminary matter, I am encouraged that Nationwide has finally begun the process of addressing our outstanding document requests. Some of what you say should help bridge the gap on this discovery, while other aspects of your position require more discussion. But from our perspective, any meaningful start is a good start.

Let me then address the various points and questions set forth in your letter:

- You say that Nationwide estimates, on a preliminary basis, that between seventy-five and 125 persons are likely custodians of potentially relevant electronic documents. You also say that Nationwide will provide us with the titles of these persons "for purposes of identifying anticipated sources for review of emails."

We are encouraged by the prospect of receiving such a list, and working with these persons to focus your search efforts.

At the same time, it stands to reason that those most likely to be custodians of responsive *electronic* documents may also have knowledge of the existence and location of responsive *paper* documents. These same persons might reasonably be expected to have knowledge of the genesis of the "full" usage that is the subject of this case. We therefore ask Nationwide to distribute to these persons, and to those who report to them, the following message:

MTC21

Curtis P. Cheyney, III, Esq.
August 24, 2005
Page 2

> Nationwide has been sued in a proposed class action in the United States District Court for the District of Delaware, styled as <u>Eames v. Nationwide Mut. Ins. Co.</u>, C.A. No. 04-CV-1324KAJ (D. Del.). The plaintiffs in the <u>Eames</u> case allege wrongdoing by Nationwide in connection with its use of the term "full" in connection with Personal Injury Protection (or "PIP") coverage. Nationwide denies any wrongdoing.
>
> In order to satisfy the Court's requirements, Nationwide is searching for documents that use the word "full" in connection with PIP, or that refer to that usage.
>
> If you are aware of the existence of such documents, please contact [appropriate contact person] immediately, at [contact information].

Please let me know whether Nationwide is willing to distribute this message (or one substantially like it) to the "likely custodians" referred to in your letter.

- You ask us to confirm that Nationwide need not search policyholder-specific claim or underwriting files. I have confirmed that position on at least two prior occasions, and I do so again here.

- You say that Nationwide intends to begin by first searching "Delaware state email files and Nationwide Mutual Insurance Company Board Minutes." We have no objection to your commencing the search effort with those two categories. But we do not agree that Nationwide can properly limit any aspect of its search to the geographic region of Delaware, unless Nationwide first confirms that it is only in Delaware that Nationwide or its agents use the modifier "full" in connection with PIP. Our unwillingness to accept such geographic limits was explained in my August 5, 2005 e-mail, at item 6.

- If I understand you correctly, you say that Nationwide will limit its search of stored e-mails (taken from back-up tapes) to the period September 2002 to the present. If Nationwide agrees to distribute our proposed message to document custodians (shown above), we will accept this limitation.

- You say that Nationwide's search of current e-mail files for the identified custodians would be limited "to the date that [our] Complaint was filed . . . ." I do not understand this proposed limitation. Are you proposing a search that ranges from the date of the complaint to the present? Or something else?

- You propose to search board minutes from the date that Delaware's PIP statute was enacted to the date of the complaint. We accept that limitation.

MTC22

Curtis P. Cheyney, III, Esq.
August 24, 2005
Page 3

---

- The search terms you propose in the second paragraph of your letter are obvious ones, and include search terms that we have previously proposed. We find those search terms acceptable.

- You ask whether we possess any generic documents relating to the characterization of PIP as "full." I can assure you that if we did, we would have already shared them with you.

  I do note that Mr. Leoni's clients produced three blank form documents on April 26, 2005. I suggest that you share those documents with the custodians you have identified, as examples of the targeted usage. Please let me know whether Nationwide is willing to do this.

- You say that manuals and guidelines "have already been searched by review of the hard copies; and there has been reported to [plaintiffs] that no evidence was found of the word 'full' in connection with discussions of PIP coverages." I wish to note that no such thing has ever before been reported to us.

- You say that Nationwide "is not currently aware of any 'generic' document that refers to or characterizes . . . 'PIP' together with the word 'full' . . . that have {sic] not already been produced." This suggests that Nationwide has actually produced one or more generic documents that characterize PIP as "full." Are you in fact claiming to have produced such documents? Can you identify them for me?

  For our part, we are not aware that Nationwide has produced any generic documents in this case, of whatever description.

- With all respect, your questions regarding the merits of the plaintiffs' claims serve no useful purpose. I recognize that Nationwide rejects our theory of the case; and you must surely know that we reject yours. It makes little sense, then, to clutter our discovery-related dialogue with either our "ultimate issue" allegations or your denials of the same.

