IN THE UNITED STATES DISTRICT COURT

IN AND FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| THOMAS A. EAMES, ROBERTA L. EAMES and TAMMY EAMES, on behalf of themselves and all others similarly situated, | ) ) ) ) ) | |
| Plaintiffs, | ) | Civil Action No. 04-CV-1324-KAJ |
| | ) | |
| v. | ) | |
| | ) | |
| NATIONWIDE MUTUAL INSURANCE COMPANY, | ) ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S RESPONSE TO PLAINTIFFS' MOTION FOR
THE ADOPTION AND SUPPLEMENTATION OF THE SDM's
JANUARY 4, 2006 REPORT AND RECOMMENDATION**

**BACKGROUND**

On January 4, 2006, James W. Semple, Esquire, the Special Discovery Master released to counsel for the parties and to the Court his letter of "Recommendations" (hereinafter "the Letter Report") with proposed findings and conclusions regarding plaintiffs' Motion to Compel Document Responses to their Initial Document Requests. On January 24, 2006 the Plaintiffs filed with the Court "*Eames Plaintiffs' Motion for Adoption and Supplementation of the SDM's January 4, 2006 Report and Recommendation",* (hereinafter "Plaintiffs' Response"). Also on January 24, 2006, Nationwide filed and served upon Plaintiffs' counsel "Defendant's Objections to the Findings and Recommendations of the Special Discovery Master". Respectfully, Nationwide Mutual Insurance Company ("Nationwide") now files, consistent with Federal Rule of Civil Procedure 53(g)(2), its "Response To Plaintiffs' Motion For The Adoption And Supplementation Of The SDM's January 4, 2006 Report and Recommendations."

**ARGUMENT**

Nationwide incorporates herein "Defendant's Objections to the Findings and Recommendations of the Special Discovery Master" served on January 24, 2006. Specifically, Nationwide objects to Plaintiffs' Motion (including for supplementation to impose sanctions) because the Letter Report and the Recommendations: 1) compel the production of documents sought by Plaintiffs by way of varying informal emails (regarding which no Court order exists); 2) makes recommendations regarding document requests which are different than those served by way of the formal discovery requests at issue; 3) presume the existence of PIP-contract coverage documents which include the word "full" as a reference to or characterization of the PIP limits of the policy (see Plaintiffs' First Request for Documents), a proposition proposed by plaintiffs without factual support; 4) ignores the nature of plaintiffs' pleadings, definitions and arguments and the Court's limitations on discovery to class issues; 5) references documents and exhibits not before the Discovery Master at the time of the hearing; and 6) incorrectly implies that there are numerous Court Orders flaunted by Nationwide.

**The Record Does Not Support the SDM's Findings or Assertions of Plaintiffs' Counsel**

The record before the SDM fails to support the conclusions and recommendations recommended by the SDM. The record does not support Plaintiffs' original effort to impose sanctions, much less the newly proposed sanctions unrelated to the Request for Documents. Nationwide conducted broad searches pursuant to a vast search protocol for potentially relevant documents which went far beyond Plaintiffs' Requests that were at issue in the subject Motion. Accordingly, Nationwide fulfilled ever expanding informal requests far broader than the initial Requests at issue in the Motion. Plaintiffs' exaggerated arguments to the contrary (in their Motion for supplemental finding of sanctions to be included in the Report and Recommendations

of the SDM), along with a thinly veiled animosity with elements of the Report, should not be credited.

What cannot be overlooked is that Nationwide has performed an extensive search for potentially responsive documents referring to or characterizing PIP limits as "full" (as outlined in "Defendant's Objections to the Findings and Recommendations of the Special Discovery Master"). Nationwide performed its searches in the face of ever-changing and expanding informal discovery demands and requests by Plaintiffs. More specifically, the subject document production in early January represents the search results pursuant to an agreed-upon protocol that was far broader than required for the response to the initial Request For Documents. Importantly, the focus of the search was not just documents pertaining to PIP limits, but also, documents referencing anywhere within its text a reference to PIP coverage and the word "full". "Coverage" is broader and, from Nationwide's perspective, different from a "Limits" inquiry of PIP. "Coverage" encompasses policy text, notation of vehicles insured, Conditions, Exclusions, and terms regarding almost everything the Delaware Department of Insurance mandates to be a part of automobile PIP insurance. "Limits" pertains only to dollar amounts a carrier provides for the specific PIP coverage claim at issue.

Nationwide searched extensively for potentially responsive documents, including electronic documents, by way of an expanded search protocol beyond that required for the Requests for Documents. To date Nationwide (after extensive expense) reviewed over 100,000 documents. In early January, after time-consuming reviews of that large universe of documents due to the expanded search, Nationwide produced 343 pages of documents that could arguably be responsive to plaintiffs' expanded requests.

Plaintiffs' counsel asserts that Nationwide did not comply with E-Discovery issues and demands. That is simply untrue. The effort of Nationwide belies this accusation, and contradicts any proposed sanction. While Nationwide may have been slow in appointing its E-Discovery liaison, it did so in conformity with the Court's Order. While plaintiff may have been less than satisfied with the "meet and confer" session, it did occur and the E-Discovery liaison answered, on the spot, all the technical questions regarding Nationwide's systems as the Court instructed. None of the perplexing concerns of the plaintiff are related to the Motion to Compel. Rather, they only serve to show how far plaintiffs are from fairly addressing these issues.

