# EXHIBIT F

1                    IN THE UNITED STATES DISTRICT COURT

2                    IN AND FOR THE DISTRICT OF DELAWARE

3                              - - -

     THOMAS A. EAMES, on behalf of
4    themselves and all others        :    CIVIL ACTION
     similarly situated; ROBERTA L.   :
5    EAMES, on behalf of themselves   :
     and all others similarly         :
6    situated; TAMMY EAMES, on behalf:
     of themselves and all others     :
7    similarly situated;              :
                                      :
8              Plaintiffs,            :
                                      :
9         v                           :
                                      :
10   NATIONWIDE MUTUAL INSURANCE       :
     COMPANY,                         :
11                                    :
              Defendant.         NO. 04-1324 (KAJ)
12                             - - -

13                    Wilmington, Delaware
                  Tuesday, September 13, 2005 at 9:30 a.m.
14                    TELEPHONE CONFERENCE

15                             - - -

16   BEFORE:        HONORABLE KENT A. JORDAN, U.S.D.C.J.

17                             - - -

     APPEARANCES:
18

19             MURPHY, SPADARO & LANDON
               BY:  JOHN S. SPADARO, ESQ.
20
                    Counsel for Plaintiffs
21

22             SWARTZ CAMPBELL, LLC
               BY:  NICHOLAS E. SKILES, ESQ.
23
                    and
24

25                                  Brian P. Gaffigan
                                    Registered Merit Reporter

1    level management documents are stored.  I'm not talking

2    about e-mails that have been -- yes, I know that they're

3    going to search e-mails from last week and they're going

4    to limit it to people who are connected to Delaware.  That

5    search is calculated to fail.  It has almost no chance of

6    discovering the documents that we're looking for.

7              THE COURT:  Now, stop.  I read that in your

8    letter.  Then I read their response which said we're not

9    limiting this geographically.  You said they're limiting to

10   people in Delaware.  They said expressly we're not doing

11   that.  Where is the disconnect?  How come you think they're

12   doing it when they said in correspondence back to you on

13   September 8th we're not doing that?  And I assume they'll

14   reiterate that on the call.  I don't know.  Mr. Cheyney, are

15   you limiting this?

16             MR. CHEYNEY:  No, Your Honor.

17             THE COURT:  Okay.  Mr. Spadaro, why do you

18   believe they're doing it when they say they're not going to

19   do it?

20             MR. SPADARO:  Well, Your Honor, if you look at

21   the list of custodians they have given us, 90 percent of

22   that list are agents, insurance agents.  And I recognize

23   the names:  Broadbent, Muncie, Deaton, Truitt.  These are

24   insurance agents that we subpoenaed in this case.  They're

25   Delaware insurance agents.  That's a list.  That list

1    Mr. Spadaro, who could speak for himself if we had time but

2    we don't, would say that is because you are looking in the

3    wrong place.

4            So here is what is going to happen.  You guys

5    are going to have this meeting.  And, of course, I hope it's

6    not too much to expect that it will be thoroughly

7    professional, that everybody will be under control, that

8    there won't be any table pounding or finger pointing or

9    sarcasm or anything else and that there will be an open

10    discussion of the Nationwide computer system.  If it needs

11    to be done under a protective order, we've got one, I think.

12            MR. CHEYNEY:  We submitted one back to him that

13    said it was acceptable to us.  He then said he had some

14    issues with our reply.

15            MR. OESTERLING:  Well, and if I could interject?

16    The Nationwide system, we're talking hundreds of databases.

17    Now, what we're trying to zero in on is what system or

18    systems could potentially have relevant evidence.

