# EXHIBIT H

1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

THOMAS A. EAMES, ROBERTA      )
L. EAMES, and TAMMY EAMES,    )
on behalf of themselves       )
and all others similarly      )
situated,                     )
                              )
         Plaintiff,           )
                              ) C.A. No. 04-1324 KAJ
v.                            )
                              )
NATIONWIDE MUTUAL             )
INSURANCE COMPANY,            )
                              )
         Defendant.           )


                    Wednesday, December 14, 2005
                    10:44 a.m.

                    222 Delaware Avenue, 10th Floor
                    Wilmington, Delaware

BEFORE:   SPECIAL MASTER JAMES W. SEMPLE
          Special Discovery Master


APPEARANCES:

          JOHN S. SPADARO, ESQ.
          MURPHY, SPADARO & LANDON
             1011 Centre Road, Suite 210
             Wilmington, Delaware  19805
             for the Plaintiffs


          CURTIS P. CHEYNEY, III, ESQ.
          SWARTZ, CAMPBELL
             1601 Market Street, 34th Floor
             Philadelphia, Pennsylvania  19103-2316
             for the Defendant

```
 1   insurance commissioner.
 2              MR. CHEYNEY:  Correct.
 3              SPECIAL MASTER SEMPLE:  And have you
 4   produced any other documents from Nationwide
 5   which would show the etymology of the Nationwide
 6   Form A other than the insurance commissioner's
 7   Form A?
 8              MR. CHEYNEY:  No.
 9              SPECIAL MASTER SEMPLE:  Have you
10   searched for such documents?
11              MR. CHEYNEY:  Yes.
12              SPECIAL MASTER SEMPLE:  And can you
13   tell me what -- what have you searched and where
14   have you searched?
15              MR. CHEYNEY:  We have searched all
16   the Delaware agents' Email files.  We have
17   searched the Delaware, which includes Delaware,
18   Maryland and all of the management-level people
19   who report to the Delaware agents.
20              SPECIAL MASTER SEMPLE:  Okay.  Let
21   me just stop you right there.
22              What does that mean, Delaware Email
23   files?
24              MR. CHEYNEY:  The Emails of every
```

```
 1   agent who has a lease with us of an Email system.
 2   We have in our server the ability to search their
 3   Emails for words full, PIP, any relation to that.
 4              We also searched the state
 5   management-level employees, which include
 6   employees who have management-level
 7   responsibility beyond Delaware and are not
 8   situated only in Delaware.
 9              We've searched Board of Directors'
10   records back to 1973, again, for any reference to
11   the word PIP, personal injury protection, full,
12   full PIP.  I forget all we've expanded on.
13              But anything that would possibly
14   relate to the request, we have put a search in
15   for.  We have found a number of documents that
16   meet that general description where those words
17   are in there, including false words like fully,
18   or beautiful, or something that would have a word
19   in it that we had to screen out.
20              SPECIAL MASTER SEMPLE:  How many
21   documents -- if you know, how many documents were
22   identified as a result of those searches?
23              MR. CHEYNEY:  Do you mind if I --
24              MR. MARINO:  No.
```

```
 1    in the record or in the docket as opposed to
 2    saying something in the transcript?
 3                    MR. SPADARO:  There are bench
 4    rulings in the transcript alone.  There aren't
 5    written orders, but they are orders of the Court.
 6                    Judge Jordan has ordered specific
 7    action, and he's made specific legal rulings.
 8    And he overruled their relevance objection and
 9    they've raised it again.
10                    They've raised it again at this
11    hearing.  But they raised it again in the meet an
12    confer with me.  That's a violation of the order.
13                    Judge Jordan ordered them, and he
14    said, of this October 3rd meeting, he said,
15    "Don't have a meeting where he's got questions
16    without having the people there who can answer
17    them."
18                    Those questions they did not answer.
19    It's not one question.  And they're not
20    insignificant.
21                    It's all the questions, the bundle
22    of questions at Number 6 and 8 of Exhibit P.
23    These are questions like, Do you issue
24    instruction or guidance to insurance agents
```

