IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

THOMAS A. EAMES, ROBERTA L. )
EAMES, and TAMMY EAMES, on behalf )
of themselves and all others similarly )
situated, )
 )
 )
            Plaintiffs, )
 )
    v. )    Civil Action No. 04-1324-KAJ
 )
NATIONWIDE MUTUAL INSURANCE )
COMPANY, )
 )
            Defendant. )

## MEMORANDUM OPINION

John S. Spadaro, Esq., Murphy Spadaro & Landon, 1011 Centre Road, Suite 210, Wilmington, Delaware 19805;
Clayton E. Bunting, Esq., Wilson Halbrook & Bayard, 107 West Market Street, P.O. Box 690, Georgetown, Delaware 19947; Counsel for Plaintiffs.

Nicholas E. Skiles, Esq., Swartz Campbell LLC, 300 Delaware Avenue, Suite 1130, P.O. Box 330, Wilmington, Delaware 19899; Counsel for Defendant.

February 2, 2006
Wilmington, Delaware



JORDAN, District Judge.

I.  **INTRODUCTION**

This is a proposed class action involving insurance contracts. (Docket Item ["D.I."] 1 at A6-A23; the "Complaint".) The proposed class representatives, Thomas A. Eames, Roberta L. Eames, and Tammy Eames (collectively "Plaintiffs"), allege that Nationwide Mutual Insurance Company ("Nationwide") misrepresented to class members the limits of liability for Personal Injury Protection ("PIP") coverage included in Nationwide insurance policies. (Complaint at ¶ 9.) Invoking 28 U.S.C. § 1441, Nationwide removed the case to this court from Delaware Superior Court. (D.I. 1.) Jurisdiction is proper under 28 U.S.C. § 1332. Before me is Nationwide's Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). (D.I. 3; the "Motion".) For the reasons that follow, the Motion will be granted.

II. **BACKGROUND**[1]

A.  *Allegations in the Complaint*

This case arises from Nationwide's underwriting of PIP insurance coverage. (Complaint at ¶ 9.) Delaware law requires motor vehicle owners to maintain minimum levels of insurance coverage, including coverage that provides "[c]ompensation to injured persons for reasonable and necessary expenses incurred within 2 years from the date of the accident." 21 *Del. C.* § 2118(a)(2)(a). That type of insurance is known as PIP coverage. The minimum amount of PIP coverage an owner is required to have is "$15,000 for any 1 person and $30,000 for all persons injured in any 1 accident." *Id.* at § 2118(a)(2)(b).

---

[1] The following background information is based on Plaintiffs' allegations, which are assumed to be true for the purposes of this 12(b)(6) motion.

Plaintiffs allege that Nationwide "misrepresented ... the limits of liability of their PIP coverage." (Complaint at ¶ 9.) According to Plaintiffs, Nationwide sold insurance policies "that expressly state, in policy declarations, memorandum of insurance or other policy documentation, that the purchased limits of liability for PIP coverage are 'full' limits." (*Id.*) However, Plaintiffs allege that Nationwide intends "to provide only the minimum statutory limits of $15,000 per person and $30,000 per accident." (*Id.*) Plaintiffs allege that the term "full" refers to the maximum amount of PIP coverage Nationwide offered at that time, which was $100,000 per person and $300,000 per accident. (D.I. 7 at 3-6.) Thus, according to Plaintiffs, consumers are led to believe that they have purchased coverage with those maximum limits, and so the insurance policies must be interpreted to provide for those limits. (Complaint at ¶¶ 11, 24.)

Alternatively, Plaintiffs allege that "Nationwide's practice of characterizing minimum PIP limits as 'full' limits ... leads insureds to believe that they have purchased the fullest PIP limits or PIP coverage available; the purpose being to discourage them from seeking to purchase additional (and relatively inexpensive) PIP limits." (Complaint at ¶ 10.)

As proposed class representatives in this action, Plaintiffs allege that they were insured under Nationwide Auto Policy 52A733616 and claimed PIP benefits pursuant to that policy for injuries suffered in an automobile collision on February 7, 2003. (*Id.* at ¶¶ 3-4, 12.) According to Plaintiffs, "Nationwide has represented to one or more of [them] that the subject policy provides 'full' limits of liability for PIP coverage; and it has thereafter taken the position that such limits have been exhausted by payment of the minimum statutory amount." (*Id.* at ¶ 13.)

B.   *The Insurance Policy Document*

Plaintiffs' insurance policy (D.I. 4 at A20-A49) included the following provisions.[2]

First, the Insuring Agreement states that, "[f]or the policyholder's payment of premiums in amounts [Nationwide] require[s] and subject to all of the terms and conditions of this policy, [Nationwide] agree[s] to provide the coverages the policyholder has selected. These selections are shown in the enclosed Declarations, which are a part of this policy contract." (*Id.* at A23.)

