IN THE UNITED STATES DISTRICT COURT
IN AND FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| THOMAS A. EAMES, ROBERTA L. EAMES and TAMMY EAMES, on behalf of themselves and all others similarly situated, | ) ) ) ) ) | PUBLIC VERSION |
| Plaintiffs, | ) ) | C.A. No. 04-CV-1324KAJ |
| v. | ) ) | |
| NATIONWIDE MUTUAL INSURANCE COMPANY, | ) ) ) ) | |
| Defendant. | ) | |

## EAMES PLAINTIFFS' OPPOSITION TO NATIONWIDE'S MOTION FOR PROTECTIVE ORDER

Plaintiffs Thomas A. Eames, Roberta L. Eames and Tammy Eames (the "Eames plaintiffs") oppose Nationwide's attempt to impose secrecy where none is warranted, and oppose as well its abuse of the Stipulated Protective Order. Nationwide's motion should be denied because 1) it has violated paragraph 2 of the Stipulated Protective Order by blanketly designating every page of its recent production as confidential without regard to the nature, source or content of particular documents; 2) it has failed to make (or even attempt) the particularized showing required on such a motion; 3) it improperly seeks to shift its heavy procedural burden to the Eames plaintiffs and the SDM, apparently expecting them to sift through the production a page at a time to find potentially confidential documents on Nationwide's behalf; and 4) its blunderbuss designations would subject the Eames plaintiffs and their attorneys to hardship.

### INTRODUCTION

At a fundamental level, secrecy obligations are limitations on freedom and openness in a free and open society. Whether those limitations are justified in a particular case tends to be

128982

case-specific; but in consumer cases, secrecy's downside can be especially pronounced. This is because consumers are at a natural disadvantage in discovering and documenting corporate misconduct: the corporate actor knows where its skeletons are hidden, while consumers are forced to discover that information one claim at a time.

These concerns are deeply ingrained in the legal standards that govern this motion. As will be seen, they have produced a hierarchy of burden -- a procedural framework that demands an ever-increasing, almost overwhelming showing of the need for secrecy. See, e.g., Miller v. Indiana Hosp., 16 F.3d 549 (3d Cir. 1994) (noting the "heavy burden" imposed on those claiming secrecy). It a showing Nationwide has not even attempted.

## I. FACTUAL BACKGROUND

### A. The Stipulated Protective Order

The Court approved the parties' Stipulated Protective Order on September 26, 2005. It provides at paragraph 2 that "[a]ny party in this action may, *in good faith*, designate documents, materials, data or information disclosed, produced, or filed by that party . . . as CONFIDENTIAL MATERIAL." Stipulated Protective Order, D.I. 108 ¶2 (emphasis added) (Ex. A). But under paragraph 1, only documents that are genuinely confidential are properly eligible for designation as Confidential Material. Id. ¶1 (defining "Confidential Material" as "*confidential* commercial, financial, trade-secret and/or other proprietary business documents, materials, data or information") (emphasis added). The exercise of good faith under paragraph 2 is thus directed to the designating party's determination that a particular document is genuinely confidential.

Paragraph 12 of the Order permits any party to object in writing to its adversary's designation of documents as Confidential Material. Id. ¶12. Once an objection is raised, the

designating party must move to uphold its claim of secrecy. Id. Such motions turn on the movant's showing of good cause for continued secrecy. Id.

### B. The January 9 Production

During the week of January 9, 2005, Nationwide produced 344 pages of documents labeled NW000001-344. This constituted Nationwide's first production of any appreciable volume of paper in this case.

Seventy-two pages of the production consist of **REDACTED**. Ex. B. Elsewhere Nationwide has said that the content and format of **REDACTED** are dictated by Delaware's Insurance Commissioner.

Other documents from the January 2005 production consist of **REDACTED** attached as Exhibit C. Still others consist of **REDACTED**. See Ex. D. Yet Nationwide designated every single page of this production -- **REDACTED** -- as Confidential Material under the Stipulated Protective Order.

Nationwide's blunderbuss designations have practical and legal implications, some more onerous than others. As a threshold matter, the Eames plaintiffs and their attorneys must afford special treatment to the documents at peril of contempt of Court. They must, of course, maintain the documents' secrecy -- an absurd obligation when applied (as Nationwide would have it apply) to the public pronouncements of government bodies. Whenever the documents are referenced by or attached to Court filings, they must make those filings under seal, both electronically and conventionally. Further, they must affix a special legend on any documents so filed. And to the extent they have occasion to disclose any portion of the designated documents to retained experts, they must follow specified procedures in making the disclosure. See Stipulated Protective Order, D.I. 108 ¶¶6-9 (Ex. A).

