# EXHIBIT A

00071306.DOC

```
 1                IN THE UNITED STATES DISTRICT COURT

 2              IN AND FOR THE DISTRICT OF DELAWARE

 3                            - - -

    THOMAS A. EAMES, on behalf of
 4  themselves and all others          :   CIVIL ACTION
    similarly situated; ROBERTA L.     :
 5  EAMES, on behalf of themselves     :
    and all others similarly           :
 6  situated; TAMMY EAMES, on behalf:
    of themselves and all others       :
 7  similarly situated;                :
                                       :
 8           Plaintiffs,                :
                                       :
 9       v                              :
                                       :
10  NATIONWIDE MUTUAL INSURANCE         :
    COMPANY,
11                                      :
             Defendant.                 NO. 04-1324 (KAJ)
12                           - - -

13                     Wilmington, Delaware
                Friday, August 5, 2005 at 10:00 a.m.
14                     TELEPHONE CONFERENCE

15                            - - -

16  BEFORE:       HONORABLE KENT A. JORDAN, U.S.D.C.J.

17                            - - -

    APPEARANCES:
18

19           MURPHY, SPADARO & LANDON
             BY:  JOHN S. SPADARO, ESQ.
20
                       Counsel for Plaintiffs
21

22           SWARTZ CAMPBELL, LLC
             BY:  NICHOLAS E. SKILES, ESQ.
23
                       and
24

25                                   Brian P. Gaffigan
                                     Registered Merit Reporter
```

1   this case; is that it?
2          MR. CHEYNEY:  Correct.  Communicated to the
3   plaintiff.  The plaintiff has to have a misrepresentation
4   made to him that he relies upon to his detriment.  It has
5   nothing to do with what I said to myself walking down the
6   hall in the office or at a board meeting.
7          THE COURT:  All right.  Good enough.  I got your
8   positions.  Now I have some rulings for you and I hope you
9   all are listening very carefully.
10         First, we'll deal with the briefing.  You've
11  given them the extension they want.  It isn't unreasonable.
12  And despite what you are telling me, Mr. Cheyney, this was
13  I think a pretty solid example of you saying, no, we're not
14  going to answer, unless you withdraw your discovery, we're
15  not giving you an extension.  It was a poor trade to offer.
16  But in any event, you're out of luck on that.  They've got
17  their extension.
18         On briefing, you guys come to a reasonable
19  agreement on that schedule.  And if you can't agree with it,
20  I'll just make it easy.
21         MR. CHEYNEY:  I agree.
22         THE COURT:  The proposal that was made is
23  sensible.  That's the briefing schedule.  Get it done.
24         Second, you may think you can't believe that I
25  would have you respond to discovery until your motion is

1   decided but you would be mistaken, Mr. Cheyney, because this
2   court does not operate on the principle that the filing of a
3   motion to dismiss stops discovery in a case. If that were
4   the principle upon which we operated, cases would grind to a
5   halt across the board because everybody thinks that their
6   case is one that is so important it ought to have the
7   dispositive motion decided right up front.
8            It's a little bit of an exaggeration, not
9   everyone but a very, very large percentage including people
10  just like you who think you know what? My case ought to be
11  heard on the merits of the pleadings right now because if
12  only you, judge, were in tune enough to see our point of
13  view, we wouldn't have the expense of discovery. It would
14  definitely be a better world if the press of work in the
15  courts across the country were such that every person who
16  wanted their issue heard first could have it heard first.
17           But that isn't the way it works. The way it
18  works is you file your motions if you think you have
19  something. If there is an extraordinary case where you
20  think it is so important that no other discovery can happen
21  while this is going on, then we take a look at that.
22           And in fact, in this case, merits discovery was
23  stayed and class certification discovery was allowed. And
24  the other side has made what I think is not an unreasonable
25  request for information associated with the claims in their

1  complaint.  You may not like it but that doesn't make it
2  "irrelevant."  It also doesn't make it outside the bounds of
3  proper discovery.
4       So what I'm telling you is if it comes down to
5  advocacy before me on those discovery dispute, you come up
6  way short, mister -- way, way, way short.  The record that
7  looks like has developed here that is presented to me is
8  basically one where you said I'll give you the document.
9  I'll give you the contract.  Otherwise, you can drop dead
10 until my 12(b) of is decided.  That is sort of the gist of
11 the feeling or the communications that seem to be going back
12 and forth.  And I'm just trying to disabuse you of this in
13 the most direct, clear, emphatic way I possibly can.  I will
14 not tolerate that.
15      If you've got an issue with discovery, your
16 obligation is to sit down and discuss it with the other
17 side.  And if Mr. Spadaro is off-putting, he is off-putting,
18 but get past it.  And if you need to collect a batch of
19 letters and a history of anecdotes about how Mr. Spadaro is
20 over the top so he can come to me and say he is abusing the
21 process, do it and I'll hear you.  But I can tell you now,
22 both sides, if I have to spend an hour with you sorting out
23 who is more obnoxious which is what at least half this call
24 was about:  "He is bad, he is mean, he is nasty, he hit
25 first," I'm going to end up leveling sanctions at you