## IN THE UNITED STATES DISTRICT COURT
## IN AND FOR THE DISTRICT OF DELAWARE

THOMAS A. EAMES, ROBERTA L. EAMES    )
and TAMMY EAMES, on behalf of    )
themselves and all others    )
similarly situated,    )
    )
                 Plaintiffs,    )    C.A. No. 04-CV-1324KAJ
    )
v.    )
    )
NATIONWIDE MUTUAL INSURANCE    )
COMPANY,    )
    )
                 Defendant.    )

## EAMES PLAINTIFFS' ANSWERING BRIEF IN OPPOSITION TO
## NATIONWIDE'S MOTION TO DISMISS THE AMENDED COMPLAINT

MURPHY SPADARO & LANDON
John S. Spadaro, No. 3155
1011 Centre Road, Suite 210
Wilmington, DE 19805
(302)472-8100

Attorneys for plaintiffs Thomas A. Eames,
Roberta L. Eames and Tammy Eames
(on behalf of themselves and all others
similarly situated)

March 2, 2006

## TABLE OF CONTENTS

NATURE AND STAGE OF THE PROCEEDING........................................................................1

SUMMARY OF ARGUMENT ................................................................................................3

STATEMENT OF FACTS ......................................................................................................7

ARGUMENT.........................................................................................................................8

I. THE EAMES PLAINTIFFS HAVE PLED
CONSUMER FRAUD WITH PARTICULARITY..................................................................8

   A. The Applicable Legal Standard.....................................................................................8

   B. Paragraphs 13(a), (f) and (g) Are Not Pled on Information and Belief ............................12

   C. Paragraphs 13(e) is Not Pled on Information and Belief ...................................................14

   D. Only a Single (Nonessential) Fact Was Alleged on Information and Belief.....................16

II. THE COURT SHOULD RECONSIDER ITS ADOPTION OF CROWHORN ......................18

III. THE COMPLAINT'S ALLEGATIONS OF HARM
HAVE ALREADY BEEN UPHELD ....................................................................................21

IV. THE STATUTE OF LIMITATIONS HAS NOT RUN ........................................................22

V. CONSUMER FRAUD IS THE PREDICATE TO CIVIL CONSPIRACY ............................24

VI. NO PRIVITY IS REQUIRED .............................................................................................25

VII. NATIONWIDE IS PRECLUDED FROM MOVING UNDER RULE 12
ON ITS "LIMITATIONS" AND "PRIVITY" ARGUMENTS ..............................................26

CONCLUSION......................................................................................................................28

# TABLE OF AUTHORITIES

**Cases**                                                                                                 **Page**

Barr Co. v. Safeco Ins. Co. of Amer., 583 F. Supp. 248 (N.D. Ill. 1984),
modified on other grounds, 706 F. Supp. 616 (N.D. Ill. 1989)......................................................23

Bradley v. Alpine Constr. Co., 586 N.E.2d 653 (Ill. App. Ct. 1991) ...........................................24

In re Catanella and E.F. Hutton & Co., Inc. Sec. Litig., 583 F. Supp. 1388 (E.D. Pa. 1984)........25

Chicago Board Options Exchange, Inc. v. Connecticut General Life Ins. Co.,
713 F.2d 254 (7th Cir. 1983) ........................................................................................................23

Christidis v. First Pennsylvania Mortgage Trust, 717 F.2d 96 (3d Cir. 1983) ............................... 9

Colburn v. Upper Darby Township, 838 F.2d 663 (3d Cir. 1988), cert. denied,
489 U.S. 1065 (1989)....................................................................................................................17

Crowhorn v. Nationwide Mut. Ins. Co., C.A. No. 00C-06-010WLW, 2002
WL 1767529 (Del. Super. Ct. July 10, 2002) ......................................................................... passim

CSFB Holt LLC v. Collins Stewart Ltd., C.A. No. 02-CIV-3069LBS,
2004 WL 1794499 (S.D.N.Y. Aug. 10, 2004)...............................................................................23

Enzo Life Sciences, Inc. v. Digene Corp., 295 F. Supp.2d 424 (D. Del. 2003) ......................17, 24

Faulkner v. Verizon Communications, Inc., 156 F. Supp.2d 384 (S.D.N.Y. 2001) .......... 4-5, 9, 10

First Capital Asset Mgmt., Inc. v. Satinwood, Inc., 385 F.3d 159 (2d Cir. 2004).................4, 9, 10

Gredell v. Wyeth Labs., Inc., 803 N.E.2d 541 (Ill. App. Ct. 2004)........................................ 23-24

Impex Shrimp & Fish Co. v. Aetna Cas. & Sur. Co., 686 F. Supp. 183 (N.D. Ill. 1985)............. 25

Kociemba v. G.D. Searle & Co., 680 F. Supp. 1293 (D. Minn. 1988)......................................... 25

Montalvo v. Tower Life Building, 426 F.2d 1135 (5th Cir. 1970)..........................................14, 15

In re Mutual Life Ins. Co. of New York Premium Litig., 295 F. Supp.2d 140
(D. Mass. 2003).............................................................................................................................23

Neveroski v. Blair, 358 A.2d 473 (N.J. Super. Ct. 1976).............................................................25

Sachetta v. Bellevue Four, Inc., C.A. No. 97C-07-042WTQ, 1999
WL 463712 (Del. Super. Ct. June 9, 1999) ........................................................................... 18, 25

Seville Indus. Machinery Corp. v. Southmost Machinery Corp., 742 F.2d 786
(3d Cir. 1984), cert. denied., 469 U.S. 1211 (1985) ............................................................... *passim*

Sotelo v. DirectRevenue, LLC, 384 F. Supp.2d 1219 (N.D. Ill. 2005) ......................................... 21

State v. Publishers Clearing House, 787 A.2d 111 (Del. Ch. 2001) .................................... 2, 19-21

Stephenson v. Capano Dev., Inc., 462 A.2d 1069 (Del. 1983)........................................................19

Strohmaier v. Yemm Chevrolet, 211 F. Supp.2d 1036 (N.D. Ill. 2001)........................................21

Sunset Fin. Resources, Inc. v. Redevelopment Group V, LLC,
___ F. Supp.2d ___, 2006 WL 456483 (D.N.J. 2006) ...................................................................11

Swierkiewicz v. Sorema N.A., 534 U.S. 506 (2002) .....................................................................24

Tandy v. Marti, 213 F. Supp.2d 935 (S.D. Ill. 2002).....................................................................18

Zinser v. Rose, 614 N.E.2d 1259 (Ill. App. Ct. 1993) ...................................................................21

## Other Authorities

5C CHARLES ALAN WRIGHT AND ARTHUR R. MILLER, FEDERAL PRACTICE AND
PROCEDURE (3d ed. 2004) .............................................................................................................26

6 Del. C. §2512 .................................................................................................................................14

6 Del. C. §2513 .........................................................................................................................1, 14, 26

6 Del. C. §2535 .................................................................................................................................21

21 Del. C. §2118 ..................................................................................................................................1

## NATURE AND STAGE OF THE PROCEEDING

This proposed class action was commenced in the Superior Court of the State of Delaware in and for Sussex County on August 20, 2004. It seeks certification of a proposed class and subclass with respect to the defendant Nationwide's misrepresentations of policy limits for Personal Injury Protection (or "PIP") coverage under 21 Del. C. §2118. Specifically, the proposed class representatives contend that Nationwide has represented to thousands to Delaware insureds that they enjoy "full" limits of liability for PIP coverage, when in fact Nationwide contends or will contend that they are entitled to just the minimum PIP limits required by statute.

