# EXHIBIT C

**IN THE UNITED STATES DISTRICT COURT
IN AND FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| THOMAS A. EAMES, ROBERTA L. EAMES and TAMMY EAMES, on behalf of themselves and all others similarly situated, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | C.A. No. 04-CV-1324KAJ |
| v. | ) ) | |
| NATIONWIDE MUTUAL INSURANCE COMPANY, | ) ) ) | |
| Defendant. | ) ) | |

## EAMES PLAINTIFFS' ANSWERING BRIEF IN OPPOSITION TO NATIONWIDE'S MOTION TO DISMISS

MURPHY SPADARO & LANDON
John S. Spadaro, No. 3155
1011 Centre Road, Suite 210
Wilmington, DE 19805
(302)472-8100

and

Clayton E. Bunting, No. 376
Wilson Halbrook & Bayard
107 West Market Street
P.O. Box 690
Georgetown, DE 19947
(302)856-0015

Attorneys for plaintiffs Thomas A. Eames, Roberta
L. Eames and Tammy Eames (on behalf of
themselves and all others similarly situated)

August 22, 2005

123190

## TABLE OF CONTENTS

NATURE AND STAGE OF THE PROCEEDING........................................................................1

SUMMARY OF ARGUMENT ............................................................................................2

STATEMENT OF FACTS ...............................................................................................5

    A. The February 2003 Collision ..............................................................................5

    B. The Statutory Coverage Requirements ...............................................................5

    C. The Offending Practice .....................................................................................5

    D. Nationwide's Motivation...................................................................................8

    E. Nationwide's Wrongful Conduct .......................................................................9

    F. The Complaint's Allegations: Fact Versus Fiction .............................................10

    G. The "Integration" Debate ...............................................................................11

        i. The Plaintiff's Position...............................................................................11

        ii. Nationwide's Position ..............................................................................14

    H. The Ambiguity Debate....................................................................................14

ARGUMENT...............................................................................................................16

I. THE APPLICABLE LEGAL STANDARDS .....................................................................16

II. THE COMPLAINT ALLEGES CONTRACTUAL MISREPRESENTATIONS....................17

III. POLICY DECLARATIONS ARE A PART OF THE CONTRACT.....................................18

IV. NATIONWIDE'S MISREPRESENTATIONS ARE PART OF THE
    CONTRACT IN ANY EVENT ..................................................................................19

V. AUTO INSURERS DO NOT ENJOY LICENSE TO DECEIVE...........................................20

VI. THE PLAINTIFFS HAVE SUCCESSFULLY PLED A COUNT
    FOR DECLARATORY JUDGMENT .........................................................................21

VII. THE PLAINTIFFS HAVE SUCCESSFULLY PLED A CLAIM
    FOR BREACH OF CONTRACT................................................................................22

VIII.  THE PLAINTIFFS HAVE SUCCESSFULLY PLED A CLAIM FOR
       BAD FAITH BREACH OF CONTRACT ........................................................................22

IX.  THE PLAINTIFFS HAVE SUCCESSFULLY PLED A CLAIM FOR
     CONSUMER FRAUD.................................................................................................23

X.  THE PLAINTIFFS HAVE SUCCESSFULLY PLED A CLAIM FOR
    CIVIL CONSPIRACY.................................................................................................24

CONCLUSION.......................................................................................................................26

# TABLE OF AUTHORITIES

**Cases**                                                                                          **Page**

Alston v. Parker, 363 F.3d 229 (3d Cir. 2004) ..................................................................... 16, 17

Aeroglobal Capital Mgmt., LLC v. Cirrus Indus., Inc., 871 A.2d 428 (Del. 2005) ......................24

Colburn v. Upper Darby Township, 838 F.2d 663 (3d Cir. 1988), cert. denied,
489 U.S. 1065 (1989).............................................................................................................16

Conley v. Gibson, 355 U.S. 41 (1957)................................................................................16, 17

Crowhorn v. Nationwide Mut. Ins. Co., C.A. No. 00C-06-010WLW, 2001 WL 695542 (Del.
Super. Ct. Apr. 26, 2001)................................................................................................. 16, 23

Enzo Life Sciences, Inc v. Digene Corp., 295 F. Supp.2d 424 (D. Del. 2003) ......................16, 17

Freeman v. Massachusetts Mut. Life Ins. Co., 183 N.W.2d 832 (Mich. Ct. App. 1971) ..............20

Handal v. Amer. Farmers Mut. Cas. Co. 255 N.W.2d 903 (Wisc. 1977)..................................... 19

Hynansky v. Vietri, No. 14645-NC, 2003 WL 21976031 (Del. Ch. Ct.
August 7, 2003)......................................................................................................................21

Mentis v. Delaware Amer. Life Ins. Co., C.A. No 98C-12-023WTQ, 1999 WL 744430 (Del.
Super. Ct. July 28, 1999) ........................................................................................................23

Nicolet, Inc. v. Nutt, 525 A.2d 146 (Del. 1987) ......................................................................... 24

Penn Mut. Life Ins. Co. v. Oglesby, 695 A.2d 1146 (Del. 1997)...................................................19

Petula v. Mellody, 588 A.2d 103 (Pa. Cmwlth. Ct. 1991)...........................................................25

Ramunno v. Cawley, 705 A.2d 1029 (Del. 1998) ..................................................................4, 25

S & R Assocs. v. Shell Oil Co., 725 A.2d 431 (Del. Super. Ct. 1998)..........................................23

Stephenson v. Capano Development, Inc., 462 A.2d 1069 (Del. 1983).......................................23

Swierkiewicz v. Sorema N.A., 534 U.S. 506 (2002)....................................................................17

Tackett v. State Farm Fire & Cas. Ins. Co., 653 A.2d 254 (Del. 1995)........................................22

