# EXHIBIT G

Not Reported in F.Supp.2d  
Not Reported in F.Supp.2d, 2004 WL 1794499 (S.D.N.Y.)  
(Cite as: 2004 WL 1794499 (S.D.N.Y.))  
C

Page 1

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court,  
S.D. New York.  
CSFB HOLT LLC, Plaintiff,  
v.  
COLLINS STEWART LIMITED, Collins Stewart, Inc., and Terence Charles Smith Defendants.  
No. 02 Civ. 3069(LBS).

Aug. 10, 2004.

*MEMORANDUM AND ORDER*

SAND, J.

*1 Plaintiff CSFB HOLT LLC ("HOLT"), [FN1] a Delaware limited liability company, brings this action alleging federal trademark infringement and dilution, copyright infringement, and unfair competition, as well as various state law claims, against Defendants Collins Stewart Limited ("CSL"), a United Kingdom ("UK") corporation, Collins Stewart, Inc. ("CSI"), a Delaware corporation and wholly-owned subsidiary of CSL, and Terence Charles Smith ("Smith"), a UK citizen and resident (collectively referred to as "Defendants"). Defendants move for partial summary judgment on the ground that certain of HOLT's claims are barred by issue preclusion, and that all causes of action against CSL and Smith are barred by claim preclusion. In addition, Defendants assert that three of HOLT's state law claims are time-barred. For the reasons set forth below, Defendants' motion is denied.

>   FN1. As alleged in the Amended Complaint, "CSFB acquired substantially all the assets of HOLT Value Associates, L.P., formerly the Plaintiff in this case, in or around January 2002." (Amended Complaint ("Am.Compl.") ¶ 2). For purposes of this motion, Defendants have referred to "CSFB HOLT LLC and its predecessors in interest as 'HOLT."' (Defendants' Memorandum in Support of their Motion to Dismiss ("Defs.'s Mem. Supp. Mot. Dismiss") at 1 n. 1). The Court will do the same.

I. Background

As described in the Amended Complaint, HOLT "developed a proprietary valuation model, distinguished by the acronym 'CFROI,' for evaluating a security's or portfolio's performance." (Amended Complaint ("Am.Compl.") ¶ 11). In February 1995, HOLT and CSL entered into a license agreement that provided CSL with a subscription to HOLT's "CFROI" database and related software. (Am.Compl.¶¶ 28).

Following subsequent discussions regarding a potential joint venture, which did not bear out, Smith, then President and Director of CSL, informed HOLT, by letter dated October 22, 1996, that CSL was terminating its license agreement with HOLT effective January 31, 1997 and that CSL was in the process of creating its own securities valuation tool, which was ultimately released as a product known as "Quest." (*See* Am. Compl. ¶¶ 5, 44, 46, 48).

HOLT alleges that "Smith and CSL never had any intention of entering into a joint venture relationship with HOLT" but instead engaged in those negotiations as a means of obtaining HOLT's proprietary information so that CSL could use that information to complete a valuation model that would compete with HOLT's "CFROI" database and software. (Am.Compl.¶ 49). HOLT further alleges, among other things, that Defendants used the "CFROI" mark in materials distributed to market Defendants' products, and that Defendants published and distributed "substantial portions" of certain copyrighted works without HOLT's permission. (Am.Compl.¶¶ 58, 61, 64).

In June 2000, HOLT sent a cease and desist letter to CSL alleging that CSL was infringing HOLT's rights in its Community Trade Mark "CFROI." In January 2001, CSL itself initiated a suit against HOLT and its UK subsidiary (collectively referred to as "HOLT") in the Chancery Division of England's High Court of Justice seeking injunctive and declaratory relief. HOLT counterclaimed, asserting trademark infringement against CSL. In July 2002, the English Court, at the parties' request, entered a Consent Order dismissing the suit. The Consent Order directed HOLT to "refrain from

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
(Cite as: 2004 WL 1794499, *1 (S.D.N.Y.))

