IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| Thomas A. Eames, Roberta L. Eames, and Tammy Eames, on behalf themselves and all others similarly situated,<br><br>    Plaintiffs,<br>v.<br><br>Nationwide Mutual Insurance Company,<br><br>    Defendant. | CIVIL ACTION NO. 04-1324-KAJ |

**DEFENDANTS' REPLY IN SUPPORT OF MOTION
TO DISMISS PLAINTIFFS' AMENDED COMPLAINT**

Nicholas Skiles, Esquire (DE Bar #:3777)
Swartz Campbell LLC
300 Delaware Avenue, Suite 1130
P. O. Box 330
Wilmington, DE 19801
(302) 656-5935
Attorneys for Defendant,
Nationwide Mutual Insurance Company

**TABLE OF CONTENTS**

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    A.    Plaintiffs Fail to Satisfy the Court's Directive and Rule 9(b) . . . . . . . . . . . . .1
    1.    Plaintiffs Belatedly Argue For Reconsideration . . . . . . . . . . . . . . . . . . . . . . 1
    2.    Plaintiffs Fail To Establish Any Justification For Pleading "On Information And Belief" . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
    3.    Plaintiffs Fail To Address That Even Their Direct Allegations Regarding Documents And Oral Misrepresentations Remain Improperly Vague And Unspecific . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
    B.  Plaintiffs Do Not Sufficiently Plead Harm As Required By The Court. . . . . . . . 9
    C.  Plaintiffs' Claims Are Barred By The Statute of Limitations  . . . . . . . . . . . . 10
    D.  Plaintiffs Fail To State A Claim For Civil Conspiracy . . . . . . . . . . . . . . . . . . . 12
    E.  Plaintiffs Mischaracterize Nationwide's Standing Arguments As "Privity" Arguments . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
    F.  Plaintiffs' Amended Complaint Includes New Matters Which May Properly Be Challenged By A Rule 12 Motion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

# TABLE OF AUTHORITIES

**CASE LAW**

*Chicago Board Options Exchange, Inc. v. Connecticut General Life Ins. Co.*, 713 F.2d 254 (7th Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Crowhorn v. Nationwide Mutual Insurance Company*, C.A. No. 00C-06-010WLW, 200 WL 1767529 (Del.Super.Ct. July 10, 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

*Dentsply International, Inc. v. Kerr Manufacturing Company*, 42 F.Supp. 2d 385 (D.Del. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Duane Adam Thomas v. Harford Mutual Insurance Company*, C.A. No. 01C-01-046 HDR, 2003 Del.Super. LEXIS 268 (July 25, 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Faulkner v. Verizon Communications, Inc.*, 156 F.Supp. 2d 384 (S.D.N.Y. 2001) . . . . . 3

*First Capital Asset Management, Inc. v. Satinwood, Inc.,* 385 F.3d 159 (2nd Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 3

*Montalvo v. Tower Life Building*, 426 F.2d 1135 (5th Cir. 1970) . . . . . . . . . . . . . . . . 7, 8

*Norman Gershman's Things to Wear v. Mercedes-Benz*, 558 A.2d 1066 (Del.Super.Ct. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Oglesby v. Penn Mutual Life Ins. Co.*, 877 F.Supp. 872 (D.Del. 1995) . . . . . . . . . . . . . . 2

*Pack & Process Inc. v. Celotex Corp.*, 503 A 2d. 246 (Del.Super. 1985) . . . . . . . . . . . .11

*Pennsylvania Employee Benefit Trust Fund v. Zeneca, Inc.*, Civ.No. 05-075-SLR, 2005 U.S.Dist. LEXIS 27444 (D.Del. November 8, 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Sachetta v. Bellvue Four, Inc.*, C.A. No. 97C-07-042WTQ, 1999 WL 463712, slip op. (Del.Super. Ct. June 9, 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Seville Industrial Machine Corp. v. Southmost Machinery Corp.,* 742 F.2d 786 (3rd Cir. 1984),  *cert. denied* 469 U.S. 1211 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

**STATUTES**

6 *Del C.* Section 2513 (The Delaware Consumer Fraud Statute)  . . . . . . . . . 5, 6, 7, 8, 13

