# Exhibit A

2002 Del. Super. LEXIS 178, *

JAMES M. CROWHORN, on behalf of himself and all others similarly situated, Plaintiff,
v. NATIONWIDE MUTUAL INSURANCE COMPANY, Defendant.

C.A. No. 00C-06-010 WLW

SUPERIOR COURT OF DELAWARE, KENT

2002 Del. Super. LEXIS 178

May 31, 2002, Submitted
July 10, 2002, Decided

**DISPOSITION:  [*1]**  Defendant's Motions for Protective Orders Granted in Part;
Denied in Part.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff insured, on behalf of himself and others
similarly situated, sued defendant insurer for declaratory judgment, breach of
contract, bad-faith breach of contract, breach of the contract duty of fair
dealing, fraud, and consumer fraud regarding practices to defraud him of his
coverage, if he became eligible. The trial court issued a scheduling order. The
insurer filed 12 motions for protective orders, in response to the scheduling
order.

**OVERVIEW:** The insured was injured in an auto accident. After the insurer
notified the insured that it would not be paying for the insured's medical
treatment on the basis that the treatment was unrelated to the accident, the
insured sued the insurer in a purported class action suit for failing to pay the
insured's claim. The trial court found that the action could not be a class action
and considered the insurer's motion to limit discovery with respect to: (1)
settled claims; (2) litigated claims; (3) arbitrated claims; (4) the applicable
statute of limitations; (5) the exhaustion of policy limits; (6) pre-certification
practices; (7) prior impairment reduction practices; (8) privacy issues with
respect to personal file information; (9) privacy issues with respect to medical
records requests; (10) independent medical evaluation limitations; (11) the
attorney-client privilege; and (12) the attorney work product doctrine. After
assessing each of the claims, the trial court determined the extent of discovery
it would allow by the insured.

**OUTCOME:** The trial court entered its order determining for which
documents prevention from discovery would be granted, determining for
which documents prevention from discovery would not be granted, and
ordering the appointment of a special master for determining to which
documents the attorney client and attorney work product privileges applied.

**CORE TERMS:** discovery, pre-certification, claimant, impairment, protective order,
class action, class certification, certification, overarching, common scheme,
wrongdoing, fraudulent, pled, breach of contract, Civil Rule, particularity, settlement,
class representative, insurance contract, cause of action, misrepresentation, accord

and satisfaction, declaratory judgment, reduction, litigated, coverage, exposure, putative, doctor, justifiable reliance

**LexisNexis(R) Headnotes**

Insurance Law > Bad Faith & Extracontractual Liability > Statutory Damages & Penalties

*HN1* The purpose of Del. Code Ann. tit. 21, § 2118B is to prevent the financial hardship and damage to personal credit ratings that can result from the unjustifiable delays of required automobile insurance payments. To accomplish its purpose, § 2118B provides civil and administrative remedies against insurers who do not comply with statutory processing requirements.

Insurance Law > Bad Faith & Extracontractual Liability > Statutory Damages & Penalties

*HN2* Del. Code Ann. tit. 21, § 2118B provides inter alia civil and administrative remedies for failure of insurers to process certain automobile insurance claims in a reasonably prompt manner.

Civil Procedure > Disclosure & Discovery > Relevance

*HN3* Del. Super. Ct. R. Civ. P. 26(b)(1) provides that a plaintiff may only obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action.

Civil Procedure > Relief From Judgment > Discharge, Release & Satisfaction

*HN4* In Delaware, where the language of a release is clear and unambiguous, it will not be lightly set aside. Ordinarily, a release covers only matters expressed in the contract that are in existence at the time of the release.

Civil Procedure > Relief From Judgment > Discharge, Release & Satisfaction

*HN5* Whether an accord and satisfaction exists, and whether or not it extinguishes all claims of the parties, are both questions of fact that must be determined in every case.

Civil Procedure > Relief From Judgment > Discharge, Release & Satisfaction
Civil Procedure > Pleading & Practice > Defenses, Objections & Demurrers > Affirmative Defenses

*HN6* Accord and satisfaction is a defense against the merits of an individual plaintiff's claim, and may represent a colorable argument against certification (which a court can consider when the issue of class certification is decided); however, an accord and satisfaction does not prevent discovery on the issue of certification.

Governments > Legislation > Statutes of Limitations > Statutes of Limitations Generally
Insurance Law > Bad Faith & Extracontractual Liability > Statutory Damages & Penalties

*HN7* A cause of action for benefits wrongfully withheld under Del. Code Ann. tit. 21, § 2118 accrues at the time the benefits are denied.

A plaintiff has three years after the date of the denial of benefits to file a claim.

Governments > Legislation > Statutes of Limitations > Time Limitations

*HN8* A three-year statute of limitation under Del. Code Ann. tit. 10, § 8106 governs breach of contract claims, as well as statutory claims such as a declaratory judgment action.

Governments > Legislation > Statutes of Limitations > Time Limitations

*HN9* A three-year statute of limitation under Del. Code Ann. tit. 10, § 8106 governs claims of common law fraud and statutory fraud.

Governments > Legislation > Statutes of Limitations > Time Limitations

*HN10* A limitation period does not begin to run until a plaintiff has reason to know that a wrong has been committed. It is not the actual discovery of the reason for the injury that starts the clock, but the discovery of facts sufficient to put a person of ordinary intelligence on inquiry which, if pursued, would lead to discovery.

Torts > Procedure > Statutes of Limitations

*HN11* Bad faith claims are subject to a three-year statute of limitations and accrue, as do causes of action for fraud, when a reasonable person is put on notice of the possible existence of bad faith claims.

Civil Procedure > Class Actions > Prerequisites

*HN12* With respect to multiple claims alleged on behalf of a class, a representative must possess the same interest and suffer the same generic type of injury as the other class members, but the representative's injury need not necessarily arise from or be encompassed in the identical factual circumstances that give rise to the injuries of the class members.

Civil Procedure > Class Actions > Prerequisites

*HN13* Class certification under a common scheme is not appropriate when there are many heterogeneous claims on the issue of liability.

Civil Procedure > Class Actions > Prerequisites

*HN14* An overarching scheme of liability may bind a class only if individual differences do not prevail in the underlying claims of the class.

Civil Procedure > Class Actions > Prerequisites

*HN15* A plaintiff will be found representative in a class action when the underlying claims are undifferentiated in their facts and applicable proof problems, then, a common scheme might be the basis for recovery.

Civil Procedure > Class Actions > Prerequisites

*HN16*⬥    A party will not be found representative of a common scheme when there are heterogeneous, dissimilar claims underlying an action where class certification is sought.

Civil Procedure > Summary Judgment > Summary Judgment Standard
*HN17*⬥    Del. Super. Ct. R. Civ. P. 56(c) provides that judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Civil Procedure > Summary Judgment > Burdens of Production & Proof
*HN18*⬥    The burden is on the moving party at summary judgment to show, with reasonable certainty, that no genuine issue of material fact exists and judgment as a matter of law is permitted.

Civil Procedure > Summary Judgment > Summary Judgment Standard
*HN19*⬥    When considering a motion for summary judgment, the facts must be construed in the light most favorable to the non-moving party. Further, if the record indicates that a material fact is disputed, or if further inquiry into the facts is necessary, summary judgment is not appropriate. Judgment must also be denied if there is a dispute as to the inferences that can be drawn from the facts.

