IN THE UNITED STATES DISTRICT COURT
IN AND FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| THOMAS A. EAMES, ROBERTA L. EAMES and TAMMY EAMES, on behalf of themselves and all others similarly situated, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | C.A. No. 04-CV-1324KAJ |
| v. | ) ) | |
| NATIONWIDE MUTUAL INSURANCE COMPANY, | ) ) ) ) | |
| Defendant. | ) | |

### EAMES PLAINTIFFS' MOTION TO COMPEL RESPONSES TO PLAINTIFFS' FIRST SET OF INTERROGATORIES

Plaintiffs Thomas A. Eames, Roberta L. Eames and Tammy Eames (the "Eames plaintiffs") respectfully move, pursuant to Fed. R. Civ. P. 37(a)(2)(A) and (a)(3), to compel Nationwide to provide full and non-evasive responses to plaintiffs' first set of interrogatories. Plaintiffs further respectfully move 1) for an award of the reasonable expenses associated with this motion, including attorneys' fees and SDM fees, pursuant to Rule 37(a)(4), and 2) for a finding that Nationwide offered a knowingly false response to Interrogatory No. 1.

**I.   THE LEGAL STANDARD**

A party may move to compel responses to discovery served in accordance with Rule 26 where the opposing party has failed to respond. Fed. R. Civ. P. 37(a)(2)(A). Under the Rules,"an evasive or incomplete disclosure, answer, or response is to be treated as a failure to disclose, answer, or respond." Fed. R. Civ. P. 37(a)(3). Nationwide's responses to the Eames plaintiffs' first set of interrogatories are not only evasive, but knowingly false.

129952

## II.    INTERROGATORY NO. 1

As the SDM is aware, this case concerns a definite business practice: Nationwide's characterization of Personal Injury Protection (or "PIP") coverage as "full", made by Nationwide through its Delaware insurance agents, and in the purported sale of the statutory minimum limits under 21 Del. C. §2118. The Eames plaintiffs contend that the practice is deceptive, suggesting as it does to ordinary consumers that they are either purchasing the fullest PIP limits available, or (conversely) that the minimum limits are the fullest that one can buy. Nationwide sometimes portrays the practice as a characterization, not of PIP *limits* but of the absence of a PIP-related *deductible*.

On September 16, 2005, the Eames plaintiffs served Nationwide with their initial interrogatories, targeting fundamental information on the disputed practice. Ex. A. Interrogatory No. 1 asks Nationwide to simply state whether it has engaged in the disputed practice within the State of Delaware since August 20, 2001. Significantly, it employs the Eames plaintiffs' special definition of the term "disputed practice" (set forth in Definition No. 4):

> References to the "disputed practice" are to the characterization of any aspect of PIP (whether it be limits of liability, deductibles or otherwise) as "full", where such characterization is set forth in documents shared by Nationwide or its insurance agents with actual or prospective purchasers of automobile insurance, and regardless of whether Nationwide contends that such characterization is innocent or lawful.

Ex. A at 2. This definition was written in recognition of the fact that the parties disagree as to the nature and effect of the "full" usage. The Eames plaintiffs adopted this definition so that Nationwide could not avoid the interrogatory simply by invoking the disagreement: if they employed the "full" modifier with respect to *any aspect* of PIP, their only honest answer would necessarily be an affirmative one. Certainly the inquiry posed by Interrogatory No. 1 -- whether

129952                                    2

Nationwide engages in the very practice that gives rise to the dispute -- is fundamental to issues of class certification.

Unfortunately, Nationwide responded that it "has not 'characterized' PIP as 'full'"; and on this basis, Nationwide refuses to answer. Ex. B. Nationwide thus denies having characterized *any aspect* of PIP (and not just PIP limits) as "full." This is a knowingly false response.

