# EXHIBIT E



**WILCOX & FETZER LTD.**

# In the Matter Of:

# Eames

# v.

# Nationwide Mutual Insurance Company

## C.A. # 04-CV-1324 KAJ

---

## Transcript of:

## Glenn W. Deaton

## August 9, 2005

---

Wilcox & Fetzer, Ltd.
Phone: 302-655-0477
Fax: 302-655-0497
Email: lhertzog@wilfet.com
Internet: www.wilfet.com

Page 1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

THOMAS A. EAMES, ROBERTA L. EAMES    )
and TAMMY EAMES, on behalf of        )
themselves and all others            )
similary situated,                   )
                                     )
            Plaintiffs,              )
                                     ) Civil Action
v.                                   ) No. 04-CV-1324KAJ
                                     )
NATIONWIDE MUTUAL INSURANCE          )
COMPANY,                             )
                                     )
            Defendant.               )


            Deposition of Glenn Deaton Agency, Inc.
taken pursuant to Federal Rule of Civil Procedure
30(b)(6) through its designee GLENN W. DEATON at the
law offices of Murphy, Spadaro & Landon, 1011 Centre
Road, Suite 210, Wilmington, Delaware, beginning at
10:40 a.m., on Tuesday, August 9, 2005, before Kurt A.
Fetzer, Registered Diplomate Reporter and Notary
Public.
APPEARANCES:
        JOHN S. SPADARO, ESQ.
        MURPHY SPADARO & LANDON
          1011 Centre Road - Suite 210
          Wilmington, Delaware  19805
          For the Plaintiffs
        CURTIS P. CHEYNEY, III, ESQ.
        SWARTZ CAMPBELL & DETWEILER
          1601 Market Street - 34th Floor
          Philadelphia, Pennsylvania  19103-2316
          For the Defendant
                WILCOX & FETZER
    1330 King Street -  Wilmington, Delaware 19801
                (302) 655-0477

Eames
Glenn W. Deaton

v.

C.A. # 04-CV-1324 KAJ

Nationwide Mutual Insurance Company
August 9, 2005

Page 2

1  APPEARANCES: (Cont'd)
2       ROBERT J. LEONI, ESQ.
         MORGAN SHELSBY & LEONI
3        131 Continental Drive - Suite 206
         Newark, Delaware 19713
4        For the Witness
5        - - - - -
6            GLENN W. DEATON,
7    the deponent herein, having first been
8    duly sworn on oath, was examined and
9    testified as follows:
10           EXAMINATION
11  BY MR. SPADARO:
12   Q.  Sir, would you state your name for the record,
13  please?
14   A.  Glenn W. Deaton.
15   Q.  Can you tell me your home address, please?
16   A.  128 Sweet Gum Drive, Dover, Delaware, 19904.
17   Q.  Have you given sworn testimony under oath at a
18  deposition proceeding before?
19   A.  Yes.
20   Q.  And you understand that I will be asking you
21  questions at the deposition and that you will be
22  expected to answer them completely and truthfully
23  under oath?
24   A.  Yes, I do.

Page 3

1   Q.  And will you agree that if any question I ask
2  is unclear to you or if you feel that it needs
3  rephrasing or repetition, you will ask me to clarify
4  or repeat the question?
5   A.  Yes, I will.
6   Q.  And if you need to take a break, let me know
7  that. I'm going to try to move quickly enough so that
8  we don't need any breaks during your testimony, but
9  that doesn't mean you're not entitled to take one if
10 you want to. Okay?
11  A.  Okay.
12  Q.  Are you represented by any attorney at this
13 deposition?
14  A.  I am.
15  Q.  Is Mr. Leoni representing you today?
16  A.  Yes, he is.
17  Q.  And are you a representative of the Glenn
18 Deaton Agency Incorporated?
19  A.  I am.
20  Q.  What is the Glenn Deaton Agency Incorporated?
21  A.  I'm an independent contractor, agent, principal
22 for Nationwide Insurance Company.
23       MR. SPADARO: Could you read that back,
24 Kurt?

Page 4

1        (The reporter read back the last answer.)
2  BY MR. SPADARO:
3   Q.  Do I understand from your answer that you're
4  indicating that in the business in which you operate
5  Nationwide acts as a principal and you act as
6  Nationwide's agent?
7   A.  The term principal I use to describe myself as
8  an agency, I'm the agency principal.
9   Q.  The principal of the business?
10  A.  Correct.
11  Q.  Maybe I should ask. What is your relationship
12 to the Glenn Deaton Agency Incorporated?
13  A.  I'm the president of the corporation and the
14 primary agent-producer.
15  Q.  And what do you mean by "agent-producer"?
16  A.  I am responsible for the sale of the products
17 in the office and also have other licensed staff, but
18 I am the primary producer of sales, salesperson, if
19 you will.
20  Q.  What does -- if I refer to the Glenn Deaton
21 Agency Incorporated as Deaton or the Deaton Agency,
22 will you know what I mean?
23  A.  Yes.
24  Q.  What, if anything, does the Deaton Agency sell?

Page 5

1   A.  We sell a variety of property, casualty and
2  life and health, financial service products, including
3  automobile, homeowner, commercial property liability,
4  worker's compensation, life insurance and some mutual
5  funds and variable products as well.
6   Q.  The products that you listed are all insurance
7  products, are they not?
8   A.  Correct.
9   Q.  And does the Deaton Agency sell Nationwide
10 Insurance products to consumers?
11  A.  Yes.
12  Q.  And ask the Deaton Agency sell exclusively
13 Nationwide Insurance products to Delaware consumers?
14  A.  I am a captive, exclusive agent of Nationwide.
15 I do have opportunities to sell products outside of
16 that arrangement, but primarily Nationwide products.
17  Q.  Are you able to estimate roughly the percentage
18 of Nationwide Insurance products that you sell
19 compared to the insurance products of other insurance
20 companies?
21  A.  Nationwide sales represents I would say 90 to
22 95 percent of our overall sales.
23  Q.  What do you mean when you are referring to the
24 Deaton Agency as captive?

2 (Pages 2 to 5)

Eames                                              v.                    Nationwide Mutual Insurance Company
Glenn W. Deaton                          C.A. # 04-CV-1324 KAJ                                    August 9, 2005

Page 6

1  A.  I have a contract to sell Nationwide's products
2  exclusively.  I'm required to sell Nationwide's
3  products.  I'm not allowed to broker or go outside of
4  that agreement for market.  In other words, if
5  Nationwide offers that product for sale, I'm going to
6  sell their product.
7       If I have occasion to sell a product that
8  Nationwide is not interested in that market, I'm
9  allowed to place that through another carrier.
10 Q.  So you're allowed to sell other insurance
11 companies' products so long as they don't compete in
12 this market with products that Nationwide is selling?
13 A.  Correct.
14 Q.  I hope you understand what I meant.  When I
15 said, "this market," I meant Delaware.  And I think
16 you understood my question that way?
17 A.  Correct.  That's the only state that I am
18 licensed to transact.
19 Q.  And you do hold a professional license?
20 A.  Yes, I do.
21 Q.  Could you identify it for me?
22 A.  I have a license through the Delaware Insurance
23 Commissioner's office, an agency's license to sell all
24 of the products that I mentioned, property, casualty,

Page 7

1  life, health, bonding and variable annuities as well.
2  Q.  You understand, do you not, that you've been
3  designated by the Deaton Agency to testify on its
4  behalf at this deposition?
5  A.  Yes.
6  Q.  Do you freely accept that designation?
7  A.  Yes, I do.
8       MR. SPADARO:  Let me ask the court
9  reporter to mark as Exhibit 1 to your deposition a set
10 of documents that purports to be a copy of a letter
11 signed on my behalf by another attorney in my firm,
12 Mr. Brockstedt, dated March 24, 2005 and addressed for
13 hand delivery to the Glenn Deaton Agency Incorporated,
14 attached to which is a copy of the subpoena that we
15 served on the Glenn Deaton Agency in this case.
16      (Deaton Deposition Exhibit No. 1 was
17 marked for identification.)
18 BY MR. SPADARO:
19 Q.  Have you had an opportunity to examine the
20 document that's been marked as Deaton Exhibit 1?
21 A.  Yes, I have.
22 Q.  Have you seen this document before, Mr. Deaton?
23 A.  Yes.
24 Q.  Does it appear to be what I have described?

Page 8

1  A.  Yes, it does.
2  Q.  If you turn to the fourth page of the document,
3  do you see there an appendix that purports to set
4  forth a description of the documents being subpoenaed
5  and the topics for your testimony today?
6  A.  Yes.
7  Q.  And on the next page do you see the heading
8  Matters for Examination?
9  A.  Yes.
10 Q.  And you understand that under that heading is
11 set forth the three subject areas which I'll be asking
12 questions about today?
13 A.  Yes.
14 Q.  And have you had a chance to review those
15 subject areas before today's deposition?
16 A.  I have.
17 Q.  Are you prepared to answer questions relating
18 to those three subject areas?
19 A.  I am.
20 Q.  Thank you.
21      How many employees does the Deaton Agency
22 have, sir?
23 A.  Including myself, five.
24 Q.  Let me ask you a little bit more about your

Page 9

1  relationship, the agency's relationship with
2  Nationwide, if I could.  Okay?
3       Does the Deaton Agency lease equipment
4  from Nationwide?
5  A.  Could you be more specific about equipment?
6  Q.  Well, is there office equipment that you use in
7  your business operations like computers, telephones
8  and that sort of thing?
9  A.  All of the office equipment belongs to my
10 business.  It's not property of Nationwide Insurance,
11 desks, chairs, filing cabinets.
12      Computer equipment specifically for many
13 years was the property of Nationwide Insurance and we
14 were required by contract to lease their hardware and
15 use their software.  A few years ago they decided to
16 get out of the hardware business.  And basically the
17 agents now own the hardware, but we are under contract
18 to use their software and their pipeline, if you will,
19 the company intranet and the software and all the
20 products of running the software and the computer is
21 provided by Nationwide, but the computer is owned by
22 the agency.
23 Q.  When you say that the software is owned by
24 Nationwide, does that include what might be called

3 (Pages 6 to 9)

Eames                                        v.              Nationwide Mutual Insurance Company
Glenn W. Deaton                    C.A. # 04-CV-1324 KAJ                        August 9, 2005

Page 10

1  document management software?
2  A. Yes.
3  Q. Do you send and receive e-mails at the Deaton
4  Agency?
5  A. Yes, we do.
6  Q. If I understand correctly, is it correct to say
7  that your e-mails are sent and received on
8  Nationwide's file server?
9  A. That's correct.
10  Q. How is the Deaton Agency compensated for its
11  role in selling Nationwide Insurance products in
12  Delaware?
13  A. We're compensated strictly through commissions
14  on products that we sell. We have no other source of
15  income other than commission based on the sales.
16  Q. When a premium is obtained from a consumer in
17  connection with the sale of a Nationwide Insurance
18  product through the Deaton Agency, do you begin by
19  transferring the premium to Nationwide?
20  A. Yes. Any premium received by our office is in
21  a fiduciary capacity, is placed in a fiduciary
22  account, a premium-bearing account only and is
23  remitted to Nationwide. And I receive my commission
24  after they have processed their transactions on a

Page 11

1  biweekly basis.
2  Q. So Nationwide collects premiums and then pays
3  to you commissions based on how much premium was
4  collected?
5  A. Right.
6  Q. How are employees' salaries paid? Are they
7  paid directly by the Deaton Agency?
8  A. Yes. The employees are employees of myself and
9  are paid directly by me.
10  Q. How long have you been the president of the
11  Deaton Agency?
12  A. I started with Nationwide in the fall of 1989.
13  Fifteen, sixteen years.
14  Q. Now, Mr. Deaton, we're going to be referring to
15  a particular type of coverage within the automobile
16  insurance product known as personal injury protection.
17      Are you familiar with that term?
18  A. I am.
19  Q. And if I call it personal injury protection,
20  you'll know what I mean?
21  A. Yes.
22  Q. If I call it PIP, you will know what I mean?
23  A. Yes.
24  Q. I may make reference to limits of liability for

Page 12

1  PIP coverage. If I do that, will you know what I
2  mean?
3  A. Yes.
4  Q. And --
5      MR. LEONI: John, I'm just going to ask
6  that you make sure that if he doesn't understand it in
7  the context that you're asking that you explain that
8  because we have to make sure he understands it in the
9  context that you're using it.
10      MR. SPADARO: Sure.
11  BY MR. SPADARO:
12  Q. We have agreed if you have any questions about
13  my questions you will ask me, right?
14  A. Certainly.
15  Q. I'm not trying to give you an insurance 101
16  quiz. But just for the record can you give me your
17  understanding of what limits of liability means as an
18  insurance term?
19  A. Sure. Limits of liability would be the amount
20  provided by the contract, a maximum amount based on a
21  per person limit or a per occurrence limit, but limit
22  of liability would be the maximum amount payable by
23  the company for a claim, a covered claim.
24  Q. And that amount is a dollar amount?

Page 13

1  A. Correct.
2  Q. So it's expressed in numbers, is expressed in
3  dollars?
4  A. It's expressed in dollars, yes.
5  Q. Are you able to give me a step-by-step
6  description -- I could break it down if you want me
7  to, but maybe it's faster not to. It's your
8  preference.
9      If I ask you to give me a step-by-step
10  description of the process by which an ordinary
11  Delaware consumer in your neighborhood comes in and
12  purchases a Nationwide auto policy, could you do that
13  for me?
14  A. Yes, I could.
15  Q. Okay. Would you, please?
16  A. Sure. Once a quote is given -- generally, the
17  process starts by an individual requesting a quote for
18  what the coverage would be.
19      We would --
20  Q. I'm sorry. I don't mean to interject. Along
21  the way I may ask you to clarify a term here or there.
22  A. Sure.
23  Q. By "quote" you're referring to the consumers
24  asking how much will it cost me to buy auto insurance?

