2006 U.S. Dist. LEXIS 9197, *

CORNING INCORPORATED, et al., Plaintiffs, v. SRU BIOSYSTEMS, et al., Defendants.

Civil Action No. 03-633-JJF

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE

2006 U.S. Dist. LEXIS 9197

March 7, 2006, Decided

**PRIOR HISTORY:** *Corning Inc. v. SRU Biosystems, 2006 U.S. Dist. LEXIS 1896 (D. Del., Jan. 20, 2006)*

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff patent holders sued defendant accused infringers, alleging patent infringement. The court concluded that the patent was valid and that the accused infringers literally infringed and induced infringement of the patent. Supplemental briefing was completed regarding the accused infringers' inequitable conduct argument.

**OVERVIEW:** The accused infringers argued that the patent was unenforceable as a result of inequitable conduct by a witness and the attorney who prosecuted the patent application during the prosecution of the patent before the PTO. The accused infringer contended that the individuals falsely represented to the PTO in a response to office action that none of the cited prior art included a limitation regarding the thickness of a chemo-responsive layer. Under *37 C.F.R. § 1.56*, the court determined that the patent was not unenforceable, because the accused infringers did not establish by clear and convincing evidence that the patent holders committed inequitable conduct during the prosecution of the patent. The accused infringers did not prove that the statement in the response was a misrepresentation, and, even if a misrepresentation was made, the court was not persuaded that it was made with an intent to deceive the PTO. The accused infringers offered no evidence demonstrating that the individuals were aware that an article disclosed a chemo-responsive layer having a thickness less than one wavelength. The patent holders were entitled to a permanent injunction under *35 U.S.C.S. § 283*.

**OUTCOME:** The court found that the patent was not unenforceable due to inequitable conduct and the patent holders were entitled to a permanent injunction. The court ordered the patent holders to submit a proposed form of order for both injunctive relief and final judgment.

**LexisNexis(R) Headnotes**

*Patent Law > Inequitable Conduct > Effect, Materiality & Scienter > Duties*
*Patent Law > Inequitable Conduct > Effect, Materiality & Scienter > Effect of Inequitable Conduct*
[HN1] Patent applicants and their patent attorneys have a duty of candor, good faith and honesty in their dealings with the PTO. *37 C.F.R. § 1.56(a)*. The duty of candor, good faith and honesty includes the duty to submit truthful information and the duty to disclose to the PTO information known to the patent applicants or their attorneys which is material to the examination of the patent application. Breach of the duty of candor, good faith and honesty may constitute inequitable conduct. If it is established that a patent applicant engaged in inequitable conduct before the PTO, the entire patent application so procured is rendered unenforceable.

*Patent Law > Inequitable Conduct > Effect, Materiality & Scienter > Cumulative Information*
*Patent Law > Inequitable Conduct > Effect, Materiality & Scienter > Elements*
[HN2] To establish inequitable conduct due to the failure to disclose material information or the submission of false information, the party raising the issue must prove by clear and convincing evidence that (1) the information is material; (2) the knowledge of this information and its materiality is chargeable to the patent applicant; and (3) the applicant's submission of false information or its failure to disclose this information resulted from an intent to mislead the PTO. Information is deemed material if there is a substantial likelihood that a reasonable examiner would have considered the material important in deciding whether to issue the application as a patent. Accordingly, a reference does not have to be prior art to be material information that must be disclosed to the PTO. *37 C.F.R. § 1.56*. Further, an otherwise material reference need not be disclosed if it is merely cumulative of or less material than other references already disclosed.

*Patent Law > Inequitable Conduct > Effect, Materiality & Scienter > Elements*

[HN3] Intent to deceive is rarely established by direct evidence, and therefore, may be inferred from the facts and circumstances surrounding the applicant's overall conduct. In determining whether the applicant's overall conduct evidences an intent to deceive the PTO, the United States Court of Appeals for the Federal Circuit has emphasized that the challenged conduct must be sufficient to require a finding of deceitful intent in the light of all the circumstances. Once materiality and intent have been established, the court must conduct a balancing test to determine whether the scales tilt to a conclusion that "inequitable conduct" occurred. Generally, the more material the omission, the less the degree of intent that must be shown to reach a conclusion of inequitable conduct.

