# EXHIBIT A

00071306.DOC

**Westlaw.**

Not Reported in F.Supp.2d                                                                                              Page 1

2001 WL 1002448 (D.Del.), 144 Lab.Cas. P 34,364

**(Cite as: 2001 WL 1002448 (D.Del.))**

▷

United States District Court, D. Delaware.
Leona TROTTER, Joan Smith, Honorio Perez,
Joanne Autry, Marilyn Gilliam,
Samantha Michelle Jones, and Diana Webster, on
behalf of themselves and all
others similarly situated, Plaintiffs,
v.
PERDUE FARMS, INC. and Retirement and
Benefits Committee of the Perdue
Supplemental Retirement Plan, Defendants.
No. CIV.A.99-893-RRM.

Aug. 16, 2001.

ORDER GRANTING CLASS CERTIFICATION

MCKELVIE, District J.

*1 This is an employment case. Plaintiffs Leona Trotter, Joan Smith, Honorio Perez, Joanne Autry, Marilyn Gilliam, Samantha Michelle Jones, Diana Webster, and Billie Jo Smiling are current or former employees of Perdue Farms, Inc. Perdue Farms, Inc. is a Maryland corporation that operates sixteen chicken processing plants in eight states including Delaware, Kentucky, Maryland, North Carolina, and South Carolina. Plaintiffs seek class certification for claims based on the Employee Retirement Income and Security Act, 29 U.S.C. §§ 1001, et seq., the Fair Labor Standards Act, 29 U.S.C. § 201, et seq., and the wage and hour laws of Delaware, Kentucky, Maryland, North Carolina, and South Carolina. According to plaintiffs, Perdue employs approximately 16,000 employees at its chicken processing facilities.

Plaintiffs contend that they, and all others similarly situated, are entitled to compensation for time spent obtaining, putting on, removing, and sanitizing required safety equipment. According to plaintiffs, under federal Occupational Safety and Health Administration ("OSHA") regulations and United States Department of Agriculture ("USDA") regulations, chicken processing employees are required to wear and use protective equipment when performing their job. Further, plaintiffs state that failure to follow Perdue's safety manual and sanitation policies, which require that chicken processing employees wear OSHA and USDA mandated safety and sanitary equipment, could lead to discipline and termination.

Despite these requirements, plaintiffs contend that Perdue does not compensate its production employees for the time it takes them to obtain, don, doff, and sanitize equipment. On December 12, 1999, plaintiffs filed suit in this court seeking damages under the FLSA and state wage and hour laws for the uncompensated time and under ERISA for failure to contribute to the Supplemental Retirement Plan.

On October 31, 2000, plaintiffs filed a motion for **class certification** under Federal Rule of Civil Procedure 23 and for collective action designation under the FLSA, 29 U.S.C. § 216(b). According to plaintiffs, the class meets the standard for certification under **Rule 23** because a) the class, and appropriate subclasses are too numerous for joinder; b) there are common question of law and fact among the class members; c) the class representatives are typical of the claims of the class and the subclasses; and d) the class representative will fairly and adequately represent the class.

On January 16, 2001, defendants filed an answering brief. Defendants first argued that plaintiffs cannot meet the standard for class certification because there is no commonality or typicality of the claims because throughout Perdue's chicken-processing plants, each department uses a different methodology for recording time and for obtaining, donning, doffing, and sanitizing supplies. Moreover, Perdue argues that the kind and type of equipment varies among the departments depending

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                                    Page 2
2001 WL 1002448 (D.Del.), 144 Lab.Cas. P 34,364
**(Cite as: 2001 WL 1002448 (D.Del.))**

on the function of the line worker. Lastly, defendants contend that differences in the physical layout of the plants means that some workers take more time to obtain and sanitize equipment than others. Defendants further argue that plaintiffs have not meet the standard for class certification because the plaintiffs are not adequate representatives.

