## IN THE UNITED STATES DISTRICT COURT
## IN AND FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| THOMAS A. EAMES, ROBERTA L. EAMES and TAMMY EAMES, on behalf of themselves and all others similarly situated, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | C.A. No. 04-CV-1324KAJ |
| v. | ) ) | |
| NATIONWIDE MUTUAL INSURANCE COMPANY, | ) ) ) | |
| Defendant. | ) ) | |

### AFFIDAVIT OF HEATHER R. JONES

Heather R. Jones, being duly sworn, deposes and says:

1. I am a paralegal employed by the law firm of Murphy Spadaro & Landon, counsel to the Eames plaintiffs herein. I make this affidavit on personal knowledge.

2. In March 2005, the Eames plaintiffs served document subpoenas on three of Nationwide's Delaware insurance agents -- Lisa Broadbent Insurance, Inc., Truitt Insurance Agency, Inc., and Glenn Deaton Agency, Inc. In April 2005, the Eames plaintiffs served another document subpoena on a fourth Nationwide insurance agency, Cynthia C. Hoban Agency of Frankford, Delaware.

3. Negotiations ensued between the Eames plaintiffs and attorney Robert J. Leoni, counsel to the four subpoenaed insurance agencies. On April 27, 2005, the Eames plaintiffs agreed to accept, in satisfaction of the subpoenas, a random production of thirty-five auto insurance files from each of the subpoenaed agencies. Under this agreement, therefore, the four agencies produced a total of 140 auto insurance files.

4. At the direction of attorney John S. Spadaro, counsel to the Eames plaintiffs, I have reviewed the 140 files produced by the four subpoenaed agents. Of those files, forty-eight appear to involve the sale or purported sale by Nationwide of the statutory minimum PIP limits of $15,000 per person and $30,000 per accident. In every instance but one, the agents characterized PIP as "full."

_____
Heather R. Jones

SWORN TO AND SUBSCRIBED before me, a Notary Public in and for the State and County aforesaid.

_____
NOTARY PUBLIC

My Commission Expires: 8-31-09

**DAWN M. WILLIAMSON**
**NOTARY PUBLIC**
**STATE OF DELAWARE**
**My Commission Exp. 8-31-09**

## IN THE UNITED STATES DISTRICT COURT
## IN AND FOR THE DISTRICT OF DELAWARE

THOMAS A. EAMES, ROBERTA L. EAMES )
and TAMMY EAMES, on behalf of )
themselves and all others )
similarly situated, )
)
                    Plaintiffs, )    C.A. No. 04-CV-1324KAJ
)
v. )
)
NATIONWIDE MUTUAL INSURANCE )
COMPANY, )
)
                    Defendant. )

## EAMES PLAINTIFFS' NOTICE OF DEPOSITION OF
## NATIONWIDE MUTUAL INSURANCE COMPANY

To:    Nicholas E. Skiles, Esq.
       Swartz Campbell LLC
       300 Delaware Avenue, Suite 1130
       P.O. Box 330
       Wilmington, DE 19899

**PLEASE TAKE NOTICE** that, pursuant to Federal Rule of Civil Procedure 30(b)(6),

counsel for plaintiffs Thomas A. Eames, Roberta L. Eames and Tammy Eames will take the

deposition(s) on oral examination of the defendant Nationwide Mutual Insurance Company by

one or more persons who consent to testify on its behalf with respect to matters known or

reasonably available to it, as set forth in the accompanying Appendix (titled "Appendix: Matters

for Examination"). The deposition(s) will proceed at the offices of Murphy Spadaro & Landon,

1011 Centre Road, Suite 210, Wilmington, Delaware 19805, beginning at 10:00 a.m. on

February 16, 2006, and continuing from day to day, during normal business hours, until

completed.

A74

A designee's testimony in response to this notice shall not limit the Eames plaintiffs' right to seek further testimony from the same person at a later date, pursuant to Federal Rule of Civil Procedure 30(b)(1); nor shall the conduct of any examination hereunder prejudice the Eames plaintiffs' right to additional testimony under Rule 30(b)(6) in any later phase of discovery.

Respectfully submitted,

MURPHY SPADARO & LANDON

/s/ John S. Spadaro
John S. Spadaro, No. 3155
1011 Centre Road, Suite 210
Wilmington, DE 19805
(302)472-8100

Attorneys for plaintiffs
Thomas A. Eames, Roberta L. Eames and Tammy
Eames (on behalf of themselves and all others
similarly situated)

January 20, 2006

## IN THE UNITED STATES DISTRICT COURT
## IN AND FOR THE DISTRICT OF DELAWARE

THOMAS A. EAMES, ROBERTA L. EAMES )
and TAMMY EAMES, on behalf of )
themselves and all others )
similarly situated, )
                               )
                     Plaintiffs, )     C.A. No. 04-CV-1324KAJ
                               )
v. )
                               )
NATIONWIDE MUTUAL INSURANCE )
COMPANY, )
                               )
                   Defendant. )

## APPENDIX: MATTERS FOR EXAMINATION

### Definitions

1. References to "you", "your" or "Nationwide" are to the defendant Nationwide Mutual

Insurance Company.

2. The term "PIP" refers to Personal Injury Protection or other first-party "no-fault"

insurance benefits for medical expenses, lost earnings or funeral expenses provided or to be

provided under policies of automobile insurance.

3. The term "document" shall have the broadest meaning permissible under the Federal

Rules of Civil Procedure, and shall include (without limitation) documents created or stored by

electronic means.

4. References to the "disputed practice" are to the characterization of any aspect of PIP

(whether it be limits of liability, deductibles or otherwise) as "full", where such characterization

is set forth in documents shared by Nationwide or its insurance agents with actual or prospective

purchasers of automobile insurance, and regardless of whether Nationwide contends that such characterization is innocent or lawful.

5. The term "loss ratio" means the ratio of an insurer's incurred losses and loss-adjustment expenses to its net earned premium.[1]

### Matters for Examination

1. Your organization and structure, including without limitation the organization of any subdivision, section, division, department, office or group that participated in the development, creation or implementation of the disputed practice, or currently has responsibility for oversight of the disputed practice.

2. The disputed practice, including without limitation:

a. The genesis, development, inception or origins of the disputed practice;

b. Any variations of the disputed practice employed by Nationwide or its agents in states ⋯ than Delaware;

c. Any questions, concerns or criticisms with respect to the disputed practice that have been raised at any time by regulators, consumer advocates, members of the legal profession, or other persons not employed or retained by Nationwide;

d. Any questions, concerns or criticisms with respect to the disputed practice that have been raised at any time by persons employed or retained by Nationwide; and

e. The identity of persons with knowledge of the matters described by this paragraph.

---

[1] For purposes of this Definition No. 5, the term "loss-adjustment expenses" refers to expenses incurred to investigate, process, handle or pay insurance claims; and the term "earned premium" refers to that part of any insurance premium to which an insurer is entitled under a contract of insurance, and by virtue of the passage of time.

3. The content, accuracy, veracity and completeness of deposition testimony given in this case by the Glenn Deaton Agency, Inc. through its designee, Glenn Deaton.

4. The content, accuracy, veracity and completeness of Nationwide's responses to written discovery propounded by the plaintiffs herein.

5. The completeness, efficacy and integrity of Nationwide's search for and production of documents responsive to written discovery propounded by the plaintiffs herein.

6. The nature and content of documents produced by Nationwide in the course of discovery herein.

7. The nature and content of documents produced by the Glenn Deaton Agency, Inc., the Truitt Insurance Agency, the Cynthia C. Hoban Agency, Lisa Broadbent Insurance, Inc. and Muncie Insurance & Financial Services, Inc. in the course of discovery herein.

8. Nationwide's loss ratio for PIP coverages written in Delaware, including without limitation the extent to which such loss ratio has historically been more or less favorable than the loss ratios for other automobile insurance coverage parts written by Nationwide in Delaware.

9. Nationwide's loss ratio for PIP coverages generally (without regard to the geographic limits of Delaware), including without limitation the extent to which such loss ratio has historically been more or less favorable than the loss ratios for other automobile insurance coverage parts written by Nationwide.

10. The approximate number of automobile insurance policies issued by Nationwide for vehicles registered in the State of Delaware for each year since 2001.

11. The approximate number of automobile insurance policies issued by Nationwide for vehicles registered in the State of Delaware, and which provide or purport to provide limits of

liability for PIP coverage of $15,000 per person and $30,000 per accident, for each year since 2001.

    12.  The number and identity of Nationwide's insurance agents in Delaware.

    13.  The existence *vel non*, location and organization of any documents that refer or relate to any of the Matters for Examination set forth herein, and the identity of any custodian for any such documents.

> Respectfully submitted,
>
> MURPHY SPADARO & LANDON
>
> /s/ John S. Spadaro
> John S. Spadaro, No. 3155
> 1011 Centre Road, Suite 210
> Wilmington, DE 19805
> (302)472-8100
>
> Attorneys for plaintiffs
> Thomas A. Eames, Roberta L. Eames and Tammy
> Eames (on behalf of themselves and all others
> similarly situated)

January 20, 2006

## IN THE UNITED STATES DISTRICT COURT
## IN AND FOR THE DISTRICT OF DELAWARE

THOMAS A. EAMES, ROBERTA L. EAMES )
and TAMMY EAMES, on behalf of )
themselves and all others )
similarly situated, )
      )
              Plaintiffs, )    C.A. No. 04-CV-1324KAJ
      )
v. )
      )
NATIONWIDE MUTUAL INSURANCE )
COMPANY, )
      )
              Defendant. )

### NOTICE OF SERVICE

     I hereby certify that on this date, I electronically filed the foregoing document with the Clerk

of the Court using CM/ECF which will send notification of such filing(s) to the following:

     Nicholas E. Skiles, Esq.
     Swartz Campbell LLC
     300 Delaware Avenue, Suite 1130
     P.O. Box 330
     Wilmington, DE 19899

              MURPHY SPADARO & LANDON

              /s/ John S. Spadaro
              John S. Spadaro, No. 3155
              1011 Centre Road, Suite 210
              Wilmington, DE 19805
              (302) 472-8100

              Attorneys for plaintiffs
              Thomas A. Eames, Roberta L. Eames and
              Tammy Eames (on behalf of themselves and
January 20, 2006           all others similarly situated)

THOMAS EAMES
April 7, 2006

---

**Page 1**

IN THE UNITED STATES DISTRICT COURT
IN AND FOR THE DISTRICT OF DELAWARE

* * *

THOMAS A. EAMES, ROBERTA L.       : CIVIL ACTION
EAMES and TAMMY EAMES, on         :
behalf of themselves and all      :
Others similarly situated         :
                                  :
            -vs-                  :
                                  : NO. 04-CV-1324-KAJ
NATIONWIDE MUTUAL INSURANCE        :
COMPANY                           :

* * *

Oral deposition of THOMAS EAMES, held
in the law offices of Swartz Campbell, LLC, 300
Delaware Avenue, Suite 1130, Wilmington, Delaware, on
Thursday, April 27, 2006, beginning at approximately
1:30 P.M., before Audree E. Burg, Certified Court
Reporter and Notary Public in and for the Commonwealth
of Pennsylvania.

* * *

KARASCH & ASSOCIATES
REGISTERED PROFESSIONAL REPORTERS
PENNSYLVANIA and DELAWARE
(800) 621-5689

---

**Page 2**

1  APPEARANCES:
2      MURPHY, SPODARO & LANDON
        BY: PHILIP EDWARDS, ESQUIRE
3      1011 Centre Road - Suite 210
        Wilmington, DE 19805
4
        -- Representing the Plaintiffs
5
        FOWLER, WHITE, BOGGS, BANKER
6      BY: JOHN P. MARINO, ESQUIRE
        50 North Laura Street - Suite 2200
7      Jacksonville, FL 32202
8      -- Representing the Defendant
9  ALSO PRESENT:
        Curtis Cheyney, Esquire
10     Yvone Chambers, Esquire
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

---

**Page 3**

1              INDEX
2
3  WITNESS:                    PAGE
4  THOMAS EAMES
5      BY: MR. MARINO            4, 41
6      BY: MR. EDWARDS           39
7
8              * * *
9
10             EXHIBITS
11 NUMBER     DESCRIPTION        PAGE
12 T. Eames-1  Response to Interrogatories 16
13 T. Eames-2  Statement          28
14 T. Eames-3  Amended Complaint   34
15
16
17
18
19
20
21
22
23
24
25

---

**Page 4**

1              (It is hereby stipulated and agreed
2  by and between counsel for the respective
3  parties that signing, sealing,
4  certification, and filing are waived; and
5  that all objections, except as to the form
6  of the question, are reserved until the time
7  of trial.)
8              THOMAS EAMES, after having been
9  first duly sworn, was examined and testified
10 as follows:
11             EXAMINATION
12 BY MR. MARINO:
13    Q.  We met earlier. I'm John Marino. I
14 represent the defendant, Nationwide Mutual Insurance
15 Company in this case. When I refer to Nationwide
16 during the deposition I'm referring to Nationwide
17 Mutual Insurance Company; do you understand that?
18    A.  Yes.
19    Q.  Next to me is Mr. Cheyney. He also
20 represents Nationwide. At the end of the table is
21 Yvonne Chambers. She's with the general counsel's
22 office with Nationwide.
23             Before we get started I will go over a
24 couple ground rules. If you don't hear or understand a
25 question I asked, I ask that you ask me to ask it again

---

1 (Pages 1 to 4)

