# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

Thomas A. Eames, Roberta L. Eames, and
Tammy Eames, on behalf themselves and all
others similarly situated,

       Plaintiffs,

  V.

Nationwide Mutual Insurance Company,

       Defendant.

CIVIL ACTION NO.  04-1324-KAJ

## DEFENDANT NATIONWIDE MUTUAL INSURANCE COMPANY'S ANSWERING BRIEF IN OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

Nicholas E. Skiles, Esquire (DE Bar # 3777)
Swartz Campbell LLC
300 Delaware Avenue, Suite1130
P. O. Box 330
Wilmington, DE 19801
Tel. No. (302) 656-5935
Fax: (302) 656-1434
Attorneys for Defendant,
Nationwide Mutual Insurance Company

May 24, 2006

## TABLE OF CONTENTS

I.    NATURE AND STAGE OF PROCEEDING ........................................................ 1

II.   SUMMARY OF ARGUMENT ....................................................................... 1

III.  STATEMENT OF FACTS ........................................................................... 3

      A.  Sales Were Based on Individual Circumstances ................................... 3

      B.  The Court's Dismissal Order ............................................................ 4

      C.  Plaintiffs' Amended Complaint ......................................................... 5

      D.  The Purported Class Alleged in the Amended Complaint ....................... 7

      E.  The Plaintiffs' Testimony ................................................................ 8

           1.  Tammy Eames' Testimony ........................................................ 8

           2.  Mrs. Eames' Testimony .......................................................... 10

           3.  Mr. Eames' Testimony ........................................................... 17

IV.   ARGUMENT ........................................................................................ 23

      A.  The Court is not required to accept On Face Value
          Plaintiffs' Unsupported Allegations, Which are
          Rebutted by the Record in This Case ................................................ 24

      B.  The Proposed Class is Not Ascertainable .......................................... 26

      C.  Plaintiffs Fail to Satisfy the Typicality Requirement .......................... 27

           1.  Plaintiffs Are Not Members of the Class They
               Seek to Represent .............................................................. 27

           2.  Alleged Post-Sale Communications are Not
               Actionable ...................................................................... 28

D.    **Plaintiffs Fail to Satisfy the Commonality and Predominance Requirements**...................................29

    1.    **Plaintiffs' Arguments Regarding Documents Produced by Agents, Mr. Deaton's Testimony And the AOA System Provide No Support for Certification**...................................30

    2.    **Applicable Third Circuit Authority Precludes Certification**...................................33

    3.    **Individual Causation Issues Further Preclude Certification**...................................35

E.    **Plaintiffs Fail to Satisfy the Superiority Requirement**...................................36

F.    **Plaintiffs Are Not Adequate Class Representatives**...................................37

    1.    **Plaintiffs Are Not Members of the Class They Seek to Represent**...................................38

    2.    **Plaintiffs' Claims Are Barred by the Statute of Limitations and Subject to Other Unique Defenses**...................................38

    3.    **Plaintiffs' Testimony Rebuts Their Purported Claims**...................................40

IV.    **CONCLUSION**...................................40

## **TABLE OF CITATIONS**

## Cases

*Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 623-24, 117 S.Ct. 2231 (1997)........................ 30

*Baby Neal ex rel. Kanter v. Casey,* 43 F.3d 48, 56 (3d Cir. 1994). ............................................... 29

*Broussard v. Meineke Disc Muffler Shops, Inc.*, 155 F. 3d 331, 341 (4th Cir. 1998) ................... 34

*Carroll v. Cellco Partnership,* 713 A.2d 509, 516 (N.J. Super. Ct. 1998). .................................. 36

*CC Investors Corp. v. Raytheon Company,* 2005 WL 1026904 (D.Del. 2005)............................ 27

*East Texas Motor Freight Systems, Inc. v. Rodriquez,* 431 U.S. 395, 403 (1977) ....................... 27

*Forman v. Data Transfer,* 164 F.R.D. 400, 403 (E.D. Pa 1995) ..................................................... 27

*General Telephone Company of the Southwest v. Falcon*, 457 U.S. 147, 161, 102 S. Ct. 2364, 2372 (1982). ...................................................................................................................... 23, 25

*Harvey v. Ford Motor Credit Co.,* No. 03A01-9807-CV-00235, 1999 WL 486894, at *2 (Tenn. Ct. App. 1999)................................................................................................................... 36

*In re Life USA Holding, Inc.*, 242 F.3d 136, 144 (3d Cir. 2001) ................................ 30, 33, 36, 37

*In re ML-Lee Acquisition Fund II, L.P. Sec. Litig.,* 848 F.Supp. 527, 557 (D.Del. 1994). .......... 24

*In Re The Prudential Ins. Co. of America Sales Practice Litigation,* 148 F.3d 283 (3d Cir. 1998). .................................................................................................................................... 30, 33

*In Re The Prudential Ins. Co. of America Sales Practice Litigation,* 962 F.Supp. 450, 514 (D.N.J. 1997) ..................................................................................................................................... 30

*Johnston v. HBO Film Management, Inc.,* 265 F.3d 178, 186 (3d Cir. 2001)........................ 25, 33

*Kaufman v. C.L. McCabe & Sons, Inc.,* 603 A.2d 831, 835 (Del. Super. 1992). ........................ 39

*Kline v. Security Guards, Inc.*, 196 F.R.D. 261, 268 (E.D. Pa 2000) ........................................... 27

*Marcial v. Coronet Ins. Co.,* 880 F. 2d 954, 957-58 (7th Cir. 1989)............................................ 35

*Mentis v. Delaware American Life Insurance Company,* 2000 WL 973299 (Del. Super. Ct. 2000) ................................................................................................................................................... 34

*Mike v. Safeco Insurance Company of America,* 223 F.R.D. 50, 53 (D.Conn. 2004) ................. 27

*Montalvo v. Tower Life Building,* 426 F.2d 1135 (5th Cir. 1970) ................................................. 29

*Newton v. Merrill, Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154 (3d Cir. 2001) .............. 25

*Norman Gershman's Things to Wear v. Mercedes-Benz,* 558 A.2d 1066, 1074 (Del. Super. Ct. 1989) ........................................................................................................................... 29

*Pack & Process, Inc. v. Celotex Corp.,* 503 A.2d 646, 650-51 (Del. Super. 1985). ................... 39

*Sprague v. General Motors Corp.,* 133 F. 3d 388, 399 (6th Cir. 1998) ........................................ 35

*State v. Pettinaro Enterprises,* 870 A.2d 513, 531 (Del. Ch. 2005). ............................................ 39

*Szabo v. Bridgeport Machines, Inc.*, 249 F.3d 672, 677 (7th Cir. 2001) ...................................... 25

*Thomas v. Hartford Mutual Insurance Company,* 2003 WL 220511, \*4 (Del. Super. Ct. 2003) 29

*Wilmington Firefighters Local 1590 v. City of Wilmington,* 109 F.R.D. 89, 93 (D.Del. 1985). .. 27

*Zekman v. Direct Am. Marketers, Inc.*, 675 N.E.2d 994 (Ill. App. Ct. 1997), *rev'd on other grounds,* 695 N.E.2d 853 (Ill. 1998) ....................................................................................... 35

## Statutes

10 *Del. C.* § 8106 .......................................................................................................................... 38

21 Del. C. § 2118 .......................................................................................................................... 26

6 Del. C. § 2513 ......................................................................................................................... 3, 28

## Rules

*Fed.R.Civ.P.* 23(a) ............................................................................................................. 24, 30, 37

*Fed.R.Civ.P.* 23(b) ...................................................................................................... 24, 29, 30, 36

*Fed.R.Civ.P.* 23(c) ............................................................................................................................ 25

## I.    NATURE AND STAGE OF PROCEEDING

Plaintiffs originally filed this case in Delaware state court in August of 2004. Defendant Nationwide Mutual Insurance Company ("Nationwide") timely removed the case to this Court. (D.I. 1). The Court denied Plaintiffs' motion to remand this case to state court. (D.I. 56). Plaintiffs then sought review of the Court's order denying their motion to remand in the United States Court of Appeals for the Third Circuit. The Third Circuit denied review.

The Court's February 2, 2006 order dismissed Plaintiffs' original complaint. (D.I. 150 and 151). Plaintiffs' contractual and declaratory claims were dismissed with prejudice. Plaintiffs were given leave to amend their statutory fraud and civil conspiracy claims.

