# EXHIBIT C

1 of 4 DOCUMENTS

**Anthony P. Mentis, individually and on behalf of all others similarly situated v. Delaware American Life Insurance Company**

**C.A. No. 98C-12-023 WTQ**

**SUPERIOR COURT OF DELAWARE, NEW CASTLE**

*2000 Del. Super. LEXIS 237*

**April 28, 2000, Submitted
May 30, 2000, Decided**

**SUBSEQUENT HISTORY:** [*1] Released for Publication by the Court June 2, 2000.

**DISPOSITION:** Letter Opinion and Order on Plaintiff's Motion for Class Certification MOTION DENIED and Certification REFUSED.

**COUNSEL:** Norman M. Monhait, Esquire, Rosenthal Monhait Gross & Goddess, Wilmington, DE.

Andrew N. Friedman, Esquire, Mark S. Willis, Esquire, Donna Solen, Esquire, Cohen Milstein Hausfeld & Toll, Washington, D.C.

Angela M. Trombly, Esquire, Melmed & Trombly, Samford, CT.

Glen DeValerio, Esquire, John Zavez, Esquire, Berman DeValerio & Pease, Boston, MA.

Marc I. Gross, Esquire, Pomerantz Haudek Block, Grossman & Gross, New York, N.Y.

Richard Bemporad, Esquire, Lowey Dannenberg Bemporad & Selinger, The Gateway, White Plains, NY.

Regina A. Iorii, Esquire, Philip Trainer, Jr., Esquire, Ashby & Geddes, Wilmington, DE.

James F. Jorden, Esquire, Stephen H. Goldberg, Esquire, Raul A. Cuervo, Esquire, Jorden Burt Boros Cicchetti, Berenson & Johnson, Washington, DC.

**JUDGES:** WILLIAM T. QUILLEN, JUDGE.

**OPINIONBY:** WILLIAM T. QUILLEN

**OPINION:**

This is the Court's Letter Opinion and Order on Plaintiff's Motion for Class Certification pursuant to Superior Court Civil Rule 23. For the reasons stated herein, that Motion is [*2] DENIED and certification is REFUSED.

*FACTS*

Anthony Mentis ("Mentis") is a retired patent attorney residing in Delaware. He has filed the current action with regard to an insurance policy he purchased from the Delaware American Life Insurance Company ("DelAm"). This purported class action suit arises from the alleged use of deceptive sales practices in the sale of life insurance policies in the 1980s and early 1990s.

As detailed more fully in earlier Opinions in this case, it is alleged that DelAm marketed what is known as vanishing premium policies during the relevant time periods. DelAm solicited customers with pre-existing life insurance policies and informed them that the accumulated dividends and interest on their existing policies were sufficient to fund a higher coverage policy without an increase in their premiums. Allegedly, DelAm informed customers that if they purchased a new policy, the interest and dividends on the new policy would eventually pay for the future premiums. Thus, DelAm told customers that the policy would eventually become self-funded and the premiums would vanish. Other customers did not have vanishing premium representations made to them. Rather, [*3] those individuals with claims were not told of the risks involved concerning the possible loss of benefits and increased premiums if interest and dividend rates decreased.

Mentis was one of the customers who purchased insurance policies. In 1984, Mentis owned a $ 40,000 insurance policy which he transferred to DelAm for $ 50,000 of coverage, while paying the same premiums. Mentis' premium payments remained constant for a pe-

riod of 14 years, until 1998. At that time, DelAm informed Mentis that, due to a reduction of interest and dividends, he would have to increase his premiums by more that 100% to maintain his $ 50,000 of coverage.

Mentis filed suit against DelAm on several Counts. This Court heard a Motion to Dismiss the Claims against DelAm on April 23, 1999. This Court dismissed the action with regard to claims of breach of fiduciary duty and unfair trade practices, but denied the Motion with respect to the breach of contract and consumer fraud claims. *Mentis v. Delaware American Life Ins. Co., 1999 Del. Super. LEXIS 419,* Del. Super., C.A. No. 98C-12-023 WTQ, Quillen, J. (July 28, 1999). In the July 28, 1999 Letter Opinion, the Court asked the parties to brief the question of whether a class action should [*4] be certified pursuant to Superior Court Civil Rule 23. n1 The parties have briefed the question and this is the Court's Letter Opinion on the class certification issue.

