# EXHIBIT D

Westlaw.

Not Reported in A.2d
Not Reported in A.2d, 2003 WL 220511 (Del.Super.)
**(Cite as: Not Reported in A.2d)**

Page 1

▷
Only the Westlaw citation is currently available.
UNPUBLISHED OPINION. CHECK COURT RULES BEFORE CITING.
Superior Court of Delaware.
Duane Adam THOMAS, Plaintiff,
v.
HARFORD MUTUAL INSURANCE COMPANY and Concentra Managed Care, Inc., Defendants.
**No. Civ.A. 01C-01-046 HD.**

Submitted Nov. 12, 2002.
Decided Jan. 31, 2003.

Upon Defendants Harford's and Concentra's Motions for Summary Judgment Granted in Part, Denied in Part.

John S. Spadaro, and Roger D. Landon, Murphy Spadaro & Landon, Wilmington, Delaware, for Plaintiff.
Kevin J. Connors, Marshall, Dennehey, Warner, Coleman & Goggin, Wilmington, Delaware and John C. Sullivan, Post & Schell, P.C., Philadelphia, Pennsylvania, for Defendant Harford Mutual Insurance Company.
James C. Strum, Stradley, Ronon, Stevens & Young, LLP, Wilmington, Delaware and Joseph D. Cronin, and Catherine A. Pajakinas, Stradley, Ronon, Stevens & Young, LLP, Philadelphia, Pennsylvania, for Defendant Concentra Managed Care, Inc.

OPINION
RIDGELY, President J.

*1 Plaintiff Duane Thomas ("Thomas") has brought this bad faith claim against Defendants Harford Mutual Insurance Co. ("Harford") and Concentra Managed Care, Inc. ("Concentra"), based on the alleged delay in authorizing necessary medical treatments Harford was bound to provide as required by the Delaware Worker's Compensation Act. Specifically, Thomas contends that Harford and Concentra breached their duty of good faith and fair dealing when they failed to pre-approve payment for an evaluation for Reflex Sympathetic Dystrophy ("RSD") at Johns Hopkins and subjected him to numerous medical examinations. Thomas further alleges a breach of the Delaware Insurance Fraud Prevention Act, the Consumer Fraud Act, and the Unfair Trade Practices Act, as well as intentional and negligent infliction of emotional distress, simple negligence, and tortious interference with contract. Defendants have moved for summary judgment. For the reasons that follow, Defendants motions are denied as to Counts I and VII and granted as to Counts II, III, IV, V and VI.

I. BACKGROUND

A. Facts

The facts at this stage must be read in the light most favorable to the nonmoving party, Mr. Thomas.[FN1] Thomas injured his knee in an industrial accident on June 15, 1998. Defendant Harford was his employer's worker's compensation insurer, and Concentra was employed to act as a case manager by Harford to interact directly with Thomas. Harford accepted Thomas's claim for that work related injury. In October, 1998, Thomas's orthopedist, Dr. Tooze, first diagnosed Thomas with RSD, a rare disorder of the sympathetic nervous system characterized by chronic, severe pain that, without proper treatment, can leave those suffering from the condition permanently disabled. Dr. Tooze contacted Concentra on October 29, 1998 and advised Concentra that he had diagnosed Thomas with RSD. His symptoms worsened in November, which caused Dr. Tooze to recommend Thomas be evaluated at Johns Hopkins' Multidisciplinary Pain Management Center; an appointment was arranged for January 5, 1999. However, Concentra arranged for Thomas to be examined by Dr. Gelman, an orthopedist, on January 29, 1999 to determine medical necessity of the evaluation. Concentra refused to pre-approve payment for the consultation fee at Johns Hopkins pending the examination by Dr. Gelman. Dr. Gelman's examination of Thomas confirmed his diagnosis of RSD and on March 26, 1999, Concentra pre-approved payment for Plaintiff to be examined by a neurologist, Dr. LeBel and arranged for that appointment to take place on July 12, 1999.

FN1. *Shagrin v. Wilmington Medical Center,* 304 A.2d 61, 63 (Del.Super.Ct.1973).

At some point during this period, Concentra's

Case 1:04-cv-01324-JJF-LPS   Document 206-5   Filed 05/24/2006   Page 3 of 7

Not Reported in A.2d                                                    Page 2
Not Reported in A.2d, 2003 WL 220511 (Del.Super.)
(Cite as: Not Reported in A.2d)

involvement ended, and on June 2, 1999, an attorney retained by Harford informed Thomas that he was to submit to another "Independent Medical Examination" ("IME") with Dr. Edelson (another neurologist) on August 10, 1999.

