# EXHIBIT A

Westlaw.

149 Fed.Appx. 81                                                               Page 1

149 Fed.Appx. 81, 2005 WL 2248799 (C.A.3 (Pa.))
(Cite as: 149 Fed.Appx. 81)

Briefs and Other Related Documents
This case was not selected for publication in the
Federal Reporter.NOT PRECEDENTIAL Please
use FIND to look at the applicable circuit court rule
before citing this opinion. Third Circuit Local
Appellate Rule 28.3(a) and Internal Operating
Procedure 5.3. (FIND CTA3 Rule 28.0 and CTA3
IOP APP I 5.3.)
United States Court of Appeals,Third Circuit.
ADVANCED TUBULAR PRODUCTS, INC.,[*]
Appellant
v.
SOLAR ATMOSPHERES, INC. (*Pursuant to
Clerk's Order of 6/16/04).
No. 04-2016.

Submitted Under Third Circuit LAR 34.1(a) Sept.
12, 2005.
Decided Sept. 16, 2005.

**Background:** Manufacturer of steel tubing brought
action against contractor it hired to heat treat the
tubing for breach of contract and fraudulent
misrepresentation after manufacturer's customers
discovered that the heat-treated tubing was
defective. The United States District Court for the
Eastern District of Pennsylvania, Berle M. Schiller,
J., 2004 WL 540019, entered summary judgment in
favor of contractor, and manufacturer appealed.

**Holdings:** The Court of Appeals, Sloviter, Circuit
Judge, held that:

1(1) manufacturer accepted contractor's terms of
sale by shipping non-sample tubing to the
contractor;

2(2) limitation of liability provision in parties'
contract did not fail in its essential purpose in
violation of Pennsylvania law; and

4(3) Pennsylvania's "gist of the action" doctrine

barred manufacturer's fraud claim.

Affirmed.

West Headnotes

**[1] Sales 343 €═22(3)**

343 Sales
    3431 Requisites and Validity of Contract
        343k22 Offer to Sell
            343k22(3) k. Acceptance of Offer to Sell.
Most Cited Cases
Manufacturer of steel tubing accepted heat
treatment contractor's terms of sale by shipping
non-sample tubing to the contractor, where
manufacturer had made contractor's ability to
effectively heat treat sample tubes a condition
precedent to its acceptance of contractor's offer, and
contractor satisfied that condition precedent by
effectively heat treating sample tube coils.

**[2] Sales 343 €═418(6)**

343 Sales
    343VIII Remedies of Buyer
        343VIII(C) Actions for Breach of Contract
            343k418 Damages
                343k418(6) k. Agreements Affecting
Measure of Damages. Most Cited Cases
Limitation of liability provision in contract for heat
treatment of steel tubing, under which contractor's
liability to manufacturer of the tubing was limited to
twice the amount it charged for services performed,
did not fail in its essential purpose in violation of
Pennsylvania law; remedy was not limited to repair
and replacement and, although defect in treated
tubing was not discovered within a short time after
shipment, manufacturer was aware of the possibility
of an undiscoverable problem at time it entered into
contract. 13 Pa.C.S.A. § 2719.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

149 Fed.Appx. 81                                                                            Page 2

149 Fed.Appx. 81, 2005 WL 2248799 (C.A.3 (Pa.))
(Cite as: 149 Fed.Appx. 81)

**[3] Fraud 184** ☞**24**

184 Fraud
    184I Deception Constituting Fraud, and Liability
Therefor
        184k24 k. Acts Induced by Fraud. Most Cited
Cases
Under Pennsylvania law, manufacturer of steel
tubing was not fraudulently induced into entering
into a contract to heat treat the tubing, where
contractor demonstrated it could effectively treat
sample coils before it entered into contract with
manufacturer.

**[4] Fraud 184** ☞**32**

184 Fraud
    184II Actions
        184II(A) Rights of Action and Defenses
            184k32 k. Effect of Existence of Remedy
by Action on Contract. Most Cited Cases
Pennsylvania's "gist of the action" doctrine, barring
tort claims that arise in performance of a contract,
barred steel tubing manufacturer's fraud claim
against contractor that allegedly failed to effectively
heat treat tube coils while performing the contract.

