IN THE UNITED STATES DISTRICT COURT
IN AND FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| THOMAS A. EAMES, ROBERTA L. EAMES and TAMMY EAMES, on behalf of themselves and all others similarly situated, )<br>)<br>)<br>)<br>)<br>) | |
| Plaintiffs, ) | C.A. No. 04-CV-1324KAJ |
| )<br>v. )<br>) | |
| NATIONWIDE MUTUAL INSURANCE COMPANY, )<br>)<br>) | |
| Defendant. ) | |

### EAMES PLAINTIFFS' SUBMISSION ON
### SUBJECT MATTER JURISDICTION

In its August 29, 2006 Memorandum Opinion, the Court directed the parties to file submissions on a discrete issue: whether the remaining claims support a prayer for damages in excess of $75,000 per class member (as required for diversity jurisdiction). The Court made clear that this was the question to be addressed:

> As discussed above, I have concluded that Plaintiffs may not assert a claim that Nationwide represented that PIP limits were anything other than the $15,000/$30,000 provided by the policy. The remaining claims are based on the allegation that Plaintiffs were misled into believing that those were the highest limits they could buy. It is unclear from the Amended Complaint whether the resulting damages would still be greater than $75,000, as required for diversity jurisdiction under §1332. Since the parties have not fully addressed that issue in the briefing for this Motion, or for Plaintiffs' Motion for Class Certification, I will order Nationwide, who bears the burden of showing the existence of subject matter jurisdiction, to submit arguments on the issue, due two weeks from the date of this opinion and accompanying order. Plaintiffs will have two weeks to respond, and Nationwide will have one week to reply.

Memorandum Opinion at 9-10 (Ex. A).

135189

Nationwide filed its submission on September 12, 2006; but it did not address the Court's question. That is, Nationwide made no effort to address whether, in the wake of the Memorandum Opinion, "the resulting damages would still be greater than $75,000 as required for diversity jurisdiction under §1332." Memorandum Opinion at 9. Instead, Nationwide collected cases for the proposition that (from an analytical standpoint, at least) the Court's question is beside the point; that so long as the Court's dismissal of certain claims did not impair diversity of citizenship, the Court's original ruling on subject matter jurisdiction should remain unchanged.

Nationwide's cases are compelling on that point, and leave us no choice but to agree: nothing in the Memorandum Opinion changes (or should change) the Court's prior analysis on subject matter jurisdiction. To the extent that analysis was correct in the first instance, it remains correct now.

But the Court's actual question -- whether, in the aftermath of the Memorandum Opinion, the amount in controversy remains in excess of $75,000 per class member -- is an important one, and deserves to be answered. The Eames plaintiffs provide that answer below.[1]

---

[1] D Del. LR 7.1.3(c) provides that a party "shall not reserve material for the reply brief which should have been included in a full and fair opening brief." Since the very purpose of Nationwide's opening submission (as defined by the Court) was to address "whether the [remaining] damages would still be greater than $75,000," that submission should obviously have answered the Court's question. To the extent Nationwide attempts to answer it for the first time in its reply submission, we ask that the Court give no weight to Nationwide's reply. To do otherwise would undermine basic procedural fairness.

135189

2

## I. THE MEASURE OF DAMAGES FOR CONSUMER FRAUD DOES NOT VARY WITH THE CIRCUMSTANCES OF THE ALLEGED DECEIT

### A. Benefit of the Bargain is the Measure of Damages

Abundant authority shows that the measure of damages in actions for deceit or misrepresentation, including statutory consumer fraud cases, is the "benefit of the bargain" rule. In fact, that rule was settled law in Delaware at the time of the Hoover administration:

> The measure of damages in such a case as the present [involving an action for deceit based on misrepresentation], if a verdict is found for the plaintiff, is the difference between the real value of the property purchased, at the time of the purchase, and the value which it should have had if the representations had been true.

Nye Odorless Incinerator Corp. v. Felton, 162 A. 504, 513 (Del. Super. Ct. 1931) (collecting seven reported decisions to the same effect). More recently, the New Jersey Supreme Court identified "loss in value" as the measure of damages in a case involving New Jersey's consumer fraud statute -- a statute virtually identical to Delaware's Consumer Fraud Act. Thiedemann v. Mercedes-Benz USA, LLC, 872 A.2d 783, 792 (N.J. 2005).[2] Various other appellate courts, including Utah's highest court, have likewise confirmed that in actions for fraud, deceit or misrepresentation, damages must be measured by the benefit of the bargain:

> [T]he rule in this jurisdiction [is] that in an action for fraud and deceit the measure of damages is the difference between the actual value of what the party received and the value thereof if it had been as represented; this is the benefit of the bargain rule. Under this rule the defrauded party is compensated for the loss of his bargain and is not confined to his out-of-the-pocket damages.

