# EXHIBIT C

00071306.DOC

1981 WL 15074, Schwartz v. Centennial Ins. Co., (Del.Ch. 1981)                                                                                                            Page 1

**\*15074**   Only the Westlaw citation is currently available.

UNPUBLISHED OPINION. CHECK COURT RULES BEFORE CITING.

Court of Chancery of Delaware.

**SCHWARTZ et al.**
v.
**CENTENNIAL INSURANCE CO., et al.**
CIVIL ACTION No. 5350.
Submitted: June 26, 1981.
Decided: Sept. 28, 1981.

On Plaintiffs' Motion for Summary Judgment on One Issue: granted.

David Roeberg, Roeberg and Associates, P.A., Wilmington.

Robert W. Ralston, Prickett, Jones, Elliott, Kristol & Schnee, Wilmington.

Aubrey B. Lank, Theisen, Lank, Mulford & Goldberg, P.A., Wilmington.

Richard A. Levine, Young, Conaway, Stargatt & Taylor, Wilmington.

HARTNETT, Vice-Chancellor.

**\*\*1** Presently before the Court is a motion by the plaintiffs for summary judgment on the issue of reformation of Travelers Indemnity Company's ("Travelers") Policy No. 0075798131011 ("101 Policy").

The background facts are undisputed and are as follows: On June 8, 1975, one of the plaintiffs, Ruth Schwartz, and her husband, Sidney Schwartz, were driving in Maryland on U.S. Route 301 when they were involved in a collision with an automobile operated by Henry Baker. Henry Baker had liability insurance at the time of the collision with Aetna Casualty and Surety Company, in the amount of $10,000 per person, $20,000 per accident. Sidney Schwartz was killed in the crash and Mrs. Schwartz was seriously injured.

At the time of the collision, Sidney and Ruth Schwartz were insureds under a Travelers' automobile insurance policy. Under the terms of the policy as issued (No. 0075798131011) Travelers provided personal injury protection of $10,000 per person, $20,000 per accident, ("10/20") and uninsured motorists' coverage in the same amounts.

At issue is the uninsured motorist statute, 18 *Del.C.* § 3902. Part of this statute, 18 *Del.C.* § 3902(a), requires that every automobile liability insurance policy contain uninsured motorist insurance, if the policy is delivered or issued for delivery in Delaware with respect to automobiles registered in Delaware or principally garaged in Delaware. No coverage is required, however, if it is rejected in writing or upon the renewal of the policy unless the coverage is then requested in writing.

In addition, the third sentence of 18 *Del.C.* § 3902(b) provides. "Each insured shall be offered the option to purchase additional coverage for personal injury or death up to a limit of $300,000, but not to exceed the limits for personal injuries set forth in the basic policy."

In a letter opinion dated April 1, 1981, I denied a motion for summary judgment by defendants Travelers and James S. Kemper & Company ("Kemper"). In so doing, I noted that "the statute places the burden of offering the coverage upon the insurer and the burden of persuasion rests upon it to show that the coverage was offered and refused." The opinion further noted that where the facts justified it, the insurance contract could be reformed to "read in" the higher amounts of coverage.

Plaintiffs now argue that defendants Travelers and Kemper cannot show that the additional coverage was offered and refused, and therefore they are entitled to have the insurance contract reformed to provide coverage up to $300,000.

Defendants, however, raise several points in opposition to plaintiff's motion. It is their contention that on April 8, 1972, Travelers issued Policy No. LP5237540 ("LP Policy") to Sidney Schwartz. At that time, they claim he must have completed and signed a Travelers Form C-15094 "Supplementary Automobile Insurance Application" which was a written rejection of increased uninsured motorist coverage. They concede, however, that the form declining the additional coverage does not now exist. They claim it was routinely destroyed but that it must have once existed because it was normal

© 2006 Thomson/West. No claim to original U.S. Govt. works.

1981 WL 15074, Schwartz v. Centennial Ins. Co., (Del.Ch. 1981)                                                                              Page 2

business practice to have required its execution by Mr. Schwartz. Defendants can adduce no other evidence that Mr. Schwartz actually executed the rejection of additional insurance. The LP Policy lasted one year and insured two automobiles. On April 8, 1973, a "101 Policy" was issued. It was for a term of six months, was automatically renewable upon payment of the premium and insured one automobile. This policy was still in effect on the date of the accident. It is defendants' contention that the LP Policy and the 101 Policy are, in fact, the same policy, with the numerical change being made to make the policy "machinable" and to allow computer direct billing. Further, since it is the same policy for which Mr. Schwartz must have executed a written rejection, they argue they have satisfied their obligation under 18 *Del.C.* § 3902(b) to offer additional coverage.

**\*\*2** Alternatively, they argue that the 101 Policy is a renewal of the LP Policy. In that case the principle espoused in *O'Hanlon v. Hartford Accident & Indemnity Company*, D.Del., Civil Action No. 76-59 (Letter Opinion of Judge Stapleton dated July 19, 1978) would apply, which states that the insurer does not have to make an offer of additional uninsured motorist coverage in connection with a renewal policy if they made such an offer in connection with the original policy and the uninsured made a written declination of refusal of additional coverage. See 18 *Del.C.* § 3902. It is the defendants' contention that such is the case here.

Plaintiffs reply that the 101 Policy is not a renewal of, nor the same policy as, the LP Policy and in any case there has been no evidence presented by defendants showing that Mr. Schwartz actually executed a written rejection of additional coverage in connection with either policy.

