## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| THOMAS A. EAMES, ROBERTA L. EAMES, AND TAMMY EAMES, on behalf of themselves and all others similarly situated, | : : : : | |
| Plaintiffs, | : : | |
| v. | : : | Civ. No. 04-1324-JJF-LPS |
| NATIONWIDE MUTUAL INSURANCE COMPANY, | : : : | |
| Defendant. | : : | |

### REPORT AND RECOMMENDATION REGARDING
### PLAINTIFFS' MOTION FOR RECONSIDERATION
### AND DEFENDANT'S MOTION TO DISMISS, AND
### ORDER REGARDING DEFENDANT'S MOTION TO STRIKE

This is a proposed class action involving automobile insurance contracts. The proposed

class representatives, Thomas, Roberta, and Tammy Eames (collectively "Plaintiffs") allege that

Defendant Nationwide Mutual Insurance Company ("Nationwide") misrepresented to class

members the limits of liability for Personal Injury Protection ("PIP") coverage included in

Nationwide auto insurance policies. *See* Amended Complaint (Docket Item ("D.I.") 158).

Pending before me are three motions: (i) Plaintiffs' motion to reconsider Judge Jordan's

August 29, 2006 order dismissing a portion of the Amended Complaint (D.I. 218 and,

hereinafter, "Motion for Reconsideration"); (ii) Defendant's motion to strike Plaintiffs' reply

brief and letter filed in support of their Motion for Reconsideration (D.I. 225 and, hereinafter,

"Motion to Strike"); and (iii) Defendant's motion to dismiss the remaining portions of the

Amended Complaint (D.I. 167 and, hereinafter, "Motion to Dismiss").

For the reasons that follow, I recommend that Plaintiffs' Motion for Reconsideration be

denied and Nationwide's Motion to Dismiss be granted.  Further, I dismiss Nationwide's Motion to Strike as moot.[1]

## I.     BACKGROUND[2]

### A.     Judge Jordan's February 2006 Opinion

Plaintiffs initially filed their complaint in Delaware Superior Court on August 20, 2004. (D.I. 1 ("Original Complaint"))  Nationwide removed the case to District Court on October 1, 2004.  *Id.*

Both the Original Complaint and the Amended Complaint arise from Nationwide's underwriting of PIP insurance coverage.  PIP coverage provides "[c]ompensation to injured persons for reasonable and necessary expenses incurred within 2 years from the date of the accident."  21 Del. C. § 2118(a)(2)(a).  Delaware law mandates that all motor vehicle owners carry PIP insurance of at least "$15,000 for any 1 person and $30,000 for all persons injured in any 1 accident."  *Id.* at § 2118(a)(2)(b).  This amount is referred to colloquially as "$15,000/$30,000."

Plaintiffs alleged that Nationwide misrepresented the limits of liability of their PIP coverage by describing $15,000/$30,000 PIP coverage – the statutory minimum – as "full" PIP.

---

[1]This matter was referred to the undersigned magistrate judge by orders dated December 3, 2007 (D.I. 236) and February 14, 2008 (D.I. 246).  Pursuant to these referral orders, as well as 28 U.S.C. § 636, my authority with respect to the case-dispositive Motions to Reconsider and to Dismiss is limited to issuing a Report and Recommendation.  With respect to the Motion to Strike, my ruling is an order of the Court.

[2]The factual portions of the following background information are based on Plaintiffs' allegations, which are assumed to be true for purposes of reviewing Nationwide's Motion to Dismiss.

(D.I. 1 ¶ 9)  Plaintiffs further alleged that when they suffered an automobile accident in February 2003, Nationwide should not have limited its PIP payments to $15,000/$30,000.

The Original Complaint asserted five claims: (i) a claim seeking a declaratory judgment that class members were entitled to maximum PIP limits of $100,000 per person and $300,000 per accident ("$100,000/$300,000"); (ii) breach of contract; (iii) bad faith breach of contract; (iv) a violation of the Delaware Consumer Fraud Act ("DCFA"), 6 Del. C. § 2513; and (v) civil conspiracy.  (D.I. 1)  Judge Jordan granted Nationwide's motion to dismiss each of these claims. *See Eames v. Nationwide Mut. Ins. Co.*, 412 F.Supp.2d 431 (D. Del. 2006) ("February Opinion"). Specifically, Judge Jordan dismissed the declaratory judgment and contract claims with prejudice, based on his conclusion that "the insurance contract unambiguously provides for the $15,000/$30,000 limit, even assuming that Nationwide distributed documents using the word 'full' to describe those limits." *Id.* at 435.  Finding that the Original Complaint failed to plead fraud with the particularity necessary to satisfy Rule 9(b), but did "set forth a claim in skeletal form," Judge Jordan dismissed the DCFA and conspiracy claims without prejudice and granted leave to amend. *Id.* at 438-39.