  Nonetheless, and in your response to your request that we identify the offending practice and the legal basis for the plaintiffs' claims, we refer you to our August 22, 2005 answering brief to Nationwide's motion to dismiss.

- You claim that it is difficult to identify persons with knowledge of the genesis of the "full" usage because (according to you) Nationwide does not characterize PIP as "full" in any insurance policy. Our August 22 answering brief explains why the policy-related documents in which Nationwide and its agents routinely characterize PIP as "full" *do* qualify as part of the insurance contract. But our disagreement on the merits is not an excuse for your continued refusal to identify persons with knowledge of the practice's history. This is because Nationwide need not embrace our theory of the case in order to identify those persons, or respond to our discovery.

125540                                                                                      MTC23

Curtis P. Cheyney, III, Esq.
August 24, 2005
Page 4

---

In other words, what we see as contractual representations you claim to be extracontractual ones; and what we see as a characterization of PIP limits, you claim to be a characterization of deductibles. But you cannot deny in good faith that Nationwide's agents in Delaware often insert the word "full" in the entry for PIP as it appears on "rate quotes", "vehicle screens" and "memoranda of insurance" (if not other documents).

We therefore ask again that you attempt to identify persons with knowledge of the use of the word "full" in connection with *any aspect* of PIP, in any documents related to the insurance transaction -- whether or not you regard that usage as innocent, and whether or not you regard the documents themselves as part of the insurance contract. If you refuse to do this, you are deliberately shielding the information most likely to lead to the identification of responsive documents. Further motion practice will then be unavoidable.

- You ask what we mean when we speak of the term "full" appearing in "close proximity" to terms like "PIP" and "Personal Injury Protection." By "close proximity" we mean within the same sentence; within the same line entry; within ten words; or within fifty characters.

- In my August 16, 2005 e-mail, I requested that Nationwide ask its e-discovery liaison to explain how Nationwide's main file server was searched in the Fraser case (in which you were counsel of record for Nationwide). You have not addressed my request, except to characterize and criticize what you take to be my "beliefs" about the Fraser case.

In Fraser, Nationwide argued "that it terminated Fraser because he was disloyal." Fraser v. Nationwide Mut. Ins. Co., 352 F.3d 107, 109 (3d Cir. 2004). Nationwide relied for this contention on two letters written by Fraser to Nationwide's competitors. Id. Those letters prompted a search by Nationwide of its main file server. The Third Circuit described Nationwide's search as follows:

> When Nationwide learned about these letters, it claims that it became concerned that Fraser might also be revealing company secrets to its competitors. *It therefore searched its main file server* -- on which all of Fraser's e-mail was lodged -- for any e-mail to or from Fraser that showed similar improper behavior. Nationwide's general counsel testified that the e-mail search confirmed Fraser's disloyalty.

Id. at 110 (emphasis added).

I ask again how this search was conducted. It seems clear to me that the lessons learned from that search might be profitably applied here; and since you were counsel of record in Fraser, there should be no undue burden in simply describing, in a step-by-step manner, the search that was used. Will Nationwide do that?

MTC24

Curtis P. Cheyney, III, Esq.
August 24, 2005
Page 5

- You say that as the search proceeds, you expect to identify "problems and burdens" associated with the search. If and when you identify such problems and burdens, I will attempt to address them. I would emphasize, however, that claims of burden must properly be weighed against the needs of the case, the complexity of the issues, and the parties' respective resources.

- You predict that the document search (which you have barely begun) will raise issues of confidentiality and evidentiary privilege. As noted in my August 16, 2005 message, we proposed a comprehensive confidentiality order (essentially identical to the one you and I agreed to in the Crowhorn case) many months ago. You refused to consider it then; will you revisit your position now?

    As to matters of privilege, we will expect Nationwide to identify and adequately support all claims of evidentiary privilege or protection by producing promptly a complete privilege log. Please confirm that to the extent Nationwide withholds any document on a claim of privilege, it will provide such a log.

- You say that the document search effort is "a priority with Nationwide and also with the discovery liaison." That is encouraging news, particularly since we have been pursuing this discovery for nearly five months. Certainly it is a priority for our side.

***

I look forward to some meaningful progress on these issues. Toward that end, please address the questions raised above. In the interim, I look forward to Nationwide's following through on the items outlined in your August 22, 2005 letter.

Very truly yours,

John S. Spadaro

JSS/slr
cc: Nicholas E. Skiles, Esq. (by e-mail)
    John P. Marino, Esq. (by e-mail)

MTC25