Plaintiffs repeatedly contend that Nationwide has delayed responding to Plaintiffs' discovery demands served on April 7, 2005. This is untrue. Plaintiffs fail to point out is that through their counsel's compulsive use of numerous informal emails the Plaintiffs' discovery demands have progressively changed from the demands outlined in the initial Requests. Furthermore, Plaintiffs' claim that Nationwide waived its right to object to Plaintiffs' counsel's numerous informal email questions beyond the initial Request. However, there is no Federal Rule of Civil Procedure by which objections to informal emailed inquires are waived if not asserted within some time period. Further, such informal inquiries are not spontaneously transformed into formal discovery demands over time.

To the extent that Plaintiffs' fluid discovery requests change in breadth and scope from the initial Requests (to which the Motion to Compel was directed), Nationwide has a continuing right to object, especially if Plaintiffs now seek to compel merits discovery beyond the limitation imposed by this Court whereby discovery is limited to class certification issues. Counsel's argument for sanctions is far afield of the Motion. It relates to informal inquiries and demands and a subjective opinion of counsel that Nationwide did not satisfy expectations for a "meet and

confer" and that Nationwide did not promptly appoint an E-Discovery liaison. None of these concerns are at issue. None are directed to the subject of the Request and the related Motion to Compel Responses.

**Nationwide Did Not Violate Any Orders**

Contrary to the assertions of Plaintiffs' counsel, the SDM was correct in finding that Nationwide did not violate any specific Order of the Court and that no sanctions should be imposed. (See transcript of the December 14, 2005 hearing before the SDM, pp. 86-87.) Nationwide has not ignored any order of this Court, and will not do so.

Contrary to the allegations by Plaintiffs, Nationwide did not mislead the Court or the SDM relative to its search for documents. Plaintiffs attempt to use and misuse combined references from past e-mails and transcripts, taken out of context, to create an illusion that Nationwide lied to this Court about "not limiting" its search to Delaware. As Nationwide informed the Court in the September 13, 2005 teleconference, it did not limit its searches geographically to Delaware and its production was not limited to Delaware. No facts are presented to support Plaintiffs' unfounded conclusion.

Plaintiffs continue to attempt to portray Nationwide and/or its counsel as liars and bad actors. The Court itself cautioned the Plaintiffs' counsel against such accusations:

> You're so convinced that they are bad actors, your experience either in the course of this case or previous case [with] Mr. Cheney or both has persuaded you that – and I'll use your own words. You've accused them of duplicity, which is a fancy way of saying they're liars. "Judge, these people are liars." So, stop.

(Transcript of the September 13, 2005 teleconference, pp. 14-15.) No Court order was violated by Nationwide. This Court should ignore Plaintiffs' continued hyperbole.

**Plaintiffs Complain About Issues Which Were Not Before the SDM**

The Court must recognize that the Plaintiffs complain in their sanctions Motion for Supplementation about numerous issues and references to numerous documents that were not before the SDM in the Motion to Compel. These new complaints are not the subject of the Motion to Compel Responses to Requests for Documents. The issue before the SDM was Plaintiffs' Motion to Compel Responses to Plaintiffs' First Requests for Production. Issues such as the Default Standard of E-discovery and Nationwide's responses to e-mail inquiries numbered 6, 7, and 8 noted in Plaintiffs' September 16, 2005 correspondence (to which Nationwide has replied), were not before the SDM in the Motion to Compel. Thus, this Court should disregard those references of Plaintiffs' arguments addressing these foreign subjects and return to the proper focus of the present Motion. The Plaintiffs' reliance on exhibits and contentions not originally before the SDM should be disregarded

**NATIONWIDE SHOULD NOT BEAR THE COST OF THE SDM's LABORS**

In the present matter, the SDM has worked to address discovery issues of the first Request. However, Nationwide should not be punished for its defense to abusive discovery tactics as described above. Plaintiffs should not be heard to complain about discovery when they continuously and orally attempt to expand their requests; nor should they be heard to complain about a search that does not reveal documents to support a theory not based on the policy at issue. Put simply, the record shows that plaintiffs will never be satisfied with either the scope of any search performed by Nationwide or the documents produced pursuant to such a search. This manufactured crisis is solely the result of the actions of Plaintiff. Plaintiffs should bear the costs of the SDM in their entirety.

**CONCLUSIONS**

Based upon the foregoing, including Defendant's Objections to the Findings and Recommendations of the Special Discovery Master, as well as the extensive record in this case, Nationwide respectfully requests that the subject Motion to Supplement the Recommendations of the SDM be denied, together with such further relief as the Court deems proper.

Respectfully submitted,

SWARTZ CAMPBELL LLC

*/s/Nicholas E. Skiles, Esquire*
Nicholas E. Skiles, Esquire (I.D. 3777)
Curtis P. Cheyney, III, Esquire
300 Delaware Avenue, Suite 1130
P.O. Box 330
Wilmington, DE 19899
(302) 656-5935
Attorneys for Nationwide Mutual Insurance Co.