19            THE COURT:  What I'm telling you folks on the

20    Nationwide side is it's not good enough for you to say to

21    me this is what we've done.  The way to cut this issue off,

22    which I am insisting you do, is to explain to Mr. Spadaro

23    what the Nationwide system is like.  Have the technical

24    people in the room, if you have to, Mr. Oesterling.  Don't

25    have a meeting where he's got questions without having the

1   people there who can answer him.  Have a discussion about

2   the system.  All right?  Because I don't want to keep

3   talking  to you guys about "they're setting it up to fail,

4   this that and the other.  If you only listen to me, you will

5   see that they're lying sacks."  And I don't want to hear

6   from you "that's not true, that's not true."  What I want

7   is for him to be able to say "I found out this and that

8   and the other thing about this system and we came to some

9   resolution" or I want you to be able to say, "judge, we

10  gave -- we had an X-hour conversation in which we laid out

11  the entirety of our documents storage and retrieval system

12  and asked him and made proposals about how to go forward,

13  and he made counterproposals and this is why it was

14  reasonable or wasn't reasonable" because then I'm in a

15  position to say "is cost shifting appropriate?"

16          Right now, I can't do that because while I

17  disagree flatly, as I've said in this call, with the

18  hyperbole of Mr. Spadaro's letter that nothing has happened

19  or he knows nothing, I agree with him that we're a month

20  plus after the last call and still there is an inadequate

21  degree of cooperation and conversation so that we can get

22  past the issue of e-discovery into the discovery process

23  itself in a way that includes the plaintiff meaningfully.

24          So you guys have your meeting as described, but

25  do you understand both sides what I'm telling you to do?

1    helpful.  You've guys have spent I don't know how much time

2    and money writing me letters, saying how unreasonable the

3    other side is.  I mean I'm not unsympathetic to you,

4    Mr. Spadaro.  You say "it turns into a referendum on me."

5    That's now how you view this but I have to say candidly on

6    this record you are so wrapped up in the emotion of this

7    case, it's just screaming at me over the phone.  The heat

8    waves are coming off the receiver at this end.  Both sides.

9    The sarcasm is evident in spots in the correspondence from

10   the other side.  Your intensity is evident.

11          You folks have got to get your emotions under

12   control.  And I can't be the one who is holding your hand

13   through this.  I have got too many other people with

14   legitimate complaints and disputes that I can't have your

15   issues swamp me on a monthly basis for time to read your

16   letters, digest your problem, which I do, and then get on

17   the phone with you and try to sort it out.

18          So both sides, I want a discussion from you

19   about who would be a good neutral if this happens again,

20   because if it happens, this is the last free bite.  Next

21   time, we're going and I'm bringing somebody into the mix.

22   And in the first instance, we'll be splitting it 50/50 but

23   I'm going to be asking that person "who is a bad actor

24   here?"  And if they say "you know what?  I think Nationwide

25   really is jerking them around," you are going to pay the

1    full freight; not 75 percent, the whole wad.

2              Does everybody understand what I'm trying to get

3    across to you?  Mr. Cheyney?

4              MR. CHEYNEY:  Yes, Your Honor.

5              THE COURT:  Okay.  Mr. Oesterling, I'm glad to

6    have you in the mix.  I know you are in-house with

7    Nationwide but I'm hoping against hope that you will be a

8    force for reason in the course of these discussions.

9              MR. OESTERLING:  Your Honor, if I could make a

10   suggestion to make our meeting more productive?  If there

11   are specific questions, technical questions that I might

12   not be able to answer in a face-to-face, I could do some

13   research prior to our meeting to make sure that it is

14   productive.

15             THE COURT:  Okay.  Well, that's a great idea.

16   And, Mr. Spadaro, you let them him know that.

17             And here is my last piece of advice for you

18   before I hang up because I've got people on hold.  I expect

19   there to be more phone calls; more phone calls and fewer

20   e-mails.  Pick the phone up and speak to each other.  If you

21   need to make a record in e-mail afterwards that you feel

22   they're so completely absent any trust, then you write your

23   confirming e-mail, but pick the phone up and speak to each

24   other, okay?  I think at least 75 percent of your problem is

25   you are so busy each side making a record that you are not