1   regarding the content of these forms?  Who does
2   that?
3              Where would those documents be?  I
4   told them in advance, you're not -- you're
5   disobeying the Judge's direct order.  You're not
6   bringing the people to that meeting.
7              And they didn't -- and we're not
8   going to bring him any way.  That's a violation
9   of the order.
10             SPECIAL MASTER SEMPLE:  I
11  understand.  But why didn't you file 30(b)6
12  depositions to get more clearly defined answers
13  to who knows what, what documents exist, and
14  where are they located?
15             MR. SPADARO:  Again, Your Honor, I
16  think strategically, and it's a matter of
17  professional judgment, under the circumstances
18  you want to take that deposition after you get
19  some kind of meaningful production.
20             You don't want to take the
21  deposition before any documents are produced.
22  And generally those custodial depositions aren't
23  taken until -- they're not taken until there's
24  been a custodian, there's been a production.

```
 1              SPECIAL MASTER SEMPLE:  I'm not
 2   talking about a custodial deposition.  I'm
 3   talking about 30(b)6 depositions where you list
 4   areas of inquiry and you get answers to certain
 5   questions.  And then you can frame specific
 6   requests based upon those verified and sworn
 7   testimony.
 8              MR. SPADARO:  There's nothing
 9   prohibiting me from doing it.  And it might have
10   had some usefulness in this context.  I think
11   there are strategic advantages, because I'm only
12   going to get, as a general matter in Delaware,
13   and under Federal Rules, I'm only going to get
14   one 30(b)6 during the class certification
15   discovery phase.
16              And the second one on the merits, if
17   we get that far.  So I made the judgment that I
18   wanted to get their documents first before doing
19   that.  That's strategy.
20              Whether I'm subject to criticism for
21   that as a strategic matter does not relieve them
22   of their obligations under Rule 34.  They still
23   have to produce the documents.
24              And the upshot, it's not as though
```

1    no rulings were made on the August 5th
2    teleconference.  They were ordered to meet and
3    confer with me in good faith.
4              Within hours, I get a facetious
5    Email from Mr. Cheyney saying, You're not going
6    to get anything.  Maybe you should go ask
7    Mr. Munson.
8              That is a violation of the Court's
9    order, because he's not meeting and conferring
10   with good faith.  He's being combative, and
11   confrontational, and evasive, and facetious
12   within hours of getting off the phone with the
13   judge.  So they violated the October 3rd meeting.
14             I still every day, every day that
15   they don't answer the questions that I was
16   ordered to give them in advance so they could
17   answer them at the meeting, when they were told
18   you will answer these questions at this meeting.
19   Judge Jordan told them, I am ordering you to have
20   the people there.
21             They said, No, we won't have the
22   people there.  We'll tell him we'll get back to
23   him.  And there was no limitation, you only have
24   to answer technical questions.

```
 1              The judge said, Don't have a meeting
 2   where he's got questions, and he's going to give
 3   you written questions.  I gave it to them in
 4   advance of the meeting.
 5              They didn't say, Well, you went
 6   beyond the Judge's order.  These are
 7   non-technical questions.  We don't have to answer
 8   these.
 9              That's a violation.  It's a
10   continuing violation.
11              Every day they don't answer those
12   questions that Judge Jordan ordered them to
13   answer, it's a continuing violation of that
14   order.
15              The scheduling order says, You will
16   either -- you'll either agree to a protocol for
17   electronic discovery or you'll follow default
18   standards.  They didn't even agree that
19   electronic discovery had been asked.
20              I mean, Mr. Cheyney told me, You
21   haven't asked for electronic discovery at the
22   hearing today.  He admits, Well, that's not
23   right.
24              And he said he told that to the
```

```
 1   judge at the August 5th teleconference.  Judge
 2   Jordan said that that was an almost willful
 3   misreading of our discovery.
 4               So I couldn't get them.  There was
 5   not going to be any agreed protocol.
 6               He didn't even agree that I asked
 7   for electronic discovery.  I asked, since there's
 8   no protocol or order to follow, default standard.
 9   He ignored me for a month.  I wrote back a month
10   later.
11               After that, four times I wrote him.
12   I had to go to the Court.
13               You are now on August 5th when Judge
14   Jordan said, You will follow the default
15   standard.  Now, you will appoint an E discovery
16   liaison.
17               You will do these things.  That
18   wasn't the first order.  That was the second
19   order.
20               Because the scheduling order is a
21   written order, and the incorporation by reference
22   to the default standard is a written order and
23   the default standard is written.
24               So they were ordered to do that
```

before and they were ordered to do that after.
And they still haven't complied with the default
standard.

You know, we're still boxed into
this leadership team, which Mr. Cheyney referred
to. It's the Delaware Leadership Team.

We know that they were engaged in
this practice outside Delaware for years and
years and years. And it's not limited to
Delaware.

But we're still on this Delaware box
that's not complying with the default standard.
And there's also the point made that they can
argue burden with me, although we've waived the
burden objection.

Has Your Honor ever heard of that
before? I mean, they raise the burden objection
on the eve of that teleconference, and they were
ordered to produce notwithstanding. They are
raising objections, too, that were overruled at
that hearing.

Really, what they're doing, their
prematurity objection was the one that they
really thought was their ace in the hole. And