The Nationwide Auto Policy Declarations then includes this statement: "These Declarations are a part of the policy named above and identified by policy number below. They supersede any Declarations issued earlier. Your policy provides the coverages and limits shown in the schedule of coverages." (*Id.* at A20.) The following message is found on the same page:

> IMPORTANT MESSAGES:
> NOTICE: THE COVERAGES YOU HAVE SELECTED, AS SHOWN IN THIS (sic) DECLARATIONS, ARE SUBJECT TO THE EXCLUSIONS, LIMITATIONS, AND CONDITIONS OF COVERAGE DETAILED IN YOUR POLICY. IN SOME CASES YOUR COVERAGE MAY BE LIMITED TO THE MINIMUM LIMITS OF COVERAGE REQUIRED BY THE DELAWARE FINANCIAL RESPONSIBILITY LAW OR THE DELAWARE MOTORISTS PROTECTION ACT. ON THE DATE THIS DECLARATIONS WAS ISSUED, THOSE LIMITS ARE:
> AUTO LIABILITY:   $15,000 PER PERSON, $30,000 PER
>                                OCCURRENCE FOR BODILY INJURY
>                                $10,000 FOR PROPERTY DAMAGE

---

[2]Since Plaintiffs rely on the policy to support their right to insurance coverage, the court may consider that document, even though it was provided by Nationwide. *See Pension Benefit Guaranty Corp. v. White Consolidated Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) ("[A] court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document.").

    NO-FAULT:        $15,000 PER PERSON, $30,000 PER OCCURRENE (sic) FOR BODILY INJURY
                                 $10,000 FOR DAMAGE TO PROPERTY OTHER THAN A MOTOR VEHICLE

IT IS IMPORTANT THAT YOU READ YOUR POLICY CAREFULLY.

(*Id.*)

For "Limits of Liability associated with Personal Injury Protection and Damage to Property Other Than Motor Vehicle," the Schedule of Coverages states: "SEE POLICY." (*Id.* at A20-A21.) Under Personal Injury Protection Coverage, the policy reads: "[Nationwide] will pay benefits up to a total of $15,000 for bodily injury per insured in one accident, and up to $30,000 in total if two or more insureds are injured in one accident." (*Id.* at A35.)

For other liability limits, such as those associated with property damage or bodily injury liability coverage, the limits, e.g. $50,000 or $100,000, are listed in the Schedule of Coverages (*id.* at A20-A21), and the corresponding section of the policy reads: "[Nationwide] will pay such liability losses up to the limits stated in the Declarations" (*id.* at A30).

Finally, after stating that the policy terms will be amended to conform with conflicting statutes, the policy states: "No other changes may be made in the terms of this policy except by endorsement or policy revision." (*Id.* at A45.)

    C.    *Claims for Relief*

In Count I of the Complaint, Plaintiffs seek a declaratory judgment that, according to their insurance policy contracts, class members "are entitled to the maximum PIP limits made available by Nationwide" or "to full coverage of all reasonable

and necessary medical expenses incurred within the statutory (two year) period for PIP claims ... ." (Complaint at ¶ 24.) In Count II, Plaintiffs allege that Nationwide has breached the insurance contracts by failing to provide "full" limits. (*Id.* at ¶¶ 28-29.) In Count III, Plaintiffs allege that Nationwide's breach of contract was in bad faith. (*Id.* at ¶¶ 31-34.) Finally, in Counts IV and V, Plaintiffs allege, respsectively, that Nationwide is liable for consumer fraud under 6 *Del. C.* § 2513 and for civil conspiracy. (*Id.* at ¶¶ 35-41.)

## III.   STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) requires a court to accept as true all material allegations of the complaint. *See Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts, Inc.*, 140 F.3d 478, 483 (3d Cir. 1998) (internal citation omitted). "A complaint should be dismissed only if, after accepting as true all of the facts alleged in the complaint, and drawing all reasonable inferences in the plaintiff's favor, no relief could be granted under any set of facts consistent with the allegations of the complaint." *Id.* (internal citation omitted). The moving party has the burden of persuasion. *See Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991).