Even the Court faces a burden by virtue of Nationwide's blunderbuss designations. Whenever any page of the designated documents finds its way into any Court filing (as is the case with this opposition, for example), the Court itself has a duty to maintain those documents under seal.

All these obligations involve some measure of burden, from the relatively minor (like the affixing of special legends) to the potentially major (involving limitations on the use of the documents and the consequences of prohibited disclosure). But the worst peril posed by Nationwide's designations comes not from the terms of the Stipulated Protective Order, nor from any prospect of judicial sanction, but from Nationwide itself.

### C. The SLAPP Suit

The firm of Murphy Spadaro & Landon serves as counsel to the Eames plaintiffs in this lawsuit. The same firm previously prosecuted against Nationwide the case of Phillips v. Nationwide Mut. Ins. Co., C.A. No. 97C-02-050VAB (Del. Super. Ct.). In 1999 the Phillips case was settled pursuant to a confidentiality agreement. Certification of John S. Spadaro ¶2 ("Spadaro Certification") (Ex. E). After Nationwide violated the Phillips confidentiality agreement by making certain protected facts public, Murphy Spadaro & Landon commenced an arbitration proceeding seeking a declaration that Nationwide's breach constituted a waiver. The arbitrator, Stephen W. Armstrong of the Montgomery, McCracken law firm in Philadelphia, ultimately found a partial waiver by virtue of Nationwide's breach. Id. ¶3.

A few months before that arbitration proceeding commenced, however, Murphy Spadaro & Landon filed another lawsuit against Nationwide, Crowhorn v. Nationwide Mut. Ins. Co., C.A. No. 00C-06-010WLW (Del. Super. Ct.). Like this case, Crowhorn was a PIP-related class action; and it would ultimately settle for $5 million. Id. ¶4. Apparently not content to litigate

128982                                                        4

fairly the issue of its waiver of confidentiality protections, Nationwide asserted a counterclaim in the Phillips-related arbitration alleging that Murphy Spadaro & Landon had committed its own breach of the Phillips agreement by framing the complaint in Crowhorn. Id. ¶5. Nationwide asserted its counterclaim against Murphy Spadaro & Landon partners John Spadaro and Roger Landon individually, even though neither was a party to the Phillips agreement; and it sought recovery from those attorneys and the law firm, on a joint-and-several basis, of $1.3 million. Id.

It took nine months to litigate Nationwide's $1.3 million counterclaim to conclusion. Id. ¶6. Throughout those nine months Murphy Spadaro & Landon, and Mr. Spadaro and Mr. Landon individually, essentially faced the prospect of financial ruin at Nationwide's hands. See Crowhorn v. Nationwide Mut. Ins. Co., 836 A.2d 558, 565 (Del. Super. Ct. 2003) (in approving Murphy Spadaro & Landon's fee, Superior Court notes that "[n]ot only did counsel risk losing this case and not recovering any amount of money, but they risked a seven-figure judgment against them, based on Nationwide's claim of confidentiality violations.") In May 2001 the arbitrator found that Murphy Spadaro & Landon committed no confidentiality violations whatever. Nationwide's counterclaim was thus defeated -- but not before Murphy Spadaro & Landon had incurred nearly $60,000 defending the counterclaim. Spadaro Certification ¶¶6-7 (Ex. E).

As shown below, Nationwide's motion fails under the prevailing legal standards, without regard to events surrounding the Phillips confidentiality agreement. But those events -- which essentially amount to a failed SLAPP suit by Nationwide against its adversary's lawyers -- should trouble anyone who values fundamental freedoms like equal access to the courts or the right to petition government for redress. At a minimum, they teach us that where Nationwide's

claims of confidentiality are concerned, the utmost care should be taken to avoid assisting any improper purpose (like future SLAPP suits).

## II. THE PREVAILING LEGAL STANDARDS

Limitations on public access to litigation records are never imposed automatically. Rather, two separate bodies of law are implicated; and each involves important policy considerations. The first is the common law right of public access to judicial proceedings and court records, recognized by the United States Supreme Court in Nixon v. Warner Communications, Inc., 435 U.S. 589, 597 (1978). The other is the First Amendment.

Under the common law right of public access, a "good cause" standard applies. Joint Stock Soc. v. UDV N. Am., Inc., 104 F. Supp.2d 390, 395 (D. Del. 2000). This requires the party claiming secrecy to make

> a "particularized showing of the need for continued secrecy" by specifically demonstrating that the disclosure of these materials would cause them to suffer a "clearly defined and serious injury."