On October 4, 2004 Nationwide removed the case to this Court. Thereafter, on October 6, 2004, it moved to dismiss the complaint. Nationwide filed a corrected version of the latter motion on the following day, October 7, 2004.

Resolution of Nationwide's motion to dismiss was deferred pending the outcome of the Eames plaintiffs' motion to remand. On February 2, 2006, the Court issued its Memorandum Opinion with respect to the motion to dismiss, dismissing Counts I through III with prejudice. The Court also dismissed Counts IV and V -- pleading violations of Delaware's Consumer Fraud Act (6 Del. C. §2513) and civil conspiracy -- without prejudice; and it expressly granted leave to the Eames plaintiffs to amend those counts. Memorandum Opinion at 9-13 (Ex. A). The purpose of the amendments was to allow the Eames plaintiffs to plead violations of the Consumer Fraud Act with particularity. Id. at 11.

The Court imposed this heightened pleading standard, it appears, based on Nationwide's citation of the one-sentence analysis in Crowhorn v. Nationwide Mut. Ins. Co., C.A. No. 00C-06-010WLW, 2002 WL 1767529 (Del. Super. Ct. July 10, 2002), an unreported decision.

1

Nationwide did not bring to the Court's attention the detailed and scholarly analysis in <u>State v. Publishers Clearing House</u>, 787 A.2d 111 (Del. Ch. 2001), a reported decision of the Delaware Court of Chancery holding that no heightened pleading standard applies to claims under the Consumer Fraud Act. <u>Publishers Clearing House</u>, 787 A.2d at 114-17. Nor did the Court consider cases rejecting the heightened pleading standard under Illinois' identical consumer fraud statute.

On February 10, 2006, the Eames plaintiffs filed and served their Amended Class Action Complaint. Ex. B. The amended complaint expressly identifies the entity that made the offending representations on Nationwide's behalf. It alleges in detail the content of the offending representations, attaching the written representations as exhibits. It specifies the time and place at which the representations were made, and identifies the persons to whom they were made.

Nationwide now moves to dismiss the amended complaint, raising some arguments that arise from the amended pleading, and others that were available at the time of its original 12(b)(6) motion. Though it is error to impose a heightened pleading standard on the Eames plaintiffs' consumer fraud claim, we show below that the amended complaint easily meets that standard. We also show that Nationwide's remaining arguments, including its attempt to graft a privity requirement onto the Consumer Fraud Act, are wrong.

This is the Eames plaintiffs' answering brief to Nationwide's latest motion to dismiss.

## SUMMARY OF ARGUMENT

1. Paragraphs 13(a), (f) and (g) of the amended complaint allege that in March 1994 Nationwide, acting through the Culver Insurance Agency of Seaford, Delaware, sold auto insurance to Mr. and Mrs. Eames. The same paragraphs allege that on or about March 14, 1994, and in connection with that sale, the Culver agency (acting for Nationwide) represented that the policy would provide "full" limits of liability for PIP coverage. They further allege that in June 2003, after a PIP claim arose, Nationwide advised Mr. and Mrs. Eames by letter (a copy of which is attached to the amended complaint) that it would treat PIP limits as exhausted based on its payment of the statutory *minimum* limits.[1]

These paragraphs were *not* alleged on information and belief. They identify the *who*, *what, when* and *where* of the Eames plaintiffs' consumer fraud claim. Under the flexible standards adopted by the Third Circuit in Seville Indus. Machinery Corp. v. Southmost Machinery Corp., 742 F.2d 786 (3d Cir. 1984), cert. denied., 469 U.S. 1211 (1985), these paragraphs (without more) satisfy any requirement of particularized pleading. In particular, Seville Indus. Machinery holds that allegations of date, place and time (which these paragraphs include) meet the Rule 9(b) standard. Id., 742 F.2d at 791.

2. Paragraph 13(e) of the amended complaint specifically alleges (with reference to attached documentary exhibits) that the Culver agency repeated the offending representations on February 8, 2003 and June 17, 2003; and that those representations were made (on Nationwide's behalf) in connection with the sale of the subject insurance. The amended complaint even goes

---

[1] Nationwide apparently expects the Court to hold that its June 2003 letter was not a communication with Mr. and Mr. Eames because Nationwide sent it to the Eames's attorney, and not to Mr. and Mrs. Eames themselves. This is the caliber of argument Nationwide offers on this motion.

so far as to cite case law establishing that these 2003 representations meet the Consumer Fraud Act's requirement of "connectedness" to the sale. Like paragraphs 13(a), (f) and (g), this highly detailed paragraph was *not* pled on information and belief. Standing alone, it is sufficient to sustain the Eames plaintiffs' consumer fraud claim as a matter of pleading.

3. Nationwide wrongly assumes that the reference to "information and belief" within paragraphs 13(b) and (c) serves to qualify every allegation in those paragraphs. In fact, the only allegation made on information and belief relates to Mr. Eames. That is, we know that the offending document was shown to, and the offending representation made to, Mrs. Eames. Those representations may *also* have been made to Mr. Eames, though this is less clear. The allegation that the same representations may *also* have been made to Mr. Eames does nothing to dilute the specificity of the (definite) allegations with respect to Mrs. Eames.

4. Even if *all* the amended complaint's detailed allegations were couched in terms of information and belief (which is far from the case), they would still satisfy the particularity requirement under Rule 9(b) by virtue of their copious detail. Indeed, the Third Circuit has warned against a "too narrow" approach to the particularity requirement, urging instead that allegations be read with an eye toward the "general simplicity and flexibility" contemplated by modern forms of pleading. Seville Indus. Machinery, 742 F.2d at 791. There is thus no blanket prohibition on the pleading of fraud claims on information and belief (though to be sure, the consumer fraud claim is not a fraud claim at all). Further, Seville Indus. Machinery holds that allegations of date, place and time fulfill the particularity requirements of Rule 9(b). Id. That holding is dispositive, because the amended complaint clearly alleges date, place, time and more.