Thomas v. Harford Mut. Inc. Co., C.A. No. 01C-01-046HDR, 2003 WL 220511 (Del. Super. Ct. Jan. 31, 2003), as modified, C. A. No. 01C-01-046HDR, 2003 WL 21742143 (Del. Super. Ct. July 25, 2003) .................................................................................................................................. 23

Westhuis v. Royal Mut. Ins. Co., No. 91-2943, 1992 WL 348297
(Wisc. Ct. App. Aug. 4, 1992) ....................................................................................................... 20

## Statutes

6 Del. C. §2513 ......................................................................................................................... 3, 23

21 Del. C. §2118 ........................................................................................................................ 1, 5

28 U.S.C. §2201 ........................................................................................................................... 21

## NATURE AND STAGE OF THE PROCEEDING

This proposed class action was commenced in the Superior Court of the State of Delaware in and for Sussex County on August 20, 2004. It seeks certification of a proposed class and subclass with respect to the defendant Nationwide's misrepresentations of policy limits for Personal Injury Protection (or "PIP") coverage under 21 <u>Del. C.</u> §2118. Specifically, the proposed class representatives contend that Nationwide has represented to thousands to Delaware insureds that they enjoy "full" limits of liability for PIP coverage, when in fact Nationwide contends or will contend that they are entitled to just the minimum PIP limits required by statute.

On August 1, 2004, Nationwide removed the case from Superior Court to this Court. Nationwide now moves to dismiss, claiming that the Eames plaintiffs' forty-one-paragraph complaint (in which they pled five separate bases for relief) fails to state a cause of action. As shown below, the basic thrust of Nationwide's motion is that the complaint's central allegation -- that Nationwide has misrepresented PIP limits within the insurance contract itself -- should simply be ignored.

This is the Eames plaintiffs' answering brief.

1

## SUMMARY OF ARGUMENT

1. Nationwide's motion is an invitation to error. It asks the Court to take the Eames plaintiffs' well-pled allegations as false, and treat Nationwide's theory of the case as true. In this way Nationwide turns the applicable procedural standard precisely on its head.

2. Nationwide insists that it made no misrepresentations to the plaintiffs that are a part of any insurance contract; and that any misrepresentations made outside the contract are not actionable. Both points are wrong.

First, Nationwide has repeatedly conceded that policy declarations are part of the policy. The complaint specifically alleges that Nationwide has characterized PIP limits as "full" in policy declarations. The fact that Nationwide denies this allegation is not a basis on which to dismiss the complaint.

Second, the early stages of class-certification discovery confirm that documents characterizing PIP limits as full, and which Nationwide's agents routinely share with Delaware auto insureds, meet Nationwide's own definition of the term "declarations page." Although the Eames plaintiffs are under no obligation to present their proofs on this motion, the Court should appreciate that a substantial factual basis exists for the complaint's allegations.

Third, whether or not the jury accepts our characterization of the operative documents as policy declarations, the question of whether a particular term is or is not a part of the contract is a fact issue. It should therefore be informed by the discovery process, and ultimately decided on summary judgment or at trial. It cannot be resolved at the pleadings stage, or on the basis of a defendant's denials. Thus, the jury may decide (and we intend to prove) that the form "memorandum of insurance" and "rate quote" documents employed by Nationwide in Delaware

are indeed a part of the insurance contract, regardless of whether they also qualify as policy declarations.

Finally, Nationwide is flatly wrong to say that misrepresentations made outside the contract are not actionable. The parol evidence rule does not bar evidence of prior or contemporaneous statements in cases alleging misrepresentation. Here the plaintiffs have pled claims for both statutory consumer fraud and civil conspiracy -- claims that plainly allege misrepresentation. Indeed, misrepresentation is the heart of this case.

Under the Consumer Fraud Act, meanwhile, any misrepresentation made to an insured is actionable, so long as it results in harm to the consumer.

3. The Eames plaintiffs have successfully pled a count for declaratory judgment. They have clearly pled (and Nationwide concedes) that contractual relations exist between the Eames plaintiffs and Nationwide; and they have properly sought a declaration as to the status of those relations. Nothing more is required under the Declaratory Judgment Act.

4. The Eames plaintiffs have successfully pled a claim for breach of contract. They have pled that Nationwide has misrepresented the nature and amount of PIP limits under the contract, and that they have suffered injury as a result.

5. The Eames plaintiffs have successfully pled a claim for bad faith breach of contract. They have pled that Nationwide's false and deceptive characterization of PIP limits is without reasonable justification, and (in fact) knowingly dishonest.

6. The Eames plaintiffs have successfully pled a claim for statutory consumer fraud under 6 Del. C. §2513. They have alleged in detail the offending misrepresentations; the circumstances under which they were made; the commercial motivation behind those misrepresentations; and resulting injury.

7. The Eames plaintiffs have successfully pled a claim for civil conspiracy. They have alleged that Nationwide engaged in the offending deceptive practice through the use of its insurance agents. They have alleged specific acts by which the offending practice was carried out. And again, they have alleged resulting injury.

Further, Nationwide is wrong to suggest that claims for civil conspiracy must be pled under some heightened standard of pleading. Nationwide's authority for that proposition, Ramunno v. Cawley, 705 A.2d 1029 (Del. 1998), expressly reserves the "higher pleading standard" for cases involving First Amendment concerns. This is not such a case.

## STATEMENT OF FACTS

### A. The February 2003 Collision

The plaintiffs Thomas A. Eames and Roberta L. Eames are natural persons residing in

Delaware, and named insureds under Nationwide "Auto Policy" 52A733616. They and their

daughter, plaintiff Tammy Eames, were occupants of the Eames's family vehicle on February 7,

2003, when all three plaintiffs were injured in an automobile collision. Those injuries give rise

to the plaintiffs' claims for PIP coverage against Nationwide.