Page 2

threatening any person with infringement of Community Trade Mark registration number 527,325." It also declared that "Community Trade Mark registration number 527,325 is invalid and should be removed from the Register of Trade Marks" and that CSL's "pleaded use of the sign CFROI does not constitute an infringement of Community Trade Mark registration number 527,325." In addition, the Consent Order awarded costs to CSL.

*2 In the spring of 2001, CSL filed two petitions for cancellation of HOLT's Registrations of "CFROI" with the Trademark Trial and Appeal Board ("TTAB") of the United States Patent and Trademark Office. These proceedings were consolidated and later suspended "pending final disposition of the civil action between the parties." (Declaration of Jeffrey G. Mote in Support of Plaintiff's Response to Defendant's Motion to Dismiss, 11/14/02, Ex. C).

On August 31, 2001, HOLT initiated the instant action against Defendants in the Northern District of Illinois. CSI filed a motion to dismiss pursuant to Fed.R.Civ.P. 12, asserting lack of personal jurisdiction and failure to state a cause of action in certain counts of the complaint. In the alternative, CSI requested that the court stay the action pending the resolution of proceedings in England and before the TTAB. Judge Shadur of the Northern District of Illinois declined to stay the action, denied CSI's motion except as to the consumer fraud cause of action in Count Ten and the question of personal jurisdiction, and transferred the case to this Court.

In October 2002, Defendants filed a motion to dismiss, or in the alternative a motion for summary judgment, with this Court, asserting issue preclusion, claim preclusion, and statute-of-limitations defenses with respect to certain of HOLT's claims. [FN2] Following oral argument on May 28, 2003, the Court converted Defendants' motion to dismiss into a motion for partial summary judgment, and requested that the parties submit supplemental papers. The parties filed supplemental memoranda of law and supporting affidavits in March 2004. The Court heard further oral argument on May 24, 2004.

   FN2. Defendants mention in passing in a footnote that "Count X, for trademark dilution under the Illinois statute, is defective for the additional reason that the protection of the Illinois Anti-Dilution statute is not available to competitors." (Defs.'s Mem. Supp. Mot. Dismiss at 10 n. 7) (internal quotation marks and citation omitted)). Defendants further suggest that Counts XII and XIII, to the extent they are based on trade secret misappropriation, are "preempted by HOLT's claim under the Illinois trade secret act." (Id.) (citation omitted)). These arguments were not the subject of any additional briefing by Defendants and were not addressed in HOLT's opposing papers, nor were they the subject of oral argument before the Court in 2003 or 2004. The Court therefore declines to address them in this Memorandum and Order.

II. Discussion

A. Standard for Summary Judgment

A motion for summary judgment will be granted only if "there is no genuine issue as to any material fact" and "the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The moving party bears the initial burden of establishing "the absence of a genuine issue of material fact." Celotex Corp., 477 U.S. at 323. "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986) (citing Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-59 (1970)). Nonetheless, "[c]onclusory allegations, conjecture, and speculation ... are insufficient to create a genuine issue of fact." Niagara Mohawk Power Corp. v. Jones Chem., Inc., 315 F.3d 171, 175 (2d Cir.2003) (internal quotation marks and citation omitted).

B. Issue Preclusion

Defendants ask the Court to preclude HOLT from litigating issues related to its asserted trademark rights in "CFROI" because those issues were resolved in the English proceeding. Defendants assert that the English action established the following, in summary: "that the term 'CFROI' is a generic term in the English language to describe a valuation technique [known as "cash flow return on investment"]," that the technique has been "commonly used by the trade ... for about 10 years," "that 'CFROI' is not capable of

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

distinguishing the goods or services of one undertaking from those of another, [and] that it is devoid of any distinctive character." (Defendants' Reply to Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Dismiss ("Defs.'s Reply Mem.") at 10) (internal quotation marks and citation omitted)).