Section 815 ILCS 505/2 (The Illinois Consumer Fraud Statute) . . . . . . . . . . . . . . . 9, 10

**RULES**

Federal Rule of Civil Procedure 9(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

United States District of Delaware Local Rule 7.1.5 . . . . . . . . . . . . . . . . . . . . . . . . . 2

**I. ARGUMENT**

A.  **Plaintiffs Fail to Satisfy the Court's Directive and Rule 9(b).**

In response to Nationwide's arguments regarding the "on-information-and-belief" pleading in their Amended Complaint, plaintiffs: 1) attack this Court's February 2, 2006 dismissal of their Delaware Consumer Fraud Count as presented in the original Complaint; and 2) mischaracterize Nationwide's arguments regarding the applicable law on pleading "on information and belief." Both arguments are incorrect. Moreover, neither argument addresses the insufficiency of plaintiffs' "on-information-and-belief" pleading.

1.  **Plaintiffs Belatedly Argue For Reconsideration.**

Plaintiffs request that the Court reconsider its February 2, 2006 dismissal of Count IV of their original Complaint (for lack of particularity under Federal Rule of Civil Procedure 9(b)). This request appears to be the basis of plaintiffs' argument that they may now plead "on information and belief," and that their Delaware Consumer Fraud claims are not subject to the requirements of Rule 9(b) as this Court held in its prior Memorandum Opinion.

Plaintiffs now argue that this Court got it wrong and should not have dismissed Count IV of the original Complaint because: 1) in deciding the Motion to Dismiss the Court failed to consider the Third Circuit Court of Appeals' decision in the 1984 decision in *Seville Industrial Machine Corp. v. Southmost Machinery Corp.*, 742 F.2d 786 (3rd Cir. 1984), *cert. denied* 469 U.S. 1211 (1985); and 2) in deciding the Motion to Dismiss the Court improperly applied *Crowhorn v. Nationwide Mutual Insurance Company*, C.A. No. 00C-06-010WLW, 200 WL 1767529 (Del.Super.Ct. July 10, 2002). (See plaintiffs'

Answering Brief, D.I. 170, at pp. 8-12, and at pp. 18-22.)  As this Court is aware, plaintiffs filed no motion for reconsideration of the February 2, 2006 Memorandum Opinion.

An answering brief to a motion to dismiss an amended complaint is not the proper means for plaintiffs to request that the Court to reconsider its dismissal (with leave to amend) of the Delaware Consumer Fraud Count IV to the original Complaint.  Under Local Rule 7.1.5, any motion for reconsideration was to be filed within ten days of the Court's February 2, 2006 Memorandum Opinion.  (See Delaware Local Rule 7.1.5.).  Plaintiffs filed no such timely motion.  Any arguments contrary to the Court's holding are therefore waived.

Moreover, even if the issue had not been waived by plaintiffs' failure to properly request reconsideration (which it was), the Answering Brief presents no new arguments or case law that did not exist at the time this Court entered its February 2, 2006 order.  A motion for reconsideration "should not be used to rehash arguments already briefed or to allow [as plaintiffs in this case continually propose] a 'never-ending polemic between the litigants and the Court.'" *Dentsply International, Inc. v. Kerr Manufacturing Company*, 42 F.Supp. 2d 385, 419 (D.Del. 1999), *citing Oglesby v. Penn Mutual Life Ins. Co.*, 877 F.Supp. 872, 892 (D.Del. 1995).

2.    **Plaintiffs Fail To Establish Any Justification For Pleading "On Information And Belief."**

Plaintiffs' Answering Brief presents a number of instances in which plaintiffs attempt to "put words in the mouth of" Nationwide or otherwise profess to state what they believe Nationwide "meant" to argue in its Motion to Dismiss.  For instance, Nationwide did not argue that *First Capital Asset Management, Inc. v. Satinwood, Inc.*,

385 F.3d 159 (2nd Cir. 2004) or *Faulkner v. Verizon Communications, Inc.*, 156 F.Supp. 2d 384 (S.D.N.Y. 2001) stand for any blanket proscription of pleading "on information and belief." Rather, Nationwide correctly argues that "[a] party may only plead 'on information and belief' when the facts are peculiarly and solely within the knowledge of the opposing party." (See Nationwide's Motion to Dismiss, D.I. 168, at pp. 8-9, *citing First Capital* and *Faulkner v. Verizon Communications*.)