Civil Procedure > Class Actions > Prerequisites
*HN20*⬥    A class representative must be part of the class and possess the same interests and suffer the same injuries as the class members.

Civil Procedure > Justiciability > Case or Controversy
Civil Procedure > Remedies > Declaratory Relief
*HN21*⬥    The existence of an actual controversy between the parties is a jurisdictional fact in actions for declaratory judgments under Del. Code Ann. tit. 10, § 6501. An actual controversy must, inter alia, involve the rights of the party seeking the judgment. Courts will not entertain problems when there is no real likelihood that such problems will be raised in the future by reason of actual contest between the parties. Otherwise, why would an attorney need a plaintiff, when a mere assertion of wrongdoing (without the likelihood of an actual contest between two parties) would be sufficient to bring a case against a defendant.

Civil Procedure > Justiciability > Case or Controversy
Civil Procedure > Remedies > Declaratory Relief
*HN22*⬥    To obtain a declaratory judgment there must be in existence a factual situation giving rise to immediate, or about to become immediate, controversy between the parties.

Torts > Business & Employment Torts > Deceit & Fraud

HN23 ⬇   The elements of a common law cause of action for fraud are: (1) a false representation, usually one of fact, made by the defendant; (2) the defendant's knowledge or belief that the representation was false, or was made with reckless indifference to the truth; (3) an intent to induce the plaintiff to act or to refrain from acting; (4) the plaintiff's action or inaction taken in justifiable reliance upon the representation; and (5) damage to the plaintiff as a result of such reliance.

Civil Procedure > Class Actions > Prerequisites

HN24 ⬇   A class action may not be maintained in a purely common law or equitable fraud case since individual questions of law or fact, particularly as to the element of justifiable reliance, will inevitably predominate over common questions of law or fact.

Civil Procedure > Pleading & Practice > Pleadings > Heightened Pleading Requirements
Torts > Business & Employment Torts > Unfair Business Practices

HN25 ⬇   Although the elements of a cause of action for consumer fraud under the Delaware Consumer Fraud Act (CFA), Del. Code Ann. tit. 6, § 2513, are significantly different than those elements of common law fraud, a particularity requirement still applies. The CFA incorporates the principle that a negligent misrepresentation is sufficient to violate the statute, and for a misrepresentation to be negligent it must be material. A misrepresentation alone does not trigger liability. Where the plaintiff has not pled any particular harm or damage caused by allegedly negligent misrepresentations, the particularity requirements of Del. Super. Ct. R. Civ. P. 9(b) have not been met because there has been no allegation of materiality.

Torts > Business & Employment Torts > Unfair Business Practices

HN26 ⬇   Del. Code Ann. tit. 6, § 2513(a) states that certain practices with regard to the misrepresentation of material facts in particular consumer transactions, are unlawful whether or not any person has in fact been misled, deceived or damaged thereby. Hence, consumer fraud does not require that a plaintiff prove justifiable reliance; therefore individual questions concerning justifiable reliance do not prevent a class action under the Delaware Consumer Fraud Act, Del. Code Ann. tit. 6, § 2513. Likewise, consumer fraud does not require proof of damages as an element.

Civil Procedure > Class Actions > Prerequisites

HN27 ⬇   A class representative must be part of the class and possess the same interests and suffer the same injuries as the class members.

Civil Procedure > Disclosure & Discovery > Relevance

HN28 ⬇   Under Del. Super. Ct. R. Civ. P. 26(b)(1), a plaintiff may obtain relevant discovery that relates to any claim it may have, including the identity and location of persons having knowledge

of discoverable matters.

**COUNSEL:** John S. Spadaro, Esquire, and Roger D. Landon, Esquire, of Murphy, Spadaro & Landon, Wilmington, Delaware for the Plaintiff.

Nicholas E. Skiles, Esquire, of Swartz, Campbell & Detweiler, Wilmington, Delaware, Curtis P. Cheyney, III, Esquire, Pro Hac Vice, James C. Haggerty, Esquire, Pro Hac Vice, for the Defendant.

**JUDGES:** William L. Witham, Jr., J.

**OPINIONBY:** Witham , Jr.

**OPINION: MEMORANDUM OPINION**

WITHAM, J.

*Background*

This suit arises out of the processing of a claim for Personal Injury Protection ("PIP") benefits n1 which were payable because of a March 8, 1999, motor vehicle accident. The plaintiff James M. Crowhorn ("Mr. Crowhorn" or "Plaintiff") believes that he has been submitted to a fraudulent scheme consisting of six "systematic practices" n2 employed by Nationwide Mutual Insurance Company ("Nationwide" or "Defendant") to deny him and other insureds the PIP benefits to which they are entitled. It is Plaintiff's belief that Nationwide sold him a PIP policy with knowledge and intent to utilize these six fraudulent practices to defraud him of his coverage if he became eligible. **[*2]** Plaintiff alleges that Nationwide's fraudulent practices have been ongoing since at least 1994.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n1 These statutory benefits are set forth, primarily, under 21 *Del. C.* § 2118(a)(2).

n2 The six practices set forth in the second amended complaint appear on pages 16-24 and are entitled:

1. The Thirty-Day Violation - whereby it is alleged that Nationwide routinely fails to pay or deny PIP claims in thirty days;

2. The Lost Earnings Delay - whereby it is alleged that Nationwide unreasonably delays payment of lost earnings beyond a time period that approximates the schedule by which the claimant is paid by his or her employer;

3. The IME Fraud - whereby it is alleged that Nationwide uses IME's in various ways as a pretext to terminate benefits;

4. The Usual and Customary Fraud - whereby it is alleged that Nationwide avoids paying required reasonable and necessary medical expenses by defining them as not being usual and customary;

5. The Precertification Fraud - whereby it is alleged that Nationwide fails to preauthorize PIP coverage for anticipated medical treatments (*See infra* note 27);

6. The Prior Impairment Fraud - whereby it is alleged that Nationwide attributes prior impairment percentage reductions to the situs of current injuries (*See infra* note 28).

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - - **[*3]**

On May 16, 2002, this Court issued a Case Scheduling Order, having considered the parties submissions on case scheduling. Nationwide was to file with this Court all motions objecting to the production of the claim files referred to in paragraph two of the Scheduling Order. n3 The scheduling order was not limited to certification and discovery issues, but the applicability of the statute of limitations on the scope of discovery (as well as its applicability on the class definition).

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - -

n3 The Case Scheduling Order mistakenly refers to Paragraph One.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - -

Currently before the Court are Nationwide's twelve motions for protective orders in response to the Scheduling Order, as well as the responses of the plaintiff in opposition to the same. The breadth and number of motions is indicative of the complexity and difficult nature of this litigation. Some of the motions to be properly considered call for this court to view them under the summary judgment standard.

These twelve motions seek to limit discovery with respect to:  **[*4]**  (1) settled claims; (2) litigated claims; (3) arbitrated claims; (4) the applicable statute of limitations; (5) the exhaustion of policy limits; (6) pre-certification practices; (7) prior impairment reduction practices; (8) privacy issues with respect to personal file information; (9) privacy issues with respect to medical records requests; (10) Independent Medical Evaluation ("IME") limitations; (11) the attorney-client privilege; and (12) the attorney work product doctrine.