### A. The Agents' Production of Documents Containing the "Full" Usage

In response to the Eames plaintiffs' non-party subpoenas, four of Nationwide's Delaware agents have produced documents confirming that Nationwide (through those agents) routinely employs the "full" modifier in the line entry for PIP on rate quotes, memoranda of insurance and other policy-related documents. As the affidavit of Heather Jones establishes, those agents each agreed to produce thirty-five policyholder files, selected at random, in satisfaction of the subpoenas. Affidavit of Heather R. Jones ¶¶2-3 (Ex. C). Within those 140 random files, the Eames plaintiffs found forty-eight instances in which Nationwide purported to sell the statutory minimum limits of $15,000 per person and $30,000 per accident. Id. ¶4. Of those forty-eight "hits", *forty-seven of them* used the "full" modifier in the line entry for PIP. Id.

The Eames plaintiffs have isolated one example from each of these forty-seven files, and attached them as a single exhibit to this motion. See Ex. D. No sentient being can look upon those forty-seven examples, drawn from a handful of files and just four agents, without concluding that Nationwide routinely characterizes *some aspect* of PIP -- whether it be limits of liability, deductibles or otherwise -- as full. Yet in the face of this irrefutable evidence, Nationwide's sworn interrogatory response denies having ever characterized *anything* related to PIP as full. But the evidence of Nationwide's deliberate falsehood does not end there.

### B. The Deaton Testimony

On August 9, 2005, the Eames plaintiffs took the Rule 30(b)(6) of the Glenn Deaton agency, one of the four subpoenaed agents, through its designee, Glenn Deaton. Mr. Deaton testified that virtually his entire book of business (and all his auto business) involves the sale of Nationwide products. Ex. E at 5-6. His testimony also established the obvious: that Nationwide routinely characterizes PIP as full in auto rate quotes and the like:

> Q: Is it fair to say that the characterization of PIP as full in documents like the auto rate quote shown on the last page of Deaton 2 is a routine one in your business?
>
> A: Yes.
>
> Q: What I could do is show you some additional examples of that characterization as it appears in other sets of documents that Deaton produced simply so you could confirm that full is in there. We can go through that exercise. I'm happy to do that. Or you could simply tell me that you expect to find it in all of them, if that's the case.
>
> A: Yes. I would expect to see that usage of the word "full" in the various documents that you have obtained.
>
> Q: And you would expect to see it in connection with PIP?
>
> A: Correct.

Ex. E. at 41-42.

### C. The Parties' Stipulation

And still there is more. At the close of Mr. Deaton's deposition, the Eames plaintiffs' entered into a stipulation with Nationwide and the agents on the extent to which the agents' documents reflect the characterization of PIP as "full." Like Interrogatory No. 1, this stipulation did not require Nationwide to embrace our views on the legal effect of the practice, but simply the fact that the practice exists:

129952                                    4

> MR. SPADARO: *** And the terms of the stipulation are as follows, and I invite counsel, please, to indicate their assent or disagreement with the way that I characterize it. The parties have stipulated that in the vast majority of documents produced by the insurance agents pursuant to the Eames plaintiffs' subpoenas the word "full" appears next to the term "PIP."
>
> MR. LEONI: So stipulated.
>
> MR. CHEYNEY: It's agreed.

Ex. E. at 55-56.

### D. **Nationwide's Admission in Open Court**

Nationwide's sworn denial that it characterizes any aspect of PIP as "full" becomes more outrageous still when one considers its recent argument before the Court on Nationwide's original motion to dismiss. There Nationwide directly embraced *our theory of the case* -- or at least that part of our theory which holds that the "full" usage refers to the PIP limits (as opposed to the absence of a deductible). Nationwide thus told the Court that this usage is unambiguous because it means "full $15,000":

> THE COURT: *** Is there . . . a theory on which they could prevail?
>
> MR. CHEYNEY: No, because it is not ambiguous. You have to first find the contract has an ambiguity. Even with the word "full," give it to them. *It's full $15,000. It's not fuller than $15,000.* It's not the fullest available. It's just full.