4 (Pages 10 to 13)

Eames                                                v.          Nationwide Mutual Insurance Company
Glenn W. Deaton                          C.A. # 04-CV-1324 KAJ                    August 9, 2005

Page 14

1    A.   They would like a price quotation for the cost
2    of coverage.
3          We would gather the required information
4    that is needed to prepare a quote, certain personal
5    information about the type of vehicle, driving record,
6    information about the driver and so forth. Once the
7    quote is prepared and given and accepted, the
8    application process would start where we would
9    basically complete the Nationwide application on the
10   computer, generate an application, going through the
11   various information as needed about drivers and so
12   forth, the vehicle and coverages.
13         At that point we would interview with the
14   client or with the applicant explaining and requesting
15   if they have specific limitations, limits of liability
16   that they would like to compare with, if they have a
17   current contract. If they do not have current
18   coverage, we would explain to them what's required by
19   law and then show them the option limits that are
20   available.
21         Upon completion of the application it
22   would be printed out and any trailing documents that
23   were required to be signed -- a trailing document
24   would be a document in addition to the application

Page 15

1    itself. The form A is considered a trailing document.
2    A vehicle inspection form, if a vehicle may be
3    customized or altered or have existing damage we are
4    required to view the vehicle and potentially have a
5    document, a trailing document as an inspection report.
6    A child's or student's report card that would be in
7    line for a discount, a defensive driving class, any
8    supplemental document that would affect the rate
9    provided or the coverage provided, we would be
10   required to obtain those, signatures on the
11   application and any trailing documents would be
12   obtained.
13         We would review what coverages are elected
14   and rejected by the applicant.
15   Q.   When all of that was completed what would
16   happen?
17   A.   The premium would be collected based on the
18   applicant's choice of pay plan. There are a variety
19   of different pay plan options available. We would
20   collect the appropriate premium, provide a receipt.
21   And we would at that point provide a binder or
22   memorandum of insurance, some proof that the
23   application process had been completed.
24         We would provide that to the applicant

Page 16

1    with a receipt. The application would be released or
2    sent to Nationwide by the computer. We would set up a
3    new file retaining the documents in our file. No
4    paper really transactions go to Nationwide. It's done
5    electronically and we retain the original application
6    and any trailing documents in our file. Premiums are
7    collected by our firm, by our agency, are deposited in
8    a local bank, are remitted on Nationwide's remittance
9    program. And they will then a couple of business days
10   later they will electronically draft those funds from
11   the fiduciary account.
12         At that point the policy is processed and
13   generated directly by Nationwide from their service
14   center and sent out to the insured.
15         We tell every applicant that they will
16   receive their policy package directly from Nationwide
17   with I.D. cards and the policy packet itself; when
18   it's received to please give us a call if they have
19   any questions, to review if there's anything there
20   that they're not sure of. And we would set up our
21   file from there and that's basically, that's the basic
22   transaction process.
23   Q.   Okay. Let me ask you about the point at which
24   the premium has been collected and a binder or

Page 17

1    memorandum of insurance or other proof of insurance
2    has been provided to the consumer. Okay?
3    A.   (The witness nodded.)
4    Q.   Are you with me?
5    A.   Yes.
6    Q.   Have I so far characterized that part of your
7    testimony correctly?
8    A.   Yes.
9    Q.   At that point is the consumer insured for
10   automobile insurance by Nationwide?
11   A.   Yes.
12   Q.   So it's your understanding at that point an
13   insurance contract exists?
14   A.   Yes.
15   Q.   How long after that point -- well, at that
16   point the consumer presumably goes, leaves your office
17   and goes home carrying the auto memorandum of
18   insurance or binder or other proof of insurance,
19   right?
20   A.   Correct.
21         MR. CHEYNEY:  Objection.
22   Q.   How much time typically passes, if you can tell
23   me, between that event and the consumer's receipt of
24   policy documents generated from Nationwide's service

5 (Pages 14 to 17)

Eames                                    v.          Nationwide Mutual Insurance Company
Glenn W. Deaton                    C.A. # 04-CV-1324 KAJ              August 9, 2005

Page 18

1  center?
2  **A. Generally, one week, approximately a week's**
3  **time to process and have that sent out in the mail to**
4  **them.**
5  Q.  Have you known it to take less than a week?
6  **A. Yes.**
7  Q.  Have you known it to take more than a week?
8  **A. Yes.**
9  Q.  On the far end of the scale, how long does it
10  take when it takes longer than a week?
11  **A. Only an additional day or two, maybe ten days**
12  **maximum.**
13  Q.  And if the insured vehicle is involved in an
14  automobile collision during that one week to ten-day
15  interim, it's your understanding that Nationwide
16  insures that event?
17     MR. CHEYNEY: Objection.
18  **A. Correct.**
19  Q.  Where is the Nationwide service center?  Do you
20  know?
21  **A. It is in Gainesville, Florida for the bulk of**
22  **the automobile policies that we issue. They're**
23  **generated from the Gainesville, Florida service**
24  **center.**

Page 19

1  Q.  Are there other Nationwide service centers that
2  address other regions of the country?
3  **A. Yes.**
4  Q.  Thank you.
5      This process you've described very
6  patiently for me, which I appreciate, this step-by-
7  step process by which the consumer purchases the auto
8  insurance from Nationwide, as part of that process are
9  documents shared with the consumer at any stage?
10  **A. Documents, yes.**
11  Q.  For example, is the price quote that you
12  started your description with a written price quote?
13  **A. Yes.**
14  Q.  And that's a document that's shared with the
15  consumer and he can take home with him?
16  **A. We do have a formal quote letter when someone**
17  **asks for a quote that we can provide a user friendly**
18  **quote letter. Generally, that's not sent out on a**
19  **telephone quote or if someone comes into the office**
20  **and I provide the quote on the computer and share with**
21  **them the information on the monitor and they say yes,**
22  **I would like to purchase that coverage, generally that**
23  **quote letter is not printed out.**
24      **We would go directly into the application**

Page 20

1  process.  Many times we would hot print or screen
2  print, if you will, the quote to show them if they
3  brought their policy with them and they would like to
4  compare, we would print off a document like that which
5  would be just a screen print.  But there is a formal
6  quote letter that can be generated if it's requested.
7  Q.  Whether the document is generated hard copy or
8  not, is it often the case that the consumers are
9  allowed to see the quote in writing while they're in
10  your office?
11  **A. Yes.**
12  Q.  Are there any other documents that as part of
13  this process the consumers either see visually or are
14  allowed to take with them?
15  **A. Yes.**
16  Q.  I think you mentioned the memorandum of
17  insurance or binder or other proof of insurance.
18  **A. Correct.**
19  Q.  That's one category of documents that is given
20  to the consumer, right?
21  **A. Correct. They are offered a copy of the**
22  **physical application as well and the Delaware Form A**
23  **Delaware Protection Act document.**
24  Q.  I think you referred earlier to options that

Page 21

1  the consumer has with respect to the limits of
2  liability that they can purchase for different
3  coverages.
4      Do you recall that?
5  **A. Correct.**
6  Q.  And I'm going to limit my questions to
7  automobile insurance.  All right?
8  **A. Mm-hmm.**
9  Q.  There are --
10     MR. LEONI: You have to answer actually
11  verbally yes or no.
12     THE WITNESS: Yes.
13     MR. SPADARO: Thank you, Mr. Leoni.
14  BY MR. SPADARO:
15  Q.  There are different dollar amounts in limits of
16  liability that consumers are able to purchase within
17  different coverages, right?
18  **A. Correct.**
19  Q.  It's your understanding that with respect to
20  PIP coverage there's a minimum amount that's mandated
21  by statute.  Is that right?
22  **A. That's right.**
23  Q.  And the minimum statutory limits of liability
24  for PIP coverage according to your understanding are

6 (Pages 18 to 21)

Eames                                     v.           Nationwide Mutual Insurance Company
Glenn W. Deaton              C.A. # 04-CV-1324 KAJ                    August 9, 2005

Page 22

1  $15,000 per person/$30,000 per accident. Is that
2  right?
3      **A.  Correct.**
4      Q.  But consumers are able to purchase more than
5  that, aren't they?
6      **A.  Yes.**
7      Q.  What is the full amount of limits of liability
8  available from Nationwide today for PIP coverage?
9          MR. CHEYNEY: Objection.
10         MR. LEONI: Do you know what? So far we
11  have been talking generically, but actually the notice
12  of deposition refers only to Nationwide Mutual
13  Insurance Company. So I'm assuming, and maybe
14  wrongfully so, your questions are limited to
15  Nationwide Mutual.
16         MR. SPADARO: Yes. All my questions are
17  limited to the defendant in this case, Nationwide
18  Mutual -- let me make sure I get the name right --
19  Nationwide Mutual Insurance Company.
20  BY MR. SPADARO:
21     Q.  Do you understand that, sir?
22     **A.  Yes.**
23     Q.  Do all of your responses so far relate to
24  Nationwide Mutual Insurance Company?

Page 23

1      **A.  Yes.**
2      Q.  So let me ask you again: Can you tell me the
3  full amount of PIP limits of liability that are
4  available for purchase from Nationwide today in
5  Delaware?
6          MR. CHEYNEY: Objection.
7      **A.  The maximum limits for PIP available is**
8  **$100,000 per person/$300,000 per accident.**
9      Q.  Do you have a sense of in percentage terms of
10  the percentage of auto policies that the Deaton Agency
11  is involved in selling on Nationwide's behalf for
12  which Delaware consumers in a typical year purchase
13  the minimum limits of $15,000 per person/$30,000 per
14  accident?
15         MR. LEONI: Hold on a second. Can I hear
16  that back?
17         Could you read it back, Kurt?
18         THE WITNESS: Because he --
19         MR. LEONI: Hold on. He's going to read
20  the question back to make sure we understand it.
21         (The reporter read back the last
22  question.)
23         MR. LEONI: Again, we're referring only to
24  Nationwide Mutual Insurance Company personal auto

Page 24

1  policies?
2          MR. SPADARO: Yes.
3  BY MR. SPADARO:
4      Q.  I've said that I'm only referring to the
5  defendant Nationwide Mutual Insurance Company and I
6  have clarified all of my questions relate to
7  automobile insurance. So that's a given with every
8  question I ask unless I specify otherwise. I'm not
9  going to ask you about products other than auto at
10  this point.
11         Do you understand my question?
12     **A.  I understand your question. But my response**
13  **would be particularly regarding Nationwide Mutual, the**
14  **company one, that Nationwide Mutual -- we're not**
15  **talking about the non-standard. We're talking about**
16  **generally -- all right.**
17     Q.  I'm only asking about the defendant in this
18  case, Nationwide Mutual Insurance Company.
19     **A.  Yes. I understand your question.**
20         MR. LEONI: Just to be clear for the
21  witness because he seems to be having a little
22  trouble --
23         MR. SPADARO: If you have an objection to
24  form, we're in the District Court, if you have an

Page 25

1  objection to the form, you can object to form. I'll
2  clarify.
3  BY MR. SPADARO:
4      Q.  You understand I'm trying to figure out how
5  often people purchase the minimum limits? Do you
6  understand my question?
7      **A.  Yes, I do.**
8      Q.  If you can ballpark that for me in percentage
9  terms, that would be helpful.
10     **A.  Under Nationwide Mutual Insurance Company**
11  **policies that we issue I would say only 25 percent or**
12  **less purchase the minimum PIP coverage.**
13     Q.  Okay. Thank you. That's very helpful.
14         Now, in response to our subpoena it's your
15  understanding that the Deaton Agency produced certain
16  documents to us?
17     **A.  That's correct.**
18     Q.  And is it your understanding that we reached a
19  compromise by which the parties agreed that the Deaton
20  Agency would produce policy-related documents for just
21  35 policyholders?
22     **A.  Yes.**
23     Q.  And just for the record, over the course of the
24  time period embraced by this lawsuit the agency has

7 (Pages 22 to 25)

Eames                                           v.          Nationwide Mutual Insurance Company
Glenn W. Deaton                        C.A. # 04-CV-1324 KAJ                        August 9, 2005

Page 26

1  sold many more than 35 insurance policies, auto
2  insurance policies, that is, on behalf of Nationwide?
3      A.  Yes.
4      Q.  But this was a compromise we reached to reduce
5  the burden and expense of responding to the subpoena.
6  Do you understand that?
7      A.  Yes.
8      Q.  I want to mark as Exhibit 2 to your deposition
9  a set, a single set of these policy-related documents
10  that were produced by the Deaton Agency as part of
11  this compromise.
12          Do you understand what I have represented?
13      A.  Yes.
14      Q.  And it's your understanding, is it not, that
15  the Deaton Agency's attorneys, Mr. Leoni and his
16  office, have blacked out or redacted certain
17  identifying information that might otherwise have
18  identified the policyholders under these policies?
19      A.  Yes.
20      Q.  And it's your understanding that the attorneys
21  for the Deaton Agency have numbered the sets that were
22  produced to us with one- or two-digit numbers?
23      A.  Yes.
24          MR. SPADARO:  Let me start by marking as

Page 27

1  Exhibit 2 to your deposition set number 63 from the
2  Deaton production.
3          (Deaton Deposition Exhibit No. 2 was
4  marked for identification.)
5  BY MR. SPADARO:
6      Q.  Just review that, if you would, to your
7  satisfaction.  Let me know when you feel comfortable
8  answering some questions about it.
9      A.  (Reviewing document)  Okay.
10      Q.  Does this appear to be a copy of the documents
11  from set 63 of the Deaton production?
12      A.  Yes.
13      Q.  I'm going to ask you if you can try to describe
14  the approximately seven pages that are part of Exhibit
15  2 for me in a little more detail.
16      A.  Okay.
17      Q.  Thank you.
18      A.  Page 1 -- the document is a standard automobile
19  insurance application through Nationwide Mutual.  The
20  first page of the document provides basic declaration
21  type information about the name of the insured, date
22  of the application and basic demographic information
23  about the insured, license, date of birth, social,
24  address and so forth.