*Patent Law > Inequitable Conduct > Effect, Materiality & Scienter > Fact & Law Issues*

[HN4] In the patent context, the question of whether inequitable conduct occurred is equitable in nature. As such, the ultimate question of whether inequitable conduct occurred is committed to the sound discretion of the trial court.

*Civil Procedure > Pleading & Practice > Pleadings > Heightened Pleading Requirements > Fraud Claims*
*Patent Law > Inequitable Conduct > Effect, Materiality & Scienter > Elements*

[HN5] In the context of an inequitable conduct claim under patent law, allegations against "the applicants" are too general to withstand scrutiny under *Fed. R. Civ. P. 9(b)*. Rather, the court must be able to discern the identity of the person charged with inequitable conduct.

*Patent Law > Remedies > Equitable Relief > Injunctions*

[HN6] Pursuant to *35 U.S.C.S. § 283*, the court has discretion to grant injunctive relief. However, once infringing activity has been proven, an injunction should issue, unless there is sufficient reason to deny it.

**COUNSEL:** [*1] Richard L. Horwitz, Esquire, and David E. Moore, Esquire, of POTTER ANDERSON & CORROON LLP, Wilmington, Delaware. Of Counsel: Kenneth E. Krosin, Esquire, Andrew E. Rawlins, Esquire, Larry L. Shatzer, Esquire, and George C. Best, Esquire, of FOLEY & LARDNER, Washington, D.C., Attorneys for Plaintiffs.

Steven J. Balick, Esquire, and John G. Day, Esquire, of ASHBY & GEDDES, Wilmington, Delaware. Of Counsel: John J. McDonnell, Esquire, Daniel A. Boehnen, Esquire, Matthew J. Sampson, Esquire, Richard A. Machonkin, Esquire, Patrick G. Gattari, Esquire, of McDONNELL BOEHNEN HULBERT & BERGHOFF LLP, Chicago, Illinois., Attorneys for Defendants.

**JUDGES:** Joseph J. Farnan Jr., District Judge.

**OPINIONBY:** Joseph J. Farnan Jr.

**OPINION:**

**MEMORANDUM OPINION**

**Joseph J. Farnan Jr., District Judge.**

This action was brought by Corning Incorporated and Artificial Sensing Instruments ASI AG (collectively "Corning") against SRU Biosystems, LLC, SRU Biosystems, Inc. and SRU Biosystems Holdings, LLC (collectively, "SRU") for infringement of *U.S. Patent No. 4,815,843* (the "*'843 patent*"). By previously issued Memorandum Opinion and Order, the Court concluded that the *'843 patent* was valid and that SRU [*2] literally infringed and induced infringement of the *'843 patent*. The Court then permitted the parties to supplement the record as it pertained to the issue of inequitable conduct. Supplemental briefing has been completed and the following issues remain for the Court's consideration: (1) whether the *'843 patent* is unenforceable due to inequitable conduct, (2) if the *'843* is unenforceable whether this is an exceptional case, and (3) whether Corning is entitled to a permanent injunction. This Memorandum Opinion and Order constitutes the Court's findings of fact and conclusions of law on the remaining issues. n1

n1 The factual background related to this litigation is set forth fully in the Court's November 15, 2005 Memorandum Opinion.

**DISCUSSION**

**I. Whether The *'843 Patent* Is Unenforceable Due To Inequitable Conduct**

A. Legal Standard

As a general matter, [HN1] patent applicants and their patent attorneys have a duty of candor, good faith and honesty in their dealings with the PTO. *37 C.F.R. § 1.56(a)* [*3] . The duty of candor, good faith and honesty includes the duty to submit truthful information and the duty to disclose to the PTO information known to the patent applicants or their attorneys which is material to the examination of the patent application. *Elk Corp. of*

2006 U.S. Dist. LEXIS 9197, *

*Dallas v. GAF Bldg. Materials Corp.*, 168 F.3d 28, 30 (Fed. Cir. 1999). Breach of the duty of candor, good faith and honesty may constitute inequitable conduct. *Id*. If it is established that a patent applicant engaged in inequitable conduct before the PTO, the entire patent application so procured is rendered unenforceable. *Kingsdown Medical Consultants v. Hollister Incorporated*, 863 F.2d 867, 877 (Fed. Cir. 1988).