*2 The Third Circuit has indicated that class actions should be looked upon favorably. *See Eisenberg v. Gagnon,* 766 F.2d 770, 785 (3d Cir.), *cert. denied, Weinstein v. Eisenberg,* 474 U.S. 946 (1985). The Supreme Court has also expressed its approval of class action proceedings, noting that "[c]lass actions serve an important function in our system of civil justice." *Gulf Oil Co. v. Bernard,* 452 U.S. 89, 99 (1981). In *Eisenberg,* 766 F.2d at 785, the Third Circuit went so far as to declare that " 'in a doubtful case ... any error, if there is to be one, should be committed in favor of allowing a class action.' " (citations omitted).

Accordingly, the standard for determining whether the class action prerequisites are met is rather lenient. In addition, in considering whether to certify a class, the court may not consider "whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits." *Eisen v. Carlisle & Jacqueline,* 417 U.S. 156, 178 (1974). That is, a motion for **class certification** the court is not to test the sufficiency of the merits of the case, but should look to whether the plaintiffs meet the standard under **Rule 23**.

In light of these standards, the court finds in this case defendants concerns about the difference between different chicken processing plants do not undermine the plaintiffs' rationale for bringing this case as a class action. There are often small variables between plaintiffs' claims in a class action. These differences should not necessarily derail a class action. In this case, if plaintiffs can succeed on the merits, they will have to justify a damage figure for each member of the class. That work will take into account the average time lost by each class member that is required to obtain, don, doff, and sanitize equipment.

Therefore, having considered the arguments for and against class certification, the court finds that the plaintiffs' claims meet the requirements of **Rule 23**. That is, the proposed class, and subclasses, are so numerous that joinder is impracticable. Moreover, despite potential differences in the equipment used and the time it takes for individuals to don, doff, and sanitize that equipment does not undermine the common questions of law and fact for each the proposed class. Lastly, plaintiffs have appropriately addressed potential differences in the state wage and hour laws by proposing subdivisions for the potential class.

For the reasons set forth above, it is HEREBY ORDERED:

1. Plaintiff's motion for **class certification** and collective action designation (D.I.79) is granted;

2. The class is defined as:

All persons who at any time from December 16, 1993, to the present have worked or continue to work as non-exempt hourly production employees of Perdue Farms, Inc. in any one or more of the chicken processing facilities operated by Perdue, and who were or are participating in the Perdue Supplemental Retirement Plan.

*3 3. The court also certifies the following opt-out subclasses:

*The "Delaware Subclass"*

All persons who at any time from the period from December 16, 1998, to the present have worked or continue to work as non-exempt hourly production employees of Perdue Farms, Inc. in any one or more of the chicken processing facilities operated by Perdue in the State of Delaware.

*The "Kentucky Subclass"*

All persons who at any time from the period from December 16, 1994, to the present have worked or continue to work as non-exempt hourly production employees of Perdue Farms, Inc. in any one or more

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                    Page 3
2001 WL 1002448 (D.Del.), 144 Lab.Cas. P 34,364
**(Cite as: 2001 WL 1002448 (D.Del.))**

of the chicken processing facilities operated by Perdue in the State of Kentucky.

*The "Maryland Subclass"*

All persons who at any time from the period from December 16, 1996, to the present have worked or continue to work as non-exempt hourly production employees of Perdue Farms, Inc. in any one or more of the chicken processing facilities operated by Perdue in the State of Maryland.

*The "North Carolina Subclass"*

All persons who at any time from the period from December 16, 1997, to the present have worked or continue to work as non-exempt hourly production employees of Perdue Farms, Inc. in any one or more of the chicken processing facilities operated by Perdue in the State of North Carolina.

*The "South Carolina Subclass"*

All persons who at any time from the period from February 14, 1997, to the present have worked or continue to work as non-exempt hourly production employees of Perdue Farms, Inc. in any one or more of the chicken processing facilities operated by Perdue in the State of South Carolina.

*The "FLSA Subclass"*

All persons who at any time from the period from December 16, 1996, to the present have worked or continue to work as non-exempt hourly production employees of Perdue Farms, Inc. in any one or more of the chicken processing facilities operated by Perdue.

2001 WL 1002448 (D.Del.), 144 Lab.Cas. P 34,364

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.