THOMAS EAMES
April 7, 2006

| Page 5 |
|---|

1  or rephrase it.
2      A.  Yes.
3      Q.  If you answer a question I'm going to assume
4  that you understood it; okay?
5      A.  Yes.
6      Q.  You had your deposition taken at least once
7  before. That's my guess. The way it works I ask the
8  question, you answer. We can't talk over each other.
9  That is hard to do. The court reporter will have a
10  hard time taking down the testimony.
11      A.  Okay.
12      Q.  If you need a break, let me know.
13      A.  Okay.
14      Q.  Are you presently under any medication that
15  would affect your ability to testify?
16      A.  No.
17      Q.  Is there anything else that could affect your
18  ability to testify today?
19      A.  No.
20      Q.  What is your full name?
21      A.  Thomas Allen Eames.
22      Q.  Have you ever been known by any other names?
23      A.  No, other than Tom.
24      Q.  What is your date of birth?
25      A.  12/21/55.

| Page 7 |
|---|

1      Q.  You drive the forklift?
2      A.  Right.
3      Q.  Move them around and get them where they nee
4  to be?
5      A.  Right.
6      Q.  What is the business address?
7      A.  It is Lewes Georgetown Highway.
8      Q.  Is there an office there?
9      A.  Yes.
10      Q.  You don't spend much time at the office?
11      A.  No.
12      Q.  You don't go there often?
13      A.  No.
14      Q.  You go to job sites?
15      A.  Yes.
16      Q.  How long have you worked for them?
17      A.  I've been with that owner of the company
18  since December of 1995.
19      Q.  There was a change of ownership in December
20  of 1995?
21      A.  Right. Two to three different owners of the
22  company.
23      Q.  You worked for the prior owner too?
24      A.  Same group of guys since about 1974.
25      Q.  Doing the same kind of work?

| Page 6 |
|---|

1      Q.  Residence address?
2      A.  14908 Concord Road, Seaford, Delaware.
3      Q.  You live with your wife?
4      A.  Yes.
5      Q.  Your daughter Tammy lives with you?
6      A.  Yes.
7      Q.  Do any other children live there with you?
8      A.  No.
9      Q.  Are you employed?
10      A.  Yes.
11      Q.  What do you do?
12      A.  I drive a forklift and do labor work.
13      Q.  Are you employed by a company?
14      A.  Yes.
15      Q.  Who is that?
16      A.  Peninsula Masonry.
17      Q.  You do masonry work?
18      A.  Just drive the forklift and carry block.
19      Q.  You carry --
20      A.  Block. I don't lay block.
21      Q.  You carry it. Do you assist in laying it?
22      A.  No. I just stock block, brick. Whatever the
23  masons need I get what they need.
24      Q.  You bring the bricks to them?
25      A.  Right.

| Page 8 |
|---|

1      A.  Yes. Originally I started out as labor.
2  Then I went to pouring concrete. Now I'm back to
3  driving a forklift.
4      Q.  That's the type of work you have been doing
5  since 1974?
6      A.  Yes.
7      Q.  Did you graduate from high school?
8      A.  Yes.
9      Q.  When?
10      A.  1974.
11      Q.  You had one job since then?
12      A.  Yes.
13      Q.  Where did you graduate from?
14      A.  Sussex Central in Georgetown.
15      Q.  Did you ever attend any college courses?
16      A.  No.
17      Q.  Junior college?
18      A.  No.
19      Q.  Any other education or training?
20      A.  I went to vocational in high school.
21      Q.  Anything after high school?
22      A.  No.
23      Q.  No other types of courses?
24      A.  No.
25      Q.  Have you had your deposition taken before?

2 (Pages 5 to 8)

KARASCH & ASSOCIATES
800-621-5689

A142

THOMAS EAMES
April 7, 2006

Page 9

1    A. Yes.
2    Q. How many times?
3    A. Twice.
4    Q. Counting this time twice, or twice before?
5    A. Twice before this time.
6    Q. When was the last time you had your
7  deposition taken?
8    A. February, I think.
9    Q. Of this year?
10   A. Yes.
11   Q. Was that in connection with a lawsuit?
12   A. Yes.
13   Q. What lawsuit was that?
14   A. The auto accident.
15   Q. What auto accident?
16   A. The accident we had in 2003.
17   Q. Is that a lawsuit that you and your wife and
18  your daughter are plaintiffs in?
19   A. Yes, sir.
20   Q. You are suing somebody in connection with
21  injuries you received in that accident; correct?
22   A. Correct.
23   Q. Who are you suing?
24   A. Satchell. I can't remember the first name.
25   Q. Was he the driver of the other car?

Page 10

1    A. Yes.
2    Q. You are a plaintiff in that lawsuit?
3    A. Yes, sir.
4    Q. Who is your lawyer?
5    A. Clayton Bunning.
6    Q. Do you know who the lawyer is for the
7  defendant in that case?
8    A. I don't remember.
9    Q. A woman took your deposition?
10   A. Yes.
11   Q. Do you know the first name?
12   A. I believe it was Miranda.
13   Q. There was another time you had your
14  deposition taken?
15   A. Yes.
16   Q. When was that?
17   A. I can't remember the exact. Maybe 19 years
18  ago.
19   Q. In connection with a case, a lawsuit?
20   A. Yes.
21   Q. What kind of case was that?
22   A. A lawsuit against me.
23   Q. Somebody sued you?
24   A. Yes.
25   Q. What did they sue you for?

Page 11

1    A. Sexual harassment.
2    Q. Do you know about what year that was?
3        MR. EDWARDS: Objection. This is
4  outside certification issues. Relevance.
5  BY MR. MARINO:
6    Q. You were deposed once in that case?
7    A. Yes.
8    Q. Is that case over?
9    A. Yes.
10   Q. How was it resolved?
11   A. The company paid them off.
12   Q. Is that in Delaware?
13   A. Yes.
14       MR. EDWARDS: Continuing objection.
15       MR. MARINO: You can have a
16  continuing objection.
17  BY MR. MARINO:
18   Q. Other than earlier this year in connection
19  with the case where you were a plaintiff and some time
20  ago in connection with the other case where you were a
21  defendant, are there any other occasions where you gave
22  deposition testimony?
23   A. No.
24   Q. Have you ever testified at any trials?
25   A. No.

Page 12

1    Q. Were you giving testimony in any kind of
2  arbitration or other proceeding?
3    A. No.
4    Q. Other than the case you have going on now for
5  personal injuries and this prior case where you were a
6  defendant, had you ever been a party to any other
7  litigation?
8    A. No.
9    Q. Did you prepare for your deposition today?
10   A. Yes.
11   Q. What did you do to prepare?
12       MR. EDWARDS: Don't divulge the
13  content of the conversation or anything like
14  that.
15       You can say when, where. No
16  discussion as to what was discussed.
17       THE WITNESS: Mr. Spadaro yesterday.
18  BY MR. MARINO:
19   Q. Where did you meet?
20   A. Clayton Bunning's office in the conference
21  room.
22   Q. Who else was there?
23   A. My wife and Tammy.
24   Q. It was your wife, Tammy and Mr. Spadaro?
25   A. And Mr. Bunning came in.

3 (Pages 9 to 12)

THOMAS EAMES
April 7, 2006

Page 13

1    Q. Was Mr. Bunning there the whole time?
2    A. No.
3    Q. He came in and out?
4    A. Correct.
5    Q. How long did you meet?
6    A. Maybe an hour, maybe a little more.
7    Q. Were all three of you meeting with Mr.
8  Spadaro together or separate?
9    A. Together.
10    Q. You met personally with Mr. Spadaro
11  yesterday; correct?
12    A. Yes. .
13    Q. Prior to yesterday had you ever met Mr.
14  Spadaro before?
15    A. No.
16    Q. Prior to today had you ever met Mr. Edwards?
17    A. No.
18    Q. Prior to yesterday when you met Mr. Spadaro,
19  had you ever met anyone from Murphy, Spadaro and
20  Landon?
21    A. No.
22    Q. Had you ever talked with Mr. Spadaro prior to
23  yesterday, on the phone?
24    A. I might have talked to him one time. He
25  wanted to talk to my wife, not specifically me.

Page 14

1    Q. You may have talked to him one time but you
2  don't recall?
3    A. I always relay the message to my wife.
4    Q. Prior to yesterday other than Mr. Spadaro
5  have you talked with anyone from that law firm?
6    A. No.
7    Q. Did you review any documents when you
8  prepared yesterday?
9    A. Yes.
10    Q. What documents did you review?
11    A. I don't know what they are called. I looked
12  at some documents yesterday. I don't know the specific
13  name.
14    Q. How many did you look at?
15    A. At a couple.
16    Q. Around two?
17    A. We had a pile of stuff in front of us.
18  Three, four documents.
19    Q. Is there anything else other than what you
20  already testified to that you did to prepare for your
21  deposition today?
22    A. No.
23    Q. You are represented by a lawyer in this case;
24  aren't you?
25    A. Which case?

Page 15

1    Q. In this case, the case we're here on today?
2    A. Mr. Spadaro.
3    Q. He is your lawyer in this case?
4    A. Yes.
5    Q. Did you retain Mr. Spadaro to represent you
6  in this case?
7    A. Did I seek him out?
8    Q. Yes.
9    A. Not personally, no.
10    Q. How did he come to represent you in this
11  case?
12    A. Through Clayton Bunning.
13    Q. Do you know what a class action is?
14    A. Yes.
15    Q. What is it?
16    A. When an individual or group of people
17  represent other individuals with a similar situation.
18    Q. When did you learn that?
19    A. I think I pretty much know what it means, I
20  believe. I hear about it on TV all of the time.
21    Q. Do you know what it means to be a class
22  representative?
23    A. You are representing an individual with the
24  same situation that you are in.
25    Q. Do you know what duties are expected of a

Page 16

1  class representative?
2    A. Not really. Just to tell the truth.
3    Q. Did you have any other understanding of the
4  duties of a class representative?
5    A. Not really.
6    Q. Do you know what fiduciary duties are?
7    A. No.
8    Q. Have you ever heard that term before?
9    A. No.
10    Q. You are seeking to be a class representative
11  in this case; aren't you?
12    A. Yes.
13    Q. Have you ever sought to be a class
14  representative in any other case?
15    A. No.
16      MR. MARINO: Mark this as T.
17  Eames-1.
18      (Whereupon, Exhibit T. Eames-1 was
19  so marked for identification by the court
20  reporter, being Plaintiff's Response to
21  Interrogatories.)
22  BY MR. MARINO:
23    Q. I'm putting before you T. Eames-1. Are these
24  your interrogatory responses to Nationwide's
25  interrogatories?

4 (Pages 13 to 16)

KARASCH & ASSOCIATES
800-621-5689

THOMAS EAMES
April 7, 2006

**Page 17**

1    A. May I read it?
2    Q. Sure. Have you ever seen this before?
3    A. No.
4    Q. This morning is the first time you have seen
5  what is marked as exhibit one?
6    A. Yes.
7    Q. You were never asked to review this document
8  prior to February 14, 2006?
9    A. No.
10    Q. You were never asked to sign these answers to
11  interrogatories under oath, were you?
12    A. To the best of my recollection, no.
13    Q. Did anyone ever consult with you about these
14  answers to interrogatories prior to February 14, 2006?
15    A. I can't recall. I don't believe so.
16    Q. Look at interrogatory number three on page
17  three.
18      "Identify all past or present Nationwide
19  employees with whom you have personally communicated
20  regarding the insurance policy issued in the
21  complaint".
22      It makes some objections.
23      MR. EDWARDS: I make the same
24    objections here today that are in the
25    interrogatory answer.

**Page 18**

1  BY MR. MARINO:
2    Q. "Subject to and on information and belief Mr.
3  Eames states he may have communicated personally with
4  Linda Sanders and/or Keith Culver of the Culver
5  Insurance Company now known was Muncie Insurance and
6  Financial Services, Inc.".
7      Do you see that?
8    A. Yes.
9    Q. Why do you say on information and belief you
10  may have communicated personally with these people?
11      MR. EDWARDS: Objection.
12      THE WITNESS: Because I have spoken
13    to these people.
14  BY MR. MARINO:
15    Q. Why does the answer say on information and
16  belief you may have communicated?
17    A. The whole time we had insurance with
18  Nationwide I talked off and on with these people. I
19  guess that's the answer you are looking for. I don't
20  know.
21    Q. You have personally communicated with Linda
22  Sanders or Keith Culver?
23    A. Yes.
24    Q. Have you ever communicated with anyone else
25  from the Culver Insurance Agency other than those two?

**Page 19**

1    A. I don't believe so.
2    Q. Have you personally communicated with anyone
3  from Nationwide Mutual Insurance Company?
4    A. Those two individuals.
5    Q. Those two individuals. They are from Culver
6  Insurance Agency?
7    A. Yes.
8    Q. Have you ever personally communicated with
9  anybody from Nationwide Mutual Insurance Company?
10      MR. EDWARDS: Asked and answered.
11      THE WITNESS: They represent
12    Nationwide so I spoke to those two
13    individuals.
14  BY MR. MARINO:
15    Q. Other than those two individuals have you
16  ever personally communicated with anybody else
17  regarding insurance?
18    A. I don't believe so. Not that I can recall.
19    Q. When did you first communicate with Keith
20  Culver?
21    A. Probably when we first got our policy back in
22  1994.
23    Q. Do you recall when it was?
24    A. I don't recall the specific date, no. He was
25  the owner of the Nationwide company that we dealt with

**Page 20**

1    Q. Do you recall specifically talking to Keith
2  Culver in 1994?
3    A. I talked to both of them in 1994.
4    Q. You don't recall when, do you?
5    A. I don't remember the exact date, no.
6    Q. Do you remember how many times you talked to
7  either one of them?
8    A. No.
9    Q. Did you talk on the phone or in person?
10    A. In person and on the -- mostly in person. My
11  wife does all of the phone calls.
12    Q. You go places and she talks on the phone?
13    A. I prefer to do face-to-face.
14    Q. When was the first time you met Mr. Culver
15  face-to-face?
16    A. It was in 1994. I don't recall a specific
17  date or time.
18    Q. When you met Mr. Culver in 1994 was your wife
19  with you?
20    A. I don't recall.
21    Q. Do you specifically recall meeting Ms.
22  Sanders in 1994?
23    A. Yes. I met her in 1994. I don't recall the
24  specific date. Yes, I met her in 1994.
25    Q. Was your wife with you?