Plaintiffs filed their Amended Class Action Complaint ("Amended Complaint") on February 10, 2006. (D.I. 158). Nationwide filed a dispositive motion to dismiss Plaintiffs' Amended Complaint, with its supporting memorandum, on February 27, 2006. (D.I. 167 and 168). This motion has been fully briefed and remains pending.

On May 8, 2006 Plaintiffs filed their motion for class certification and supporting memorandum. (D.I. 196 and 197). This is Nationwide's answering brief in opposition to Plaintiffs' motion for class certification.

## II.    SUMMARY OF ARGUMENT

Plaintiffs have the burden of establishing that class certification is warranted. Plaintiffs have failed to meet their burden because:

1.    The record in this case rebuts Plaintiffs' unsupported allegations. The Court is not required to accept Plaintiffs' allegations on face value where these allegations are unsupported and rebutted by the record in this case.

2.    The proposed class is not ascertainable.  Determining whether an individual may be a member of the proposed class would require numerous individual inquiries.

3.    Plaintiffs fail to satisfy the typicality requirement.  They are not even members of the purported class that they seek to represent.  Moreover, the record establishes that they were not shown the types of documents that Plaintiffs' motion focuses upon.  Rather, any sales related communications they had were oral.

4.    Plaintiffs fail to satisfy the commonality and predominance requirements.  Nationwide did not control what documents may or may not have been shared by its third-party insurance agents with actual or prospective purchasers.  Nor did Nationwide direct or control what oral communications may have occurred.  Rather, every sale involved separate and unique individual circumstances.  The unique sales transactions at issue are therefore replete with individual issues.  Each separate proposed class member would have to prove, at a minimum, that a misrepresentation regarding PIP limits was made to them in connection with the sale of their policy and that they suffered damages as a result of the misrepresentation.  The totality of the communications and circumstances with regard to each separate sale would therefore have to be discovered and litigated.

5.    Plaintiffs fail to satisfy the superiority requirement.  To attempt to prepare and try this case would present insurmountable manageability issues because the claims and defenses are unique and individual to each separate sales transaction.  Evidence would have to be discovered and presented as to the totality of the communications, understandings, and other events in connection with the sale to each separate insured.

6.      Plaintiffs are not adequate class representatives.  They are not members of the class they purport to represent, their purported claims are time barred and subject to other unique defenses, and their testimony negates their purported claims.

## III.    STATEMENT OF FACTS

This case centers on the sale of Nationwide auto insurance policies, which include personal injury protection ("PIP") coverage, in Delaware.  Plaintiffs claim that the single word "full," which merely reflects that a policyholder had chosen to have no PIP deductible, is somehow misleading.

Since the Court has held that the governing policy unambiguously defines the applicable PIP limits and therefore dismissed Plaintiffs' contract based claims with prejudice, Plaintiffs' only remaining purported claims are for consumer fraud under the Delaware Consumer Fraud Act and civil conspiracy (arising from the alleged consumer fraud).  Claims under the Delaware Consumer Fraud Act are limited to "the sale, lease or advertisement of any merchandise." 6 Del. C. § 2513(a).  Accordingly, the manner in which policies were sold is significant to whether or not class treatment is appropriate in this case.

### A.      Sales Were Based on Individual Circumstances.

The insurance policy at issue in this case was sold in 1994 by the Culver Insurance Agency, Inc. (the "Culver Agency").  The Culver Agency was a former third party insurance agency, that was an independent contractor, and previously sold Nationwide auto policies in Delaware.  Like the policy at issue in this case, the great majority of Nationwide auto insurance policies are, and were at all times at issue in this case, sold in Delaware through third party

insurance agents who are independent contractors.[1]  *See* Affidavit of James E. Holtkamp, ¶ 5 (B1-B2).[2]  The third party insurance agents are not employees of Nationwide.  Rather, they are third party independent contractors.  *Id.* at ¶ 6 (B2).

Nationwide makes information and sales related materials available to its independent contractor third party insurance agents.  However, other than forms required by statute or regulation (such as the Delaware Motorist Protection Act Required Statement to Policyholders commonly referred to as "Form A"), Nationwide does not direct or control what documents or materials may or may not be shared with actual or prospective purchasers of automobile insurance by these independent contractor third party insurance agents.  *Id.* at ¶ 7 (B2).

Similarly, Nationwide does not direct or control what oral communications may or may not occur by and between these independent contractor third party insurance agents and actual or prospective purchasers of automobile insurance.  Rather, each of these sales or prospective sales of automobile insurance would have been different depending upon the individual agent involved, the customer involved and the customer's individual circumstances.  *Id.* at ¶ 8 (B2); *See also* Transcript of 30(b)(6) Deposition of Patricia A. Szlosek taken April 11, 2006 ("Szlosek Depo."), pgs. 39 – 41 (B15).

**B.    The Court's Dismissal Order.**

Plaintiffs' original complaint contained counts for declaratory relief (Count I), breach of contract (Count II), bad faith breach of contract (Count III), statutory consumer fraud (Count IV), and civil conspiracy (Count V).  *See* Plaintiffs' Original Complaint.

---

[1] Beginning in approximately 2001, a small percentage of new Nationwide Delaware auto policies (less than approximately 3%) have been sold by Nationwide through direct marketing.

[2] References to the appendix accompanying this brief are by the letter "B," followed by the relevant page number, as follows B__.

On February 2, 2006, the Court issued an Order and a Memorandum Opinion dismissing Plaintiffs' entire original complaint. (D.I. 151 and 152) (B159-B172). The Court held that "the contract at issue unambiguously provides for limits of $15,000/$30,000 for PIP coverage and Plaintiffs' claim, in Count I, for declaratory judgment that the contract provides for some other limit will be dismissed with prejudice." Memorandum Opinion, pg. 9 (B168).

The Court similarly dismissed Plaintiffs' contractual claims with prejudice. The Court specifically held that "Nationwide has not breached that contract, and Counts II and III will likewise be dismissed with prejudice." Memorandum Opinion, pg. 9. (B168).

The Court also dismissed Plaintiffs' remaining claims for statutory consumer fraud and civil conspiracy. These claims were dismissed with leave to amend. The Court ruled:

> Here, Nationwide argues that Plaintiffs fail to plead the circumstances surrounding a specific misrepresentation made to them and the particular harm suffered by them as a result. Indeed, the Complaint does not provide any facts concerning what documents the Plaintiffs received, or when or from where they received such documents. Thus, the Complaint fails to allege fraud with the particularity necessary to satisfy Rule 9(b). However, since the Complaint, when read in the light most favorable to Plaintiffs, does set a claim in skeletal form, I will dismiss Count IV without prejudice and grant Plaintiffs leave to amend as to that Count.

Memorandum Opinion, pgs 11-12 (B170-B171).[3]

## C.     Plaintiffs' Amended Complaint.

Plaintiffs filed their Amended Complaint on February 10, 2006. (D.I. 158) (B173-B202). Rather than pleading with particularity as directed by the Court, Plaintiffs have attempted to plead their substantive allegations "on information and belief" and in the alternative. These "on information and belief" and alternative allegations relating to the sale of the policy at issue allege:

---

[3] Since there was no remaining count alleging an underlying wrong, Plaintiffs' civil conspiracy claim was also dismissed with leave to amend. Memorandum Opinion, pgs. 12-13 (B161-B172).

a.  In approximately March 1994 Nationwide, acting through its agent Culver Insurance Agency of Seaford, Delaware (now known as Muncie Insurance & Financial Services, Inc.), sold the subject policy to Mr. and Mrs. Eames.  On or about March 14, 1994, and in connection with that sale, the Culver agency (acting for Nationwide) represented that the policy would provide "full" limits of liability for PIP coverage.

b.  On information and belief, the document attached as Exhibit A (or one or more documents substantially identical to it) was shown to Mr. or Mrs. Eames, or both, by a representative of the Culver agency, and at the time the policy was purchased in March 1994.

c.  On information and belief, one or more representatives of the Culver agency represented orally to Mr. or Mrs. Eames (or both) that the subject policy would provide "full" limits of liability for PIP coverage.  These representations were made on behalf of Nationwide, and at the time the policy was sold to Mr. and Mrs. Eames in or about March 1994.

d.  On information and belief, the offending representations were made by Culver employees Keith Culver, Linda Sanders or both.  They may also have been made by other representatives of the Culver agency.