> n1 This Court granted reargument on the July 28, 1999 Letter Opinion and subsequently adhered to the earlier ruling. *Mentis v. Delaware American Life Ins. Co., 1999 Del. Super. LEXIS 333,* Del. Super., C.A. No. 98C-12-023 WTQ, Quillen, J. (Aug. 25, 1999) (Nov. 5, 1999).

### *DECISION*

A class action is a procedural device designed so that mere numbers may not impede large groups of individuals from either enforcing their rights jointly or jointly defending against alleged wrongs on their part. *Nottingham Partners v. Dana, Del. Supr., 564 A.2d 1089, 1094 (1989)* (citing 7A C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure* § 1751, at 7 (1986)). A condition precedent to certification of a class action requires a two step analysis. *Prezant v. De Angelis, Del. Supr., 636 A.2d 915, 920 (1994)* (citing *Nottingham Partners, 564 A.2d at 1094).* [*5] "The first step requires that the action satisfy all *four* of the prerequisites mandated by subsection (a) of the rule." *Prezant, 636 A.2d at 920* (quoting *Nottingham Partners, 564 A.2d at 1094).* Subsection (a) of Rule 23 states:

> (a) Requisites to Class Action. One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

The first two of these factors focus on the characteristics of the proposed class, while the latter two focus on the characteristics of the proposed class representative. *Paine Webber R&D Partners, L.P. v. Centocor, Inc., 1997 Del. Super. LEXIS 482,* Del. Super., C.A. No. 96C-04-194-WTQ, Quillen, J. (Oct. 9, 1997) (citing *Leon N. Weiner & Assoc. v. Krapf, Del. Supr., 584 A.2d 1220, 1225 (1991)).* A class action cannot be certified unless this Court is satisfied that the prerequisites [*6] of Rule 23(a) have been satisfied. *See General Telephone Co. of the Southwest v. Falcon, 457 U.S. 147, 161, 72 L. Ed. 2d 740, 102 S. Ct. 2364 (1982).* If and only if all of the prerequisites of subsection (a) are satisfied, then Rule 23(b) requires the presence of at least one of four additional factors. *Paine Webber R&D Partners, L.P.,* Del. Super., C.A. No. 96C-04-194 (Oct. 9, 1997).

> (b) Class Actions Maintainable. An action may be maintained as a class action if the prerequisites of paragraph (a) are satisfied, and in addition:
>
> (1) The prosecution of separate actions by or against individual members of the class would create a risk of:
>
> (A) Inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or
>
> (B) Adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; or
>
> (2) The party opposing the class has acted or refused to act on grounds generally [*7] applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or
>
> (3) The Court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and effi-

cient adjudication of the controversy. The matter pertinent to the findings include:

> (A) The interest of members of the class in individually controlling the prosecution or defense of separate actions;
>
> (B) The extent and nature of any litigation concerning the controversy already commenced by or against members of the class;
>
> (C) The desirability or undesirability of concentrating the litigation of the claims in the particular forum;
>
> (D) The difficulties likely to be encountered in the management of a class action.

The party seeking class certification has the burden of demonstrating to the Court that it has satisfied the requirements of Rule 23. *Muttart, et. al. v. American Guarantee & Mortgage Co., 1998 Del. Super. LEXIS 30*, Del. Super., C.A. No. 96C-09-263-WTQ, Quillen, J. (Feb. 9, 1998), *appeal refused, Del. Supr., 1998 Del. Super. LEXIS 28 (1998)*. [*8] While this case is somewhat different than the traditional mass tort, it has some of the same characteristics in terms of the requirements of the Rule. The underlying claim is one of misrepresentation to many people in a contract context.

### 1. Size of the Class (Numerosity)

While there is no rigid numerical guideline for determining impracticability of joinder, Courts have observed that usually more than 40 members is adequate. *5 Moore's Federal Practice 3d § 23.22[3][a]*. But, Rule 23 does not involve any specific number of putative class members. *Id.* at § 23.22[2]. Rather, whether joinder of class members would be impractical depends on the circumstances surrounding the case and not merely the number of class members. *Id.* (citing *General Telephone Co. of the Northwest, Inc. v. EEOC, 446 U.S. 318, 329, 64 L. Ed. 2d 319, 100 S. Ct. 1698 (1990))*. The number of potential class members is not, in itself, determinative of this analysis. *Liberty Lincoln Mercury, Inc. v. Ford Marketing Corp., D.N.J., 149 F.R.D. 65, 73 (1993)*.