Before he could make it to that appointment, Thomas's symptoms grew worse to the point that he was hospitalized at Hahnemann Hospital from June 30 through July 9, 1999 and again from July 23 through August 1, 1999 for severe symptoms of RSD. During these hospitalizations he was treated by Dr. LeBel, the neurologist Concentra had arranged for Thomas to see in July. His symptoms again worsened, necessitating an admission to Kent General Hospital's emergency department on August 9, 1999. This prevented his appearance at the "IME" with Dr. Edelson on August 10.

*2 Dr. LeBel recommended implantation of a morphine pump, which was scheduled for August 20, 1999; Harford refused to pre-approve this procedure until after Thomas was examined by Dr. Edelson, which was rescheduled for August 25, 1999. Thomas filed an emergency petition with the Industrial Accident Board on August 19, 1999, and Harford pre-approved payment for the morphine pump on August 27, following the examination by Dr. Edelson.

Thomas claims that the best chance of arresting the progression of RSD and avoiding its grave debilitating effects is through early intervention by a neurologist who specializes in the treatment of RSD. He alleges that Defendant's denial of preapproval of the Johns Hopkins evaluation resulted in progression of the RSD, leading to the severe debility he now suffers.

B. Claims of the Parties

Thomas alleges that Defendants breached their contractual duty to administer his claim in good faith under the Worker's Compensation Act,[FN2] and as a result he suffered injury from alleged delays in pre-approving treatment for his RSD. Plaintiff asserts seven counts in this action: (I) bad faith breach of contract and (II) insurance fraud pursuant to the Delaware Insurance Fraud Prevention Act [FN3] ("DIFPA") and the Consumer Fraud Act [FN4] ("CFA") against Harford only; (III) intentional infliction of emotional distress, (IV) negligent infliction of emotional distress, and (V) deceptive and unlawful trade practices pursuant to the Unfair Trade Practices Act [FN5] ("UTPA") against both Harford and Concentra; and (VI) simple negligence and (VII) tortious interference with contract against Concentra.

> FN2. 19 Del. C. §§ 2301-2397.
>
> FN3. 18 Del. C. §§ 2401-2415.
>
> FN4. 6 Del. C. §§ 2511-2527.
>
> FN5. 18 Del. C. §§ 2301-2318. This should be distinguished from the *Uniform Deceptive Trade Practices Act* (6 Del. C. §§ 2531-2536), dealing with deceptive practices in the sale of goods or services, under which Plaintiff has made no claim.

Harford asserts that since no law requires pre-approval of medical consultations and the Worker's Compensation Act permits Harford to require Plaintiff submit to medical examinations, there can be no bad faith as a matter of law. Harford further contends that there is no private right of action under the DIFPA or the UTPA, and that damages for emotional distress are not available as a matter of law for bad faith breach of contract.

Concentra contends that Thomas lacks standing under the UTPA and fails to state a claim under the CFA; Concentra also joins Harford in its contention that there is no private right of action under the UTPA or the DIFPA.

II. STANDARD OF REVIEW

Because references have been made to matters outside the pleadings, the motions will be treated as motions for summary judgment. Summary judgment is appropriate if, viewing the record in the light most favorable to the non-moving party, the record reveals that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.[FN6] As movants, the defendants bear the burden of showing that no genuine issue of material fact exists and they are entitled to judgment as a matter of law.[FN7] However, if the Court determines that further inquiry into the facts is necessary to clarify the application of the law, summary judgment will not be granted.[FN8] In viewing the facts in the light most favorable to the plaintiff, the court will accept as true any undisputed facts asserted by either party but accept the plaintiff's version of any disputed facts.[FN9]

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d, 2003 WL 220511 (Del.Super.)
**(Cite as: Not Reported in A.2d)**

FN6. Super. Ct. Civ. R. 56(c); *Borish v. Graham*, 655 A.2d 831, 833 (Del.Super.Ct.1994).

FN7. *Borish*, 655 A.2d at 833.

FN8. *Brown v. Liberty Mutual Ins. Co.*, 1999 Del.Super. LEXIS 525 at *6 (Del.Super.Ct.1999).

FN9. *Merrill v. Crothall-American, Inc.*, 606 A.2d 96, 99-100 (Del.1992).