**[5] Federal Courts 170B** ☞**350.1**

170B Federal Courts
    170BV Amount or Value in Controversy
Affecting Jurisdiction
        170Bk350 Fictitious or Colorable Claims
            170Bk350.1 k. In General. Most Cited
Cases
In determining whether the party asserting diversity
jurisdiction of the court has met the amount in
controversy requirement, sum claimed by the party
asserting the jurisdiction controls if the claim is
apparently made in good faith. 28 U.S.C.A. § 1332.

***82** On Appeal from the United States District
Court for the Eastern District of Pennsylvania.
(D.C. No. 03-cv-00946). District Judge: Hon.
Berle M. Schiller.

Before SLOVITER, BARRY and SMITH, Circuit
Judges.

*OPINION*
SLOVITER, Circuit Judge.
**\*\*1** This case comes to us on appeal by Advanced
Tubular Products (Tubular) from an order of the
District Court granting summary judgment to
defendant Solar Atmospheres (Solar). On appeal,
we must determine when the contract between the
two parties was formed and whether the contract
included Solar's "Terms of Sale." We must also
decide whether the limited remedies available to
Tubular under Solar's terms failed in their essential
purpose and thus barred summary judgment.
Lastly, we must determine whether Solar
fraudulently induced Tubular to enter into the
contract and whether the "gist of the ***83** action"
doctrine bars Tubular's fraud claim.

I.

Tubular was a Kentucky corporation that
manufactured stainless steel tubing. Originally, the
majority of the company's business was derived
from the automotive industry but in 2000/2001
Tubular decided to begin selling tubing to the oil
and gas industry. As a result, Tubular contacted
Solar regarding Solar's ability to provide heat
treatment for Tubular's stainless steel tubing.
Tubular met with Solar and discussed the demands
of the particular heat treatment application needed
for the job. This treatment included the
specification standard known as ASTM A789. After
being informed of the need to use ASTM A789,
Solar assured Tubular that it was familiar with the
process and that "they could handle it." App. at 2.

On February 19, 2001, Tubular sent Solar three
sample coils of tubing, labeled "sample," to Solar
for treatment. These sample tubes were heat
treated by Solar and then sent back to Tubular to be
tested. After receiving the heat treated samples
from Solar, Tubular tested them for "sigmaphase"
(improper heat treatment) at "a variety of points
through the coil." App at 113. After the February
19, 2001 shipment, Tubular sent another two sets of
"sample" coils to Solar to be heat treated and then
returned for testing. After conducting these tests,
Tubular was satisfied that Solar could perform the
work, and on March 19, 2001, Tubular began

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

149 Fed.Appx. 81                                                         Page 3

149 Fed.Appx. 81, 2005 WL 2248799 (C.A.3 (Pa.))
(Cite as: 149 Fed.Appx. 81)

shipping larger quantities of tubes to Solar and omitting the "sample" label.

On February 20, 2001, the day after Tubular sent its first shipment of sample coils, Solar faxed a quotation for the price of its heating services and mailed a hard copy of the quotation along with the Terms of Sale to Tubular. The faxed quotation referred to the Terms of Sale but did not include them. The Terms of Sale included a limitation of liability and remedies. The limited liability provision stated that "seller's liability shall not exceed twice the amount of seller's charges for services performed on any material ... except by written agreement signed by an officer of seller." App at 3.

After Solar treated the non-sample tubes, Tubular sent them to Tubeco, Inc., which in turn sold them to a contractor in Texas. Shortly thereafter, Tubular was informed that the tubing was brittle and failed as a result of improper "sigmaphase." App. at 6. Because of this failure, Tubular's customers refused to pay Tubular and Tubular alleges that as a result it went out of business.

**2 Tubular brought suit against Solar in the United States District Court for the Eastern District of Pennsylvania based on diversity jurisdiction, alleging breach of oral contract and fraudulent misrepresentation arising out of the services provided by Solar. Solar filed a motion to dismiss, asserting that the contract between the parties limited liability to an amount less than $75,000 and thereby divested the District Court of jurisdiction. On September 24, 2003, the Court denied the motion without prejudice based on the need for further discovery. Limited discovery regarding the contract formation was taken after which Solar again moved for summary judgment.