Lamb v. Bangart, 525 P.2d 602, 609 (Utah 1974) (citation omitted). See also Continental Airlines, Inc. v. McDonnell Douglas Corp., 264 Cal. Rptr. 779, 803 (Cal. Ct. App. 1990)

---

[2] There can be no question that the operative language of the New Jersey statute is identical (or substantially so) to the language of the Delaware Consumer Fraud Act. See In re Catanella and E.F. Hutton & Co., Inc. Sec. Litig., 583 F. Supp. 1388, 1441 (E.D. Pa. 1984) (quoting New Jersey statute).

135189

3

(applying "benefit of the bargain" recovery to action for negligent misrepresentation); Starkey v. Bell, 315 S.E.2d 153, 156 (S.C. Ct. App. 1984) (identifying "benefit of the bargain" rule as the majority rule in actions for fraud and deceit); Eklund v. Koenig & Assoc., Inc., 451 N.W.2d 150, 152 (Wis. Ct. App. 1989), appeal denied, 454 N.W.2d 805 (Wis. 1990) ("Wisconsin applies the benefit of the bargain measure of damages to both strict responsibility deceit and breach of contract"); O'Conner v. Follman, 747 S.W.2d 216, 220 (Mo. Ct. App. 1988) (noting that "benefit of the bargain" rule "allows the defrauded party to be awarded the difference between the actual value of the property at the time of making the contract and the value that it would have possessed if the representation had been true.")

Should the Eames plaintiffs prevail on their consumer fraud claim -- and regardless of their theory of the case -- they will be entitled to the full benefit of the bargain that might have been theirs but for Nationwide's deceit. As shown below, and consistent with the law of the case, that bargain is measured by the difference in the minimum PIP limits and the maximum limit offered by Nationwide.

### B. Both Theories Are Consumer Fraud Claims, and Subject to the Same Measure of Damages

In its Memorandum Opinion, the Court correctly identified the two alternative theories of recovery that the Eames plaintiffs pled in their Amended Complaint:

> First, Plaintiffs argued that "full" referred to the maximum amount of PIP coverage Nationwide offered, which was $100,000 per person and $300,000 per accident. "Thus, according to Plaintiffs, consumers are led to believe that they have purchased coverage with those maximum limits, and so the insurance policies must be interpreted to provide for those limits." Second, Plaintiffs argued that the use of the term "full" misleads consumers into believing "that they have purchased the fullest PIP limits or PIP coverage available; the purpose being to discourage them from seeking to purchase additional (and relatively inexpensive) PIP limits."

Memorandum Opinion at 2 (quoting Eames v. Nationwide Mut. Ins. Co., 412 F. Supp.2d 432, 433 (D. Del. 2006)) (Ex. A). The first theory -- the one the Court dismissed -- may be termed the "maximum limit" theory. The second, under which Nationwide presents minimum limits as the fullest available, may be termed the "fullest available limit" theory. But importantly, both theories arise under *the same cause of action*. That is, both the "maximum limit" theory and the "fullest available limit" theory have been pled as bases for recovery under 6 Del. C. §2513, the Delaware Consumer Fraud Act.

Because both theories arise under the Consumer Fraud Act, both are subject to the settled measure of damages for such claims. The measure of damages for statutory consumer fraud is a constant; it does not vary with the endless variety of factual circumstances that surround consumer fraud claims.

Thus, whether one considers the "maximum limit" theory or the "fullest available limit" theory, the proper measure of damages remains the difference between the bargain Nationwide claims to have struck and the bargain to which class members would have been entitled had there been no deception. Under the existing law of the case, the Court has defined this difference as the difference between the minimum and maximum PIP limits. Nothing in the Memorandum Opinion warrants any deviation from that analysis.

## II. THE BENEFIT OF THE BARGAIN MUST BE MEASURED AGAINST THE FULLEST AVAILABLE LIMIT

Nationwide may argue (for the first time in its reply) that consumers should not have the benefit of the fullest available limits -- that is, limits of $100,000 per person and $300,000 per accident -- because it can never be known whether any particular consumer would have purchased those limits in the absence of Nationwide's deception. This approach, of course, would allow Nationwide to limit or avoid liability on the strength of its own misconduct. The

injustice of such a result should be readily apparent; and for this reason, Delaware courts have rejected it in closely analogous cases.

Specifically, 18 Del. C. §3902(b) requires auto insurers to offer to their insureds the option to purchase additional uninsured motorist (or "UM") coverage up to the policy's stated limits for bodily injury coverage. In the seminal case of Schwartz v. Centennial Ins. Co., C.A. No. 5350, 1981 WL 15097 (Del. Ch. April 1, 1981) the auto insurer failed to tender the required offer of additional UM limits. The plaintiffs thus argued that the appropriate relief was to reform the UM limits to the policy's bodily injury limits. Schwartz, slip op. at *1 (Ex. B). In response, the insurer pointed out that even if the offer of additional UM limits had been made, the insured might still have refused it. This contingency, the insurer argued, made it impossible to treat the maximum limits as a measure of relief: "Defendants contend that since the insured was not required to accept the increased coverage and could, in fact, have rejected it if it had been offered, to reform the policy to 'read in' the additional 100/300 coverage would be to ignore the optional character of §3902(b)." Id. at *2.