On a motion for summary judgment the facts are of course reviewed in the light most favorable to the party against whom the summary judgment is requested. *Hazewski v. Jackson*, Del.Super., 266 A.2d 885 (1970). Moreover, under Chancery Court Rule 56(c), the plaintiffs must show that there is no genuine issue as to any material fact and that they are entitled to a judgment as a matter of law.

Defendants have never asserted that a written rejection was executed by Sidney Schwartz for the 101 Policy, only for the LP Policy. Their defense in this action, therefore, necessarily rests on a determination that the 101 Policy is the same policy as, or a renewal of, the LP Policy.

It is clear, however, that the policies are not the same. The LP Policy was a one-year policy issued on April 8, 1972. The 101 Policy was issued on April 8, 1973. Regardless of the reason for the numerical change in the policies, it is clear that these policies are not one and the same since the 101 Policy was not effective until after the LP Policy had lapsed.

The 101 Policy also could not be a renewal of the LP Policy. A renewal policy is defined as one which "is based upon and subject to the same terms and conditions as were contained in the original policy." 13A Appleman, *Insurance Law & Practice*, § 7648 (1976). The Court in *Long Bros. Grocery Co. v. United States Fidelity & Guaranty Co.*, Mo.App., 110 S.W. 31 (1908) stated that:

The rule is generally recognized that: "A renewal of a policy constitutes a separate and distinct contract for the period of time covered by such renewal. It is, however, a contract with the same terms and conditions as is evidenced by the bond which is renewed, because the renewal receipt recites that it is renewed in accordance with the terms of the bond.'

In addition, in *Hartford Accident & Indemnity Co. v. Sheffield*, Fla.App., 375 So.2d 598 (1979), the Court found that a policy in its second year, which differed in the premiums and coverage from the first year, could not be considered a renewal policy and that Hartford was, therefore, under a statutory obligation to offer uninsured motorist coverage to the defendant in connection with the policy in its second year.

**\*\*3.** In the instant case, defendants contend that the two policies involved no changes in the policy limits or coverage, except for the elimination of one of the two vehicles insured during the period April 8, 1972, to April 8, 1973, and that the 101 Policy was simply a renewal policy.

This cannot be so. While the coverage on the remaining vehicle may be the same under both the 101 and the LP Policies, it is clear that the coverage provided as a whole by the two policies is significantly different. Indeed, the LP Policy provides coverage on two cars while the 101 Policy

© 2006 Thomson/West. No claim to original U.S. Govt. works.

covers only one. The premiums for the two policies and the time period of the coverage are also different. See *Russell v. State Farm Mutual Automobile Ins. Co.*, 209 N.W.2d 815 (1973); *United States Fire Ins. Co. v. Van Iderstyne*, 347 So.2d 672 (1977). Therefore, the differences in premium and coverage between the two policies necessarily show that the 101 Policy was not a renewal of the LP Policy, and that the "renewal policy" exception to 18 *Del.C.* § 3902(a) does not apply. The defendants were required to offer additional uninsured motorist coverage to Sidney Schwartz when the 101 Policy was issued and, since it is undisputed that defendants failed to do so, plaintiffs are entitled to a reformation of the insurance contract to "read in" the higher limits.

Even if the LP Policy and the 101 Policy could be deemed to be one and the same and therefore the 101 Policy would merely be a renewal of the LP Policy, defendants' affidavit does not make a factual allegation which could prevent summary judgment for the plaintiff. It is obvious that defendant cannot produce facts which could justify my holding that they can meet their burden of showing that Sidney Schwartz affirmatively refused the extra coverage.

The precedural posture of this case leaves something to be desired because plaintiff did not file a motion for partial summary judgment (if there is such a thing) until after defendants' motion for summary judgment had been denied, nevertheless it is clear that plaintiffs' motion for summary judgment on the issue of reformation must be granted.

© 2006 Thomson/West. No claim to original U.S. Govt. works.

# Westlaw.

Date of Printing: SEP 19,2006

## KEYCITE

**H**Schwartz v. Centennial Ins. Co., 1981 WL 15074 (Del.Ch., Sep 28, 1981) (NO. CIVIL ACTION 5350)

History
Direct History

=>  1  **Schwartz v. Centennial Ins. Co.**, 1981 WL 15074 (Del.Ch. Sep 28, 1981) (NO. CIVIL ACTION 5350)

Related References (U.S.A.)

**H**  2  Schwartz v. Centennial Ins. Co., 1979 WL 178115 (Del.Ch. Mar 06, 1979) (NO. CIV.A 5350)
**H**  3  Schwartz v. Centennial Ins. Co., 1980 WL 77940 (Del.Ch. Jan 16, 1980) (NO. CIV. A. 5350 (1977))
**H**  4  Schwartz v. Centennial Insurance Co., 414 A.2d 822 (Del.Supr. Apr 09, 1980) (TABLE, NO. 44, 1980)
**H**  5  Schwartz v. Centennial Ins. Co., 1981 WL 15097 (Del.Ch. Apr 01, 1981) (NO. CIVIL ACTION 5350)
**H**  6  Schwartz v. Centennial Ins. Co., 1982 WL 17822 (Del.Ch. Apr 14, 1982) (NO. CIVIL ACTION 5350)

© Copyright 2006 West, Carswell, Sweet & Maxwell Asia and Thomson Legal & Regulatory Limited, ABN 64 058 914 668, or their Licensors. All rights reserved.