B.     Plaintiffs' Amended Complaint

Plaintiffs filed their Amended Complaint on February 10, 2006.  (D.I. 158)  Consistent with the February Opinion, it asserts only the DCFA and civil conspiracy claims.  The Amended Complaint repeats Plaintiffs' central allegation that Nationwide uses the term "full" to describe what is actually the statutory minimum amount of PIP coverage: $15,000/$30,000.  In this way, Plaintiffs contend, Nationwide leads consumers to believe that when they purchase "full" PIP they have purchased the most PIP coverage available.  This, they continue, is untrue, because at

3

all relevant times Nationwide offered for sale additional PIP that would take a consumer's limits

up to a total of $100,000/$300,000.

Notably, however, the only specific misrepresentation alleged in the Amended Complaint

(as was true of the Original Complaint) has nothing to do with how much PIP coverage is

available for purchase; the allegation merely is (as it was in the Original Complaint) that

Nationwide is misleading consumers by using the term "full" to describe PIP limits of

$15,000/$30,000.  For instance, the Amended Complaint describes "Nationwide's Wrongful

Conduct" as follows:

> 9.    Nationwide, acting with and through its agents in Delaware, has
> misrepresented to large numbers of Delaware insureds (including the proposed
> class representatives) the limits of liability of their PIP coverage.  Specifically,
> Nationwide has stated (and, on information and belief, continues to state) within
> "rate quotes", memoranda of insurance or other documentation, that the purchased
> limits of liability for PIP coverage are "full" limits; when in fact Nationwide
> intends by this representation to provide only the minimum statutory limits of
> $15,000 per person and $30,000 per accident.  When insureds to whom
> Nationwide has falsely described PIP limits as "full" tender their claims for PIP
> coverage to Nationwide, Nationwide takes the position that the available limits of
> liability for such coverage are limited to the minimum statutory amount.
> Similarly, when Nationwide has occasion to pay PIP benefits to such insureds, it
> treats their PIP limits as exhausted once the minimum statutory amount has been
> paid.

> 10.    Nationwide's practice of characterizing minimum PIP limits as
> "full" limits is purposefully misleading, unlawful, and injurious to those insureds
> (including the proposed class representatives) who are targets of the practice.
> Nationwide knows that such insureds may, if they so request, purchase from
> Nationwide additional PIP limits in excess of the statutory minimum.  (Such
> additional PIP limits are sometimes referred to, in the jargon of insurance, as
> "APIP.")  By falsely characterizing the minimum limits as "full" limits,
> Nationwide leads insureds to believe that they have purchased the fullest PIP
> limits of PIP coverage available; the purpose being to discourage them from
> seeking to purchase additional (and relatively inexpensive) PIP limits.
> Nationwide pursues this purpose because its loss ratio on PIP claims has

4

historically been unfavorable.

       11.     Whatever Nationwide's intent in characterizing minimum PIP limits as "full", that characterization is ambiguous on its face and as applied. Under Delaware law, it must therefore be construed in favor of the insureds, and against Nationwide.

(Emphasis added)

The Amended Complaint also contains "Allegations Specific to the Proposed Class Representatives." This is the principal place where Plaintiffs have attempted to remedy the lack of particularity that plagued the Original Complaint. Here, too, however, while Plaintiffs allege that Nationwide repeatedly described the PIP limits they purchased ($15,000/$30,000) as "full," there is no allegation that Nationwide said or did anything other than that to mislead Plaintiffs into thinking that additional PIP (or "APIP") was unavailable. Paragraph 13 alleges, in pertinent part:

. . . Nationwide has represented to one or more of the proposed class representatives that the subject policy provides "full" limits of liability for PIP coverage; and it has thereafter taken the position that such limits have been exhausted by payment of the minimum statutory amount:

a. In approximately March 1994 Nationwide, acting through its agent Culver Insurance Agency of Seaford, Delaware (now known as Muncie Insurance & Financial Services, Inc.), sold the subject policy to Mr. and Mrs. Eames. On or about March 14, 1994, and in connection with that sale, the Culver agency (acting for Nationwide) represented that the policy would provide "full" limits of liability for PIP coverage.

. . .

c. On information and belief, one or more representatives of the Culver agency represented orally to Mr. or Mrs. Eames (or both) that the subject policy would provide "full" limits of liability for PIP coverage. . . .

. . .

5

g. Despite its repeated representations to the contrary, Nationwide contends that Mr. and Mrs. Eames's policy provides only the minimum statutory PIP limits (of $15,000 per person and $30,000 per accident).