## IV.   DISCUSSION

### A.   *Counts I, II, and III - The Contract Claims*

Plaintiffs' declaratory judgment and breach of contract claims in Counts I-III are based on the assertions (1) that Nationwide issued one or more documents stating that limits on PIP coverage were full, (2) that such documents are part of the insurance contract, and (3) that the term "full limits" means something different than the

5

$15,000/$30,000 limits set forth in the policy text. Thus, according to Plaintiffs, the contract is ambiguous and must be construed to provide limits greater than $15,000/$30,000. (D.I. 89 at 15, 22.) Because I conclude that, to the contrary, the insurance contract unambiguously provides for the $15,000/$30,000 limit, even assuming that Nationwide distributed documents using the word "full" to describe those limits, Counts I, II, and III must be dismissed with prejudice.

Under Delaware law, "[t]he proper construction of any contract, including an insurance contract, is purely a question of law." *Rhone-Poulenc Basic Chem. Co. v. Am. Motorists Ins. Co.*, 616 A.2d 1192, 1195 (Del. 1992). "Because an insurance policy is an adhesion contract[,] ... [a]s a general rule, ... [it] is construed strongly against the insurer, and in favor of the insured ... ." *Hallowell v. State Farm Mut. Auto. Ins. Co.*, 443 A.2d 925, 926 (Del. 1982). However that general rule does not apply "unless there is some ambiguity in the policy language." *Id.* "Clear and unambiguous language in an insurance policy should be given its ordinary and usual meaning." *Rhone-Poulenc*, 616 A.2d at 1195. And "if the language is clear and unambiguous a Delaware court will not destroy or twist the words under the guise of construing them." *Hallowell*, 443 A.2d at 926; *accord O'Brien v. Progressive N. Ins. Co.*, 785 A.2d 281, 288 (Del. 2001). "[A]n ambiguity exists when the language in a contract permits two or more reasonable interpretations." *Hallowell*, 443 A.2d at 926. The inquiry as to whether an ambiguity exists must focus on the contract. "Extrinsic evidence is not to be used to interpret contract language where that language is 'plain and clear on its face.'" *E.I. du Pont de*

*Nemours & Co. v. Allstate Ins. Co.*, 693 A.2d 1059, 1061 (Del. 1997); *accord O'Brien*, 785 A.2d at 289.

Starting with the language in the policy text, the liability limits for PIP coverage are stated to be "$15,000 for bodily injury per insured in one accident, and up to $30,000 in total if two or more insureds are injured in one accident." (D.I. 4 at A35.) The Nationwide Auto Policy Declarations, which by their own terms are "part of the policy," direct the reader to "SEE POLICY" to determine the liability limits for PIP coverage, which points to the $15,000/$30,000 limits set forth therein. (*Id.* at A20.) Furthermore, those Declarations warn (1) that coverage may be limited to the minimum required by law and (2) that it is important to read the policy carefully. (*Id.*) Thus, based on the policy text and accompanying Declarations, the contract unambiguously provides for liability limits of $15,000/$30,000 for PIP coverage.

Plaintiffs evidently do not dispute that those documents are unambiguous. Rather, Plaintiffs take the position that those documents do not represent the entire contract. Nationwide allegedly stated "in policy declarations, memoranda of insurance[,] or other policy documentation" that the policies provided for full limits on PIP coverage. (Complaint at ¶ 9.) According to Plaintiffs, because policy declarations are part of the contract, so are the statements that limits are "full." (D.I. 89 at 11-12, 14-15.) The juxtaposition of those statements with the limits in the policy text is what, as Plaintiffs see it, creates an ambiguity in the contract. (*Id.* at 15.)

While Plaintiffs' factual allegations must be treated as true, their legal conclusion that documents other than the policy text and the accompanying Declarations are part of the contract need not be. Indeed, Plaintiffs' argument that other documents

7

containing the type of information found in the Declarations must be treated as part of the insurance contract (*id.* at 12) is inconsistent with the language in the policy text. That text states only that "the *enclosed* Declarations" are part of the policy contract. (D.I. 4 at A23 (emphasis added).) Furthermore, those Declarations state: "These Declarations are a part of the policy named above and identified by policy number below. They supersede any Declarations issued earlier." (*Id.* at A20.) Finally, the policy terms may not be changed "except by endorsement or policy revision." (*Id.* at A45.) Thus, only the Declarations enclosed with the policy are part of the contract, any earlier Declarations are superseded, and any later documents do not change the terms of the policy unless they fit a narrow category of revisionary documents not relevant here. Even if Plaintiffs did receive documents that used the term "full," then, those documents are not part of the contract.