Id. at 395 (quoting from special master's report and recommendations; other citations omitted). The Third Circuit has characterized this particularized showing as a "heavy burden." Miller v. Indiana Hosp., 16 F.3d 549, 551 (3d Cir. 1994). But blunderbuss confidentiality designations require an even greater showing: "A party who seeks to seal an entire record faces an even heavier burden." Id. The Third Circuit has thus required a process of "careful factfinding and balancing of competing interests" before "the strong presumption of openness can be overcome by the secrecy interests of private litigants." Leucadia, Inc. v. Applied Extrusion Technologies, Inc., 998 F.2d 157, 167 (3d Cir. 1993).

First Amendment considerations impose a more rigorous standard still. See Publicker Indus., Inc. v. Cohen, 733 F.2d 1059, 1073 (3d Cir. 1984). Under this standard, public access can

128982                                6

be restricted only on a showing of "'an overriding interest based on findings that [secrecy] is essential to preserve higher values and is narrowly tailored to serve that interest.'" Id. at 1073 (quoting United States v. Criden, 648 F.2d 814, 824 (3d Cir. 1981)).

Taken as a whole, these standards make clear that 1) courts should not treat a party's documents as presumptively confidential, 2) confidentiality should be recognized only on a detailed, compelling showing, and 3) where permitted, secrecy must be drawn as narrowly as possible. And more so is this true where the documents are of public interest. Republic of the Phillippines v. Westinghouse Elec. Corp., 949 F.2d 653, 664 (3d Cir. 1991) (access to records is important in civil cases that have a "public character").

### III. NATIONWIDE MAKES NO PARTICULARIZED SHOWING

Faced with the "heavy burden" of a "particularized showing" of the need for secrecy (to borrow from Miller and Joint Stock Society), Nationwide makes no showing at all, much less a particularized one. Its motion references no specific document, and none of the blanketly-designated documents are attached to the motion.[1] It offers no affidavit testimony on the nature and content of the documents. It identifies no "clearly defined" injury that might arise from disclosure, nor any explanation as to how that injury might occur. Its position essentially distills to two points: that the documents were once property of Nationwide, and that the Eames plaintiffs' objection "lacks specificity."

The irony in this last point should be obvious. The Stipulated Protective Order requires only that the challenging party communicate its objection in writing; at no point in the process,

---

[1] Nationwide says that it chose not to make any of the subject documents a part of the record on this motion "in order to maintain their 'Confidential' status." D.I. 145 at 3. But that makes no sense. The Stipulated Protective Order clearly provides for the filing of Confidential Material under seal; and such filings do nothing to waive or impair the confidentiality of the documents so filed. Stipulated Protective Order, D.I. 108 ¶6 (Ex. A).

128982

however, is that party under any procedural burden whatever (other than the implied requirement that the challenge be made in good faith). Once the objection is made, the designating party must move to preserve secrecy. The moment it does so, it assumes the "heavy burden" required under Miller for ordinary claims of secrecy, the "even heavier burden" that Miller imposes for blunderbuss designations, and the still heavier burden imposed under the First Amendment. See Miller, 16 F.3d at 551; Criden, 648 F.2d at 824.

Nationwide cannot possible satisfy these imposing legal standards with its *"Trust us, this stuff is secret"* line of argument. Nor can it properly offer the required (particularized) showing in its reply brief, since that showing is part and parcel of the motion itself. See D. Del. LR 7.1.3 (c)(2) ("The party filing the opening brief shall not reserve material for the reply brief which should have been included in a full and fair opening brief.")

Because Nationwide has not seriously attempted any particularized showing of the need for continued secrecy, it cannot possibly overcome the "strong presumption of openness" under the Third Circuit precedents. See Leucadia, 998 F.2d at 167. Its motion should be denied.

### IV. NATIONWIDE IDENTIFIES NO CLEARLY DEFINED AND SERIOUS INJURY

The heavy burden of a particularized showing under Miller, Joint Stock Society and the rest is directed to the need for secrecy on the one hand, and the presence of "clearly defined and serious injury" on the other. Joint Stock Soc., 104 F. Supp.2d at 395. But Nationwide identifies nothing of the sort. Instead, it points to a hypothetical prospect of vague, undefined injury with no specific link to any identified documents.

In fact, the following passage represents the totality of Nationwide's effort to show a clearly defined injury:

> It does not take great business savvy to realize that if a company
> can find out what another company is doing behind closed doors to
> generate or support a product or service in the market place (sic),
> then that same company can take that information to try to better
> its own business and undercut the other companies (sic).