5. Nationwide cites two cases -- First Capital Asset Mgmt., Inc. v. Satinwood, Inc., 385 F.3d 159 (2d Cir. 2004), and Faulkner v. Verizon Communications, Inc., 156 F. Supp.2d 384

(S.D.N.Y. 2001) -- for the proposition that a party claiming fraud can never plead on information and belief unless the facts are peculiarly within the opposing party's knowledge. Neither case so holds. If they did, of course, their holdings would have to yield to the Third Circuit's controlling standard in Seville Indus. Machinery.

6. Nationwide's claim that the amended complaint fails to allege legally cognizable harm is frivolous. In its February 2, 2006 Memorandum Opinion, the Court expressly found that the original complaint sufficiently pled harm; and the amended complaint repeats those allegations. To make matters worse, Nationwide points to an excerpt from the Memorandum Opinion in which the Court paraphrased *Nationwide's* position on the "harm" issue, and presents that excerpt on this motion as though it were the Court's holding.

7. Nationwide's limitations defense is equally wrong. No cause of action accrued in 1994 simply because Nationwide characterized PIP limits as "full" at that time. That is, there is nothing actionable about such a representation unless and until it turns out to be false. It was thus not until a PIP claim arose that Nationwide betrayed its representation by asserting, for the first time in its relationship with Mr. and Mrs. Eames, that "full PIP" meant "minimum PIP." The three-year statute thus began to run only in June 2003, with Nationwide's letter to the Eames's attorney. If, instead of sending that letter, Nationwide had simply provided full PIP limits as promised, no action would have ever arisen.

8. Abundant case law holds that under Illinois' identical consumer fraud statute, the cause of action accrues only when the plaintiff discovers the offending representation to be false (and not when the representation is first made).

9. Because the Eames plaintiffs have successfully pled consumer fraud (even under a heightened pleading standard), that claim can and does serve as a predicate to their civil

conspiracy claim. Though Nationwide complains of a lack of specificity in the allegations of civil conspiracy, the Court has already confirmed that such claims are not subject to any heightened standard of pleading. The Court has also previously held that the Eames plaintiffs pled all necessary elements of civil conspiracy in the original complaint; and since the amended complaint repeats those allegations, there is no basis for relitigating the issue.

10. Nationwide asserts that Tammy Eames cannot pursue a consumer fraud claim because she lacks privity with Nationwide. An overwhelming body of case law confirms that the private right of action under the Consumer Fraud Act does not require privity. Rather, Nationwide can be liable to any consumer in the stream of commerce who suffers injury from its misrepresentations, provided that Nationwide intended that others would rely on them.

11. Nationwide's "statute of limitations" and "privity" arguments, though wrong, were available to it in connection with the original complaint. By not raising those arguments in its first 12(b)(6) motion, Nationwide waived any opportunity to raise them under Rule 12.

## STATEMENT OF FACTS

The relevant facts were set forth at length in the Eames plaintiffs' answering brief to Nationwide's original motion to dismiss. See D.I. 89 at 5-15. The Eames plaintiffs respectfully incorporate that statement by reference here; and for the Court's convenience, a copy of that prior brief is attached as Exhibit C. The Eames plaintiffs also rely on the factual background set forth in the Court's February 2, 2006 Memorandum Opinion (Ex. A). Those salient facts are no doubt familiar to the Court, particularly in light of the extensive motion practice surrounding Nationwide's discovery responses.

## ARGUMENT

### I. THE EAMES PLAINTIFFS HAVE PLED
### CONSUMER FRAUD WITH PARTICULARITY

Throughout its motion Nationwide treats the particularity requirement under Rule 9(b) as though it were some unattainable ideal of absolute specificity -- a thing dreamt of, but rarely achieved in practice. Never mind that the Court's Memorandum Opinion confirmed that allegations of date, place and time are not strictly necessary. Memorandum Opinion at 11 (Ex. A). Never mind that the amended complaint actually *does* allege date, place and time; or that such allegations satisfy Rule 9(b) as a matter of law. Seville Indus. Machinery, 742 F.2d at 791. Under Nationwide's view of the rules of pleading, no allegation can ever be particular enough.

But Nationwide's view is not the law. To the contrary, the Third Circuit has warned against a "too narrow" approach to Rule 9(b)'s particularity requirement, and encouraged instead a flexible approach -- one that better reflects the modern rules of pleading that govern all civil complaints. Under this flexible regime, the question is not whether a fact is alleged on information and belief, but whether the totality of the pleading serves the purposes of particularity: placing the defendant on notice of the precise misconduct with which it is charged, and safeguarding against spurious charges of fraud. The amended complaint meets this test easily.

### A. The Applicable Legal Standard

In Seville Indus. Machinery Corp. v. Southmost Machinery Corp., 742 F.2d 786 (3d Cir. 1984), cert. denied, 469 U.S. 1211 (1985), the Third Circuit addressed a district court's dismissal of a fraud count for lack of particularity. Its analysis bears quoting at length:

> We approach this question mindful of our recent admonition that in
> applying Rule 9(b), "focusing exclusively on its 'particularity'
> language is too narrow an approach and fails to take account of the

> general simplicity and flexibility contemplated by the rules.'" We
> conclude that the district court subjected Seville's allegations of
> fraud to too strict a scrutiny. Rule 9(b) requires plaintiffs to plead
> with particularity the "circumstances" of the alleged fraud in order
> to place the defendants on notice of the precise misconduct with
> which they are charged, and to safeguard defendants against
> spurious charges of immoral and fraudulent behavior. It is
> certainly true that allegations of "date, place or time" fulfill these
> functions, but nothing in the rule requires them. *** The
> complaint [here] sets forth the nature of the alleged
> misrepresentations, and while it does not describe the precise
> words used, each allegation of fraud adequately describes the
> nature and subject of the alleged misrepresentation.

Seville Indus., 742 F.2d at 791 (quoting Christidis v. First Pennsylvania Mortgage Trust, 717

F.2d 96, 100 (3d Cir. 1983)).

The Seville analysis is obviously controlling on this motion, and it was quoted by the

Court in its February 2, 2006 Memorandum Opinion. Yet the intellectual flavor of Seville is

altogether missing from Nationwide's motion. Within the pages of that motion, the reader will

find no warning against any "too narrow approach" to the particularity requirement; no reference

to avoiding "too strict a scrutiny" of fraud allegations; and certainly no mention of the

"simplicity and flexibility contemplated by the rules." Nor does Nationwide explain why the

Third Circuit's unqualified blessing of allegations of date, place and time (all of which appear in

the amended complaint here) should not apply to the Eames plaintiffs' allegations.

Instead, Nationwide cites two cases -- First Capital Asset Management, Inc. v.