### B. The Statutory Coverage Requirements

Under 21 Del. C. §2118, every owner of a motor vehicle registered in Delaware must

maintain specified forms of insurance in specified minimum amounts. Among these is PIP

coverage, defined under the statute as "[c]ompensation to injured persons for reasonable and

necessary expenses incurred within 2 years from the date of the accident" for medical services,

lost earnings and other expenses. 21 Del. C. §2118(a)(2). The statute further requires that PIP

coverage be provided in the minimum amount of "$15,000 for any 1 person and $30,000 for all

persons injured in any 1 accident." Id. at §2118(b). The statute expressly characterizes these

limits as the "minimum insurance coverage which will satisfy" its requirements. Id. It comes as

no surprise, then, that Delaware auto insurers routinely sell higher PIP limits than the statutory

minimum.

### C. The Offending Practice

The policy that Nationwide sold to Mr. and Mrs. Eames is a standard form policy and

contract of adhesion. See B1-29 (copy of policy text).[1] As is the case with virtually all

Delaware auto policies, the actual amount of PIP limits cannot be determined by reference to the

---

[1] References to the alphanumeric sequence beginning with "B" are to the accompanying
appendix.

policy text alone. Instead, the preprinted policy text sets forth the statutory minimum of $15,000 per person and $30,000 per accident; PIP limits over and above that minimum are reflected in other policy documents such as memoranda of insurance, certificates of insurance and declarations pages. Indeed, Delaware auto insurers routinely use such policy documents -- separate from the preprinted policy text -- to specify the actual limits of liability for various coverages, including liability coverage and property damage coverage.

The Eames's policy employs this format exactly. For example, the policy text provides for liability insurance, but one cannot determine the limits of liability for that coverage without referring to a separate declarations page issued by Nationwide's agent -- in this case, Culver Insurance Agency of Seaford, Delaware. Thus the policy text states only Nationwide's promise to "pay such liability losses up to the limit stated in the Declarations." B10. Culver's declarations page then specifies those limits as "100/300" for liability claims alleging bodily injury, and "50000" (sic) for claims alleging property damage. B30, B32.

So it is with PIP -- except that where PIP coverage is concerned, Nationwide adopts an attitude of coyness. Indeed, the declarations page issued by Nationwide's agent specifies dollar amounts for comprehensive coverage, collision damage coverage, liability coverage (for both bodily injury and property damage), and uninsured motorist coverage (again for both bodily injury and property damage). But when it comes to PIP, the declarations page avoids any use of numbers, indicating only that coverage is "Full":

123190                                    6

**NATIONWIDE MUTUAL INSURANCE COMPANY (23787)**

Vehicle #1
1999 FORD EXPLORER
1FMZU34EXXZA79505

| | |
|---|---|
| COMPREHENSIVE | 100 |
| COLLISION | 250 |
| PROPERTY DAMAGE | 50000 |
| BODILY INJURY | 100/300 |
| PERSONAL INJURY PROTECTION | FULL |

| | |
|---|---|
| POLICY COVERAGE | |
| UNINSURED MOTORIST -- BODILY INJURY | 100/300 |
| UNINSURED MOTORIST -- PROPERTY DAMAGE | 10000 |

B32.

There can be no serious doubt that this practice (characterizing PIP limits as "full") is

widespread. In the early course of class-certification-related discovery, one Nationwide

insurance agent has testified that his agency routinely engages in the practice:

> Q:  *** Let me take you to the entry for PIP in the left-hand
> column. Do you see that?
>
> A:  Yes.
>
> Q:  And in the middle column it says full. Do you see that?
>
> A:  Yes.
>
> Q:  And that's a characterization that we see in -- I'll represent to
> you that that characterization of PIP as full is one that can be found
> in every set of documents that the Deaton Agency produced. Do
> you understand what I am representing to you?
>
> A:  Yes.
>
> Q:  Does that surprise you?
>
> A:  No.

> Q: Is it fair to say that the characterization of PIP as full in documents like the auto rate quote shown on the last page of Deaton 2 is a routine one in your business?
>
> A: Yes.
>
> Q: What I could do is show you some additional examples of that characterization as it appears in other sets of documents that Deaton produced simply so you could confirm that full is in there. We can go through that exercise. I'm happy to do that. Or you could simply tell me that you expect to find it in all of them, if that's the case.
>
> A: Yes. I would expect to see that usage of the word "full" in the various documents that you have obtained.
>
> Q: And you would expect to see it in connection with PIP?
>
> A: Correct.

B62-63 (deposition of G. Deaton of the Glenn Deaton Agency, Inc., at 40-42). Moreover, the parties recently stipulated that among documents produced by three other Nationwide agents in response to the Eames plaintiffs' subpoenas, the "vast majority" set forth the characterization of PIP limits as "full." B66 (deposition of G. Deaton at 55-56).

### D. Nationwide's Motivation

Nationwide admits that at the time the Eames plaintiffs' policy was issued, it offered PIP limits as high as $100,000 per person and $300,000 per accident. Why, then, does it attempt to obscure the dollar amount for PIP? And why does it do so (as we contend) on a widespread basis, adorning thousands of Delaware declarations pages with the modifier "Full" (as opposed to any specific dollar amount)? Why does it provide dollar amounts for all coverages but PIP?

We will prove that Nationwide does this to understate, if not conceal, the availability of additional PIP limits at relatively modest cost. We will further prove Nationwide's motivation for this practice: an unfavorable loss ratio on PIP coverage that (in Nationwide's view) makes it

unprofitable, or not sufficiently profitable, to sell additional PIP limits at the slightly higher premium. And so Nationwide tells its insureds that they have "full" PIP limits, when all the while Nationwide will contend that they have just the statutory *minimum*.

It is, no doubt, an effective ploy. After all, what could be fuller than full? And why inquire about the availability of more insurance when one is already "fully" insured?