*3 HOLT, in response, argues that the English Consent Order is inadmissible because trademark rights are local, rendering the foreign judgment irrelevant to the current litigation before this Court. Moreover, HOLT argues, the Consent Order contains no findings with respect to whether "CFROI" is generic, and further, the parties never intended the Consent Order to preclude future litigation of trademark issues outside the UK.

Federal courts have observed that "[a] trademark is inherently territorial and it exists in each country solely according to that particular country's statutory scheme." *Calzaturificio Rangoni S.p.A. v. United States Shoe Corp.*, 868 F.Supp. 1414, 1418 (S.D.N.Y.1994). The Court of Appeals for the Second Circuit has recognized the general principle that "when trade-mark rights within the United States are being litigated in an American court, the decisions of foreign courts concerning the respective trademark rights of the parties are irrelevant and inadmissible." *Vanity Fair Mills, Inc. v. The T. Eaton Co.*, 234 F.2d 633, 639 (2d Cir.1956). Indeed, Defendants themselves state that they are not asking the Court to apply *res judicata* with respect to HOLT's U.S. trademark rights but rather are only invoking the doctrine of issue preclusion.

Recognizing the general principle articulated in *Vanity Fair*, Defendants argue that the notion of territoriality does not serve as an absolute bar to the admissibility of foreign judgments in the context of trademark litigation. As the Second Circuit explained in *Otokoyama Co. Ltd. v. Wine of Japan Import, Inc.*, 175 F.3d 266 (2d Cir.1999), "[w]hether a foreign decision is relevant in a trademark case in our courts depends on the purpose for which it is offered. The fact that a litigant has been awarded or denied rights over a mark in a foreign country does not determine its entitlement to the mark in the United States. The foreign decision is not admissible if that is the purpose of the offer. But if ... the foreign decision is competent evidence of a relevant fact, it is relevant and admissible to prove that fact." *Id.* at 273. The court concluded that a decision of the Japanese Patent Office was admissible because it was offered to prove that "otokoyama" is a generic term for sake, and to show that the plaintiff fraudulently represented to the U.S. Patent and Trademark Office that the word otokoyama is an "arbitrary, fanciful term." *Id.* (internal quotation marks omitted).

In the instant case, Defendants rely on *Otokoyama* to argue that the Consent Order bars further litigation of the issues that Defendants contend were resolved by the English action. However, *Otokoyama*, decided in the context of an appeal on a motion for a preliminary injunction, did not treat the decision of the Japanese Patent Office as dispositive, but merely concluded that it was admissible as relevant to the determination of certain facts. The Court of Appeals noted that "[w]hether otokoyama is generic in Japanese as defendant contends remains to be seen based on the evidence that will be presented at trial." *Id.*

*4 "Under federal law, four elements must be met for issue preclusion to apply: '(1) the issues of both proceedings must be identical, (2) the relevant issues were actually litigated and decided in the prior proceeding, (3) there must have been 'full and fair opportunity' for the litigation of the issues in the prior proceeding, and (4) the issues were necessary to support a valid and final judgment on the merits." *Alfadda v. Fenn*, 966 F.Supp. 1317, 1330 (S.D.N.Y.1997) (quoting *Central Hudson Gas & Elec. Corp. v. Empresa Naviera Santa S.A.*, 56 F.3d 359, 368 (2d Cir.1995)). [FN3]

> FN3. "[A] federal court should normally apply either federal or state law, depending on the nature of the claim, to determine the preclusive effect of a foreign country judgment." *Alfadda v. Fenn*, 966 F.Supp. 1317, 1329 (S.D.N.Y.1997); *but see id.* at 1327 (recognizing the existence of some decisions to the contrary). (*See also* Plaintiff's Memorandum in Opposition to Defendants' Motion to Dismiss ("Pl.'s Mem. Opp'n Mot. Dismiss") at 16 n. 16 (observing, in the context of claim preclusion, that "Second Circuit law" applies to determine the preclusive effect, if any, of the Consent Order on HOLT's federal claims); Defs.'s Mem. Supp. Mot. Dismiss at 17 (quoting *Alfadda* )).