Plaintiffs make no allegation in their Amended Complaint that their allegations on mere "information and belief" are pled as such because the information was solely within the knowledge of Nationwide. Nor do they make any such claim in their opposition brief. Rather, they ignore the issue before the Court (the fact that the matters that they attempt to plead on information and belief are obviously not "peculiarly within the defendant's knowledge"), and attempt to frame and respond to arguments not made.

Plaintiffs are obviously aware that no claim that information is "solely within the knowledge of the opposing party" could be made in a Delaware consumer fraud case. To the contrary, in such cases the cause of action has to be based upon the supposedly misleading representations that were made to the plaintiff. The alleged representation(s) must therefore necessarily be within the plaintiff's own personal knowledge.

Nationwide is not expected to defend itself against nebulous allegations regarding just what documents plaintiffs may or may not base their consumer-fraud claims. In its plain English words, sub-paragraph 13(b) "on information and belief" refers to the Exhibit "A" document, and further notes that the Exhibit may or may not be the document shown to one or more of the plaintiffs. It notes that, in actuality, plaintiffs may be pleading that the attached exhibit or perhaps "one or more documents substantially

identical to it" are the documents upon which they base their claim for a 1994 misrepresentation. Further, "on information and belief" they are not sure to whom the possible document was shown. "On information and belief" plaintiffs only allege that some documents "was shown to Mr. or Mrs. Eames, or both" in 1994. (Amended Complaint, D.I. 158, at sub-paragraph 13(b).) An almost identical allegation is made about alleged oral misrepresentations. At sub-paragraph 13(c) plaintiffs, "on information and belief" allege that oral representations were made "to Mr. or Mrs. Eames (or both)." (Amended Complaint at sub-paragraph 13(c).)

Plaintiffs further attempt to dodge the unclear "on information and belief" references to misrepresentations made possibly to "Mr. or Mrs. Eames, or both" by arguing that their Amended Complaint does not allege what it clearly alleges. Plaintiffs now appear to argue that the "either one or both" information-and-belief allegations should be interpreted to mean that the alleged misrepresentations were in fact made to Mrs. Eames, but they are not sure whether they were made to Mr. Eames.

> Plaintiffs now argue that
>
> [i]n fact, the only allegation made on information and belief relates to ***Mr. Eames*** (not Mrs. Eames). That is, we know that the offending representations were made to Mrs. Eames. The same representation may ***also*** have been made to Mr. Eames, though this is less clear.

(Answering Brief, D.I. 170, at p. 17) (emphasis in the original). Both sub-paragraphs 13(b) and 13(c), read in their entirety, clearly do not allege that representations were definitely made to Mrs. Eames and/or that the plaintiffs were not so sure whether they were made to Mr. Eames. Further, even a generous reading of these two sub-paragraphs could in no way give any such impression. To the contrary, the two sub-paragraphs provide as follows:

13(b) On information and belief, the document attached as Exhibit A (or one or more documents substantially identical to it) was shown **_to Mr. and Mrs. Eames, or both_**, by a representative of the Culver agency, and at the time the policy was purchased in March 1994.

13(c) On information and belief, one or more representatives of the Culver agency represented orally **_to Mr. or Mrs. Eames (or both)_** that the subject policy would provide "full" limits of liability for PIP coverage. These representations were made on behalf of Nationwide, and at the time the policy was sold to Mr. and Mrs. Eames in or about March 1994.

(Amended Complaint, D.I. 158 at sub-paragraphs 13(b) and (c)) (emphasis added). The Court gave plaintiffs leave to amend in order for plaintiffs to plead with greater particularity. Plaintiffs have failed to (and obviously cannot) do so.