*Facts*

From the record, it appears that the March 8th auto accident was reported to Nationwide on the same day it occurred. Nationwide generated a letter to plaintiff on that day (March 8, 1999). n4 This letter stated that Nationwide had received Mr. Crowhorn's claim, and also purported to set forth a number of payment parameters, including the fact that payment would be made "in accordance with the policy provisions." The letter explained that Nationwide had implemented a procedure for medical expense review and any charges in excess of the usual and customary charges would be challenged by Nationwide.

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - -

n4 *See* Br. of the Defendant, Nationwide Mut. Ins. Co., in opposition to the Motion for Class Certification of the Plaintiff, James M. Crowhorn, Exh. "L".

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - - **[*5]**

On March 22, 1999, counsel for plaintiff, Mr. Landon, sent Nationwide a letter informing Nationwide of his legal representation and enclosing various items to be processed, including an application for PIP benefits, an attending physician's report, authorizations to obtain wage and medical records, and a doctor's release from work for the period of March 8, 1999 through April 15, 1999. There does not appear to be an allegation that Nationwide did not pay all required PIP benefits for the time period of March 8, 1999 through April 15, 1999.

On April 16, 1999, Mr. Crowhorn was examined by his treating physician, Dr. Eric T. Schwartz. The treatment note states that the plaintiff was experiencing low back pain that *plaintiff believed* was an exacerbation caused by the motor vehicle accident of March 8th. In contrast, the treatment note stated that *Dr. Schwartz did "not feel that the plaintiff's low back pain [was] related to the MVA of 3/8/99."* n5

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - -

n5 *Id.* at Exh. "D" (emphasis added).

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - -

After this office **[*6]** visit plaintiff alleges (in the second amended complaint) that he submitted claims for lost earnings, prescription drug costs, and emergency room care to Nationwide on April 30, 1999. Plaintiff maintains that Nationwide neither paid nor denied this claim within thirty days of its receipt of the same, in violation of 21 *Del. C.* § 2118B and the insurance contract. Nationwide admits it did not reimburse Mr. Crowhorn for these submissions; however, Nationwide denies any wrongdoing with respect to the non-payment.

On May 17, 1999 and May 18, 1999, Nationwide notified the medical providers and plaintiff's counsel, Mr. Landon, that it was denying payment for back treatments occurring after April 16, 1999, on the basis that such treatment was unrelated to the March 8th accident. n6 The rationale for the denial was that plaintiff's own treating doctor's records stated his back symptoms were unrelated to the accident.

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - -

n6 *Id.* at Exh.'s "E", "F", "G", "H".

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - -

On May 26th, 1999, plaintiff's **[*7]** counsel, Mr. Landon, responded to Nationwide's denial letters of May 17th and 18th and informed Nationwide that:

Apparently, there was some confusion or miscommunication which caused Dr. Schwartz to state in his note of 4/16/99 that he did not feel the low back pain was related to the 3/8/99 MVA. I enclose an updated version of that note which includes another paragraph entitled 'Correction to 4/16/99 Office Visit.' At the end of that paragraph, Dr. Schwartz states 'therefore it has been determined that the lumbar strain is related to the MVA of 3/8/99.' n7

The record is silent as to whether or not PIP benefits started again after this letter from Mr. Landon to Nationwide. (Plaintiff does not appear to allege anymore payment violations until August 26, 1999.)

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n7 Plf's Reply Br. in Support of Class Certif., Exh. "A".

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

On August 10, 1999, Mr. Crowhorn was evaluated by Dr. Robert Riederman on behalf of Nationwide. Dr. Riederman's report, dated the same day, states that the plaintiff had reached maximum **[*8]** medical improvement and that Dr. Riederman did not believe that Mr. Crowhorn's complaints were related to the March 8th accident. Moreover, Dr. Riederman stated that he did "not believe that further medical treatment, physical therapy or diagnostic testing is indicated in this patient's management." n8

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n8 *See* Br. of the Defendant, Nationwide Mut. Ins. Co., in opposition to the Motion for Class Certification of the Plaintiff, James M. Crowhorn, Exh. "I".

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

From August 26, 1999 through September 21, 1999, the complaint alleges that Mr. Crowhorn submitted three claims for PIP benefits (two lost earnings claims and one prescription reimbursement) under 21 *Del. C.* § 2118, which Nationwide neither paid nor denied within thirty days in violation of 21 *Del. C.* § 2118B, and the insurance contract with Nationwide. Nationwide admits that it did not pay or deny these claims within thirty days, but denies liability or wrongdoing regardless.

On October 26, 1999, Nationwide **[*9]** sent plaintiff's counsel, Mr. Landon, a copy of the August 10th IME report from Dr. Riederman n9 and confirmed that, due to the conclusions of Dr. Riederman, Nationwide was denying further PIP benefits. (The second amended complaint avers that benefits were later reinstated but does not indicate when that occurred.)

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n9 *See* Pl. Let. Mem. Re: Case Scheduling, May 9, 2002, Exh. "D".

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

On January 7, 2000, February 3, 2000, and March 20, 2001, the plaintiff alleges he submitted prescription and medical expense claims to Nationwide. The plaintiff states that these were neither paid nor denied within thirty-days of receipt, in violation of 21 *Del. C.* § 2118B and the PIP insurance contract. Nationwide denies wrongdoing or liability with respect to its non-payment of these submissions.

*Plaintiff's Claims*

On June 8, 2000, Plaintiff filed this class action complaint on behalf of himself and all those similarly situated, alleging six counts against Nationwide which arose out of Nationwide's **[*10]** overarching scheme n10 to defraud its PIP insureds. The initial sixteen pages of the complaint were devoted to background material concerning insurance market forces in Delaware. The complaint also included an analysis of the legislative history of 21 *Del. C.* § 2118B, *HN1* the purpose of which is "to prevent the financial hardship and damage to personal credit ratings that can result from the unjustifiable delays" n11 of required automobile insurance payments. To accomplish its purpose, § 2118B provides civil and administrative remedies against insurers who do not comply with statutory processing requirements. n12

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n10 *See supra* note 2.

n11 21 *Del. C.* § 2118B(a).

n12 21 *Del. C.* § 2118B *HN2* provides *inter alia* civil and administrative remedies for failure of insurers to process certain automobile insurance claims in a reasonably prompt manner.

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

After this introductory section, n13 the complaint sets forth the **[*11]** six counts against Nationwide. In Count One, plaintiff seeks a declaratory judgment. It is the plaintiff's position that Nationwide was required to pay covered claims with reasonable promptness, and did not; therefore, a justiciable controversy exists which necessitates a declaratory order to clarify the rights and obligations of the parties under the PIP policy at issue here.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n13 The original complaint also devoted approximately eight pages to a background section entitled "The Insurance Commissioner's Betrayal of Section 2118B," which purported to explain why the administrative remedies set forth in 21 *Del. C.* § 2118

were inadequate to serve the public policies behind § 2118B. Upon Nationwide's motion to strike, these pages were stricken for the reason that they alleged wrongdoing against the Insurance Commissioner without naming her as a necessary party. *See Crowhorn v. Nationwide Mut. Ins. Co.*, 2001 WL 695542 (Del. Super. Ct.).