Ex. F. at 46. Since $15,000 is the minimum limit, and since the ordinary meaning of "full" is "maximum", this bizarre construction ("full $15,000") essentially translates to "maximum minimum." While the Eames plaintiffs do not agree that such a construction is unambiguous, counsel's admission makes it finally impossible for Nationwide to deny that it characterizes some aspect of PIP as full.

But let us not mince words. What Nationwide has done here may well amount to perjury. After all, Nationwide's denial can only be sensibly interpreted to mean that 1) Nationwide's routine insertion of the modifier "full" on the line entry for PIP is not a "characterization" of any aspect of PIP; 2) despite his intimate familiarity with Nationwide's business practices, Nationwide's agent somehow mistakenly concluded that the disputed practice is a routine one; and 3) when Nationwide told the Court that the "full" usage means "full $15,000", he did not mean to suggest that it characterizes any aspect of PIP whatever. None of these points can be argued with anything like a straight face.

What is more, Nationwide has chosen this course deliberately. The Eames plaintiffs wrote to Nationwide on October 24, 2005, pointing out that that the interrogatory's definition of "disputed practice" embraces the characterization of *any aspect* of PIP as full, and so does not require Nationwide to stake out a position on the merits. Ex. G. Our letter also warned Nationwide that its response amounted to a knowing falsehood, and urged Nationwide to amend the response. Id. None of this had any effect on Nationwide, which is apparently determined to stand by its false response. See Ex. H (responding to the Eames plaintiffs' October 24 letter, Nationwide refuses to revisit any of its responses).

This is a serious matter, and one that needs immediate attention. It is one thing for Nationwide to deny liability or contest damages. It is quite another to supply knowingly false answers under oath. The SDM should find that Nationwide's response to Interrogatory No. 1 is knowingly false.

### E. Nationwide's Objections

Nationwide also interposed a burden objection to Interrogatory No. 1. It is inconceivable that Nationwide could face any undue burden in simply stating whether it engages in the

disputed practice (as defined). More so is this the case here, where an overwhelming body of evidence confirms that it does engage in that practice. Nor can Nationwide possibly particularize its burden claim.

Nationwide's other objections -- relevance, ambiguity and the interrogatory's supposed unrelatedness to class certification issues -- are repeated throughout the responses, and we address them here for all purposes. They are easy enough to address, since none of them can really be taken seriously.

First, the relevance of Interrogatory No. 1 (and all the disputed interrogatories) is manifest. If the fundamental question of whether Nationwide even engages in the challenged conduct is not relevant, then nothing is relevant. The same may be said for Nationwide's "class certification" objection: the issues bound up in these interrogatories (whether Nationwide engages in the practice, how the practice came about, the use of form documents to carry out the practice, etc.) are fundamental to class certification issues. They define the very practice for which class certification is sought, and go directly to issues of numerosity, commonality and typicality under Rule 23. See also In re The Prudential Ins. Co. of Amer. Sales Practices Litig., 148 F.3d 283, 314-15 (3d Cir. 1998) (allegations of common scheme to defraud policyholders met predominance test under Rule 23(b)(3)).

As for ambiguity, Interrogatory No. 1 (like all the disputed interrogatories) has a clear and readily ascertainable meaning. It simply asks Nationwide whether it engages in the practice of characterizing some aspect of PIP as full. Nationwide cannot credibly claim an inability to understand the question asked -- an observation that applies, in fact, to all of Nationwide's boilerplate ambiguity objections.

### III.   INTERROGATORY NO. 2

Interrogatory No. 2 asks Nationwide to identify all persons with knowledge of the genesis, development, inception or origins of the "disputed practice" (as defined). Nationwide responded that the Delaware Department of Insurance "has in the past issued suggested forms." It next identified a single Nationwide employee with knowledge of this alleged circumstance. But the circumstance itself is not responsive; and the attempt to limit identification to a single Nationwide witness defies logic.