Page 28

1          Page number 2 begins with detail about the
2  vehicle to be insured itself, including the make,
3  model, year, vehicle identification number and
4  ownership.  The second area of the second page of the
5  document provides the coverage that's been selected.
6  The liability, physical damage, uninsured motorist and
7  PIP coverage are detailed there.  Any discounts are
8  listed there on the bottom of that second page.
9          Page 3 provides ratings variables,
10  including the work or work commute, annual mileage and
11  any surcharges for rate class that might be
12  applicable.
13      Q.  If I could just interject for a moment.  By
14  rating variables are we referring to underwriting
15  factors that might result in a determination of the
16  premium to be charged?
17      A.  Correct.
18      Q.  Thank you.
19      A.  Below that on the third page is some general
20  information specific to the place of the domicile of
21  the applicant, where they live, and payment
22  information is also included on page 3.
23          The fourth page is a closing statement
24  that provides information on how Nationwide will

Page 29

1  handle the application regarding misrepresentations
2  and acknowledgment of coverage and accepting of the
3  risk.
4          The fifth page includes statements that
5  are asked to be initialed in total by the insured
6  regarding their use and ownership and declaration of
7  any drivers in the household or have regular use of
8  that vehicle and any forbidden uses of the vehicle
9  under the personal auto policy, including delivery of
10  pizza and you will see there in the one bullet the
11  newspapers or taxicab-type things are prohibited.  We
12  ask that they acknowledge that there.
13          And the final part on page 5 is the
14  signature place where the applicant and the producing
15  agent would sign and date and time the application.
16      Q.  So those first five pages are -- bear with me
17  for a second.
18          Those first five pages are the application
19  themselves?
20      A.  Those pages are the application, yes.
21      Q.  And the remaining two pages of Deaton Exhibit 2
22  are not what you would describe as part of the
23  application?
24      A.  Correct.

8 (Pages 26 to 29)

Eames                                                    v.          Nationwide Mutual Insurance Company
Glenn W. Deaton                          C.A. # 04-CV-1324 KAJ                              August 9, 2005

Page 30

1   Q. But they are part of the larger process of
2   placing insurance?
3   A. Correct.
4   Q. I'm sorry I interrupted you. Thank you.
5   A. The sixth page is the Delaware Motorists'
6   Protection Act, a form that's used to acknowledge and
7   where the applicant would select and verify or reject
8   any coverage options that they would like. The
9   minimum limits are displayed on this form that are
10  required by Delaware law, along with other optional
11  coverages for physical damage, including
12  comprehensive, collision, uninsured motorist, loss of
13  use. This is the form that we have the insured sign
14  that spells out the requirements and also the options
15  that are provided under the Delaware policies.
16      The final page is a copy of the screen
17  print that I mentioned. This would be a document that
18  I would share with an insured that would come in the
19  office if we were comparing different quotes. This is
20  simply a screen print of our quote process off the
21  computer.
22  Q. That final page that you've indicated is shared
23  with the consumer is titled Auto Rate Quote Number 1?
24  A. Correct.

Page 31

1   Q. Let me ask you to turn, if you would, to the
2   second page of Deaton Exhibit 2, please.
3       I'm going to direct your attention to the
4   entries in the middle of the page under the Heading
5   Vehicle Level Coverages.
6       Do you see that?
7   A. Yes.
8   Q. Now, there appear to be under that heading
9   three columns setting forth information. Is that fair
10  to say?
11  A. Yes.
12  Q. In the left-hand column we see the first entry
13  reads Comprehensive and underneath that Collision and
14  then underneath that Property Damage and so forth.
15  That left-hand column identifies different types of
16  insurance coverage within the automobile insurance
17  product?
18  A. Correct.
19  Q. Is that fair to say?
20  A. Yes.
21  Q. And the middle column begins with the number
22  250. Do you see that?
23  A. Yes.
24  Q. And that corresponds to the entry in the

Page 32

1   left-hand column that says Comprehensive, right?
2   A. Correct.
3   Q. And what does that information up to that point
4   indicate?
5   A. That entry relates to the deductible that would
6   be applied to that line of coverage. $250 would be
7   the deductible applicable to the comprehensive line of
8   coverage.
9   Q. Very briefly, what does comprehensive coverage
10  entail in an auto insurance policy?
11  A. Comprehensive coverage provides coverage for
12  damage to the insured vehicle that is not collision
13  related and would include glass breakage, vandalism,
14  theft, fire, flood. Collision with an animal would be
15  one comprehensive coverage where a collision would
16  take place with an animal, but it's damage to the
17  vehicle that's generally not collision related.
18  Q. So it appears that it's contemplated for this
19  particular insurance contract that there will be a
20  deductible for comprehensive coverage of $250, right?
21  A. Correct.
22  Q. And that deductible is expressed in a dollar
23  amount?
24  A. Yes.

Page 33

1   Q. In the right-hand column there appear to be
2   dollar amounts set forth for each of the types of
3   coverage.
4       Do you see that?
5   A. Yes.
6   Q. The first being $23.20 corresponding to the
7   comprehensive coverage entry, right?
8   A. Correct.
9   Q. Am I correct that sets forth the premium amount
10  to be collected with respect to each coverage within
11  the automobile insurance contract?
12  A. Yes.
13  Q. Now let me ask you to turn, if you could, to
14  the last page of Deaton Exhibit 2 entitled Auto Rate
15  Quote Number 1 and let me know when you have that
16  before you, please.
17  A. I do.
18  Q. This document has a similar format, doesn't it?
19  A. Yes.
20  Q. Because we see abbreviated names for the
21  different types of coverage beginning with COMP for
22  comprehensive and then COLL for collision, then PD for
23  property damage and so forth, right?
24  A. Correct.

9 (Pages 30 to 33)

Eames                                                    v.                Nationwide Mutual Insurance Company
Glenn W. Deaton                          C.A. # 04-CV-1324 KAJ                              August 9, 2005

Page 34

1  Q.  And then in the middle column we see the dollar
2  amount for comprehensive that indicates 250,
3  signifying the $250 deductible to be charged for that
4  coverage, right?
5  A.  Correct.
6  Q.  In the right-hand column we see that 23.20
7  indicating the $23.20 premium to be collected for the
8  comprehensive coverage, correct?
9  A.  Correct.
10  Q.  Now, there is information redacted on this
11  page.  So let me ask you as it appears in unredacted
12  form, does the name of the insured appear on this
13  page?
14  A.  Yes.
15  Q.  And would the page in unredacted form indicate
16  anywhere the vehicle to be insured?
17  A.  Yes.
18  Q.  How would it identify that vehicle?
19  A.  By the year, make and model would generally
20  appear in the heading above the $250 deductible where
21  it's been redacted.  The vehicle year and type would
22  appear there.
23  Q.  And we know that the types of coverages are
24  described in the document, right?

Page 35

1  A.  Correct.
2  Q.  And the limits of liability for the coverages
3  are set forth, are they not?
4  A.  Yes.
5  Q.  And the premium amount to be charged for each
6  is set forth, right?
7  A.  Yes.
8  Q.  Turning to that middle column that begins with
9  the number 250 for the deductible for comprehensive
10  coverage, that is not a dollar amount that indicates
11  the limit of liability for comprehensive coverage, is
12  it?
13  A.  No.
14  Q.  It indicates rather the dollar amount of the
15  deductible for that coverage, right?
16  A.  Correct.
17  Q.  Why does it indicate a dollar amount for the
18  deductible rather than for the limit of liability?
19  A.  The deductible is a common factor that would be
20  charged against a claim regardless of -- the value of
21  the vehicle is a variable that cannot really be
22  contemplated at the time of application.  The value or
23  limit of that coverage would be contemplated at the
24  time of the claim, meaning someone may have purchased

Page 36

1  a brand-new vehicle on this day valued at $20,000.
2  Well, when the claim time comes a week, a month, a
3  year later, the value of that vehicle would be
4  determined at that time based on the actual cash value
5  of the vehicle at the time.
6      So that deductible is assessed as a common
7  factor against the amount of the claim because the
8  limit of liability would be relatively unknown based
9  on the actual cash value of the vehicle.
10  Q.  So the limit of liability is not expressed in
11  that column for comprehensive coverage because it's
12  not a readily identifiable number at the time the
13  policy is purchased?
14  A.  Correct.
15  Q.  Rather, it's a number to be determined later
16  based on the depreciating value of the property?
17  A.  And the amount of damage incurred, correct.
18  Q.  And the amount of damage incurred.  Thank you.
19      The number 500 appears in the middle
20  column for the entry for collision damage.  Do you see
21  that?
22  A.  Yes.
23  Q.  And what does that number express?
24  A.  In similar fashion, it is a deductible that

Page 37

1  would be charged against the claim to the insured for
2  a collision claim.
3  Q.  And that's expressed as a dollar amount?
4  A.  Correct.
5  Q.  And the reason that entry is expressed as a
6  deductible rather than showing the limit of liability
7  for collision damage is the same reason you explained
8  with respect to comprehensive coverage, right?
9  A.  Yes.
10  Q.  It is an unknowable factor at the time the
11  policy is purchased?
12  A.  Correct.
13  Q.  The number 10,000 appears in that middle column
14  entry on this last page of Deaton Exhibit 2 for
15  property damage coverage.
16      Do you see that?
17  A.  Yes.
18  Q.  And is that insurance coverage that insures
19  against property damage claims brought by other
20  drivers for damage done to their property?
21  A.  Correct.
22  Q.  And the 10,000 indicates, the 10,000 figure in
23  that middle column of the last page of Deaton Exhibit
24  2 for property damage indicates the dollar amount of

10 (Pages 34 to 37)

Eames                                                          v.                    Nationwide Mutual Insurance Company
Glenn W. Deaton                                C.A. # 04-CV-1324 KAJ                                         August 9, 2005

Page 38

1   the limit of liability for property damage coverage?
2   A. That's correct.
3   Q. And that's expressed as a dollar amount because
4   it is a dollar amount known at the time the policy is
5   purchased?
6   A. That's correct.
7   Q. When the policy is purchased it's readily
8   ascertainable what the limit of liability is for
9   property damage coverage or bodily injury coverage,
10  right?
11  A. Correct.
12  Q. And for the bodily injury entry we see 15/30 in
13  the middle column.
14       Do you see that?
15  A. Yes.
16  Q. What does that mean?
17  A. That signifies $15,000 per person and a $30,000
18  per accident limitation.
19  Q. So that's the limit of liability for bodily
20  injury coverage?
21  A. Correct.
22  Q. And that's the insurance made available for
23  claims by other persons than the insured against the
24  insured for bodily injury suffered in a covered event?

Page 39

1   A. Correct.
2   Q. The next entry on the left reads UMBI. Do you
3   see that?
4   A. Yes, I do.
5   Q. What does that stand for?
6   A. It stands for uninsured motorist bodily injury
7   coverage.
8   Q. I'm sorry. I skipped. There's an entry above
9   that column that says DB.
10       Do you see that?
11  A. Yes.
12  Q. What does that stand for?
13  A. That stands for death benefit.
14  Q. What is the death benefit coverage? Could you
15  explain that quickly?
16  A. Nationwide's product provides a death benefit
17  to the named insured, the driver and passengers if
18  they are killed in a covered accident if they are
19  wearing their seat belt. There is a small death
20  benefit payable.
21  Q. Then in the middle entry where otherwise
22  there're expressed limits of liability or deductibles
23  you see the entry in letters CNW.
24       Do you see that?

Page 40

1   A. Correct.
2   Q. I have no idea what that means and I guess that
3   means coverage not wanted, but maybe you could tell
4   me.
5   A. That's exactly correct.
6   Q. Is it the case that wherever I see CNW in the
7   documents that Deaton produced it means coverage not
8   wanted?
9   A. Yes.
10  Q. And I'll represent to you that I have seen that
11  entry in documents produced by other insurance agents
12  that have been subpoenaed in the case.
13       Do you understand what I have told you?
14  A. Sure. Yes.
15  Q. Do you understand that to be a standard
16  abbreviation used in documents of this type --
17  A. Yes.
18  Q. -- by insurance agents?
19  A. Yes.
20  Q. I'm sorry. Your answer is?
21  A. Yes.
22  Q. Thank you.
23       Let me take you to the entry for PIP in
24  the left-hand column. Do you see that?

Page 41

1   A. Yes.
2   Q. And in the middle column it says full.
3       Do you see that?
4   A. Yes.
5   Q. And that's a characterization that we see in --
6   I'll represent to you that that characterization of
7   PIP as full is one that can be found in every set of
8   documents that the Deaton Agency produced.
9       Do you understand what I am representing
10  to you?
11  A. Yes.
12  Q. Does that surprise you?
13  A. No.
14  Q. Is it fair to say that the characterization of
15  PIP as full in documents like the auto rate quote
16  shown on the last page of Deaton 2 is a routine one in
17  your business?
18  A. Yes.
19  Q. What I could do is show you some additional
20  examples of that characterization as it appears in
21  other sets of documents that Deaton produced simply so
22  you could confirm that full is in there. We can go
23  through that exercise. I'm happy to do that. Or you
24  could simply tell me that you expect to find it in all

11 (Pages 38 to 41)

Eames                                          v.          Nationwide Mutual Insurance Company
Glenn W. Deaton                      C.A. # 04-CV-1324 KAJ                    August 9, 2005

Page 42

1   of them, if that's the case.
2   **A.  Yes.  I would expect to see that usage of the**
3   **word "full" in the various documents that you have**
4   **obtained.**
5   Q.  And you would expect to see it in connection
6   with PIP?
7   **A.  Correct.**
8           MR. SPADARO:  Just give me a couple of
9   minutes to think if I have anything else and I may
10  have nothing else.
11          MR. LEONI:  While we're on break, you're
12  not allowed to talk to me, him, anybody else about
13  your testimony, what questions you were asked, what
14  questions you may be asked.  You can talk to him about
15  anything else, hunting or whatever.
16          Do you understand that?
17          THE WITNESS:  Yes.
18          MR. LEONI:  Okay.
19          (A brief recess was taken.)
20          MR. SPADARO:  Mr. Deaton, let me show you
21  what I am going to ask the court reporter to mark as
22  Exhibit 3 to your deposition.
23          (Deaton Deposition Exhibit No. 3 was
24  marked for identification.)

Page 43

1   BY MR. SPADARO:
2   Q.  Mr. Deaton, take your time reviewing that
3   document, but I don't think I have too much to ask you
4   about it.  I will represent to you that the document
5   marked as D-3 entitled Auto Memorandum Of Insurance is
6   just that, an auto memorandum of insurance that was
7   shared with us by the plaintiffs in this case, Mr. and
8   Mrs. Eames.
9           Do you understand what I have represented?
10  **A.  Yes.**
11  Q.  You can I think readily determine that this is
12  not a document related to an auto policy that was sold
13  through your office.
14  **A.  Correct.**
15  Q.  But instead it appears to relate to a policy
16  sold through another Delaware insurance agent?
17  **A.  Correct.**
18  Q.  I simply want to ask you whether -- let me go
19  back.
20          You referred during your helpful
21  description of the step-by-step process by which the
22  auto policy is sold to a document type called the auto
23  memorandum of insurance.
24          Do you remember that?