[HN2] To establish inequitable conduct due to the failure to disclose material information or the submission of false information, the party raising the issue must prove by clear and convincing evidence that (1) the information is material; (2) the knowledge of this information and its materiality is chargeable to the patent applicant; and (3) the applicant's submission of false information or its failure to disclose this information resulted from an intent to mislead the PTO. [*4] *Id*. Information is deemed material if there is a substantial likelihood that a reasonable Examiner would have considered the material important in deciding whether to issue the application as a patent. See *Elk Corp.*, 168 F.3d at 31; *Mobil Oil Corp. v. Advanced Environmental Recycling Technologies, Inc.*, 869 F. Supp. 251, 254 (D. Del. 1994). Accordingly, a reference does not have to be prior art to be material information that must be disclosed to the PTO. See *37 C.F.R. § 1.56*; *Mobil Oil Corp.*, 869 F. Supp. at 255. Further, "an otherwise material reference need not be disclosed if it is merely cumulative of or less material than other references already disclosed." *Elk Corp.*, 168 F.3d at 31.

[HN3] Intent to deceive is rarely established by direct evidence, and therefore, may be inferred from the facts and circumstances surrounding the applicant's overall conduct. See *Molins PLC v. Textron, Inc.*, 48 F.3d 1172, 1180 (Fed. Cir. 1995). In determining whether the applicant's overall conduct evidences an intent to deceive the PTO, the Federal Circuit has emphasized that the challenged [*5] "conduct must be sufficient to require a finding of deceitful intent in the light of all the circumstances." *Kingsdown Medical Consultants*, 863 F.2d at 873. Once materiality and intent have been established, the court must conduct a balancing test to determine "whether the scales tilt to a conclusion that 'inequitable conduct' occurred." *Critikon, Inc. v. Becton Dickinson Vascular Access, Inc.*, 120 F.3d 1253, 1256 (Fed. Cir. 1997). Generally, the more material the omission, the less the degree of intent that must be shown to reach a conclusion of inequitable conduct. *Elk Corp.*, 168 F.3d at 32.

[HN4] The question of whether inequitable conduct occurred is equitable in nature. As such, the ultimate question of whether inequitable conduct occurred is committed to the sound discretion of the trial court. *Elk Corp.*, 168 F.3d at 30-31; *Kingsdown Medical Consultants*, 863 F.2d at 876.

B. The Parties' Contentions

SRU contends that the *'843 patent* is unenforceable as a result of inequitable conduct by Dr. Tiefenthaler and Mr. Markarian during the prosecution of the patent before the PTO. n2 Specifically, SRU [*6] contends that Dr. Tiefenthaler and Mr. Markarian amended the claims to recite a "chemo-responsive layer . . . [that] has a thickness of less than one wavelength" in order to overcome the objection of the Patent Examiner and distinguish their claims from the prior art. SRU contends that Dr. Tiefenthaler and Mr. Markarian intentionally deceived the PTO by falsely representing to the PTO in the Response To Office Action Mailed October 23, 1987 (the "Response"), that none of the cited prior art included this limitation. SRU contends that this misrepresentation was deliberate and material, and therefore the *'843 patent* is invalid as a result of inequitable conduct.

n2 In their original post-trial submissions, SRU does not specifically identify who is being charged with inequitable conduct. Rather, SRU refers to the inequitable conduct of "the applicants." Relying on Federal Circuit case law, SRU describes the applicants as the patentee and the attorney who prosecuted the patent application. The Court concludes that [HN5] allegations against "the applicants" are too general to withstand scrutiny under *Federal Rule of Civil Procedure 9(b)*. See e.g. *FMC Corp. v. Hennessy Indus., Inc.*, 836 F.2d 521, 525, n.5 (Fed. Cir. 1987) ("one attempting to prove inequitable conduct must prove by clear and convincing evidence that the conduct of the person charged was inequitable") (emphasis added); *Sun Microsystems, Inc. v. Dataram Corp.*, 1997 U.S. Dist. LEXIS 4557, 1997 WL 50272 (N.D. Cal. Feb. 4, 1997); *Advanced Cardiovascular Sys., Inc. v. Medtronic, Inc.*, 41 U.S.P.Q.2d 1770, 1775 (N.D. Cal. 1996) (requiring defendants to "'state the time, place and specific content of the false representation as well as the identities of the parties to the misrepresentation'") (quoting *Schreiber Dist. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986)). Rather, the Court must be able to discern the identity of the person charged with inequitable conduct.