5 (Pages 17 to 20)

THOMAS EAMES
April 7, 2006

Page 21

1     A.  I don't believe so.
2     Q.  Tammy wasn't with you, was she?
3     A.  No.  It might be 1992.  I don't remember
4  exactly when.  Somewhere in that timeframe, I think.
5     Q.  It could be 1992?
6     A.  I don't know.
7     Q.  It was a long time ago, wasn't it?
8     A.  Right.
9     Q.  If you talked with Mr. Culver and Ms.
10  Sanders, is it your testimony that was in person?
11    A.  Yes.
12    Q.  Do you recall ever talking to one of them on
13  the phone?
14    A.  I don't recall.
15    Q.  Do you know how many times you may have met
16  with one or both of them in person?
17    A.  No.
18    Q.  Do you know why you may have met with one of
19  them in person?
20    A.  For auto insurance.
21    Q.  You went to the office?
22    A.  Yes.  I met Linda about auto insurance on a
23  truck I had.
24    Q.  That was in 1994?
25    A.  Somewhere around that date.

Page 22

1     Q.  How long did you meet with her?
2     A.  I don't remember.
3     Q.  Do you remember what was said during that
4  meeting?
5     A.  I wanted to purchase some auto insurance and
6  I wanted full coverage auto insurance.
7     Q.  Is it your testimony that you told Mrs.
8  Sanders you wanted full coverage auto insurance.
9     A.  Yes.
10    Q.  What does that mean?
11    A.  To me full coverage is if you are in an
12  accident everything is taken care of.  Your bills are
13  paid, whatever needs to be taken care of.  To me that's
14  full coverage auto insurance.
15        That's what I wanted to purchase.  That's
16  what I was led to believe I was purchasing, full
17  coverage, to cover all medical and that type of thing.
18  That is what I thought I was getting.
19    Q.  What types of auto insurance did you request?
20    A.  What do you mean?
21    Q.  Do you understand there might be different
22  types of auto coverages?
23    A.  Liability.  We always carried full coverage.
24    Q.  That's the type you thought you were
25  carrying, full coverage?

Page 23

1     A.  To me full coverage was anything that
2  happened.
3     Q.  Your understanding is if anything happened,
4  you got hurt or whatever, whatever you needed was
5  covered?
6     A.  Correct.  I specifically said that's what I
7  was looking for.  I was told that's what I was getting.
8     Q.  Who told you that?
9     A.  Linda.
10    Q.  Did Keith ever tell you that?
11    A.  I don't recall.  I talked to her about my
12  insurance policy.  Everything always was full coverage.
13    Q.  Exactly what did Linda tell you?  Could you
14  remember her specific words?
15    A.  Nobody remembers specific words.  I told her
16  I wanted full coverage, medical if anything happened
17  would be taken care of.
18        She told me that is what I was getting
19  would take care of my medical, or if something happened
20  everything would be taken care of.  I would not be left
21  like I was with this, out there hanging.  I thought I
22  had something.  It was misrepresented to me by the
23  agent.  I thought I was fully covered by what happened.
24    Q.  That was an oral communication?
25    A.  Yes.

Page 24

1     Q.  From Ms. Sanders?
2     A.  Yes.
3     Q.  You don't recall when it was?
4     A.  No.
5     Q.  Do you know specifically what year it was?
6     A.  Back in early 1990.
7     Q.  You don't recall specifically what was said,
8  do you?
9     A.  She told me I had full coverage.  I recall
10  that.  I asked her two or three times if this was full
11  coverage insurance.  She told me it was full coverage
12  insurance.
13    Q.  What types of coverages did you ask for?
14    A.  Whatever full coverage was.  Maybe I'm not
15  saying it right.
16    Q.  You testified that you went in and saw Ms.
17  Sanders and had an oral conversation with her?
18    A.  Correct.
19    Q.  You told her you wanted full coverage?
20    A.  Correct.
21    Q.  I want to know --
22    A.  -- on our policy we carry 100/300 on our
23  auto policy.  On the PIP end she led me to believe I
24  was getting the same thing, which to me was full
25  coverage.

6 (Pages 21 to 24)

THOMAS EAMES
April 7, 2006

Page 25

1      I'm carrying 100/300. I'm assuming I'm
2   getting 100/300 on PIP because she's telling me I got
3   full coverage. The other stuff to me up top is full
4   coverage.
5      Q. The other stuff up top?
6      A. Comprehensive, that other part in the auto
7   insurance. What I carry is 100/300.
8      Q. You are talking about the policy at issue in
9   this case; correct?
10     A. Yes. I thought she was giving me 100/300
11  because she told me I had full coverage. On my
12  paperwork it says full coverage.
13     Q. What paperwork?
14     A. Documents that we have gotten.
15     Q. What documents?
16     A. From Nationwide.
17     Q. What documents did you get from Nationwide?
18     A. The document that shows 100/300 for bodily
19  injury -- I don't remember the other things.
20     Q. This conversation you had with Ms. Sanders,
21  it was before you purchased the policy; is that
22  correct? You testified you were telling her wanted?
23        MR. EDWARDS: Objection to form.
24        THE WITNESS: You can't buy a policy
25  unless you tell the person what you are

Page 26

1   looking for. That's what I told her I was
2   looking for.
3   BY MR. MARINO:
4      Q. What does Ms. Sanders look like?
5      A. I don't remember. It's a long time ago.
6   Dirty blonde hair, I believe. Met her in Seaford.
7      Q. Where?
8      A. At their office.
9      Q. Where is that office?
10     A. I don't know the name of the street. I can
11  get there.
12     Q. Is there anybody else there during this
13  meeting?
14     A. I believe Keith might be back at his desk. I
15  think Keith was back at his desk. Her desk was in the
16  front.
17     Q. You were talking to her?
18     A. Yes.
19     Q. Did you take any notes of that conversation?
20     A. No.
21     Q. You don't have any notes of that
22  conversation, do you?
23     A. No.
24        MR. MARINO: Let's take a short break.
25        (A discussion was held off the

Page 27

1   record.)
2   BY MR. MARINO:
3      Q. Before you purchased the insurance policy
4   that we have been talking about at issue in this case
5   you had auto insurance with another company, didn't
6   you?
7      A. Yes.
8      Q. Who is that with?
9      A. I can't think of the guy's name.
10     Q. Why is it that you went to get insurance from
11  Culver Agency?
12     A. With the other company we had homeowner's.
13  We had a mobile home. That company no longer was going
14  to offer mobile home insurance. Nationwide offered
15  insurance that we needed to carry on our home.
16     Q. You switched your auto too?
17     A. We switched everything.
18     Q. You switched it all over?
19     A. Yes.
20     Q. Did you tell Linda Sanders that you wanted
21  the same coverage you had with the prior company?
22     A. On what?
23     Q. Auto?
24     A. I told her I wanted full coverage.
25     Q. Did you have full coverage before?

Page 28

1      A. I don't recall.
2      Q. You don't recall what coverage you had with
3   the other company?
4      A. No. I assume I had full, but I don't know.
5      Q. Do you know what PIP is?
6      A. Yes.
7      Q. What is it?
8      A. Personal injury protection.
9      Q. Do you know what A PIP is?
10     A. I don't think so.
11        MR. MARINO: Mark this as T.
12  Eames-2.
13        (Whereupon, Exhibit T. Eames-2 was
14  so marked for identification by the court
15  reporter, being Statement.)
16  BY MR. MARINO:
17     Q. Do you recognize this?
18     A. Yes.
19     Q. Is that your signature?
20     A. Yes.
21     Q. Signed 3/14/94?
22     A. Yes.
23     Q. Did you read it before you signed it?
24     A. I looked over it, yes.
25     Q. It looks like Ms. Sander's signature is also

7 (Pages 25 to 28)

THOMAS EAMES
April 7, 2006

Page 29

1  there?
2      A.  Yes.
3      Q.  Did you sign this document when you had this
4  meeting that you testified to earlier with Ms. Sanders?
5      A.  Yes, I believe so.
6      Q.  Did you ask Ms. Sanders any questions about
7  this document?
8      A.  I asked if this is giving me full coverage,
9  yes.  Minimum limit, check.  Then it's got 15 and 30.
10  I thought it was minimum plus another 15 and 30.  I
11  believe I was getting full coverage.
12      Q.  You were getting minimum limits plus an
13  additional 15 and 30?
14      A.  I thought that was bringing me up to full
15  coverage.
16      Q.  That was your understanding what full
17  coverage was?
18      A.  I questioned her on it and that's what she
19  told me it was.
20      Q.  Specifically what did she tell you?
21      A.  If this was supplying me full coverage on my
22  automobile.  She said it was full coverage.
23      Q.  Do you recall talking about deductibles?
24      A.  No.  If I knew this was only -- not giving me
25  full coverage that I thought it was I never would of

Page 30

1  gotten it.
2      Q.  You thought it was minimum limits plus an
3  additional $15,000 or $30,000 per person?
4      A.  She had over here, this was giving me full
5  coverage.  That's what I was led to believe, yes.  What
6  I thought I was getting.
7      Q.  You thought this full coverage that you
8  testified about was an additional $15,000 and $30,000?
9      A.  I assume it took me to whatever it was to get
10  to this point here, 100/300.
11      Q.  You assumed that was getting you to the point
12  of 100/300 under section six of this document?
13      A.  I thought this was giving me the same
14  coverage.
15      Q.  What are you talking about?
16      A.  I wanted full coverage.  I'm looking for
17  this.
18      Q.  This being?
19      A.  100/300.
20      Q.  Section six under underinsured vehicle
21  coverage?
22      A.  Same as up here.  100/300.  That's what I was
23  asking for.  That's what I thought I was getting.
24  That's what I was told I was getting for my PIP.
25      Q.  That 100/300 isn't in section three under no

Page 31

1  fault, is it?
2      A.  Over here?
3      Q.  It doesn't say 100/300 there.  It says 15/30
4  there?
5      A.  Right.
6      Q.  You read that?
7      A.  It is confusing.
8      Q.  Is it your testimony that you were confused
9  at that time or confused now?
10      A.  She checked minimum limits.  Additional
11  limits as shown in C with arrows, she wrote 15 and 30.
12  If it is just minimum I'm assuming she would check just
13  minimum.  With 15/30, I thought I was getting more
14  coverage than what I had.
15      Q.  You thought you were getting 15/30 in
16  addition to what you had?
17          MR. EDWARDS:  He already answered
18      that question.  Asked and answered.
19  BY MR. MARINO:
20      Q.  I'm not trying to upset you.
21      A.  The lady led me to believe -- what I said I
22  wanted was full coverage, that I was getting the full
23  amount of PIP.  Any medical, anything of that nature,
24  that I was covered.
25          If I knew that I was only going to get

Page 32

1  15/30 I would not take that coverage.  Why would I want
2  to insure someone else up to 100/300 and not myself?
3  To me that doesn't make no sense.
4      Q.  Your testimony is that you did review this
5  and sign this document; correct?
6      A.  Like anybody else.  I looked at it and signed
7  it.  I didn't pay much attention to it.  I assumed she
8  told me I was getting full PIP, that I was getting full
9  coverage, not minimum coverage.
10          She told me I was getting full PIP.  I
11  thought I was getting full coverage.  Medical, all of
12  that stuff was taken care of.
13      Q.  You thought whatever medical, whatever you
14  had everything would be taken care of?
15      A.  That's what she led me to believe.  I asked
16  her about it two or three times.  She said full
17  coverage.
18      Q.  You don't recall specifically what words were
19  said, do you?
20      A.  When I asked if I had full coverage she told
21  me yes.  That's specific enough.  I have to rely on her
22  as the agent to sell me what I'm looking for.
23      Q.  That was an oral communication; correct?
24      A.  Yes.
25      Q.  It was just you and her there?

8 (Pages 29 to 32)

THOMAS EAMES
April 7, 2006

Page 33

1    A. I believe just me and her.
2    Q. Do you recall specifically whether anybody
3  else was there?
4    A. Keith was at his desk. Her and I just
5  sitting there. I think it was just her and I. I can't
6  remember if Keith had another client or whatever. I
7  don't remember.
8    Q. This was obviously before you purchased the
9  policy; correct?
10   A. Right.
11   Q. You ultimately did purchase the policy?
12   A. Because I was told I was getting what I went
13 there to get. I was told I was -- yes, I did purchase
14 the policy.
15   Q. You got a copy in the mail; did you not?
16   A. I believe so. I'm sure I did.
17   Q. Did you read it when you got it in the mail?
18   A. I'm sure I did.
19   Q. Do you know when you got it in the mail?
20   A. No.
21   Q. Sometime in --
22   A. -- I don't remember specific dates.
23   Q. In 1994?
24   A. I'm sure, yes.
25       MR. MARINO: Mark this as T.