Plaintiffs' Amended Complaint, pgs. 6-7 (B178-B179).  The sufficiency of these pleadings remains at issue.[4]

Nationwide deposed each of the named Plaintiffs on April 27, 2006.  Plaintiffs' testimony contradicts and rebuts the allegations in their Amended Complaint.  Plaintiffs also acknowledged that they were not consulted about the content of the Amended Complaint.

As established below, Plaintiff Tammy Eames had nothing at all to do with the purchase and sale of the policy at issue in this case.  She saw no documents, and had no communications with anybody, regarding the policy.  She was not involved in any way.

Plaintiff Roberta Eames testified that she had only oral telephone conversations with

---

[4] As set forth above, Nationwide has a pending motion and supporting memorandum to dismiss Plaintiffs' Amended Complaint.  (D.I. 167 and 168).  The grounds for Nationwide's pending motion to dismiss are:  (i) Plaintiffs fail to plead fraud with the required, court-ordered particularity, (ii) Plaintiffs fail to plead harm as required by the Court, (iii) Plaintiffs' claims are barred by the statute of limitations, (iv) Plaintiffs fail to state a claim for civil conspiracy, and (v) Plaintiff Tammy Eames has no standing.

representatives of the Culver Agency prior to the policy being issued.  But she does not remember how many conversations she had, who they were with, or what was said.  She also confirmed that she saw no documents prior to the policy being issued.

Plaintiff Thomas Eames testified that he had an oral conversation with a representative of the Culver Agency, at the Culver Agency's office.  He does not recall the details of the conversation.  He further testified that he recalled seeing only one document that day – the Delaware Motorists Protection Act Required Statement to Policyholders (B203) – that he signed that day.  He cannot recall seeing any other documents prior to the policy being issued.

**D.      The Purported Class Alleged in the Amended Complaint.**

Plaintiffs' Opening Brief states that Plaintiffs' Amended Complaint seeks certification of the following class and subclass:

> A.  All of Nationwide's Delaware insureds to whom Nationwide has represented, at any time since August 20, 2001, that they enjoy **"full" PIP (or "full coverage" for PIP)** under 21 Del. § 2118, where Nationwide in fact contends or will contend that they are entitled only to the minimum PIP limits required by the statute.

> B.  All of Nationwide's Delaware insureds who are part of the proposed class described above, and who have been advised by Nationwide that (according to Nationwide) their available PIP limits have been exhausted by virtue of Nationwide's payment of the minimum statutory amount.

*See* Plaintiffs' Opening Brief (D.I. 197), pg. 3 (emphasis added).

This, however, is not the purported class proposed in the Amended Complaint.  Rather, the class proposed in the Amended Complaint specifically focuses on alleged representations regarding PIP *limits*:

> A.  All of Nationwide's Delaware insureds to whom Nationwide has represented, at any time since August 20, 2001, that they enjoy **"full" limits of liability for PIP coverage** under 21 Del. § 2118, where Nationwide in fact contends or will contend that they are entitled only to the minimum PIP limits required by the statute.

*See* Plaintiffs' Amended Complaint, pg. 9 (emphasis added) (B181).    Throughout their Opening

Brief Plaintiffs refer to this new definition, while not acknowledging that it is not the same as the

class proposed in their Amended Complaint.    *See* Plaintiffs' Opening Brief (D.I. 197),

pgs. 1 and 3.

The reason Plaintiffs are apparently attempting to redefine the proposed class in their

Opening Brief is now clear.    As also established below, Plaintiffs' own testimony reveals no

alleged misrepresentation regarding the limits or dollar amount of PIP coverage that they

purchased.    Rather, Plaintiffs only testified to vague references in separate oral conversations (of

which they recall no specifics) during which *Plaintiffs* Roberta Eames and Thomas Eames claim

to have broadly requested "full coverage."    Additionally, the various documents that Plaintiffs

refer to (none of which Plaintiffs ever saw prior to their policy being issued) do not refer to PIP

limits.    Rather, as the Court has held, PIP limits are specifically and unambiguously defined by

the governing insurance contract.

### E.    The Plaintiffs' Testimony.

Each of the proposed named Plaintiffs were deposed on April 27, 2006.    Their testimony

establishes that they have had little or no involvement in this case.    Their testimony was also

conflicting and rebuts the allegations contained in their Amended Complaint.

### 1.    Tammy Eames' Testimony.

Plaintiff Tammy Eames ("T. Eames") testified that the first time she ever met any

attorneys from Murphy Spadaro & Landon was on April 26, 2006 – the day before her

deposition.    She further testified that she was not aware that she had talked to any attorneys from

Murphy Spadaro & Landon prior to the day before her deposition.    T. Eames Depo., pgs. 16-17

(B207-B208).

T. Eames also testified that she had never heard the word "interrogatory" before. She thought she had read her interrogatory responses before, but was not certain that she had. She did not recall ever being asked to sign her interrogatory responses, and she did not know who prepared her interrogatory responses. T. Eames Depo., pgs. 20-23 (B208-B209).

T. Eames also confirmed that she had absolutely no involvement in purchasing, and never had any communications with anybody regarding, the policy at issue in this case:

Q.    You were not there when this policy was sold?

A.    No, sir, I was only 12.

Q.    You were not driving a car, were you?

A.    No.

Q.    You would not have occasion to purchase insurance when this was purchased in 1994, would you?

A.    I was not involved in the insurance purchase at all.

Q.    You never communicated with anybody from Nationwide?

A.    Regarding that policy, no.

                                    * * *

Q.    You never communicated anything regarding this policy with Culver Insurance Agency, Inc.

A.    Not with their policy. I had nothing to do with it. My parents.

Q.    That's the policy at issue in this case?

A.    Right.

Q.    You have not communicated with that agency to this date regarding this policy?

A.    Right.

Q.    You never communicated with anybody from Nationwide Insurance Company regarding the policy at issue in this case, have you?

9

A.     No.

                                         * * *

Q.     Did you talk to anybody else about the insurance policy at issue in this
       case?

A.     Yesterday.

Q.     Was yesterday the first time you communicated with anybody concerning
       the insurance policy at issue in this case?

A.     Yes.

T. Eames Depo., pgs. 23-26 (B209-B210).  Finally, T. Eames confirmed that she had never seen

exhibits A, B or C to Plaintiffs' Amended Complaint before April 26, 2006 (the day before her

deposition).  T. Eames Depo., pg. 28 (B210).

### 2.     Mrs. Eames' Testimony

Plaintiff Roberta Eames ("Mrs. Eames") similarly testified that she had never met any

attorneys from Murphy Spadaro & Landon prior to the day before her deposition.  She testified

that she had talked to Mr. Spadaro twice by telephone prior to that.  Mrs. Eames Depo.,

pgs. 15-16 (B256).  Mrs. Eames also testified that nobody had ever told her that her original

complaint had been dismissed.  Mrs. Eames Depo., pgs. 31-32 (B260).

Mrs. Eames testified that she had oral telephone conversations with representatives of the

Culver Agency prior to the policy being issued.  But she cannot recall how many calls she had,

who she talked to, or what was said:

Q.     Who did you communicate with?

A.     I had spoken with Linda and Keith at different times.

Q.     When was the first time you talked to Keith Culver?

A.     In 1994.

Q.　When in 1994?

A.　I'm not sure. February or March.

Q.　What did you speak with Keith Culver about?

A.　Insurance, auto insurance.

Q.　What about auto insurance?

A.　Wanting to purchase.

Q.　You saw Keith Culver about wanting to purchase auto insurance?

A.　Yes.

Q.　Did you go to an office?

A.　Over the phone.

Q.　It was you personally talking to Mr. Culver over the phone?

A.　Yes.

Q.　What was said during that conversation?

A.　I don't remember.

Q.　When was the next time you talked to Mr. Culver?

A.　When we got a policy with them.

Q.　You never actually went in and physically met with Mr. Culver before you actually received a policy from Nationwide; is that your testimony?

A.　Correct, I called first.

Q.　Up to this point had you ever talked with Linda Sanders?

A.　If she answered the phone, yes.

Q.　You don't know how many times you called the Culver agency prior to getting your policy?

A.　Correct.

Q.    You don't remember the substance of any of those conversations?

A.    No.

                              * * *

Q.    If I understand your testimony, you had some conversations over the phone.  You don't remember the substance of the conversations.  Then a policy was issued to you?