There were approximately 2,740 DelAm flexible premium adjustable whole life insurance policies sold [*9] between 1982 and 1994. Bell Aff. P4, Dkt. No. 47, Ex. A. n2 During the proposed class period, DelAm sold its life insurance products through approximately 530 independent agents and brokers. Sokol Aff. P5, Dkt. No. 47, Ex. B. n3 There is really no dispute among the parties that the number of potential class members is adequate to support the numerosity requirement. Therefore, Superior Court Civil Rule 23(a) is satisfied.

  n2 Bell is the Senior Vice President and Chief Actuary of DelAm.

  n3 Sokol is the Director of National Accounts for the AIG Life Insurance Company, which is the parent of DelAm.

### 2. Common Questions of Law and Fact (Commonality)

This requirement serves the dual purpose of ensuring fair and adequate representation of the interests of the absentee members, and practical and efficient case management. *5 Moore's Federal Practice 3d § 23.23[2]*. "Here, the issue is whether 'the question of law linking the class members is substantially related to the resolution of the litigation, [*10] even though the individuals are not identically situated.'" *Paine Webber R&D Partners, L.P.*, Del. Super., C.A. No. 96C-04-194 (Oct. 9, 1997) (citing *Krapf, 584 A.2d at 1225)*. The commonality requirement will normally be satisfied if the named plaintiffs share at least one question of fact or law with the grievances of the prospective class. *Baby Neal v. Casey*, 3d. Cir., *43 F.3d 48, 56 (1994))*; *5 Moore's Federal Practice 3d § 23.23[2]*. But, if there is significant factual diversity among the class members, or if it is a case of common legal questions dependent on divergent facts, class status is unavailable. *Paine Webber R&D Partners, L.P.*, Del. Super., C.A. No. 96C-04-194 (Oct. 9, 1997) (citing *Krapf, 584 A.2d at 1225)*.

In this case, DelAm does not argue in its brief that the commonality requirement was not satisfied. Indeed, the Third Circuit has noted that, because the requirement may be satisfied by a single common issue, it is easily satisfied, and at least one treatise has been noted. *Baby Neal, 43 F.3d at 56* (citing H. Newberg & A. Conte, 1 *Newberg on Class Actions* § 3.10, at 3-50 (1992)); [*11] see also *In re the Prudential Ins. Co. of America Sales Practice Litigation, 3d Cir., 148 F.3d 283, 310 (1998), cert denied, 525 U.S. 1114, 119 S. Ct. 890, 142 L. Ed. 2d 789 (1999)*. n4 Given the authorities, it appears that in this situation, the commonality requirement of Superior Court Civil Rule 23(a)(2) is probably satisfied.

  n4 Even though the commonality threshold is quite low, there are situations where it is not satisfied. See *Georgine v. Amchem Products Inc., 3d Cir., 83 F.3d 610 (1996), aff'd, Amchem Products Inc. v. Windsor, 521 U.S. 591, 138 L. Ed. 2d 689, 117 S. Ct. 2231 (1997)* (with Opinion); *K.L. by Dixon v. Valdez, D. N.M., 167 F.R.D. 688 (1996)*.

### 3. Typicality

The typicality requirement attempts to ensure that the representative parities' (named plaintiffs') interests are substantially aligned with those of the absent class members. 5 *Moore's Federal Practice 3d §   23.24*[1]. This Judge has recently discussed the requirements [*12] for typicality claims in Delaware:

> The test of typicality is that the legal and factual position of the class representative must not be markedly different from that of the members of the class. . . . In other words, it is whether the representative's interests are "truly aligned" with those of the purported class. . . . The focus is on whether the class representative's claim or defense fairly presents the issues on behalf of the represented class. . . . The typicality requirement is satisfied if the claims arise from the same event, practice, or course of conduct, and are based on the same legal theories. . . . If the proposed class representative's claims require more or less proof than would be required by the claims of other members of the class, class certification is unavailable. . . .