### III. DISCUSSION

#### A. The Bad Faith Claim

**\*3** Defendants claim that Thomas cannot assert a bad faith breach of contract claim grounded in a Worker's Compensation action. The Delaware Supreme Court addressed this issue directly in *Pierce v. International Insurance Company of Illinois*,[FN10] which is controlling in the case at bar. The purpose of the Worker's Compensation Act is to provide for quick resolution of worker's compensation claims without resort to costly and uncertain litigation. The contract of insurance is between the employer and the insurance company, but it exists for the benefit of the employees. Employees are third party beneficiaries of the Worker's Compensation insurance contract by statute. As intended third-party beneficiaries of the contract, employees must be afforded standing to enforce their rights to prevent circumvention or exploitation of the system.[FN11]

FN10. 671 A.2d 1361 (Del.1996).

FN11. *Id.* at 1366.

The *Pierce* court went on to hold that "a duty of good faith and fair dealing attaches to every contract, and this duty cannot be disclaimed." [FN12] In order to establish bad faith breach of contract in the insurance context, the plaintiff must show that the insurer failed to honor its contractual obligations without reasonable justification.[FN13] "Where the non-moving party brings forth facts which, if believed by the jury, would support a finding of a breach of the implied covenant of good faith, summary judgment is inappropriate." [FN14]

FN12. *Id.* at 1366.

FN13. *Casson v. Nationwide Ins. Co.*, 455 A.2d 361, 369 (Del.Super.Ct.1982).

FN14. *Merrill*, 606 A.2d at 102 (Del.1992).

Because I find it desirable to inquire more thoroughly into the facts admissible at trial, summary judgment on the bad faith claim is denied at this time.[FN15]

FN15. *Brown*, 1999 Del.Super. LEXIS 525 at *8.

#### B. Consumer Fraud Act

Plaintiff next asserts a claim under the Consumer Fraud Act.[FN16] This statute provides for recovery by consumers for acts of "deception, fraud, false pretense, false promise, misrepresentation, or the concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale, lease or advertisement of any merchandise." [FN17] Recovery is available for consumers of insurance products notwithstanding the exemption to matters subject to the Insurance Commissioner in section (b)(3).[FN18]

FN16. 6 *Del. C.* §§ 2511-2527.

FN17. 6 *Del. C.* § 2513(a).

FN18. *DiSimplico v. Equitable Variable Life Ins. Co.*, 1988 Del.Super. LEXIS 52 at *8 (Del.Super.Ct.1988); *Crowhorn v. Nationwide Mutual Ins. Co.*, 2001 Del.Super. LEXIS 358 at *22-3 (Del.Super.Ct.2001), citing *Mentis v. Delaware American Life Ins. Co.*, 1999 Del.Super. LEXIS 419 at *17 (Del.Super.Ct.1999).

Defendants contend that Plaintiff has no standing under the CFA because he was not a party to the contract of insurance, and was not privy to representations or statements in connection with the sale of the policy.

While it is true that generally only a party to a contract has enforceable rights under it, an intended third-party beneficiary to a contract can also enforce

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

his or her rights under a contract.[FN19] Worker's Compensation beneficiaries as intended third-party beneficiaries can enforce their rights under the Worker's Compensation insurance contract.[FN20] However, Plaintiff's allegations of fraud surround representations made by agents of Concentra, made at the time Concentra began as Thomas's "case manager." Thomas was not involved in the "sale or advertisement" of the policy; he was a beneficiary under the policy his employer had in force at the time of his work accident. Similarly, Concentra was not a party to the contract between Harford and Thomas's employer.

FN19. *Madison Realty Partners 7, LLC v. AG ISA, LLC*, 2001 Del. Ch. LEXIS 37 at *14 (Del. Ch.2001).

FN20. *Pierce*, 671 A.2d at 1366.

*4 Although the provisions of the Consumer Fraud Act are to be liberally construed,[FN21] this Court must give effect to the language of the statute which restricts its application to deceptive practices "in connection with the sale or advertisement" of the merchandise. Given the clear language of the statute, this Court must hold that the post-sale representations made by Concentra were not connected to the sale or advertisement of the policy, and therefore do not fall within the constructs of the Consumer Fraud Act.[FN22] Accordingly, Defendants are entitled to summary judgment on this claim.

FN21. 6 *Del. C.* § 2512, see *Pack & Process, Inc. v. Celotex Corp.*, 503 A.2d 646, 658 (Del.Super.Ct.1985).

FN22. *Norman Gershman's Things to Wear, Inc. v. Mercedes-Benz of North America*, 558 A.2d 1066, 1074 (Del.Super.Ct.1989), aff'd, 596 A.2d 1358 (Del.1991). But see *Lony v. E.I. duPont de Nemours & Co., Inc.*, 821 F.Supp. 956 (D.Del.1993) (plaintiff survived summary judgment, holding that after-sale statements by seller to purchaser could be viewed by a trier of fact as "in connection with the sale of merchandise"); *Pack & Process, Inc.*, 503 A.2d at 658 (statements made to second owner of warehouse by manufacturer of warehouse roof in connection with repairs on roof may be "in connection with sale" for purposes of surviving summary judgment.)