Thereafter, the District Court granted Solar's motion for summary judgment. The District Court found that the limited liability clause was a term of the contract. According to the District Court, the Terms of Sale were incorporated by reference in the quotation sent by Solar and Tubular manifested its assent to these terms when it repeatedly sent its tubing to Solar for *84 heat treatment. The District

Court further found this type of limited liability clause is the type routinely enforced between sophisticated parties and that it was reasonable. Therefore, the District Court held that it was an enforceable part of the contract.

The District Court also held that Tubular's claim that Solar fraudulently induced it to enter into the contract was barred by the "gist of the action" doctrine. Under this doctrine, a plaintiff is barred from bringing a tort claim when such a claim is merely another way of stating the party's breach of contract claim or when the success of such a claim is wholly dependant upon the terms of the contract. *See Sunquest Info. Sys., Inc. v. Dean Witter Reynolds, Inc.,* 40 F.Supp.2d 644, 651 (W.D.Pa.1999). The District Court held that under Pennsylvania law the "gist of the action" doctrine may not apply to claims of fraud in the inducement, but that Tubular's claim was not one of fraudulent inducement but "a question of performance of the contract," i.e., whether Solar in fact properly heat treated the coils. App. at 13-14. Therefore, the Court concluded that the gist of the action doctrine barred Tubular's fraud claim.[FN1]

> FN1. We have jurisdiction to review the District Court's order pursuant to 28 U.S.C. § 1291. Our review of the District Court's entry of summary judgment is plenary. *Watson v. Eastman Kodak Co.,* 235 F.3d 851, 854 (3d Cir.2000).

II.

Tubular raises three issues on appeal. First, Tubular argues that the contract with Solar was formed before it received Solar's Terms of Sale. Therefore, Tubular contends, the terms were not part of the original contract and that they could not have subsequently become part of the contract because they materially altered the bargain. Accordingly, Tubular argues that the District Court erred in determining that the terms were part of the contract. In addition, Tubular argues that the District Court erred in granting summary judgment because the limited remedy failed in its essential purpose. Lastly, Tubular argues that the District

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

149 Fed.Appx. 81, 2005 WL 2248799 (C.A.3 (Pa.))
**(Cite as: 149 Fed.Appx. 81)**

Court erred in finding that its fraud claim was barred by the "gist of the action" doctrine.

A.

**\*\*3** [1] The District Court found that the Terms of Sale were included in the contract because they were incorporated by reference in the February 20, 2001 offer. That finding suffers from the fact that the faxed offer did not actually include a copy of the Terms of Sale. However, because we agree with Solar that the contract was not formed until March 19, well after Tubular received the terms, we conclude that Tubular was bound by the limited liability provision.

It is undisputed that the first set of tube coils were sent on February 19, a day before Solar faxed its offer, and that these coils were labeled "sample." It is clear that Solar's ability to effectively heat treat the sample tubes was a condition precedent to Tubular's acceptance of Solar's offer. Once Solar had satisfied this condition precedent by effectively heat treating the sample tube coils, Tubular accepted Solar's offer by shipping non-sample tube coils on March 19. Accordingly, because Tubular had received the terms of sale by that date and because there is no record of any objection,[FN2] the Terms of Sale were part of the contract.

> FN2. Bitterman testified that he did object by letter when he finally read the terms of sale, but there is no record of this letter. In any event, Tubular continued to send coils for heat treatment even after Bitterman's "objection."

B.

[2] According to Tubular, summary judgment was inappropriate because there **\*85** is a question of fact concerning whether the limited liability clause failed in its essential purpose of providing an effective remedy. Pennsylvania courts have routinely upheld limited liability clauses as codified in 13 Pa. Cons.Stat. Ann. § 2719. In *Valhal Corp. v. Sullivan Assocs., Inc.,* 44 F.3d 195 (3d Cir.1995),

we stated that limitations on liability are a "fact of everyday business and commercial life" and concluded that "[s]o long as the limitation which is established is reasonable and not so drastic as to remove the incentive to perform with due care, Pennsylvania courts uphold the limitation." *Id.* at 204.