The Chancery Court rejected this argument, refusing to allow the insurer to avoid liability on the strength of its own misconduct:

> The defendants cannot avoid liability for additional UM coverage by simple arguing that it was never offered. To so hold would be to allow them to ignore their statutory duty and to benefit from their breach of it.

Id.

Four months later, this Court adopted the Schwartz analysis in O'Hanlon v. Hartford Acc. and Indem. Co., 522 F. Supp. 332, 335 (D. Del. 1981), aff'd, 681 F.2d 806 (3d Cir. 1982) (quoting extensively from Schwartz). The Delaware Supreme Court ultimately adopted the same analysis, and has adhered to it for over twenty years. See Sammarco v. USAA Cas. Ins. Co., 878

A.2d 457, 459-60 (Del. 2005) (collecting cases); Mason v. United Services Auto. Ass'n, 697 A.2d 388, 393-94 (Del. 1997); State Farm Mut. Auto. Ins. Co. v. Arms, 477 A.2d 1060, 1063-66 (Del. 1984).[3]

We can probably safely predict that Nationwide will seek to distinguish Schwartz and its progeny from this case. To be sure, this case involves not a breach of any statutorily required disclosure (like the one imposed under section 3902(b)), but a breach of a statutory prohibition on false disclosures. But this is a distinction without a difference. That is, whether the Eames plaintiffs (or any affected class member) would have purchased the fullest available limits had Nationwide not presented the minimum limits as "full" can never be known with certainty; but this is so precisely because of Nationwide's deception. To allow Nationwide to avoid the fullest limits on the basis of that uncertainty would thus reward Nationwide for its own misconduct. This is precisely the reasoning of the UM cases.

It should be noted, too, that in cases involving consumer fraud, the "benefit of the bargain" can be shown by proof of any ascertainable loss:

> To satisfy the "ascertainable loss" requirement, a plaintiff need only prove that he has purchased an item partially as a result of an unfair or deceptive practice or act and that the item is different from that for which he bargained. This approach is in keeping with the remedial aims of the statute and will ensure that the

---

[3] Arms is also important for its discussion of the inherently unequal positions that consumers and insurance companies occupy in the sale of auto insurance:

> Insurance policies typically are not negotiated agreements. Consumers are presented with a complex form agreement on a take-it-or-leave-it basis. The industry has its own obscure terminology which, despite efforts toward plain language policies, is nevertheless difficult for the typical consumer to understand fully. In these respects, insurance agreements are classic examples of contracts of adhesion.

Arms, 477 A.2d at 1065 (citation omitted).

> private civil action established by the statute will remain a meaningful avenue of redress for consumers who have been the victim of unfair or deceptive trade practices.

Hinchliffe v. American Motors Corp., 440 A.2d 810, 814-15 (Conn. 1981) (addressing damages claim under Connecticut's Unfair Trade Practices Act). An "ascertainable" loss is one that is "capable of calculation" within a reasonable degree of certainty. Thiedemann, 872 A.2d at 793 (addressing proof of damages under New Jersey's consumer fraud statute). The Eames plaintiffs should thus be permitted to prove at trial that at the time of Nationwide's deception, the (true) fullest available PIP limits were $100,000 per person and $300,000 per accident. This is the proper measure of damages on their consumer fraud claim, regardless of whether the case is tried under the "maximum limit" theory, the "fullest available limit" theory or both. Since Nationwide has previously admitted that its maximum (or fullest available) limit was at all times the $100,000/$300,000 limit, the Memorandum Opinion does nothing to alter the damages landscape.

## CONCLUSION

For the reasons set forth above, the Eames plaintiffs respectfully submit that under the law of the case, and under the many cases addressing the measure of damages in actions for misrepresentation or consumer fraud, the damages claim remains unchanged.

Respectfully submitted,

MURPHY SPADARO & LANDON

/s/ John S. Spadaro
John S. Spadaro, No. 3155
1011 Centre Road, Suite 210
Wilmington, DE 19805
(302)472-8100

September 18, 2006         Attorneys for the Eames plaintiffs

135189                            8

IN THE UNITED STATES DISTRICT COURT
IN AND FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| THOMAS A. EAMES, ROBERTA L. EAMES and TAMMY EAMES, on behalf of themselves and all others similarly situated, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | C.A. No. 04-CV-1324KAJ |
| v. | ) ) | |
| NATIONWIDE MUTUAL INSURANCE COMPANY, | ) ) ) | |
| Defendant. | ) | |

## NOTICE OF SERVICE

I hereby certify that on this date, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF which will send notification of such filing(s) to the following:

Nicholas E. Skiles, Esq.
Swartz Campbell LLC
300 Delaware Avenue, Suite 1130
P.O. Box 330
Wilmington, DE 19899

           MURPHY SPADARO & LANDON

           /s/ John S. Spadaro
           John S. Spadaro, No. 3155
           1011 Centre Road, Suite 210
           Wilmington, DE 19805
           (302) 472-8100

           Attorneys for plaintiffs
           Thomas A. Eames, Roberta L. Eames and
           Tammy Eames (on behalf of themselves and
September 18, 2006         all others similarly situated)

135112