(Emphasis added)

### C.     Judge Jordan's August 2006 Opinion

Nationwide moved to dismiss Plaintiffs' Amended Complaint.  (D.I. 167, 168)  In his August 29, 2006 opinion, Judge Jordan dismissed the Amended Complaint's DCFA and conspiracy claims to the extent they alleged what has come to be referred to as the "maximum limit theory."  *See Eames v. Nationwide Mut. Ins. Co.*, 2006 WL 2506640 (D. Del. Aug. 29, 2006) ("August Opinion").  The maximum limit theory, by which Plaintiffs argued that Nationwide misled them into believing they had purchased the maximum amount of PIP coverage ($100,000/$300,000), was barred by the statute of limitations.  "Having received the unambiguous policy document [in 1994], Plaintiffs had reason to know that any statement by Nationwide that those limits were other than $15,000/$30,000 was false.  Therefore, Plaintiffs' claim that Nationwide misrepresented the PIP limits as something greater than $15,000/$30,000 arose when they received the policy in 1994, and the three-year period to bring the claim ended in 1997."  *Id.* at *4 (internal citation omitted).[3]

However, Judge Jordan denied Nationwide's Motion to Dismiss to the extent the Amended Complaint was asserting the "fullest available limit theory:" the allegation that Nationwide misled Plaintiffs into believing that they had purchased the most PIP available,

---

[3]As a consequence of this ruling, it was unclear whether the amount in controversy continued to exceed $75,000, as needed for diversity jurisdiction. *See* 18 U.S.C. § 1332.  In subsequent filings (D.I. 219, 222, 228), both parties agreed that the jurisdictional amount is established at the time of the filing of the complaint and, therefore, this Court retains jurisdiction. I agree.  There is no basis for dismissing this action for lack of subject matter jurisdiction.

regardless of its dollar amount. With respect to the fullest available limit theory, Judge Jordan

found that the record was not sufficiently developed for him to conclude that Plaintiffs knew or

should have known more than three years before filing their complaint that additional PIP was

available for purchase. *See id.*[4]

      D.    Subsequent Proceedings

Plaintiffs filed a timely Motion for Reconsideration of the August Opinion. (D.I. 218)

After Nationwide responded, Plaintiffs filed – without seeking leave of the Court – a reply in

support of the Motion for Reconsideration and a letter containing additional argument. (D.I. 223,

224)

On December 15, 2006, Judge Jordan was elevated to the U.S. Court of Appeals for the

Third Circuit and this case was reassigned to the judicial vacancy. (D.I. 232) It was referred to

Magistrate Judge Mary Pat Thynge and then to myself. (D.I. 232, 236) On January 18, 2008, I

heard oral argument from counsel on the three pending motions. (D.I. 243) On February 1,

2008, the case was reassigned to Judge Joseph J. Farnan, Jr. and then, on February 14, 2008,

referred, again, to me. (D.I. 246)

---

[4]Judge Jordan wrote: "Nationwide has not shown based on the Amended Complaint that
Plaintiffs had reason to know prior to August 2001 that coverage with higher PIP limits was
available from Nationwide. Thus, Plaintiffs' claim that Nationwide misrepresented the
$15,000/$30,000 limits as the fullest PIP limits available may or may not be time-barred,
depending on the record that may develop." August Opinion, 2006 WL 2506640, at *4 (internal
citations omitted). Although the record before me is the same as was before Judge Jordan, it is
unclear whether, in the context of the Motion to Dismiss, the parties brought to his attention the
"Statement" document on which I rely below. In any event, while Nationwide asserts a statute of
limitations argument as a basis for dismissing the fullest available limit claims, *see* D.I. 168 at
17, at the hearing before me Nationwide's counsel stated that the record would need further
development to establish this defense, *see* D.I. 244 at 43-44. Because I believe the Amended
Complaint should be dismissed on other grounds, I will not reach the statute of limitations issue.

## II.    LEGAL STANDARDS

### A.    Motion for Reconsideration

The Federal Rules of Civil Procedure do not mention either motions for reconsideration

or reargument. *See Above the Belt, Inc. v. Mel Bohannan Roofing, Inc.*, 99 F.R.D. 99, 101 (E.D.

Va. 1983). Courts often treat such motions as motions to alter or amend a judgment, authorized

by Fed. R. Civ. P. 59(e). *See Silva Rivera v. State Ins. Fund Corp.*, 488 F.Supp.2d 72, 77 (D.P.R.

2007). Regardless of their title, motions for reconsideration or reargument are to be granted only

sparingly. *See Pirelli Cable Corp. v. Ciena Corp.*, 988 F.Supp. 424, 445 (D. Del. 1998); *Karr v.