Finally, Plaintiffs argue that even if those documents are outside the contract, they may be considered to determine what a reasonable consumer would understand the contract to mean. (D.I. 89 at 19-20.) *See Freeman v. Mass. Mut. Life Ins. Co.*, 183 N.W.2d 832, 834-37 (Mich. Ct. App. 1971); *Handal v. Am. Farmers Mut. Cas. Co.*, 255 N.W.2d 903, 907 (Wis. 1977); *Westhuis v. Royal Mut. Ins. Co.*, No. 91-2943, 1992 WL 348297, at *2 (Wis. Ct. App. Aug. 4, 1992). However, that approach is contrary to Delaware law. The Delaware Supreme Court has held "unequivocally that extrinsic evidence is not to be used to interpret contract language where that language is plain and clear on its face." *O'Brien*, 785 A.2d at 289 (internal quotations omitted).

Therefore, the contract at issue unambiguously provides for liability limits of $15,000/$30,000 for PIP coverage, and Plaintiffs' claim, in Count I, for a declaratory judgment that the contract provides for some other limit will be dismissed with prejudice. Also, Nationwide has not breached that contract, and Counts II and III will likewise be dismissed with prejudice.[3]

### B.   *Count IV - Consumer Fraud*

The dismissal of Counts I through III does not, however, end the case, because the conclusion that the insurance policy unambiguously provides for liability limits of $15,000/$30,000 does not foreclose Plaintiffs' claim for consumer fraud, as set forth in Count IV.

The Delaware Consumer Fraud Act provides that:

> any deception, fraud, false pretense, false promise, misrepresentation, or the concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale, lease or advertisement of any merchandise, whether or not any person has in fact been misled, deceived or damaged thereby, is an unlawful practice.

6 *Del. C.* § 2513(a). The statute provides a private cause of action for violations by an insurance company. *Mentis v. Del. Am. Life Ins. Co.*, No. C.A.98C-12-023, 1999 WL

---

[3] Plaintiffs contend that Nationwide has, in its reply brief, converted its 12(b)(6) motion into a motion for summary judgment, and that Plaintiffs should be allowed to secure evidence before the motion is decided. (D.I. 97.) According to Plaintiffs, Nationwide relied on evidence outside the pleadings by arguing that the documents presented to date that contain the term "full" all postdate the policy document. (*Id.*; see D.I. 95 at 1.) However, those documents were provided by the Plaintiffs in their opposition to the 12(b)(6) motion (D.I. 90 at B30, B32), and referring to them in a reply does not amount to presenting matters outside the pleadings. Since the decision to dismiss Counts I-III depends only on the complaint and the policy document, which may be considered, *see supra* note 2, Nationwide's motion is properly treated as one under Rule 12(b)(6).

9

744430, at *6 (Del. Super. Ct. July 28, 1999).  With three exceptions, "the statute must be interpreted in light of established common law definitions and concepts of fraud and deceit."  *Stephenson v. Capano Dev., Inc.*, 462 A.2d 1069, 1074 (Del. 1983).  Thus, as would be required for a claim of common law fraud, a plaintiff alleging a violation of the consumer fraud statute must show both "a false representation, usually one of fact, made by the defendant" and "damage to the plaintiff."  *Id*.  However, the statute does depart from the common law in the following ways:  (1) "a negligent misrepresentation is sufficient to violate the statute," (2) a violation of the statute "is committed regardless of actual reliance by the plaintiff," and (3) the plaintiff need not show "intent [by the defendant] to induce action or inaction by the plaintiff."  *Id*.  Allowing a negligent misrepresentation to suffice means that "[t]he defendant need not have intended to misrepresent or to make a deceptive or untrue statement," and thus, "the only intent requirement of the Act is that in omitting or concealing a material fact, the defendant must have intended that others rely on the omission or concealment."  *Id*.

When read in the light most favorable to Plaintiffs, the Complaint appears to allege false representations by Nationwide that were known to be false and that damaged Plaintiffs and other class members.  (Complaint at ¶¶ 9-10.)  According to the Complaint, Nationwide "falsely described PIP limits as 'full'," and class members were harmed either because they believed that they had purchased coverage with limits higher than $15,000/$30,000 or because they believed that those were the highest limits available to purchase.  (*Id*.)  There is no requirement that such misrepresentations be made within the contract, so the failure of Plaintiffs' breach of contract claims does not foreclose their fraud claim.  Thus, Nationwide has not shown, as it must under Rule

10

12(b)(6), that no relief could be granted for consumer fraud under any set of facts consistent with the allegations of the Complaint.

However, Nationwide does point out that the Complaint fails to plead the circumstances surrounding the alleged fraud with the necessary particularity (D.I. 3 at 16; D.I. 95 at 10), and cites Delaware case law applying that heightened pleading requirement. *See Crowhorn v. Nationwide Mut. Ins. Co.*, No. Civ.A.00C-06-010, 2002 WL 1767529, at *9 (Del. Super. Ct. July 10, 2002) (applying the particularity requirement to a claim under the Consumer Fraud Act).