D.I. 145 at 7. But nowhere does Nationwide identify a single document from among the 344 pages it designated as confidential -- or even a single passage from such a document -- that contains confidential information regarding its "generation" or "support" of any product or service. And what does this phrase mean anyway? After all, the Eames's own insurance policy reflects how Nationwide "generates" its insurance product, but no one could credibly claim that it merits secrecy (and Nationwide produced it without such protection). Further, the product that Nationwide sells is altogether in the public domain: it consists of form policy wordings in adhesion contracts, the terms of which are regulated by (and often drawn from) state statutes.

Similarly, Nationwide offers no explanation as to how any competitor might use even a single one of the 344 pages to "better its own business" or "undercut" Nationwide. All this is simply to be taken on faith.

Ultimately, Nationwide's motion cannot possibly prevail without turning the controlling legal standard on its head. Where the law requires a particularized showing, Nationwide offers a conclusory one. Where the law demands a showing of objective need for secrecy, Nationwide answers only with its own subjective *desire* for secrecy. Where the law requires proof of clearly defined and serious injury, Nationwide offers bald allegations of hypothetical, unspecified injury with no link to particular documents.

If Nationwide's motion is granted, then, the Third Circuit precedents will lose all meaning (along with this Court's decision in Joint Stock Society). To avoid that result, Nationwide's motion should be denied.

128982

9

## V. THE BURDEN IS NATIONWIDE'S

As noted above, Nationwide's motion argues at one point that the burden lies with the Eames plaintiffs to show with "specificity" why the subject documents should *not* be kept secret. D.I. 145 at 8. It elsewhere suggests that it "will produce these documents to the Court or Special Discovery Master for review and inspection . . . ." Id. at 3. But the burden lies not with the Court, the SDM or the plaintiffs, but with Nationwide.

Again, it is not for the challenging party to make a showing as to why litigation documents should *not* be secret. Rather, such documents are subject to a "strong presumption of openness," not easily "overcome by the secrecy interests of private litigants." Leucadia, 998 F.2d at 167. See also Miller, 16 F.3d at 551 (noting that the party claiming secrecy faces a "heavy" procedural burden). Nor is it the Court's task to sift through a litigant's document production page by page, attempting to search out the particularized showing that the litigant itself failed to offer. Indeed, Nationwide's motion is such a casual effort, and so completely lacking in the required showing, that one wonders why it bothered filing it at all. But none of this is the Court's problem.

## VI. NATIONWIDE HAS FAILED TO MAKE GOOD-FAITH DESIGNATIONS

Paragraph 2 of the Stipulated Protective Order permits a party to designate documents as Confidential Material only "in good faith." Stipulated Protective Order, D.I 108 ¶2 (Ex. A). Nationwide has clearly violated this provision: apparently not inclined to incur the time and effort that the confidentiality calculus would involve for each document produced, it simply stamped everything as confidential.

For example, there is obviously no good-faith basis for claiming secrecy with respect to the eighty or so pages of documents attached as Exhibits B and C -- **REDACTED**. To avoid any

...
...

repetition of this misconduct, we respectfully request that the SDM make clear that the good-faith requirement under paragraph 2 is not symbolic; and that its breach constitutes a violation of the Court's Order.

## CONCLUSION

For the reasons set forth above, the Eames plaintiffs respectfully request that Nationwide's motion be denied.

                                      Respectfully submitted,

                                      MURPHY SPADARO & LANDON

                                      /s/ John S. Spadaro
                                      John S. Spadaro, No. 3155
                                      1011 Centre Road, Suite 210
                                      Wilmington, DE 19805
                                      (302)472-8100

February 17, 2006                    Attorneys for the Eames plaintiffs

128982                                      11

IN THE UNITED STATES DISTRICT COURT
IN AND FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| THOMAS A. EAMES, ROBERTA L. EAMES and TAMMY EAMES, on behalf of themselves and all others similarly situated, )<br><br>Plaintiffs, )<br><br>v. )<br><br>NATIONWIDE MUTUAL INSURANCE COMPANY, )<br><br>Defendant. ) | C.A. No. 04-CV-1324KAJ |

## NOTICE OF SERVICE

I hereby certify that on this date, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF which will send notification of such filing(s) to the following:

Nicholas E. Skiles, Esq.
Swartz Campbell LLC
300 Delaware Avenue, Suite 1130
P.O. Box 330
Wilmington, DE 19899

                          MURPHY SPADARO & LANDON

                          /s/ John S. Spadaro
                          John S. Spadaro, No. 3155
                          1011 Centre Road, Suite 210
                          Wilmington, DE 19805
                          (302) 472-8100

                          Attorneys for plaintiffs
                          Thomas A. Eames, Roberta L. Eames and
February 17, 2006           Tammy Eames (on behalf of themselves and
                          all others similarly situated)

128834