Satinwood, Inc., 385 F.3d 159 (2d Cir. 2004), and Faulkner v. Verizon Communications, Inc.,

156 F. Supp.2d 384 (S.D.N.Y. 2001) -- for the proposition that a party claiming fraud can never

plead on information and belief unless the facts are peculiarly within the opposing party's

knowledge.

There are several problems with that proposition. First and foremost, it is rigid, inflexible, and (not surprisingly) directly at odds with <u>Seville Indus. Machinery</u>. Again, <u>Seville</u> requires only that the defendant be fairly apprised of the misconduct with which it is charged. It adopts a flexible approach to the Rule 9(b) issue, and expressly holds that allegations of date, place and time (all of which appear in the amended complaint) are sufficient. It eschews any too-narrow reading of the allegations.

Second, the cases that Nationwide cites for its general prohibition on the use of "information and belief" say nothing of the kind. <u>First Capital</u> does ***not*** hold that the only matters that can properly be pled on information and belief are those peculiarly within the defendant's knowledge; it holds, rather, that such matters ***may be*** pled on information and belief -- a far different proposition that allows for the possibility that other matters may also be so pled:

> Although it is true that matters peculiarly within a defendant's knowledge may be pled "on information and belief," this does not mean that those matters may be pled lacking any detail at all.

<u>First Capital</u>, 185 F.3d at 179.[2]  <u>First Capital</u> thus stands for the (unextraordinary) proposition that allegations on information and belief can pass muster depending on their level of specificity. And cf. <u>Faulkner</u>, 156 F. Supp.2d at 393 (permitting the pleading of fraud on information and belief where complaint offers specific facts).

Third, and consistent with <u>Seville</u>, district courts in this circuit reject any blanket prohibition on the pleading of fraud claims on information and belief:

---

[2] Nationwide can perhaps be excused for misunderstanding the Second Circuit's holding in <u>First Capital</u>. This is because <u>First Capital</u> is one of those rare cases in which the West Reporter keynotes say one thing, while the decision itself says another. Though the keynotes accompanying the <u>First Capital</u> decision do not faithfully distill the holding, they do appear to state the proposition for which Nationwide cites the case. Still, it is the Second Circuit's decision, and not the reporter's keynote, that controls.

> At oral argument, counsel for the [defendants] argued that
> Defendants' fraud claims made "upon information and belief" do
> not satisfy the heightened pleading requirement of Rule 9(b).
>
> ***
>
> The Court disagrees with the legal conclusions of the [defendants].
>
> ***
>
> [T]he Court's obligations to read the Federal Rules of Civil
> Procedure together as a cohesive unit, suggests to this Court that a
> ***blanket prohibition on pleading fraud claims "upon information
> and belief" is inappropriate.*** The heightened pleading
> requirement under Rule 9(b) is intended to "safeguard defendants
> against spurious charges of immoral and fraudulent behavior." ***
> Thus, "focusing exclusively on [Rule9(b)'s] 'particularity' language
> 'is too narrow an approach and fails to take account of the general
> simplicity and flexibility contemplated'" by the Federal Rules of
> Civil Procedure.

Sunset Fin. Resources, Inc. v. Redevelopment Group V, LLC, ___ F. Supp.2d ___,

2006 WL 456483, slip op. at *9 (D.N.J. 2006) (quoting Seville Indus. Machinery) (emphasis

added) (Ex. D). Thus, where allegations of fraud are presented on information and belief, the

issue is whether and to what extent the complaint elaborates on them. Sunset Fin., 2006 WL

456483 at *9.

As shown below, Nationwide's criticisms of the Eames plaintiffs' allegations are

irrelevant: other allegations in the amended complaint are not pled on information and belief, and

these provide more than enough particularity to meet the Seville standard. But the "information

and belief" debate is a red herring in any event: the real issue under Rule 9(b) is whether the

allegations place Nationwide on notice of the precise misconduct with which it is charged, and

safeguard Nationwide against spurious charges. Seville holds that those purposes are served

whenever (as here) allegations of date, place and time are made. The Eames plaintiffs'

allegations of consumer fraud thus meet (and exceed) the <u>Seville</u> standard, and Nationwide's motion should be denied.

### B.  Paragraphs 13(a), (f) and (g) Are Not Pled on Information and Belief

In compliance with the Memorandum Opinion, the Eames plaintiffs included in the amended complaint their detailed allegations of date, place and time (and more). These allegations appear as new subparts to paragraph 13 of the complaint. These subparts refer in turn to specific documents -- documents generated by Nationwide's insurance agents -- which are themselves attached to the amended complaint as exhibits.

Paragraph 13(a) is *not* alleged on information and belief. It expressly sets forth allegations of date, place and time, and adds to this litany the precise identity of the entity that made the representations on Nationwide's behalf:

> a. In approximately March 1994 Nationwide, acting through its agent Culver Insurance Agency of Seaford, Delaware (now known as Muncie Insurance and Financial Services, Inc.), sold the subject policy to Mr. and Mrs. Eames. On or about March 14, 1994, and in connection with that sale, the Culver agency (acting for Nationwide) represented that the policy would provide "full" limits of liability for PIP coverage.

Ex. E (D.I. 158) ¶13(a). Similarly, paragraphs 13(f) and (g) are *not* pled on information and belief. These paragraphs allege in detail that, after purporting to sell a policy with full PIP limits, Nationwide refused to pay those limits:

> f. On or about June 13, 2003 (and in the aftermath of the February 7, 2003 collision) Nationwide advised Mr. Eames by letter that he had "exhausted his/her benefits under the PIP/NO FAULT portion of this insurance policy" (meaning the policy issued by Nationwide to Mr. and Mrs. Eames). A copy of this letter is attached as Exhibit D.
>
> g. Despite its repeated representations to the contrary, Nationwide contends that Mr. and Mrs. Eames's policy provides only the

> minimum statutory PIP limits (of $15,000 per person and $30,000 per accident).

Id. ¶¶13(f) and (g). Standing alone, these allegations offer more than enough particularity to place Nationwide on notice of the precise misconduct with which it is charged. Through them, Nationwide knows that the Eames plaintiffs allege:

- That the Culver agency made the offending representations on Nationwide's behalf.

- That the Culver agency made those representations to Mr. and Mrs. Eames.

- That the Culver agency made the representations in Seaford, Delaware.

- That the Culver agency made the representations on or about March 14, 1994.

- That the offending representations consist of the promise of full PIP limits, coupled with Nationwide's later insistence that only the statutory minimum limits need be paid.

- That Nationwide disavowed its promise of full PIP limits by letter to Mr. and Mrs. Eames's attorney dated June 13, 2003, contending that PIP had been exhausted through payment of just the minimum limits.