But the problem for Nationwide lay in the controlling principles of contract instruction. Consumer insurance contracts are subject to very definite rules of interpretation; and those rules do not generally allow for trickery and deceit. The plain meaning of "full" is obviously *not* "minimum", and Nationwide's use of the term creates the reasonable expectation that consumers have purchased the fullest limits, or the fullest coverage, available. Nationwide is bound by those expectations as a matter of law. And any ambiguity in applying the term "full" to PIP limits must necessarily be construed against Nationwide.

### E. Nationwide's Wrongful Conduct

Nationwide has directly subjected the proposed class representatives to the offending practice. Again, Nationwide represented to Mr. and Mrs. Eames that they enjoyed "full" PIP limits. They made this representation in writing, both before and after the February 2003 collision. For example, policy declarations issued by Nationwide's agent just one day after the collision show precise dollar amounts for the limits of liability for third-party property damage (shown as "PD"), third-party bodily injury (shown as "BI") and the rest; but for PIP, the declarations show the single-word entry "FULL." B30. Reasonable purchasers of insurance would therefore conclude that Mr. and Mrs. Eames enjoyed full PIP limits, and not just the statutory minimum of $15,000 per person and $30,000 per accident.

But on June 13, 2003 (and in the aftermath of the collision) Nationwide advised Mr. Eames that he had "exhausted his/her benefits under the PIP/NO FAULT portion of this insurance policy." B31. To be sure, the precise meaning of Nationwide's letter is unclear; it may be saying that it has already paid $15,000 in "per person" benefits to Mr. Eames individually, or that it has already paid $30,000 to all three named plaintiffs collectively. But it is clear enough that Nationwide contends that the "full" PIP limits it sold to Mr. and Mrs. Eames are in fact minimum limits.

### F. The Complaint's Allegations: Fact Versus Fiction

Throughout Nationwide's motion it persistently misreads the complaint. Because its essential position proceeds from that misreading, it is important to recognize what the complaint actually says (as opposed to what Nationwide claims it says).

Specifically, Nationwide says that the Eames plaintiffs do not complain of any misrepresentation *within* the insurance contract, but rather allege a deception *outside* the contract. See Corrected Motion to Dismiss at 10. But this is plainly untrue. For example, paragraph 9 of the complaint alleges that

> Nationwide has sold (and, on information and belief, continues to sell) automobile insurance policies in Delaware that expressly state, in policy declarations, memoranda of insurance or other policy documentation, that the purchased limits of liability for PIP coverage are "full" limits; when in fact Nationwide intends by this representation to provide only the minimum statutory limits of $15,000 per person and $30,000 per accident.

Compl. ¶9 (B36). The complaint thus alleges that Nationwide sold policies that "expressly state" that the purchased PIP limits are full limits. This is not an allegation of extracontractual promises, but one that (if proven) directly establishes a material term of the contract. Can such an allegation be ignored on a motion to dismiss?

Similarly, Nationwide says that the Eames plaintiffs seek only to "amend" or "reform" the contract, rather than to enforce it. But that is purely Nationwide's spin; it bears no relation to what the complaint actually says. Rather (and as shown above) the complaint alleges directly that 1) the policy expressly states that the purchased PIP limits are "full", and 2) when Nationwide treats those full limits as minimum limits, it breaches the contract. See Compl. ¶¶9-11, 27-29 (B36-37).

When these distortions are swept away, almost nothing remains of Nationwide's legal analysis. What does remain is Nationwide's denials of wrongdoing -- which we counter with our own conviction (held just as strongly, if not more strongly) that Nationwide is systematically cheating consumers throughout the state. But Nationwide's denials are not a basis for case-dispositive relief.

### G. The "Integration" Debate

The debate over what is or is not a part of the contract can be summarized as follows.

#### i. The Plaintiffs' Position

First (and as shown above), the Eames plaintiffs allege that Nationwide has characterized PIP limits as "full" *within* the insurance contract, and on the face of documents that form a part of the contract. These documents include policy declarations, memoranda of insurance, "rate quotes" and the like.

Second, the early stages of class-certification discovery confirm that all these documents meet Nationwide's own definition of "policy declarations" (which, again, Nationwide concedes are part of the contract). To be sure, the Eames plaintiffs are under no obligation to offer affirmative proofs on this motion, both because motions to dismiss are procedural and because

the prevailing legal standard requires the Court to accept our well-pled allegations as true. But to

underscore the manifest sufficiency of the pleadings, we note the following:

• Nationwide offers an "insurance glossary" on its web site, providing definitions of

insurance-related terms to consumers. It explains the glossary's purpose this way:

### Welcome To The Insurance Glossary

> We know that insurance can sometimes get a little confusing. For
> this reason we have compiled a list of terms that will help you
> understand things a little better. This is just another part of us
> being On Your Side.

B68 (taken from nationwideinsurance.com). The glossary offers this definition of the term

"declarations page":

### Declarations Page

> A summary page of an insurance policy that identifies the
> policyholders, the property covered, the coverages, and the
> premium amounts; usually serves as the cover page of a policy
> document.

B69 (also taken from nationwideinsurance.com).

Thus, a strong case can be made that when Nationwide shares with a consumer a

document that meets this definition, and does so as part of the transaction by which a policy is

sold to the consumer, the subject document qualifies as a declarations page.

• The documents described in the complaint -- documents variously described as

memoranda of insurance, certificates of insurance, "rate quotes" and so on -- fit Nationwide's

own definition of "declarations page" precisely. Not only is this clear from the face of the

documents, it was confirmed in detail by Nationwide's own insurance agent:

> Q: Now let me ask you to turn, if you could, to the last page of
> Deaton Exhibit 2 entitled Auto Rate Quote Number 1 and let me
> know when you have that before you please.

A: I do.

\*\*\*

Q: Now, there is information redacted on this page. So let me ask you as it appears in unredacted form, does the name of the insured appear on this page?

A: Yes.