Defendants argue that the "essential and dispositive issues" in the English proceeding and the instant

trademark dispute--whether "CFROI" is generic, whether it is incapable of distinguishing goods and services, and whether it is lacks any distinctive qualities--are identical. (Defs.'s Reply Mem. at 10). At oral argument, counsel stated, "[w]e have an English language term, CFROI, being held generically. So certainly that is dispositive of the trademark issues here." (Tr. of Oral Arg. of 5/28/03, at 13). Yet "most courts say that the generic usage of a term [even] in another English speaking nation does not automatically mean that that term is also generic in the United States." 2 *McCarthy on Trademarks and Unfair Competition* § 12.43, at 12-109 (West 2004).

Although Defendants assert that the judgment of the English court was a "capitulation" not a negotiated consent decree, the law with respect to consent orders presents a relevant analogy. Accordingly, the Court notes that "[i]ssues decided by consent judgments do not normally have collateral estoppel effect because they do not meet the requirement that the issue be actually litigated." *Mishkin v. Peat, Marwick, Mitchell & Co.*, No. 86 Civ. 4301(KMW), 1988 WL 391648, at *2 (S.D.N.Y. Nov. 7, 1988). Nonetheless, in light of their "basically contractual nature," Charles A. Wright, et al., 18A *Federal Practice and Procedure* § 4443, at 262 (West 2002), consent judgments may foreclose future litigation of an issue or issues if the parties clearly intended the judgment to have such an effect. *See Rocket Jewelry Box, Inc. v. Noble Gift Packaging, Inc.*, No. 95 Civ. 7900(MBM), 2001 WL 38285, at *2-3 (S.D.N.Y. Jan. 16, 2001).

In this case, the Consent Order itself does not contain specific findings with respect to issues such as whether "CFROI" is generic, nor does it expressly bar subsequent litigation of them. Yet Defendants assert that "[i]n agreeing to the entry of the Consent Order, HOLT necessarily agreed to each of these issues being decided adversely to HOLT." (Defs.'s Reply Mem. at 9).

Supplemental submissions by the parties concerning their intent with respect to issue preclusion do not clearly establish the existence of an agreement along those lines. To the contrary, declarations filed by HOLT lend support to its position that the Consent Order was not intended to bar future litigation of any issues touching upon HOLT's trademark rights in "CFROI" outside the UK. (*See e.g.*, Declaration of John Birkhold, 3/12/04, ¶ 8 ("I can categorically state there was never any intention on my part or on the part of HOLT that the resolution of the UK Action, including the Consent Decree that was entered in the Action would have any effect whatsoever on or provide any grounds of invalidity or for revocation of the trademark 'CFROI' in any jurisdiction except the United Kingdom.")).

*5 In a letter dated June 19, 2002, Anthony Willoughby, HOLT's solicitor, informed Seamus Smyth, CSL's solicitor, that HOLT would agree to a declaration that its Community Trade Mark was invalid "insofar as it covers the United Kingdom." (Declaration of Anthony James Tweedale Willoughby, 3/19/04 ("Willoughby Declaration"), Ex. A). Mr. Smyth states in his declaration that CSL rejected that limitation, a fact which he says is reflected in the language of the final Consent Order--it simply states that the Community Trade Mark is invalid and should be removed from the Register. (Declaration of James Spence Sealy Smyth, 3/19/04, ¶ 13). HOLT presents evidence to dispute this concession, including a July 3, 2002 letter in which Mr. Willoughby again reiterates HOLT's refusal to "accept that any grounds for invalidity exist anywhere other than in the UK." (Willoughby Declaration, Ex. B).