3. **Plaintiffs Fail To Address That Even Their Direct Allegations Regarding Documents And Oral Misrepresentations Remain Improperly Vague And Unspecific.**

Sub-paragraphs 13(a), (f) and (g) of plaintiffs' Amended Complaint fail to allege: a) how the alleged misrepresentation was made; b) by whom it was made; c) to whom the alleged misrepresentation was made; or d) that the speaker intended (as specifically required by 6 *Del. C.* Section 2513) one of the three Plaintiffs to "rely upon such concealment, suppression or omission."

Plaintiffs do seem to finally acknowledge that the 1994 sale is the sale upon which they base their 6 *Del C.* Section 2513 cause of action, and that some misrepresentation regarding "full" was made at that time twelve years ago. Plaintiffs statement that sub-paragraph 13(a) is not pled "on information and belief" does nothing to address the fact that the back-up documents and communications for the 1994 sale are not pled with sufficient particularity, and are actually referred to in insufficient either/or fashion in sub-paragraphs 13(b) and (c). As argued in the prior Motion to Dismiss (but not addressed by plaintiffs in their opposition brief) with regard to the 1994 sale,

5   5

plaintiffs neither sufficiently identify a document or communication. They only refer to possible documents "substantially identical to" the document attached as Exhibit "A" to the Amended Complaint, and to possible communications on "information and belief."

Plaintiffs also argue that sub-paragraphs 13(f) and (g) are not pled "on information and belief." However, plaintiffs do not address that neither sub-paragraph 13(f) nor (g) presents any facts in support of a cause of action for any alleged violation of 6 *Del C.* Section 2513. Both sub-paragraphs are in fact irrelevant assertions. Sub-paragraph 13(g) is nothing more than a re-statement that Nationwide contends that the automobile insurance policy only provides what this Court has already held it provides: nothing more than PIP coverage in the amount of $15,000/$30,000. Sub-paragraph 13(f) merely refers to Nationwide's June 13, 2003 letter to plaintiffs. This letter means nothing to this case. It is obviously not, in any way, connected with the sale of insurance. Moreover, such a letter to counsel cannot be the basis of any claim under 6 *Del C.* Section 2513. *See e.g., Duane Adam Thomas v. Harford Mutual Insurance Company*, C.A. No. 01C-01-046 HDR, 2003 Del.Super. LEXIS 268 (July 25, 2003) at * 2 (statements in a letter to plaintiffs' attorney that plaintiff proposed as basis for a 6 *Del C.* Section 2513 claim were not in connection with sale).

Plaintiffs do argue that the case law cited at sub-paragraph 13(e) (which is not pled "on information and belief") stands for a "concept of 'connectedness.'" (Answering Brief, D.I. 170, at p. 14.) By "connectedness," they seem to imply that any and all post-1994 communications with plaintiffs and their attorneys should be treated as being "in connection with the sale" of the insurance coverage. This is not, and simply cannot

be, the law. To hold otherwise would have the effect that 6 *Del C.* Section 2513 would apply *ad infinitum* to all conduct by manufacturers and insurers.

Plaintiffs also argue that "the determination of whether a representation is in some way connected to the sale of insurance can only be made with an eye toward the liberal application of the statute's terms" to the conduct of an insurer or manufacturer. (Answering Brief, D.I. 170 at p. 14.) Plaintiffs cite absolutely no law to support this argument. To the contrary, Delaware case law contradicts any argument that a court should err on the side of finding that the conduct in question was "in connection with a sale."

Delaware law requires that the courts restrict application of 6 *Del C.* Section 2513. Courts "cannot ignore the clear language of the statute which **_restricts its application_** to deceptive practices 'in connection with the sale or advertisement' of merchandise. Given this statutory **_limitation_**, it is clear that **_post-sale_** representations which are not connected to the sale or advertisement . . . do not constitute consumer fraud under the Act." *Norman Gershman's Things to Wear v. Mercedes-Benz*, 558 A.2d 1066, 1074 (Del.Super.Ct. 1989) (emphasis added); *see also Pennsylvania Employee Benefit Trust Fund v. Zeneca, Inc.*, Civ.No. 05-075-SLR, 2005 U.S.Dist. LEXIS 27444 (D.Del. November 8, 2005) (District Court of Delaware rejects plaintiffs attempts to use defendants Annual Report as evidence of false or misleading statement under the Delaware Consumer Fraud law).