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

The other five counts in the **[*12]** complaint allege specific violations. Count Two alleges breach of contract. Count Three asserts a claim for bad-faith breach of contract. Count Four alleges breach of the contract duty of fair dealing. Count Five is a charge for common law fraud, and Count Six is a claim of consumer fraud under 6 *Del. C.* § 2513.

Finally, the second amended complaint alleges the prerequisites of class certification under Superior Court Civil Rule 23(a). These are numerosity, commonality, typicality and adequacy of representation. Additional averments allege that the class may be maintained under Rule 23(b)(1)(A), 23(b)(2) or 23(b)(3).

*Nationwide's Motions to Limit Discovery*

Nationwide has submitted twelve motions for protective orders under Superior Court Civil Rule 26(c). These seek to limit discovery on the issue of class certification. Specifically, Nationwide invokes the provisions of *HN3*⬆Superior Court Civil Rule 26(b)(1) providing that the plaintiff may only obtain "discovery regarding any matter, not privileged, which is *relevant* to the subject matter involved in the pending action . . . ." n14

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - -

n14 Del. Super. Ct. Civ. R. 26(b)(1) (emphasis added).

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - - **[*13]**

*(1) Motion for Protective Order re: Previously Settled Claims*

Nationwide first seeks a protective order preventing the discovery of claim files for those PIP claimants who have settled their claims with Nationwide and executed a release. In addition, on the basis of the doctrine of "accord and satisfaction," Nationwide wishes to prevent discovery of the claim files of PIP claimants who have resolved their claims with Nationwide short of commencing suit and issuing releases.

*HN4*⬆In Delaware, "where the language of the release is clear and unambiguous, it will not be lightly set aside." n15 "Ordinarily, a release covers only matters expressed in the contract that are in existence at the time of the release." n16 Accordingly, the Court will not require Nationwide to produce any claim file documents where a specific release of Nationwide exists as to particular PIP claims. The release must be produced, however, and this exclusion relates only to the particular matter(s) in the recital of the release. All other relevant documents should be produced, especially if they relate to PIP coverage claims under the same or different policies after the applicable time period of the release. **[*14]**



- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - -

n15 *Adams v. Jankouskas*, 452 A.2d 148, 156 (Del. 1982) (citations omitted).

n16 *Fisher v. Fisher*; 1999 WL 1032768 at *4 (Del. Ch.) (citations omitted).

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - -

Nationwide's request to preclude discovery on the basis of accord and satisfaction must be denied. [HN5] Whether an accord and satisfaction exists, and whether or not it extinguishes all claims of the parties, are both questions of fact that must be determined in every case. This Court cannot give a blanket prohibition against discovery on Nationwide's mere allegation that there has been an accord and satisfaction in a particular case. n17 [HN6] Accord and satisfaction is a defense against the merits of an individual plaintiff's claim, and may represent a colorable argument against certification (which the Court can consider when the issue of class certification is decided); however, an accord and satisfaction does not prevent *discovery* on the issue of certification.

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - -

n17 *See e.g. CitiSteel USA, Inc. v. Connell Ltd. P'ship*, 758 A.2d 928 (Del. 2000); *Acierno v. Worthy Bros. Pipeline Corp.*, 693 A.2d 1066 (Del. 1997).

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - - **[*15]**

*(2), (3) Motions for Protective Orders re: Litigated Claims and Arbitrated Claims*

Nationwide also seeks to prevent discovery regarding any claimant who litigated his or her claims against Nationwide--whether successful in that litigation or not. In contrast, it is the plaintiff's position that although such claimants may not be members of the class, their file information is still discoverable under *Benning v. Wit Capital Group, Inc.* n18

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - -

n18 2001 WL 1388544 (Del.).

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - -

The plaintiff's second amended complaint excludes previously litigated claimants from the class, and rightly so. Paragraph 45 of that document states:
Specifically excluded from the proposed class are those persons who have already secured recovery against Nationwide in connection with the practices complained of,

whether by settlement or judgment; and Nationwide's officers, directors, employees, agents, or legal representatives, or the successors or assigns of any of them.

This Court fails to see how the discovery **[*16]** of previously-litigated claim files is reasonably calculated to lead to the discovery of admissible evidence as required under Superior Court Civil Rule 26(b)(1). The Court finds that these file materials are not relevant and will grant Nationwide's motion for protective order as to previously litigated claims materials.

In like manner, the Court finds that any claims which have proceeded through arbitration (and for which no appeal was filed) cannot be considered relevant. Discovery of those claims files is not reasonably calculated to lead to admissible evidence and Nationwide's motion for protective order as to previously arbitrated claims will be granted.

*(4) Motion for Protective Order re: Statute of Limitations*

Nationwide next seeks to narrow the scope of the potential class by applying the applicable statute of limitations, and has moved for a protective order so that it need not produce any file *opened* prior to June 8, 1997. Plaintiff, on the other hand, seeks discovery for a class of policy holders who from January 1, 1994 through the present *submitted* PIP claims.

*HN7*A cause of action for benefits wrongfully withheld under 21 *Del. C.* § 2118 **[*17]** accrues at the time the benefits are *denied*. n19 The Delaware Supreme Court has "held that a Plaintiff has three years after the date of the denial of benefits to file a claim." n20 Likewise, *HN8*"[a] three-year statute of limitation under 10 *Del. C.* § 8106 governs breach of contract claims," n21 as well as statutory claims such as the declaratory judgment action here. The insurance contract at issue incorporates these legal limitations periods into the coverage agreement. n22

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n19 *Harper v. State Farm Mut. Ins. Co.*, 703 A.2d 136 (Del. 1997)).

n20 *State Farm Mut. Auto. Ins. Co.* v. *Smith*, 2000 WL 1211153 at *3 (Del. Super. Ct.).

n21 *Mentis v. Delaware Am. Life Ins. Co.*, 1999 WL 74430 at *8 (Del. Super. Ct.).

n22 *See* Br. of the Def. Nationwide Mut. Ins. Co. In Opp. to the Motion for Class Certif. of the Plf., Exh. "K". The insurance contract General Policy Conditions states, under "Legal Action Limitations," that a legal action "must be filed[] within the time limit allowed by law."

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - **[*18]**

Because the plaintiff's complaint was filed on June 8, 2000, he has preserved all PIP statutory and contract claims under Counts One, Two and Four as to any improper denial of benefits which occurred on going from June 8, 1997. With respect to Counts One, Two and Four, Nationwide is not required to produce any files for which any *denial* of benefits occurred before June 8, 1997.

[HN9] A three-year statute of limitation under 10 *Del. C.* § 8106 also governs the claims of common law fraud and statutory fraud set forth under Counts Five and Six in the complaint. n23

[HN10] The limitation period does not begin to run until the Plaintiff has reason to know that a wrong has been committed . . . . It is not the actual discovery of the reason for the injury that starts the clock, but the discovery of facts sufficient to put a person of ordinary intelligence on inquiry which, if pursued, would lead to discovery. n24

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - -

n23 *Mentis*, 1999 WL 744430 at *8.

n24 *Id* (citations omitted).