In other words, Nationwide has attempted a sleight of hand whereby the practice in question becomes one employed by state regulators rather than by Nationwide itself. But that is not the interrogatory's focus. The interrogatory focuses, rather, on *Nationwide's* use of the modifier "full."

If Nationwide began using the PIP-related modifier "full" on rate quotes, memoranda of insurance and the like because the Department of Insurance suggested that it do so, then Nationwide could properly respond to this interrogatory by identifying all persons (not one person) with knowledge of that circumstance. But in truth, Nationwide's own rate quotes and memoranda of insurance are not government forms: they are not printed, promulgated or required by any regulation of the Delaware Department of Insurance. Rather, Nationwide employs the modifier "full" in these documents on its own initiative.

Any way one slices it, Nationwide's response to Interrogatory No. 2 is deliberately evasive -- and evasive on an issue that has been the subject of extensive motion practice, hearings and Court rulings. Viewed in this light, Nationwide's continued evasion on the "genesis" issue is outrageous. It should thus be compelled to immediately identify all persons with knowledge of the disputed practice's genesis.

129952                                   8

## IV. <u>INTERROGATORY NO. 3</u>

Interrogatory No. 3 asks Nationwide to identify documents that reflect the genesis of the disputed practice. This is a battle we have been waging with Nationwide for nearly a year, and (not incidentally) one of the most important discovery items in the case. In response, Nationwide identifies no documents whatever, but simply incorporates its prior (nonresponsive) answer to Interrogatory No. 2. Importantly, ***Nationwide does not say that no responsive documents exist***.

Nationwide's response is once again evasive. The practice exists, and its existence is proven in a host of documents, in the testimony of Glenn Deaton, and even in Nationwide's own admissions. As a definite business practice it must necessarily have a definite genesis -- one that must logically have left some paper record. Nationwide should thus be ordered to identify immediately the documents that explain how it came, as a matter of regular business practice, to place the modifier "full" in the line entry for PIP on auto rate quotes, memoranda of insurance and other documents.

## V. <u>INTERROGATORY NO. 4</u>

Interrogatory No. 4 asks whether Nationwide has ever communicated with its Delaware insurance agents on the content or form of the document (titled "Auto Memorandum of Insurance") that was attached at Tab A to the interrogatories. Nationwide's response admits that it communicates with its agents regarding "certain documents" -- hardly a revelation. But Nationwide refuses to provide any fuller response until the Eames plaintiffs "properly identify and request relevant information regarding particular documents."

This remarkable response ignores the fact that the "particular document" was actually attached to the interrogatories themselves. As Nationwide is aware, this document was produced

by Nationwide's insurance agents in response to our subpoenas; and it was expressly characterized by the agents' counsel as a *form document*. Ex. I. The 140 policyholder files produced by these same agents confirm this: the document in question is a form that Nationwide routinely employs in the process of placing automobile insurance in Delaware. Cf. Ex. D (containing many of the same forms). Indeed, the Eames plaintiffs themselves were given precisely the same form. Ex. J.

Nationwide's has no right, then, to condition its response on the future production of any other "particular" documents. Either it has communicated to its agents regarding the content or form of the document that appeared at Tab A to the interrogatories, or it has not so communicated. In either event it must respond. Because Nationwide's current response is wilfully evasive, the SDM should compel a complete response and award expenses.

## VI. INTERROGATORY NO. 5

Interrogatory No. 5 asks Nationwide to identify all persons with knowledge of the drafting, preparation, creation, etc. of the form document to which Interrogatory No. 4 refers. In response, Nationwide identifies not all persons, or even some reasonable subset of persons, but just a single person. Nationwide also asserts a burden objection.

It is simply not plausible to suggest that a single actor, in a corporation of thousands, bears sole responsibility for the creation of the form in question. Here again Nationwide's response is incomplete and evasive. As for burden, our October 24 letter asked Nationwide to particularize its burden claim. Ex. G at 3. True to form, Nationwide ignored the request. Ex. H. The SDM should therefore compel a complete response, and award expenses.