Page 44

1   **A.  Yes.**
2   Q.  Is this that type of document that you
3   described in that explanation?
4   **A.  Yes.**
5           MR. SPADARO:  That's all I have,
6   Mr. Deaton.  I appreciate your patience and coming up
7   here today.
8           MR. CHEYNEY:  I have some questions.
9           MR. LEONI:  Mr. Cheney is going to ask you
10  some questions.
11  BY MR. CHEYNEY:
12  Q.  Mr. Deaton, the packet 63 that was shown to
13  you, there is no binder attached, is there?
14  **A.  There is not.**
15  Q.  Do you keep a copy of the binder?
16  **A.  As a rule, generally no.**
17  Q.  Do you give a binder copy to the policyholder
18  or the new policyholder?
19  **A.  Yes.**
20  Q.  What does the binder indicate?  Do you have a
21  copy of that that you could make available?
22  **A.  I could make it available.  It is very similar**
23  **in its format and content to the memorandum of**
24  **insurance.**

Page 45

1           **I could elaborate briefly that the auto**
2   **memorandum of insurance is generally once the policy**
3   **is issued by the company and physically processed, the**
4   **auto memorandum would be issued because it has a**
5   **policy number on it.**
6           **The binder contains pretty much the same**
7   **information with a caveat that says this is a binder**
8   **subject to the issuance of the policy.  It gives a 30-**
9   **day time limit.**
10  Q.  That's exactly my question.  The binder is not
11  the policy?
12  **A.  Correct.**
13  Q.  Now, the automobile insurance application that
14  you have as Exhibit 63, this is signed by the
15  applicant.  Is that correct?
16  **A.  Correct.**
17  Q.  Is the information on it signed by the
18  applicant when they sign it?
19  **A.  Yes.**
20  Q.  Do you explain to the applicant what the PIP,
21  personal injury protection, full and $71.90 means?
22  **A.  Yes.**
23  Q.  And what does full mean when it appears there
24  that's explained to the applicant?

12 (Pages 42 to 45)

Eames                                        v.              Nationwide Mutual Insurance Company
Glenn W. Deaton                    C.A. # 04-CV-1324 KAJ                        August 9, 2005

Page 46

1    A.   It means that that coverage is without a
2    deductible meeting the statutory requirement, the full
3    limit of the statute, which is 15/30.
4    Q.   Now, does that 71.90 that appears in that
5    column adjacent to full, to the right of full reflect
6    that premium for that policy coverage?
7    A.   Yes.
8    Q.   And if it were anything greater like the
9    additional policy coverage you spoke of, the APIP or
10   the 100/300,000, would that be a different premium?
11   A.   Yes, it would.
12   Q.   And that appears in the additional personal
13   injury protection, coverage not wanted?
14   A.   Correct.
15   Q.   Is there a discussion between you or your
16   agency and the insured as to the options of the APIP,
17   additional personal injury protection, or the minimum
18   policy limits?
19   A.   Yes.
20   Q.   Is this application always given, always given,
21   routinely given to the insured at the time they come
22   in?
23            MR. SPADARO:  Objection to the form.
24            You can answer.

Page 47

1             MR. CHEYNEY:  I think those words were
2    your words, "routine" and "common."  I'm just trying
3    to get back to what your question was and repeat those
4    words.
5             So let me do it again.
6    BY MR. CHEYNEY:
7    Q.   Is this application routinely and commonly
8    given to the insured at the time he signs the
9    application?
10   A.   It is offered consistently to the insured if
11   they would like to have a copy of it.
12   Q.   How often in your experience during the course
13   of the year, an average year do they take it or don't
14   take it?
15   A.   It's taken rarely by -- in my experience, the
16   physical application is rarely taken by the applicant.
17   Their concern is the proof of coverage that they would
18   need for the purchase of their vehicle or their motor
19   vehicle or to go to Motor Vehicle for registration
20   processes, purposes.
21            A small percentage generally request the
22   hard copy application.
23   Q.   Now, going to page 3 of the application, the
24   very last line under Notice, it says, and I quote the

Page 48

1    first three words, "Read your policy."
2    Q.   Do you see that?
3    A.   Yes.
4    Q.   Is that something that's always told to an
5    applicant, when the policy comes to read the policy
6    and if there's any questions to call you?
7    A.   Yes.
8    Q.   The application is not the policy, is it?
9    A.   Correct.
10   Q.   In the closing statement on page 4 there's a
11   paragraph four from the bottom.  That first sentence
12   of that paragraph, could you read that?
13   A.   Beginning with "I hereby"?
14   Q.   Yes.
15   A.   "I hereby acknowledge that all coverages,
16   required and optional, available to me have been fully
17   explained."
18   Q.   In connection with that statement is it fair to
19   say from your agency and your personal viewpoint that
20   you explain to the insured at the time of the
21   application what the limits are that they are
22   purchasing, what the deductibles available are and
23   what the available additional APIP coverage for PIP
24   might be?

Page 49

1    A.   Yes.
2    Q.   Now, it also says in the very last paragraph --
3    could you read that sentence fully, please?
4    A.   "I have read and signed the Delaware Motorist
5    Protection Act form, required by Delaware statute and
6    have selected the coverage and limits requested
7    hereon."
8    Q.   Now, is that form what page 6 would be?
9    A.   Yes.
10   Q.   And do you and your agency go over this form
11   and what is checked on the form?
12   A.   Yes.
13   Q.   Is frequently or infrequently the checking the
14   result of actual conduct of the applicant or by your
15   agency?
16   A.   Do you refer to the physical marking of the
17   box?
18   Q.   Yes.
19   A.   Generally by the agent or agency employee, not
20   the applicant.
21   Q.   Is it always done as a result of a conversation
22   and specific question?
23   A.   Yes.
24   Q.   Do you see anywhere on this policy the

13 (Pages 46 to 49)

Eames                                    v.              Nationwide Mutual Insurance Company
Glenn W. Deaton                 C.A. # 04-CV-1324 KAJ                        August 9, 2005

Page 50

1  word "full" unmodified by any other word when it comes
2  to the no-fault coverage package number 3?
3          MR. SPADARO: Objection.
4          MR. LEONI: Objection. Because I don't
5  understand. You said, "Do you see anywhere on this
6  policy." What policy?
7          MR. CHEYNEY: I beg your pardon. The
8  Delaware Motorists' Protection Act form. We're on
9  page 6.
10         MR. LEONI: Of exhibit Deaton Exhibit 2.
11         MR. CHEYNEY: Withdraw the question.
12  BY MR. CHEYNEY:
13  Q.  Looking at this form where it says the
14  coverages under A, paragraph 3, do you see that?
15  A.  Yes.
16  Q.  And do you see under B, "Options. You must
17  select limits and coverage desired"? Do you see that
18  paragraph?
19  A.  Yes.
20  Q.  Do you see paragraph or subparagraph 3 in that
21  column?
22  A.  Yes.
23  Q.  What does that say?
24  A.  "Full Coverage with no Deductible."

Page 51

1  Q.  Is it from that choice where the selection is
2  made in column C that information is put into the
3  computer as to what the PIP coverage is for the 15/30?
4  A.  Yes.
5  Q.  At the bottom of that page 6 can you read that
6  information that's contained in the box?
7  A.  "It is not the intent of this statement to
8  limit or discourage the purchase of increased limits
9  of liability and personal injury protection coverages,
10  or other additional coverages which may be available
11  from the company."
12  Q.  Is it your custom and routine and practice in
13  your agency to always offer the APIP coverage?
14  A.  Yes.
15  Q.  The screen saver, page 7 of this of Exhibit 63,
16  is this something that is routinely and commonly given
17  to the insured or is this a screen saver that you use
18  for making a rate quote?
19         MR. SPADARO: Objection to the form.
20  Q.  It's okay.
21  A.  This is a document that is generally used for
22  explanation and comparison of options, but it is
23  generally not given to the applicant unless requested.
24  It's more of a worksheet, if you will.

Page 52

1  Q.  It's a rate quote sheet, correct?
2  A.  Correct.
3  Q.  It is not the policy, is it?
4  A.  No.
5          MR. LEONI: Let me just make sure the
6  record is clear that this is Deaton Exhibit 2 we're
7  talking about which has on the first page a marking
8  number 63.
9          MR. CHEYNEY: Correct. It's the last page
10  of that.
11  BY MR. CHEYNEY:
12  Q.  In connection with dealing with applicants for
13  insurance, is there a script given to you by
14  Nationwide as to what to say when talking about PIP
15  protection?
16  A.  No.
17  Q.  Is it fair to say that when dealing with
18  applicants everyone is different and unique?
19  A.  Yes.
20  Q.  Although the areas are covered, there's no
21  script or set formula of language used?
22  A.  That's correct.
23         MR. CHEYNEY: That's all I have. Thank
24  you.

Page 53

1  BY MR. SPADARO:
2  Q.  I just have a couple of follow-up questions,
3  Mr. Deaton, not much.
4          If you would, keep before you Deaton
5  Exhibit 2. If you would turn to the page that bears
6  the heading Closing Statement, if you could find that.
7  A.  Okay.
8  Q.  If you would direct your attention to the
9  paragraph that begins a little bit, begins about the
10  middle of the page and begins with the words "I hereby
11  acknowledge that all coverages."
12         Do you see that?
13  A.  Yes.
14  Q.  That sentence says, "I hereby acknowledge that
15  all coverages, required and optional, available to me
16  have been fully explained."
17         Do you see that?
18  A.  Yes.
19  Q.  And Mr. Cheney asked you about that sentence.
20  Do you recall that?
21  A.  Yes.
22  Q.  Does the reference to coverages being fully
23  explained have meaning to you?
24  A.  Yes.

14 (Pages 50 to 53)

Eames                                        v.          Nationwide Mutual Insurance Company
Glenn W. Deaton                  C.A. # 04-CV-1324 KAJ                      August 9, 2005

Page 54

1    Q.  And what does it mean for coverages to be fully
2    explained?
3    **A.  To make sure that the applicant understands**
4    **what coverages are available to them and what limits**
5    **of coverages that they are purchasing, what optional**
6    **limits might be available to them, and coverages not**
7    **just relating to the PIP, as we mentioned, but**
8    **additional coverages in terms of rental car, towing**
9    **and labor, other accessory coverages that may be**
10   **available that they may not have thought about or**
11   **contemplated.**
12   Q.  The reference in that sentence to coverages
13   being fully explained does not imply a minimal
14   explanation, does it?
15   **A.  No.**
16   Q.  The last sentence on that page that bears the
17   heading Closing Statement and is part of Deaton
18   Exhibit 2 was a sentence that Mr. Cheyney asked you to
19   read fully.
20       Do you recall that?
21   **A.  Yes.**
22   Q.  And in response to his request, you read the
23   entire sentence, didn't you?
24   **A.  Yes.**

Page 55

1    Q.  You didn't read part of it, right?
2    **A.  Correct.**
3        MR. SPADARO:  That's all I have.  Thank
4    you.
5        MR. LEONI:  Any other questions?
6        MR. CHEYNEY:  No.
7        MR. LEONI:  All right.
8        (Discussion off the record.)
9        MR. SPADARO:  The parties, being the Eames
10   plaintiffs, the defendant Nationwide and the remaining
11   insurance agents to be deposed today pursuant to the
12   Eames plaintiffs' subpoena, which includes the
13   Broadbent Agency, the Truitt Agency and the Hoban
14   Agency, have agreed to a stipulation in lieu of
15   continuing with those depositions so that based on
16   this stipulation the depositions of the Broadbent,
17   Truitt and Hoban designees pursuant to the plaintiffs'
18   subpoenas will no longer be necessary and have been
19   canceled.
20       And the terms of the stipulation are as
21   follows, and I invite counsel, please, to indicate
22   their assent or disagreement with the way that I
23   characterize it.  The parties have stipulated that in
24   the vast majority of documents produced by the

Page 56

1    insurance agents pursuant to the Eames plaintiffs'
2    subpoenas the word "full" appears next to the term
3    "PIP."
4        MR. LEONI:  So stipulated.
5        MR. CHEYNEY:  It's agreed.
6        MR. SPADARO:  I have nothing further.
7    Thank you very much.
8        (Proceedings concluded at 12:10 p.m.)
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

Page 57

1            I N D E X
2    DEPONENT: GLENN W. DEATON            PAGE
3      Examination by Mr. Spadaro        2
       Examination by Mr. Cheyney       44
4      Examination by Mr. Spadaro       53
5          E X H I B I T S
6    DEATON DEPOSITION EXHIBITS          MARKED
7    1 Letter to Glenn Deaton Agency, Inc. from
       John S. Spadaro dated March 24, 2005
8      with subpoena attached            7
9    2 Multipage document captioned "Automobile
       Insurance Application Nationwide Mutual
10     Insurance Company"                27
11   3 Document captioned "Auto Memorandum Of
       Insurance"                        42
12
     ERRATA SHEET/DEPONENT'S SIGNATURE    PAGE 58
13
     CERTIFICATE OF REPORTER             PAGE 59
14
15
16
17
18
19
20
21
22
23
24

15 (Pages 54 to 57)

Eames                                 v.         Nationwide Mutual Insurance Company
Glenn W. Deaton                 C.A. # 04-CV-1324 KAJ                     August 9, 2005

Page 58

1
2
3           REPLACE THIS PAGE
4           WITH THE ERRATA SHEET
5           AFTER IT HAS BEEN
6           COMPLETED AND SIGNED
7           BY THE DEPONENT.
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