SRU originally contended that "the natural inference" from Dr. Tiefenthaler's testimony was that the patent attorney who signed the Response was responsible for its falsification. D.I. 282 at 61. Based on this statement, it appeared to the Court that SRU was charging Mr. Markarian with

inequitable conduct. However, SRU has now taken the deposition testimony of Mr. Markarian, and in its supplemental post-trial submissions, SRU directs its allegations of inequitable conduct back to Dr. Tiefenthaler, alleging that Mr. Markarian must have acted at the direction of "someone like" Dr. Tiefenthaler, D.I. 301 at 9. Accordingly, for purposes of adjudicating the inequitable conduct issue at this juncture, the Court will assume that Plaintiff is charging both Dr. Tiefenthaler and Mr. Markarian with inequitable conduct, and therefore, the Court will examine the allegations as they pertain to these two individuals.

[*7]

In response, Corning contends that, read in context, the statements made in the Response to the Patent Examiner's objection contain no misrepresentations. Corning contends that, in any event, the prior art cited by the patent applicants was before the Patent Examiner, and the Patent Examiner is presumed to have read and understood this art such that he would not be misled as to its meaning. Corning also contends that any alleged misrepresentations were not material, and therefore, SRU cannot establish that the *'843 patent* is unenforceable.

C. Analysis

Reviewing the record and both the original and supplemental submissions related to this issue, the Court concludes that Corning has not established by clear and convincing evidence that the *'843 patent* is unenforceable due to inequitable conduct. As a threshold matter, the Court agrees with Corning that SRU has not proven that the statement highlighted by SRU in the Response is, in fact, a misrepresentation. Mr. Markarian, the attorney prosecuting the application, filed the Response adding new claims which included a limitation regarding the thickness of the chemo-responsive layer. PTX-2 at 117-126. Mr. Markarian stated in the [*8] Response that "the cited references do not disclose a chemo-responsive layer having a thickness less than one wavelength." Id. at 123. Mr. Markarian then continued with a detailed discussion of the Tiefenthaler paper, the only reference discussed by the Patent Examiner in the body of the October 23, 1987 Office Action rejecting the claims. After discussing the Tiefenthaler paper, Mr. Markarian then turned his attention to the remaining prior art, which was attached to the Office Action on a Form PTO-892, by stating:

> The remaining art listed in the Official Action and made of record have been carefully considered, but are not felt to be as relevant as the above discussed references and certainly, neither alone nor in combination, disclose or suggest applicants' device.

Id. at 126 (emphasis added).

SRU contends that the Sutherland reference which is listed on the Form PTO-892 discloses a chemo-responsive layer having a thickness of less than one wavelength, and therefore, Mr. Markarian's statement in the Response that "the cited references do not disclose a chemo-responsive layer having a thickness less than one wavelength thick" is a material misrepresentation [*9] of the prior art. The Court disagrees with SRU's reading of the Response. Based on the above highlighted text, it is apparent to the Court that Mr. Markarian addressed the remaining art on the Form PTO-892 separately and distinctly from the Tiefenthaler paper which was the central focus of both the initial Office Action and the subsequent Response. SRU contends that the use of the plural term "references" instead of the singular "reference" demonstrates that Mr. Markarian could not have been speaking solely about the Tiefenthaler paper when he said that "the cited references do not disclose a chemo-responsive layer having a thickness less than one wavelength." However, it is also apparent from the highlighted text above that Mr. Markarian referred to the Tiefenthaler paper using the plural term "references." The use of the plural term is not inconsistent with the fact that the Tiefenthaler paper is a single reference, because in the Office Action, numerous citations to the Tiefenthaler paper were made. Hence, it would not be inconceivable to the Court that Mr. Markarian would use the term "references" in the plural, to refer to those multiple citations. Thus, the Court cannot conclude, [*10] as SRU suggests, that Mr. Markarian's statements were clearly directed to the Sutherland reference, and therefore, the Court is not persuaded, as a threshold matter, that SRU has established, by clear and convincing evidence, a misrepresentation upon which to base a finding of inequitable conduct.