Page 34

1  Eames-3.
2      (Whereupon, Exhibit T. Eames-3 was
3  so marked for identification by the court
4  reporter, being Amended Complaint.)
5  BY MR. MARINO:
6    Q. This is the amended class action complaint.
7  Have you seen this document before?
8    A. I don't believe so.
9    Q. Do you know what a complaint is in a lawsuit?
10   A. A complaint against Nationwide.
11   Q. Are you aware that the first complaint you
12  brought in this case was dismissed by the court?
13   A. No.
14   Q. No one ever told you that?
15   A. No.
16   Q. Did anybody ever confer with you about the
17 filing of this amended class action complaint?
18   A. I haven't spoken about specifics, no.
19   Q. Who do you mean specifics?
20   A. I didn't know about the first one being
21 dismissed.
22   Q. You didn't know about the filing of the
23 second one either, did you?
24   A. I knew they were filing papers, but I don't
25 know -- other than that, I don't know.

Page 35

1    Q. You never reviewed any of those papers before
2  they got filed?
3    A. I don't believe so. I don't recall. I know
4  that we did receive some paperwork. We got so much
5  stuff that I don't recall every specific piece of paper
6  that we received.
7    Q. You get paperwork regarding your other
8  lawsuit too, don't you?
9    A. Yes.
10   Q. From Mr. Bunning?
11   A. Yes.
12   Q. Turn to exhibit A to your amended class
13 action complaint.
14   A. Okay.
15   Q. Have you ever seen this before?
16   A. Yes.
17   Q. When did you see it?
18   A. I believe back in 1994. It showed I had full
19 protection of my personal injury protection.
20   Q. When in 1994 did you see this?
21   A. Sometime after I went to Culver's for the
22 policy.
23   Q. After you went to Culver, is that your
24 testimony?
25   A. I believe. I believe it is in that

Page 36

1  timeframe. Yes, I have seen this before.
2    Q. You believe it was sometime in 1994; is that
3  correct?
4    A. It was so long ago. I'm sure it was back
5  around in that timeframe.
6    Q. It is your testimony you have seen this
7  specific document before?
8    A. Yes.
9    Q. You saw it sometime in 1994?
10   A. Yes.
11   Q. Do you know whether you saw this document in
12 1994?
13   A. I saw this document and it showed the full
14 which is why I think I have full coverage.
15   Q. When did you see it?
16   A. Back in 1994. I don't remember a specific
17 month or day. I'm a little frustrated.
18       MR. EDWARDS: Just respond to his
19 questions.
20 BY MR. MARINO:
21   Q. You don't recall when in 1994 you may have
22 seen this document; correct?
23   A. I believe it was after I talked to Linda
24 about my full coverage on the auto insurance.
25   Q. After that time?

9 (Pages 33 to 36)

THOMAS EAMES
April 27, 2006

Page 37

1    A.  I believe so, yes.
2    Q.  Do you know how you got it?
3    A.  I think in the mail.  I don't really recall
4  how I got it.  I know that I've seen this before.
5  Every one I received after that got that on there.
6    Q.  You didn't receive this -- when you met
7  personally with Ms. Sanders, the testimony about your
8  personal meeting with Ms. Sanders, you didn't receive
9  this document then, did you?
10   A.  I don't specifically recall what I left that
11 office with as far as paperwork.
12   Q.  Did you walk out of there with anything?
13   A.  I don't recall what I went out with.
14   Q.  You don't recall whether you left with
15 anything; correct?
16   A.  No, I don't recall whether I left with
17 anything.
18   Q.  You don't recall whether you saw any other
19 documents during that meeting, form A, exhibit 2 that
20 we've already talked about?
21   A.  I don't recall her showing me any other
22 paperwork.  I just don't remember.
23   Q.  Flip to exhibit B.  You are looking at
24 exhibit B to the amended complaint attached as exhibit
25 three to your deposition.

Page 38

1         Have you ever seen this document before?
2    A.  I saw it in the paperwork that I looked at
3  yesterday.
4    Q.  Before yesterday have you ever seen this
5  document before?
6    A.  I don't recall seeing any documents with all
7  of this stuff written on the bottom of it.
8    Q.  Do you recall seeing this?
9    A.  I don't recall seeing documents with this
10 handwritten stuff on the bottom.
11   Q.  Flip over to exhibit C.  I'm asking you to
12 look at exhibit C to the amended complaint attached as
13 exhibit three to your deposition.
14   A.  (Witness complies).
15   Q.  Have you seen this document before?
16   A.  Yes.
17   Q.  When did you see it?
18   A.  I saw it yesterday.
19   Q.  Other than yesterday have you ever seen this
20 document before?
21   A.  I'm sure I probably have.
22   Q.  You don't recall specifically, do you?
23   A.  Not specifically, no.
24   Q.  You didn't see this.  You know you didn't see
25 this document before June 17, 2003; is that correct?

Page 39

1    A.  Correct.
2        MR. EDWARDS:  Objection to form.
3        THE WITNESS:  This was bought after
4    the auto accident.
5  BY MR. MARINO:
6    Q.  After you had your meeting with Ms. Sanders
7  that you testified to earlier, between that time, when
8  the meeting ended and you got the copy of the policy
9  the mail, did you receive any other documents relating
10 to your insurance policy at issue in this case?
11   A.  I couldn't tell you.
12   Q.  Have you talked to anybody else about this
13 case other than what you already testified to?
14   A.  No.
15       MR. MARINO:  Let's take a short
16 break.
17       (A discussion was held off the
18 record.)
19       MR. MARINO:  I have no further
20 questions.
21       EXAMINATION
22 BY MR. EDWARDS:
23   Q.  You had testified before that you had a
24 conversation with Linda from Culver with regard to the
25 sale of the policy in this litigation?

Page 40

1    A.  Yes.
2    Q.  In that conversation you had with Linda, she
3  represented to you that you were getting full PIP
4  coverage?
5    A.  Yes.
6    Q.  That was in connection with the sale of the
7  policy in this litigation?
8        MR. MARINO:  Objection to form.
9        THE WITNESS:  Yes.
10 BY MR. EDWARDS:
11   Q.  Turn to T. Eames-3, exhibit A.  You had seen
12 this before?
13   A.  Yes.
14   Q.  When you saw this before the word full was
15 used on the line entry next to personal injury
16 protection coverage?
17   A.  Yes.
18   Q.  Is that in connection with the sale of
19 the policy at issue in the litigation?
20   A.  Yes.
21       MR. MARINO:  Objection to the form.
22 BY MR. EDWARDS:
23   Q.  You were asked questions about this document
24 which is marked as T. Eames-2.  You were asked
25 questions about this?

10 (Pages 37 to 40)

THOMAS EAMES
April 7, 2006

Page 41

1     A.   Yes.
2     Q.   You signed this document?
3     A.   Yes.
4     Q.   Am I correct this is saying that based on
5   prior testimony you testified that you signed this in
6   connection with the sale of the policy at issue in this
7   litigation?
8     A.   Yes.
9     Q.   When you saw this document back when dealing
10  with Linda you believe you were getting full PIP
11  coverage after you signed that?
12    A.   Yes.
13    Q.   Full PIP coverage was 100/300, you believe?
14         MR. MARINO: Objection to form.
15         THE WITNESS: Yes.
16         MR. EDWARDS: No further questions.
17         RE-EXAMINATION
18  BY MR. MARINO:
19    Q.   The conversation that you testified earlier
20  with Ms. Sanders and Mr. Edwards asked you about, that
21  was an oral conversation?
22    A.   Yes.
23    Q.   You didn't keep notes?
24    A.   No.
25    Q.   How long did that conversation last?

Page 42

1     A.   I don't know.  Probably a half hour or so.
2   Trying to do the policy, I guess.  I don't recall a
3   timeframe.  It took a little time to do the paperwork.
4     Q.   You don't recall the specific words that were
5   used.
6          Do you specifically recall the words that
7   he used?
8     A.   Not word for word, no.
9     Q.   Mr. Edwards also asked you about exhibit A to
10  T. Eames-3.
11         You testified earlier that you didn't
12  recall specifically when you saw this document;
13  correct?
14    A.   Not a specific date.  I know I saw the
15  document.  Can I say it was three weeks after I talked
16  to Linda?  No, I can't say that.
17    Q.   It was after you talked to Linda?
18    A.   I believe so, yes.
19         MR. MARINO: Nothing further.  I
20  reserve the right to depose this witness in
21  the merit phase, should we get there.
22         MR. EDWARDS: Nothing further.
23         (Whereupon, the deposition was
24  concluded at 3:12 p.m.)
25

Page 43

1              C E R T I F I C A T E
2
3
4        I, AUDREE E. BURG, a Court Reporter
5   in and for the Commonwealth of Pennsylvania,
6   hereby certify that the foregoing is a true
7   and accurate transcript of the deposition of
8   said witness who was first duly sworn by me
9   on the date and place hereinbefore set
10  forth.
11
12       I FURTHER CERTIFY that I am neither
13  attorney nor counsel for, nor related to or
14  employed by, any of the parties to the
15  action in which this deposition was taken,
16  and further that I am not a relative or
17  employee of any attorney or counsel employed
18  in this action, nor am I financially
19  interested in this case.
20
21
22
23              AUDREE E. BURG
                 Court Reporter
24
25

11 (Pages 41 to 43)

THOMAS EAMES
April 7, 2006

**A**

ability 5:15,18
about 7:24 11:2
  15:20 17:13 21:22
  23:11 25:8 27:4
  29:6,23 30:8,15
  32:16 34:16,18,20
  34:22 36:24 37:7
  37:20 39:12 40:23
  40:25 41:20 42:9
accident 9:14,15,16
  9:21 22:12 39:4
accurate 43:7
action 1:4 15:13
  34:6,17 35:13
  43:15,18
addition 31:16
additional 29:13
  30:3,8 31:10
address 6:1 7:6
affect 5:15,17
after 4:8 8:21 35:21
  35:23 36:23,25
  37:5 39:3,6 41:11
  42:15,17
again 4:25
against 10:22 34:10
Agency 18:25 19:6
  27:11
agent 23:23 32:22
  go 10:18 11:20
  21:7 26:5 36:4
agreed 4:1
Allen 5:21
already 14:20
  1:17 37:20 39:13
always 14:3 22:23
  23:12
amended 3:14 34:4
  34:6,17 35:12
  37:24 38:12
amount 31:23
and/or 18:4
another 10:13 27:5
  29:10 33:6
  ver 5:3,8 17:25
  16:15,19

answered 19:10
  31:17,18
answers 17:10,14
anybody 19:9,16
  26:12 32:6 33:2
  34:16 39:12
anyone 13:19 14:5
  17:13 18:24 19:2
anything 5:17 8:21
  12:13 14:19 23:1
  23:3,16 31:23
  37:12,15,17
APPEARANCES
  2:1
approximately 1:15
April 1:15
arbitration 12:2
around 7:3 14:16
  21:25 36:5
arrows 31:11
asked 4:25 17:7,10
  19:10 24:10 29:8
  31:18 32:15,20
  40:23,24 41:20
  42:9
asking 30:23 38:11
assist 6:21
ASSOCIATES
  1:23
assume 5:3 28:4
  30:9
assumed 30:11 32:7
assuming 25:1
  31:12
attached 37:24
  38:12
attend 8:15
attention 32:7
attorney 43:13,17
Audree 1:16 43:4
  43:22
auto 9:14,15 21:20
  21:22 22:5,6,8,14
  22:19,22 24:23
  25:6 27:5,16,23
  36:24 39:4
automobile 29:22
Avenue 1:14

aware 34:11

**B**

B 37:23,24
back 8:2 19:21 24:6
  26:14,15 35:18
  36:4,16 41:9
BANKER 2:5
based 41:4
before 1:16 4:23
  5:7 8:25 9:4,5
  13:14 16:8,23
  17:2 25:21 27:3
  27:25 28:23 33:8
  34:7 35:1,15 36:1
  36:7 37:4 38:1,4,5
  38:15,20,25 39:23
  40:12,14
beginning 1:15
behalf 1:5
being 16:20 28:15
  30:18 34:4,20
belief 18:2,9,16
believe 10:12 15:20
  17:15 19:1,18
  21:1 22:16 24:23
  26:6,14 29:5,11
  30:5 31:21 32:15
  33:1,16 34:8 35:3
  35:18,25,25 36:2
  36:23 37:1 41:10
  41:13 42:18
best 17:12
between 4:2 39:7
bills 22:12
birth 5:24
block 6:18,20,22,22
blonde 26:6
bodily 25:18
BOGGS 2:5
both 20:3 21:16
bottom 38:7,10
bought 39:3
break 5:12 26:24
  39:16
brick 6:22
bricks 6:24
bring 6:24

bringing 29:14
brought 34:12
Bunning 10:5 12:25
  13:1 15:12 35:10
Bunning's 12:20
Burg 1:16 43:4,22
business 7:6
buy 25:24

**C**

C 31:11 38:11,12
  43:1,1
called 14:11
calls 20:11
came 12:25 13:3
Campbell 1:13
car 9:25
care 22:12,13 23:17
  23:19,20 32:12,14
carried 22:23
carry 6:18,19,21
  24:22 25:7 27:15
carrying 22:25 25:1
case 4:15 10:7,19
  10:21 11:6,8,19
  11:20 12:4,5
  14:23,25 15:1,1,3
  15:6,11 16:11,14
  25:9 27:4 34:12
  39:10,13 43:19
Central 8:14
Centre 2:3
certification 4:4
  11:4
Certified 1:16
certify 43:6,12
Chambers 2:10
  4:21
change 7:19
check 29:9 31:12
checked 31:10
Cheyney 2:9 4:19
children 6:7
CIVIL 1:4
class 15:13,21 16:1
  16:4,10,13 34:6
  34:17 35:12
Clayton 10:5 12:20