A.    Yes.

Q.    From Nationwide?

A.    Yes.

Q.    Can you place that policy – you saw the Culver Insurance Agency – called them to arrange to have that policy placed?

A.    Yes.

Q.    When did you receive that policy?

A.    I don't know.

Q.    Did you get a copy of the policy from Nationwide?

A.    Yes.

Q.    In the mail?

A.    Yes.

Q.    Can you tell me approximately when you received it?

A.    It was shortly after.

Q.    This conversation in February or March of 1994?

A.    Yes.

Q.    Did you read that policy when you got it in the mail?

A.    Yes.

Mrs. Eames Depo., pgs. 22-25 (B258-B259).  Mrs. Eames also testified that, even though she cannot remember the substance of any conversations, that it was *she* that asked for "full coverage on everything:"

Q.   You understand you had insurance that would cover any medical expenses or any lost wages if you were ever injured in an automobile accident?

A.   Correct.

Q.   Where did you get that understanding?

A.   When I called about the insurance I called for full coverage on everything.

Q.   When you called about the insurance prior to the policy being issued and you said – if I mischaracterize your testimony, tell me – you testified you talked to either Keith Culver or Linda Sanders?

A.   Yes.

Q.   You don't remember how many times?

A.   Correct.

Q.   You don't remember who you talked to on specific occasions?

A.   Correct.

Q.   You don't remember what was said during those conversations; is  that correct?

A.   Not a full conversation, correct.

Q.   What do you mean by not a full conversation?

A.   My purpose for calling was for quotes.

Q.   You recall you asked for quotes?

A.   Yes.

Q.   You don't know how many conversations you had or when they were?

A.   No, correct.

Q.    You don't remember what they – specifically what either one or [sic] these people may have said to you?

A.    No.

Mrs. Eames Depo., pgs. 33-34 (B261).  She later reconfirmed that it was *she* that initiated a discussion regarding "full coverage on everything." Mrs. Eames Depo., pgs. 46-48 (B264).

Contrary to the allegations in her Amended Complaint, Mrs. Eames further confirmed that she never saw any of the exhibits to the Amended Complaint in connection with the sale of the policy.  Rather, she confirmed that she only saw them *after* the policy was issued:

Q.    Let's look at exhibit A to this document [referring to Plaintiffs' Amended Complaint].  Have you seen this document before?

A.    This one or one like it, yes.

Q.    Do you know whether you have seen this document before?

A.    Yes.

Q.    You do know that you have seen this document?

A.    This one or one identical to it, yes.

Q.    I want to understand what you mean.

A.    Yes, I have seen this.

Q.    When did you see this document, the first time?

A.    When we got our insurance.

Q.    When was that?

A.    1994.

Q.    Is it your testimony you saw this document after you received the policy in the mail?

A.    Yes.

Q.    You didn't see this document before you received the policy in the mail; correct?

A.    Correct.

Q.    You didn't see this document at the time the policy was purchased, did you?

A.    Correct.

Q.    When did you see this document after the policy was purchased?

A.    When it came in the mail.

Q.    Someone sent you this in the mail?

A.    I believe, it is the front page.

Q.    Of what?

A.    Our policy.[5]

* * *

Q.    Go to exhibit B. I'm referring to exhibit B to the complaint marked as exhibit two to the deposition of Mrs. Eames.

      Have you ever seen this page before?

A.    Yes.

Q.    When did you see it?

A.    The day after the accident.

Q.    It is the first time you even saw this page?

A.    This one in particular, yes.

Q.    You didn't see this page at any time prior to the policy being issued, did you?

---

[5] The evidence will show that Mrs. Eames is incorrect. This exhibit was not a "cover page" to the policy. Nevertheless, her testimony confirms that she did not see this document (or any document) prior to the policy being issued.

A.    No.

Q.    You didn't see it until years after the policy was issued.

A.    Correct.

Q.    Until after you were involved in the accident?

A.    Correct.

Q.    Please look at exhibit C.  I'm referring to exhibit C to the amended complaint marked as exhibit two to the deposition of Mrs. Eames.

      Have you seen this document before?

A.    Yes.

Q.    When did you first see this document?

A.    When I purchased my insurance.

Q.    You saw this document when you purchased your insurance?

A.    For my Ford Explorer.

Q.    Is it your testimony you saw this document prior to June 17 of 2003?

A.    Before?

Q.    Uh-huh.

A.    No.

Mrs. Eames Depo., pgs. 36-41 (B261-B263).

Finally, Mrs. Eames testified that (contrary to Mr. Eames' testimony), she did not think that her husband had had conversations with anyone from the Culver Agency prior to the policy being issued:

Q.    Did Mr. Eames have any conversations with anybody from the Culver Agency, including Linda Sanders or Keith Culver, prior to the policy being issued?

A.    No.

Q.    He did not?

A.    I do not know.

Q.    He wasn't participating in any of the conversations you had prior to that policy being issued?

A.    No.

Q.    Tammy didn't participate, did she?

A.    No.

                              * * *

Q.    Do you  know if your husband ever went in to personally meet with anyone from the Culver Agency prior to the policy being issued?

A.    I don't think he did.

Q.    You don't know for sure; do you?  You would be surprised if he did?

A.    Yes.

Mrs. Eames Depo., pgs. 25-26; 29-30 (B259; B260).

   **3.    Mr. Eames' Testimony**

   Mr. Eames similarly testified that he had not met anyone from Murphy Spadaro & Landon until the day before his deposition.  He thought he may have talked to Mr. Spadaro once on the phone when Mr. Spadaro called for his wife, but did not know for sure.  Mr. Eames Depo., pgs. 13-14 (B310).

   He had never seen his interrogatory responses and was never asked to sign them. Moreover, he could not recall anyone consulting with him about his interrogatory responses prior to the time they were served on February 14, 2006:

Q.    I'm putting before you T. Eames-1.   Are these your interrogatory responses to Nationwide's interrogatories?

A.    May I read it?

Q.    Sure. Have you ever seen this before?

A.    No.

Q.    This morning is the first time you have seen what is marked as exhibit one?

A.    Yes.

Q.    You were never asked to review this document prior to February 14, 2006?

A.    No.

Q.    You were never asked to sign these answers to interrogatories under oath, were you?

A.    To the best of my recollection, no.

Q.    Did anyone ever consult with you about these answers to interrogatories prior to February 14, 2006?

A.    I can't recall. I don't believe so.

Mr. Eames Depo., pgs. 16-17 (B310-311). Like Mrs. Eames, nobody ever told Mr. Eames that Plaintiffs' original complaint was dismissed. Similarly, nobody conferred with him concerning the filing of the Amended Complaint. Mr. Eames Depo., pg. 34 (B315).

Contrary to his wife's testimony, Mr. Eames testified that he *did* have oral communications with representatives of the Culver Agency. But he did not recall how many conversations he may have had, when they occurred, or specifically what was said. Similar to his wife, Mr. Eames also testified that it was *he* who used the phrase "full coverage auto insurance" in requesting insurance:

Q.    Do you recall specifically talking to Keith Culver in 1994?

A.    I talked to both of them in 1994.

Q.    You don't recall when, do you?

18

A.    I don't remember the exact date, no.

Q.    Do you remember how many times you talked to either one of them?

A.    No.

Q.    Did you talk on the phone or in person?

A.    In person and on the – mostly in person.  My wife does all of the phone calls.

Q.    You go places and she talks on the phone?

A.    I prefer to do face-to-face.

Q.    When was the first time you met Mr. Culver face-to-face?

A.    It was in 1994.  I don't recall a specific date or time.

Q.    When you met Mr. Culver in 1994 was your wife with you?

A.    I don't recall.

Q.    Do you specifically recall meeting Ms. Sanders in 1994?

A.    Yes.  I met her in 1994.  I don't recall the specific date.  Yes, I met her in 1994.

Q.    Was your wife with you?

A.    I don't believe so.

Q.    Tammy wasn't with you, was she?

A.    No.  It might be 1992.  I don't remember exactly when.  Somewhere in that timeframe, I think.

Q.    It could be 1992?

A.    I don't know.

Q.    It was a long time ago, wasn't it?

A.    Right.

Q.     If you talked with Mr. Culver and Ms. Sanders, is it your testimony that was in person?

A.     Yes.

Q.     Do you recall ever talking to one of them on the phone?

A.     I don't recall.

Q.     Do you know how many times you may have met with one or both of them in person?

A.     No.

Q.     Do you know why you may have met with one of them in person?

A.     For auto insurance.

Q.     You went to the office?

A.     Yes.  I met Linda about auto insurance on a truck I had.

Q.     That was in 1994?

A.     Somewhere around that date.

Q.     How long did you meet with her?

A.     I don't remember.

Q.     Do you remember what was said during that meeting?

A.     I wanted to purchase some auto insurance and I wanted full coverage auto insurance.

Q.     Is it your testimony that you told Mrs. Sanders you wanted full coverage auto insurance.

A.     Yes.

Q.     What does that mean?

A.     To me full coverage is if you are in an accident everything is taken care of. Your bills are paid, whatever needs to be taken care of.  To me that's full coverage auto insurance.