*Paine Webber R&D Partners, L.P.*, Del. Super., C.A. No. 96C-04-194 (Oct. 9, 1997) (internal citations and quotations omitted). "A representative's claim or defense will suffice if it 'arises from the same event or course of conduct that gives rise to the claims [or defenses] of other class members and is based on the same legal theory.'" *Krapf,* 584 A.2d at 1226 [*13] (quoting *Zeffiro v. First Pa. Banking and Trust Co.,* D. Pa., 96 F.R.D. 567, 569 (1983)). n5 "The 'bottom line' is that 'where plaintiff's factual or legal stance is not characteristic of that of other class members, the typicality prerequisite has not been met.'" *Gunter v. Ridgewood Energy Corp.,* D.N.J., 164 F.R.D. 391, 395 (1996) (quoting *Weiss v. York Hospital,* 3d Cir., 745 F.2d 786, 808 (1984), cert denied, 470 U.S. 1060, 84 L. Ed. 2d 836, 105 S. Ct. 1777 (1985)).

> n5 Many Courts, including Courts in the Third Circuit, have determined that the question of whether the typicality requirement is satisfied often overlaps with the analysis of other Rule 23 requirements. 5 *Moore's Federal Practice 3d §  23.23*[3]; *Gunter,* 164 F.R.D. at 395; *see also General Telephone Co. of the Southwest,* 457 U.S. at 157 n.13.

DelAm argues that Mentis' claims are not typical of the class that he seeks to represent. In the Motion [*14] to Dismiss regarding this case, it was held that:

> This policy is ambiguous and falls painfully short of placing a reasonable insured on notice that the premium rates would drastically increase if the policy's rate of return faltered. Although the language of the policy, when read closely, may lead to the "inference" that the premiums may rise, it is certainly not so clear as to place an individual on notice that representations made by the insurer's sales agent regarding policy performance should be completely ignored. The fact that the premiums on this policy may substantially increase is of critical importance, and to obscure this fact under pages of policy ink, as opposed to making it crystal clear, leads this Court to the conclusion that the representations made by the insurer's sales agents are relevant when construing the true terms of this policy. This Court is not, however, inclined to construe the contract at this time, that is, on the Defendant's Motion to Dismiss. The Court simply feels that illustrations and representations made by agents of the insurer are relevant to that construction. Because these alleged representations specify that premiums would not rise, [*15] and this representation may be utilized in construing the contract, Plaintiff has pleaded facts sufficient to paint a colorable claim for breach of contract. Accordingly, Defendant's Motion to Dismiss with respect to Count II (breach of contract) is DENIED.

*Mentis,* Del. Super., C.A. No. 98C-12-023 (July 28, 1999).

As to the consumer fraud claims, this Court opined:

> The Complaint alleges that DelAm committed consumer fraud when it utilized deceptive sales practices, and omitted material facts, to foster the mistaken belief

that its premiums would remain the same throughout the life of the policy. DelAm's counter is two fold. First, it argues that the Consumer Fraud Act does not apply to the insurance industry. Second, it asserts that expressions of future performance are merely opinions, and not subject to the Consumer Fraud Act. . . .

Whether or not DelAm's sales agents expressed "opinions" or outright misleading facts is a question of fact, and cannot be determined on a Motion to Dismiss. The facts alleged in the Complaint, if proven, could very well make out a case for consumer fraud. Accordingly, Defendant's Motion to Dismiss with respect to Count III (consumer [*16] fraud) is DENIED.

*Id.*

It appears that Mentis' legal stance is that he and other class members share the same claims for relief against the Defendant and all claims are based on the same nexus of operative facts and on the same legal theories. Mentis argues that "indeed, the deceptive acts and practices challenged by plaintiff are based on uniform sales practices whereby DelAm's sales force provided written materials to customers that consistently failed to inform customers of the substantial risks associated with these 'insurance' policies." Mentis Br. at 4, Dkt No. 21. In this case, however, Mentis testified that it was not represented to him that, once he transferred dividends, interest, and/or cash value from the Travelers policy to the DelAm policy, he would have to pay no more money to DelAm. Mentis Dep. at 143, Dkt. No. 48. There were no written or oral representations made to Mentis regarding the vanishing premiums. *Id. at 156.* And furthermore, there is no indication that the representations made to Mentis were a result of any sort of standardized marketing or sales procedure provided by the company to brokers it employed. The Affidavits provided [*17] show that the independent agents and brokers in DelAm's distribution system were not controlled by DelAm. The agents were not trained by DelAm beyond being the recipients of the descriptive product information. Sokol Aff. P5. Additionally, other agents asserted that they did disclose the very risk information upon which the Mentis claims are predicated. Caldarone Aff. PP3, 4; Pauley Aff. PP4-9, Einstein Aff. PP3-6, Dkt No. 47, Exs. C, D, E. There are factual complexities and individualized situations that make Mentis' claims atypical of the entire class. This is not a situation where the agents of the company were hired, trained, and controlled by the company issuing the insurance policy. n6