C. Insurance Fraud Prevention Act

Thomas next contends Harford breached Delaware's Insurance Fraud Prevention Act [FN23] through its actions in administering his claim.[FN24] Because the DIFPA has been in effect a relatively short time,[FN25] there is a dearth of precedent guiding the application of this Act in civil suits. However, the DIFPA is similar in structure to the Unfair Trade Practices Act, [FN26] and the creation of a private right of action under the DIFPA can be evaluated in the same manner. Several factors, identified in *Moses v. State Farm*,[FN27] are relevant in this determination: (1) whether the plaintiff is a part of the class of specific persons the statute was enacted to protect; (2) whether there is any evidence of legislative intent to grant or deny a private cause of action under the statute; and (3) whether the presence of a private cause of action is consistent with the purpose of the legislation. [FN28]

FN23. 18 *Del. C.* § § 2401-2415.

FN24. Thomas claims Harford's conduct violated the following sections of the DIFPA:
(c) It shall be a fraudulent insurance act for any insurer or any person acting on behalf of such insurer to knowingly, by act or omission, with intent to injure, defraud or deceive:
(1) Present or cause to be presented to an insurance claimant false, incomplete or misleading information regarding the nature, extent and terms of insurance coverage which may or might be available to such claimant under any policy of insurance, whether first or third party.
(2) Present or cause to be presented to any insurance claimant false, incomplete or misleading information regarding or affecting in any fashion the extent of any claimant's right to benefit under, or to make a claim against, any policy of insurance whether first or third party.
18 *Del. C.* § 2407(c).

FN25. The Act became effective June 17, 1997.

FN26. 18 *Del. C.* § § 2301-2318.

FN27. *Moses v. State Farm Fire & Casualty Ins. Co.*, 1991 Del.Super. LEXIS 462

Case 1:04-cv-01324-JJF-LPS   Document 206-5   Filed 05/24/2006   Page 6 of 7

Not Reported in A.2d
Not Reported in A.2d, 2003 WL 220511 (Del.Super.)
(Cite as: Not Reported in A.2d)

Page 5

(Del.Super.Ct.1991).

FN28. *Id.* at *10, citing *Cort v. Ash*, 422 U.S. 66, 78 (1975).

Analysis of the DIFPA using the *Moses* factors demonstrates that the stated purpose of the Act is to "confront aggressively the problem of insurance fraud in the State by facilitating the detection of insurance fraud, reducing the occurrence of such fraud through administrative enforcement and deterrence, requiring the restitution of fraudulently obtained insurance benefits and reducing the amount of premium dollars used to pay fraudulent claims."[FN29] The purpose is to administratively control fraud, not provide a remedy for the class of persons who might be harmed by such acts.

FN29. 18 *Del. C.* § 2402.

Nowhere in the Act is a specific class of complainants established; instead, the Act creates the Delaware Insurance Fraud Prevention Bureau to carry out the Act's mandate.[FN30] This body is empowered to investigate, review complaints of fraud, and conduct independent examination of insurance fraud.[FN31] Section 2408 of the Act creates a mandatory reporting scheme that requires insurers to report suspected insurance fraud to the Bureau. Additional provisions provide for administrative penalties and hearings before the Bureau and restitution for fraudulently paid claims.[FN32] The terms of the Act instill the Bureau with powers, while explicitly stating that criminal action shall not be precluded by imposition of administrative penalties.[FN33] By not addressing a private right of action, the Act has impliedly precluded private action under the DIFPA.

FN30. 18 *Del. C.* § 2404.

FN31. *Id.*

FN32. 18 *Del. C.* § 2411.

FN33. 18 *Del. C.* § 2410(1), 18 *Del. C.* § 2413.

*5 Finally, similar to the UTPA, the language of the DIFPA does not mention any reasonable reliance element, nor does it require showing of damages. If the Act were construed as implying a private cause of action, it would have to be interpreted as a strict liability action against insurers.[FN34] This is clearly not the intent of the statute, and is inconsistent with a private cause of action.

FN34. *Moses,* 1991 Del.Super. LEXIS 462 at *12.

Therefore, Defendant's motion for summary judgment as to Count II, insurance fraud pursuant to the CFA and the DIFPA is granted.