Cases that have disregarded such clauses based on a failure of essential purpose have typically been cases where the remedy was limited to repair or replacement or refund of the purchase price. In the former situation, courts have found a remedy fails in its essential purpose when the seller is unable to repair or replace the product. *See Webco Indus., Inc. v. Thermatool Corp.,* 278 F.3d 1120, 1131 (10th Cir.2002); *Lewis Refrigeration Co. v. Sawyer Fruit, Vegetable & Cold Storage Co.,* 709 F.2d 427, 431-32 (6th Cir.1983). In the latter situation, courts have held that a remedy fails in its essential purpose when the remedy is limited to the purchase price for a defect that was not discoverable within a reasonable period after receipt of shipment. *See Neville Chem. Co. v. Union Carbide Corp.,* 422 F.2d 1205 (3d Cir.1970); *Fiberglass Component Prod., Inc. v. Reichhold Chems., Inc.,* 983 F.Supp. 948 (D.Colo.1997); *Earl M. Jorgensen Co. v. Mark Constr., Inc.,* 56 Haw. 466, 540 P.2d 978 (1975). Neither situation is applicable here. The remedy here was not limited to repair and replacement and, more importantly, although the defect was not discovered within a short time after shipment, this possibility was reasonably contemplated by the parties. Solar expressly advised Tubular that "even after employing all the scientific methods known to seller, hazards still remain in providing process services." App. at 92. Accordingly, Tubular was aware of the possibility that a defect would not be discoverable upon receipt of shipment. If Tubular had found the remedy unacceptable it should have notified Solar when it received the Terms of Sale.[FN3] Therefore, because the remedy was twice the purchase price and Tubular was aware of the possibility of an undiscoverable problem, we conclude that the remedy was reasonable, especially given the relative inexpensiveness of the service provided by Solar compared to the limitless liability Tubular posits.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

149 Fed.Appx. 81

149 Fed.Appx. 81, 2005 WL 2248799 (C.A.3 (Pa.))
(Cite as: 149 Fed.Appx. 81)

FN3. Solar's Terms of Sale informed Tubular that it could request additional insurance by "notify[ing] Solar Atmospheres, Inc. in writing on [the] purchase order, if additional parcel or carrier insurance is required above the standard limit." App. at 90.

C.

**4 [3][4] According to Tubular, the District Court erred in finding that Tubular's fraud claim was barred by the gist of the action doctrine. The gist of the action doctrine bars tort claims: (1) arising solely from a contract between the parties; (2) where the duties allegedly breached were created and grounded in the contract itself; (3) where the liability stems from a contract; or (4) where the tort claim essentially duplicates a breach of contract claim or the success of which is wholly dependent on the terms of a contract.

eToll, Inc. v. Elias/Savion Adver., Inc., 811 A.2d 10, 19 (2002) (internal citations and quotations omitted). Although Pennsylvania courts have recognized that the gist of the action doctrine may not cover fraud in the inducement, they have held that this doctrine unquestionably applies to fraud in the performance of a contract. Id. at 17, 20. We find no merit to Tubular's claim *86 that it was fraudulently induced. Solar's treatment of the samples demonstrates that it could effectively heat treat the tube coils. Therefore, Tubular was not fraudulently induced into entering the contract. The fact that Solar then subsequently failed to effectively heat treat the non-sample coils is simply a breach of contract and any fraud claim is barred by the gist of the action doctrine.

III.

[5] For the reasons set forth, we will affirm the judgment of the District Court.FN4

FN4. The District Court granted the motion for summary judgment because it concluded that "the limited liability

provision applies to the contract" and therefore Tubular's "maximum possible recovery of approximately $27,000.00 falls below the jurisdictional amount required by 28 U.S.C. § 1332." App at 14. However, in determining whether the party asserting the jurisdiction of the court has met the amount in controversy requirement, "the sum claimed by the [party asserting the jurisdiction] controls if the claim is apparently made in good faith." State Farm Mut. Auto. Ins. Co. v. Powell, 87 F.3d 93, 96 (3d Cir.1996) (quoting St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 288, 58 S.Ct. 586, 82 L.Ed. 845 (1938)). Tubular's claim for damages exceeding the amount in controversy was not unreasonable, and we conclude that the District Court erred in dismissing the case on jurisdictional grounds. Nonetheless, we will affirm the grant of summary judgment.

C.A.3 (Pa.),2005.
Advanced Tubular Products, Inc. v. Solar Atmospheres, Inc.
149 Fed.Appx. 81, 2005 WL 2248799 (C.A.3 (Pa.))

Briefs and Other Related Documents (Back to top)

• 04-4016 (Docket) (Apr. 14, 2004)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.