Castle,* 768 F.Supp. 1087, 1090 (D. Del. 1991). They are not to be used simply to rehash

arguments which have been previously briefed by the parties and considered and decided by the

Court. *See Corning Inc. v. SRU Biosystems,* 2006 WL 155255, at *3 (D. Del. Jan. 20, 2006);

*Schering Corp. v. Amgen, Inc.*, 25 F.Supp.2d 293, 295 (D. Del. 1998).

Accordingly, a motion for reconsideration or reargument will only be granted where one

or more of the following conditions are satisfied: (i) the Court has patently misunderstood a

party; (ii) the Court has made a decision outside of the adversarial issues presented to it by the

parties; (iii) the Court has made an error not of reasoning but of apprehension; (iv) there has been

a change in the controlling law; (v) there is newly available evidence; or (vi) there is a need to

correct a clear error of law or fact to prevent manifest injustice. *See Donald M. Durkin

Contracting, Inc. v. City of Newark*, 2006 WL 2724882, at *3 (D. Del. Sept. 22, 2006);

*Brambles USA, Inc. v. Blocker*, 735 F. Supp. 1239, 1241 (D. Del. 1990). Even where one or

more of these conditions is satisfied, the Court may deny the motion where it would not alter the

outcome. *See Becton Dickinson & Co. v. Tyco Healthcare Group LP*, 2006 WL 890995, at *2

(D. Del. Mar. 31, 2006); *Brambles*, 735 F. Supp. at 1240.

    B.    <u>Motion to Strike</u>

       The District of Delaware Local Rules, which govern civil proceedings in this District, do not permit reply briefs to be filed in connection with motions for reconsideration or reargument without leave of the Court. *See* D. Del. LR 7.1.5 ("The Court will determine from the motion and answer whether reargument will be granted."). Obviously, the Court has authority to require parties to comply with its local rules. *See generally United States v. Eleven Vehicles*, 200 F.3d 203, 214 (3d Cir. 2000) ("Local court rules play a significant role in the district courts' efforts to manage themselves and their dockets.").

    C.    <u>Motion to Dismiss Pursuant to Rule 12(b)(6)</u>

       Federal Rule of Civil Procedure 12(b)(6) permits a court to dismiss all or part of an action for "failure to state a claim upon which relief can be granted." A motion to dismiss requires a court to accept as true all material allegations of the complaint. *See Spruill v. Gillis*, 372 F.3d 218, 223 (3d Cir. 2004). "To survive a motion to dismiss, a civil plaintiff must allege facts that 'raise a right to relief above the speculative level on the assumption that the allegations in the complaint are true (even if doubtful in fact).'" *Victaulic Co. v. Tieman*, 499 F.3d 227, 234 (3d Cir. 2007) (quoting *Bell Atlantic Corp. v. Twombly*, --- U.S. ---, 127 S. Ct. 1955, 1965 (2007) (internal citations omitted)).

       While heightened fact pleading is not required, "enough facts to state a claim to relief that is plausible on its face" must be alleged. *Bell Atlantic,* 127 S. Ct. at 1974. The Court is not obligated, however, to credit or accept as true "bald assertions," *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997), "unsupported conclusions and unwarranted inferences,"

9

*Schuylkill Energy Res., Inc. v. Pennsylvania Power & Light Co.*, 113 F.3d 405, 417 (3d Cir. 1997), or allegations that are "self-evidently false," *Nami v. Fauver*, 82 F.3d 63, 69 (3d Cir. 1996).

Nonetheless, "[t]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997) (internal quotation marks and citation omitted). Thus, a court may grant a motion to dismiss only if, after "accepting all well-pleaded allegations in the complaint as true, and viewing them in the light most favorable to plaintiff, plaintiff is not entitled to relief." *Maio v. Aetna, Inc.*, 221 F.3d 472, 481-82 (3d Cir. 2000) (internal quotation marks and citations omitted).

D.    Motion to Dismiss Pursuant to Rule 9(b)

In pertinent part, Federal Rule of Civil Procedure 9(b) provides that "[i]n alleging fraud . . . a party must state with particularity the circumstances constituting fraud . . . . Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." The purpose of Rule 9(b) is to provide defendants with notice of the precise nature of the claim against them, not to test the factual allegations of the claim. *See Seville Industrial Machinery Corp. v. Southmost Machinery Corp.*, 742 F.2d 786, 791 (3d Cir. 1984). Although date, place, and time allegations may fulfill the requirement of pleading with particularity, these types of allegations are not required to satisfy Rule 9(b), so long as the circumstances of the alleged fraud are plead sufficiently "to place defendants on notice of the precise misconduct with which they are charged, and to safeguard defendants against spurious charges of immoral and fraudulent behavior." *Id.*

10

As both parties have recognized, Rule 9(b) applies to claims arising under the Delaware

Consumer Fraud Act. *See* D.I. 241; *Johnson v. Geico Cas. Co.*, 516 F.Supp.2d 351, 359 (D. Del.