The Federal Rules of Civil Procedure provide that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b). "Rule 9(b) requires plaintiffs to plead with particularity the 'circumstances' of the alleged fraud in order to place the defendants on notice of the precise misconduct with which they are charged, and to safeguard defendants against spurious charges ... ." *Seville Indus. Mach. Corp. v. Southmost Mach. Corp.*, 742 F.2d 786, 791 (3d Cir. 1984). While "allegations of 'date, place or time' fulfill these functions, ... nothing in the rule requires them. Plaintiffs are free to use alternative means of injecting precision and some measure of substantiation into their allegations of fraud." *Id.*

Here, Nationwide argues that Plaintiffs fail to plead the circumstances surrounding a specific misrepresentation made to them (D.I. 95 at 10) and the particular harm suffered by them as a result (D.I. 3 at 16). Indeed, the Complaint does not provide any facts concerning what documents the Plaintiffs received, or when or from whom they received such documents. Thus, the Complaint fails to allege fraud with the

11

particularity necessary to satisfy Rule 9(b). However, since the Complaint, when read in the light most favorable to Plaintiffs, does set forth a claim in skeletal form, I will dismiss Count IV without prejudice and grant Plaintiffs leave to amend as to that count.

### C.  Count V - Civil Conspiracy

Under Delaware law, a claim for civil conspiracy requires a plaintiff to show (1) a combination of two or more persons, (2) an unlawful act done to further the conspiracy, and (3) damages. *Nicolet, Inc. v. Nutt*, 525 A.2d 146, 149-50 (Del. 1987). Such a claim "is not an independent cause of action, and thus, a civil conspiracy claim must be predicated upon an underlying wrong." *Tracinda Corp. v. DaimlerChrysler AG*, 197 F. Supp. 2d 42, 74 (D. Del. 2002).

Here, Plaintiffs allege that Nationwide and its agents have "combined" to further a conspiracy to misrepresent the liability limits for PIP coverage. (Complaint at ¶ 40.) Nationwide argues that a claim for civil conspiracy must be pleaded with particularity and that Plaintiffs have not met that requirement. (D.I. 3 at 17-18; D.I. 95 at 10 (citing *Tracinda*, 197 F. Supp. 2d at 74; *Ramunno v. Cawley*, 705 A.2d 1029, 1039 (Del. 1998).) In *Ramunno*, the Delaware Supreme Court applied a heightened pleading requirement because of the "First Amendment context" of that defamation case. 705 A.2d at 1039. That context, of course, is lacking here. Thus, Nationwide's reliance on the *Ramunno* decision as authority for a particularized pleading requirement for the civil conspiracy claim in this case is misplaced.

Still, Count V must be dismissed because, as Nationwide correctly notes, a claim of civil conspiracy requires an underlying wrong. *Tracinda,* 197 F. Supp. 2d at 74. (D.I.

12

3 at 18-19; D.I. 95 at 11.) Thus, since Counts I-IV will be dismissed, Count V must be dismissed as well. Since an amended complaint sufficient to support a consumer fraud claim may provide the necessary underlying wrong, Count V, like Count IV, will be dismissed without prejudice.[4]

## V. CONCLUSION

For the reasons set forth herein, I will grant Nationwide's Motion to Dismiss (D.I. 3) under Fed. R. Civ. P. 12(b)(6). Counts I, II, and III will be dismissed with prejudice. Counts IV and V will be dismissed without prejudice, and Plaintiffs will be granted leave to amend, within 45 days, as to those counts.[5] An appropriate order will issue.

---

[4] To the extent a higher pleading standard were required for the civil conspiracy count, the particularized pleading that is being required for the underlying fraud claim should suffice. Cf. *United States ex rel. Atkinson v. Pa. Shipbuilding Co.*, 255 F. Supp. 2d 351, 407-08 (E.D. Pa. 2002) (requiring the predicate fraud to be pleaded with particularity to support a federal conspiracy claim); *Lakonia Mgmt. Ltd. v. Meriwether*, 106 F. Supp. 2d 540, 543-44 (S.D.N.Y. 2000) (same).

[5] I currently have before me a motion (D.I. 142) to adopt the report and recommendation of a special discovery master. I will retain jurisdiction over that motion. *See Cooter & Gell v. Hartmax*, 496 U.S. 384, 395 (1990) (stating that a district court may retain jurisdiction over an award of fees and costs after dismissal and that "[i]t is well established that a federal court may consider collateral issues after an action is no longer pending").