- That the June 13, 2003 letter by which Nationwide disavowed its promise of PIP limits was written by Lisa-Jo Pepper of Nationwide's claims department.[3]

Thus, without even considering the still greater detail provided elsewhere in the amended complaint (including within paragraphs 13(b) through (e)), we see that paragraphs 13(a), (f) and (g) provide Nationwide with highly precise detail on the challenged conduct. Importantly, these paragraphs allege date, place and time, thereby satisfying Rule 9(b) as a matter of law. Seville Indus. Machinery, 742 F.2d at 791. To require more than this at the pleading stage is to turn the complaint into an opening statement at trial. And again, none of these paragraphs were pled on

---

[3] This last point is made known to Nationwide by virtue of the Eames plaintiffs' having attached a copy of Ms. Pepper's June 13, 2003 letter to the amended complaint.

information and belief.

## C. Paragraph 13(e) is Not Pled on Information and Belief

Nationwide does not dispute that, consistent with the Consumer Fraud Act's plain language, an insurer may be liable under the statute for any misrepresentation made "in connection with the sale" of the insurance. 6 Del. C. §2513. This concept of "connectedness" to the sale is a broad one on its face; but it is broader still when the statute is read as a whole.

To begin, the express purpose of the Act is to "protect consumers . . . from unfair or deceptive . . . practices in the conduct of any trade or commerce in part or wholly within this State." 6 Del. C. §2512. The words "any trade or commerce" could not possibly be broader. Moreover, section 2512 expressly states "the intent of the General Assembly that such practices be swiftly stopped and that this subchapter shall be *liberally construed* and applied to promote its underlying purposes and policies." Id. (emphasis added). Thus, the determination of whether a representation is in some way connected to the sale of insurance can only be made with an eye toward the liberal application of the statute's terms, and the swift eradication of deceptive business practices. This is no narrow, crabbed exercise, but a broad and sweeping one.

The question thus arises as to whether representations made by the insurer after the premium is paid and the policy issued can be "connected to" the sale of insurance within the Act's terms. The Fifth Circuit's decision in Montalvo v. Tower Life Building, 426 F.2d 1135 (5th Cir. 1970) answers this question. In Montalvo, the issue was whether an insurer's receipt of a renewal premium (as opposed to the premium used to initially purchase the policy) constituted a sale within the meaning of the Fair Labor Standards Act. The insurer argued that renewal premiums should not be considered sales of insurance because "a life or health and accident insurance policy is a

single contract subject to a single sale which takes place at the time that the first premium is paid

and the policy issued." Montalvo, 426 F.2d at 1141.  The Fifth Circuit disagreed:

> This argument is totally devoid of merit.  It involves a
> hypertechnical approach to the buying and selling of insurance
> protection which is totally unwarranted by economic reality.
> When a purchaser of insurance protection pays a premium to his
> insurer, he is not merely paying for the piece of paper on which the
> insurance contract is printed.  Instead, he is purchasing insurance
> protection for a specified period of time.
>
> * * *
>
> Suffice it to say the defendants' "one-shot" view of the "sale" of
> insurance protection is totally divorced from reality.

Montalvo, 426 F.2d at 1141 n.7, 1142.  Insurance, in other words, is not a pair of shoes, or a

refrigerator, or a car.  The thing sold is a continuing service over time, lasting and intangible.  If

an insurer's representation goes to the very heart of the thing sold, it must obviously be

*connected to* the transaction that constitutes the sale.

Suppose, then, that a life insurer sold a term life policy with a five-year term, only to

advise the insured in year three that it was unilaterally reducing the policy limit from $1 million

to $500,000.  The insurer would clearly have engaged in an unfair and deceptive practice

*connected to* the sale of its life insurance product -- regardless of the fact that it lowered the

boom on the insured three years after the policy was issued.

These observations are by way of introduction to paragraph 13(e) of the complaint.  Like

paragraphs 13(a), (f) and (g), paragraph 13(e) is *not* pled on information and belief.  It reads as

follows:

> e. The nature of insurance is such that representations may be
> deemed to have been made in connection with the insurance's sale
> even after (and long after) the payment of an initial premium or the
> initial issuance of policy-related documents.  Representatives of
> the Culver agency have made such representations to Mr. and Mrs.

> Eames (on Nationwide's behalf) subsequent to March 1994. These
> representations are reflected, in whole or part, by the document
> attached as Exhibit B (dated February 8, 2003, and in which the
> Culver agency represented "PIP" as "FULL"); and by the separate
> document attached as Exhibit C (issued on or about June 17, 2003,
> and in which the Culver agency represented "PERSONAL
> INJURY PROTECTION" as "FULL.")

Ex. B ¶13(e) (footnote omitted).

The complaint thus alleges in detail that Nationwide engaged in its deceptive characterization of PIP limits as "full" through documents shared by the Culver agency with Mr. and Mrs. Eames on February 8, 2003 and June 17, 2003. These detailed allegations, accompanied by the offending documents themselves, specify date, place, time and other details, and thus satisfy the particularity requirement as a matter of law. Seville Indus Machinery., 742 F.2d at 791 (allegations of date, place and time fulfill the underlying purposes of Rule 9(b)'s particularity requirement).

Equally important, the representations identified by paragraph 13(e) are very much **connected to** Nationwide's sale of insurance to the Eameses. Again, a deception as to the dollar amount of insurance provided by the policy -- the precise conduct alleged here -- goes to the very heart of the thing sold. An insurance policy that offers less financial protection than promised is simply not one worth buying; and a sale of insurance accompanied by trickery (regardless of when the trick may be revealed) is a tainted transaction.

In short, the allegations of paragraph 13(e) are not pled on information and belief. They meet both the Consumer Fraud Act's requirement of "connection to" the sale of insurance, and the particularity requirement under Rule 9(b).

## D. Only a Single (Nonessential) Fact Was Alleged on Information and Belief

On a Rule 12(b)(6) motion, a plaintiff is entitled to "any reasonable reading of the

pleadings" that may conceivably sustain his complaint. Enzo Life Sciences, Inc. v. Digene

Corp., 295 F. Supp.2d 424, 427 (D. Del. 2003) (quoting Colburn v. Upper Darby Township, 838

F.2d 663, 665-66 (3d Cir. 1988), cert. denied, 489 U.S. 1065 (1989)). On the issue of

"information and belief", Nationwide violates this principle by straining to find the *least* specific

(*i.e.*, the most general) reading of paragraphs 13(b) and (c).

Those paragraphs allege as follows:

> b. On information and belief, the document attached as Exhibit A
> (or one or more documents substantially identical to it) was shown
> to Mr. and Mrs. Eames, or both, by a representative of the Culver
> agency, and at the time the policy was purchased in March 1994.

> c. On information and belief, one or more representatives of the
> Culver agency represented orally to Mr. or Mrs. Eames (or both)
> that the subject policy would provide "full" limits of liability for
> PIP coverage. These representations were made on behalf of
> Nationwide, and at the time the policy was sold to Mr. and Mrs.
> Eames in or about March 1994.