Q: And would the page in unredacted form indicate anywhere the vehicle to be insured?

A: Yes.

Q: How would it identify that vehicle?

A: By the year, make of the model would generally appear in the heading above the $250 deductible where it's been redacted. The vehicle and type would appear there.

Q: And we know that the type of coverages are described in the document, right?

A: Correct.

Q: And the limits of liability for the coverages are set forth, are they not?

A: Yes.

Q: And the premium amount to be charged for each is set forth, right?

A: Yes.

B60-61 (deposition of G. Deaton at 33-35).

• Nationwide's insurance agent likewise confirmed that the offending categories of policy-related documents -- documents styled as memoranda of insurance, "rate quotes" and the like -- are shared with the consumer as part of the process by which Nationwide's automobile insurance product is sold. B57 (deposition of G. Deaton at 19-20).

Finally, we note that even if the jury concludes that a particular document type is not a declarations page, it will still need to decide whether that document's terms were a part of the contract. The Eames plaintiffs contend that Nationwide's characterization of PIP limits as full *is* a part of the contract, based on the prevailing legal standards for determining which terms are (or are not) a part of the bargain.

The Eames plaintiffs' allegations are thus clear (on the one hand), and supported by the early stages of class-certification discovery (on the other).

### ii. Nationwide's Position

Nationwide concedes that policy declarations are a part of the contract, but denies that the document types in question qualify as declarations -- even though they fit precisely within Nationwide's own definition of the term. Nationwide also appears to contend that these document types cannot be considered a part of the contract in any event.

Is Nationwide entitled to these positions? Of course -- though we believe them to be both wrong. But the question on this motion is whether such denials trump the complaint's allegations, not on the merits, but as a *procedural* matter. And to anyone with even a passing familiarity with Rule 12(b)(6), the question answers itself.

### H. The Ambiguity Debate

Nationwide contends that there can be no finding of ambiguity as a matter of law. It relies for this contention on two features of the policy documentation.

First, Nationwide notes that the policy text references PIP limits of $15,000 per person and $30,000 per accident. According to Nationwide, there can thus be no confusion as to the correct amount of PIP limits. Second, Nationwide points to a declarations page issued directly by the company (and not by an insurance agent on the company's behalf). This declarations page

sets forth a specific heading for "Limits of Liability", and a dedicated entry for "Personal Injury Protection." The entry in question reads "See Policy" -- which, according to Nationwide, can only be read as a reference to the policy text's recital of the $15,000 limit.

But as with Nationwide's motion generally, these arguments can only prevail if we treat the complaint's allegations as false. Again, the complaint alleges that Nationwide's insurance agents in Delaware routinely issue policy declarations that characterize PIP limits as full. If that is the case (and we have already gone far to prove it), then directing the policyholder to "see the policy" simply begs the question: the declarations issued through Nationwide's agents are as much a part of the policy as those issued by Nationwide directly. Further, the juxtaposition of the "full" usage with the "$15,000" reference is confusing at best, and deceptive at worst. Since reasonable users of standard English would never regard minimum limits as full limits, the two terms are sharply contradictory. See B58 (deposition of G. Deaton at 23) (Nationwide's agent equates "full limits" usage with "maximum limits.")

At the same time, consumers could reasonably conclude from the simultaneous use of these contradictory terms that the $15,000/$30,000 limit is the fullest limit available; and that no greater limits are available for purchase. The potential results range from troubling ones (in which consumers who would have otherwise purchased maximum PIP limits settle for minimum limits under the mistaken impression that $15,000 is "full"), to tragic ones (in which consumers suffer catastrophic injuries, only to learn that Nationwide intends to terminate coverage after the first $15,000 is paid).

## ARGUMENT

## I. THE APPLICABLE LEGAL STANDARDS

The standards for disposing of motions to dismiss are at once firmly established and highly favorable to plaintiffs:

> In examining a complaint, the Court assumes the truth of all well-pled allegations and "construes the complaint in the light most favorable to the plaintiff" determining, "whether, under any reasonable reading of the pleadings, the plaintiff may be entitled to relief."

Enzo Life Sciences, Inc v. Digene Corp., 295 F. Supp.2d 424, 426-27 (D. Del. 2003) (quoting Colburn v. Upper Darby Township, 838 F.2d 663, 665-66 (3d Cir. 1988), cert. denied, 489 U.S. 1065 (1989)). Accord, Alston v. Parker, 363 F.3d 229, 233 (3d Cir. 2004) (to same effect). In weighing the complaint's sufficiency, the Court must follow "the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957) (citations omitted).

Litigants sometimes criticize their adversary's pleadings as too spare, and Nationwide levels that criticism here. It takes this position despite the fact that the complaint is forty-one paragraphs long; sets forth a detailed primer on Delaware's statutory scheme for PIP regulation; describes precisely the offending practice; and sets forth five separate counts in careful detail. But setting aside the pure outlandishness of Nationwide's position as a matter of fact, it plainly fails as a matter of law:

> The respondents also argue that the complaint failed to set forth specific facts to support its general allegations of discrimination and that its dismissal is therefore proper. The decisive answer to this is that the Federal Rules of Civil Procedure do not require a claimant to set out in detail the facts upon which he bases his claim. To the contrary, all the Rules require is "a short and plain

> statement of the claim" that will give the defendant fair notice of
> what the plaintiff's claim is and the grounds upon which it rests.
> \*\*\* Such simplified "notice pleading" is made possible by the
> liberal opportunity for discovery and the other pretrial procedures
> established by the Rules to disclose more precisely the basis of
> both claim and defense and to define more narrowly the disputed
> facts and issues.

Conley, 355 U.S. at 47-48 (quoting Fed. R. Civ. P. 8(a)). In other words, "a plaintiff need not

plead facts." Alston, 363 F.3d at 233 n.6. The pleadings serve merely the function of general

notice-giving, and the facts are left to discovery. Swierkiewicz v. Sorema N.A., 534 U.S. 506,

512-13 (2002); Enzo Life Sciences, 295 F. Supp.2d at 426-27.