As further support for its position, HOLT notes that it has successfully obtained registrations of its "CFROI" mark from countries within the European Community itself since its Community Trade Mark was cancelled by the Consent Order. (*See* Willoughby Declaration ¶¶ 10-12).

Upon review of the evidence submitted by the parties, the Court concludes that genuine issues of material fact exist with respect to the intended scope and preclusive effect of the Consent Order.

One additional point bears mentioning. Defendants, relying on *In re Weiss*, 255 B.R. 115 (S.D.N.Y.2000), insist that the requirement of actual litigation is satisfied because HOLT participated in pre-trial litigation for some 18 months and then capitulated several weeks before trial. In particular, Defendants point to language suggesting that " 'a growing body of law both within Texas and in the Federal Circuit Courts' supports the conclusion that where, as in this case, the party to be precluded actively engages in pre-trial

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

litigation for an extended period of time and then, on the day set for trial, chooses not to have the merits of its claims or defenses adjudicated, that party cannot be later heard to insist that its adversary must relitigate issues raised in the first case as though that case never occurred." *Id.* at 117 (quoting and summarizing the bankruptcy court's opinion). The Court does not believe that *In re Weiss* compels a similar conclusion under the circumstances present in this case. A number of distinguishing factors are present, including the fact that the debtor in *In re Weiss* announced in court on the date of trial that he was confessing judgment.

In light of the foregoing, the motion for partial summary judgment based on issue preclusion is denied.

*C. Claim Preclusion*

Defendants also contend that the doctrine of claim preclusion bars all of HOLT's claims against CSL and Smith. They assert that the Consent Order was a "final judgment disposing of HOLT's trademark claims" and argue that, to the extent HOLT's current claims were not raised in the English proceeding, they could and should have been advanced there. (Defs.'s Mem. Supp. Mot. Dismiss at 19).

**\*6** The Court first addresses the Consent Order's effect on HOLT's federal claims. Under federal law, claim preclusion prohibits "subsequent litigation between the same parties and those in privity with them involving the same cause of action" following "a final judgment on the merits" by "a court of competent jurisdiction." *Rezzonico v. H & R Block, Inc.*, 182 F.3d 144, 148 (2d Cir.1999). "The burden is on the party seeking to invoke *res judicata* to prove that the doctrine bars the second action." *Well-Made Toy Mfg. Corp. v. Lotus Onda Indus. Co., Ltd.*, No. 02 Civ. 1151(CBM), 2003 WL 42001 (S.D.N.Y. Jan. 6, 2003), at \*9 (citing *Computer Associates Int'l v. Altai*, 126 F.3d 365, 369 (2d Cir.1997)). It is also relevant to note, as mentioned above, that "[t]he preclusive effect of a settlement is measured by the intent of the parties to the settlement." *Greenberg v. Board of Governors of Federal Reserve System*, 968 F.2d 164, 168 (2d Cir.1992).

Defendants themselves, conceding that the validity of a party's trademark rights is governed by principles of territoriality, explain that they are not relying upon *res judicata* but rather issue preclusion (addressed above) with respect to claims involving HOLT's trademark rights in "CFROI." (*See* Defs.'s Reply Mem. at 8 ("[D]efendants are not seeking to argue that the Consent Order is *res judicata* as to the trademark issues in this action.")). Indeed, as mentioned above, "[t]he fact that a litigant has been awarded or denied rights over a mark in a foreign country ordinarily does not determine its entitlement to the mark in the United States." *Otokoyama*, 175 F.3d at 273.

The Court further notes that, on its face, the Consent Order speaks only of the Community Mark and makes no mention of U.S. trademark rights nor of other claims that were by then pending in U.S. federal court. The parties' dispute concerning the history that led to this language has already been discussed above. In addition, it bears mentioning that the Consent Order was entered into following unsuccessful attempts to reach a "global settlement" of all claims (including those which were then pending in the United States) between the parties.