Plaintiffs cite again the 1970 Fifth Circuit case they refer to at footnote 2 of their Amended Complaint, *Montalvo v. Tower Life Building*, 426 F.2d 1135 (5th Cir. 1970). They argue that the Court in *Montalvo* held that the payment of renewal premiums were

subsequent and separate "sales" of insurance. However, the defendant in *Montalvo* would not have been subject to the federal statutes in question unless the defendant was an enterprise with, among other things, "annual gross volume of sales" in excess of a million dollars. Therefore, the *Montalvo* Court, in 1970, addressed the issue of whether, for the sole purpose of determining whether the defendant was subject to the statute in question, the defendants "annual gross volume of sales" exceeded one million dollars. If follow-up premiums were not considered as part of any given year's "annual gross volume of sales," then the defendant would not have been subject to the federal statute in question. The *Montalvo* Court held that subsequent premium payments could be *calculated* as part of a companies "annual gross volume of sales." That is all the *Montalvo* Court did. *Montalvo* does not support plaintiffs' arguments.

Moreover, to the extent that plaintiffs wish to cite the 1970 *Montalvo* decision as basis for an argument that plaintiffs' subsequent payments of auto insurance premiums were "sales," such an argument is irrelevant to this case. Even if subsequent payments are "sales" for the purposes of 6 *Del C.* Section 2513, plaintiffs have not alleged any facts (much less any misrepresentations) regarding any post-1994 "sales."

As noted in Nationwide's supporting memorandum, sub-paragraph 13(e) does include a statement that Nationwide's agents allegedly made post-1994 misrepresentations to plaintiffs. However, contrary to this Court's instructions in the February 2, 2006 Memorandum Opinion, plaintiffs' Amended Complaint does not provide any details whatsoever about how or when such post-1994 misrepresentations were made. Further, the Answering Brief is void of any explanation for this failure.

Plaintiffs do refer at sub-paragraph 13(e) to a February 8, 2003 Exhibit "B" document. However, the Amended Complaint is void of any allegation that the Exhibit "B" was presented "in connection with" any sale of insurance.[1] Plaintiffs also refer at sub-paragraph 13(e) to a June 17, 2003 Exhibit "C" document. However, as with Exhibit "B," the Amended Complaint does not allege that Exhibit "C" to the Amended Complaint is a document or representation presented to plaintiffs "in connection with" any sale of insurance. To the contrary, plaintiffs' Amended Complaint merely, and insufficiently, alleges that these two documents might reflect "in whole or in part" some otherwise undated and unidentified oral or written post-1994 misrepresentation.

Plaintiffs' Answering Brief does nothing to address these deficiencies other than to now imply (at page 16 of the Answering Brief) that the two 2003 documents are now to be identified as "offending documents." This is obviously insufficient. Merely labeling and identifying Exhibits "B" and "C" to the Amended Complaint as "offending documents" is not an allegation that: 1) the two documents are sale-related documents; or 2) that Nationwide and the plaintiffs were involved in a "sale" of insurance on either February 8, 2003, the day after the accident, or June 17, 2003.

**B.   Plaintiffs Do Not Sufficiently Plead Harm As Required By The Court.**

Plaintiffs argue that the Court has already found that they pled harm with sufficient specificity. That is not the case. The portion of the Court's Memorandum Opinion quoted by plaintiffs merely states that plaintiffs, in their original Complaint, alleged why the plaintiffs believe that they and the proposed class were harmed. It does

---

[1] Plaintiffs are aware from their interrogatories and discovery over the last year that Exhibit "B" is not related to or in connection with any sale. They are also aware of the non-sale-related status of Exhibit "C." They are therefore only willing to allege that the two exhibits possibly reflect "in whole or [possibly] in part" some post-1994 misrepresentation. (See Amended Complaint, D.I. 158, at sub-paragraph 13(e).)

not state that plaintiffs alleged what harm took place. The Court noted that the original Complaint "appears to allege" that plaintiffs and the class members were harmed "either because they believed they purchased coverage with limits higher than $15,000/$30,000 or because they believed that those were the highest limits available." (Memorandum Opinion, D.I. 150, at p. 11.)