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - **[*19]**

Whenever Nationwide denies a PIP claim, a person of ordinary intelligence would have facts sufficient to make an inquiry into the reason for the denial, thus leading to the discovery of potential fraud or wrongdoing. n25 For this reason, the Court holds that any viable fraud claim in this case must have accrued after June 8, 1997. Consequently, with respect to Counts Five and Six, the Court will order that Nationwide does not have to produce any files where the *denial* of benefits occurred before June 8, 1997.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - -

n25 Moreover, with respect to the alleged "usual and customary" fraudulent practice, it could be argued that the denial of benefits would appear to be a claimant's *second* or *third* notice of Nationwide's procedures. This is because it appears that Nationwide's PIP policy as well as its claim acknowledgment letter, like the one sent to Mr. Crowhorn, puts a claimant on notice that any charges in excess of the usual and customary charges would be challenged by Nationwide. *See* Br. of the Def., Nationwide Mut. Ins. Co., in Opp. to the Mot. for Class Cert. of the Plf., James M. Crowhorn, Exh. "K" and "L."

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - **[*20]**

Finally, with respect to Count Two of the complaint, the Court is in agreement with Nationwide that [HN11] bad faith claims are subject to a three-year statute of limitations and accrue, as do causes of action for fraud, when a reasonable person is put on notice of the possible existence of bad faith claims. n26 For this reason, as to Count Two, the Court will order that Nationwide is not required to produce files related to allegations of bad faith where the *denial* occurred prior to June 8, 1997.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n26 *Hostetter v. Hartford Ins. Co.*, 1992 WL 179423 at *4 (Del. Super. Ct.).

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

*(5) Motion for Protective Order re: Exhaustion of Policy Limits*

Nationwide's fifth motion for protective order seeks to limit the production of all claims files where Nationwide has paid the full policy limits since those claimants are not entitled to any further policy benefits. Nationwide's motion must be denied. Exhaustion of benefits may or may not be a defense to the breach of contract or fraud claims pled herein. This **[*21]** is not, however, a reason to exclude a PIP claimant from class consideration as the putative class here seeks more than simply PIP benefits. Consequently, Nationwide's motion to exclude PIP claims files where the benefits have been exhausted is denied.

*(6), (7) Motions for Protective Orders re: Pre-Certification Practices and Prior Impairment Reduction Practices*

Nationwide's next two motions seek to prevent discovery regarding practices that the plaintiff has never witnessed or experienced but, nonetheless, he is convinced happen and are fraudulent. There is no apparent dispute among the parties that Mr. Crowhorn has not experienced the alleged pre-certification fraud, n27 nor the asserted prior impairment reduction fraud. n28

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n27 The plaintiff has described the alleged pre-certification fraud this way: Nationwide sometimes takes the position that pre-certification of coverage is unavailable under its PIP products; with the result that Nationwide's PIP insureds are sometimes deprived of necessary medical treatment. . . . Nationwide tends to take this position in cases where the anticipated treatment is an expensive one, or where the total amount of PIP benefits paid to a particular claimant begin to approach the reserve established by Nationwide for the subject claim.

**[*22]**

n28 Likewise, the plaintiff has protested Nationwide's alleged prior impairment procedures as fraudulent, charging that when an IME doctor concludes a permanency rating has been previously attributed to the situs of a current injury, then Nationwide

will reduce its current level of benefits by the percentage of the prior rating.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - -

*Standing*

Putting aside the fact that Nationwide does not concede that these alleged frauds occurred, Nationwide argues that "a person cannot predicate standing on an injury he or she does not share." n29 Moreover,

*HN12*♦With respect to multiple claims alleged on behalf of a class, the representative must possess the same interest and suffer the same generic type of injury as the other class members, but the representative's injury need not necessarily arise from or be encompassed in the identical factual circumstances that give rise to the injuries of the class members. n30

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - -

n29 *Caravetta v. McKesson HBOC, Inc.*, 2000 WL 1611101 (Del. Super. Ct.).

n30 *Id at *7.*

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - **[*23]**

The plaintiff responds that he has standing on all claims because the linchpin of his complaint is that he is a representative of a class with a "shared-injury." He is adamant that he does not allege six separate fraudulent schemes (of which he has only experienced four) but, rather, there exists only one, common, overarching fraudulent scheme (of which the six fraudulent practices n31 are evidence). The common scheme is that Nationwide induced payment of its insureds' premium dollars, intending all the while to subject them to the six practices. In other words, the common injury that ties this class together occurred at the time of the sale of the PIP policy (when Nation wide sold PIP policies with the intent to defraud).

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - -

n31 *See supra* note 2.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - -

In support of his "common scheme" theory, the plaintiff cites *In re The Prudential*, n32 *Baby Neal*, n33 and *Caravetta* n34 to show that the class representative's standing derives from his exposure to the overarching scheme-not from the

exposure to the various **[*24]** practices that comprise the scheme.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n32 *In re The Prudential Ins. Co. of Am. Sales Practice Litig.* 148 F.3d 283 (3d Cir. 1998); *cert. denied*, 525 U.S. 1114, 142 L. Ed. 2d 789, 119 S. Ct. 890 (1999).

n33 *Baby Neal v. Casey*, 43 F.3d 48 (3d Cir. 1994).

n34 *Caravetta*, 2000 WL 1611101.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - -

These cases do not stand for that proposition, however. More accurately, they represent the fact that *HN13* class certification under a common scheme is *not* appropriate when there are many heterogeneous claims on the issue of liability. In the present matter, the underlying liability issues are far from "common."

First, *In re The Prudential* (like *Amchem Prod., Inc.)* n35 concerned the conditional certification of a "proposed class for *settlement* purposes only." n36 Because the case was not headed for trial, and liability was not contested, the court did not need to consider the difficulties likely to be encountered in the management of a class action under Rule 23(b)(3)(D). n37 Such **[*25]** is not the case here.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n35 *See Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 138 L. Ed. 2d 689, 117 S. Ct. 2231 (1997).

n36 *In re The Prudential*, 148 F.3d at 307.

n37 *Amchem Prod., Inc.*, 521 U.S. at 620-621.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - -

The predominance and superiority analysis used *In re The Prudential* for Rule 23(b)(3) certification is not identical in character to the examination that would be required in the instant case. In that settlement class, because liability and a "common scheme" were admitted and "the vagaries of medical testimony and scientific expertise [were] removed from consideration," n38 individual questions of liability did not predominate. The "single central issue" of *In re The Prudential* was the conduct of the insurance company's management n39 and "the common proof adequately demonstrated some damage to each individual." n40 In the case at bar, the single central and predominate issue is not management's conduct in fraudulently inducing the sale **[*26]** of PIP policies-nor is there a "common proof"

of liability.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n38 *In re The Prudential*, 148 F.3d at 315.

n39 *Id.* at 314; *see e.g. Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 192 (3rd Cir. 2001) (distinguishing *In re The Prudential* in that settlement inquiry is far different from certification inquiry).

n40 *Newton*, 259 F.3d at 188 (citations omitted).