## VII. **INTERROGATORY NO. 6**

Interrogatory No. 6 asked Nationwide to identify all documents that refer or relate to the drafting, preparation, etc. of the form document to which Interrogatory No. 4 refers. Nationwide's response fails to identify even a single document, instead relying on its response to Interrogatory No. 5. This response is so evasive -- so thoroughly and unabashedly indifferent to the question asked -- that it serves as a sort of archetype for Nationwide's approach to discovery generally. The SDM should act decisively to compel a complete response and award expenses.

## VIII. **EXPENSES SHOULD BE AWARDED UNDER RULE 37(a)(4)**

Where (as here) a party has been chastised by the Court for procedural abuses, the opposing party must be careful not to appear to be piling on. And certainly Nationwide has been so chastised. In the SDM's January 4, 2006 Report and Recommendations, the SDM found Nationwide guilty of a months-long campaign of delay and evasion. In his February 28, 2006 Order, the SDM concluded that Nationwide acted in bad faith and filed a frivolous motion.

But the risk here is not that the Eames plaintiffs will overplay their hand; the risk is that we might all become inured to Nationwide's misconduct through repetition. Because Nationwide is at it again: having shown no inclination toward compliance with Court rules in the past, it is clearly not about to start now.

For example, the SDM's prior decisions make clear that Nationwide cannot sustain a burden objection simply on its lawyers' *ipse dixit*. Yet here we are again, with more of Nationwide's unsupported burden objections. And certainly there can be no better examples of willful evasion than the useless interrogatory responses that led to this motion -- including most notably Nationwide's response to Interrogatory No. 1, which we have shown to be deliberately false.

One may well ask whether, having twice awarded expenses against a party, an SDM should order them yet again. But the answer must be that if the misconduct continues unabated, so too must the sanctions. The SDM should thus award to the Eames plaintiffs all expenses, including SDM fees, associated with this motion.

## CONCLUSION

For the reasons set forth above, the Eames plaintiffs respectfully request that the SDM 1) compel Nationwide to provide complete, genuinely responsive answers to Interrogatory Nos. 1 through 6; 2) find as a matter of fact that Nationwide gave a knowingly false response to Interrogatory No. 1; and 3) award all expenses associated with this motion, including attorneys' fees and SDM fees, to the Eames plaintiffs.

> Respectfully submitted,
>
> MURPHY SPADARO & LANDON
>
> /s/ John S. Spadaro
> John S. Spadaro, No. 3155
> Philip T. Edwards, No. 4393
> 1011 Centre Road, Suite 210
> Wilmington, DE 19805
> (302)472-8100
>
> Attorneys for plaintiffs
> Thomas A. Eames, Roberta L. Eames and Tammy
> Eames (on behalf of themselves and all others
> similarly situated)

March 17, 2006

IN THE UNITED STATES DISTRICT COURT
IN AND FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| THOMAS A. EAMES, ROBERTA L. EAMES and TAMMY EAMES, on behalf of themselves and all others similarly situated,<br><br>    Plaintiffs,<br><br>v.<br><br>NATIONWIDE MUTUAL INSURANCE COMPANY,<br><br>    Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)  C.A. No. 04-CV-1324KAJ |

## NOTICE OF SERVICE

I hereby certify that on this date, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF which will send notification of such filing(s) to the following:

Nicholas E. Skiles, Esq.
Swartz Campbell LLC
300 Delaware Avenue, Suite 1130
P.O. Box 330
Wilmington, DE 19899

            MURPHY SPADARO & LANDON

            /s/ John S. Spadaro
            John S. Spadaro, No. 3155
            1011 Centre Road, Suite 210
            Wilmington, DE 19805
            (302) 472-8100

            Attorneys for plaintiffs
            Thomas A. Eames, Roberta L. Eames and
March 17, 2006        Tammy Eames (on behalf of themselves and
            all others similarly situated)

129402