Page 59

1   State of Delaware   )
                        )
2   New Castle County   )
3
4           CERTIFICATE OF REPORTER
5
            I, Kurt A. Fetzer, Registered Diplomate
6   Reporter and Notary Public, do hereby certify that
    there came before me on Tuesday, August 9, 2005, the
7   deponent herein, GLENN W. DEATON, who was duly sworn
    by me and thereafter examined by counsel for the
8   respective parties; that the questions asked of said
    deponent and the answers given were taken down by me
9   in Stenotype notes and thereafter transcribed by use
    of computer-aided transcription and computer printer
10  under my direction.
11          I further certify that the foregoing is a true
    and correct transcript of the testimony given at said
12  examination of said witness.
13          I further certify that I am not counsel,
    attorney, or relative of either party, or otherwise
14  interested in the event of this suit.
15
16
17          Kurt A. Fetzer, RDR, CRR
            Certification No. 100-RPR
18          (Expires January 31, 2008)
19
    DATED:
20
21
22
23
24

16 (Pages 58 to 59)

Wilcox & Fetzer, Ltd.          Professional Court Reporters          (302)655-0477

Eames  
Glenn W. Deaton

v.  
C.A. # 04-CV-1324 KAJ

Nationwide Mutual Insurance Company  
August 9, 2005

Page 60

| A | | | | |
|---|---|---|---|---|
| **abbreviated** 33:20 | 48:19 49:10,15,19 | **appendix** 8:3 | 45:13 57:9 | **bottom** 28:8 48:11 |
| **abbreviation** 40:16 | 51:13 55:13,13,14 | **applicable** 28:12 | **available** 14:20 | 51:5 |
| **able** 5:17 13:5 | 57:7 | 32:7 | 15:19 22:8 23:4,7 | **box** 49:17 51:6 |
| 21:16 22:4 | **agency's** 6:23 9:1 | **applicant** 14:14 | 38:22 44:21,22 | **brand-new** 36:1 |
| **about** 8:12,24 9:5 | 26:15 | 15:14,24 16:15 | 48:16,22,23 51:10 | **break** 3:6 13:6 |
| 12:12 14:5,6,11 | **agent** 3:21 4:6 5:14 | 28:21 29:14 30:7 | 53:15 54:4,6,10 | 42:11 |
| 16:23 24:9,15,15 | 29:15 43:16 49:19 | 45:15,18,20,24 | **average** 47:13 | **breakage** 32:13 |
| 24:17 27:8,21,23 | **agents** 9:17 40:11 | 47:16 48:5 49:14 | **a.m** 1:14 | **breaks** 3:8 |
| 28:1 42:12,14 | 40:18 55:11 56:1 | 49:20 51:23 54:3 | **B** | **brief** 42:19 |
| 43:4 52:7,14 53:9 | **agent-producer** | **applicants** 52:12,18 | **B** 50:16 57:5 | **briefly** 32:9 45:1 |
| 53:19 54:10 | 4:14,15 | **applicant's** 15:18 | **back** 3:23 4:1 23:16 | **Broadbent** 55:13,16 |
| **above** 34:20 39:8 | **ago** 9:15 | **application** 14:8,9 | 23:17,20,21 43:19 | **Brockstedt** 7:12 |
| **accept** 7:6 | **agree** 3:1 | 14:10,21,24 15:11 | 47:3 | **broker** 6:3 |
| **accepted** 14:7 | **agreed** 12:12 25:19 | 15:23 16:1,5 | **ballpark** 25:8 | **brought** 20:3 37:19 |
| **accepting** 29:2 | 55:14 56:5 | 19:24 20:22 27:19 | **bank** 16:8 | **bulk** 18:21 |
| **accessory** 54:9 | **agreement** 6:4 | 27:22 29:1,15,18 | **based** 10:15 11:3 | **bullet** 29:10 |
| **accident** 22:1 23:8 | **allowed** 6:3,9,10 | 29:20,23 35:22 | 12:20 15:17 36:4 | **burden** 26:5 |
| 23:14 38:18 39:18 | 20:9,14 42:12 | 45:13 46:20 47:7 | 36:8,16 55:15 | **business** 4:4,9 9:7 |
| **according** 21:24 | **along** 13:20 30:10 | 47:9,16,22,23 | **basic** 16:21 27:20 | 9:10,16 16:9 |
| **account** 10:22,22 | **altered** 15:3 | 48:8,21 57:9 | 27:22 | 41:17 |
| 16:11 | **Although** 52:20 | **applied** 32:6 | **basically** 9:16 14:9 | **buy** 13:24 |
| **acknowledge** 29:12 | **always** 46:20,20 | **appreciate** 19:6 | 16:21 | **C** |
| 30:6 48:15 53:11 | 48:4 49:21 51:13 | 44:6 | **basis** 11:1 | **C** 51:2 |
| 53:14 | **amount** 12:19,20,22 | **appropriate** 15:20 | **bear** 29:16 | **cabinets** 9:11 |
| **acknowledgment** | 12:24,24 21:20 | **approximately** 18:2 | **bears** 53:5 54:16 | **call** 11:19,22 16:18 |
| 29:2 | 22:7 23:3 32:23 | 27:14 | **before** 1:14 2:18 | 48:6 |
| **act** 4:5 20:23 30:6 | 33:9 34:2 35:5,10 | **area** 28:4 | 7:22 8:15 33:16 | **called** 9:24 43:22 |
| 49:5 50:8 | 35:14,17 36:7,17 | **areas** 8:11,15,18 | 53:4 59:6 | **came** 59:6 |
| **Action** 1:6 | 36:18 37:3,24 | 52:20 | **beg** 50:7 | **CAMPBELL** 1:20 |
| **acts** 4:5 | 38:3,4 | **arrangement** 5:16 | **begin** 10:18 | **canceled** 55:19 |
| **actual** 36:4,9 49:14 | **amounts** 21:15 33:2 | **ascertainable** 38:8 | **beginning** 1:13 | **capacity** 10:21 |
| **actually** 21:10 | **animal** 32:14,16 | **asked** 29:5 42:13,14 | 33:21 48:13 | **captioned** 57:9,11 |
| 22:11 | **annual** 28:10 | 53:19 54:18 59:8 | **begins** 28:1 31:21 | **captive** 5:14,24 |
| **addition** 14:24 | **annuities** 7:1 | **asking** 2:20 8:11 | 35:8 53:9,9,10 | **car** 54:8 |
| **additional** 18:11 | **another** 6:9 7:11 | 12:7 13:24 24:17 | **behalf** 1:4 7:4,11 | **card** 15:6 |
| 41:19 46:9,12,17 | 43:16 | **asks** 19:17 | 23:11 26:2 | **cards** 16:17 |
| 48:23 51:10 54:8 | **answer** 2:22 4:1,3 | **assent** 55:22 | **being** 8:4 33:6 | **carrier** 6:9 |
| **address** 2:15 19:2 | 8:17 21:10 40:20 | **assessed** 36:6 | 53:22 54:13 55:9 | **carrying** 17:17 |
| 27:24 | 46:24 | **assuming** 22:13 | **belongs** 9:9 | **case** 7:15 20:8 |
| **addressed** 7:12 | **answering** 27:8 | **attached** 7:14 44:13 | **Below** 28:19 | 22:17 24:18 40:6 |
| **adjacent** 46:5 | **answers** 59:8 | 57:8 | **belt** 39:19 | 40:12 42:1 43:7 |
| **affect** 15:8 | **anybody** 42:12 | **attention** 31:3 53:8 | **benefit** 39:13,14,16 | **cash** 36:4,9 |
| **after** 10:24 17:15 | **anything** 4:24 16:19 | **attorney** 3:12 7:11 | 39:20 | **Castle** 59:2 |
| 58:5 | 42:9,15 46:8 | 59:13 | **between** 17:23 | **casualty** 5:1 6:24 |
| **again** 23:2,23 47:5 | **anywhere** 34:16 | **attorneys** 26:15,20 | 46:15 | **category** 20:19 |
| **against** 35:20 36:7 | 49:24 50:5 | **August** 1:14 59:6 | **binder** 15:21 16:24 | **caveat** 45:7 |
| 37:1,19 38:23 | **APIP** 46:9,16 48:23 | **auto** 13:12,24 17:11 | 17:18 20:17 44:13 | **center** 16:14 18:1 |
| **agency** 1:11 3:18,20 | 51:13 | 19:7 23:10,24 | 44:15,17,20 45:6 | 18:19,24 |
| 4:8,8,12,21,21,24 | **appear** 7:24 27:10 | 24:9 26:1 29:9 | 45:7,10 | **centers** 19:1 |
| 5:9,12,24 7:3,13 | 31:8 33:1 34:12 | 30:23 32:10 33:14 | **birth** 27:23 | **Centre** 1:13,18 |
| 7:15 8:21 9:3,22 | 34:20,22 | 41:15 43:5,6,12 | **bit** 8:24 53:9 | **certain** 14:4 25:15 |
| 10:4,10,18 11:7 | **APPEARANCES** | 43:22,22 45:1,4 | **biweekly** 11:1 | 26:16 |
| 11:11 16:7 23:10 | 1:16 2:1 | 57:11 | **blacked** 26:16 | **Certainly** 12:14 |
| 25:15,20,24 26:10 | **appears** 32:18 | **automobile** 12:16 | **bodily** 38:9,12,19 | **CERTIFICATE** |
| 26:21 41:8 46:16 | 34:11 36:19 37:13 | 11:15 17:10 18:14 | 38:24 39:6 | 57:13 59:4 |
| | 41:20 43:15 45:23 | 18:22 21:7 24:7 | **bonding** 7:1 | **Certification** 59:17 |
| | 46:4,12 56:2 | 27:18 31:16 33:11 | | |

Eames                                    v.                    Nationwide Mutual Insurance Company
Glenn W. Deaton                    C.A. # 04-CV-1324 KAJ                      August 9, 2005

Page 61

| | | | | |
|---|---|---|---|---|
| certify 59:6,11,13 | commission 10:15 | 19:7,9,15 20:20 | 21:24 22:8 25:12 | 44:12 50:10 52:6 |
| chairs 9:11 | 10:23 | 21:1 30:23 | 28:5,7 29:2 30:8 | 53:3,4 54:17 57:2 |
| chance 8:14 | Commissioner's | consumers 5:10,13 | 31:16 32:6,8,9,11 | 57:6,7 59:7 |
| characterization | 6:23 | 13:23 20:8,13 | 32:11,15,20 33:3 | decided 9:15 |
| 41:5,6,14,20 | commissions 10:13 | 21:16 22:4 23:12 | 33:7,10,21 34:4,8 | declaration 27:20 |
| characterize 55:23 | 11:3 | consumer's 17:23 | 35:10,11,15,23 | 29:6 |
| characterized 17:6 | common 35:19 36:6 | contained 51:6 | 36:11 37:8,15,18 | deductible 32:5,7 |
| charged 28:16 34:3 | 47:2 | contains 45:6 | 38:1,9,20 39:7 | 32:20,22 34:3,20 |
| 35:5,20 37:1 | commonly 47:7 | contemplated 32:18 | 39:14 40:3,7 46:1 | 35:9,15,18,19 |
| checked 49:11 | 51:16 | 35:22,23 54:11 | 46:6,9,13 47:17 | 36:6,24 37:6 46:2 |
| checking 49:13 | commute 28:10 | content 44:23 | 48:23 49:6 50:2 | 50:24 |
| Cheney 44:9 53:19 | COMP 33:21 | context 12:7,9 | 50:17,24 51:3,13 | deductibles 39:22 |
| Cheyney 1:20 17:21 | companies 5:20 | Continental 2:3 | coverages 14:12 | 48:22 |
| 18:17 22:9 23:6 | 6:11 | continuing 55:15 | 15:13 21:3,17 | defendant 1:9,22 |
| 44:8,11 47:1,6 | company 1:8 3:22 | contract 6:1 9:14 | 30:11 31:5 34:23 | 22:17 24:5,17 |
| 50:7,11,12 52:9 | 9:19 12:23 22:13 | 9:17 12:20 14:17 | 35:2 48:15 50:14 | 55:10 |
| 52:11,23 54:18 | 22:19,24 23:24 | 17:13 32:19 33:11 | 51:9,10 53:11,15 | defensive 15:7 |
| 55:6 56:5 57:3 | 24:5,14,18 25:10 | contractor 3:21 | 53:22 54:1,4,5,6,8 | Delaware 1:2,13,18 |
| child's 15:6 | 45:3 51:11 57:10 | Cont'd 2:1 | 54:9,12 | 1:23 2:3,16 5:13 |
| choice 15:18 51:1 | compare 14:16 20:4 | conversation 49:21 | covered 12:23 | 6:15,22 10:12 |
| Civil 1:6,12 | compared 5:19 | copy 7:10,14 20:7 | 38:24 39:18 52:20 | 13:11 20:22,23 |
| claim 12:23,23 | comparing 30:19 | 20:21 27:10 30:16 | CRR 59:17 | 23:5,12 30:5,10 |
| 35:20,24 36:2,7 | comparison 51:22 | 44:15,17,21 47:11 | current 14:17,17 | 30:15 43:16 49:4 |
| 37:1,2 | compensated 10:10 | 47:22 | CURTIS 1:20 | 49:5 50:8 59:1 |
| claims 37:19 38:23 | 10:13 | corporation 4:13 | custom 51:12 | delivery 7:13 29:9 |
| clarified 24:6 | compensation 5:4 | correct 4:10 5:8 | customized 15:3 | demographic 27:22 |
| clarify 3:3 13:21 | compete 6:11 | 6:13,17 10:6,9 | | deponent 2:7 57:2 |
| 25:2 | complete 18:18 | 13:1 17:20 18:18 | **D** | 58:7 59:7,8 |
| class 15:7 28:11 | completed 15:15,23 | 20:18,21 21:5,18 | D 57:1 | deposed 55:11 |
| clear 24:20 52:6 | 58:6 | 22:3 25:17 28:17 | damage 15:3 28:6 | deposited 16:7 |
| client 14:14 | completely 2:22 | 29:24 30:3,24 | 30:11 31:14 32:12 | deposition 1:11 |
| closing 28:23 48:10 | completion 14:21 | 31:18 32:2,21 | 32:16 33:23 36:17 | 2:18,21 3:13 7:4,9 |
| 53:6 54:17 | comprehensive | 33:8,9,24 34:5,8,9 | 36:18,20 37:7,15 | 7:16 8:15 22:12 |
| CNW 39:23 40:6 | 30:12 31:13 32:1 | 35:1,16 36:14,17 | 37:19,20,24 38:1 | 26:8 27:1,3 42:22 |
| COLL 33:22 | 32:7,9,11,15,20 | 37:4,12,21 38:2,6 | 38:9 | 42:23 57:6 |
| collect 15:20 | 33:7,22 34:2,8 | 38:11,21 39:1 | date 27:21,23 29:15 | depositions 55:15 |
| collected 11:4 15:17 | 35:9,11 36:11 | 40:1,5 42:7 43:14 | dated 7:12 57:7 | 55:16 |
| 16:7,24 33:10 | 37:8 | 43:17 45:12,15,16 | 59:19 | depreciating 36:16 |
| 34:7 | compromise 25:19 | 46:14 48:9 52:1,2 | day 18:11 36:1 45:9 | describe 4:7 27:13 |
| collects 11:2 | 26:4,11 | 52:9,22 55:2 | days 16:9 18:11 | 29:22 |
| collision 18:14 | computer 9:12,20 | 59:11 | DB 39:9 | described 7:24 19:5 |
| 30:12 31:13 32:12 | 9:21 14:10 16:2 | correctly 10:6 17:7 | dealing 52:12,17 | 34:24 44:3 |
| 32:14,15,17 33:22 | 19:20 30:21 51:3 | corresponding 33:6 | death 39:13,14,16 | description 8:4 13:6 |
| 36:20 37:2,7 | 59:9 | corresponds 31:24 | 39:19 | 13:10 19:12 43:21 |
| column 31:12,15,21 | computers 9:7 | cost 13:24 14:1 | Deaton 1:11,12 2:6 | designated 7:3 |
| 32:1 33:1 34:1,6 | computer-aided | counsel 55:21 59:7 | 2:14 3:18,20 4:12 | designation 7:6 |
| 35:8 36:11,20 | 59:9 | 59:13 | 4:20,21,21,24 5:9 | designee 1:12 |
| 37:13,23 38:13 | concern 47:17 | country 19:2 | 5:12,24 7:3,13,15 | designees 55:17 |
| 39:9 40:24 41:2 | concluded 56:8 | County 59:2 | 7:16,20,22 8:1 | desired 50:17 |
| 46:5 50:21 51:2 | conduct 49:14 | couple 16:9 42:8 | 9:3 10:3,10,18 | desks 9:11 |
| columns 31:9 | confirm 41:22 | 53:2 | 11:7,11,14 23:10 | detail 27:15 28:1 |
| come 30:18 46:21 | connection 10:17 | course 25:23 47:12 | 25:15,19 26:10,15 | detailed 28:7 |
| comes 13:11 19:19 | 42:5 48:18 52:12 | court 1:1 7:8 24:24 | 26:21 27:2,3,11 | determination |
| 36:2 48:5 50:1 | considered 15:1 | 42:21 | 29:21 31:2 33:14 | 28:15 |
| comfortable 27:7 | consistently 47:10 | coverage 11:15 12:1 | 37:14,23 40:7 | determine 43:11 |
| coming 44:6 | consumer 10:16 | 13:18 14:2,18 | 41:8,16,21 42:20 | determined 36:4,15 |
| commercial 5:3 | 13:11 17:2,9,16 | 15:9 19:22 21:20 | 42:23 43:2 44:6 | DETWEILER 1:20 |