Nevertheless, even if the Court were to conclude that a misrepresentation was made, the Court is not persuaded that it was made with an intent to deceive the PTO. Mr. Markarian testified that he would not have intentionally deceived the PTO, and SRU has not presented the Court with evidence undermining Mr. Markarian's contention. SRU contends that Mr. Markarian could not have come up with the content of the Response on his own, and therefore, "the content of the Response must have come from someone familiar with the technology, someone like Dr. Tiefenthaler." D.I. 301 at 9. SRU contends that Dr. Tiefenthaler tried to "blame" Mr. Markarian at trial for the content of the Response and that this "finger-pointing" suggests that Dr. Tiefenthaler had something to

hide. SRU further states that "Dr. Tiefenthaler must have been involved in the prosecution of the *'843 patent*, as he was the inventor [*11] and also the founder and only employee of ASI." Id. at 6.

In the Court's view, SRU's argument is nothing more than unsupported, rank speculation. First, the Court does not read Dr. Tiefenthaler's trial testimony to suggest any finger-pointing with respect to the statement forming the basis of SRU's inequitable conduct charge. Rather, in discussing his "unhappiness" with the Response, Dr. Tiefenthaler was referring to an entirely separate part of the Response utilizing the term "binding layer" instead of "immobilized layer," which was the term preferred by Dr. Tiefenthaler. Tr. 1068:9-22. Further, SRU has no evidence to support its conjecture that Dr. Tiefenthaler must have participated in the Response. In 1988, the same year the Response was filed, ASI was formed with venture capital money from Oerlikon-Buhrle Holding AG company, and the *'843 patent* issued with Oerlikon-Buhrle Holding AG listed as the assignee. Tr. 1035:7-20; PTX-1 at 3. However, SRU never pursued any discovery to determine what, if any, role that this company or any other persons or entitles played in the prosecution of the *'843 patent*. Further, Dr. Tiefenthaler credibly testified at trial that he did not see [*12] the Response until after the issuance of the *'843 patent*. Tr. 1068:9-22.

SRU contends that is was not permitted to question Dr. Tiefenthaler regarding his degree of participation in the Response because the Court sustained Corning's objection to this line of questioning. However, the record indicates that SRU sought to raise this issue for the first time on redirect examination. Tr. 1069:19-1070:6. Thus, it was SRU's failure to pursue this line of questioning during SRU's deposition and direct examination testimony of Dr. Tiefenthaler that precluded it from exploring this issue and not any erroneous trial rulings by the Court. Indeed, SRU bears the burden of proving that Dr. Tiefenthaler engaged in inequitable conduct, and SRU has offered no evidence demonstrating what degree of participation, if any, Dr. Tiefenthaler had in the preparation of the Response.

SRU also tries to establish Dr. Tiefenthaler's participation through circumstantial evidence by contending that Mr. Markarian testified that he was a conduit that carried out the instructions of his clients and that Mr. Markarian did not have an understanding of the technology or the patent that would have enabled him to formulate [*13] the response on his own. In the Court's view, SRU's argument mischaracterizes and overstates Mr. Markarian's trial testimony. Mr. Markarian testified in generalities that he typically received input from a law firm or inventor when preparing a response to an office action; however, SRU failed to elicit from Mr. Markarian the level of detail of any such input. Markarian Dep. Tr. 43:3-11. Mr. Markarian also testified that he did not recall having a practice that uniformly applied in every patent case, and he could not recall getting any specific instructions from a client or representative of a client for the application that issued as the *'843 patent*. Markarian Dep. Tr. 54:17-55:4. In addition, the fact that Mr. Markarian did not understand the technology of the Sutherland reference in the time given to him at his deposition by SRU's counsel and over sixteen years after his involvement with the *'843 patent* does note establish that Mr. Markarian would have been unable to draft the Response on his own at the time it was filed. Markarian Dep. Tr. 52:4-11, 50:7-52:11.