15:12
client 33:6
college 8:15,17
come 15:10
Commonwealth
  1:17 43:5
communicate 19:19
communicated
  17:19 18:3,10,16
  18:21,24 19:2,8
  19:16
communication
  23:24 32:23
company 1:8 4:15
  4:17 6:13 7:17,22
  11:11 18:5 19:3,9
  19:25 27:5,12,13
  27:21 28:3
complaint 3:14
  17:21 34:4,6,9,10
  34:11,17 35:13
  37:24 38:12
complies 38:14
Comprehensive
  25:6
concluded 42:24
Concord 6:2
concrete 8:2
confer 34:16
conference 2:10
confused 31:8,9
confusing 31:7
connection 9:1,20
  10:19 11:18,20
  40:6,18 41:6
consult 17:13
content 12:13
continuing 11:14
  11:16
conversation 12:13
  24:17 25:20 26:19
  26:22 39:24 40:2
  41:19,21,25
copy 33:15 39:8
correct 9:21,22
  13:4,11 23:6
  24:18,20 25:9,22
  32:5,23 33:9 36:3

THOMAS EAMES
April 7, 2006

36:22 37:15 38:25
39:1 41:4 42:13
counsel 4:2 43:13
35:17
counsel's 4:21
Counting 9:4
couple 4:24 14:15
courses 8:15,23
court 1:1,16 5:9
16:19 28:14 34:3
34:12 43:4,23
cover 22:17
coverage 22:6,8,11
22:14,17,23,25
23:1,12,16 24:9
24:11,11,14,19,25
25:3,4,11,12
27:21,24,25 28:2
28:8,11,15,17,21
29:22,25 30:5,7
30:14,16,21 31:14
31:22 32:1,9,9,11
32:17,20 36:14,24
37:16 41:11,13
coverages 22:22
24:13
covered 23:5,23
31:24
Culver 18:4,4,22,25
19:5,20 20:2,14
20:18 21:9 27:11
35:23 39:24
Culver's 35:21
curtis 2:9

___ D ___
Ca... 5:24 19:24
20:5,17,24 21:25
42:14 43:9
dates 33:22
daughter 6:5 9:18
day 36:17
DE 2:3
dealing 41:9
dealt 19:25
December 7:18,19
Ir... actibles 29:23
defendant 2:8 4:14

10:7 11:21 12:6
Delaware 1:1,14,14
1:24 6:2 11:12
depose 42:20
deposed 11:6
deposition 1:12
4:16 5:6 8:25 9:7
10:9,14 11:22
12:9 14:21 37:25
38:13 42:23 43:7
43:15
DESCRIPTION
3:11
desk 26:14,15,15
33:4
different 7:21
22:21
Dirty 26:6
discussed 12:16
discussion 12:16
26:25 39:17
dismissed 34:12,21
DISTRICT 1:1,1
divulge 12:12
document 17:7
25:18 29:3,7
30:12 32:5 34:7
36:7,11,13,22
37:9 38:1,5,15,20
38:25 40:23 41:2
41:9 42:12,15
documents 14:7,10
14:12,18 25:14,15
25:17 37:19 38:6
38:9 39:9
doing 7:25 8:4
down 5:10
drive 6:12,18 7:1
driver 9:25
driving 8:3
duly 4:9 43:8
during 4:16 22:3
26:12 37:19
duties 15:25 16:4,6

___ E ___
E 1:16 43:1,1,4,22
each 5:8

Eames 1:4,5,5,12
3:4 4:8 5:21 18:3
Eames-1 3:12 16:17
16:18,23
Eames-2 3:13 28:12
28:13 40:24
Eames-3 3:14 34:1
34:2 40:11 42:10
earlier 4:13 11:18
29:4 39:7 41:19
42:11
early 24:6
education 8:19
Edwards 2:2 3:6
11:3,14 12:12
13:16 17:23 18:11
19:10 25:23 31:17
36:18 39:2,22
40:10,22 41:16,20
42:9,22
either 20:7 34:23
employed 6:9,13
43:14,17
employee 43:17
employees 17:19
end 4:20 24:23
ended 39:8
enough 32:21
entry 40:15
Esquire 2:2,6,9,10
ever 5:22 8:15
11:24 12:6 13:13
13:16,19,22 16:8
16:13 17:2,13
18:24 19:8,16
21:12 23:10 34:14
34:16 35:15 38:1
38:4,19
every 35:5 37:5
everything 22:12
23:12,20 27:17
32:14
exact 10:17 20:5
exactly 21:4 23:13
EXAMINATION
4:11 39:21
examined 4:9
except 4:5

exhibit 16:18 17:5
28:13 34:2 35:12
37:19,23,24,24
38:11,12,13 40:11
42:9
EXHIBITS 3:10
expected 15:25

___ F ___
F 43:1
face-to-face 20:13
20:15
far 37:11
fault 31:1
February 9:8 17:8
17:14
fiduciary 16:6
filed 35:2
filing 4:4 34:17,22
34:24
Financial 18:6
financially 43:18
firm 14:5
first 4:9 9:24 10:11
17:4 19:19,21
20:14 34:11,20
43:8
FL 2:7
Flip 37:23 38:11
follows 4:10
foregoing 43:6
forklift 6:12,18 7:1
8:3
form 4:5 25:23
37:19 39:2 40:8
40:21 41:14
forth 43:10
four 14:18
FOWLER 2:5
from 8:7,13 13:19
14:5 18:25 19:3,5
19:9 24:1 25:16
25:17 27:10 35:10
39:24
front 14:17 26:16
frustrated 36:17
full 5:20 22:6,8,11
22:14,16,23,25

23:1,12,16 24:9
24:10,11,14,19,24
25:3,3,11,12
27:24,25 28:4
29:8,11,14,16,21
29:22,25 30:4,7
30:16 31:22,22
32:8,8,10,11,16
32:20 35:18 36:13
36:14,24 40:3,14
41:10,13
fully 23:23
further 39:19 41:16
42:19,22 43:12,16

___ G ___
gave 11:21
general 4:21
Georgetown 7:7
8:14
getting 22:18 23:7
23:18 24:24 25:2
29:11,12 30:6,11
30:23,24 31:13,15
31:22 32:8,8,10
32:11 33:12 40:3
41:10
giving 12:1 25:10
29:8,24 30:4,13
go 4:23 7:12,14
20:12
going 5:3 12:4
27:13 31:25
gotten 25:14 30:1
graduate 8:7,13
ground 4:24
group 7:24 15:16
guess 5:7 18:19
42:2
guys 7:24
guy's 27:9

___ H ___
hair 26:6
half 42:1
handwritten 38:10
hanging 23:21
happened 23:2,3,16

23:19,23
harassment 11:1
hard 5:9,10
having 4:8
hear 4:24 15:20
heard 16:8
held 1:12 26:25
  39:17
her 20:23,24 22:1
  23:11,14,15 24:10
  24:17,19 25:22
  26:1,6,15,17
  27:24 29:18 32:16
  32:21,25 33:1,4,5
  37:21
hereinbefore 43:9
high 8:7,20,21
Highway 7:7
him 13:24 14:1
  15:7
home 27:13,14,15
homeowner's 27:12
hour 13:6 42:1
hurt 23:4

**I**

identification 16:19
  28:14 34:3
identify 17:18
  18:6
INDEX 3:1
individual 15:16,23
individuals 15:17
  19:4,5,13,15
information 18:2,9
  18:15
injuries 9:21 12:5
injury 25:19 28:8
  35:19 40:15
insurance 1:8 4:14
  4:17 17:20 18:5,5
  18:17,25 19:3,6,9
  19:17 21:20,22
  22:5,6,8,14,19
  23:12 24:11,12
  25:7 27:3,5,10,14
  27:15 36:24 39:10
insure 32:2

interested 43:19
interrogatories
  3:12 16:21,25
  17:11,14
interrogatory
  16:24 17:16,25
issue 25:8 27:4
  39:10 40:19 41:6
issued 17:20
issues 11:4

**J**

Jacksonville 2:7
job 7:14 8:11
John 2:6 4:13
June 38:25
Junior 8:17
just 6:18,22 16:2
  31:12,12 32:25
  33:1,4,5 36:18
  37:22

**K**

KARASCH 1:23
keep 41:23
Keith 18:4,22 19:19
  20:1 23:10 26:14
  26:15 33:4,6
kind 7:25 10:21
  12:1
knew 29:24 31:25
  34:24
know 5:12 10:6,11
  11:2 14:11,12
  15:13,19,21,25
  16:6 18:20 21:6
  21:15,18 24:5,21
  26:10 28:4,5,9
  33:19 34:9,20,22
  34:25,25 35:3
  36:11 37:2,4
  38:24 42:1,14
known 5:22 18:5

**L**

L 1:4
labor 6:12 8:1
lady 31:21

Landon 2:2 13:20
last 9:6 41:25
Laura 2:6
law 1:13 14:5
lawsuit 9:11,13,17
  10:2,19,22 34:9
  35:8
lawyer 10:4,6 14:23
  15:3
lay 6:20
laying 6:21
learn 15:18
least 5:6
led 22:16 24:23
  30:5 31:21 32:15
left 23:20 37:10,14
  37:16
let 5:12
Let's 26:24 39:15
Lewes 7:7
Liability 22:23
like 12:13 23:21
  26:4 28:25 32:6
limit 29:9
limits 29:12 30:2
  31:10,11
Linda 18:4,21
  21:22 23:9,13
  27:20 36:23 39:24
  40:2 41:10 42:16
  42:17
line 40:15
litigation 12:7
  39:25 40:7,19
  41:7
little 13:6 36:17
  42:3
live 6:3,7
lives 6:5
LLC 1:13
long 7:16 13:5 21:7
  22:1 26:5 36:4
  41:25
longer 27:13
look 14:14 17:16
  26:4 38:12
looked 14:11 28:24
  32:6 38:2

looking 18:19 23:7
  26:1,2 30:16
  32:22 37:23
looks 28:25

**M**

mail 33:15,17,19
  37:3 39:9
make 17:23 32:3
makes 17:22
many 9:2 14:14
  20:6 21:15
Marino 2:6 3:5
  4:12,13 11:5,15
  11:17 12:18 16:16
  16:22 18:1,14
  19:14 26:3,24
  27:2 28:11,16
  31:19 33:25 34:5
  36:20 39:5,15,19
  40:8,21 41:14,18
  42:19
Mark 16:16 28:11
  33:25
marked 16:19 17:5
  28:14 34:3 40:24
masonry 6:16,17
masons 6:23
may 14:1 17:1 18:3
  18:10,16 21:15,18
  36:21
maybe 10:17 13:6,6
  24:14
mean 22:10,20
  34:19
means 15:19,21
medical 22:17
  23:16,19 31:23
  32:11,13
medication 5:14
meet 12:19 13:5
  22:1
meeting 13:7 20:21
  22:4 26:13 29:4
  37:8,19 39:6,8
merit 42:21
message 14:3
met 4:13 13:10,13

13:16,18,19 20:14
  20:18,23,24 21:15
  21:18,22 26:6
  37:6
might 13:24 21:3
  22:21 26:14
minimum 29:9,10
  29:12 30:2 31:10
  31:12,13 32:9
Miranda 10:12
misrepresented
  23:22
mobile 27:13,14
month 36:17
more 13:6 31:13
morning 17:4
mostly 20:10
Move 7:3
much 7:10 15:19
  32:7 35:4
Muncie 18:5
Murphy 2:2 13:19
Mutual 1:8 4:14,17
  19:3,9
myself 32:2

**N**

name 5:20 9:24
  10:11 14:13 26:10
  27:9
names 5:22
Nationwide 1:8
  4:14,15,16,20,22
  17:18 18:18 19:3
  19:9,12,25 25:16
  25:17 27:14 34:10
Nationwide's 16:24
nature 31:23
need 5:12 6:23,23
  7:3
needed 23:4 27:15
needs 22:13
neither 43:12
never 17:7,10 29:25
  35:1
next 4:19 40:15
Nobody 23:15
North 2:6

THOMAS EAMES
April 7, 2006

Page 4

Notary 1:17
notes 26:19,21
41:23
Nothing 42:19,22
number 3:11 17:16

**O**

oath 17:11
objection 11:3,14
11:16 18:11 25:23
39:2 40:8,21
41:14
objections 4:5
17:22,24
obviously 33:8
occasions 11:21
off 11:11 18:18
26:25 39:17
er 27:14
offered 27:14
office 4:22 7:8,10
12:20 21:21 26:8
26:9 37:11
s 1:13
often 7:12
okay 5:4,11,13
35:14
once 5:6 11:6
8:11 13:24 14:1
17:5 20:7 21:12
21:16,18 34:14,20
34:23 37:5
only 29:24 31:25
oral 1:12 23:24
17 32:23 41:21
Originally 8:1
other 5:8,22,23 6:7
8 19,23 9:25
11:18,20,21 12:2
12:4,6 14:4,19
15:17 16:3,14
18:25 19:15 25:3
25:5,6,19 27:12
28:3 34:25 35:7
37:18,21 38:19
9,13
Others 1:6
out 8:1 13:3 15:7

23:21 37:12,13
outside 11:4
over 4:23 5:8 11:8
27:18 28:24 30:4
31:2 38:11
owner 7:17,23
19:25
owners 7:21
ownership 7:19

**P**

P 2:6
page 3:3,11 17:16
paid 11:11 22:13
paper 35:5
papers 34:24 35:1
paperwork 25:12
25:13 35:4,7
37:11,22 38:2
42:3
part 25:6
parties 4:3 43:14
party 12:6
past 17:18
pay 32:7
Peninsula 6:16
Pennsylvania 1:18
1:24 43:5
people 15:16 18:10
18:13,18
per 30:3
person 20:9,10,10
21:10,16,19 25:25
30:3
personal 12:5 28:8
35:19 37:8 40:15
personally 13:10
15:9 17:19 18:3
18:10,21 19:2,8
19:16 37:7
phase 42:21
PHILIP 2:2
phone 13:23 20:9
20:11,12 21:13
piece 35:5
pile 14:17
PIP 24:23 25:2 28:5
28:9 30:24 31:23