> That's what I wanted to purchase. That's what I was led to believe I was
> purchasing, full coverage, to cover all medical and that type of thing. This
> is what I thought I was getting.

Mr. Eames Depo., pgs. 20-22 (B311-B312).

Mr. Eames' testimony further establishes that he was shown and signed The Delaware

Motorists Protection Act Required Statement to Policyholders ("Form A"). He gave conflicting

testimony on his interpretation of this document, but he clearly confirmed that he reviewed and

signed it. Mr. Eames Depo., pgs. 28-32 (B313-B314). This document is included in the

accompanying appendix. (B203).

Form A, on its face, establishes that the words "full coverage" only appear within the

phrase "full coverage with no deductible." Accordingly, it confirms that Mr. Eames had elected

to have no PIP deductible. PIP limits, on the other hand, are addressed as part of a separate

selection. In fact, this section clearly confirms that Mr. Eames elected "minimum limits." Form

A clearly reflects that minimum limits for PIP coverage are $15,000/$30,000.

Mr. Eames similarly could not confirm that he saw any documents (other than the Form

A) prior to the time the policy was issued:

> Q.    Turn to exhibit A to your amended class action complaint.
>
> A.    Okay.
>
> Q.    Have you ever seen this before?
>
> A.    Yes.
>
> Q.    When did you see it?
>
> A.    I believe back in 1994. It showed I had full protection of my personal
>         injury protection.
>
> Q.    When in 1994 did you see this?
>
> A.    Sometime after I went to Culver's for the policy.

21

* * *

Q.    You don't recall when in 1994 you may have seen this document; correct?

A.    I believe it was after I talked to Linda about my full coverage on the auto insurance.

Q.    After that time?

A.    I believe so, yes.

Q.    Do you know how you got it?

A.    I think in the mail.  I don't really recall how I got it.  I know that I've seen this before.  Every one I received after that got that on there.

Q.    You didn't receive this – when you met personally with Ms. Sanders, the testimony about your personal meeting with Ms. Sanders, you didn't receive this document then, did you?

A.    I don't specifically recall what I left that office with as far as paperwork.

Q.    Did you walk out of there with anything?

A.    I don't recall what I went out with.

Q.    You don't recall whether you left with anything; correct?

A.    No, I don't recall whether I left with anything.

Q.    You don't recall whether you saw any other documents during that meeting, form A, exhibit 2 that we've already talked about?

A.    I don't recall her showing me any other paperwork.  I just don't remember.

Q.    Flip to exhibit B.  You are looking at exhibit B to the amended complaint attached as exhibit three to your deposition.  Have you ever seen this document before?

A.    I saw it in the paperwork that I looked at yesterday.

Q.    Before yesterday have you ever seen this document before?

A.    I don't recall seeing any documents with all of this stuff written on the bottom of it.

22

Q.    Do you recall seeing this?

A.    I don't recall seeing documents with this handwritten stuff on the bottom.

Q.    Flip over to exhibit C. I'm asking you to look at exhibit C to the amended complaint attached as exhibit three to your deposition.

A.    (Witness complies).

Q.    Have you seen this document before?

A.    Yes.

Q.    When did you see it?

A.    I saw it yesterday.

Q.    Other than yesterday have you ever seen this document before?

A.    I'm sure I probably have.

Q.    You don't recall specifically, do you?

A.    Not specifically, no.

Q.    You didn't see this. You know you didn't see this document before June 17, 2003; is that correct?

A.    Correct.

Mr. Eames Depo., pgs. 35-39 (B315-B316). Finally, Mr. Eames confirmed that he subsequently received the policy in the mail and was sure he had read it. Mr. Eames Depo., pg. 33 (B315).

## IV.    ARGUMENT

A class may only be certified if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23 have been satisfied. *General Telephone Company of the Southwest v. Falcon*, 457 U.S. 147, 161, 102 S. Ct. 2364, 2372 (1982).

Moreover, the party seeking class certification bears the burden of establishing that certification is warranted under the circumstances. *In re ML-Lee Acquisition Fund II, L.P. Sec.*

*Litig.,* 848 F.Supp. 527, 557 (D.Del. 1994). Pursuant to Rule 23(a), four requirements must be met in order for a class to be certified:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

*Fed.R.Civ.P.* 23(a).

In addition to the four requirements of Rule 23(a), Plaintiffs must also satisfy one of the three requirements in Rule 23(b). In this case, the applicable requirement is Rule 23(b)(3). This requires the Court to find that: "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." *Fed.R.Civ.P.* 23(b)(3).

Plaintiffs attempt to minimize the level of inquiry necessary to certify a class – going so far as to suggest that the Court must accept all of their conclusory allegations regarding the certifiability of the proposed class as true. This and Plaintiffs' other false premises regarding the class certification inquiry are specifically addressed below under the relevant factors.

### A.    The Court is Not Required to Accept On Face Value Plaintiffs' Unsupported Allegations, Which are Rebutted by the Record in This Case.

Plaintiffs strenuously argue that the unsupported allegations in their Amended Complaint must be taken as true for purposes of this motion. *See* Plaintiffs' Opening Brief, pgs. 4 and 7. This is not surprising, given that the record that is now established provides no support for (and in fact rebuts) Plaintiffs' conclusory allegations.

The Supreme Court has recognized that "sometimes it may be necessary for the Court to probe behind the pleadings before coming to rest on the certification question." *Falcon*, 457

U.S. at 160, 102 S.Ct. at 2372.    Moreover, the Third Circuit has squarely rejected Plaintiffs'

assertion that the Court must blindly accept their unsupported allegations:

> The issue, then, is whether in making a class certification decision the court must take as true the allegations in the complaint where those allegations are unsupported, and in some instances rebutted, by a well-developed record. Specifically, we must decide whether the district court erred in finding that notwithstanding plaintiffs' claim that the brokers, relying on uniform sales materials, made materially similar misrepresentations, that plaintiffs' case actually is based on individualized misrepresentations.    Recently we addressed an issue of this nature in *Newton* and held that    "[i]n reviewing a motion for class certification, a preliminary inquiry into the merits is sometimes necessary to determine whether the alleged claims can be properly resolved as a class action."

*Johnston v. HBO Film Management, Inc.,* 265 F.3d 178, 186 (3d Cir. 2001), citing *Newton v.*

*Merrill, Lynch, Pierce, Fenner & Smith, Inc.,* 259 F.3d 154 (3d Cir. 2001).    In *Johnston,* the

Third Circuit went on to hold:

> Turning to this case, it is apparent that not only was it appropriate, but also necessary, for the district court to examine the factual record underlying plaintiffs' allegations in making its certification decision. . . . Further, applying the framework utilized in *Newton,* it is clear the district court did not abuse its discretion in finding that the record failed to establish that common issues predominated over individual issues in the case.

*Johnston,* 265 F.3d at 189.    *See also Szabo v. Bridgeport Machines, Inc.,* 249 F.3d 672, 677 (7th

Cir. 2001) (" [C]ertifying classes on the basis of incontestable allegations in the complaint moves

the court's discretion to the plaintiff's attorneys – who may use it in ways injurious to other class

members, as well as way injurious to defendants."); *Fed.R.Civ.P.* 23(c) Advisory Committee

Notes to 2003 Amendments (explaining amendment of subsection (c) to reflect the need for

factual inquiry regarding the certification decision).

　　　　Accordingly, the certification decision is not governed by the artfulness of the Plaintiffs'

pleadings.    Rather, it must be based upon the record.    As established below, the record rebuts

Plaintiffs' unsupported and conclusory allegations regarding the certifiability of the proposed class. Certification should therefore be denied.