n6 Plaintiff argues that the case *In re Prudential Ins. Co. of America Sales Litigation* is precedent for allowing a class action claim for vanishing premiums. In *Prudential*, the Third Circuit held that certification of a class action claim was proper where it is alleged that Prudential management developed and implemented a fraudulent scheme to sell life insurance policies through a variety of deceptive sales practices, including "churning," "vanishing premium" and "investment plan" sales tactics. *In re Prudential Ins. Co. of America Sales Litigation, 148 F.3d at 292.* The claim was that Prudential was aware of the fraudulent sales practices and discovered patterns of abuse involving financed insurance and did nothing about it. *Id. at 294.* In that case, the Third Circuit affirmed the trial Court's certification of the class action and subsequent class settlement. The *Prudential* case, however, is factually distinct from the case at bar. First, in *Prudential*, the oral component of the sales representatives did not vary appreciably among class members and Prudential sales agents uniformly misled class members with virtually identical oral misrepresentations. *In re Prudential Ins. Co. of America Sales Litigation, D. N.J., 962 F. Supp. 450, 514 (1997).* Second, the Prudential litigation was a request for class only certification for settlement. In cases of class only certification for settlement, the Court need not inquire as to whether the case, if tried, would present impractical management problems. *Amchem Products Inc., 521 U.S. at 620.*

[*18]

In this case, this Judge has held that oral representations made by the broker to Mentis are important. "The Court simply feels that illustrations and representations made by agents of the insurer are relevant to . . . construction [of the contract]." Here, however, Mr. Mentis admits that he never received any representations concerning the vanishing premium claims. The oral representations made by Mentis' insurance agent surely play a large role in any recovery that he might receive and the representations are certainly not the same as the alleged representations made by other brokers. Simply, there is too much factual disparity between representations made to the class members to justify the certification of the class representative.

*4. Adequacy of Representation*

Adequate representation of a class depends on two factors. The Plaintiff's attorney must be qualified, experi-

enced, and generally able to conduct the proposed litigation and the Plaintiff must not have interests antagonistic to those of the class. *Barbieri v. Swing-N-Slide Corp.*, Del. Ch., *21 Del. J. Corp. L. 1037*, C.A. No. 14239, Steele, V.C. (May 7, 1996). Simply stated, the issue is [*19] whether the class representative is competent to represent the entire class. *Prezant, 636 A.2d at 923; Paine Webber R&D Partners, L.P.*, Del. Super., C.A. No. 96C-04-194 (Oct. 9, 1997).

Additionally, the adequacy of the representation under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent. *Amchem Products, 521 U.S. at 625-26*. A class representative must also be part of the class and possess the same interests and suffer the same injuries as the class members. *Id.*

Here there is no dispute that Plaintiff's counsel is adequate to undertake this litigation. Rather, DelAm claims that there is a conflict of interest between members who have fixed premium claims and those who have vanishing premium claims because the damages would be different for the two classes. This discrepancy certainly creates a problem, in that Mentis' claim for recovery may differ from that of other class members. The Court is confident, however, that if this issue was determinative in the certification process, a subclass of plaintiffs could be created to adequately represent the claims of those who had vanishing [*20] premium claims and those who did not. Therefore, the class representative is adequate under Superior Court Civil Rule 23(a)(4).

### 5. 23(b)(3) Certification

The Motion for Class Certification must be denied because the prerequisites of Superior Court Civil Rule 23(a)(3) are not satisfied. Even if the elements of subsection (a) were met, this case falls painfully short of reaching the class certification prerequisites for Superior Court Civil Rule 23(b)(3). n7

---

n7 The Plaintiff argues that the class certification meets the Rule 23(b)(3) requirements.

---

Rule 23(b)(3) authorizes a single lawsuit for monetary redress on behalf of numerous persons having similar disputes with the Defendant, where economies of time, effort and expense would be achieved by representative group litigation. *Nottingham Partners, 564 A.2d at 1095-1096*. A class action may be obtained under this section of the Rule if this Court finds both that (1) common questions of law or fact predominate over questions affecting [*21] only individual members ("predominance") and (2) a class action is superior to other available methods for resolving the controversy ("superiority"). 5 *Moore's Federal Practice § 23.44*. "The rule requires a pragmatic assessment of the entire action and all of the issues involved." *Id.* at 23.46[1]. But "certification of a class based on the existence of oral misrepresentations is generally denied on the ground that such representations are likely to vary from purchaser to purchaser, so that such a case involves predominantly individual questions." *Id.* at 23.47[1][b][iii].