D. Intentional and Negligent Infliction of Emotional Distress

Thomas next claims both Harford and Concentra are liable for negligent and intentional infliction of emotional distress. In *Pierce,* the Supreme Court held that an action for a breach of the covenant of good faith, which sounds in contract, does not allow recovery for emotional distress.[FN35] There is no evidence of intentional conduct on the part of the defendants to sustain an action for intentional tort. The claims in *Pierce* were substantially similar to this case, and *Pierce* is controlling, therefore Summary Judgment is granted in favor of Defendants on Counts III and IV of the Complaint.

FN35. *Pierce,* 671 A.2d at 1368.

E. Deceptive and Unlawful Trade Practices

Thomas has conceded that the weight of authority holds that there is no private right of action under the Unfair Trade Practices Act, as this Court has held in *Moses*[FN36] and *Playtex v. Columbia Casualty Co.*[FN37] Summary judgment is granted for Defendants on Count V of the Complaint.

FN36. 1991 Del.Super. LEXIS 462.

FN37. 1993 Del.Super. LEXIS 58 (Del.Super.Ct.1993).

F. Simple Negligence

Although Defendants generally aver that Plaintiff's Complaint should be dismissed in its entirety, Defendants have not articulated an argument for dismissal of Count VI, simple negligence. Even so, it is well-established that absent some relationship of trust and confidence, contract principles govern

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

actions on insurance contracts and the Plaintiff's claim here sounds only in contract.[FN38] Accordingly, Defendants are entitled to summary judgment on the negligence claim.

FN38. *Pierce,* 671 A.2d at 1367.

### G. Tortious Interference With Contract

Thomas's final allegation is tortious interference with contract against defendant Concentra. This claim asserts that Concentra acted to interfere with Thomas's receipt of benefits to which he was entitled under the contract between Harford and Thomas's employer.

Delaware courts have adopted the Restatement of Torts (Second) to analyze the tort of intentional interference with contract relations.[FN39] To state a claim for tortious interference with contract, a plaintiff must plead facts that demonstrate the existence of: (1) a valid contract (2) about which defendant has knowledge, (3) an intentional act by defendant that is a significant factor in causing the breach of the contract, (4) done without justification, and (5) which causes injury.[FN40] The Restatement further supplies factors for determining whether interference is improper, which include:

FN39. *Grand Ventures, Inc. v. Paoli's Restaurant, Inc.,* 1996 Del.Super. LEXIS 3 at *8 (Del.Super.Ct.1996), citing *Irwin & Leighton v. W.M. Anderson Co.,* 532 A.2d 983 (Del. Ch.1987).

FN40. *Madison Realty Partners 7, LLC,* 2001 Del. Ch. LEXIS 37 at *21-2.

(a) the nature of the actor's conduct, (b) the actor's motive, (c) the interests of the other with which the actor's conduct interferes, (d) the interest sought to be advanced by the actor, (e) the social interests in protecting the freedom of action of the actor and contractual interests of the other, (f) the proximity or remoteness of the actor's conduct to the interference, and (g) the relations between the parties.[FN41]

FN41. *Grand Ventures,* 1996 Del.Super. LEXIS 3 at *9, citing Restatement (Second) of Torts § 767.

*6 In the instant case, a valid contract existed between Harford and Thomas's employer; Thomas was an intended third-party beneficiary of that contract to provide Worker's Compensation insurance. In order to vindicate the purpose of the Worker's Compensation Act, Thomas is able to enforce their rights under the contract of insurance, even though he is not in privity with the insurance carrier.[FN42] The second element, defendant's knowledge, is clearly met. The third and fourth elements are based in the factual contentions of the parties. Thomas contends that Concentra, through its case manager, prevented Thomas from receiving Worker's Compensation benefits due him under the contract and that Concentra delayed in approving payment for treatments that were later deemed medically necessary, when no physician ever opined that any treatment received or requested by Thomas was not reasonable and necessary. Concentra contends that its demands for "independent medical examinations" were justified by the Worker's Compensation Act, and that it did not unduly delay Thomas's care by its alleged bad faith denial of pre-approval of evaluations and treatments. The highlighted factual dispute does not permit the Court to grant summary judgment on this count at the current state of the record, therefore, summary judgment is denied as to Count VII.

FN42. *Pierce,* 671 A.2d at 1364, citing *Correa v. Pennsylvania Mfrs. Ass'n Ins. Co.,* 618 F.Supp. 915, 924 (D.Del.1985).

### IV. CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment is *DENIED* as to Counts I and VII, and *GRANTED* as to Counts II, III, IV, V and VI.

IT IS SO ORDERED.

Del.Super.,2003.
Thomas v. Harford Mut. Ins. Co.
Not Reported in A.2d, 2003 WL 220511 (Del.Super.)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.