2007); February Opinion, 412 F.Supp.2d at 437-38.


## III.    DISCUSSION

### A.    Plaintiffs' Motion for Reconsideration

By their Motion for Reconsideration, Plaintiffs ask that the Court reverse Judge Jordan's

ruling that the portion of Plaintiffs' claims predicated on the maximum limit theory is barred by

the three-year statute of limitations. (D.I. 218 at 4)  Plaintiffs essentially allege that Nationwide's

misrepresentations were ongoing and reiterated with every six-month renewal of their policy,

through 2003, and therefore the 2004 Original Complaint was filed within the appropriate

statutory period.  Additionally, Plaintiffs claim that their post-accident purchase of APIP

(bringing their total PIP limits to $100,000/$300,000), and Nationwide's arguments about that

purchase in connection with briefing on the Motion for Reconsideration, undermine Judge

Jordan's conclusion that the 1994 policy unambiguously established PIP coverage of just

$15,000/$30,000.  At the hearing before me, Plaintiffs further asked me to reconsider Judge

Jordan's February Opinion dismissing the declaratory judgment and contract claims.  (D.I. 244

at 37)

I find that Plaintiffs have failed to meet the stringent standards for reconsideration.

Assuming, *arguendo*, that Plaintiffs have identified "newly available evidence," that evidence

does not alter the outcome.  As explained below in connection with the Motion to Dismiss, the

policy and related documents unambiguously established that Plaintiffs purchased only

11

$15,000/$30,000 PIP coverage; they further establish that Plaintiffs were advised in writing that additional PIP was available for purchase. Nothing about Plaintiffs' arguments regarding their 2003 purchases alters that conclusion.

Accordingly, I recommend that Plaintiffs' Motion for Reconsideration be denied.

B.    Nationwide's Motion to Strike

Plaintiffs filed their Motion for Reconsideration of the August Opinion on August 31, 2006. (D.I. 218) After Nationwide filed a timely response (D.I. 220), on September 19, 2006 Plaintiffs filed a reply brief and a letter containing additional argument for reconsideration (D.I. 223, 224). Thereafter, on September 21, 2006, Nationwide filed a Motion to Strike Plaintiffs' reply brief and letter. (D.I. 225) In the alternative, Nationwide sought leave to file a sur-reply in opposition to Plaintiff's Motion for Reconsideration. *Id.*

D. Del. LR 7.1.5 provides that: "The Court will determine from the motion and answer whether reargument will be granted." This rule applies to motions for reconsideration as well as motions for reargument. *See, e.g.*, *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 2006 WL 2435084, at *2 (D. Del. Aug. 6, 2006). It means, as it says, that replies and sur-replies and other supplemental filings are not permitted with respect to such motions without leave of the Court. *See Stairmaster Sports/Medical Products, Inc. v. Groupe Procycle, Inc.*, 25 F.Supp.2d 270, 292 (D. Del. 1998) (Local Rule 7.1.5 "permits filing of only one brief per side with an emphasis on brevity").

As Judge Farnan has well explained, motions for reconsideration or reargument do not generally involve reply briefs, as these briefs only exacerbate the deviation from the general norm of finality that such motions already constitute:

12

> [M]otions for reconsideration may not be used to allow a never-ending polemic between litigants and the Court. In the Court's view, the filing of a reply brief frustrates that principle and encourages a cycle of endless litigation on issues already decided by the Court . . . .

*Power Integrations,* 2006 WL 2435084, at *2 (internal citations and quotation marks omitted).

Here, Plaintiffs should have sought leave of the Court before filing their reply brief or letter containing further argument in support of their Motion for Reconsideration. However, I will dismiss the Motion to Strike as moot because at the hearing before me I gave Nationwide a full opportunity to respond to all of Plaintiffs' filings. I also gave Nationwide the opportunity to file a sur-reply brief, but Nationwide declined. (D.I. 245)

C.    Nationwide's Motion to Dismiss

1.    Documents to be Considered

Ordinarily, in reviewing a motion to dismiss, a court may only consider the complaint. *See* 5B C. Wright & A. Miller, Federal Practice and Procedure § 1357 (2007) ("In determining whether to grant a Federal Rule 12(b)(6) motion, district courts primarily consider the allegations in the complaint."); *see also Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1195 (3d Cir. 1993) ("Courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record."). It is well-settled, however, that certain additional materials may be considered without converting a motion to dismiss into a motion for summary judgment (which generally cannot be ruled upon without providing a plaintiff a reasonable opportunity for discovery). Thus, for instance, the Third Circuit has held, "[A] court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the

13

document . . . ." *Pension Benefit*, 998 F.2d at 1196 (internal citations omitted); *see also* 5B C. Wright & A. Miller, Federal Practice and Procedure § 1357 (2007) ("The court is not limited to the four corners of the complaint, however.  Numerous cases . . . have allowed consideration of matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned; these items may be considered by the district judge without converting the motion into one for summary judgment.").