Ex. B ¶¶13(b) and (c).

Nationwide wrongly assumes that the reference to "information and belief" within these

paragraphs serves to qualify every allegation that follows. In fact, the only allegation made on

information and belief relates to *Mr. Eames* (not Mrs. Eames). That is, we know that the

offending representations were made to Mrs. Eames. The same representations may *also* have

been made to Mr. Eames, though this is less clear. The allegation that the same representations

may *also* have been made to Mr. Eames does nothing to dilute the specificity of the (definite)

allegations with respect to Mrs. Eames. Nor does the reference to "information and belief"

qualify the allegation that the representations were made by the Culver agency, or that they were made in March 1994.

Further (and as shown below), the definite allegation that the representations were made to Mrs. Eames is enough to support claims by all three named plaintiffs. This is because the Consumer Fraud Act imposes no requirement of privity with the insurer. Sachetta v. Bellevue Four, Inc., C.A. No. 97C-07-042WTQ, 1999 WL 463712, slip op. at *2-4 (Del. Super. Ct. June 9, 1999) (upholding Consumer Fraud Act claim against a subcontractor despite his lack of privity with the plaintiff home buyers) (Ex. E); Tandy v. Marti, 213 F. Supp.2d 935, 937-38 (S.D. Ill. 2002) (no privity with consumer required under substantially identical Illinois statute).

The various and detailed allegations of paragraph 13 do not merely meet, but far exceed, any particularity requirement. For Nationwide to claim otherwise -- to say that after reading this amended complaint it still cannot determine the precise conduct we challenge -- strains credulity.

## II.  THE COURT SHOULD RECONSIDER ITS ADOPTION OF CROWHORN

In its February 2, 2006 Memorandum Opinion, the Court noted that Nationwide had cited (on its original motion to dismiss) "Delaware case law applying [Rule 9(b)'s] heightened pleading requirement." Memorandum Opinion at 11 (Ex. A). The case Nationwide cited -- whose holding the Court adopted as the law of the case here -- was Crowhorn v. Nationwide Mut. Ins. Co., C.A. No. 00C-06-010WLW, 2002 WL 1767529 (Del. Super. Ct. July 10, 2002). Crowhorn's analysis of the issue consists of a single sentence: "Although the elements of a cause of action for consumer fraud under the CFA are significantly different than those elements of common law fraud, a particularity requirement still applies." Crowhorn, 2002 WL 1767529, slip op. at *9 (footnotes omitted) (Ex. F). Crowhorn thus imposes the particularity requirement for

claims that are decidedly *not* fraud claims, on no apparent basis other than their ***dissimilarity to fraud claims.***[4]

But though Nationwide cited <u>Crowhorn</u>, it did not alert the Court to the reported (and analytically detailed) decision in <u>State v. Publishers Clearing House</u>, 787 A.2d 111 (Del. Ch. 2001). There Vice-Chancellor Lamb concluded that the essential features of the private right of action under Delaware's Consumer Fraud Act -- its historical origins, its legal elements, and its statutory purpose -- show that Rule 9(b)'s requirements do not apply. The Vice-Chancellor's scholarly analysis deserves to be quoted in full:

> The State responds that the word "fraud" in the Consumer Fraud Act and the word "deceptive" in the Uniform Deceptive Trade Practices Act are merely descriptive terms and do not import into claims brought under those acts the elements of common law fraud. The State argues that "impos[ing] strict pleading requirements to consumer protection enforcement cases is contrary to law, and is inconsistent with the remedial objectives of these laws." It also argues that Rule 9(b)'s special pleading requirement be found inapplicable to an enforcement proceeding brought by the Attorney General under the CFA and the UDTPA.
>
> I recognize, as PCH argues, that other cases have applied Superior Court Rule 9(b)'s pleading standard to suits brought under the CFA or the UDTPA. Nevertheless, those cases did so without any explicit analysis of whether or not it was the proper standard to apply. For this reason, I do not regard those cases as authoritative on the question here presented. Moreover, neither the Delaware Supreme Court nor the General Assembly has spoken directly on the issue. Thus, I will treat it as one of first impression.
>
> Rule 9(b) is an exception to the liberal "notice pleading" standard applicable to most pleadings under Rule 8. Legal scholars have noted that Rule 9(b) "probably originated in equity pleading and reflected a reluctance to upset or investigate judgments, settled

---

[4] Rule 9(b) expressly reserves the particularity requirement for claims of "fraud or mistake." There is no dispute that statutory consumer fraud is neither, or that even negligent misrepresentations are actionable under the statute. <u>Stephenson v. Capano Dev., Inc.</u>, 462 A.2d 1069, 1074 (Del. 1983). Not even Nationwide would argue that Rule 9(b)'s requirements apply to negligence claims.

accounts and other completed transactions." In its modern form, the rule's purpose is described by the Delaware Supreme Court as " 'serv[ing] to discourage the initiation of suits brought solely for their nuisance value, and safeguard[ing] potential defendants from frivolous accusations of moral turpitude.' " In my view of this history and purpose, the court in *John P. Villano, Inc. v. CBS, Inc.*, refused to apply Federal Rule of Civil Procedure 9(b) to a federal statutory claim of false advertising because "nothing in the language or history of rule 9(b) suggests that it is intended to apply, willy-nilly, to every statutory tort that includes an element of false statement."

The Delaware Supreme Court showed a similarly nuanced approach in deciding whether Rule 9(b)'s particularity requirements should be applied to an action for bad faith in *Desert Equities*. Noting that the essential elements of a bad faith claim bore little resemblance to the elements of a claim of fraud, the Supreme Court concluded that pleading with particularity was not required in that case. Applying the same mode of analysis here leads me to conclude that claims by the Attorney General brought under the CFA or the UDTPA are not sufficiently analogous to claims for common law fraud to justify the application of Rule 9(b)'s heightened pleading standard.

Common law fraud differs remarkably from "statutory fraud" under the CFA. Both the CFA and the UDTPA stem from the 1914 Federal Trade Commission Act and its later amendment in 1938. They are consumer protection laws and remedies for unfair competition, not simply codified versions of common law fraud. Referring to the policy behind the CFA, the Delaware Supreme Court stated in *Brandywine Volkswagen, Ltd. v. State, Dept. of Consumer Affairs*, "An obvious objective of the law is to raise the standards which the public has right to expect from all business enterprises . . . ."

***

Though sometimes referred to as "statutory fraud," an action under the CFA is not a "fraud" action in any ordinary sense.