Nationwide's chronic complaints regarding the Eames plaintiffs' supposed "failure" to

append documents to the complaint are thus entirely misplaced. The production of documentary

proofs is left to the discovery process. The complaint here, meanwhile, alleges 1) the existence

of a contract between Nationwide and the Eames plaintiffs; 2) the existence of similar contracts

between Nationwide and the proposed class members; 3) the statutory legal framework that

defines the contract's promise of PIP coverage; 4) the specific practice by which Nationwide

misrepresents the limits of liability for PIP coverage (and thereby deceives its policyholders); 5)

Nationwide's use of insurance agents in perpetrating the offending practice; 6) the precise legal

bases for recovery; and 7) the plaintiffs' claims for class certification, damages awards and other

relief.

It strains credulity to speak of such a pleading in terms of bare "sufficiency." Rather, the

complaint here goes beyond mere notice-giving -- though there was no requirement to do so.

## II. THE COMPLAINT ALLEGES CONTRACTUAL MISREPRESENTATIONS

As shown above, Nationwide's entire analysis proceeds from a fallacy -- that the

complaint alleges only extracontractual misrepresentations. In fact, the complaint states directly

that Nationwide has sold (and continues to sell) "automobile insurance policies in Delaware that expressly state, in policy declarations, memoranda of insurance or other policy documentation, that the purchased limits of liability for PIP coverage are 'full' limits . . . when in fact Nationwide intends by this representation to provide only the minimum statutory limits . . . ." B36 (Compl. ¶9). These are straightforward allegations of *contractual* misrepresentations.

Though Nationwide's motion is purely procedural, the Eames plaintiffs have shown that the early stages of class-certification discovery support these allegations. Nationwide thus directs its attack at allegations that are not only sufficient as a matter of pleading, but substantial as a matter of proof.

Nationwide's motion should be denied, and the parties should be left to test their claims and defenses through discovery and trial.

### III.  POLICY DECLARATIONS ARE A PART OF THE CONTRACT

Nationwide does not dispute that policy declarations are a part of the contract. The complaint clearly alleges that Nationwide routinely misrepresents PIP limits *within* policy declarations. Nationwide's attempt to invoke the parol evidence rule thus fails for the (initial) reason that the offending representations are not parol statements at all.

We demonstrated above, meanwhile, that the various policy-related documents issued by Nationwide through its Delaware insurance agents meet Nationwide's own definition of "policy declarations." In other words, Nationwide has again launched a misguided attack on the sufficiency of the pleadings, when the discovery process has already gone far to vindicate the pleadings. But again, Nationwide is free to contend that the offending documents are not policy declarations, just as we are free to contend the opposite. Neither contention is a basis for case-dispositive relief.

## IV.  NATIONWIDE'S MISREPRESENTATIONS ARE PART OF THE CONTRACT IN ANY EVENT

The transactions at issue are consumer transactions, and the resulting contracts are contracts of adhesion.  When a large and powerful commercial entity deals with consumers on such a basis, it must take care to make the terms clear:

> The starting point is the approach to interpreting insurance contracts.  They must be interpreted in a common sense manner, giving effect to all provisions so that a reasonable policyholder can understand the scope and limitation of coverage.  It is the obligation of the insurer to state clearly the terms of the policy, just as it is the obligation of the issuer of securities to make the terms of the operative document understandable to a reasonable investor whose rights are affected by the document.  Thus, if the contract in such a setting is ambiguous, the principle of *contra proferentem* dictates that the contract must be construed against the drafter.
>
> The policy behind this principle is that the insurer or the issuer, as the case may be, is the entity in control of the process of articulating the terms.  The other party, whether it be the ordinary insured or the investor, usually has very little say about those terms except to take them or leave them or to select from limited options offered by the insurer or issuer.  Therefore, it is incumbent upon the dominant party to make the terms clear.  Convoluted or confusing terms are the problem of the insurer or issuer -- not the insured or investor.

Penn Mut. Life Ins. Co. v. Oglesby, 695 A.2d 1146, 1149-50 (Del. 1997) (footnotes omitted).

In the same way, the transaction itself must be reasonably clear.  For example, it should be obvious that when an auto insurer shares multiple policy-related documents with a consumer in the course of selling its policy, it risks creating an impression that one or more of those documents are part of the contract.  Thus we see cases in which supposedly "extracontractual" documents -- including, in one case, an exchange of letters between an underwriter and the insured -- are found to be part of an insurance contract over the insurer's objections.  See Handal v. Amer. Farmers Mut. Cas. Co., 255 N.W.2d 903, 907 (Wisc. 1977) (surrounding circumstances

established the parties' objective intent to make exchange of letters a part of the automobile

insurance contract); Westhuis v. Royal Mut. Ins. Co., No. 91-2943, 1992 WL 348297, at *2

(Wisc. Ct. App. Aug. 4, 1992) (certificate of insurance was part of the contract, and auto policy

thus provided underinsured motorist benefits even where such benefits were not set forth in the

policy text) (Ex. A). We also see cases in which courts estop insurers from dishonoring the

representations made in certificates of insurance. See, e.g., Freeman v. Massachusetts Mut. Life

Ins. Co., 183 N.W.2d 832, 834-37 (Mich. Ct. App. 1971) (life insurer estopped from denying that

the terms of certificate controlled dollar amount of group life policy).

The complaint here thus raises an issue as to whether, under the circumstances

surrounding the transaction at issue, a reasonable consumer would regard the offending

representations (that PIP limits are "full") as part of the contract. That issue should properly be

left to the discovery process, where the surrounding circumstances can be better defined.

Thereafter, one or both parties may seek summary judgment on the issue (if appropriate); or the

issue may be left to the jury at trial.