The Court concludes that it would be inappropriate to grant summary judgment in favor of Defendants on the ground that HOLT's federal claims are barred by *res judicata*. In reaching this determination, we are mindful of the principle that "United States courts are not *obligated* to recognize judgments rendered by a foreign state, but may *choose* to give res judicata effect to foreign judgements on the basis of comity." *Gordon & Breach Sci. Publishers S.A. v. American Inst. of Physics*, 905 F.Supp. 169, 178-79 (S.D.N.Y.1995) (emphasis in original).

With respect to the preclusive effect of the Consent Order on HOLT's state law claims, Defendants contend that New York's choice-of-law principles govern and that New York would look to English law on successive actions. HOLT, in contrast, contends that Illinois rather than New York law applies (though HOLT fails to explain how the rules of the two states differ).

**\*7** Even assuming arguendo that Defendants are right to apply English preclusion law, the Court declines to grant summary judgment on the ground that the Consent Order bars HOLT's state law

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

claims. As evidence of English law on the question of successive actions, Defendants offer the joint opinion of two English barristers, both of whom represented CSL in the English action. (*See* Opinion of Kevin Garnett and Andrew Norris, 10/11/02, attached as Ex. N to the Declaration of Richard L. Crisona in Support of Defendants' Motion, 10/11/02). That opinion outlines a "general principle that it is an abuse of process to bring a second action raising issues that could have been and should have been raised in the first." (*Id.* ¶ 6(b)). The opinion notes that the "guiding principle is the power to prevent proceedings which are manifestly unfair" and "[t]he matter is one of a broad, merits-based judgment." (*Id.* ¶ 7(d) & (f)). The opinion concludes by stating the view that "an English Court would, on an application by the Collins Stewart companies and Mr. Smith, prevent HOLT from bringing proceedings in England" with respect to breach of the shrink-wrap license, wrongful misuse of trade secrets, false or misleading representations through the use of "CFROI," copyright infringement, fraudulent statements to HOLT, and conversion. (*Id.* ¶¶ 10, 15). The opinion notes that these issues were addressed in witness statements, but never raised as claims by HOLT in the English proceeding. (*Id.* ¶ 11).

Nonetheless, the Court finds Defendants' position with respect to HOLT's state law claims unpersuasive for a number of reasons. Among them, the Court notes that Defendants fail to address HOLT's argument that it could not have brought certain of its state law claims in England because of the forum selection clause contained within the license agreement. In addition, Defendants' papers and the joint opinion focus on what *could* have been brought in the English action without any meaningful discussion of what *should* have been raised by HOLT and why. As such, the Court is not satisfied, even accepting the joint opinion's statement of English law, that HOLT's current assertion of its state law claims would constitute an abuse of process under the general principles outlined therein.

D. *Statutes of Limitations*

Finally, Defendants argue that, on the face of the Amended Complaint, Counts III (trade secret misappropriation under New York common law), XIII (violation of the Illinois Consumer Fraud Act) and XV (conversion as asserted under New York common law) are time-barred. These asserted grounds for dismissal "deal [ ] strictly with the face of the pleadings" (Tr. of Oral Arg. of 5/28/03, at 15), and are therefore considered under the standard for a motion to dismiss.

A motion to dismiss may be granted only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). The court presumes that facts set forth in the plaintiff's complaint are true, and draws "all reasonable inferences in the plaintiff's favor." *Lee v. Bankers Trust Co.*, 166 F.3d 540, 543 (2d Cir.1999).

*8 As an initial matter, the Court rejects HOLT's argument that one defendant, CSI, waived any statute-of-limitations defense because CSI failed to raise such a defense in its Fed.R.Civ.P. 12(b)(6) motion before Judge Shadur. "By the express terms of Rule 12(h)(2), a 12(b)(6) defense 'may be made in any pleading permitted or ordered under Rule 7(a), or by motion for judgment on the pleadings, or at the trial on the merits,' and, by the express terms of Rule 12(g), is not waived by failure to include it in a Rule 12 motion raising other defenses." *Santos v. District Council of New York City and Vicinity of United Brotherhood of Carpenters and Joiners of America, AFL-CIO*, 619 F.2d 963, 967 n. 4 (2d Cir.1980).