Plaintiffs' Answering Brief is void of any argument in opposition to Nationwide's arguments that they only list breach-of-contract damages, relocated from their formerly alleged (and now-dismissed) breach-of-contract claims (from what was Paragraph 29 of their original Complaint). No consumer fraud claim (or any claim whatsoever) can be based on Nationwide not paying PIP benefit monies in excess of the $15,000/$30,000 PIP limits coverage purchased. Pursuant to the Court's Memorandum Opinion, Plaintiffs paid for what they got, and got what they paid for: $15,000/$30,000 PIP limits coverage.

**C.** **Plaintiffs' Claims Are Barred By The Statute of Limitations.**

Plaintiffs argue that cases and statutes say what they do not in fact say. For instance, plaintiffs argue that the Illinois Consumer Fraud Act is "identical" to Delaware's statute. It is not. To the contrary, it is different in a very significant way. The Delaware statute requires that the representation be "in connection with the sale" of the policy. However, the Illinois statute does not require that the representation be in connection with a sale. Rather, the Illinois statute is significantly broader and applies to "the conduct of any trade or commerce." Section 815 ILCS 505/2.[2]

---

[2] Specifically, the Illinois statute provides as follows (including written deference to federal statutes):

§ 815 ILCS 505/2. [Unfair competition and deceptive practices]

Sec. 2. Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception fraud, false pretense, false

Further, the Seventh Circuit Court of Appeals, in *Chicago Board Options Exchange, Inc. v. Connecticut General Life Ins. Co.*, 713 F.2d 254, at 261 (7th Cir. 1983) does not discuss the elements of the Illinois consumer fraud statute; nor does the decision reject application of the Illinois three-year statute of limitations. Rather, the appellate court disagreed with the district court's determination of what caused the damage in question; and held that if the fact finder determined that it was the event which took place beyond the statute of limitations, and also that the plaintiff should have been aware of it, then the count for misrepresentation could later be dismissed. *Id.*

Plaintiffs clearly allege that the sale and alleged misrepresentation occurred in 1994. With regard to when a cause of action accrues, Nationwide acknowledged that the time of discovery rules provides that in certain cases, a cause of action does not accrue until a party has reason to know that he or she has a cause of action. (See Memorandum in Support of Motion to Dismiss, D.I. 168 at p. 15, *citing Pack & Process Inc. v. Celotex Corp.*, 503 A.246, 650 (Del.Super. 1985)). However, the discovery is obviously not an issue in this case.

First, plaintiffs' own proposed class definition indicates that the three-year statute of limitations applies, and is not deferred in any way. Pursuant to the proposed class definition, no insured, including plaintiffs, would be a member of the proposed class

---

promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practice described in Section 2 of the "Uniform Deceptive Trade Practices Act," approved August 5, 1965 [815 ILCS 510/2]***in the conduct of any trade or commerce*** are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby. In construing this section consideration shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to Section 5 (a) of the Federal Trade Commission Act 15 U.S.C. Section 45.

§ 815 ILCS 505/2 (emphasis added).

unless the alleged representation was made on or after August 20, 2001 (three years before the original Complaint was filed). Second, plaintiffs do not contest that the governing policy was sold and issued in 1994. As the Court has held, the policy specifically and unambiguously sets forth the governing 15,000/30,000 PIP limits. Plaintiffs were therefore clearly on notice at that time. They have not even attempted to plead otherwise.

Finally, plaintiffs' apparent attempt to rely upon the vaguely alleged post-sale representations discussed above does not revive their time-barred claims. As established above, these alleged representations were not in connection with the sale of the subject policy. Rather, they were years after the sale. They therefore cannot be relied upon to assert a claim under the Delaware Consumer Fraud Statute as established above.