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

*Baby Neal* also does not support the plaintiff's position that his standing derives from exposure to an overarching scheme of management misconduct, rather than exposure to the various practices that comprise the scheme. In *Baby Neal*, the plaintiffs sought certification under Rule 23(b)(2), seeking "broad declaratory or injunctive relief." n41 The class was certified precisely because individual questions did *not* abound. "Because there are *no individual claims* as such, the differences among the plaintiffs do not affect the central claim [the "overarching **[*27]** scheme"] that [the defendant] violates a variety of the children's (putative class members') constitutional and statutory rights . . . ." n42 *Baby Neal* illustrates the point that ᴴᴺ¹⁴⬆an overarching scheme of liability may bind the class only if individual differences do *not* prevail in the underlying claims of the class. In the instant matter, it cannot be said that "there are no individual claims as such" underlying the alleged overarching scheme.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n41 *Baby Neal*, 43 F.3d at 59.

n42 *Id.* at 63 (emphasis added).

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

Finally, *Caravetta* does not support plaintiff's position that a common scheme gives this plaintiff standing to bring the pre-certification and prior impairment claims against Nationwide. *Caravetta* shows that ᴴᴺ¹⁵⬆a plaintiff will be found representative when the underlying claims *are undifferentiated* in their facts and applicable proof problems, *then*, a common scheme might be the basis for recovery.

In *Caravetta* the cases "involved the same basic **[*28]** facts, legal claims and alleged damages." n43 Thus the Court allowed a matter to go forward in California, instead of in Delaware, because the Court implicitly determined that the California "lead" counsel and plaintiff provided adequate representation (or at least that the

California court was doing the analysis so as to pick the best representative parties). The instant matter does not involve the same facts, legal claims and damages as did the causes of action in both the Delaware and California cases of *Caravetta*.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - -

n43 *Caravetta* 2000 WL 1611101 at *8. Although the facts in *Caravetta* did not involve an express finding on the issue of certification, it did discuss various concerns concerning the implicit effect of staying one uncertified class action over another-that granting a stay in one of the actions might effectively displace the judicial review of the adequacy of the class representative which occurs when a class is certified. Ergo, the court was recognizing that its decision to effect a stay was not to be mechanical under the first-filed rule. Rather, the Court needed to consider the representativeness of the attorneys in both jurisdictions before ruling on the motion to stay. If the court felt that the attorneys in the California case were not representative (i.e. if the underlying claims in the California case did *not* involve the same common facts, claims and damages), the Court would likely have allowed the Delaware action to proceed. Thus, by negative implication, *Caravetta* can be understood to stand for the proposition that $^{HN16}$a party will *not* be found representative of a "common scheme" when there are heterogeneous, dissimilar claims underlying an action where class certification is sought.

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - - **[*29]**

For these reasons, and because the underlying claims are heterogenous and very dissimilar regarding the facts of liability, the Court cannot find that questions concerning one "common scheme" or shared injury predominate over questions regarding the six alleged practices in this case. In the case *sub judice* the class representative's standing does not derive from his exposure to one overarching scheme. This Court's jurisdiction may only proceed from the plaintiff's submission of his own case or controversy arising out of the specific practices alleged.

*Adequacy of Representation re: Pre-Certification and Prior Impairment Reduction*

Accordingly, Nationwide's motions with respect to discovery on the pre-certification and prior impairment practices confront the issue of the representativeness of Mr. Crowhorn as to these two practices. Plaintiff has pointed out that Nationwide is really seeking a ruling, as a matter of law, that Mr. Crowhorn is an inadequate class representative for the alleged pre-certification and prior impairment frauds and, therefore, the standard for partial summary judgment should apply.

*Summary Judgment Standard*

$^{HN17}$Superior Court Rule 56(c) provides **[*30]** that judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." n44 $^{HN18}$The burden is on the moving party to show, with reasonable certainty, that no genuine issue of material fact exists and judgment as a matter of law is permitted. n45 $^{HN19}$When considering a motion for summary judgment, the facts must be construed in the light most favorable to the non-moving party. n46 Further,

if the record indicates that a material fact is disputed, or if further inquiry into the facts is necessary, summary judgment is not appropriate. Judgment must also be denied if there is a dispute as to the inferences that can be drawn from the facts. n47

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - -

n44 Super. Ct. Civ. R. 56.

n45 *See Celotex Corp. v. Cattret*, 477 U.S. 317, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986); *Martin v. Nealis Motors, Inc.*, 247 A.2d 831 (Del. Supr. 1968).

n46 *McCall v. Villa Pizza, Inc.*, 636 A.2d 912 (Del. Supr. 1994). **[*31]**

n47 *Schagrin v. Wilmington Med. Ctr., Inc.*, 304 A.2d 61, 63 (Del. Super. 1973) (citing *Vanaman v. Milford Mem'l Hosp., Inc.*, 272 A.2d 718 (Del. Supr. 1970)).

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

*Inadequate Representation as a Matter of Law*

HN20 "A class representative must also be part of the class and possess the same interests and suffer the same injuries as the class members." n48 The facts here are undisputed-Mr. Crowhorn has not been subjected to Nationwide's alleged pre-certification and prior impairment procedures. The plaintiff has not alleged *facts* showing that these practices exist or have caused harm to anybody. Consequently, with respect to these two practices, Mr. Crowhorn does not have an alleged injury or claim against Nationwide under any of the Counts pled in the second amended complaint. Mr. Crowhorn cannot take discovery on these issues, nor be representative of a putative class of persons alleged to have been injured by these two practices.

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - -

n48 *Mentis*, 2000 WL 973299 at *6 (citing *Amchem Prod., Inc.*, 521 U.S. at 625-626).

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - **[*32]**

First, as to Count One, Mr. Crowhorn is not representative of a class entitled to a declaratory judgment because he has shown no actual controversy regarding Nationwide's pre-certification and prior impairment procedures. HN21 "The existence of an actual controversy between the parties is a jurisdictional fact in actions for declaratory judgments under 10 *Del. C.* § 6501." n49 An actual controversy must, *inter alia*, involve the rights of the party seeking the judgment, i.e. Mr. Crowhorn.



n50 "Courts will not entertain problems when there is no real likelihood that such problems will be raised in the future by reason of actual contest between the parties." n51 Otherwise, why would an attorney need a plaintiff, when a mere assertion of wrongdoing (without the likelihood of an "actual contest" between *two parties*) would be sufficient to bring a case against a defendant.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n49 *Ackerman v. Stemerman*, 41 Del. Ch. 585, 201 A.2d 173, 175 (Del. 1964); *see also Playtex Family Prods. Inc. v. St. Paul Surplus Lines Ins. Co.*, 564 A.2d 681, 687 (Del. Super. Ct. 1989) (finding that "actual controversy" is still a requirement for declaratory judgment even though language removed from statute). **[*33]**

n50 *Marshall v. Hill*, 47 Del. 478, 8 Terry 478, 93 A.2d 524, 525 (Del. Super. Ct. 1952).

n51 *Ackerman*, 201 A.2d at 175.

- - - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

*HN22* ♠ To obtain a declaratory judgment "there must be *in existence* a factual situation giving rise to immediate, or about to become immediate, controversy *between the parties*." n52 There is no such "factual situation" in the case *sub judice*. The pre-certification and prior impairment frauds alleged herein are mere assertions of wrongdoing, and plaintiff has alleged no injury. These are "hypothetical" allegations for which declaratory judgment is inappropriate. n53

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n52 *Id.* (emphasis added).

n53 *See Stroud v. Milliken Enter., Inc.*, 552 A.2d 476, 479 (Del. 1989) (internal citations omitted) (stating that "Delaware law is well settled that this Court's jurisdiction . . . does not require . . . entertaining suits seeking an advisory opinion or an adjudication of hypothetical questions").