Eames                       v.                Nationwide Mutual Insurance Company
Glenn W. Deaton          C.A. # 04-CV-1324 KAJ                 August 9, 2005

Page 62

different 15:19 21:2
  21:15,17 30:19
  31:15 33:21 46:10
  52:18
Diplomate 1:14
  59:5
direct 31:3 53:8
direction 59:10
directly 11:7,9
  16:13,16 19:24
disagreement 55:22
discount 15:7
discounts 28:7
discourage 51:8
discussion 46:15
  55:8
displayed 30:9
District 1:1,2 24:24
document 7:20,22
  8:2 10:1 14:23,24
  15:1,5,5,8 19:14
  20:4,7,23 27:9,18
  27:20 28:5 30:17
  33:18 34:24 43:3
  43:4,12,22 44:2
  51:21 57:9,11
documents 7:10 8:4
  14:22 15:11 16:3
  16:6 17:24 19:9
  19:10 20:12,19
  25:16,20 26:9
  27:10 40:7,11,16
  41:8,15,21 42:3
  55:24
dollar 12:24 21:15
  32:22 33:2 34:1
  35:10,14,17 37:3
  37:24 38:3,4
dollars 13:3,4
domicile 28:20
done 16:4 37:20
  49:21
Dover 2:16
down 13:6 59:8
draft 16:10
Drive 2:3,16
driver 14:6 39:17
drivers 14:11 29:7
  37:20
driving 14:5 15:7
duly 2:8 59:7
during 3:8 18:14
  43:20 47:12
D-3 43:5

___ E ___

E 57:1,5

each 33:2,10 35:5
Eames 1:3,3,4 43:8
  55:9,12 56:1
earlier 20:24
either 20:13 59:13
elaborate 45:1
elected 15:13
electronically 16:5
  16:10
embraced 25:24
employee 49:19
employees 8:21
  11:6,8,8
end 18:9
enough 3:7
entail 32:10
entire 54:23
entitled 3:9 33:14
  43:5
entries 31:4
entry 31:12,24 32:5
  33:7 36:20 37:5
  37:14 38:12 39:2
  39:8,21,23 40:11
  40:23
equipment 9:3,5,6,9
  9:12
ERRATA 57:12
  58:4
ESQ 1:17,20 2:2
estimate 5:17
event 17:23 18:16
  38:24 59:14
every 16:15 24:7
  41:7
everyone 52:18
exactly 40:5 45:10
examination 2:10
  8:8 57:3,3,4 59:12
examine 7:19
examined 2:8 59:7
example 19:11
examples 41:20
exclusive 5:14
exclusively 5:12 6:2
exercise 41:23
exhibit 7:9,16,20
  26:8 27:1,3,14
  29:21 31:2 33:14
  37:14,23 42:22,23
  45:14 50:10,10
  51:15 52:6 53:5
  54:18
EXHIBITS 57:6
existing 15:3
exists 17:13
expect 41:24 42:2,5

expected 2:22
expense 26:5
experience 47:12,15
Expires 59:18
explain 12:7 14:18
  39:15 45:20 48:20
explained 37:7
  45:24 48:17 53:16
  53:23 54:2,13
explaining 14:14
explanation 44:3
  51:22 54:14
express 36:23
expressed 13:2,2,4
  32:22 36:10 37:3
  37:5 38:3 39:22
e-mails 10:3,7

___ F ___

factor 35:19 36:7
  37:10
factors 28:15
fair 31:9,19 41:14
  48:18 52:17
fall 11:12
familiar 11:17
far 17:6 18:9 22:10
  22:23
fashion 36:24
faster 13:7
Federal 1:12
feel 3:2 27:7
Fetzer 1:14,23 59:5
  59:17
few 9:15
fiduciary 10:21,21
  16:11
Fifteen 11:13
fifth 29:4
figure 25:4 37:22
file 10:8 16:3,3,6,21
filing 9:11
final 29:13 30:16,22
financial 5:2
find 41:24 53:6
fire 32:14
firm 7:11 16:7
first 2:7 27:20
  29:16,18 31:12
  33:6 48:1,11 52:7
five 8:23 29:16,18
flood 32:14
Floor 1:21
Florida 18:23
follows 2:9 55:21
follow-up 53:2
forbidden 29:8

foregoing 59:11
form 15:1,2 20:22
  24:24 25:1,1 30:6
  30:9,13 34:12,15
  46:23 49:5,8,10
  49:11 50:8,13
  51:19
formal 19:16 20:5
format 33:18 44:23
formula 52:21
forth 8:4,11 14:6,12
  27:24 31:9,14
  33:2,9,23 35:3,6
found 41:7
four 48:11
fourth 8:2 28:23
freely 7:6
frequently 49:13
friendly 19:17
from 4:3 9:4 10:16
  16:10,13,16,21
  17:24 18:23 19:8
  22:8 23:4 27:1,11
  48:11,19 51:1,11
  57:7
full 22:7 23:3 41:2,7
  41:15,22 42:3
  45:21,23 46:2,5,5
  50:1,24 56:2
fully 48:16 49:3
  53:16,22 54:1,13
  54:19
funds 5:5 16:10
further 56:6 59:11
  59:13

___ G ___

Gainesville 18:21
  18:23
gather 14:3
general 28:19
generally 13:16
  18:2 19:18,22
  24:16 32:17 34:19
  44:16 45:2 47:21
  49:19 51:21,23
generate 14:10
generated 16:13
  17:24 18:23 20:6
  20:7
generically 22:11
give 12:15,16 13:5,9
  16:18 42:8 44:17
given 2:17 13:16
  14:7 20:19 24:7
  46:20,20,21 47:8
  51:16,23 52:13

59:8,11
gives 45:8
glass 32:13
Glenn 1:11,12 2:6
  2:14 3:17,20 4:12
  4:20 7:13,15 57:2
  57:7 59:7
go 6:3 16:4 19:24
  41:22 43:18 47:19
  49:10
goes 17:16,17
going 3:7 6:5 11:14
  12:5 14:10 21:6
  23:19 24:9 27:13
  31:3 42:21 44:9
  47:23
greater 46:8
guess 40:2
Gum 2:16

___ H ___

H 57:5
hand 7:13
handle 29:1
happen 15:16
happy 41:23
hard 20:7 47:22
hardware 9:14,16
  9:17
having 2:7 24:21
heading 8:7,10 31:4
  31:8 34:20 53:6
  54:17
health 5:2 7:1
hear 23:15
helpful 25:9,13
  43:20
hereon 49:7
him 19:2 42:12,14
Hoban 55:13,17
hold 6:19 23:15,19
home 2:15 17:17
  19:15
homeowner 5:3
hope 6:14
hot 20:1
household 29:7
hunting 42:15

___ I ___

idea 40:2
identifiable 36:12
identification 7:17
  27:4 28:3 42:24
identified 26:18
identifies 31:15
identify 6:21 34:18

Eames
Glenn W. Deaton

v.