Further, SRU has offered no evidence demonstrating that either Dr. Tiefenthaler or Mr. Markarian were aware that the Sutherland [*14] article disclosed a chemo-responsive layer having a thickness less than one wavelength. n3 SRU refers to the trial testimony of Corning's expert Dr. Pollock regarding the Sutherland reference; however, Dr. Pollock's trial testimony is not evidence of what Dr. Tiefenthaler or Mr. Markarian knew or were aware of when the Response was prepared. Further, the fact that SRU and its expert, Dr. Buckman, did not realize that the Sutherland article disclosed a chemo-responsive layer having a thickness of less than one wavelength until it was pointed out to them by Dr. Pollock, contradicts SRU's contention that Dr. Tiefenthaler must have known that the Sutherland reference disclosed this type of layer. n4 See e.g., *Advanced Cardiovascular Sys., Inc. v. Scimed Life Sys., 96 F. Supp. 2d 1006, 1016 (N.D. Cal. 2000)* (finding no intent to deceive by party charged with inequitable conduct even though he understood and believed the arguments he made to the patent examiner at the time, because "the claimed import of the sentence was not readily apparent even to the trained reader" as evidenced by fact that defendant's expert did not realize that the prior art in question contained the [*15] disclosure until well into the litigation when the attorneys brought it to his attention).

---

n3 SRU also failed to ask Dr. Tiefenthaler any questions regarding his intent in dealing with the PTO.

n4 Dr. Pollock submitted a Rebuttal Expert Report of Dr. Clifford R. Pollock on Validity on May 5, 2004. SRU represented to the Court that Dr. Pollock's report and subsequent deposition revealed to it the facts that form the basis for its inequitable conduct allegation. D.I. 140 at 1. This suggests to the Court, as Corning contends, that the full import of the Sutherland reference was not even identified by SRU or its expert until it

was pointed out to them by Dr. Pollock.

In sum, the Court concludes that SRU has failed to establish inequitable conduct by clear and convincing evidence. SRU has offered speculation and conjecture regarding alleged inequitable conduct and has failed to bolster that speculation with any concrete evidence. Having failed to establish inequitable conduct, the Court need not consider whether [*16] this case is exceptional within the meaning of *35 U.S.C. § 285*. Accordingly, the Court will enter judgment in favor of Corning and against SRU on its claim of inequitable conduct.

## II. Whether Corning Is Entitled To A Permanent Injunction

[HN6] Pursuant to *35 U.S.C. § 283*, the Court has discretion to grant injunctive relief. However, once infringing activity has been proven, an injunction should issue, unless there is sufficient reason to deny it. *W.L. Gore & Associates, Inc. v. Garlock, Inc., 842 F.2d 1275, 1281 (Fed. Cir.1988)*.

In this case, SRU contends that an injunction is inappropriate because Corning cannot establish significant harm. Specifically, SRU contends that it objected at trial to the evidence of monetary loss presented by Corning, because that evidence was not disclosed to SRU. SRU also points out that it presented an objection to this evidence in its Motion in Limine No. 7 and renewed its objection post-trial.

The Court has previously overruled SRU's post-trial objection and its related Motion in Limine concluding that this evidence was properly admitted during the trial. SRU has not offered any [*17] other reasons why an injunction should not issue given the Court's conclusions that SRU has literally infringed and induced infringement of the *'843 patent* and SRU has not proven that the *'843 patent* is invalid and unenforceable. Accordingly, the Court concludes that injunctive relief is appropriately awarded to Corning. Within ten days of the date of this Memorandum Opinion and accompanying Order, Corning shall submit, with notice to SRU, a proposed injunction and final judgment order for the Court to enter.

### CONCLUSION

For the reasons discussed, the Court concludes that SRU has not established by clear and convincing evidence that Corning committed inequitable conduct during the prosecution of *'843 patent*. Accordingly, the Court concludes that the *'843 patent* is not unenforceable. In addition, the Court concludes that Corning is entitled to a permanent injunction, and therefore, Corning shall submit to the Court, with notice to SRU, a proposed form of Order for both injunctive relief and final judgment within ten days of the date of this Memorandum Opinion and accompanying Order.

An appropriate Order will be entered.

### ORDER

At Wilmington, this 7th day of March [*18] 2006, for the reasons set forth in the Memorandum Opinion issued this date;

IT IS HEREBY ORDERED that:

1. *United States Patent No. 4,815,843* is not unenforceable due to inequitable conduct.

2. Plaintiffs shall submit, with notice to Defendants, a proposed final judgment order and injunction Order **within ten (10) days of the date of this Order.**

Joseph J. Farnan Jr.

UNITED STATES DISTRICT JUDGE