32:8,10 40:3
41:10,13
place 43:9
places 20:12
plaintiff 10:2 11:19
plaintiffs 2:4 9:18
Plaintiff's 16:20
plus 29:10,12 30:2
point 30:10,11
policy 17:20 19:21
23:12 24:22,23
25:8,21,24 27:3
33:9,11,14 35:22
39:8,10,25 40:7
40:19 41:6 42:2
pouring 8:2
prefer 20:13
prepare 12:9,11
14:20
prepared 14:8
present 2:9 17:18
presently 5:14
pretty 15:19
prior 7:23 12:5
13:13,16,18,22
14:4 17:8,14
27:21 41:5
probably 19:21
38:21 42:1
proceeding 12:2
PROFESSIONAL
1:23
protection 28:8
35:19,19 40:16
Public 1:17
purchase 22:5,15
33:11,13
purchased 25:21
27:3 33:8
purchasing 22:16
putting 16:23
p.m 1:16 42:24

**Q**

question 4:6,25 5:3
5:8 31:18
questioned 29:18
questions 29:6

36:19 39:20 40:23
40:25 41:16

**R**

R 43:1
read 17:1 28:23
31:6 33:17
really 16:2,5 37:3
recall 14:2 17:15
19:18,23,24 20:1
20:4,16,20,21,23
21:12,14 23:11
24:3,7,9 28:1,2
29:23 32:18 33:2
35:3,5 36:21 37:3
37:10,13,14,16,18
37:21 38:6,8,9,22
42:2,4,6,12
receive 35:4 37:6,8
39:9
received 9:21 35:6
37:5
recognize 28:17
recollection 17:12
record 27:1 39:18
refer 4:15
referring 4:16
regard 39:24
regarding 17:20
19:17 35:7
REGISTERED
1:23
related 43:13
relating 39:9
relative 43:16
relay 14:3
Relevance 11:4
rely 32:21
remember 9:24
10:8,17 20:5,6
21:3 22:2,3 23:14
25:19 26:5 33:6,7
33:22 36:16 37:22
remembers 23:15
rephrase 5:1
reporter 1:17 5:9
16:20 28:15 34:4
43:4,23

REPORTERS 1:23
represent 4:14 15:5
15:10,17 19:11
representative
15:22 16:1,4,10
16:14
represented 14:23
40:3
representing 2:4,8
15:23
represents 4:20
request 22:19
reserve 42:20
reserved 4:6
Residence 6:1
resolved 11:10
respective 4:2
respond 36:18
Response 3:12
16:20
responses 16:24
retain 15:5
review 14:7,10 17:7
32:4
reviewed 35:1
RE-EXAMINAT...
41:17
right 6:25 7:2,5,21
21:8 24:15 31:5
33:10 42:20
Road 2:3 6:2
ROBERTA 1:4
room 12:21
rules 4:24

**S**

sale 39:25 40:6 41:6
same 7:24,25 15:24
17:23 24:24 27:21
30:13,22
Sanders 18:4,22
20:22 21:10 22:8
24:1,17 25:20
26:4 27:20 29:4,6
37:7,8 39:6 41:20
Sander's 28:25
Satchell 9:24
saw 24:16 36:9,11

THOMAS EAMES
April 7, 2006

Page 5

36:13 37:18 38:2
38:18 40:14,18
41:9 42:12,14
aying 24:15 41:4
says 25:12 31:3
school 8:7,20,21
Seaford 6:2 26:6
sealing 4:3
second 34:23
section 30:12,20,25
see 18:7 35:17,20
36:15 38:17,24,24
seeing 38:6,8,9
seek 15:7
seeking 16:10
seen 17:2,4 34:7
35:15 36:1,6,22
37:4 38:1,4,15,19
40:11
sell 32:22
sense 32:3
separate 13:8
Services 18:6
set 43:9
ual 11:1
ort 26:24 39:15
showed 35:18 36:13
showing 37:21
shown 31:11
shows 25:18
sign 17:10 29:3
32:5
signature 28:19,25
signed 28:21,23
32:6 41:2,5,11
signing 4:3
similar 15:17
similarly 1:6
since 7:18,24 8:5,11
sir 9:19 10:3
sites 7:14
sitting 33:5
situated 1:6
situation 15:17,24
six 30:12,20
some 11:19 14:12
7:22 22:5 35:4
somebody 9:20

10:23
someone 32:2
something 23:19,22
sometime 33:21
35:21 36:2,9
Somewhere 21:4,25
sought 16:13
Spadaro 12:17,24
13:8,10,14,18,19
13:22 14:4 15:2,5
specific 14:12 19:24
20:16,24 23:14,15
32:21 33:22 35:5
36:7,16 42:4,14
specifically 13:25
20:1,21 23:6 24:5
24:7 29:20 32:18
33:2 37:10 38:22
38:23 42:6,12
specifics 34:18,19
spend 7:10
SPODARO 2:2
spoke 19:12
spoken 18:12 34:18
started 4:23 8:1
Statement 3:13
28:15
states 1:1 18:3
stipulated 4:1
stock 6:22
street 2:6 26:10
stuff 14:17 25:3,5
32:12 35:5 38:7
38:10
Subject 18:2
sue 10:25
sued 10:23
suing 9:20,23
Suite 1:14 2:3,6
supplying 29:21
sure 17:2 33:16,18
33:24 36:4 38:21
Sussex 8:14
Swartz 1:13
switched 27:16,17
27:18
sworn 4:9 43:8

T

T 3:12,13,14 16:16
16:18,23 28:11,13
33:25 34:2 40:11
40:24 42:10 43:1
43:1
table 4:20
take 23:19 26:19,24
32:1 39:15
taken 5:6 8:25 9:7
10:14 22:12,13
23:17,20 32:12,14
43:15
taking 5:10
talk 5:8 13:25 20:9
talked 13:22,24
14:1,5 18:18 20:3
20:6 21:9 23:11
36:23 37:20 39:12
42:15,17
talking 20:1 21:12
25:8 26:17 27:4
29:23 30:15
talks 20:12
Tammy 1:5 6:5
12:23,24 21:2
tell 16:2 23:10,13
25:25 27:20 29:20
39:11
telling 25:2,22
term 16:8
testified 4:9 11:24
14:20 24:16 25:22
29:4 30:8 39:7,13
39:23 41:5,19
42:11
testify 5:15,18
testimony 5:10
11:22 12:1 21:10
22:7 31:8 32:4
35:24 36:6 37:7
41:5
their 26:8
themselves 1:5
thing 22:17 24:24
things 25:19
think 9:8 15:19

21:4 26:15 27:9
28:10 33:5 36:14
37:3
Thomas 1:4,12 3:4
4:8 5:21
thought 22:18,24
23:21,23 25:10
29:10,14,25 30:2
30:6,7,13,23
31:13,15 32:11,13
three 7:21 13:7
14:18 17:16,17
24:10 30:25 32:16
37:25 38:13 42:15
Through 15:12
Thursday 1:15
time 4:6 5:10 7:10
9:4,5,6 10:13
11:19 13:1,24
14:1 15:20 17:4
18:17 20:14,17
21:7 26:5 31:9
36:25 39:7 42:3
timeframe 21:4
36:1,5 42:3
times 9:2 20:6
21:15 24:10 32:16
today 5:18 12:9
13:16 14:21 15:1
17:24
together 13:8,9
told 22:7 23:7,8,15
23:18 24:9,11,19
25:11 26:1 27:24
29:19 30:24 32:8
32:10,20 33:12,13
34:14
Tom 5:23
top 25:3,5
training 8:19
transcript 43:7
trial 4:7
trials 11:24
truck 21:23
true 43:6
truth 16:2
trying 31:20 42:2
Turn 35:12 40:11

TV 15:20
twice 9:3,4,4,5
two 7:21 14:16
18:25 19:4,5,12
19:15 24:10 32:16
type 8:4 22:17,24
types 8:23 22:19,22
24:13

U

ultimately 33:11
under 5:14 17:11
30:12,20,25
underinsured
30:20
understand 4:17,24
22:21
understanding 16:3
23:3 29:16
understood 5:4
UNITED 1:1
unless 25:25
until 4:6
upset 31:20
used 40:15 42:5,7

V

vehicle 30:20
vocational 8:20
vs 1:7

W

waived 4:4
walk 37:12
want 24:21 32:1
wanted 13:25 22:5
22:6,8,15 23:16
24:19 25:22 27:20
27:24 30:16 31:22
wasn't 21:2,7
way 5:7
weeks 42:15
went 8:2,20 21:21
24:16 27:10 33:12
35:21,23 37:13
were 11:6,19,20
12:1,5 13:7 17:7
17:10,11 22:24

THOMAS EAMES
April 7, 2006

Page 6

25:22 26:17 29:12
31:8,15 32:18
34:24 40:3,23,24
41:10 42:4
**we're** 15:1
**we've** 37:20
**WHITE** 2:5
**whole** 13:1 18:17
**wife** 6:3 9:17 12:23
12:24 13:25 14:3
20:11,18,25
**Wilmington** 1:14
2:3
**witness** 3:3 12:17
18:12 19:11 25:24
38:14 39:3 40:9
41:15 42:20 43:8
**woman** 10:9
**word** 40:14 42:8,8
**words** 23:14,15
32:18 42:4,6
**work** 6:12,17 7:25
8:4
**worked** 7:16,23
**works** 5:7
**written** 38:7
**wrote** 31:11

———— **Y** ————
**year** 9:9 11:2,18
24:5
**years** 10:17
**yesterday** 12:17
13:11,13,18,23
14:4,8,12 38:3,4
38:18,19
**Yvone** 2:10
**Yvonne** 4:21

———— **$** ————
**$30,000** 30:3,8
**$30,000** 30:3,8

———— **0** ————
**04-CV-1324-KAJ**
1:7

———— **1** ————

**1:30** 1:16
**100/300** 24:22 25:1
25:2,7,10,18
30:10,12,19,22,25
31:3 32:2 41:13
**1011** 2:3
**1130** 1:14
**12/21/55** 5:25
**14** 17:8,14
**14908** 6:2
**15** 29:9,10,13 31:11
**15/30** 31:3,13,15
32:1
**16** 3:12
**17** 38:25
**19** 10:17
**1974** 7:24 8:5,10
**19805** 2:3
**1990** 24:6
**1992** 21:3,5
**1994** 19:22 20:2,3
20:16,18,22,23,24
21:24 33:23 35:18
35:20 36:2,9,12
36:16,21
**1995** 7:18,20

———— **2** ————
**2** 37:19
**2003** 9:16 38:25
**2006** 1:15 17:8,14
**210** 2:3
**2200** 2:6
**27** 1:15
**28** 3:13

———— **3** ————
**3/14/94** 28:21
**3:12** 42:24
**30** 29:9,10,13 31:11
**300** 1:13
**32202** 2:7
**34** 3:14
**39** 3:6

———— **4** ————
**4** 3:5
**41** 3:5

———— **5** ————
**50** 2:6

———— **6** ————
**621-5689** 1:24

———— **8** ————
**800** 1:24

ROBERTA EAMES
April 27, 2006

**Page 1**

IN THE UNITED STATES DISTRICT COURT
IN AND FOR THE DISTRICT OF DELAWARE

* * *

THOMAS A. EAMES, ROBERTA L.      :  CIVIL ACTION
EAMES and TAMMY EAMES, on
behalf of themselves and all     :
Others similarly situated
                                 :
    -vs-
                                 :  NO. 04-CV-1324-KAJ
NATIONWIDE MUTUAL INSURANCE
COMPANY                          :

* * *

Oral deposition of ROBERTA EAMES, held
in the law offices of Swartz Campbell, LLC, 300
Delaware Avenue, Suite 1130, Wilmington, Delaware, on
Thursday, April 27, 2006, beginning at approximately
11:15 A.M., before Audree E. Burg, Certified Court
Reporter and Notary Public in and for the Commonwealth
of Pennsylvania.