### B.    The Proposed Class is Not Ascertainable.

In asserting that they have satisfied the numerosity requirement, Plaintiffs merely reference numbers of new policies "offering minimum PIP limits" in various years. Plaintiffs' Opening Brief, pg. 34. But the proposed class is not those who purchased minimum PIP limits. Rather, the proposed class focuses on individual representations:

> All of Nationwide's Delaware insureds **to whom Nationwide has represented, at any time since August 20, 2001, that they enjoy "full" limits of liability for PIP coverage** under 21 Del. § 2118, where Nationwide in fact contends or will contend that they are entitled only to the minimum PIP limits required by the statute.

*See* Plaintiffs' Amended Complaint, pg. 9 (emphasis added) (B181). Accordingly, in order to determine whether somebody is in the proposed class, it is necessary to determine whether **Nationwide has represented, at any time since August 20, 2001, that they enjoy "full" limits of liability for PIP coverage.** Moreover, since Plaintiffs are suing under the Delaware Consumer Fraud Act, it would also be necessary to determine whether any such representations were in connection with the sale of the separate individual policies.

Accordingly, determining whether somebody is a member of the proposed class will, in and of itself, require (at a minimum) individual factual determinations regarding what (if any) specific representations may have been made, who made them, and in what context they were made.[6]

---

[6] Plaintiffs' proposed class is further improper because it depends upon future events and circumstances regarding what Nationwide "will contend." This would require speculation as to who will be implicated, when and under what circumstances.

Class treatment is not appropriate when, as in this case, "the difficulties inherent in identifying membership in the class create serious administrative burdens that are incongruous with the efficiencies expected in a class action." *Kline v. Security Guards, Inc.*, 196 F.R.D. 261, 268 (E.D. Pa 2000). This is so because "many of the streamlining benefits that are the hallmark of a proper class action would be lost in the morass of individual determinations of class membership." *Id., see also Forman v. Data Transfer,* 164 F.R.D. 400, 403 (E.D. Pa 1995) (certification improper where "determining membership in the class would essentially require a mini-hearing on the merits of each case."); *Mike v. Safeco Insurance Company of America,* 223 F.R.D. 50, 53 (D.Conn. 2004) ("The proposed class is untenable because the court would have to conduct an individual inquiry regarding the merits of each proposed plaintiffs' claims in order to determine class membership.")

## C.    Plaintiffs Fail to Satisfy the Typicality Requirement.

To satisfy the typicality requirement, the plaintiff must show that the proposed class representatives are "part of the class and 'possess the same injury' as the class members." *CC Investors Corp. v. Raytheon Company,* 2005 WL 1026904 (D.Del. 2005), citing *East Texas Motor Freight Systems, Inc. v. Rodriquez,* 431 U.S. 395, 403 (1977). "A representative claim is typical if it arises from the same event, practice or conduct that gives rise to the claim of the other class members, and is based upon the same legal theory." *Wilmington Firefighters Local 1590 v. City of Wilmington,* 109 F.R.D. 89, 93 (D.Del. 1985).

### 1.    Plaintiffs Are Not Members of the Class They Seek to Represent.

The most basic element of typicality is that Plaintiffs must be "part of the class" that they seek to represent. In this case, Plaintiffs seek to represent a purported class of individuals to

whom representations were made in connection with the sale of insurance policies "**at any time since August 20, 2001.**"  *See* Plaintiffs' Amended Complaint, pg. 9.

As set forth above, there is no dispute that Plaintiffs purchased their policy in 1994.  *See* Plaintiffs' Amended Complaint.  Plaintiffs' Opening Brief also specifically acknowledges that: "There is no dispute that Mr. and Mrs. Eames purchased their policy from Culver Insurance Agency of Seaford, Delaware, a Nationwide agent, **in or about March 1994.**"  *See* Plaintiffs' Opening Brief, pg. 28 (emphasis added).  Moreover, as established above, the vague references Plaintiffs made to alleged oral communications in connection with the sale of their policy occurred prior to the policy being issued in 1994.  August 20, 2001 is obviously years after 1994. Plaintiffs are therefore not even members of the purported class that they seek to represent.

### 2.    Alleged Post-Sale Communications are Not Actionable.

Even though Plaintiffs readily admit that they purchased their policy in 1994, they attempt to argue that alleged communications that occurred years later in 2003 are somehow relevant.  These alleged communications not only had absolutely nothing to do with the sale of the policy (which was years earlier), they were also after the auto accident at issue in this case.

Delaware's Consumer Fraud Act specifically requires that, to be actionable under the Act,  the alleged misrepresentation be "in connection with the sale, lease or advertisement of any merchandise."  6 Del. C. § 2513(a).  Delaware law therefore requires that courts restrict application of 6 Del. C. § 2513:

> First, [Defendant] argues that the statute by its own wording does not apply to post-sale representations.   [Plaintiff] argues that the inclusion of post-sale representations under the statute would be consistent with the liberal construction of the Act called for by the legislature.  Although [Plaintiff] correctly notes that the provisions of the Consumer Fraud Act are to be liberally construed, this Court cannot ignore the clear language of the statute which restricts its application to deceptive practices "in connection with the sale or advertisement" of the merchandise.  Given  this  statutory  limitation,  it  is  clear  that  post-sale

representations which are not connected to the sale or advertisement of the [merchandise] do not constitute consumer fraud under the Act.

*Norman Gershman's Things to Wear v. Mercedes-Benz,* 558 A.2d 1066, 1074 (Del. Super. Ct. 1989). *See also Thomas v. Hartford Mutual Insurance Company,* 2003 WL 220511, *4 (Del. Super. Ct. 2003) ("Given the clear language of the statute, this Court must hold that post-sale representations made by Concentra were not connected to the sale or advertisement of the policy, and therefore do not fall within the constructs of the Consumer Fraud Act.").

In an effort to avoid the clear scope of the Delaware Consumer Fraud Act, Plaintiffs' continue to cite the Fifth Circuit's 1970 decision in *Montalvo v. Tower Life Building,* 426 F.2d 1135 (5th Cir. 1970) out of context. *Montalvo* held that renewal premiums should be included as part of a company's "annual gross sales volume" for purposes of determining whether the company was an "enterprise" under the Fair Labor Standards Act. That is all the Fifth Circuit held thirty-six years ago. Accordingly, *Montalvo* has no applicability to Plaintiffs' purported claims under the Delaware Consumer Fraud Act, or to any other issue in this case.

Plaintiffs cannot represent a class that they are not members of. Class certification must therefore be denied.[7]

### D.    Plaintiffs Fail to Satisfy the Commonality and Predominance Requirements.

Commonality requires that class members share a single common issue. *See Baby Neal ex rel. Kanter v. Casey,* 43 F.3d 48, 56 (3d Cir. 1994). Predominance requires that common issues predominate over issues affecting only individuals. Fed.R.Civ.P. 23(b)(3). The Third Circuit requires that the commonality and predominance requirements be analyzed together, because the predominance requirement, which is "far more demanding," incorporates the

---

[7] Plaintiffs further fail to satisfy the typicality requirement for the same reasons they fail to satisfy the commonality and predominance requirements established below.

commonality requirement. *In re Life USA Holding, Inc.*, 242 F.3d 136, 144 (3d Cir. 2001). *See also Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 623-24, 117 S.Ct. 2231 (1997) (Rule 23(b)(3) predominance inquiry tests whether the class is sufficiently cohesive to warrant adjudication by representation, and mandates that it is far more demanding than the Rule 23(a)(2) commonality requirement).

Plaintiffs rely heavily upon *In Re The Prudential Ins. Co. of America Sales Practice Litigation,* 148 F.3d 283 (3d Cir. 1998). In *Prudential,* the Third Circuit affirmed the certification of a *settlement* class involving allegedly deceptive sales practices. However, *Prudential* (unlike this case) involved uniform, scripted and standardized sales presentations. The district court opinion in *Prudential* found that "the oral component of the fraudulent sales presentations did not vary appreciably among class members. Plaintiffs' allegations and the evidence presented to the Court demonstrate that throughout the country, Prudential agents uniformly misled class members with virtually identical oral misrepresentations." *In Re The Prudential Ins. Co. of America Sales Practice Litigation,* 962 F.Supp. 450, 514 (D.N.J. 1997) (citation omitted).

*Prudential* does not apply in this case. Plaintiffs have not, and cannot, establish the type of uniform sales presentations *Prudential* addressed in a *settlement* context. Rather, the evidence in this case establishes the exact opposite. Insurance sales in this case turned on their unique individual circumstances.