Even if the commonality requirement of Rule 23(a) may be satisfied by a shared experience, the predominance requirement is far more demanding. *Amchem Products, Inc, 521 U.S. at 623-24*. The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation. *Id. at 623*.

This Court has held previously that the contract between Mentis and DelAm was ambiguous and the "representations made by the insurer's sales agents are relevant when construing the true terms of the policy." *Mentis, 1999 Del. Super. LEXIS 419*, *15, Del. Super., [*22] C.A. No. 98C-12-023 WTQ (July 28, 1999). It appears clear from the record that there is no scheme or training which pervades the trade practices of DelAm. Thus, this case is more suited to an individualized inquiry into the representations made by particular agents. This case is quite similar to a situation where the Michigan District Court held that a "determination of whether and which illustrations were given to class members, and . . . the nature of oral presentations made to them at the point of sale, [are] elements of obvious and undeniable importance to the plaintiff's claims, [and] are matters requiring individualized fact development." *In re Jackson National Life Ins. Co. Premium Litigation*, D. Mich., *183 F.R.D. 217, 221 (1998)*. The same type of individualized inquiry is necessitated by the facts of this case.

Plaintiff also argues that this case should be governed by Delaware law because the Defendant's home State is Delaware and Delaware bears the most significant relationship to the claims. Defendant argues that, in fact, an application of the law of several different States is required by due process considerations. While the Plaintiff's view here may [*23] have merit, n8 the Court does not need to go into a detailed exploration of the law that should apply to the several claims because, on other grounds, the class certification claim fails.

---

n8 *See Telephone and Data Systems, Inc. v. Eastex Cellular, L.P.*, Del. Ch., *19 Del. J. Corp. L. 910*, Civ. A. No. 12888, Jacobs, V.C. (Aug. 27, 1993) (stating that even with an array of potentially interested jurisdictions, the choice of law dispute falls by the wayside where the substantive

law concerning contract formation is the same). While the Court is fairly confident that the substantive contract law will be similar, possibly due to its own unfamiliarity, it is less confident to find similar consistency with regard to the consumer fraud statutes of several different States.

The Court is convinced that there is a fact intensive analysis required as to each policy. The claims asserted are best suited for individualized treatment by those plaintiffs who wish to bring them. This Court has held that this Plaintiff's [*24] claims must be viewed in the context of the full factual presentation made to him. Therefore, any attempt by this Court to try to look at all of the individual claims made by every sales agent would be unmanageable. It seems clear to the Court that the effort to make a class action out of this case should fail under the now traditional analysis of Rule 23.

The case does present an opportunity to take a fresh look at the class action process. Class actions serve the obvious social purpose of permitting a large number of claimants with small claims to assert those claims, a simple strength in numbers concept. But there are problems in dealing with mass torts and a nationwide class. To be useful, the class action device must advance the efficiency and economy of litigation which is a principal purpose of the procedure. *General Telephone Co. of Southwest, 457 U.S. at 159* (quoting *American Pipe & Construction Co. v. Utah, 414 U.S. 538, 553, 38 L. Ed. 2d 713, 94 S. Ct. 756 (1974))*. Speaking generally, there is an inherent clash between efficiency and fairness, between those concerned with the high public and private cost of duplicative litigation and those [*25] committed to an individual's right to control litigation involving personal interests. John J. Coffee, Jr., *Class Wars: The Dilemma of the Mass Tort Class Action*, 95 Colum.L.Rev. 1343, 1346 (1995). The defendants as well as the plaintiffs have a legitimate interest in a trial focus on each claim on the merits. Thus, the issue is not simple and the policy support for the class action treatment is not as automatic as it may appear at first blush.