The general principle is that a plaintiff is entitled to notice and a fair opportunity to respond to any evidence the court might consider in reviewing a motion to dismiss; where a plaintiff had such notice – as will be evident, for example, where the plaintiff is asserting claims that rely on and are based on such documents – it is proper for a court to consider such documents in the context of a motion to dismiss. *See Pension Benefit*, 998 F.2d at 1196-97 ("The reason that a court must convert a motion to dismiss to a summary judgment motion if it considers extraneous evidence submitted by the defense is to afford the plaintiff an opportunity to respond.  When a complaint relies on a document, however, the plaintiff obviously is on notice of the contents of the document, and the need for a chance to refute evidence is greatly diminished.") (internal citations omitted).

Applying these principles here, I will consider, in addition to the Amended Complaint, the insurance policy Plaintiffs purchased from Nationwide in 1994.  Plaintiffs' claims are based on the insurance policy. *See* D.I. 1, 4, 158, 168.  Here, the policy consists of the policy document as well as all declarations and endorsements. *See* February Opinion, 412 F.Supp.2d at 436; D.I. 244 at 60, 69.

14

Another document the Court will consider is the "Delaware Motorists Protection Act Required Statement to Policyholders" (hereinafter "Statement"). This is a document Nationwide was required by Delaware law to give to Plaintiffs when they made their initial purchase of insurance; it is undisputed that Nationwide did so and that Thomas Eames reviewed and signed the Statement. *See, e.g.*, D.I. 244 at 10, 19. Nationwide attached the Statement to its Motion to Dismiss the Original Complaint. (D.I. 4 at A-50) Its authenticity is undisputed and it was considered at length during a July 14, 2006 hearing before Judge Jordan relating to class certification (*see* D.I. 215 at 31-33, discussing "form B-203," which is another copy of the Statement) as well as during the January 18, 2008 hearing before me (*see* D.I. 244 at 9-20, 58-59). Plaintiffs' claims are based, in part, on the Statement, as the Statement constitutes a written representation to Plaintiffs at the time of their initial insurance purchase as to how much PIP was available for purchase and what "full" PIP means. *See* Amended Complaint (D.I. 158) ¶ 13.a-d (alleging that misrepresentations were in form of documents and/or oral statements). Finally, and crucially, both parties expressed familiarity with the Statement and insisted that the Court may consider it in resolving the Motion to Dismiss. (D.I. 244 at 9-10, 18-20, 58)

        2.   Consumer Fraud Claim

In pertinent part, the Delaware Consumer Fraud Act ("DCFA"), a statute which provides for a private cause of action against insurance companies, states:

> The act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, or the concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale, lease or advertisement of any merchandise, whether or not any person has in fact been misled, deceived or damaged thereby, is an unlawful practice.

6 Del. C. § 2513.

As Judge Jordan explained in his February Opinion:

> . . . With three exceptions, "the statute must be interpreted in light of established common law definitions and concepts of fraud and deceit." *Stephenson v. Capano Dev., Inc.*, 462 A.2d 1069, 1074 (Del. 1983). Thus, as would be required for a claim of common law fraud, a plaintiff alleging a violation of the consumer fraud statute must show both "a false representation, usually one of fact made by the defendant" and "damage to the plaintiff." *Id.* However, the statute does depart from the common law in the following ways: (1) "a negligent misrepresentation is sufficient to violate the statute," (2) a violation of the statute is "committed regardless of actual reliance by the plaintiff," and (3) the plaintiff need not show "intent [by the defendant] to induce action or inaction by the plaintiff." *Id.* Allowing a negligent misrepresentation to suffice means that "[t]he defendant need not have intended to misrepresent or to make a deceptive or untrue statement," and thus, "the only intent requirement of the Act is that in omitting or concealing a material fact, the defendant must have intended that others rely on the omission or concealment." *Id.*

412 F.Supp.2d at 437.

Thus, in order to state a DCFA claim on which relief may be granted, Plaintiffs must allege at least a negligent misrepresentation or omission of a material fact by Nationwide with the intent that Plaintiffs rely on such misrepresentation or omission. Because Rule 9(b) applies to claims arising under DCFA, *see Johnson*, 516 F.Supp.2d at 359, Plaintiffs must plead such misrepresentation or omission with particularity. In my view, Plaintiffs have failed to do so.