***

Thus, the two actions are quite distinct. Scienter, intent to induce action, reliance, and damages are conspicuously missing from the elements of the CFA. "The [only] common law thread which runs through actions of fraud or deceit at law . . . and actions under 6

> *Del. C.* §2513 is the making of a false or misleading statement or the concealment, suppression or omission of information, thereby creating a condition of falseness."
>
>          ***
>
> I also take note of the legislature's intent that both of these acts be literally construed.
>
>          ***
>
> I conclude that the remedial goals of these two acts are inconsistent with the application of the particularized pleading requirements of Rule 9(b) to enforcement actions brought by the Attorney General to protect the consuming public. Certainly, equity's original reluctance to upset legal judgments on grounds of fraud or mistake is irrelevant in such an action. Similarly, claims under the two acts do not involve charges of moral turpitude and are unlikely to be brought by the State for purposes of harassment. Thus, none of the purposes served by application of that rule to charges of fraud is implicated by claims under either statute.

Publishers Clearing House, 787 A.2d at 114-17 (citations and footnotes omitted).

It bears noting, too, that the Consumer Fraud Act is to be construed "to make uniform the law of those states which enact it." 6 Del. C. §2535. It is thus significant that federal and state courts have held that an identical Illinois statute is not subject to the particularity requirement. Sotelo v. DirectRevenue, LLC, 384 F. Supp.2d 1219, 1233-34 (N.D. Ill. 2005) (holding that Illinois Consumer Fraud Act "is not subject to the heightened pleading [standard] of Rule 9(b)"); Strohmaier v. Yemm Chevrolet, 211 F. Supp.2d 1036, 1043-44 (N.D. Ill. 2001) (same); Zinser v. Rose, 614 N.E.2d 1259, 1263-64 (Ill. App. Ct. 1993) (same).

There can thus be no genuine doubt: were the Delaware Supreme Court to consider the issue, it would adopt the Chancery Court's compelling analysis in Publishers Clearing House. It would not follow the one-sentence (and facially illogical) analysis in the unreported Crowhorn

decision. We respectfully ask this Court to exercise its inherent authority to correct the law of the case, and sweep away the (inapplicable) "information and belief" debate.

## III. THE COMPLAINT'S ALLEGATIONS OF HARM HAVE ALREADY BEEN UPHELD

Nationwide asserts that "[t]his Court also agreed with Nationwide's arguments that Plaintiffs (sic) original Complaint failed to plead 'the particular harm suffered by them as a result.'" D.I.167 at 13 (citing Memorandum Opinion at 11). This is disingenuous. A full quotation of the passage in question shows that the Court was summarizing *Nationwide's* view of the issues, and not announcing its own: "Here, *Nationwide argues* that Plaintiffs fail to plead the circumstances surrounding a specific misrepresentation made to them and the particular harm suffered by them as a result." Memorandum Opinion at 11 (Ex. A). The Court immediately went on to observe that the complaint "does not provide any facts concerning what documents the Plaintiffs received, or when or from whom they received such documents" -- allegations that would relate to the conduct *causing* harm, but not to the allegation of harm itself. Id.

More to the point, the Memorandum Opinion sets forth the Court's express finding that the original complaint adequately alleged harm:

> When read in the light most favorable to Plaintiffs, the Complaint appears to allege false representations by Nationwide that were known to be false and that *damaged Plaintiffs and other class members*. According to the Complaint, Nationwide "falsely described PIP limits as 'full'," and *class members were harmed* either because they believed that they had purchased coverage with limits higher than $15,000/$30,000 or because they believed that those were the highest limits available to purchase.

Id. (emphasis added; citations to the complaint omitted). The Court's detailed conclusion (that the original complaint alleged specific harm to the plaintiffs and class members) is the settled law of the case. Nationwide does not argue that the Court misapprehended the original

complaint's allegations of harm or applied any incorrect legal standard. The tactic it chooses instead -- essentially seeking to dupe the Court into treating its earlier paraphrasing of *Nationwide's* position as the Court's own ruling -- is highly unfortunate.

## IV.  THE STATUTE OF LIMITATIONS HAS NOT RUN

Nationwide argues that the applicable three-year statute of limitations for the Eames plaintiffs' consumer fraud claims began to run on the first date that any offending representation was made. Nationwide cites no authority for this proposition, though (as shown below) several courts have addressed the accrual date for consumer fraud claims. But simply as a logical matter, Nationwide is wrong: no cause of action based on a false promise can accrue before the promise proves false.

In other words, there is nothing wrong or actionable in promising full PIP limits. Full PIP limits are a positive good, and more people should have them. The difficulty arises when, after (and perhaps long after) the promise is made, it is betrayed.

A host of cases have thus held that the cause of action for violation of Illinois' identical consumer fraud statute does not arise until the plaintiff knows or should reasonably know that the offending representations are false. Chicago Board Options Exchange, Inc. v. Connecticut General Life Ins. Co., 713 F.2d 254, 261 (7th Cir. 1983) (rejecting district court's calculation of limitations period from the date of contract formation); CSFB Holt LLC v. Collins Stewart Ltd., C.A. No. 02-CIV-3069LBS, 2004 WL 1794499, slip op. at *9 (S.D.N.Y. Aug. 10, 2004) (to same effect) (Ex. G); In re Mutual Life Ins. Co. of New York Premium Litig., 295 F. Supp.2d 140, 147 (D. Mass. 2003) (same); Barr Co. v. Safeco Ins. Co. of Amer., 583 F. Supp. 248, 257 (N.D. Ill. 1984), modified on other grounds, 706 F. Supp. 616 (N.D. Ill. 1989) (same); Gredell v.

Wyeth Labs., Inc., 803 N.E.2d 541, 546-47 (Ill. App. Ct. 2004) (same); Bradley v. Alpine

Constr. Co., 586 N.E.2d 653, 655 (Ill. App. Ct. 1991) (same).

Mr. and Mrs. Eames are ordinary consumers. Told by Nationwide that they would have

"full PIP", they could reasonably believe "that they had purchased coverage with limits higher

than $15,000/$30,000 or . . . that those were the highest limits available to purchase."

Memorandum Opinion at 10 (Ex. A). They would have no occasion to doubt Nationwide's

promise, however, until the happening of 1) a PIP claim, and 2) a betrayal of the promise by

Nationwide. The cause of action for consumer fraud thus arose no earlier than June 13, 2003,

when Nationwide first contended, in a letter to Mr. and Mrs. Eames's attorney, that the policy's

PIP limits had exhausted on payment of just $15,000. Ex. H.[5]

## V. **CONSUMER FRAUD IS THE PREDICATE TO CIVIL CONSPIRACY**

Nationwide argues that our civil conspiracy claim must fail because (as it insists) the

predicate claim for consumer fraud must fail. As shown above, however, the consumer fraud

claim is more than adequately pled under any standard. It may thus serve as the underlying

wrong for the Eames plaintiffs' civil conspiracy claim.