But certainly the issue cannot be decided on Nationwide's *ipse dixit*. And more so is this

the case because the early stages of class-certification discovery offer compelling support to the

*plaintiffs'* position. See B55-57 (deposition of G. Deaton at 13-20).

## V. AUTO INSURERS DO NOT ENJOY LICENSE TO DECEIVE

Even if Nationwide were correct to say that the offending representations were made

entirely outside the insurance contract -- and we intend to prove the opposite -- the Eames

plaintiffs would still have viable claims against Nationwide.

Consider Nationwide's world view. According to Nationwide, an auto insurer can

repeatedly misrepresent material terms of its policy to consumers. It can do this without fear of

legal consequences, so long as the misrepresentations are printed separately from the insurance contract itself. And why? Because the parol evidence rule gives it free rein to deceive consumers "outside" the contract's four corners.

Merely to state Nationwide's position is to reveal its error. Indeed, if there were ever a time when the legal framework that governs insurance transactions gave insurers the unfettered right to deceive consumers, that era surely died with the Hoover administration. But in any event, the parol evidence rule does not bar proof of prior or contemporaneous statements in cases alleging misrepresentation. Hynansky v. Vietri, No. 14645-NC, 2003 WL 21976031, at *4 (Del. Ch. Ct. August 7, 2003) (citation omitted) (Ex. B). Nationwide's representations to consumers regarding the amount of PIP limits may thus be actionable, regardless of whether they are made (as we contend) within the contract's four corners. They can therefore be challenged, as we have challenged them, through claims for statutory consumer fraud and civil conspiracy.

## VI. THE PLAINTIFFS HAVE SUCCESSFULLY PLED A COUNT FOR DECLARATORY JUDGMENT

The Declaratory Judgment Act vests this Court with authority to "declare the rights and other legal relations of any interested party seeking such declaration . . . ." 28 U.S.C. §2201(a). The Eames plaintiffs have clearly pled (and Nationwide concedes) that contractual relations exist between them and Nationwide; and they have properly sought a declaration as to the status of those relations. More particularly, they have sought a declaration

> to the effect that the proposed class members and class representatives are entitled to the maximum PIP limits made available by Nationwide in Delaware at the time the affected insurance contract was issued, or at the time of its most recent renewal (whichever amount is greater); or, alternatively, that such proposed class members and class representatives are entitled to full coverage of all reasonable and necessary medical expenses incurred within the statutory (two-year) period for PIP claims, and arising from covered automobile accidents.

B45 (Compl. ¶24).

Nothing more is required for the Eames plaintiffs to successfully seek declaratory relief;
and indeed, a far less detailed prayer would have sufficed.

## VII. THE PLAINTIFFS HAVE SUCCESSFULLY PLED A CLAIM FOR BREACH OF CONTRACT

As noted above, the Eames plaintiffs have alleged the existence of a contract between
them and Nationwide. They have alleged that Nationwide engaged in deceit and trickery in the
creation, sale, interpretation and performance of that contract -- that is, by repeatedly
characterizing PIP limits as full while treating them as minimum limits only. They have alleged,
too, that these practices have caused them injury. B46-47 (Compl. ¶29) (alleging that
Nationwide's breach has "deprived [plaintiffs] of the benefit of insurance coverage for which
premiums were paid" and "deprived [them] of necessary medical care, with resulting pain and
suffering and exacerbation of injury.")

In short, the Eames plaintiffs have pled a breach of contract claim in spades.

## VIII. THE PLAINTIFFS HAVE SUCCESSFULLY PLED A CLAIM FOR BAD FAITH BREACH OF CONTRACT

The complaint alleges that Nationwide's "false and deceptive characterization of PIP
limits" within the contract is both "without reasonable justification" and "knowingly dishonest."
B47 (Compl. ¶¶31-32). Taking the Eames plaintiffs' allegations as true -- that is, that
Nationwide has engaged in a systematic and widespread course of deception with respect to its
contractual promise of PIP limits -- it is impossible to cast Nationwide's conduct as anything but
dishonest. Such allegations clearly state a claim for bad faith breach of insurance contract under
Delaware law. See Tackett v. State Farm Fire & Cas. Ins. Co., 653 A.2d 254, 265 (Del. 1995)
(bad faith is actionable where insurer's conduct is without reasonable justification).

## IX. THE PLAINTIFFS HAVE SUCCESSFULLY
## PLED A CLAIM FOR CONSUMER FRAUD

Delaware's Superior Court has repeatedly held that where a claim for bad faith breach of

contract is successfully pled against an insurer, the insured may also plead violation of the

Consumer Fraud Act, 6 Del. C. §2513 (the "CFA"). Thomas v. Harford Mut. Inc. Co., C.A. No.

01C-01-046HDR, 2003 WL 220511, at *3 (Del. Super. Ct. Jan. 31, 2003), as modified, C. A. No.

01C-01-046HDR, 2003 WL 21742143 (Del. Super. Ct. July 25, 2003) (collecting cases for the

proposition that "[r]ecovery is available for consumers of insurance products" under the CFA)

(Ex C); Crowhorn v. Nationwide Mut. Ins. Co., C.A. No. 00C-06-010WLW, 2001 WL 695542,

at *6 (Del. Super. Ct. Apr. 26, 2001) (to same effect) (Ex. D); Mentis v. Delaware Amer. Life

Ins. Co., C.A. No. 98C-12-023WTQ, 1999 WL 744430, at *6-7 (Del. Super. Ct. July 28, 1999)

(same) (Ex. E). Despite its name, the CFA's requirements do not mirror the elements of common

law fraud; and no proof of scienter, intent to induce reliance or justifiable reliance is required.