The parties agree that all three causes of action mentioned above are subject to a three-year statute of limitations. *See* N.Y. C.P.L.R. § 214(4); 815 ILCS 505/10a(e). The question the Court must consider is when each of the three causes of action accrued.

Defendants contend that "the face of the Amended Complaint shows that HOLT was or should have been aware of the facts supposedly giving rise to these claims no later than in or about October 1996-- nearly five years before the commencement of this action in August 2001." (Defs.'s Mem. Supp. Mot. Dismiss at 20). In particular, Defendants point to the following allegations (among others): (1) that Smith sent a letter to HOLT in October 1996, stating that CSL was terminating the license agreement between the parties and that it was in the process of creating its own stock valuation model; and (2) that

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

"[s]hortly after receiving this letter," "Smith refused ... to explain how [CSL] *had* independently developed a competing securities valuation product in such a short period of time." (Defs.'s Reply Mem. at 14 (quoting Am. Compl. ¶ 46) (internal quotation marks omitted)).

"Under New York law, when a trade secret misappropriation claim accrues depends on what the party alleged to have committed the misappropriation did with the information. If a party misappropriates and publicly discloses a trade secret, the claim accrues upon disclosure. If, however, the party keeps the secret confidential yet makes use of it to his own commercial advantage, each successive use constitutes a new actionable tort for purposes of the statute of limitations." *Bausch & Lomb Inc. v. Alcon Laboratories, Inc.*, 64 F.Supp.2d 233, 247 (W.D.N.Y.1999) (internal quotation marks and citations omitted) (emphasis removed).

Here, HOLT alleges that "Defendants misappropriated, used and continue to use HOLT trade secrets in violation of New York common law." (Am.Compl.¶ 85). The date of the first alleged use by Defendants is not clearly established by the allegations in the Amended Complaint. Moreover, because HOLT's allegations are continuing in nature, and there does not appear to be an allegation of public disclosure on the face of the Amended Complaint, any use of HOLT's trade secrets within the three years preceding the filing of the instant action will satisfy the statute of limitations. *See e.g., Kistler Instrumente A.G. v. PCB Piezotronics, Inc.*, 419 F.Supp. 120, 123 (W.D.N.Y.1976) ("In the instant case, plaintiff asserts that the defendant continues to use the confidential information and technical know-how allegedly misappropriated and that the trade secrets have not been destroyed by publication and remain confidential. Therefore the misappropriation and use of the confidential information by the defendant within three years prior to the commencement of this suit remains actionable for damages and other appropriate relief.").

*9 With respect to HOLT's claim under the Illinois Consumer Fraud and Deceptive Business Practices Act, the statute of limitations "begins to run 'when the plaintiff knows or reasonably should know of the injury and knows or reasonably should know that the injury was wrongfully caused." *In re Mut. Life Ins. Co. of New York Premium Litigation* 299 F.Supp.2d 4, 5 (D.Mass.2004) (quoting *Bradley v. Alpine Constr. Co.*, 224 Ill.App.3d 432, 166 Ill.Dec. 695, 586 N.E.2d 653, 655 (1991)). Defendants contend that HOLT knew or reasonably should have known of the injury and that it was wrongfully caused as of October 1996, when HOLT received Smith's letter, or shortly thereafter, when Smith failed to answer HOLT's questions about CSL's product. Drawing all reasonable inferences in HOLT's favor, the Court does not conclude that, on the face of the pleadings, the action is time-barred. If and when HOLT knew or should have known of a wrongful injury is a factual question not clearly answered by the Amended Complaint and therefore not appropriately resolved at this stage of the proceedings.