**D.**     **Plaintiffs Fail To State A Claim For Civil Conspiracy.**

Plaintiffs' conspiracy claim requires that they plead all three elements of the cause of action. Plaintiffs do not present any actual opposition to the argument that they fail to properly plead all three elements of a cause of action for conspiracy. Rather, they merely appear to argue that they are not required to meet the applicable pleading requirements because the February 2, 2006 Memorandum Opinion notes that a violation of the Delaware Consumer Fraud Act could act as one of the three predicate elements of a conspiracy claim: (that being harm). But plaintiffs must still plead the ***other two*** elements of a conspiracy claim: 1) that there was an actual agreement between the two conspirators to do the wrong act; and 2) that harm resulted from the act which the two conspirators agreed to do.

Plaintiffs do not address or oppose the fact that they fail to allege that the Culver Agency or the Culver employees themselves ***agreed with*** Nationwide to improperly misrepresent to plaintiffs that "full" meant higher PIP benefits coverage than plaintiffs were paying for. Plaintiffs ignore that it is an element of a conspiracy claim that both the conspirators agree to do the wrongful act. It is also an element of the Delaware Consumer Fraud Act that the actors (and therefore ***both*** Nationwide and Culver employees) intend that the plaintiff rely on the misrepresentation. Plaintiffs have not pled any such agreement, nor any such intent, both of which are necessary for them to have a conspiracy claim. Further, they have not pled when the agreements were made between Nationwide and Culver employees, or which Culver employees entered into an agreement with Nationwide to do the alleged wrong.

**E.     Plaintiffs Mischaracterize Nationwide's Standing Arguments As "Privity" Arguments.**

Plaintiff cites *Sachetta v. Bellvue Four, Inc.*, C.A. No. 97C-07-042WTQ, 1999 WL 463712, slip op. (Del.Super. Ct. June 9, 1999) for the proposition that if one named plaintiff was subject to a sale-related misrepresentation, then all three plaintiffs may present a cause of action under, 6 *Del C.* Section 2513, even if no misrepresentation was made to them. Plaintiffs couch this argument as a "privity" argument.

The *Sachetta* opinion makes no reference whatsoever to 6 *Del C.* Section 2513, let alone addresses the unique requirements under 6 *Del C.* Section 2513 that the representation in question be made "in connection with" a sale, and also that the allegedly offending party itself must intend for the person to whom the representation is made to act in dependence on the representation (regardless of whether they do). The *Sachetta* decisions does not stand for, or support any argument (whether called "privity"

13  13

or "standing") that Tammy Eames can present a claim for violation of 6 *Del C.* Section 2513 even though she fails to allege any representation whatsoever was made to her by Nationwide or its alleged agents.[3]

### F. Plaintiffs' Amended Complaint Includes New Matters Which May Properly Be Challenged By A Rule 12 Motion.

Plaintiffs' original Complaint was dismissed in its entirety, and plaintiffs were given leave to amend only two of the prior counts. The Amended Complaint is a new pleading and new facts are raised, including dates and names of Culver employees (among other things). Defenses regarding statutes of limitations and standing were not available prior to the amendment of the pleading because no dates were presented with regard to the alleged violations of the Delaware Consumer Fraud Act, nor were any conspirators identified. Moreover, as the Court has ruled, specific alleged misrepresentations were not identified. Accordingly, Nationwide certainly has not waived its right to challenge plaintiffs' Amended Complaint.

---

[3] Nationwide presented no "privity" or lack-of-privity arguments in its Motion to Dismiss. Rather, Nationwide argued that Tammy Eames has no standing because she has not alleged that any representation or misrepresentation of any kind was made to her at all, let alone a representation "in connection with" any sale of the policy at issue.

## II.     CONCLUSION

For the foregoing reasons, and for the reasons set forth in Nationwide's motion and supporting memorandum to dismiss plaintiffs' Amended Complaint, plaintiffs' Amended Complaint should be dismissed with prejudice.

                                           Respectfully submitted,

                                           /s/Nicholas E. Skiles
                                           Nicholas Skiles, Esquire (DE ID# 3777)
                                           300 Delaware Avenue, Suite 1130
                                           P. O. Box 330
                                           Wilmington, DE  19801
                                           Attorneys for Defendant,
Dated: March 9, 2006                   Nationwide Mutual Insurance Company