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - **[*34]**

Secondly, the plaintiff is not representative of individuals with breach of contract claims under Counts, Two and Four related to these two practices. His contract was never breached by lack of pre-certification or by prior impairment reductions. Furthermore, as to Count Three, plaintiff cannot prevail on the tort of malicious wilful, intentional breach of contract where he cannot show the required actual damages. n54

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - -

n54 *E.I. DuPont de Nemours and Co. v. Admiral Ins. Co.*, 1994 WL 465547 at *6 (Del. Super. Ct.).

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

The Court has also determined that the plaintiff has not pled an individual cause of action for common law fraud, with respect to these two practices, under Count Five of the second amended complaint. Obviously, damages have not been alleged with sufficient particularity under Superior Court Civil Rule 9(b). n55 Although this Court's prior opinion noted that paragraph 105 of the complaint alleged damages (generally) under the fraud count, the Court ordered a more definite statement. **[*35]** The Court was not entirely certain that Crowhorn himself had a fraud complaint. Now, after consideration of plaintiff's second amended complaint (as well as the current record before the Court) the Court does not believe that the plaintiff has an individual fraud claim against Nationwide related to the precertification or prior impairment issues.

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - -

n55 *See Strasburger v. Mars*, 46 Del. 274, 7 Terry 274, 83 A.2d 101 (Del. Super. Ct. 1951) (finding complaint sufficient where it alleged an ultimate fact on *each element* of the misrepresentation claim). *HN23* The elements of a common law cause of action for fraud are:

(1) a false representation, usually one of fact, made by the defendant;
(2) the defendant's knowledge or belief that the representation was false, or was made with reckless indifference to the truth;
(3) an intent to induce the plaintiff to act or to refrain from acting;
(4) the plaintiff's action or inaction taken in justifiable reliance upon the representation;
(5) damage to the plaintiff as a result of such reliance.

*Gaffin* 611 A.2d 467, 472 (Del. 1992) (citing *Stephenson v. Capano Development, Inc.*, 462 A.2d 1069, 1074 (Del. 1983))

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - **[*36]**

Moreover, under Count Five there can be no class action **as to any of the fraudulent practices of Nationwide alleged in the complaint**. n56 *HN24* "A class action may not be maintained in a purely common law or equitable fraud case since individual questions of law or fact, particularly as to the element of justifiable reliance, will inevitably predominate over common questions of law or fact." n57

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - -

n56 *Gaffin v. Teledyne, Inc.* 611 A.2d 467. Note, that this Court previously allowed this claim on a motion to dismiss stating that: "Because the Plaintiff met the technical elements of a fraud claim . . . Counts V and VI will not be dismissed; however, the Court will require a more definite statement pursuant to Rule 12(e)." *See Crowhorn v. Nationwide Mut. Ins. Co.*, 2001 WL 695542 (Del. Super. Ct.). Since that ruling the plaintiff has submitted his second amended complaint; therefore, the Court has before it the full extent of the fraud allegations pled by the plaintiff. Under Superior Court Rule 12(e), the Court is reviewing the sufficiency of the revised allegations in order to "make such order as it deems just." Surprisingly, Nationwide has not raised this issue by motion or otherwise. **[\*37]**


n57 *Id.*; *See also Oliver v. Boston Univ.*, 2000 WL 1091480 (Del. Ch.) (interpreting *Gaffin* to mean that fraud claims cannot be certified as a class action even when there are other claims pled in addition to fraud); *cf. In re The Prudential*, 148 F.3d at 314 (citing *Amchem* at 516) (discussing reliance in the context of settlement class certification and noting that "challenges based on reliance have usually been rejected and will not bar predominance satisfaction because [reliance pertains] to the right of a class member to recover [that right has already been decided in settlement classes] in contrast to the underlying common issue of the defendant's liability").

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

Finally, the plaintiff is not representative of plaintiffs with individual causes of action related to pre-certification and prior impairment fraud under Count Six and the Consumer Fraud Act ("CFA"), 6 *Del. C.* § 2513. [HN25]Although the elements of a cause of action for consumer fraud under the CFA are significantly different than those elements of common law fraud, **[\*38]** n58 a particularity requirement still applies. n59 The CFA "incorporates the principle that a negligent misrepresentation is sufficient to violate the statute," n60 and for a misrepresentation to be negligent it must be *material*. n61 A misrepresentation alone does not trigger liability. n62 Where the plaintiff has not pled any particular harm or damage caused by allegedly negligent misrepresentations, the particularity requirements of Rule 9(b) have not been met because there has been no allegation of materiality.

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n58 6 *Del. C.* § 2513(a) [HN26]states that certain practices with regard to the misrepresentation of material facts in particular consumer transactions, are unlawful "whether or not any person has in fact been misled, deceived or damaged thereby." Hence, consumer fraud does not require that the plaintiff prove justifiable reliance; therefore individual questions concerning justifiable reliance do not prevent a class action under the CFA. Likewise, consumer fraud does not require proof of damages as an element.


n59 *Rinaldi v. Iomega Corp.*, 1999 WL 1442014 (Del. Super. Ct.); *but see State ex. rel. Brady v. Publishers Clearing House*, 787 A.2d 111 (Del. Ch.) (holding that Chancery Rule 9(b) requirements of particularity did not evolve similarly to Superior

Court Rule 9(b) and that particularity requirements did not apply to cause of action brought by the Attorney General under the CFA and/or, alternatively, that the complaint in this case met the particularity requirements of Rule 9(b)). **[*39]**

n60 *Stephenson.*, 462 A.2d 1069.

n61 *Norton v. Poplos* 443 A.2d 1, 6 (Del. 1982).

n62 *Id.* (citing Restatement 2d of Contracts, § 159)(noting that "a misrepresentation is merely an 'assertion not in accordance with the facts'").

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - -

It is clear that this plaintiff cannot represent a class of plaintiffs who allege injury from the pre-certification and prior impairment practices of Nationwide because he does not share their injury under any cause of action pled in the second amended complaint. Because *HN27*"[a] class representative must also be part of the class and possess the same interests and suffer the same injuries as the class members," n63 the motion to prevent discovery regarding pre-certification and prior impairment practices must be granted.

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - -

n63 *Mentis*, 2000 WL 973299 at *6 (citing *Amchem Prod., Inc.* 521 U.S. at 625-626.

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - -

*(8) Motion for* **[*40]** *Protective Order re: Personal Information*

Nationwide brings a motion for protective order seeking to prohibit discovery of all personal, identifying information about members of the putative class. *HN28*Under Superior Court Civil Rule 26(b)(1), the plaintiff may obtain relevant discovery that relates to any claim it may have, including the identity and location of persons having knowledge of discoverable matters.