C.A. # 04-CV-1324 KAJ

Nationwide Mutual Insurance Company
August 9, 2005

Page 63

| | | | | |
|---|---|---|---|---|
| **identifying** 26:17 | 18:13 27:21,23 | **later** 16:10 36:3,15 | **line** 15:7 32:6,7 | 20:16 43:5,6,23 |
| **III** 1:20 | 28:2 29:5 30:13 | **law** 1:13 14:19 | 47:24 | 44:23 45:2,4 |
| **imply** 54:13 | 30:18 32:12 34:12 | 30:10 | **listed** 5:6 28:8 | 57:11 |
| **Inc** 1:11 57:7 | 34:16 37:1 38:23 | **lawsuit** 25:24 | **little** 8:24 24:21 | **mentioned** 6:24 |
| **include** 9:24 32:13 | 38:24 39:17 46:16 | **lease** 9:3,14 | 27:15 53:9 | 20:16 30:17 54:7 |
| **included** 28:22 | 46:21 47:8,10 | **leaves** 17:16 | **live** 28:21 | **middle** 31:4,21 34:1 |
| **includes** 29:4 55:12 | 48:20 51:17 | **left** 39:2 | **local** 16:8 | 35:8 36:19 37:13 |
| **including** 5:2 8:23 | **insures** 18:16 37:18 | **left-hand** 31:12,15 | **long** 6:11 11:10 | 37:23 38:13 39:21 |
| 28:2,10 29:9 | **intent** 51:7 | 32:1 40:24 | 17:15 18:9 | 41:2 53:10 |
| 30:11 | **interested** 6:8 59:14 | **Leoni** 2:2,2 3:15 | **longer** 18:10 55:18 | **might** 9:24 26:17 |
| **income** 10:15 | **interim** 18:15 | 12:5 21:10,13 | **Looking** 50:13 | 28:11,15 48:24 |
| **Incorporated** 3:18 | **interject** 13:20 | 22:10 23:15,19,23 | **loss** 30:12 | 54:6 |
| 3:20 4:12,21 7:13 | 28:13 | 24:20 26:15 42:11 | | **mileage** 28:10 |
| **increased** 51:8 | **interrupted** 30:4 | 42:18 44:9 50:4 | **____ M ____** | **minimal** 54:13 |
| **incurred** 36:17,18 | **interview** 14:13 | 50:10 52:5 55:5,7 | **made** 38:22 51:2 | **minimum** 21:20,23 |
| **independent** 3:21 | **intranet** 9:19 | 56:4 | **mail** 18:3 | 23:13 25:5,12 |
| **indicate** 32:4 34:15 | **invite** 55:21 | **less** 18:5 25:12 | **majority** 55:24 | 30:9 46:17 |
| 35:17 44:20 55:21 | **involved** 18:13 | **let** 3:6 7:8 8:24 | **make** 11:24 12:6,8 | **minutes** 42:9 |
| **indicated** 30:22 | 23:11 | 16:23 22:18 23:2 | 22:18 23:20 28:2 | **misrepresentations** |
| **indicates** 34:2 35:10 | **issuance** 45:8 | 26:24 27:7 31:1 | 34:19 44:21,22 | 29:1 |
| 35:14 37:22,24 | **issue** 18:22 25:11 | 33:13,15 34:11 | 52:5 54:3 | **Mm-hmm** 21:8 |
| **indicating** 4:4 34:7 | **issued** 45:3,4 | 40:23 42:20 43:18 | **making** 51:18 | **model** 28:3 34:19 |
| **individual** 13:17 | **I.D** 16:17 | 47:5 52:5 | **management** 10:1 | **moment** 28:13 |
| **information** 14:3,5 | | **letter** 7:10 19:16,18 | **mandated** 21:20 | **monitor** 19:21 |
| 14:6,11 19:21 | **____ J ____** | 19:23 20:6 57:7 | **many** 8:21 9:12 | **month** 36:2 |
| 26:17 27:21,22 | **J** 2:2 | **letters** 39:23 | 20:1 26:1 | **more** 8:24 9:5 18:7 |
| 28:20,22,24 31:9 | **January** 59:18 | **Level** 31:5 | **March** 7:12 57:7 | 22:4 26:1 27:15 |
| 32:3 34:10 45:7 | **John** 1:17 12:5 57:7 | **liability** 5:3 11:24 | **mark** 7:9 26:8 | 51:24 |
| 45:17 51:2,6 | **just** 12:5,16 20:5 | 12:17,19,22 14:15 | 42:21 | **MORGAN** 2:2 |
| **infrequently** 49:13 | 24:20 25:20,23 | 21:2,16,23 22:7 | **marked** 7:17,20 | **motor** 47:18,19 |
| **initialed** 29:5 | 27:6 28:13 42:8 | 23:3 28:6 35:2,11 | 27:4 42:24 43:5 | **motorist** 28:6 30:12 |
| **injury** 11:16,19 | 43:6 47:2 52:5 | 35:18 36:8,10 | 57:6 | 39:6 49:4 |
| 38:9,12,20,24 | 53:2 54:7 | 37:6 38:1,8,19 | **market** 1:21 6:4,8 | **Motorists** 30:5 50:8 |
| 39:6 45:21 46:13 | | 42:21 51:9 | 6:12,15 | **move** 3:7 |
| 46:17 51:9 | **____ K ____** | **license** 6:19,22,23 | **marking** 26:24 | **much** 11:3 13:24 |
| **inspection** 15:2,5 | **keep** 44:15 53:4 | 27:23 | 49:16 52:7 | 17:22 43:3 45:6 |
| **instead** 43:15 | **killed** 39:18 | **licensed** 4:17 6:18 | **Matters** 8:8 | 53:3 56:7 |
| **insurance** 1:8 3:22 | **King** 1:23 | **lieu** 55:14 | **maximum** 12:20,22 | **Multipage** 57:9 |
| 5:4,6,10,13,18,19 | **know** 3:6 4:22 | **life** 5:2,4 7:1 | 18:12 23:7 | **Murphy** 1:13,17 |
| 5:19 6:10,22 9:10 | 11:20,22 12:1 | **like** 9:7 14:1,16 | **may** 11:24 13:21 | **must** 50:16 |
| 9:13 10:11,17 | 18:20 22:10 27:7 | 19:22 20:3,4 30:8 | 15:2 35:24 42:9 | **mutual** 1:8 5:4 |
| 11:16 12:15,18 | 33:15 34:23 | 41:15 46:8 47:11 | 42:14 51:10 54:9 | 22:12,15,18,19,24 |
| 13:24 15:22 17:1 | **known** 11:16 18:5,7 | **limit** 12:21,21,21 | 54:10 | 23:24 24:5,13,14 |
| 17:1,10,13,18,18 | 38:4 | 21:6 35:11,18,23 | **maybe** 4:11 13:17 | 24:18 25:10 27:19 |
| 19:8 20:17,17 | **Kurt** 1:14 3:24 | 36:8,10 37:6 38:1 | 18:11 22:13 40:3 | 57:9 |
| 21:7 22:13,19,24 | 23:17 59:5,17 | 38:8,19 45:9 46:3 | **mean** 3:9 4:15,22 | **myself** 4:7 8:23 11:8 |
| 23:24 24:5,7,18 | | 51:8 | 5:23 11:20,22 | |
| 25:10 26:1,2 | **____ L ____** | **limitation** 38:18 | 12:2 13:20 38:16 | **____ N ____** |
| 27:19 30:2 31:16 | **L** 1:3 | **limitations** 14:15 | 45:23 54:1 | **N** 57:1 |
| 31:16 32:10,19 | **labor** 54:9 | **limited** 12:14,17 | **meaning** 35:24 | **name** 2:12 22:18 |
| 33:11 37:18 38:22 | **Landon** 1:13,17 | **limits** 11:24 12:17 | 53:23 | 27:21 34:12 |
| 40:11,18 43:5,6 | **language** 52:21 | 12:19 14:15,19 | **means** 12:17 40:2,3 | **named** 39:17 |
| 43:16,23 44:24 | **larger** 30:1 | 21:1,15,23 22:7 | 40:7 45:21 46:1 | **names** 33:20 |
| 45:2,13 52:13 | **last** 4:1 23:21 33:14 | 23:3,7,13 25:5 | **meant** 6:14,15 | **Nationwide** 1:8 |
| 55:11 56:1 57:9 | 37:14,23 41:16 | 30:9 35:2 39:22 | **meeting** 46:2 | 3:22 4:5 5:9,13,14 |
| 57:10,11 | 47:24 49:2 52:9 | 46:18 48:21 49:6 | **memorandum** | 5:16,18,21 6:5,8 |
| **insured** 16:14 17:9 | 54:16 | 50:17 51:8 54:4,6 | 15:22 17:1,17 | 6:12 9:2,4,10,13 |

Eames                                     v.               Nationwide Mutual Insurance Company
Glenn W. Deaton                    C.A. # 04-CV-1324 KAJ                      August 9, 2005

Page 64

9:21,24 10:11,17
10:19,23 11:2,12
13:12 14:9 16:2,4
16:13,16 17:10
18:15,19 19:1,8
22:8,12,15,17,19
22:24 23:4,24
24:5,13,14,18
25:10 26:2 27:19
28:24 52:14 55:10
57:9
**Nationwide's** 4:6
6:1,2 10:8 16:8
17:24 23:11 39:16
**necessary** 55:18
**need** 3:6,8 47:18
**needed** 14:4,11
**needs** 3:2
**neighborhood**
13:11
**new** 16:3 44:18 59:2
**Newark** 2:3
**newspapers** 29:11
**next** 8:7 39:2 56:2
**nodded** 17:3
**non-standard** 24:15
**Notary** 1:14 59:6
**notes** 59:9
**nothing** 42:10 56:6
**notice** 22:11 47:24
**no-fault** 50:2
**number** 27:1 28:1,3
30:23 31:21 33:15
35:9 36:12,15,19
36:23 37:13 45:5
50:2 52:8
**numbered** 26:21
**numbers** 13:2 26:22

—— **O** ——
**oath** 2:8,17,23
**object** 25:1
**objection** 17:21
18:17 22:9 23:6
24:23 25:1 46:23
50:3,4 51:19
**obtain** 15:10
**obtained** 10:16
15:12 42:4
**occasion** 6:7
**occurrence** 12:21
**off** 20:4 30:20 55:8
**offer** 51:13
**offered** 20:21 47:10
**offers** 6:5
**office** 4:17 6:23 9:6
9:9 10:20 17:16

19:19 20:10 26:16
30:19 43:13
**offices** 1:13
**often** 20:8 25:5
47:12
**okay** 3:10,11 9:2
13:15 16:23 17:2
25:13 27:9,16
42:18 51:20 53:7
**once** 13:16 14:6
45:2
**one** 3:9 18:2,14
20:19 24:14 26:22
29:10 32:15 41:7
41:16
**only** 6:17 10:22
18:11 22:12 23:23
24:4,17 25:11
**operate** 4:4
**operations** 9:7
**opportunities** 5:15
**opportunity** 7:19
**option** 14:19
**optional** 30:10
48:16 53:15 54:5
**options** 15:19 20:24
30:8,14 46:16
50:16 51:22
**ordinary** 13:10
**original** 16:5
**other** 4:17 5:19 6:4
6:10 10:14,15
17:1,18 19:1,2
20:12,17 24:9
30:10 37:19 38:23
40:11 41:21 50:1
51:10 54:9 55:5
**others** 1:4
**otherwise** 24:8
26:17 39:21 59:13
**out** 9:16 14:22
16:14 18:3 19:18
19:23 25:4 26:16
30:14
**outside** 5:15 6:3
**over** 25:23 49:10
**overall** 5:22
**own** 9:17
**owned** 9:21,23
**ownership** 28:4
29:6

—— **P** ——
**P** 1:20
**package** 16:16 50:2
**packet** 16:17 44:12
**page** 8:2,7 27:18,20

28:1,4,8,9,19,22
28:23 29:4,13
30:5,16,22 31:2,4
33:14 34:11,13,15
37:14,23 41:16
47:23 48:10 49:8
50:9 51:5,15 52:7
52:9 53:5,10
54:16 57:2,12,13
58:3
**pages** 27:14 29:16
29:18,20,21
**paid** 11:6,7,9
**paper** 16:4
**paragraph** 48:11,12
49:2 50:14,18,20
53:9
**pardon** 50:7
**part** 17:6 19:8
20:12 26:10 27:14
29:13,22 30:1
54:17 55:1
**particular** 11:15
32:19
**particularly** 24:13
**parties** 25:19 55:9
55:23 59:8
**party** 59:13
**passengers** 39:17
**passes** 17:22
**patience** 44:6
**patiently** 19:6
**pay** 15:18,19
**payable** 12:22
39:20
**payment** 28:21
**pays** 11:2
**PD** 33:22
**Pennsylvania** 1:21
**people** 25:5
**per** 12:21,21 22:1,1
23:8,8,13,13
38:17,18
**percent** 5:22 25:11
**percentage** 5:17
23:9,10 25:8
47:21
**period** 25:24
**person** 12:21 22:1
23:8,13 38:17
**personal** 11:16,19
14:4 23:24 29:9
45:21 46:12,17
48:19 51:9
**persons** 38:23
**Philadelphia** 1:21
**physical** 20:22 28:6

30:11 47:16 49:16
**physically** 45:3
**PIP** 11:22 12:1
21:20,24 22:8
23:3,7 25:12 28:7
40:23 41:7,15
42:6 45:20 48:23
51:3 52:14 54:7
56:3
**pipeline** 9:18
**pizza** 29:10
**place** 6:9 28:20
29:14 32:16
**placed** 10:21
**placing** 30:2
**plaintiffs** 1:6,19
43:7 55:10,12,17
56:1
**plan** 15:18,19
**please** 2:13,15
13:15 16:18 31:2
33:16 49:3 55:21
**point** 14:13 15:21
16:12,23 17:9,12
17:15,16 24:10
32:3
**policies** 18:22 23:10
24:1 25:11 26:1,2
26:18 30:15
**policy** 13:12 16:12
16:16,17 17:24
20:3 29:9 32:10
36:13 37:11 38:4
38:7 43:12,15,22
45:2,5,8,11 46:6,9
46:18 48:1,5,5,8
49:24 50:6,6 52:3
**policyholder** 44:17
44:18
**policyholders** 25:21
26:18
**policy-related**
25:20 26:9
**potentially** 15:4
**practice** 51:12
**preference** 13:8
**premium** 10:16,19
10:20 11:3 15:17
15:20 16:24 28:16
33:9 34:7 35:5
46:6,10
**premiums** 11:2 16:6
**premium-bearing**
10:22
**prepare** 14:4
**prepared** 8:17 14:7
**president** 4:13

11:10
**presumably** 17:16
**pretty** 45:6
**price** 14:1 19:11,12
**primarily** 5:16
**primary** 4:14,18
**principal** 3:21 4:5,7
4:8,9
**print** 20:1,2,4,5
30:17,20
**printed** 14:22 19:23
**printer** 59:9
**Procedure** 1:12
**proceeding** 2:18
**Proceedings** 56:8
**process** 13:10,17
14:8 15:23 16:22
18:3 19:5,7,8 20:1
20:13 30:1,20
43:21
**processed** 10:24
16:12 45:3
**processes** 47:20
**produce** 25:20
**produced** 25:15
26:10,22 40:7,11
41:8,21 55:24
**producer** 4:18
**producing** 29:14
**product** 6:5,6,7
10:18 11:16 31:17
39:16
**production** 27:2,11
**products** 4:16 5:2,5
5:6,7,10,13,15,16
5:18,19 6:1,3,11
6:12,24 9:20
10:11,14 24:9
**professional** 6:19
**program** 16:9
**prohibited** 29:11
**proof** 15:22 17:1,18
20:17 47:17
**property** 5:1,3 6:24
9:10,13 31:14
33:23 36:16 37:15
37:19,20,24 38:1
38:9
**protection** 11:16,19
20:23 30:6 45:21
46:13,17 49:5
50:8 51:9 52:15
**provide** 15:20,21,24
19:17,20
**provided** 9:21
12:20 15:9,9 17:2
30:15

Eames        v.     Nationwide Mutual Insurance Company
Glenn W. Deaton    C.A. # 04-CV-1324 KAJ    August 9, 2005

Page 65

provides 27:20 28:5
 28:9,24 32:11
 39:16
Public 1:15 59:6
purchase 19:22
 21:2,16 22:4 23:4
 23:12 25:5,12
 47:18 51:8
purchased 35:24
 36:13 37:11 38:5
 38:7
purchases 13:12
 19:7
purchasing 48:22
 54:5
purports 7:10 8:3
purposes 47:20
pursuant 1:12
 55:11,17 56:1
put 51:2
p.m 56:8

_____ Q _____

question 3:1,4 6:16
 23:20,22 24:8,11
 24:12,19 25:6
 45:10 47:3 49:22
 50:11
questions 2:21 8:12
 8:17 12:12,13
 16:19 21:6 22:14
 22:16 24:6 27:8
 42:13,14 44:8,10
 48:6 53:2 55:5
 59:8
quickly 3:7 39:15
quiz 12:16
quotation 14:1
quote 13:16,17,23
 14:4,7 19:11,12
 19:16,17,18,19,20
 19:23 20:2,6,9
 30:20,23 33:15
 41:15 47:24 51:18
 52:1
quotes 30:19

_____ R _____

rarely 47:15,16
rate 15:8 28:11
 30:23 33:14 41:15
 51:18 52:1
rather 35:14,18
 36:15 37:6
rating 28:14
ratings 28:9
RDR 59:17

reached 25:18 26:4
read 3:23 4:1 23:17
 23:19,21 48:1,5
 48:12 49:3,4 51:5
 54:19,22 55:1
readily 36:12 38:7
 43:11
reads 31:13 39:2
really 16:4 35:21
reason 37:5,7
recall 21:4 53:20
 54:20
receipt 15:20 16:1
 17:23
receive 10:3,23
 16:16
received 10:7,20
 16:18
recess 42:19
record 2:12 12:16
 14:5 25:23 52:6
 55:8
redacted 26:16
 34:10,21
reduce 26:4
refer 4:20 49:16
reference 11:24
 53:22 54:12
referred 20:24
 43:20
referring 5:23
 11:14 13:23 23:23
 24:4 28:14
refers 22:12
reflect 46:5
regarding 24:13
 29:1,6
regardless 35:20
regions 19:2
Registered 1:14
 59:5
registration 47:19
regular 29:7
reject 30:7
rejected 15:14
relate 22:23 24:6
 43:15
related 32:13,17
 43:12
relates 32:5
relating 8:17 54:7
relationship 4:11
 9:1,1
relative 59:13
relatively 36:8
released 16:1
remaining 29:21