* * *

KARASCH & ASSOCIATES
REGISTERED PROFESSIONAL REPORTERS
PENNSYLVANIA and DELAWARE
(800) 621-5689

**Page 2**

```
    EARANCES:
    MURPHY, SPODARO & LANDON
    BY: PHILIP EDWARDS, ESQUIRE
3   1011 Centre Road - Suite 210
    Wilmington, DE 19805
4
    -- Representing the Plaintiffs

    FOWLER, WHITE, BOGGS, BANKER
6   BY: JOHN P. MARINO, ESQUIRE
    50 North Laura Street - Suite 2200
7   Jacksonville, FL 32202
8   -- Representing the Defendant
9  ALSO PRESENT:
    Curtis Cheyney, Esquire
10  Yvone Chambers, Esquire
11
1,
14
15
16
1b
19
20
21
22
23
24
25
```

**Page 3**

```
1               INDEX
2
3  WITNESS:                    PAGE
4  ROBERTA EAMES
5      BY: MR. MARINO          4, 45, 47
6      BY: MR. EDWARDS         43, 46
7
8               * * *
9
10              EXHIBITS
11 NUMBER      DESCRIPTION           PAGE
12 R. Eames-1  Response to Interrogatories 20
13 R. Eames-2  Amended Complaint      30
14
15
16
17
18
19
20
21
22
23
24
25
```

**Page 4**

```
1           (It is hereby stipulated and agreed
2   by and between counsel for the respective
3   parties that signing, sealing,
4   certification, and filing are waived; and
5   that all objections, except as to the form
6   of the question, are reserved until the time
7   of trial.)
8           ROBERTA EAMES, after having
9   been first duly sworn, was examined and
10  testified as follows:
11          EXAMINATION
12 BY MR. MARINO:
13  Q.  Good morning.  We met before.  I'm John
14 Marino.  I represent Nationwide Mutual Insurance
15 company in this case.  Next to me is Curtis Cheyney.
16 He also represents Nationwide.
17          When I say Nationwide, I'm referring to
18 Nationwide Mutual Insurance Company.  Do you understand
19 that?
20  A.  Yes.
21  Q.  At the end of the table is Yvonne Chambers
22 and she is with the general counsel's office of
23 Nationwide.
24          Some ground rules.  In you don't hear or
25 understand a question I ask, ask me to rephrase it.
```

1 (Pages 1 to 4)

ROBERTA EAMES
April 27, 2006

**Page 5**

1    A.  Okay.
2    Q.  If you answer I'm going to assume you
3  understood it.
4    A.  Okay.
5    Q.  One person talks at a time.  If we talk over
6  each other it will be hard for the court reporter to
7  get everything down.
8    A.  Okay.
9    Q.  If you need a break, let me know.
10   A.  Okay.
11   Q.  Are you presently under any medication that
12 would affect your ability to testify today?
13   A.  No.
14   Q.  Is there anything else that could affect your
15 ability to testify today?
16   A.  No.
17   Q.  What is your full name?
18   A.  Roberta Lee Eames.
19   Q.  Are you also known as Bobby Eames?
20   A.  Yes.
21   Q.  Have you ever been known by any other names?
22   A.  My maiden name, Fluharty.
23   Q.  How long have you been married?
24   A.  33 years in September.
25   Q.  You are married to Mr. Eames, who is also a

**Page 6**

1  plaintiff in this case?
2    A.  Yes.
3    Q.  Where do you live?
4    A.  Seaford, Delaware.
5    Q.  What is your address?
6    A.  14908 Concord Road.
7    Q.  How long have you lived there?
8    A.  Four years.
9    Q.  Before that?
10   A.  Rehobath.  14 Spinning Wheel Lane, Rehobath
11 Beach.
12   Q.  How long did you live there?
13   A.  25 years.
14   Q.  Has Tammy lived with you since she was born?
15   A.  Yes.
16   Q.  She still lives there now?
17   A.  Yes.
18   Q.  Did she live with you in the prior place?
19   A.  Yes.
20   Q.  Are you currently employed?
21   A.  Yes.
22   Q.  What do you do?
23   A.  Administrative assistant and service
24 coordinator for Oakwood Homes.
25   Q.  What is your business address?

**Page 7**

1    A.  655 East Dupont Highway.
2    Q.  Where is that?
3    A.  Millsboro, Delaware.
4    Q.  What do you do as an administrative assistant
5  and service coordinator?
6    A.  Schedule service for the technician.  And I
7  do data entry in the computer and pay bills.
8    Q.  Is Oakwood Homes a builder?
9    A.  Manufactured homes.
10   Q.  How long have you worked there?
11   A.  A year and a half.
12   Q.  How big a company is Oakwood Homes?
13   A.  Large.
14   Q.  Do you work with a lot of people?
15   A.  There are six of us there.
16   Q.  Who do you report to?
17   A.  The manager, office manager.
18   Q.  Are you the administrative assistant for the
19 office manager?
20   A.  Yes.
21   Q.  Who is the office manager?
22   A.  Gill Flemming.
23   Q.  You have been working there for about a year
24 and a half?
25   A.  Yes.

**Page 8**

1    Q.  Did you work before that?
2    A.  No.  It had been a while.
3    Q.  How long had it been?
4    A.  2001.
5    Q.  You left a job in 2001, didn't work for a
6  while and then went to work for Oakwood Homes?
7    A.  Correct.
8    Q.  What was your job in 2001?
9    A.  The front office for doctors.
10   Q.  What doctor?
11   A.  Dr. Ready.
12   Q.  When you say front office, what does that
13 mean?
14   A.  Receptionist.
15   Q.  Where is Dr. Ready's office?
16   A.  Lewes, Delaware.
17   Q.  Do you know the address?
18   A.  Savannah Road is all I know.
19   Q.  What did you do as a receptionist there?
20   A.  Answer the phones, greeted the patients,
21 check them in, out.
22   Q.  How long were you in that job?
23   A.  About a year.
24   Q.  Before that?
25   A.  A manager at a pet store.

2 (Pages 5 to 8)

KARASCH & ASSOCIATES
800-621-5689

ROBERTA EAMES
April 27, 2006

| | Page 9 |
|---|---|
| 1 | Q.  What pet store was that? |
| 2 | A.  House Pets. |
| 3 | Q.  Did Tammy work there? |
| 4 | A.  Yes. |
| 5 | Q.  Any jobs before that? |
| 6 | A.  Yes.  Retail management. |
| 7 | Q.  Sales? |
| 8 | A.  Manager of a card shop.  It was Movie King |
| 9 | and Popular Greetings.  I was with that company for six |
| 10 | years. |
| 11 | Q.  You have had a variety of different types of |
| 12 | jobs over the years? |
| 13 | A.  Yes. |
| 14 | Q.  Did you graduate from high school? |
| 15 | A.  A GED. |
| 16 | Q.  General Education Diploma? |
| 17 | A.  Yes. |
| 18 | Q.  When did you get your GED? |
| 19 | A.  1989. |
| 20 | Q.  Do you get a GED from a particular school or |
| 21 | course, or how does it work? |
| 22 | A.  I went to Deltech and took an adult education |
| 23 | test. |
| 24 | Q.  After that did you attend college? |
| 25 | A.  No. |

| | Page 11 |
|---|---|
| 1 | Q.  Have you ever had your deposition taken |
| 2 | before? |
| 3 | A.  Yes. |
| 4 | Q.  How many times? |
| 5 | A.  One. |
| 6 | Q.  In March of this year? |
| 7 | A.  I think it was February. |
| 8 | Q.  Other than the deposition you gave in |
| 9 | February have you ever testified in any kind of court |
| 10 | proceeding before? |
| 11 | A.  No. |
| 12 | Q.  Today and February? |
| 13 | A.  Yes. |
| 14 | Q.  Have you ever testified in any arbitration? |
| 15 | A.  No. |
| 16 | Q.  Have you ever testified at a trial? |
| 17 | A.  No. |
| 18 | Q.  When you gave your deposition in February was |
| 19 | it in connection with a pending lawsuit? |
| 20 | A.  Yes. |
| 21 | Q.  What case was that? |
| 22 | A.  Our accident. |
| 23 | Q.  Your accident?  What accident? |
| 24 | A.  Our automobile accident we had in 2003. |
| 25 | Q.  That's the accident that you and your |

| | Page 10 |
|---|---|
| 1 | Q.  Did you ever attend junior college? |
| 2 | A.  No. |
| 3 | Q.  Did you have any other education after |
| 4 | receiving your GED in 1989? |
| 5 | A.  Just where I took some computer classes. |
| 6 | Q.  What type of computer classes did you take? |
| 7 | A.  Just Word Perfect.  General courses to learn |
| 8 | the computer. |
| 9 | Q.  Was that in connection with one of your jobs? |
| 10 | A.  No. |
| 11 | Q.  You just took a general computer course |
| 12 | because you wanted to learn how to use a computer? |
| 13 | A.  Yes. |
| 14 | Q.  Who did you take it from? |
| 15 | A.  Sussex Technical. |
| 16 | Q.  Did you get any certification? |
| 17 | A.  Certificates. |
| 18 | Q.  That you completed satisfactorily? |
| 19 | A.  Yes. |
| 20 | Q.  When did you do that training? |
| 21 | A.  Maybe 1990. |
| 22 | Q.  Soon after you got your GED? |
| 23 | A.  Yes. |
| 24 | Q.  Any other training or courses? |
| 25 | A.  No. |

| | Page 12 |
|---|---|
| 1 | daughter Tammy and your husband were involved in? |
| 2 | A.  Yes. |
| 3 | Q.  When was that in 2003? |
| 4 | A.  February. |
| 5 | Q.  That lawsuit involves the accident that you |
| 6 | were involved in February of 2003? |
| 7 | A.  Yes. |
| 8 | Q.  Are you a plaintiff in that lawsuit? |
| 9 | A.  Yes. |
| 10 | Q.  Are there any other plaintiffs in that |
| 11 | lawsuit? |
| 12 | A.  Tom and Tammy. |
| 13 | Q.  Tom being your husband and Tammy being your |
| 14 | daughter? |
| 15 | A.  Yes. |
| 16 | Q.  Who is the defendant in that lawsuit? |
| 17 | A.  I guess it would be the estate for Mr. |
| 18 | Satchell. |
| 19 | Q.  Is he deceased? |
| 20 | A.  Yes. |
| 21 | Q.  Do you know whether that is the defendant or |
| 22 | are you assuming that is the defendant? |
| 23 | A.  Mr. Satchell? |
| 24 | Q.  The estate of Mr. Satchell? |
| 25 | A.  I'm assuming. |

3 (Pages 9 to 12)

ROBERTA EAMES
April 27, 2006

Page 13

1    Q.  Are you represented by an attorney in that
2  case?
3    A.  Yes.
4    Q.  Who is that?
5    A.  Clayton Bunning.
6    Q.  Do you know what court that case is pending
7  in?
8    A.  No.
9    Q.  What is the status of that case?
10    A.  I don't know.
11    Q.  We know that you are a party to the other
12  case involving the accident that you just testified to,
13  and obviously a party to this case.
14        Have you ever been involved in any other
15  litigation?
16    A.  No.
17    Q.  You have never been a plaintiff in any other
18  case?
19    A.  No.
20    Q.  You have never been sued by anybody?
21    A.  No.
22    Q.  Did you prepare for your deposition today?
23    A.  I guess.
24    Q.  Do you know whether you prepared?
25    A.  Yes.

Page 14

1    Q.  Yes, being you know?
2    A.  Yes.
3    Q.  Is it your testimony you did prepare for your
4  deposition today?
5    A.  Yes.
6    Q.  How did you prepare for your deposition
7  today?
8        MR. EDWARDS:  This is the privilege
9    thing.  Don't talk about the discussions you
10    had.
11        You can talk about where you met,
12    who you met with.  No discussions.
13        MR. MARINO:
14        Q.  Don't tell me any discussions you had with
15  your attorneys.
16        You testified you did prepare for your
17  deposition?
18    A.  Yes.
19    Q.  How did you prepare?
20    A.  I talked to the attorney.
21    Q.  What attorney?
22    A.  John Spadaro.
23    Q.  When did you talk to him?
24    A.  Yesterday.
25    Q.  Did you meet with him personally yesterday?

Page 15

1    A.  Yes.
2    Q.  Where?
3    A.  Georgetown.
4    Q.  Where?
5    A.  Clayton Bunning's office.
6    Q.  Were Tammy and your husband also there?
7    A.  Yes.
8    Q.  Was anybody else there?
9    A.  No.
10    Q.  Prior to yesterday had you ever met Mr.
11  Spadaro?
12    A.  No.
13    Q.  Had you ever talked to Mr. Spadaro prior to
14  yesterday?
15    A.  Yes.
16    Q.  When did you first talk to Mr. Spadaro?
17    A.  I guess a couple months ago.
18    Q.  From today?
19    A.  Yes.
20    Q.  Do you know specifically when it was?
21    A.  No.
22    Q.  That was the first time you talked to Mr.
23  Spadaro?
24    A.  No, I talked to him months before that.  I
25  don't know dates.

Page 16

1    Q.  Any sense of how many occasions you may have
2  talked to him?
3    A.  Twice.
4    Q.  Twice?
5    A.  Uh-huh.
6    Q.  By telephone?
7    A.  By phone.
8    Q.  Did you just meet Mr. Edwards this morning?
9    A.  Yes.
10    Q.  You never talked with Mr. Edwards before
11  today?
12    A.  No.
13    Q.  Other than your past conversations with Mr.
14  Spadaro and meeting Mr. Edwards today have you
15  communicated with any other attorneys from the office
16  of Murphy, Spadaro and Landon?
17    A.  No.
18    Q.  You met yesterday with Mr. Spadaro.  It was
19  you, Mr. Spadaro, your daughter Tammy and your husband
20        Was anybody else there?
21        MR. EDWARDS:  Objection.  Asked and
22    answered.
23        THE WITNESS:  Clayton.
24  BY MR. MARINO:
25    Q.  Who is Clayton?

4 (Pages 13 to 16)

ROBERTA EAMES
April 27, 2006

| Page 17 | Page 19 |
|---|---|

Page 17

1    A.  Clayton Bunning.
2    Q.  He was there?
3    A.  Yes.
4    Q.  Anybody else?
5    A.  No.
6    Q.  How long did you meet yesterday?
7    A.  I really didn't pay attention to the time.
8    Q.  Can you ballpark it?
9    A.  Maybe an hour or so.
10   Q.  Did you all meet together or separately?
11   A.  Together.
12   Q.  Did you review any documents yesterday?
13   A.  Yes.
14   Q.  What documents did you review?
15   A.  Just our policy, I guess. There's a couple
16  documents.
17   Q.  You reviewed your policy yesterday?
18   A.  There's two documents, a couple that are in
19  our policy, pertaining to our policy.
20   Q.  You reviewed two documents; is that correct?
21   A.  Yes.
22   Q.  Did you do anything else to prepare for your
23  deposition today?
24   A.  No.
25   Q.  Are you represented by a lawyer in this case?