1.    **Plaintiffs' Arguments Regarding Documents Produced by Agents, Mr. Deaton's Testimony and the AOA System Provide No Support for Certification.**

Plaintiffs' Opening Brief references and attempts to rely upon various types of documents produced from the files of third party agents. Plaintiffs broadly refer to "rate quotes, rate quote letters, memoranda of insurance and other document types." Plaintiffs' Opening Brief, pg. 25.

However, Plaintiffs ignore the fact that, as established above, none of them saw any such documents in connection with the sale of the policy at issue. This in and of itself precludes class treatment.

Plaintiffs also attempt to rely upon an affidavit from a paralegal in their attorney's office. They argue that this paralegal's review of "140 files [produced by agents] identified forty-eight consumer accounts involving the sale or purported sale of the statutory minimum PIP limits" and that "in forty-seven of the forty-eight files, the Nationwide agent characterized PIP as 'full.'" Plaintiffs' Opening Brief, pg. 19. But Plaintiffs have failed to show that any such documents were ever shown to any purchasers of auto insurance or (assuming they were) what communications concerning them may have occurred. The fact that something is allegedly "characterized" in "a file" has no bearing on anything. The relevant issues for purposes of class certification are (i) what (if any) specific documents may have been shared with specific purchasers in connection with a sale, (ii) what communications may have occurred in connection with separate sales, and (iii) in what context did any such communications occur. Plaintiffs completely ignore these issues.

Plaintiffs also attempt to rely upon the testimony of a single Delaware agent. Significantly, this agent (Glenn Deaton) had no involvement at all with the sale of Plaintiffs' policy. Nevertheless, Plaintiffs attempt to characterize Mr. Deaton's testimony as showing "the process by which Nationwide agents sell auto insurance in Delaware." Plaintiffs' Opening Brief, pg. 13.

But Mr. Deaton's testimony shows on its face that it does nothing of the sort. Rather, it only gives a broad description of the manner in which *he* (Mr. Deaton) may communicate with a hypothetical purchaser. Moreover, sections of Mr. Deaton's testimony that Plaintiffs quote show that Mr. Deaton's possible communications would differ depending upon what the individual customer asks for. *See* Plaintiffs' Opening Brief, pg. 15. Mr. Deaton's testimony therefore similarly provides no support for certification.

Plaintiffs also go on at length about the Agency Office Automation ("AOA") system.[8] Plaintiffs' arguments and assumptions about the AOA system similarly miss the point. The AOA system merely makes information and documents available to agents. It does not direct or control what information or documents (if any) that agents may choose to share with purchasers. Nor does it control (and could not possibly control) in what context information or documents may or may not be shared or what communications may (or may not) occur. Plaintiffs' arguments and assumptions therefore provide no support for certification.

Finally, Plaintiffs somehow attempt to rely upon a stipulation at the conclusion of Mr. Deaton's testimony. The parties merely stipulated that "in the vast majority of documents produced by the insurance agents pursuant to Eames plaintiffs' subpoena the word 'full' appears next to the term 'PIP'." *See* Plaintiffs' Opening Brief, pg. 18. As was clearly stated, the stipulation was simply that one word appeared next to another word in various documents. As discussed above, Plaintiffs have never established (nor has there ever been any stipulation

---

[8] Plaintiffs' Opening Brief states that Nationwide kept the AOA system "hidden from discovery for over a year." This is not correct. Plaintiffs need only look to Mr. Deaton's testimony (taken on August 9, 2005) and the documents produced by the agents over a year ago. Moreover, several pages of documents previously produced by Nationwide specifically refer to the AOA system by name. Plaintiffs also make reference to documents produced by Nationwide "just three business days" before the filing of this Opening Brief. But plaintiffs fail to mention that these documents were produced by Nationwide (in an effort to be cooperative) in response to additional informal requests which Plaintiffs recently made by letter.

regarding) whether and in what context any such documents may have been shared with purchasers.

## 2. Applicable Third Circuit Authority Precludes Certification.

Plaintiffs' Opening Brief ignores the Third Circuit authority which governs the certification issue in this case. In *Life USA Holding,* 242 F.3d 136 (3d Cir. 2001) the Third Circuit clarified that the *Prudential* holding rested upon the district court's finding of uniformity in the oral sales presentations. The district court in *Life USA* had relied on *Prudential* to hold that defendant's fraudulent scheme provided the basis for each claim and that the predominance requirement had therefore been met. *Id.* at 146.

The Third Circuit distinguished *Prudential* on the grounds that Prudential involved "uniform, scripted and standardized" sales presentations that were "virtually identical" in all material respects. In *Life USA*, on the other hand, the Third Circuit rejected certification because the record was "uncompromising in revealing non-standardized and individualized sales 'pitches' presented by independent and different sales agents, all subject to varying defenses and differing state law." *Id.* at 147. Given these and other factual differences, the Third Circuit held that the predominance requirement had not been met and commonality of claims did not exist. *Id.*

In *Johnston,* 265 F.3d 178 (3d Cir. 2001) the Third Circuit again addressed this issue in the context of a RICO class action. The *Johnston* plaintiffs brought a RICO action, alleging that the defendant had induced them to make investments based upon fraudulent uniform oral and written misrepresentations. *Id.* at 186. Examining the record below, the Third Circuit concluded that there was no uniformity in the sales presentations. Finding that two of the four elements necessary to establish the predicate act of securities fraud – misstatements and reliance – were

subject to individualized proof, the Third Circuit concluded that the case was not amenable to class certification. *Id.* at 190. *See also Mentis v. Delaware American Life Insurance Company,* 2000 WL 973299 (Del. Super. Ct. 2000) (denying certification of Delaware Consumer Fraud Act claims because "the oral representations made by Mentis' insurance agent surely play a large role in any recovery that he might receive and are certainly not the same as alleged representations made by other brokers. Simply there is too much factual disparity between representations made to the class members to justify the certification of the class representative.").

The Court need look no further than the named Plaintiffs' own testimony to conclude that individual issues predominate. As established above, the named Plaintiffs themselves testified to separate and different individual circumstances in connection with the sale of the single policy at issue in this case. T. Eames had nothing at all to do with the purchase and never communicated with anybody regarding the policy. Mrs. Eames testified she had various oral conversations (the details of which she cannot recall) and saw no documents prior to the policy being issued. Mr. Eames testified to a separate oral conversation (the details of which he cannot recall), and saw one document – the Form A which Plaintiffs ignore – prior to the policy being issued.

Accordingly, the named Plaintiffs themselves tell different stores about separate oral communications. Moreover, since Plaintiffs cannot recall any specifics regarding their own alleged oral communications, they cannot possibly establish that the alleged communications with them were the same as possible communications with absent class members. Put simply, since they do not recall any specifics regarding their own alleged communications, they cannot logically assert that the same communications occurred with others.

Other circuits similarly hold that certification is improper under these circumstances. *See, e.g., Broussard v. Meineke Disc Muffler Shops, Inc.,* 155 F. 3d 331, 341 (4th Cir. 1998)

(holding that fraud claims "based substantially on oral rather than written communications are not appropriate for treatment as class actions unless the communications are shown to be standardized"). *Sprague v. General Motors Corp.,* 133 F. 3d 388, 399 (6th Cir. 1998); *Marcial v. Coronet Ins. Co.,* 880 F. 2d 954, 957-58 (7th Cir. 1989) (holding that issues specific to each plaintiff predominated because the major issue in contention – whether the insurance company had fraudulently informed the plaintiffs that they could only recover under an insurance policy if they submitted to a polygraph test – depended upon evidence of the individual oral communication between the defendant and each plaintiff). The same individual inquiries would be necessary in this case.