Speaking historically, class actions originated in equity and were unknown at the common law, in the money damage context. When Delaware modeled its modern Civil Court Rules after the Federal Rules of Civil Procedure, our draftsmen initially did not adopt the Rule governing class actions for the Superior Court, evidently believing, quite properly historically, that class actions belonged in Chancery in a bifurcated State system. When you move class actions from Chancery to Superior Court, you change the nature of the game. The State's constitutional right of jury trial is implicated. This implication certainly was not part of the original intent in the traditional equitable, and primarily defensive, bill of peace, the predecessor [*26] of class actions. In equity, the processing of claims could take on some aspects akin to a receivership, an approach at least somewhat foreign to common law damage litigation.

Speaking evidentially, since a large percentage of common law class actions will sound in tort there will be a tendency to look for shortcuts in the matter of proof of damages, along the lines of regulatory agencies. This tendency is also foreign to traditional standards for damages at common law. When standards of proof lessen to serve some mass interest, the Court runs the risk of blurring its role as a neutral adjudicator on an evidentiary record and developing an interest in enforcing the "policy" involved in the litigation. I confess a fear of these trends.

Speaking professionally, as everyone knows there is a lot of debate about class actions. On the one hand, they are a means of asserting mass tort in an economically feasible way. On the other hand, recoveries by an individual on a per claim basis are sometimes modest to the extent of meaningless. Our profession has been subject to some criticism because the class action becomes the vehicle for labeling lawyers with disfavor for acting out of greed and [*27] self interest to the detriment rather than the service of the public. There is, of course, the additional debate about the role of Judge-made law in policy making currently concerning cigarettes, gun control, assisted suicide, abortion, and so on, no doubt soon to be expanded to alcohol and prescription drugs.

Speaking parochially, there is, it seems to me, another factor that should be placed directly on the table. The Superior Court is a State Trial Court with overwhelming responsibilities in administering the criminal law and in providing a Delaware law forum for individual and entity civil litigants. As a matter of priority, how should the Judges of this Court spend their most valuable commodity--time? For example, the need to deal with damages in tort can be a huge problem if the injuries suffered by each plaintiff are peculiar and distinct. Do we really want to be pressured to lessen the traditional common law standard of proof or rules of evidence to accommodate the situation and shortcut to a result? As, in this case, where the facts giving rise to liability vary on a case-by-case basis, should policy considerations favor entertaining the litigation? And, if the result is [*28] a minuscule recovery by each claimant, most of whom are not from our State and did not seek our help, do we want to consciously develop that litigation area? In short, we should, in my opinion, ask ourselves who we are serving and why and how well.

The class damage action works best when there is a single factual issue or two with regard to liability and a *pro rata* recovery. There are cases where the liability

issue is single and damage can be variable but relatively easy to measure, e.g., replacement of faulty plumbing pipes. Indeed, this case might arguably fit into that category on the damage side. There are cases such as *Muttart* where the class is local and a State interest is therefore somewhat higher. So there is a spectrum and it is hard to generalize. But the class action situation here is not the same as the asbestos cases or the insurance coverage cases, where the complex litigation is generally pursued by an individual or a company against several potentially liable defendants. Such litigation is within our traditional mode. Moreover, there is a direct State interest in stockholder class actions involving Delaware corporate law against Delaware corporations and [*29] fiduciaries, cases where recovery is generally *pro rata*. So, cases vary. But, as I have noted before, even the Commentary to the corresponding Federal Rule of Civil Procedure warns against certifying classes involving mass tort accidents. *See* Adv. Comm. Notes, *Fed. R. Civ. P. 23, 28 U.S.C.A. 385*-86 cited in *Muttart*, Del. Super., C.A. No. 96C-09-063 (Feb. 9, 1998), slip op. at 6. The closer you get to elements involving the mass tort situation, the greater the need to be wary.

I suppose there is an ego trip for the Bench and Bar in handling the broad national class action damage claims involving varying issues of liability and recovery, with the Bar, of course, having a direct financial interest. But that is not the prime reason the Court exists and certainly cannot rank high as a basis for priority in the competition for the Court's calendar.

I was not on the Bench when Rule 23 was adopted, effective September 30, 1994, and I was not privy to discussions concerning the Rule. But in my position as a sitting Judge, it is my feeling that the Superior Court Class Action Rule should be applied conservatively, and particularly so in mass tort and similar [*30] situations; we should not seek to become a mecca for the nation's tort litigation and its imaginative expansion by counsel. Caution should reign.

### *CONCLUSION*

For the foregoing reasons, Plaintiff's Motion for Class Certification pursuant to Superior Court Civil Rule 23 is DENIED and certification is REFUSED. IT IS SO ORDERED.

William T. Quillen