As already noted, the misrepresentation Plaintiffs allege is that Nationwide described the statutory minimum PIP coverage of $15,000/$30,000 as "full" PIP coverage. However, review of the policy documents, and particularly the Statement, demonstrates that this is not a misrepresentation. In the context of the insurance policy purchased by Plaintiffs, "full" PIP coverage means coverage up to $15,000/$30,000 with no deductible (i.e. zero deductible).

This is evident from the Statement, which contains a box in which a consumer may select

16

PIP "Options." Option 3 is "<u>Full Coverage with no Deductible</u>" (emphasis added). The copy of the Statement in the record shows that on March 14, 1994, Thomas Eames (with the assistance of an agent) selected Option 3. In the related column for identifying the amount of deductible for his PIP, no amount is checked and no amount is written in – indicating, again, zero deductible. *See also* D.I. 4 at A-25 (policy describing collision coverage and stating "full coverage" means "no deductible;" "We will pay for the loss less your deductible. However, we will not subtract the deductible amount for broken glass if you have full (no deductible) comprehensive coverage in force.").[5] Consistent with this selection, Nationwide provided Plaintiffs with PIP limits of $15,000/$30,000 and did not subtract any deductible in connection with Plaintiffs' claim following their February 2003 accident.

A better argument, although one Plaintiffs do not expressly articulate, is that Nationwide's failure affirmatively to advise consumers of the availability of additional PIP coverage beyond $15,000/$30,000 – also known as APIP – is an actionable omission of a material fact. On the record before me, there is no evidence that anyone associated with Nationwide verbally advised Plaintiffs of the availability of APIP. However, the documentary record dooms this argument, too, to rejection. For the Statement demonstrates repeated written representations to Thomas Eames as to the availability of APIP.

The Statement, which is a one-page document, consists largely of a three-column table. Each column indicates that $15,000/$30,000 is not the maximum PIP available. Under Column A, "Coverages," in the box applying to "No-Fault" insurance, the Statement reads: "<u>Additional</u>

---

[5]During the hearing before me, Plaintiffs' counsel acknowledged that in the Statement "full coverage" means "full coverage with no deductible." (D.I. 244 at 11-13) He questioned, however, what "full coverage with no deductible" means.

Personal Injury Protection available by selecting higher limits" (emphasis added). Next to this entry, under Column B, listing "Options," Option 1 reads: "I WANT: Additional limits as shown in Column C;" Option 2, by contrast, is "Minimum Limits." In the next box over to the right, under "Selection," there are blanks to be filled-in to indicate the "Personal Injury Protection Limits" for "Each Person" and "Each Accident." That is, Column C provides a place in which to write any "Additional limits" of PIP the consumer has chosen to purchase.

Other portions of the Statement confirm the availability of PIP with higher limits than $15,000/$30,000. At the bottom of the Statement, the following note appears: "It is not the intent of this statement to limit or discourage the purchase of increased limits of liability and personal injury protection coverages, or other additional coverages which may be available from the company" (emphasis added). Additionally, the following appears near the top of the Statement: "The owner of a motor vehicle registered in the State of Delaware is required to purchase at least the following minimum insurance coverages and limits of liability under the Delaware Motorists' Protection Act: . . . Personal Injury Protection: ($15,000 each person; $30,000 each accident)" (emphasis added). With this, the Statement is advising the consumer that $15,000/$30,000 is the "minimum" amount of PIP insurance he or she may carry. See D.I. 244 at 15-16 (Plaintiffs' counsel acknowledging that Statement represents that $15,000/$30,000 is "minimum coverage"). In connection with the remainder of the Statement, and particularly the references under Columns A and B to "[a]dditional" PIP limits, this note is a further representation that PIP coverage above $15,000/$30,000 is available.

Plaintiffs argue that the Statement helps their case because it is "confusing" and filled out in a manner contrary to the position Nationwide has advocated. They emphasize that while the

18

"Minimum Limits" option is checked under Column B, in Column C the Nationwide agent wrote $15,000 per person and $30,000 per accident. (D.I. 244 at 10-11)  To Plaintiffs, therefore, it is unclear whether Thomas Eames selected Option 1 – "Additional limits as shown in Column C" – or Option 2, the "Minimum Limits."[6]  Whether the manner in which the Statement was completed is more consistent with the view that Thomas Eames purchased PIP limits of just $15,000/$30,000 or, instead, purchased the minimum of $15,000/$30,000 plus additional coverage of $15,000/$30,000 – for a total of $30,000/$60,000 – is irrelevant.  What matters is that nothing about how the Statement was filled out contradicts the representations throughout the form that additional PIP limits beyond $15,000/$30,000 were available to purchase.