Nationwide also says that the amended complaint "does not plead sufficient facts to

support" a claim for civil conspiracy. D.I. 167 at 18. But the law of the case, as established by

the Court's February 2, 2006 Memorandum Opinion, confirms that the civil conspiracy claim is

not subject to any heightened pleading standard. Memorandum Opinion at 12 (Ex. A). On the

claim for civil conspiracy, then, the pleadings serve the function of general notice-giving; the

facts are left to discovery. Swierkiewicz v. Sorema N.A., 534 U.S. 506, 512-13 (2002); Enzo

Life Sciences, Inc. v. Digene Corp., 295 F. Supp.2d 424, 426-27 (D. Del. 2003).

---

[5] The referenced letter also appears as an exhibit to the amended complaint.

Nationwide next says that the elements of civil conspiracy have not been adequately pled. But the Court rejected that precise argument in its February 2 Memorandum Opinion. Memorandum Opinion at 12 (after reciting the elements of the claim for civil conspiracy, this Court observes that "Plaintiffs allege that Nationwide and its agents have 'combined' to further a conspiracy to misrepresent the liability limits for PIP coverage") (Ex. A). Nationwide's determination to relitigate these settled rulings is not a basis to disturb them.

## VI. NO PRIVITY IS REQUIRED

Nationwide argues that plaintiff Tammy Eames has no standing to sue, because the offending representations were made not to her but her parents. D.I. 167 at 19. But Tammy Eames need not be in privity with Nationwide in order to be injured by its misrepresentations. The fact that the misrepresentations were made, and that Nationwide now contends that her PIP claim is eligible for just the minimum $15,000 limit, is enough.

Abundant case law recognizes that the Consumer Fraud Act, including both the Delaware statute and identical statutes in other states, imposes no privity requirement. See Sachetta v. Bellevue Four, Inc., C.A. No. 97C-07-042WTQ, 1999 WL 463712, slip op. at *2-4 (Del. Super. Ct. June 9, 1999) (upholding a claim under the Delaware Act despite a subcontractor's lack of privity with the plaintiff home buyers) (Ex. E). See also Kociemba v. G.D. Searle & Co., 680 F. Supp. 1293, 1304 (D. Minn. 1988) (rejecting any requirement of a "direct buyer-to-seller" relationship under substantially identical consumer fraud statute); Impex Shrimp & Fish Co. v. Aetna Cas. & Sur. Co., 686 F. Supp. 183, 187 (N.D. Ill. 1985) (likewise rejecting privity requirement); In re Catanella and E.F. Hutton & Co., Inc. Sec. Litig., 583 F. Supp. 1388, 1441-42 (E.D. Pa. 1984) (same); Neveroski v. Blair, 358 A.2d 473, 479 (N.J. Super. Ct. 1976) (same).

It thus matters not whether the offending representations were made to Tammy Eames or her parents. Under the Act, whenever Nationwide employs any false promise "with intent that others rely upon" its words -- a standard that borrows heavily from the "foreseeable plaintiff" approach typically associated with negligent misrepresentation claims -- it faces liability to any person injured by its deception. 6 Del. C. §2513(a).

## VII. NATIONWIDE IS PRECLUDED FROM MOVING UNDER RULE 12 ON ITS "LIMITATIONS" AND "PRIVITY" ARGUMENTS

Rule 12(g) provides that "[i]f a party makes a motion under this rule but omits therefrom any defense or objection then available to the party which this rule permits to be raised by motion, the party shall not thereafter make a motion based on the defense or objection so omitted . . . ." Fed. R. Civ. P. 12(g). Wright & Miller confirm that:

> The filing of an amended complaint will not revive the right to present by motion defenses that were available but were not asserted in timely fashion prior to the amendment of the pleading; conversely, a Rule 12 defense that becomes available because of new matter in the amended complaint may be asserted by motion.

5C CHARLES ALAN WRIGHT AND ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE §1388 (3d ed. 2004). Nationwide may thus raise on this motion any Rule 12 defense that was unavailable to it at the time of its original motion to dismiss; but defenses that could have been raised at that time cannot be the subject of this motion.

Nationwide's motion violates Rule 12(g) in two respects. First, its limitations defense -- based on its (wrongheaded) calculation of the limitations period from the date of contract formation -- was plainly available at the time of its original motion. This is because the original complaint alleged that the offending representations were made at the time the policy was sold. Compl. ¶¶9, 13 (alleging, first, that Nationwide sells policies accompanied by the offending

representations; and second, that the plaintiffs were subjected to this precise practice) (Ex. I).
Nationwide knew at all times the date of the policy's inception, and even attached a copy of the
policy to the appendix that accompanied its original motion to dismiss. D.I. 4.

Similarly, Nationwide's "privity" argument (with respect to Tammy Eames) was clearly
available to Nationwide from the start. The original complaint alleged consumer fraud on
Tammy Eames's behalf, while also clearly alleging that 1) her parents are the policyholders, 2)
she was a passenger in her parents' car at the time of the subject collision, and 3) her status as a
plaintiff arises from her status as a PIP claimant in connection with that collision. Compl. ¶4
(Ex. I). These allegations remain unchanged in the amended complaint; and neither the original
nor the amended complaint allege privity between Tammy Eames and Nationwide, or that the
offending representations were made to Tammy Eames herself.

Nationwide's motion thus lacks merit procedurally as well as substantively.

## CONCLUSION

For the reasons set forth above, the Eames plaintiffs respectfully request that

Nationwide's motion be denied in its entirety.

Respectfully submitted,

MURPHY SPADARO & LANDON

/s/ John S. Spadaro
John S. Spadaro, No. 3155
1011 Centre Road, Suite 210
Wilmington, DE 19805
(302)472-8100

March 2, 2006                    Attorneys for the Eames plaintiffs

**IN THE UNITED STATES DISTRICT COURT
IN AND FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| THOMAS A. EAMES, ROBERTA L. EAMES and TAMMY EAMES, on behalf of themselves and all others similarly situated, | ) ) ) ) ) | |
| Plaintiffs, | ) | C.A. No. 04-CV-1324KAJ |
| | ) | |
| v. | ) | |
| | ) | |
| NATIONWIDE MUTUAL INSURANCE COMPANY, | ) ) | |
| | ) | |
| Defendant. | ) | |

**NOTICE OF SERVICE**

I hereby certify that on this date, I electronically filed the foregoing document with the Clerk

of the Court using CM/ECF which will send notification of such filing(s) to the following:

Nicholas E. Skiles, Esq.
Swartz Campbell LLC
300 Delaware Avenue, Suite 1130
P.O. Box 330
Wilmington, DE 19899

MURPHY SPADARO & LANDON

/s/ John S. Spadaro
John S. Spadaro, No. 3155
1011 Centre Road, Suite 210
Wilmington, DE 19805
(302) 472-8100

Attorneys for plaintiffs
Thomas A. Eames, Roberta L. Eames and
Tammy Eames (on behalf of themselves and
all others similarly situated)

March 2, 2006

129402