Stephenson v. Capano Development, Inc., 462 A.2d 1069, 1074 (Del. 1983). Rather, the CFA

creates a private right of action for "any deception, fraud, false pretense, false promise,

misrepresentation . . . or omission of any material fact with intent that others rely upon such

[misrepresentation] or omission . . . ." 6 Del. C. §2513(a).

Nationwide frequently says that individualized proof of reliance will operate as a bar to

class certification here. But again, CFA claims require no proof of the consumer's reliance.

They require, rather, proof of the seller's intent that others rely upon the offending

misrepresentation. S & R Assoc. v. Shell Oil Co., 725 A.2d 431, 440 (Del. Super. Ct. 1998).

There can be no question that the complaint pleads Nationwide's misrepresentation of a

material contract term. It places that misconduct in the context of a thoroughly one-sided

transaction -- one in which the consumer has no choice but to rely on the insurer's expertise and

honesty. It alleges in detail the circumstances under which the misrepresentation is made, the commercial motivation that spawns that misrepresentation, and the plaintiffs' resulting injury.

There can be no serious question that the Eames plaintiffs have successfully pled a CFA claim.

## X. THE PLAINTIFFS HAVE SUCCESSFULLY PLED A CLAIM FOR CIVIL CONSPIRACY

The elements of civil conspiracy under Delaware law are 1) a confederation or combination of two or more persons, 2) an unlawful act done in furtherance of the conspiracy, and 3) damages. Nicolet, Inc. v. Nutt, 525 A.2d 146, 149-50 (Del. 1987) (citation omitted). Accord, Aeroglobal Capital Mgmt., LLC v. Cirrus Indus., Inc., 871 A.2d 428, 437 n.8 (Del. 2005) (citing Nicolet). The complaint alleges that Nationwide, *"acting with and through its agents* in Delaware, has misrepresented to large numbers of Delaware insureds (including the proposed class representatives) the limits of liability of their PIP coverage." B36 (Compl. ¶9) (emphasis added). Outlining common questions of law and fact for purposes of class certification, the complaint specifically identifies the issue of "[w]hether Nationwide has engaged in one or more acts of civil conspiracy . . . ." B41 (Compl. ¶17(j)). The complaint elaborates on these allegations within Count V, the dedicated count for civil conspiracy:

> 39. As alleged above, Nationwide has misrepresented the amount of PIP limits available under its Delaware auto policies through the services of its agents in Delaware, including insurance agents.
>
> 40. By purposefully misrepresenting PIP limits through the use of agents, Nationwide has combined with one or more persons in unlawful acts done in furtherance of a conspiracy.

B48-49 (Compl. ¶¶39-40). And as before, the complaint alleges resulting damages. B49 (Compl. ¶41).

The systematic deceptive conduct described in the complaint is nothing if not "unlawful"; and certainly consumer fraud must qualify as an "unlawful act" for purposes of pleading civil conspiracy. There can thus be no question that the Eames plaintiffs have successfully pled civil conspiracy against Nationwide.

Nationwide says, however, that claims for civil conspiracy are subject to some heightened standard of pleading. But its authority for that proposition, Ramunno v. Cawley, 705 A.2d 1029 (Del. 1998), expressly reserves the "higher pleadings standard" for cases involving First Amendment concerns:

> [W]e hold that in the First Amendment context, a higher pleading standard is appropriate where the plaintiff asserts a claim for civil conspiracy. The complaint must set forth specific facts such as "meetings, conferences, telephone calls or joint signatures on written recommendations . . . to indicate a conspiracy."

Ramunno, 705 A.2d at 1039 (quoting Petula v. Mellody, 588 A.2d 103, 107 (Pa. Cmwlth. Ct. 1991)). Nationwide identifies no First Amendment concerns implicated by the Eames plaintiffs' complaint; and clearly none exist. Nor does Rule 9(b), which specifies the types of claims to be pled with particularity, make any mention of civil conspiracy.

In summary, the Eames plaintiffs' allegations of civil conspiracy are subject to the ordinary standard for notice pleading. The complaint easily meets that standard. The elements of civil conspiracy have been successfully pled, and the civil conspiracy claim should now proceed to discovery and trial.

## CONCLUSION

For the reasons set forth above, the Eames plaintiffs respectfully request that

Nationwide's motion be denied in its entirety.

Respectfully submitted,

MURPHY SPADARO & LANDON

/s/ John S. Spadaro
John S. Spadaro, No. 3155
1011 Centre Road, Suite 210
Wilmington, DE 19805
(302)472-8100

and

Clayton E. Bunting, No. 376
Wilson Halbrook & Bayard
107 West Market Street
P.O. Box 690
Georgetown, DE 19947
(302)856-0015

Attorneys for plaintiffs
Thomas A. Eames, Roberta L. Eames and Tammy
Eames (on behalf of themselves and all others
similarly situated)

August 22, 2005

## IN THE UNITED STATES DISTRICT COURT
## IN AND FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| THOMAS A. EAMES, ROBERTA L. EAMES and TAMMY EAMES, on behalf of themselves and all others similarly situated, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | C.A. No. 04-CV-1324KAJ |
| v. | ) ) | |
| NATIONWIDE MUTUAL INSURANCE COMPANY, | ) ) ) | |
| Defendant. | ) ) | |

## NOTICE OF SERVICE

I hereby certify that on this date, I electronically filed the foregoing document with the Clerk

of the Court using CM/ECF which will send notification of such filing(s) to the following:

Nicholas E. Skiles, Esq.
Swartz Campbell LLC
300 Delaware Avenue, Suite 1130
P.O. Box 330
Wilmington, DE 19899

MURPHY SPADARO & LANDON

/s/ John S. Spadaro
John S. Spadaro, No. 3155
1011 Centre Road, Suite 210
Wilmington, DE 19805
(302) 472-8100

Attorneys for plaintiffs
Thomas A. Eames, Roberta L. Eames and
Tammy Eames (on behalf of themselves and
all others similarly situated)

August 22, 2005

123255