Turning to the New York conversion claim, the statute of limitations begins to run from the date on which the conversion took place. *See Estate of Davis v. Trojer*, No. 99 Civ. 11056(JSM)(KNF), 2001 WL 829872, at *2 (S.D.N.Y. July 20, 2001); *Sporn v. MCA Records, Inc.*, 58 N.Y.2d 482, 488 (Ct.App.1983). "[A] claim for conversion is not continuing in nature," *Galet v. Carolace Embroidery Products Co., Inc.*, No. 91 Civ. 7991(SS), 1994 WL 542275, at *4 (S.D.N.Y. Oct. 5, 1994), and "[k]nowledge of the occurrence of the conversion by the aggrieved party is not necessary to start the running of the statute of limitations." *Estate of Davis*, 2001 WL 829872, at *2.

Here, HOLT alleges that "CSL wrongfully converted the property of HOLT by refusing to return the Licensed Software and database information upon demand of HOLT and by continuing to use the Licensed Software and database information after the licensing agreement had terminated and for purposes of reverse-engineering the software program to assist CSL in developing a competing valuation product." (Am.Compl.¶ 145).

Under New York law, conversion is defined as the "denial or violation of the plaintiff's dominion, rights, or possession" of the plaintiff's property. *Sporn*, 58 N.Y.2d at 487. Conversion occurs when the defendant "commercially exploit[s] the property as its own." *SongByrd, Inc. v. Estate of Grossman*, 206 F.3d 172, 182 (2d Cir.2000) (quoting *Sporn v.*

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
(Cite as: 2004 WL 1794499, *9 (S.D.N.Y.))

Page 8

*MCA Records, Inc.*, 58 N.Y.2d at 489) (internal quotation marks omitted). Defendants contend that, according to Plaintiff's own allegations, the conversion must have taken place by October 1996 or shortly thereafter, in light of Smith's apparent failure at that time to provide an explanation of how CSL had already developed a competing valuation tool on its own. HOLT counters that its allegations concerning its attempts to communicate with Smith merely describe HOLT's inquiries regarding CSL's efforts, to which Smith did not respond, and do not establish the date on which CSL actually "exercised ownership over the software, to the exclusion of HOLT's rights." (*See* Pl.'s Mem. Opp'n Mot. Dismiss at 22 n. 24, 24).

*10 Drawing all reasonable inferences in HOLT's favor, the Court concludes that the allegations cited by Defendants do not clearly establish that the New York conversion claim is time-barred on the face of the Amended Complaint.

III. Conclusion

For the reasons set forth above, the motion is DENIED. The parties are to advise the Court in writing by September 13, 2004 of a proposed schedule for completion of all pre-trial matters, submission of a pre-trial order, and proposed trial date.

SO ORDERED.

Not Reported in F.Supp.2d, 2004 WL 1794499 (S.D.N.Y.)

**Motions, Pleadings and Filings (Back to top)**

. 1:02cv03069 (Docket) (Apr. 23, 2002)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

KeyCite                                                                                             Page 9

Date of Printing: MAR 01,2006

## KEYCITE

**C**SCFB HOLT LLC v. Collins Stewart Ltd., 2004 WL 1794499 (S.D.N.Y., Aug 10, 2004) (NO. 02 CIV. 3069 (LBS))
History
= >     1  SCFB HOLT LLC v. Collins Stewart Ltd., 2004 WL 1794499 (S.D.N.Y. Aug 10, 2004) (NO. 02 CIV. 3069 (LBS))

Court Documents
Dockets (U.S.A.)

S.D.N.Y.
. CSFB HOLT LLC, ET AL v. COLINS STEWART, ET AL, NO. 1:02cv03069 (Docket) (S.D.N.Y. Apr. 23, 2002)
(Dockets from KeyCite available on westlaw.com)

© Copyright 2006 West, Carswell, Sweet & Maxwell Asia and Thomson Legal & Regulatory Limited, ABN 64 058 914 668, or their Licensors. All rights reserved.