In the present case the plaintiff has no claim that pertains to any PIP claimant except the plaintiff. On the other hand, the plaintiff may obtain discovery about Nationwide's practices with respect to the alleged class-wide contract breaches and fraud in order to establish the elements of a class action. Nationwide, "therefore, must respond to the discovery requests at issue, but can redact, in good faith," n64 the names, addresses, phone numbers, and the like which would provide the identity of putative plaintiffs. This information may be redacted so long as the production response is presented in a coherent manner in order that the plaintiff is able to determine the extent and contents of a particular file. File documents on a particular claimant should be produced with **[*41]** a discernable method of organization. Otherwise, identifying information will be required.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n64 *Cf. Shapiro v. Nu-West*, 1998 WL 732891 (Del. Ch.) (allowing redaction of information revealing personal data (possessed by class representative) regarding class action plaintiffs that was not absolutely necessary to provide responsive answers to requests for production on a relevant class certification issue); *see also Poole v. N.V. Deli Maatschappij*, 1964 WL 68938 (Del. Ch.) (finding that the fact that the exact number or identity of the class members could not definitely be established until a later stage, after certification, did not preclude the maintenance of a class action"); *Gilbert v. El Paso Co.*, 1986 WL 6834 (Del. Ch.) (noting that "the parties engaged in extensive discussion and correspondence over how to identify the names and addresses of the class members" *after* the class was certified).

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

(9) Motion for Protective Order re: Medical Records

Nationwide **[*42]** next motions this Court to prevent the discovery of confidential medical records. Plaintiff asserts that Nationwide does not have standing to assert the physician-patient privilege so as to prevent release of relevant medical records. Utilizing the rationale set forth in *Monsanto Co. v. Aetna Cas. and Sur. Co.*, n65 the Court finds that "to deny [Nationwide] the right to assert the privilege of patients unaware of the effort to pierce the privilege would render the protection of the privilege ineffective." n66 Regardless of Nationwide's motivation (which plaintiff maintains is self-serving), "the potential exists for a party to assert the physician-patient privilege for absent patients as a shield from disclosure of relevant information on the state of its own knowledge, intention, or expectation that its actions would produce harm." n67

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n65 *Monsanto Co. v. Aetna Cas. and Sur. Co.*, 1992 WL 182320 at *2 (Del. Super. Ct.)(citations omitted).

n66 *Id.*

n67 *Id.*

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

In consideration **[*43]** of these principles, and utilizing the procedures set forth in *Monsanto*, the Court will order that if medical records are required to be produced, then, appropriate confidentiality precautions may be taken so as to redact all identifying information except age, sex and race. n68

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n68 Per this Court's May 16, 2002 scheduling order in this case, the Court is willing to issue a confidentiality order upon appropriate motion of a party.

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

*(10) Motion for Protective Order re: IME-Related Discovery*

Nationwide seeks to preclude the discovery of PIP claim files of other PIP claimants examined by physicians other than Dr. Riederman, because they are irrelevant to the present claim. It is Nationwide's position that plaintiff's alleged injuries arise from the actions of Dr. Riederman, and "a person cannot predicate standing on an injury he or she does not share." n69 Mr. Crowhorn was evaluated by Dr. Robert Riederman on behalf of Nationwide. Dr. Riederman's report stated that the plaintiff had reached maximum medical **[*44]** improvement, and that Dr. Riederman did not believe that Mr. Crowhorn's complaints were related to the March 8th accident. Dr. Riederman opined that he did "not believe that further medical treatment, physical therapy or diagnostic testing is indicated in this patient's management." n70 After this evaluation Nationwide cut off the plaintiff's benefits.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n69 *Caravetta*, 2000 WL 1611101 at *8.

n70 *See* Br. of the Defendant, Nationwide Mut. Ins. Co., in opposition to the Motion for Class Certification of the Plaintiff, James M. Crowhorn, Exh. "I".

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

The plaintiff's allegations with respect to the misuse of IME's do not involve a particular doctor or IME provider but focus on *Nationwide's* use of the IME reports. For this reason, all IME reports related to abuses in the complaint (and their corresponding claim files) are relevant. For example, it is alleged that the terminology "maximum medical improvement" is used as a pretext to cut off benefits; therefore, information as to IME reports **[*45]** using that language and the status of benefits after such language is used is relevant.

*(11), (12) Motions for Protective Orders re: Attorney Client Privilege and Work Product Doctrine - Special Discovery Master*

Nationwide has objected to the production of certain claim file materials on the basis of the attorney client privilege and the work product doctrine. The plaintiff alleges that Nationwide has waived this objection with respect to the first one-hundred files that were to be reviewed by May 31, 2002, and takes exception to numerous claims of privilege recorded on the privilege log attached to Nationwide's motion.

The Court has determined that it will appoint a Special Discovery Master in this case to be named on or before August 15, 2002. Until the appointment is made,

Nationwide must continue to comply with the discovery schedule set forth in this Court's scheduling order of May 16, 2002. Nationwide must continue to keep a workable privilege log with respect to documents it believes are protected. This log will be submitted to the Special Discovery Master, along with the objected-to documents, for an *in camera* review. The Special Discovery Master will hear the party's **[\*46]** arguments regarding the need for the documents "sufficient to justify abrogating either the attorney-client or work product privileges," n71 as well as the legitimacy of the privilege or protection claimed. At the present time, the Court does not hold that Nationwide has waived any privilege or protection with respect to the first 100 claim files it must turn over.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n71 *Clausen v. Nat'l Grange Mut. Ins. Co.*, 730 A.2d 133, 143 (1997).

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

WHEREFORE, in consideration of the foregoing and consistent with this opinion, Nationwide's Motion for Protective Order:

(1) To prevent the discovery of claim files for PIP claimants who have released Nationwide and executed a release is *GRANTED*; whereas the motion to prevent the discovery of the claim files of PIP claimants who have resolved their claims with Nationwide short of commencing suit and issuing releases is *DENIED*;

(2) To prevent discovery of previously litigated claims is *GRANTED*;

(3) To prevent discovery of previously **[\*47]** arbitrated claims is *GRANTED*;

(4) To narrow the scope of discovery within the applicable statute of limitations is *GRANTED* in so far as to prevent the discovery of file materials related to any claim for which a denial of benefits occurred prior to June 8, 1997;

(5) To prevent discovery of claim files where Nationwide has paid the full policy limits is *DENIED*;

(6) To prevent any discovery related to Nationwide's pre-certification practices is *GRANTED*;

(7) To prevent any discovery related to Nationwide's prior impairment reduction practices is *GRANTED*;

(8) To prevent discovery related to personal identifying information in the files is *GRANTED* so long as Nationwide's production response is presented in a coherent, manageable way;

(9) To prevent the discovery of confidential medical records is *GRANTED* to the extent of the allowable redactions;

(10) To prevent the discovery of the PIP claim files of claimants evaluated by doctors other than Dr. Riederman is *DENIED*;

(11) To prevent the discovery of certain claim file materials on the basis of the attorney client privilege is **RESERVED** until **[*48]** the appointment of a Special Discovery Master in this case, whereupon Nationwide's motion is to be submitted to the Special Discovery Master for decision;

(12) To prevent the discovery of certain claim file materials on the basis of the attorney work product doctrine is **RESERVED** until the appointment of a Special Discovery Master in this case, whereupon Nationwide's motion is to be submitted to the Special Discovery Master for decision.

IT IS SO ORDERED.

/s/ William L. Witham, Jr.

J.