55:10
remember 43:24
remittance 16:8
remitted 10:23 16:8
rental 54:8
repeat 3:4 47:3
repetition 3:3
rephrasing 3:3
REPLACE 58:3
report 15:5,6
reporter 1:14 4:1
 7:9 23:21 42:21
 57:13 59:4,6
represent 40:10
 41:6 43:4
representative 3:17
represented 3:12
 26:12 43:9
representing 3:15
 41:9
represents 5:21
request 47:21 54:22
requested 20:6 49:6
 51:23
requesting 13:17
 14:14
required 6:2 9:14
 14:3,18,23 15:4
 15:10 30:10 48:16
 49:5 53:15
requirement 46:2
requirements 30:14
respect 21:1,19
 33:10 37:8
respective 59:8
responding 26:5
response 24:12
 25:14 54:22
responses 22:23
responsible 4:16
result 28:15 49:14
 49:21
retain 16:5
retaining 16:3
review 8:14 15:13
 16:19 27:6
reviewing 27:9 43:2
right 11:5 12:13
 17:19 20:20 21:7
 21:17,21,22 22:2
 22:18 24:16 32:1
 32:20 33:7,23
 34:4,24 35:6,15
 37:8 38:10 46:5
 55:1,7
right-hand 33:1
 34:6

risk 29:3
Road 1:13,18
ROBERT 2:2
ROBERTA 1:3
role 10:11
roughly 5:17
routine 41:16 47:2
 51:12
routinely 46:21
 47:7 51:16
rule 1:12 44:16
running 9:20

_____ S _____

S 1:17 57:5,7
salaries 11:6
sale 4:16 6:5 10:17
sales 4:18 5:21,22
 10:15
salesperson 4:18
same 37:7 45:6
satisfaction 27:7
saver 51:15,17
says 32:1 39:9 41:2
 45:7 47:24 49:2
 50:13 53:14
scale 18:9
screen 20:1,5 30:16
 30:20 51:15,17
script 52:13,21
seat 39:19
second 23:15 28:4,4
 28:8 29:17 31:2
see 8:3,7 20:9,13
 29:10 31:6,12,22
 33:4,20 34:1,6
 36:20 37:16 38:12
 38:14 39:3,10,23
 39:24 40:6,24
 41:3,5 42:2,5 48:2
 49:24 50:5,14,16
 50:17,20 53:12,17
seems 24:21
seen 7:22 40:10
select 30:7 50:17
selected 28:5 49:6
selection 51:1
sell 4:24 5:1,9,12,15
 5:18 6:1,2,6,7,10
 6:23 10:14
selling 6:12 10:11
 23:11
send 10:3
sense 23:9
sent 10:7 16:2,14
 18:3 19:18
sentence 48:11 49:3

53:14,19 54:12,16
 54:18,23
served 7:15
server 10:8
service 5:2 16:13
 17:24 18:19,23
 19:1
set 7:9 8:3,11 16:2
 16:20 26:9,9 27:1
 27:11 33:2 35:3,6
 41:7 52:21
sets 26:21 33:9
 41:21
setting 31:9
seven 27:14
share 19:20 30:18
shared 19:9,14
 30:22 43:7
sheet 52:1 58:4
SHEET/DEPON...
 57:12
SHELSBY 2:2
show 14:19 20:2
 41:19 42:20
showing 37:6
shown 41:16 44:12
sign 29:15 30:13
 45:18
signature 29:14
 57:12
signatures 15:10
signed 7:11 14:23
 45:14,17 49:4
 58:6
signifies 38:17
signifying 34:3
signs 47:8
similar 33:18 36:24
 44:22
similary 1:5
simply 30:20 41:21
 41:24 43:18
single 26:9
sir 2:12 8:22 22:21
situated 1:5
sixteen 11:13
sixth 30:5
skipped 39:8
small 39:19 47:21
social 27:23
software 9:15,18,19
 9:20,23 10:1
sold 26:1 43:12,16
 43:22
some 5:4 15:22 27:8
 28:19 41:19 44:8
 44:10

Eames                                    v.              Nationwide Mutual Insurance Company
Glenn W. Deaton                    C.A. # 04-CV-1324 KAJ                      August 9, 2005

Page 66

| | | | | |
|---|---|---|---|---|
| someone 19:16,19 35:24 | subparagraph 50:20 | 56:7 | 53:5 | **V** |
| something 48:4 51:16 | subpoena 7:14 25:14 26:5 55:12 57:8 | theft 32:14 their 6:6 9:14,15,18 9:18 10:24 16:13 16:16 20:3 29:6 37:20 39:19 47:17 47:18,18 55:22 | Turning 35:8 two 18:11 29:21 two-digit 26:22 type 11:15 14:5 27:21 34:21 40:16 43:22 44:2 | v 1:7 value 35:20,22 36:3 36:4,9,16 valued 36:1 vandalism 32:13 variable 5:5 7:1 35:21 |
| sorry 13:20 30:4 39:8 40:20 sort 9:8 source 10:14 Spadaro 1:13,17,17 2:11 3:23 4:2 7:8 7:18 12:10,11 21:13,14 22:16,20 24:2,3,23 25:3 26:24 27:5 42:8 42:20 43:1 44:5 46:23 50:3 51:19 53:1 55:3,9 56:6 57:3,4,7 | subpoenaed 8:4 40:12 subpoenas 55:18 56:2 suffered 38:24 suit 59:14 Suite 1:13,18 2:3 supplemental 15:8 surcharges 28:11 sure 12:6,8,10,19 13:16,22 16:20 22:18 23:20 40:14 52:5 54:3 | themselves 1:4 29:19 thing 9:8 things 29:11 think 6:15 20:16,24 42:9 43:3,11 47:1 third 28:19 THOMAS 1:4 thought 54:10 three 8:11,18 31:9 48:1 through 1:12 6:9,22 10:13,18 14:10 | types 31:15 33:2,21 34:23 typical 23:12 typically 17:22 **U** UMBI 39:2 unclear 3:2 under 2:17,23 8:10 9:17 25:10 26:18 29:9 30:15 31:4,8 47:24 50:14,16 | variables 28:9,14 variety 5:1 15:18 various 14:11 42:3 vast 55:24 vehicle 14:5,12 15:2 15:2,4 18:13 28:2 28:3 29:8,8 31:5 32:12,17 34:16,18 34:21 35:21 36:1 36:3,5,9 47:18,19 47:19 verbally 21:11 |
| specific 9:5 14:15 28:20 49:22 specifically 9:12 specify 24:8 spells 30:14 spoke 46:9 staff 4:17 stage 19:9 stand 39:5,12 standard 27:18 40:15 | surprise 41:12 SWARTZ 1:20 Sweet 2:16 sworn 2:8,17 59:7 **T** T 57:5 take 3:6,9 18:5,7,10 19:15 20:14 32:16 40:23 43:2 47:13 47:14 | 27:19 41:23 43:13 43:16 time 17:22 18:3 25:24 29:15 35:22 35:24 36:2,4,5,12 37:10 38:4 43:2 45:9 46:21 47:8 48:20 times 20:1 | 59:10 underneath 31:13 31:14 understand 2:20 4:3 6:14 7:2 8:10 10:6 12:6 22:21 23:20 24:11,12,19 25:4,6 26:6,12 40:13,15 41:9 42:16 43:9 50:5 | verify 30:7 very 19:5 25:13 32:9 44:22 47:24 49:2 56:7 view 15:4 viewpoint 48:19 visually 20:13 **W** W 1:12 2:6,14 57:2 59:7 |
| stands 39:6,13 start 14:8 26:24 starts 13:17 state 2:12 6:17 59:1 statement 28:23 48:10,18 51:7 53:6 54:17 statements 29:4 STATES 1:1 statute 21:21 46:3 49:5 statutory 21:23 46:2 | taken 1:12 42:19 47:15,16 59:8 takes 18:10 talk 42:12,14 talking 22:11 24:15 24:15 52:7,14 TAMMY 1:4 taxicab-type 29:11 telephone 19:19 telephones 9:7 tell 2:15 16:15 17:22 23:2 40:3 41:24 | titled 30:23 today 3:15 8:5,12 22:8 23:4 44:7 55:11 today's 8:15 told 40:13 48:4 topics 8:5 total 29:5 towing 54:8 trailing 14:22,23 15:1,5,11 16:6 transact 6:18 transaction 16:22 | understanding 12:17 17:12 18:15 21:19,24 25:15,18 26:14,20 understands 12:8 54:3 understood 6:16 underwriting 28:14 uninsured 28:6 30:12 39:6 unique 52:18 UNITED 1:1 | want 3:10 13:6 26:8 43:18 wanted 40:3,8 46:13 way 6:16 13:21 55:22 wearing 39:19 week 18:2,5,7,10,14 36:2 week's 18:2 well 5:5 7:1 9:6 17:15 20:22 36:2 |
| Stenotype 59:9 step 19:7 step-by 19:6 step-by-step 13:5,9 43:21 stipulated 55:23 56:4 stipulation 55:14,16 55:20 Street 1:21,23 strictly 10:13 student's 15:6 subject 8:11,15,18 45:8 | ten 18:11 ten-day 18:14 term 4:7 11:17 12:18 13:21 56:2 terms 23:9 25:9 54:8 55:20 testified 2:9 testify 7:3 testimony 2:17 3:8 8:5 17:7 42:13 59:11 Thank 8:20 19:4 21:13 25:13 27:17 28:18 30:4 36:18 40:22 52:23 55:3 | transactions 10:24 16:4 transcribed 59:9 transcript 59:11 transcription 59:9 transferring 10:19 trouble 24:22 true 59:11 Truitt 55:13,17 truthfully 2:22 try 3:7 27:13 trying 12:15 25:4 47:2 Tuesday 1:14 59:6 turn 8:2 31:1 33:13 | unknowable 37:10 unknown 36:8 unless 24:8 51:23 unmodified 50:1 unredacted 34:11 34:15 usage 42:2 use 4:7 9:6,15,18 29:6,7 30:13 51:17 59:9 used 30:6 40:16 51:21 52:21 user 19:17 uses 29:8 using 12:9 | were 9:14 14:23 26:10,21 30:19 42:13 46:8 47:1 59:8 we're 10:13 11:14 23:23 24:14,15,24 42:11 50:8 52:6 while 20:9 42:11 WILCOX 1:23 Wilmington 1:13,18 1:23 Withdraw 50:11 witness 2:4 17:3 |

Wilcox & Fetzer, Ltd.                    Professional Court Reporters                    (302)655-0477

Eames                                  v.              Nationwide Mutual Insurance Company
Glenn W. Deaton                 C.A. # 04-CV-1324 KAJ                      August 9, 2005

Page 67

| | | | | |
|---|---|---|---|---|
| 21:12 23:18 24:21 42:17 59:12<br>**word** 42:3 50:1,1 56:2<br>**words** 6:4 47:1,2,4 48:1 53:10<br>**work** 28:10,10<br>**worker's** 5:4<br>**worksheet** 51:24<br>**writing** 20:9<br>**written** 19:12<br>**wrongfully** 22:14<br><br>_____ **X** _____<br>**X** 57:1,5<br><br>_____ **Y** _____<br>**year** 23:12 28:3 34:19,21 36:3 47:13,13<br>**years** 9:13,15 11:13<br><br>_____ **$** _____<br>**$100,000** 23:8<br>**$15,000** 22:1 23:13 38:17<br>**$20,000** 36:1<br>**$23.20** 33:6 34:7<br>**$250** 32:6,20 34:3 34:20<br>**$30,000** 22:1 23:13 38:17<br>**$300,000** 23:8<br>**$71.90** 45:21<br><br>_____ **0** _____<br>**04-CV-1324KAJ** 1:7<br><br>_____ **1** _____<br>**1** 7:9,16,20 27:18 30:23 33:15 57:7<br>**10,000** 37:13,22,22<br>**10:40** 1:14<br>**100-RPR** 59:17<br>**100/300,000** 46:10<br>**101** 12:15<br>**1011** 1:13,18<br>**12:10** 56:8<br>**128** 2:16<br>**131** 2:3<br>**1330** 1:23<br>**15/30** 38:12 46:3 51:3<br>**1601** 1:21<br>**19103-2316** 1:21<br>**19713** 2:3 | **19801** 1:23<br>**19805** 1:18<br>**1989** 11:12<br>**19904** 2:16<br><br>_____ **2** _____<br>**2** 26:8 27:1,3,15 28:1 29:21 31:2 33:14 37:14,24 41:16 50:10 52:6 53:5 54:18 57:3,9<br>**2005** 1:14 7:12 57:7 59:6<br>**2008** 59:18<br>**206** 2:3<br>**210** 1:13,18<br>**23.20** 34:6<br>**24** 7:12 57:7<br>**25** 25:11<br>**250** 31:22 34:2 35:9<br>**27** 57:10<br><br>_____ **3** _____<br>**3** 28:9,22 42:22,23 47:23 50:2,14,20 57:11<br>**30** 45:8<br>**30(b)(6)** 1:12<br>**302** 1:24<br>**31** 59:18<br>**34th** 1:21<br>**35** 25:21 26:1<br><br>_____ **4** _____<br>**4** 48:10<br>**42** 57:11<br>**44** 57:3<br><br>_____ **5** _____<br>**5** 29:13<br>**500** 36:19<br>**53** 57:4<br>**58** 57:12<br>**59** 57:13<br><br>_____ **6** _____<br>**6** 49:8 50:9 51:5<br>**63** 27:1,11 44:12 45:14 51:15 52:8<br>**655-0477** 1:24<br><br>_____ **7** _____<br>**7** 51:15 57:8<br>**71.90** 46:4<br><br>_____ **9** _____<br>**9** 1:14 59:6 | **90** 5:21<br>**95** 5:22 | | |