Page 19

1    A.  Yes.
2    Q.  What is that?
3    A.  Where someone represents for everyone that's
4   involved in a similar situation and you got the
5   plaintiff that's going to represent everybody that's
6   been treated the way we were.
7    Q.  You want to be a class representative in this
8   case; is that correct?
9    A.  Yes.
10   Q.  Have you ever sought to be a class
11  representative in any other case?
12   A.  No.
13   Q.  What are your duties as a class
14  representative?
15   A.  We want to represent the group or however
16  many people have been treated the way we have been
17  treated to hopefully stop it so no one else is misled
18  as we were.
19   Q.  You feel you were misled?
20   A.  Yes.
21   Q.  Is that your understanding of the duties of a
22  class representative?
23   A.  Yes.
24   Q.  Do you know what fiduciary duties are?
25   A.  No.

| Page 18 | Page 20 |
|---|---|

Page 18

1    A.  John Spadaro.
2    Q.  The answer is yes?
3    A.  Yes.
4    Q.  Are you represented by any other lawyers in
5   this case?
6    A.  No.
7    Q.  Other than lawyers that are with Mr.
8   Spadaro's law firm?
9    A.  Correct.
10   Q.  Who did you contact the attorneys about
11  bringing this case?
12   A.  For Nationwide?
13   Q.  Your own attorneys, did you contact them
14  about bringing this case?
15   A.  Yes.
16   Q.  When did that occur?
17   A.  Maybe June of 2003.
18   Q.  Who did you contact?
19   A.  Clayton Bunning.
20   Q.  About bringing this case?
21   A.  We had questions when we found out our PIP
22  exhausted.
23   Q.  That's when you contacted Mr. Bunning?
24   A.  In this particular case, yes.
25   Q.  Do you know what a class action is?

Page 20

1    Q.  You never heard of that term before?
2    A.  No.
3        MR. MARINO:  Mark this as R.
4   Eames-1.
5        (Whereupon, Exhibit R. Eames-1 was
6   so marked for identification by the court
7   reporter, being Responses to
8   Interrogatories.)
9   BY MR. MARINO:
10   Q.  I put before you R. Eames-1. Eames
11  plaintiffs responses to Nationwide first set of class
12  interrogatories to Roberta an Eames.
13       Are these your responses to Nationwide's
14  interrogatories?
15   A.  Yes.
16   Q.  Have you seen this document before?
17   A.  I don't know.
18   Q.  You don't know if you saw exhibit one?
19   A.  I don't know.
20   Q.  You didn't sign this document under oath, did
21  you?
22   A.  I don't know.
23   Q.  Were you ever asked to sign this document?
24   A.  No.
25   Q.  I refer you to page three, question three.

5 (Pages 17 to 20)

ROBERTA EAMES
April 27, 2006

Page 21

1  "Identify all past or present Nationwide employees with
2  whom you personally communicated regarding the
3  insurance policy at issue in the complaint".
4         MR. EDWARDS: Same objection.
5         MR. MARINO: There's objections to
6  that question; correct?
7         THE WITNESS: Correct.
8  BY MR. MARINO:
9     Q. "Subject to and not waiving these objections
10 and on information and belief Mrs. Eames states that
11 she may have communicated personally with Linda Sanders
12 and/or Keith Culver of the Culver insurance agency now
13 known as Muncie Insurance and Financial Services, Inc".
14    A. Yes.
15    Q. That is your answer to that interrogatory?
16    A. Yes.
17    Q. Why do you say on information and belief you
18 may have communicated?
19        MR. EDWARDS: Objection to form. No
20 relevance here.
21        MR. MARINO: I don't think you have
22 to make relevance objections.
23 BY MR. MARINO:
24    Q. Why do you say that?
25    A. At different times I may have communicated

Page 22

1  with either or.
2     Q. Do you know whether you communicated with --
3     A. -- in the past, yes.
4     Q. You have?
5     A. Yes.
6     Q. Who did you communicate with?
7     A. I had spoken with Linda and Keith at
8  different times.
9     Q. When was the first time you talked to Keith
10 Culver?
11    A. In 1994.
12    Q. When in 1994?
13    A. I'm not sure. February or March.
14    Q. What did you speak with Keith Culver about?
15    A. Insurance, auto insurance.
16    Q. What about auto insurance?
17    A. Wanting to purchase.
18    Q. You saw Keith Culver about wanting to
19 purchase auto insurance?
20    A. Yes.
21    Q. Did you go to an office?
22    A. Over the phone.
23    Q. It was you personally talking to Mr. Culver
24 over the phone?
25    A. Yes.

Page 23

1     Q. What was said during that conversation?
2     A. I don't remember.
3     Q. When was the next time you talked to Mr.
4  Culver?
5     A. When we got a policy with them.
6     Q. You never actually went in and physically met
7  with Mr. Culver before you actually received a policy
8  from Nationwide; is that your testimony?
9     A. Correct, I called first.
10    Q. Up to this point had you ever talked with
11 Linda Sanders?
12    A. If she answered the phone, yes.
13    Q. You don't know how many times you called the
14 Culver agency prior to getting your policy?
15    A. Correct.
16    Q. You don't remember the substance of any of
17 those conversations?
18    A. No.
19    Q. Did you take any notes during any of those
20 conversations?
21    A. Possibly.
22    Q. Did you save any?
23    A. No.
24    Q. You don't have any now, do you?
25    A. No.

Page 24

1     Q. You didn't tape-record the conversations?
2     A. No.
3     Q. Was anybody on the other line?
4     A. Not to my knowledge.
5     Q. Mr. Eames wasn't on the other line?
6     A. He was working.
7     Q. Tammy was 12?
8     A. She wasn't on there.
9     Q. When you said the policy, you are talking
10 about the policy at issue in this case?
11    A. Yes.
12    Q. If I understand your testimony, you had some
13 conversations over the phone. You don't remember the
14 substance of the conversations. Then a policy was
15 issued to you?
16    A. Yes.
17    Q. From Nationwide?
18    A. Yes.
19    Q. Can you place that policy -- you saw the
20 Culver Insurance Agency -- called them to arrange to
21 have that policy placed?
22    A. Yes.
23    Q. When did you receive that policy?
24    A. I don't know.
25    Q. Did you get a copy of the policy from

6 (Pages 21 to 24)

KARASCH & ASSOCIATES
800-621-5689

ROBERTA EAMES
April 27, 2006

| Page 25 | Page 27 |
|---|---|

Page 25

1  Nationwide?
2      A.  Yes.
3      Q.  In the mail?
4      A.  Yes.
5      Q.  Can you tell me approximately when you
6  received it?
7      A.  It was shortly after.
8      Q.  This conversation in February or March of
9  1994?
10      A.  Yes.
11      Q.  Did you read that policy when you got it in
12  the mail?
13      A.  Yes.
14      Q.  Did you keep it?
15      A.  Until the next one came out.
16      Q.  When you got a copy of the policy you got
17  what is called a declaration page and policy?
18      A.  Correct.
19      Q.  You kept the declaration page until the next
20  one came out?
21      A.  Correct.
22      Q.  You read them both when you got them?
23      A.  Yes.
24      Q.  Did Mr. Eames have any conversations with
25  anybody from the Culver Agency, including Linda Sanders

Page 26

1  or Keith Culver, prior to the policy being issued?
2      A.  No.
3      Q.  He did not?
4      A.  I do not know.
5      Q.  He wasn't participating in any of the
6  conversations you had prior to that policy being
7  issued?
8      A.  No.
9      Q.  Tammy didn't participate, did she?
10      A.  No.
11      Q.  Prior to that policy being issued you never
12  had any communication with anybody from Nationwide
13  Mutual insurance company, did you -- strike that.
14          Prior to the policy being issued did you
15  have any communication with anybody other than, or
16  possible communication with anybody other than Linda
17  Sanders or Keith Culver regarding the policy at issue
18  in this case?
19      A.  No.
20      Q.  After you got the policy in the mail and read
21  it did you have subsequent communications with anybody
22  from the Culver Insurance Agency or Munsey Insurance
23  Agency?
24      A.  No.
25      Q.  All of the communications you would have had

Page 27

1  would be prior to the policy being issued, would be by
2  phone with Keith Culver or Linda Sanders; is that
3  correct.
4          MR. EDWARDS:  I don't think that's what
5      she testified to.
6  BY MR. MARINO:
7      Q.  I want to make sure I understand.
8      A.  I'm confused.
9      Q.  I thought I asked you subsequent to getting a
10  policy in the mail and reading it, have you subsequent
11  to that time had communications with anyone from the
12  Culver Insurance Agency?
13      A.  Before I got the policy?
14      Q.  After?
15      A.  After I got the policy?
16      Q.  Yes.
17      A.  Only if I needed to talk to them about
18  something.
19      Q.  What types of things might you need to talk
20  to them about?
21      A.  If I needed to add a child to the policy or
22  whatever.
23      Q.  Do you have more than one child?
24      A.  Yes.
25      Q.  Do you remember the substance of any of those

Page 28

1  possible conversations?
2      A.  When they turned of age.
3      Q.  Do you remember doing that or you assume?
4      A.  I'm the one that took care of that.
5      Q.  You took care of the insurance in the family?
6      A.  Yes.
7      Q.  I'm asking you, do you specifically recall
8  occasions where you had those types of communications
9  with someone from Munsey, or are you assuming you did?
10      A.  Culver.
11      Q.  Do you recall those types of occasions or are
12  you assuming you had those types of communications?
13      A.  I know I spoke with them when we added our
14  kids.
15      Q.  Who did you speak with?
16      A.  Keith and/or Linda.
17      Q.  You don't know which one?
18      A.  It depended on who answered the phone.
19      Q.  You know you had this conversation?
20      A.  Yes.
21      Q.  When was that?
22      A.  1990. Michelle was born in 1974.
23      Q.  Sometime around the time she turned 16?
24      A.  Yes.
25      Q.  Around 1980?

7 (Pages 25 to 28)

ROBERTA EAMES
April 27, 2006

| Page 29 | Page 31 |
|---|---|
| 1   A. 1990. | 1   A. I believe. |
| 2   Q. Do you remember any other specific | 2   Q. Do you know? |
| 3 conversations? | 3   A. Yes. |
| 4   A. And when the next one turned of age. | 4   Q. You do know that you have seen it before? |
| 5   Q. How many children do you have? | 5   A. I've seen so much. |
| 6   A. Three. | 6   Q. If you don't know, that's okay. |
| 7   Q. Any other specific conversations? | 7   A. I'm not sure. |
| 8   A. When we insured a boat. | 8   Q. Do you know what a complaint is in |
| 9   Q. That conversation was about insuring a boat? | 9 litigation? |
| 10   A. Yes. | 10   A. Yes. |
| 11   Q. All of these conversations were by phone? | 11   Q. What is it? |
| 12   A. Yes. | 12   A. That's when you complain about the problem |
| 13   Q. You don't have any notes of these | 13 that you have. |
| 14 conversations, do you? | 14   Q. Do you know what a pleading is? |
| 15   A. No. | 15   A. Guilty or not guilty? |
| 16   Q. You don't recall specifically what was said, | 16   Q. In a civil case? |
| 17 do you? | 17   A. No. |
| 18   A. No. | 18   Q. This is an amended class action complaint |
| 19       MR. EDWARDS: This is subsequent to? | 19 that you filed in this case. |
| 20       MR. MARINO: Correct. I already | 20       Are you aware there was a previously |
| 21 asked about prior to. Subsequent to the | 21 pending complaint in this case? |
| 22 policy being issued. | 22   A. No. |
| 23       MR. EDWARDS: Yes. | 23   Q. Are you aware the previously pending |
| 24 BY MR. MARINO: | 24 complaint in this case was dismissed by the court? |
| 25   Q. Do you know if your husband ever went in to | 25   A. No. |

| Page 30 | Page 32 |
|---|---|
| 1 personally meet with anyone from the Culver Agency | 1   Q. No one told you that? |
| 2 prior to the policy being issued? | 2   A. No. |
| 3   A. I don't think he did. | 3   Q. Look at paragraph three of the amended |
| 4   Q. You don't know for sure; do you? You would | 4 complaint. The second sentence claims you and your |
| 5 be surprised if he did? | 5 husband are named insureds under a Nationwide polic |
| 6   A. Yes. | 6 Do you see where I'm reading? |
| 7   Q. You didn't go with him; right? | 7   A. Yes. |
| 8   A. Before the policy? | 8   Q. That is the policy you referred to earlier |
| 9   Q. Before the policy was issued, you had never | 9 that you received in the mail and read sometime in |
| 10 been to the Culver Insurance Agency office before the | 10 1994; is that correct? |
| 11 policy was issued? | 11   A. Yes. |
| 12   A. No. | 12   Q. Look at paragraph 13 on page six. |
| 13       MR. MARINO: Let's take a half hour | 13   A. (Witness complies). |
| 14 break. | 14   Q. "Specifically Nationwide has represented to |
| 15       (Whereupon, a luncheon recess was | 15 one or more of the proposed class representatives that |
| 16 taken.) | 16 the subject policy provides full limits of liability |
| 17       MR. MARINO: Mark this as R. | 17 for PIP coverage and it has therefore taken the |
| 18 Eames-2. | 18 position such limits have been exhausted by payment o |
| 19       (Whereupon, Exhibit R. Eames-2 was | 19 the minimum statutory amount". |
| 20 so marked for identification by the court | 20       Do you see where I'm reading from? |
| 21 reporter, being Amended Complaint.) | 21   A. Yes. |
| 22 BY MR. MARINO: | 22   Q. Do you see one or more of the proposed class |
| 23   Q. I'm showing you what had been marked as R. | 23 representatives? |
| 24 Eames-2. It is an amended class action complaint. | 24   A. Yes. |
| 25       Have you seen this document before? | 25   Q. Are you claiming to be one or more of those |

8 (Pages 29 to 32)

KARASCH & ASSOCIATES
800-621-5689