**3.    Individual Causation Issues Further Preclude Certification.**

Plaintiffs are correct that, under the Delaware Consumer Fraud Act, a plaintiff does not need to prove actual reliance. But the class certification inquiry does not end there. As the Court has held in this case, "a plaintiff alleging a violation of the consumer fraud statute must show both a false representation, usually one of fact, made by the defendant and damage to the plaintiff." *See* Memorandum Opinion, pg. 10 (B169).[9]

Plaintiffs also acknowledge in their Opening Brief that a plaintiff under the Consumer Fraud Act must establish "a causal link between the [deceptive] conduct at issue and his or her injury." *See* Plaintiffs' Opening Brief, pg. 33. Proof of that causal link requires plaintiffs to demonstrate that they in fact received the allegedly false representation and acted upon it. For example, in *Zekman v. Direct Am. Marketers, Inc.,* 675 N.E.2d 994 (Ill. App. Ct. 1997), *rev'd on other grounds,* 695 N.E.2d 853 (Ill. 1998), the court rejected an argument that mere receipt of an

---

[9] Plaintiffs also argue that persons to whom no misrepresentation was ever made (such as T. Eames) can somehow bring an action under the Consumer Fraud Act. Plaintiffs provide no support for this novel theory.

allegedly false mailing sufficed to establish the Illinois consumer fraud act's "causation" requirement:

> Plaintiff's argument can be construed as asserting that parties are not required under the Act to show that they are actually deceived. We disagree. It is well settled that reliance is no longer a requirement under the Act. . . . In reality, however, **the theory of reliance is ambiguously present within the parameters of the concept of proximate cause,** so that to maintain a private action under the Act, a party must have relied on the wrong to some extent in order to establish proximate cause. Thus, we do not agree with the argument that a party can make a claim where a party was not deceived.

*Id.* at 997-98 (emphasis added). *See also Harvey v. Ford Motor Credit Co.,* No. 03A01-9807-CV-00235, 1999 WL 486894, at *2 (Tenn. Ct. App. 1999) (Tennessee consumer fraud act claim dismissed because, although reliance was not required, the plaintiff failed to allege "a causal connection between the defendant's conduct and any injury suffered by the plaintiff."); *Carroll v. Cellco Partnership,* 713 A.2d 509, 516 (N.J. Super. Ct. 1998).

Plaintiffs have clearly failed to satisfy the commonality and predominance requirements as established above. Rather, the record shows that individual issues predominate. Certification must therefore be denied.

### E.    Plaintiffs Fail to Satisfy the Superiority Requirement.

Rule 23(b)(3) also requires that a class action be "superior to other available methods for the fair and efficient adjudication of the controversy." *Fed.R.Civ.P.* 23(b)(3). The superiority requirement is not satisfied in this case for the same reasons that it was not satisfied in *Life USA.* In *Life USA* the Third Circuit noted that the trial would be unmanageable given all the variations it previously identified, and that attempting a trial under such conditions would not be efficient or fair:

> Without going into detail as to the management of how a trial which would require proofs of individual claims of the plaintiffs and proofs of varying defenses of the defendant could be conducted, it is sufficient for our purposes to recognize

that attempting to adjudicate plaintiffs' various claims through a class trial would not only be inordinately time-consuming and difficult, but it would impermissibly transgress upon the required standards of fairness and efficiency.

*Life USA,* 242 F. 3d at 148.

As in *Life USA,* Plaintiffs fail to satisfy the superiority requirement in this case. Plaintiffs have not even attempted to set forth a trial plan of how this case could be tried. The reason for this is that the claims and defenses in this case could only be adjudicated in conformance with due process by the presentation of the totality of the circumstances in connection with the sale of each separate policy (by different agents) to each separate insured. As discussed above, the Delaware Consumer Fraud Act Claim will require proof, at a minimum, of: (1) what documents or oral statements (if any) were presented in connection with an individual sales transaction; (2) what other communications may (or may not have) occurred; (3) whether any communications that may have occurred amounted to misrepresentations under the Delaware Consumer Fraud Act; and (4) whether any such misrepresentation caused any harm to an individual purchaser.

Moreover, Plaintiffs' deposition testimony clearly establishes that their own inconsistent versions of their sales transaction cannot serve by proxy to establish a legal claim on behalf of any other proposed class member, as is required for class treatment. Therefore, the superiority requirement for class treatment cannot be satisfied in this case.

**F.    Plaintiffs Are Not Adequate Class Representatives.**

Rule 23(a) also requires that "the representative parties will fairly and adequately protect the interests of the class." Plaintiffs are not adequate class representatives in this case for several reasons.

37

1. **Plaintiffs Are Not Members of the Class They Seek to Represent.**

As established above, in this case Plaintiffs are not even part of the class that they seek to represent. Plaintiffs obviously cannot adequately represent a proposed class that they are not members of.

As also established above, Plaintiffs' testimony rebuts the allegations pled in their Amended Complaint. Plaintiffs cannot act as class representatives when their own testimony negates their individual claims.

2. **Plaintiffs' Claims Are Barred by the Statute of Limitations and Subject to Other Unique Defenses.**

Plaintiffs' individual claims are also subject to several additional defenses. Nationwide's pending Motion to Dismiss Plaintiffs' Amended Complaint (D.I. 158) includes defenses (which are also grounds for dismissal). These defenses further render Plaintiffs inadequate representatives and preclude class certification.[10]

Plaintiff T. Eames clearly has no standing. As established above, she had no involvement at all in the purchase of the subject policy and had no communications with anybody regarding it. She therefore has no claim under the Delaware Consumer Fraud Act.[11]

Plaintiffs' individual claims are also clearly barred by the statute of limitations. Plaintiffs' purported claims under the Delaware Consumer Fraud Act are subject to the three-year statute of limitations set forth in 10 *Del. C.* § 8106. As established above, there is no

---

[10] The grounds set forth in Nationwide's Motion to Dismiss Plaintiffs' Amended Complaint, and its brief and reply brief in support of this motion, are incorporated and made a part of this opposition. Nationwide further reserves the right to raise additional defenses (through an answer and affirmative defenses or otherwise) should any portion of Plaintiffs' Amended Complaint remain following resolution of Nationwide's pending motion to dismiss.

[11] All of the Plaintiffs also lack standing because they have failed to establish any harm. This is a further reason that class certification should be denied. Nationwide reserves all rights with regard to this issue.

dispute that the sale of the policy at issue, and all alleged communications in connection with that sale, occurred in 1994.

Under Delaware law "statues of limitations are calculated beginning from the date of accrual of a cause of action, at the time of the wrongful act, even if the plaintiff is ignorant of the cause of action." *State v. Pettinaro Enterprises,* 870 A.2d 513, 531 (Del. Ch. 2005). Accordingly, the three-year statute on Plaintiffs' claims began running in 1994, and expired years before Plaintiffs' filed this case in 2004.

It is true that the time of discovery rule provides that in certain cases a cause of action does not accrue until a party has reason to know that he or she has a cause of action. *Pack & Process, Inc. v. Celotex Corp.,* 503 A.2d 646, 650-51 (Del. Super. 1985). Under these circumstances, "the limitation period does not begin to run until the Plaintiff has reason to know that a wrong has been committed, provided the injuries are 'inherently unknowable' and sustained by a 'blamelessly ignorant' Plaintiff." *Kaufman v. C.L. McCabe & Sons, Inc.,* 603 A.2d 831, 835 (Del. Super. 1992).

As set forth above, the Court in this case has held that "the contract at issue unambiguously provides for limits of $15,000/$30,000 for PIP coverage . . ." Memorandum Opinion, pg. 9 (B168). As also established above, both Mr. and Mrs. Eames have testified that they received and read the policy in 1994. Mrs. Eames Depo., pg. 25 (B259); Mr. Eames Dep., pg. 33 (B261). Therefore, even if the discovery rule could apply in this case to Plaintiffs' individual claims, the statute of limitations nevertheless began to run in 1994 when the Eames admittedly received and read the subject policy. Accordingly, Plaintiffs' claims are clearly time barred.

**3.    Plaintiffs' Testimony Rebuts Their Purported Claims.**

As established above, Plaintiffs' testimony rebuts the allegations in their Amended Complaint. This raises additional defenses and individual issues unique to Plaintiffs' individual claims. For the reasons set forth above, this further prevents Plaintiffs from being adequate class representatives.

Plaintiffs are further inadequate class representatives because, as established above, they have had little or no involvement in this case. They did not even know that their original complaint had been dismissed. Moreover, prior to the day before the depositions, they had had no or very little communication with their lawyer in this case.

## V.    CONCLUSION

For the foregoing reasons, Plaintiffs have failed to meet their burden under Rule 23 and the governing authority. Nationwide therefore requests that Plaintiffs' motion for class certification be denied, together with such further relief as the Court deems proper.

Respectfully submitted,

*/s/ Nicholas E. Skiles, Esquire*
Nicholas E. Skiles, Esquire (DE ID#3777)
300 Delaware Avenue, Suite 1130
Wilmington, DE  19899
Attorneys for Defendant, Nationwide
 Mutual Insurance Company