The closest the Amended Complaint comes to alleging a misrepresentation is when it vaguely claims that "Nationwide <u>leads insureds to believe</u> that they have purchased the fullest PIP limits of PIP coverage available." (D.I. 158 at ¶ 10) (emphasis added)  If Nationwide made affirmative statements, verbally or in documents, to lead Plaintiffs to believe that the most PIP they could purchase was $15,000/$30,000, Plaintiffs would likely state a claim under the DCFA. However, nowhere does the Amended Complaint explain what statements Nationwide made, or when or in what format or by whom, to lead Plaintiffs to such a belief.  As Plaintiffs' counsel conceded at the hearing before me, there is no allegation that Plaintiffs were ever told that $15,000/$30,000 was the most PIP that was available.  Again, all that is alleged – with respect to the class and with respect to Plaintiffs themselves – is repeated representations that the $15,000/$30,000 purchased by Plaintiffs was "full" PIP limits.  This is not, in my opinion, a

---

[6]The Statement also contains checkboxes to select "Minimum Limits" for Bodily Injury Liability, Property Damage Liability, and Uninsured/Underinsured Vehicle Coverage, but the only "Minimum Limits" box that is checked is the one for PIP.

sufficient allegation that Nationwide misrepresented that no further PIP could be bought. Even if this allegation is viewed as a misrepresentation, it is not pled with sufficient particularity to put Nationwide on notice as required by Rule 9(b).

In the end, this is the perhaps rare case in which the pleadings and documents on which the Court is permitted to rely show that Plaintiffs have not stated a claim on which relief may be granted.[7] These materials show there was no material misrepresentation or omission. Plaintiffs cannot be granted relief even if they prove all that they have alleged with respect to Nationwide's assurances they were receiving "full" PIP. Therefore, again, I recommend that Nationwide's Motion to Dismiss be granted.[8]

---

[7]*See, e.g., Case v. State Farm Mut. Auto. Ins. Co.*, 294 F.2d 676 (5th Cir. 1961) (affirming dismissal of a wrongful termination claim where contract terms, which were attached to complaint, showed plaintiff was employee at will and defendant had right to terminate without cause); 5B C. Wright & A. Miller, Federal Practice and Procedure § 1357 (2007) (discussing grants of dismissal under 12(b)(6) where "the plaintiff has pleaded himself or herself out of federal court" and citing as an example, *Case*, where "it was clear on the face of the pleading and the attached document that the plaintiff had not stated an actionable claim").

[8]To the extent my recommendation of dismissal is based on Rule 9(b), it might be argued that Plaintiffs should be permitted leave to re-file their complaint. I do not believe so, for two reasons. First, Plaintiffs have already amended their complaint once in response to Judge Jordan's earlier dismissal of the Original Complaint for failure to satisfy Rule 9(b). I see no reason why Plaintiffs should be permitted a third bite at the apple. Second, the Statement and deposition testimony (which both parties have brought to my attention, D.I. 244 at 64-66) show that Nationwide did not affirmatively state to Plaintiffs that higher PIP limits were unavailable. *See, e.g.*, Thomas Eames deposition transcript (D.I. 198) at A-147 ("I'm assuming I'm getting 100/300 on PIP because she's telling me I got full coverage."); *id.* ("I thought she was giving me 100/300 because she told me I had full coverage."); *id.* at A-148 ("When I asked if I had full coverage she told me yes. That's specific enough."); Roberta Eames deposition transcript (D.I. 198) at A-167 (testifying that she did not recall specifically what was said verbally about full coverage). Indeed, Mr. Eames testified that he thought he had purchased more than the minimum amount of PIP – "I thought it was minimum plus another 15 and 30," D.I. 198 at A-148 (emphasis added) – which seems to indicate he had knowledge that something more than the minimum of $15,000/$30,000 was available.

3.    Civil Conspiracy Claim

Plaintiffs' civil conspiracy claim "is not an independent cause of action, and . . . must be predicated on an underlying wrong." *Tracinda Corp. v. DaimlerChrysler AG*, 197 F.Supp.2d 42, 74 (D. Del. 2002).  Because I have recommended that the DCFA claim be dismissed, it follows that I must also recommend that the dependent civil conspiracy claim also be dismissed.

## IV.    CONCLUSION

For the reasons set forth above:

1.    I recommend that Plaintiffs' Motion for Reconsideration be DENIED.

2.    I recommend that Nationwide's Motion to Dismiss be GRANTED.

3.    It is hereby ORDERED that Nationwide's Motion to Strike is DISMISSED as moot.

Dated: March 31, 2008

The Honorable Leonard P.  Stark
UNITED STATES MAGISTRATE JUDGE

21